**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*

FILED
DISTRICT COURT OF GUAM

DEC 30 2003

MARY L. M. MORAN
CLERK OF COURT

31

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>       Plaintiffs,<br><br>  v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>       Defendants. | CIVIL CASE NO. 03-00036<br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION TO DISMISS** |

ORIGINAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.,
731 F.2d 112, 122 (2nd Cir. 1984) ........................................................................... 19

Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,
583 F.2d 426, 434-5 (9th Cir. 1978) ......................................................................... 2

Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998) ........................................... 7

Bohm v. Union Bank of Tennessee, 794 F.Supp. 158,
161 (WD Pa. 1992) ...................................................................................................... 20

Cambee's Furniture, Inc. v. Doughboy Rec., Inc.,
825 F.2d 167, 175 (8th Cir. 1987) ............................................................................... 2

Carma Developers Inc. v. Marathon Development California, Inc.,
2 Cal. 4th 342, 374 (1990) .......................................................................................... 6

Charles E. Brauer Co. v. Nations Bank of VA, N.A.,
466 SE2d 382 (1996) .................................................................................................. 7

Conrad v. Bank of America, 53 Cal. Rptr. 2d 336, 351 (1996) ..................................................... 12

Continental Bank N.A. v. Everett, 760 F.Supp. 713,
717 (ND III 1991) ........................................................................................................ 20

Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir.), *cert. den.*,
506 U.S. 1035 (1992) .......................................................................................... 2, 6

Cooney, et al. v. Continental Insurance Co., District Court
Civil Case No. 93-00014 ............................................................................................ 2

Credit Managers Assn. v. Superior Court, 51 Cal.App.3d
352, 359-60 (1975) ..................................................................................................... 21

Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust
Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989) ............................................... 7

## Cases

Crisci v. Security Ins. Co., 66 Cal.2d 425, 432,
fn.3, 58 CR 13 (1967) ................................................................................ 8

Dugan v. First Nat. Bank in Wichita, 227 Kan. 201,
606 P.2d 1009 (1980) ................................................................................ 19

Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809,
169 CR 691 (1979) .................................................................................... 8

Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938) ...................... 1

First Security Bank of Beaver of Oklahoma v. Taylor,
964 F.2d 1053, 1059 (10th Cir. 1992) ...................................................... 12

First Security Bank of Utah v. Banberry Development Corp.,
786 P.2d 1326, 1332 (Utah 1990) ............................................................ 19

Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970) ................. 7

Foley v. Interactive Data Corp., 47 Cal. 3d 654,
684-685, 254 CR 211 (1988) .................................................................... 8

Freeman & Mills Inc. v. Belcher Oil Co.,
44 CR2d 420 (Cal. 1995) .................................................................... 8, 9

French American Banking Corp., v. Flota Merante Grancolombiana, S.A.,
609 F. Supp. 1352 (S.D.N.Y.1985) ........................................................... 7

Fruitico S.A. de C.V. v. Bankers Trust Co., 833 F.Supp 288,
300-301 (S.D.N.Y. 1993) .......................................................................... 6

Garrett v. Bank West, Inc., 459 N.W.2d 833, 841-42 (S.D. 1990) .......... 2, 21, 22

Glidden Co. v. Janderoa, 5 F. Supp. 2d 541,
552 (W.D. Mich. 1998) ............................................................................ 13

Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n,
786 S.W.2d 386, 391 (Tex.App. 1991) ..................................................... 19

Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989) .................... 19

**Cases**

Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993) ........................................................ 9

Hemlani v. Flaherty, 2003 Guam 17 .......................................................................................... 12

Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1180, 26 C.R.2d 8 (1993) ............................................ 8

Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985) ................................................. 7

Idaho First Nat. Bank v. David Steed & Associates, Inc.,
121 Idaho 356, 825 P.2d 79 (1992) ........................................................................................ 19

In re American Lumber Co., 5 BR 470, 477-478 (DC Minn. 1980) ........................................... 21

In re EMB Associate Inc., 18 BCD 617, 92 BR 9, 15 (BC RI 1988) ........................................... 21

In re Letterman Bros. Energy Securities Litigation,
799 F.2d 967 (5th Cir. 1986) ................................................................................................. 22

In re Mullaney, 179 BR 942 (D.Colo. 1995) ................................................................................ 7

In re N&D Properties, Inc., 799 F.2d 726 (11th Cir. 1986) ........................................................ 21

In re Rexplore, Inc. Securities Litigation, 685 F.Supp.
1132 (ND Cal. 1988) ............................................................................................................... 22

In re Sleepy Valley, Inc., 93 BR 925, 932-933 (BC WD Tex 1988) ........................................... 21

In re Teltronics Services, Inc., 29 BR 139, 171 (BC ED NY 1983) ........................................... 21

In re Vietri Homes, Inc., 58 BR 663 (BC Del 1986) .................................................................. 21

Jack Walters & Sons Corp. v. Morton Bldg., Inc.,
737 F2d 698 (7th Cir. 1984) .................................................................................................... 7

Klein v. First Edina Nat. Bank, 293 Minn. 418,
196 N.W.2d 619 (1972) ......................................................................................................... 19

Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986) ................................................................... 22

Lachenmaier v. First Bank Systems, Inc.,
803 P.2d 614 (Mont. 1990) .................................................................................................... 20

**Cases**

Lee Careau & Co. v. Security Pacific Business Credit, Inc.,
222 Cal.App.3d 1371, 1395 (1990) ..................................................................................... 2, 5

Lowe v. Massachusetts Mutual Life Insurance Co.,
54 Cal.App.3d 718, 725-728 (1976) ............................................................................ 5, 10, 18

Mans v. Peoples Bank of Imboden, 10 S.W.3d 885,
889-890 (Ark. 2000) ............................................................................................................ 23

Manufacturers Hanover Trust Co., v. Yanakas,
7 F.3d 310, 318 (2nd Cir. 1993) .................................................................................... 20, 23

Morse v. Crocker Nat. Bank, 142 Cal. App.3d 228, 232 (1983) .................................................. 20

Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo 1987) ....................................................... 7

National Westminster Bank, U.S.A. v. Ross,
130 B.R. 656, 664 (S.D.N.Y. 1991) .............................................................................. 12, 13

NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997) ............................................................ 20

Oki America, Inc. v. Micro Tech International, Inc.,
872 F2d 312, 315 (9th Cir. 1989) .................................................................................... 7, 9

Paradise Hotel Corp. v. Bank of Nova Scotia,
842 F.2d 47, 53 (3rd Cir. 1988) ...................................................................................... 19, 22

Pepper v. Litton, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939) ................................................. 21

Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989) ........................................... 7

Price v. Wells Fargo Bank, 261 CR 735, 742 (Cal.App. 1 Dist. 1989) ........................................... 6

Rigby Corp. v. Boatmen's Bank & Trust Co.,
713 SW2d 517 (Mo.App. 1986) ............................................................................................. 7

Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) ................................................................ 7

Rutherford v. Rideout Bank, 11 Cal.2d 479, 481 (1938) ............................................................... 21

## Cases

Saglio v. Chrysler First Commercial Corp., 839 F.Supp.
830, 833 (MD Fla. 1993) ..................................................................................... 20

Seamen's Direct Buying Service v. Standard Oil Co.,
206 CR 354 (1984) ........................................................................................... 8, 9

Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927,
262 Cal.Rptr. 260, 278 (1989) ........................................................................ 19, 21

Stenberg v. Northwestern Nat. Bank of Rochester,
307 Minn. 487, 238 N.W.2d 218 (1976) ................................................................. 22

Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984) ......................................... 7

Taylor v. Standard Gas & Electric Co., 306 US 307,
83 L Ed 669, 59 S Ct. 543 (1939) ......................................................................... 21

Tokarz v. Frontier Federal Savings & Loan Ass'n,
33 Wash.App. 456, 656 P.2d 1089 (1982) ................................................................. 20

Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co.,
763 SW2d 809 (Tex.App. Texarkana 1988) ................................................................. 7

Travel Services Network, Inc. v. Presidential Financial Corp. of MA,
959 F. Supp 135, 144 (D. Conn. 1997) ..................................................................... 23

Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194,
N.W.2d 910 (1991) ........................................................................................... 19

Union State Bank v. Woell, 434 NW2d 712 (ND 1989) ................................................... 7, 19, 22

Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982) ............................................... 19, 22

Western Systems, Inc. and Cable TV v. Commercial Union Assurance
Co. PLC, et al., District Court Civil Case No. CIV 93-00055 ................................................. 2

**Statutes and Rules**

13 G.C.A. § 3104 ........................................................................................... 14, 18, 24

13 G.C.A. §§ 3201, 3202 ............................................................................... 14, 18, 24

18 G.C.A. § 80403 ................................................................................................... 17

18 G.C.A. § 80406 ................................................................................................... 17

18 G.C.A. § 81102 ................................................................................................... 15

18 G.C.A. § 81103 ................................................................................................... 15

28 USC §1322 ........................................................................................................... 1

48 USC §1424 ........................................................................................................... 1

Fed. R. Civ. P. 9(b) ................................................................................................... 12

FRCP 12(b)(6) ........................................................................................................... 1


**Miscellaneous**

37 Am. Jur. 2d - *Fraud and Deceit* § 80 (2001) ...................................................... 12

37 Am. Jur. 2d - *Fraud and Deceit* § 82 (2001) ...................................................... 12

37 Am. Jur. 2d - *Fraud and Deceit* § 84 (2001) ...................................................... 13

9 Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4 ..................................... 5, 6, 11

*California's Detortification of Contract Law: Is the Seamen's tort dead?*
    26 Loyola L.A. L. Rev. 213, 223 (1992) ................................................................... 9

Restatement (Second) of Contracts, § 205, comment a (1981) .................................... 2

Restatement (Second) of Contracts § 317(2) (1981) .................................................. 14

Restatement 2d of Contracts, § 317(2) (1981) .................................................. 6, 18, 24

**Miscellaneous**

The Fiduciary Controversy: *Injection of Fiduciary Principles
Into the Bank-Depositor and Bank-Borrower Relationships*,
20 Loyola L. Rev. 795, 803-804 (1987) .................................................................................. 20

## JURISDICTION

This action is before this Court for federal diversity jurisdiction pursuant to 28 USC §1322 and 48 USC §1424. This Court has jurisdiction to hear this motion pursuant to FRCP 12(b)(6).

## FACTS

For purposes of this motion, the Court must accept as true all of Plaintiffs allegations in the Complaint.

## ANALYSIS

FRCP 12(b)(6) authorizes this motion whereby a party fails to state a claim upon which relief can be granted.

### I.

**A TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT BE IMPLIED TO CONTRADICT OR LIMIT HSBC'S EXPRESS CONDITIONS PRECEDENT TO ANY WORKOUT NOR DOES THE BASES ALLEGED AMOUNT TO A BREACH OF GOOD FAITH.**

As its first cause of action, Plaintiffs allege that "Defendant acted in bad faith and failed to deal fairly with Plaintiffs in refusing to agree to a commercially reasonable workout and in refusing to accept the alternative financing obtained by Plaintiffs." See, ¶ 29 of the Complaint. In addition, Plaintiffs allege that "[a]s a result of Defendant Bank's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages . . . ." See, ¶ 30 of the Complaint.

It is well established that a federal court sitting in diversity must apply to substantive law of the state whose law governs the action. See, Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938). Since this is an issue of first impression in Guam courts, it is not obvious how

1

the Guam Supreme Court will resolve this issue. In such uncertainty, "a federal court must use its own best judgment in predicting" what the Guam Supreme Court would decide. See, Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir. 1978).

To our knowledge, only two bad faith claims arising out of insurer-insured context have been adjudicated in the courts of Guam in recent years.[1]

HSBC concedes that all contracts contain an implied covenant of good faith and fair dealing. See, Restatement (Second) of Contracts, § 205, comment a (1981). Application of the implied covenant is a matter of contract interpretation. See, Cambee's Furniture, Inc. v. Doughboy Rec., Inc., 825 F.2d 167, 175 (8th Cir. 1987) (applying South Dakota law). The covenant is "a method to fill in gaps" in a contract and has "nothing to do with the enforcement of terms actually negotiated." See, Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir.), cert. den., 506 U.S. 1035 (1992).

"Good faith is not a limitless duty or obligation. The implied obligation must arise from the language used [in the contract] or must be indispensable to effectuate the intention of the parties." Garrett v. Bank West, Inc., 459 N.W.2d 833, 841-42 (S.D. 1990).

Bad faith, on the other hand, implies unfair dealing, not mistaken judgment, honest mistake or negligence. See, Lee Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1395 (1990). The basis for Plaintiffs' allegation to support bad faith against HSBC is based on Plaintiffs' allegation that (1) HSBC refused to consider its listing of certain properties for sale with Century 21 Realty Management and (2) HSBC "refused to accept" its commitment for alternative financing from First Hawaiian Bank, which HSBC will now address seriatim: See, ¶ 28 of the Complaint.

---

[1] See, Cooney, et al. v. Continental Insurance Co., District Court Civil Case No. 93-00014 and Western Systems, Inc. and Cable TV v. Commercial Union Assurance Co. PLC, et al., District Court Civil Case No. CIV 93-00055.

2

Memorializing the discussions held on the February 13, 2003, meeting between HSBC officials and Alan Sadhwani("Mr. Sadhwani"), the principal of KSI, HSBC on February 17, 2003, forwarded a letter to Mr. Sadhwani which stated that Mr. Sadhwani had claimed that he had listed the "securing real estate properties for sale with Century 21, and asked them to refer all offers to you." See, ¶ 4 of Ex. "B" to the Complaint. In the same letter, Mr. Sadhwani was requested to provide a written plan on how he intends to payoff the bank by the parties' next meeting proposed for "February 24, 2003." See, ¶ 3 of Ex. "B" of the Complaint. On March 5, 2003, Mr. Sadhwani executed this letter acknowledging that the matters contained in the letter were true and correct.

On March 5, 2003, another meeting was held between Mr. Sadhwani and HSBC officials which was subsequently memorialized in a letter dated March 6, 2003, which was forwarded to Mr. Sadhwani. In paragraph 1 of that letter, HSBC emphasized to Mr. Sadhwani that there would be no further renewal of his loan facilities after August 31, 2003. See, ¶ 1 of Ex. "D" to the Complaint. In paragraph 2 of the letter, HSBC pointed out that Plaintiffs failed to provide them a written plan on how they were going to pay the Bank contrary to his previous agreement on February 13, 2003. In addition, HSBC made it clear that it was not satisfied despite the fact that Plaintiffs had listed the securing real properties for sale with Century 21, because it was not a written plan and nor was the term "reasonable" (referring to Mr. Sadhwani's statement that he would only accept reasonable offers to sell his property) quantified. See, ¶ 2 of Ex. "D" to the Complaint. The Bank again requested that Plaintiffs provide a written plan on how their loan would be paid off by March 12, 2003, and Mr. Sadhwani, the principal of KSI agreed. See, ¶ 2 of Ex. "D" to the Complaint.

Despite HSBC's request that a written plan be received by March 12, 2003, Plaintiffs failed to provide such plan and on March 13, 2003, HSBC again forwarded a fax which states in part as follows: "The deadline for the requested plan was yesterday as stated in a letter dated 6 March 2003 referenced GUM CCU 030021. Please provide the written plan to date, as we have agreed upon, so that we understand how you intend on repaying the loan by the revised maturity date." See, Ex. "E" to the Complaint. On March 14, 2003, Mr. Sadhwani forwarded a letter to HSBC indicating that he was ". . . working with the Bank to pay off [the] outstanding loan with you." See, Ex. "F" to the Complaint. Despite repeated requests by HSBC for a written plan, Mr. Sadhwani conveniently ignored the HSBC request.

Again, on March 21, 2003, HSBC forwarded a letter to Mr. Sadhwani stating in part "[y]ou represented that you have listed your property with Century 21 Realtors. We request a copy of the listing agreements or a written authorization allowing Century 21 to provide copies to the Bank immediately." See, Ex. "G" to the Complaint. In HSBC's letter dated March 21, 2003, Plaintiffs were given until April 4, 2003 to comply with HSBC's request in the letter. On March 14, 2003, Mr. Sadhwani, on behalf of KSI, faxed a letter to HSBC stating, that he is ". . . working with a bank to payoff our outstanding loan with you." See, Ex. "F" to the Complaint.

Other than an April 4, 2003, letter from Christopher Felix of Century 21 Realty Management Company to Mr. Sadhwani describing his "marketing efforts" for some of the real properties, and KSI's letter that it is trying to get refinancing to payoff HSBC, Plaintiffs refused to comply with the specific request contained in HSBC's March 21, 2003, letter, that KSI provide HSBC with listing agreements and/or "allowing Century 21 to provide copies to the Bank . . . ." See, Exs. "H," "G," and "J" respectively, to the Complaint. Moreover, nothing in Christopher Felix's letter indicates that a contract of sale had been entered to sell any of

4

Plaintiffs' property. The persons mentioned were mere prospective buyers. As of April 3, 2003, Plaintiffs had not sold any of the properties they purportedly listed with Century 21. On July 15, 2003, HSBC forwarded Mr. Sadhwani a Notice of Intent to Sell his Loan.

Based on the above, Plaintiffs' alleged first basis for bad faith does not provide any evidence of unfair dealing or malice by HSBC which could constitute bad faith. Plaintiffs utterly failed to comply with HSBC's requests. As the court in <u>Lee Careau & Co.</u>, stated, allegations which assert bad faith must show that "... the conduct of the defendant... demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act... ." <u>Id.</u> at p. 1395. Since a showing of bad faith is required, regardless of whether Plaintiffs proceed in tort or on a contract theory, Plaintiffs cause of action for implied breach of the covenant of good faith and fair dealing should be dismissed as a matter of law.

The second basis for Plaintiffs allegation of bad faith is based on the allegation that HSBC rejected their commitment of "alternative financing" from First Hawaiian Bank. Attached as Ex. "M" to Plaintiffs' Complaint is the purported bank commitment to provide alternative financing. The letter provides that "[t]his letter shall **not** be construed as **commitment** on the part of the Bank and is only provided for indication purposes only. A commitment, **should one be issued** shall be subject to the modification and formal approval from the officers of the Bank, and will be in accordance with the Bank's normal underwriting standards." <u>See</u>, first ¶ of Ex. "M" to the Complaint (emphasis added).

Letters of commitment, unlike letters of indication, are letters for which a fee is paid, constitute an option to the applicant to obtain the loan at the specified terms. <u>See</u>, <u>Lowe v. Massachusetts Mutual Life Insurance Co.</u>, 54 Cal.App.3d 718, 725-728 (1976); <u>see</u>, <u>also</u>, 9

Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4, p. 9. Under the usual principles of lender liability, "[a] loan commitment is not binding on a lender unless it contains all the material terms of the loan, and either the lender's obligation is unconditional or the state of conditions have been satisfied." See, 9 Miller & Starr, Op. Cit., supra at 28.4, at p. 8, fn. omitted. A review of the purported "alternative financing" letter from First Hawaiian Bank makes it explicitly clear that no enforceable contract to provide "alternative financing" was created by such document.

Moreover, even assuming, *arguendo*, that Plaintiff had complied with two of the purported "proposals to work out the loan," HSBC had the right to sell its loan facilities and promissory note. Its loan was freely assignable unless such assignment is precluded by the contract itself or forbidden by statute. See, Restatement 2d of Contracts, § 317(2) (1981).

As the Court stated in Price v. Wells Fargo Bank, 261 CR 735, 742 (Cal.App. 1 Dist. 1989), "[t]he covenant of good faith and fair dealing operates as a kind of safety valve to which judges may turn to fill gaps and qualify all limit rights and duties otherwise arising under rules of law and specific contract language," and it does not impose any affirmative duty of moderation in the enforcement of legal rights." See, also, Carma Developers Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 374 (1990); Continental Bank, N.A., supra, at p. 705.

Furthermore, Plaintiffs failure to comply to HSBC's explicit conditions to the proposed workout, i.e., HSBC's written request that a written plan for payoff of the loan be submitted and their failure to have a commitment to refinance their loan with HSBC, meant that no workout agreement was reached and thus, the parties did not owe each other any alleged duty of good faith. See, Fruitico S.A. de C.V. v. Bankers Trust Co., 833 F.Supp 288, 300-301 (S.D.N.Y. 1993).

6

**A.** **Even assuming arguendo that Plaintiffs have properly pleaded evidence of HSBC's bad faith, their cause of action for tortious breach of the implied covenant of good faith and fair dealing fails as a matter of law.**

As discussed above, all contracts contain an implied covenant of good faith and fair dealing. However, the concept of bad faith as a tort originated in the insurance arena. Although the rationale that justifies the extension of the bad faith cause of action to first-party insurance cases[2] applies as well to ordinary commercial contract cases, the courts have almost unanimously refused to do so. See, Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F2d 698 (7th Cir. 1984); Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984); Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985); In re Mullaney, 179 BR 942 (D.Colo. 1995); French American Banking Corp., v. Flota Merante Grancolombiana, S.A., 609 F. Supp. 1352 (S.D.N.Y.1985); Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo 1987); Rigby Corp. v. Boatmen's Bank & Trust Co., 713 SW2d 517 (Mo.App. 1986); Union State Bank v. Woell, 434 NW2d 712 (ND 1989) (lender's protection of its security interest did not constitute bad faith); Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) (action in tort for violation of implied in law duty of good faith and fair dealing applies only to insurance contracts; court refuses to extend theory to commercial lending transaction); Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989); Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998); Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co., 763 SW2d 809 (Tex.App. Texarkana 1988); Charles E. Brauer Co. v. Nations Bank of VA, N.A., 466 SE2d 382 (1996); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989).

---

[2] Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970).

Most court decisions have carved out a limited exception to the general rule only in the insurance arena. See e.g., Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1180, 26 C.R.2d 8 (1993). Tort recovery in insurance law is considered appropriate for a variety of policy reasons. Unlike most other contracts for goods and services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility. See, Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684-685, 254 CR 211 (1988), citing, Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 CR 691 (1979). In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of accident or other catastrophe. See, Foley, supra, at p.684. Moreover, an insured faces a unique "economic dilemma" when an insurer breaches the implied covenant of good faith and fair dealing. Id at p. 692. Unlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurer willing to pay for a loss already incurred. Id.

In addition, the tort duty of a liability insurer ordinarily is based on its assumption of the insured's defense and of settlement negotiations of third party claims. See, Crisci v. Security Ins. Co., 66 Cal.2d 425, 432, fn.3, 58 CR 13 (1967). The assumption of those responsibilities obligates the insurer to give at least as much consideration to the welfare of its insured as it gives to its own interests so as not to deprive the insured of the benefits of the insurance policy. See, Egan, supra at p. 818; 68 A.L.R. 2d 883. That is why courts have exercised great caution in considering whether to extend this exception in those cases to another contract setting.

California, being one of two states which had previously recognized the tort of bad faith denial of non-insurance contracts in the case of Seamen's Direct Buying Service v. Standard Oil Co., 206 CR 354 (1984), decided in 1995 that its decision was incorrect. In Freeman & Mills

8

Inc. v. Belcher Oil Co., 44 CR2d 420 (Cal. 1995), the California Supreme Court specifically overruled the earlier decision in Seamen's. The California Supreme Court recognized that the lower court had had great difficulty in attempting to apply the theory, noting that one commentator had written "in recent decisions, almost every court offers a different interpretation of the tort."[3] The California Supreme Court in Freeman decided with approval of the Court of Appeals decision in Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993), where the court argued that public policy mitigated against awarding tort damages for breach of contract. Id. at p. 427-428. The reasons for denying the tort recovery included:

> (1) the different objectives underlying the remedies for tort or contract breach, (2) the importance of predictability in assuring commercial stability in contractual dealings, (3) the potential for converting every contract breached into a tort, with accompanying punitive damage recovery, and (4) the preference for legislative action in affording appropriate remedies.

Id. at p. 428. After the noting the criticism leveled at Seamen's by the courts, as well as the rejection by legal scholars, the court concluded that the reasons set forth in Harris were sufficient to overrule Seamen's. As the court pointed out in Freeman, "of all States, only Montana has recognized the tort of bad faith in a typical arm's length commercial contracts, and recently even that State has qualified the tort by requiring a showing of a special relationship between the contracting parties." Id. at p. 428. As the Ninth Circuit Court of Appeals stated in Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989), "it is impossible to draw a principled distinction between a tortious denial of a contract existence and a permissible denial of liability under the terms of the contract." For policy reasons alone, the first cause of action should be dismissed.

---

[3] Comment, *California's Detortification of Contract Law: Is the Seamen's tort dead?* 26 Loyola L.A. L. Rev. 213, 223 (1992).

Case 1:03-cv-00036   Document 33   Filed 12/30/2003   Page 17 of 34

**THE SECOND CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFFS FAILED TO OBTAIN REFINANCING.**

Plaintiffs' Second Cause of Action purports to be a claim based upon intentional misrepresentation. Plaintiffs assert that HSBC offered to "work out" their loan if mortgaged properties were listed with a broker and sold with the net proceeds to go to HSBC, the properties were deeded to HSBC in lieu of foreclosure at negotiated values, and/or Plaintiffs were to obtain replacement financing with another bank to pay off the loan with HSBC. Complaint at ¶ 27, Ex. "G". Plaintiffs allege that they accepted HSBC's proposal to list the properties with a broker and to obtain "alternative financing". Id. at ¶ 28. Plaintiffs claim that they obtained "alternative financing" from First Hawaiian Bank ("FHB") on August 5, 2003 as embodied in Ex. "M" attached to the Complaint. Id. ¶¶ 19, 28, Ex. "M".

Plaintiffs' claim for intentional misrepresentation is founded upon HSBC's alleged agreement to accept replacement financing for Plaintiffs' loan and HSBC's alleged refusal to accept financing from FHB after it was previously obtained by Plaintiffs.

Attached as Ex. "M" to Plaintiffs' Complaint is the purported bank commitment to provide alternative financing which provides that "[t]his letter shall **not** be construed as **commitment** on the part of the Bank and is only provided for indication purposes only. A commitment, **should one be issued** shall be subject to the modification and formal approval from the officers of the Bank, and will be in accordance with the Bank's normal underwriting standards." See, first ¶ of Ex. "M" attached to the Complaint (emphasis added).

Letters of commitment, unlike letters of indication, are letters for which a fee is paid, and constitute an option to the applicant to obtain the loan at the specified terms. See, Lowe v.

10

Massachusetts Mutual Life Insurance Co., 54 Cal.App.3d 718, 725-728 (1976); see, also, 9 Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4, p. 9. Under the usual principles of lender liability, "[a] loan commitment is not binding on a lender unless it contains all the material terms of the loan, and either the lender's obligation is unconditional or the state of conditions have been satisfied." See, 9 Miller & Starr, Op. Cit., supra at 28.4, at p. 8, fn. omitted. A review of the purported "alternative financing" letter from First Hawaiian Bank makes it explicitly clear that no enforceable contract to provide "alternative financing" was created by such document.

Since Plaintiffs never obtained a commitment for a loan to pay off the indebtedness with HSBC, as shown by Plaintiffs own documents, Plaintiffs did not comply with the alleged workout agreement. Because Plaintiffs themselves were unable to comply with the conditions precedent in the alleged workout agreement, no cause of action arises against HSBC for intentional misrepresentation based upon HSBC's refusal to accept "alternative financing" since Plaintiffs were unable to obtain such financing. The Second Cause of Action fails to state a claim upon which relief can be granted against HSBC.

### III.

**IN THE ALTERNATIVE, THE SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS OF INTENTIONAL MISREPRESENTATION ARE BASED UPON ALLEGED PROMISES OF FUTURE CONDUCT.**

In their Second Cause of Action, Plaintiffs assert that HSBC is guilty of intentional misrepresentation because it allegedly promised to give Plaintiffs a "hairline discount" when and if the loan was paid in full. Complaint at ¶ 32. Further, Plaintiffs assert that HSBC offered to "work out" their loan if mortgaged properties were listed with a broker and sold with the net proceeds to go to HSBC, the properties were deeded to HSBC in lieu of foreclosure at negotiated

values, and/or Plaintiffs were to obtain replacement financing with another bank to pay off the loan with HSBC. Complaint at ¶ 27, Ex. "G", ¶ 33. Finally, Plaintiffs allege that HSBC intentionally misrepresented that it was "interested in pursuing a commercially reasonable work out" even though it had no intention to do so. Id. at ¶ 36. However, Plaintiffs fail to allege any facts in support of their allegation that HSBC did not intend to "work out" the loan.[4]

As shown above, all of Plaintiffs allegations in support of their claim of intentional misrepresentation are based upon purported promises of HSBC relating to future conduct. The Second Cause of Action does not allege that HSBC intentionally misrepresented any present or preexisting fact. For this reason alone, in the alternative, the Second Cause of Action fails to state a viable claim of intentional misrepresentation and must be dismissed.

It is a general rule that fraud cannot be predicated upon statements that are promissory in their nature at the time they are made and that relate to future actions or conduct. 37 Am. Jur. 2d - *Fraud and Deceit* § 82 (2001); see also, First Security Bank of Beaver of Oklahoma v. Taylor, 964 F.2d 1053, 1059 (10th Cir. 1992). A claim of fraud cannot be based upon the mere nonperformance of a promise or contractual obligation or upon failure to fulfill an agreement at a future time. Id.

One of the common elements of an action for fraud, intentional misrepresentation, and negligent misrepresentation is the misrepresentation of a "past or existing material fact". Hemlani v. Flaherty, 2003 Guam 17, ¶ 9; 37 Am. Jur. 2d - *Fraud and Deceit* § 80 (2001). A complainant must plead and prove that a misrepresentation of a past or present fact has occurred. Hemlani v. Flaherty, supra; Conrad v. Bank of America, 53 Cal. Rptr. 2d 336, 351 (1996) (in

---

[4]    Circumstances constituting fraud must be pleaded with particularity. *Fed. R. Civ. P. 9(b)*. A defrauded party must allege specific facts showing that the promisor intended not to honor his obligations at the time the promise was made. *National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 664 (S.D.N.Y. 1991). Since Plaintiffs have not alleged any facts supporting their claim that HSBC did not intend to "work out" the loan, the Second Cause of Action should also be dismissed for failing to comply with Rule 9(b).

order to establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of fraud); Glidden Co. v. Janderoa, 5 F. Supp. 2d 541, 552 (W.D. Mich. 1998) (an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact).

Reasons given for the rule not permitting fraud to be based upon promises of future conduct which are unkept are that a mere promise to perform an act in the future is not, in a legal sense, a representation or statement of existing or past fact, and that a mere failure to perform it does not change its character. 37 Am. Jur. 2d - *Fraud and Deceit* § 84 (2001). Just as importantly, a representation that something will be done in the future, or a promise to do it, cannot, from its nature, be true or false at the time when it is made. Id. The failure to make good on such a promise is merely a breach of contract, which must be remedied by an action on the contract, if at all. Id.

To allow otherwise would permit complainants in any breach of contract action to additionally claim fraud against the breaching party. However, representations about future events that are promissory in nature are insufficient to establish a claim of fraudulent misrepresentation. Glidden Co. v. Janderoa, supra, at 552; National Westminster Bank, U.S.A., supra, at 664 (a party may not establish fraudulent intent solely from the "non-performance of the future event").

As discussed above, all of the alleged misrepresentations of HSBC in the Second Cause of Action relate to promises of future conduct on the part of HSBC which HSBC failed to later perform, namely, HSBC's refusal to give a "hairline discount" when the loan was paid off (which it never was) and HSBC's unwillingness to "work out" the loan even after Plaintiffs allegedly obtained refinancing from FHB (which they actually never did). Since Plaintiffs have

13

failed to plead misrepresentation by HSBC of past or current facts, which is an element of intentional misrepresentation, they have not stated a viable claim for relief against HSBC. The Second Cause of Action must be dismissed on this alternative ground.

IV.

## THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs' Third Cause of Action, entitled "Breach of Contract-Promissory Note Modification", apparently claims that HSBC breached a Promissory Note Modification Agreement ("Agreement") which is attached to the Complaint as Ex. "C". Specifically, Plaintiffs allege that since neither the Agreement nor any other unspecified "Loan agreements" precisely authorize the sale of the subject loan, then the sale of the loan by HSBC to Paradise Marine Corporation ("PMC") breached its "Loan agreement" with Plaintiffs. Complaint at ¶ 42. Additionally, Plaintiffs argue that HSBC somehow breached the Agreement because it failed to "review the Note every six months". Id. at ¶ 41. However, Plaintiffs fail to allege when HSBC failed to accomplish any such review or what action HSBC failed to take in order to accomplish the review. Unfortunately for Plaintiffs, the Third Cause of Action fails to state a claim against HSBC upon which relief may be granted and must be dismissed.

It is axiomatic that a promissory note which evidences a loan is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note and various loan agreements, including the Agreement, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. Restatement (Second) of Contracts § 317(2) (1981). Even more

14

importantly, Guam law specifically provides that a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 G.C.A. § 81102. Moreover, Guam law provides that even nonnegotiable instruments, including written contracts for the repayment of money, may be transferred just as if they were negotiable instruments. Id. at § 81103.

The Complaint does not claim that the subject promissory note or the Agreement prohibited sale or assignment by HSBC to PMC and Plaintiffs have failed to cite to any statute that forbids such sale. Instead, Plaintiffs assert, in conclusory fashion, that when HSBC sold the subject loan to PMC it "breached its Loan agreement with Plaintiffs". Complaint at ¶ 42.

The Third Cause of Action fails to state a cause of action against HSBC upon which relief can be granted because it has no legal basis. As shown above, the subject promissory note and loan were negotiable instruments which were freely assignable under Guam law by HSBC to PMC. Plaintiffs have not, and cannot, allege that the note or loan agreements contained any limitations on HSBC's right to sell and assign the loan and Plaintiffs have cited no statute which prevents HSBC from selling or assigning the note and loan. HSBC had the legal right to sell the subject promissory note and loan and no cause of action for breach of the Agreement exists.

There is ample reason why no such restrictions exist. If the law were as the Plaintiffs have alleged in the Third Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae'), would be virtually impossible.

Finally, Plaintiffs' argument that HSBC somehow breached the Agreement by failing to "review the note every six months" is nothing more than a "red herring". As shown by Ex. "C" to the Complaint, in the Agreement signed March 5, 2003, HSBC granted an extension to Plaintiffs of the maturity date of the note to August 31, 2003. According to the unambiguous terms of the Agreement, HSBC had the option, and not the duty, to review the note every six months and HSBC specifically reserved to itself "the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid." Instead of calling for full repayment of the note, as HSBC had the right to do under the Agreement, HSBC sold the note to PMC on or about August 11, 2003, approximately six months after the Agreement was signed. By the terms of the Agreement, HSBC owed no duty to Plaintiffs to "review" the note, especially in light of HSBC's right to unilaterally call for full repayment of the Note on August 31, 2003.

The Third Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

## V.

**PLAINTIFFS' FAILURE TO FULFILL THE EXPRESS CONDITIONS PRECEDENT CONTAINED IN THE PURPORTED WORKOUT AGREEMENT TERMINATES HSBC'S OBLIGATION TO PERFORM UNDER SAID AGREEMENT.**

Plaintiffs allege that the parties entered into a workout agreement when HSBC offered the proposals to engage in a loan workout and Plaintiffs' acceptance of such proposals by listing ". . . certain properties for sale with Century 21 Realty Management and Plaintiffs obtained terms and conditions for alternative financing from First Hawaiian Bank for alternative financing." See, ¶ 45 of Plaintiffs' Complaint. Plaintiffs further allege that it fulfilled the

16

conditions precedent and that HSBC subsequently failed to perform and, thusly, breached the workout agreement. See, ¶ 46 of Plaintiffs' Complaint.

18 G.C.A. § 80403 provides that "[a] condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Moreover, 18 G.C.A. § 80406 provides, in part, that "[b]efore any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself . . . ." In the instant case, Plaintiffs failed to fulfill the first condition precedent which was to list the properties with an appropriate broker in order to find buyers to purchase the properties so as to reduce its debt with HSBC. In paragraph 13 of their Complaint, Plaintiffs' acknowledged that they ". . . sought the services of Century 21 to find buyers for the properties subject to the Defendant Bank mortgage." See, ¶ 13 of Plaintiffs' Complaint. In a letter dated April 3, 2003, the President of Century 21 Realty Management forwarded a letter to Mr. Sadhwani a letter which is devoid of any commitment by any prospective purchaser to purchase Plaintiffs' properties. See, Ex. "H" to Plaintiffs' Complaint. In particular, paragraph 2 of that letter provides:

> "On the selling side I have shown the buildings to an investment group from Korea, and Mr. and Mrs. Fang. The Korean group have left island and plan to return mid-April with their decision. It is my understanding they are an electronic firm who have sold some property here on Guam and are trying to invest it to income producing property. The Fangs are also interested in doing a 1031 type exchange to income producing properties here in Guam. I have not heard from them in awhile but I will contact them this week to see if there is an interest in their making an offer."

See, ¶ 2 of Ex. "H" to the Complaint. Nothing in the aforementioned language indicates that there was any contract of sale executed for the sale of Plaintiffs' properties. These parties were

17

merely prospective interested buyers. Thus, Plaintiffs failed to fulfill a condition precedent to sell the properties.

As it relates to the second condition precedent, i.e., the "alternative financing" commitment from First Hawaiian Bank, as discussed on page 10 of this Memorandum, Ex. "M" attached to the Complaint does not amount to a commitment. It was not a binding commitment by First Hawaiian Bank to provide "alternative financing" to Plaintiffs. Letters of commitment, unlike letters of indication, are letters for which a fee is paid, and constitute an option to the applicant to obtain the loan at the specified terms. See, Lowe, supra, at p. 725-728. Examining the four corners of Ex. "M" attached to the Complaint, it is explicitly clear that First Hawaiian Bank was never committed to provide such alternative financing and, thus, the second condition precedent was not fulfilled by Plaintiffs. Thus, HSBC's performance under the workout agreement was excused.

Notwithstanding the foregoing, HSBC's loan is freely assignable unless the assignment is precluded by the contract itself or forbidden by the statute. See, Restatement Second of Contracts 2d, § 317(2) (1981). Moreover, promissory notes are negotiable instruments under Guam law. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at § 3201, 3202. Thus, the Fourth Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

/ / /

/ / /

/ / /

18

**VI.**

**AS A MATTER OF LAW, PLAINTIFFS FIFTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS BARRED SINCE THE RELATIONSHIP BETWEEN HSBC AND KSI, WAS THAT OF A DEBTOR AND CREDITOR AND WITH ALAN AND LAJU SADHWANI WAS THAT OF GUARANTORS.**

Plaintiffs allege that "[b]ecause of the longstanding, close and confidential relationship between Defendant Bank and Plaintiffs, and by virtue of the trust and confidence which Defendant Bank encouraged Plaintiffs to place in the bank and which Plaintiffs did place in the bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable workout, Defendant Bank owed to Plaintiffs a duty of fiduciary care." See, ¶ 49 of the Complaint.

KSI was a borrower of HSBC and a relationship between a lender and a borrower is described as that of a debtor and a creditor, not a fiduciary. See, Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2nd Cir. 1984); Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982); Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989); Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927, 262 Cal.Rptr. 260, 278 (1989); Idaho First Nat. Bank v. David Steed & Associates, Inc., 121 Idaho 356, 825 P.2d 79 (1992); Dugan v. First Nat. Bank in Wichita, 227 Kan. 201, 606 P.2d 1009 (1980); Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194, N.W.2d 910 (1991); Klein v. First Edina Nat. Bank, 293 Minn. 418, 196 N.W.2d 619 (1972); Union State Bank v. Woell, 434 N.W.2d 712, (ND 1989); Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n, 786 S.W.2d 386, 391 (Tex.App. 1991); First Security Bank of Utah v. Banberry Development Corp., 786 P.2d 1326, 1332 (Utah 1990);

Tokarz v. Frontier Federal Savings & Loan Ass'n, 33 Wash.App. 456, 656 P.2d 1089 (1982); Lachenmaier v. First Bank Systems, Inc., 803 P.2d 614 (Mont. 1990); Comment, The Fiduciary Controversy: *Injection of Fiduciary Principles Into the Bank-Depositor and Bank-Borrower Relationships*, 20 Loyola L. Rev. 795, 803-804 (1987).

The principle enunciated above applies with equal force to the relationship between a lender and any guarantors of the borrower's loans. See, Manufacturers Hanover Trust Co., v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993); Bohm v. Union Bank of Tennessee, 794 F.Supp. 158, 161 (WD Pa. 1992); Saglio v. Chrysler First Commercial Corp., 839 F.Supp. 830, 833 (MD Fla. 1993); NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997); Continental Bank N.A. v. Everett, 760 F.Supp. 713, 717 (ND Ill 1991). Even as a depositor, it has long been held as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." Morse v. Crocker Nat. Bank, 142 Cal. App.3d 228, 232 (1983).

To be sure, borrowers and depositors expect banks to handle their loans and accounts properly. It is equally true that we expect car mechanics to repair our cars properly, and Payless Supermarkets to sell us untainted wholesome food. Most, if not all, consumer and commercial transactions are founded on some degree of trust in the other party; else why contract at all? One would simply be buying in a lawsuit. The expectation that the other party will perform his promise and the dependence of his doing so do not distinguish the lender-borrower and bank-depositor relationship from any contractual relationship. Unless the car mechanics and Payless Supermarkets are to be treated as fiduciaries, that common expectation and dependence cannot suffice to create the kind of quasi-fiduciary relationship which would justify the imposition of such duty or the extension of the tort of bad faith either. In short, no more trust is reposed in the

20

bank than in other ordinary parties to contractual relationships. The borrower or depositor is not especially vulnerable, unlike in the trustee or attorney-client context.

> **A.** **Although under certain special circumstances a lender may be elevated to a fiduciary relationship, the Complaint is devoid of any facts delineating how the relationship of trust and confidence arose or any other special circumstances that would establish a fiduciary relationship.**

HSBC concedes that under certain special circumstances, a lender may be elevated to a fiduciary relationship, however such facts are not alleged in the Complaint which means such circumstances did not exist in the relationship with HSBC. This may occur when a debtor is in control of a debtor[5] or where the lender has given extensive business advice to a customer who relies on that advice.

For example, in Credit Managers Assn. v. Superior Court, the court found a fiduciary relationship, where (1) the borrower, against its will, was compelled to employ an agent of the Bank as a business consultant and (2) the borrower was compelled to surrender to the business consultant complete management control to such extent that the agent was to able to overrule and supplant the board of directors and shareholders. 51 Cal.App.3d 352, 359-60 (1975). The Rutherford v. Rideout Bank, case illustrates a situation where the bank has given extensive advice to its customer who has completely relied on it. The court found a fiduciary relationship where (1) the borrower was a widow who was unfamiliar with finance; (2) the borrower

---

[5] Pepper v. Litton, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939); Taylor v. Standard Gas & Electric Co., 306 US 307, 83 L Ed 669, 59 S Ct. 543 (1939); In re EMB Associate Inc., 18 BCD 617, 92 BR 9, 15 (BC RI 1988); In re Teltronics Services, Inc., 29 BR 139, 171 (BC ED NY 1983) ("non-insider creditor will be held to a fiduciary standard only where his ability to command the debtor's obedience to his policy directives is so overwhelming that there has been, to some extent, a merger of identity"); In re Vietri Homes, Inc., 58 BR 663 (BC Del 1986) (construction lender deemed to be fiduciary to other creditors); In re Sleepy Valley, Inc., 93 BR 925, 932-933 (BC WD Tex 1988); In re American Lumber Co., 5 BR 470, 477-478 (DC Minn. 1980); In re N&D Properties, Inc., 799 F.2d 726 (11th Cir. 1986); Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927, 262 Cal.Rptr. 260 (1989); Garrett v. BankWest, Inc., 459 NW2d 833, 838 (SD 1990) (entering into workout agreement concerning repayment of loan did not place lender in "control" of borrower; bank was entitled to repayment and could impose such conditions to loan as any other secured creditor would want without such actions creating fiduciary relationship with debtor.

21

constantly and continually consulted with the bank in the management of her finances; and (3) the borrower relied wholly and exclusively on the bank for all financial matters and reposed complete trust and confidence in the bank regarding such matters. 11 Cal.2d 479, 481 (1938). However, the mere rendering of advice by the lender to a borrowers even if given in a sincere effort to help the borrower prosper, does not transform a business relationship into a fiduciary relationship. See, Union State Bank, supra, at p. 721.

Many courts have been reluctant to find that the mere existence of a relationship of trust and confidence, in and of itself, requires a finding that a lender is under a fiduciary duty to the borrower. See, e.g.: Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); In re Letterman Bros. Energy Securities Litigation, 799 F.2d 967 (5th Cir. 1986); In re Rexplore, Inc. Securities Litigation, 685 F.Supp. 1132 (ND Cal. 1988); Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986); Stenberg v. Northwestern Nat. Bank of Rochester, 307 Minn. 487, 238 N.W.2d 218 (1976); Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990).

No allegations have been made that HSBC was involved in actual day-to-day involvement in the management and operations of KSI or that HSBC had the power to compel KSI or its Guarantors to engage in unusual transactions which would give the requisite control by HSBC over KSI or its Guarantors. See, Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989).

As the Third Circuit stated in the Paradise Hotel Corp. case, it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table," given the parties essentially adversarial positions, supra, at p. 53 quoting Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982).

22

**B.** **Even assuming, *arguendo*, that Plaintiffs could prove that they were unsophisticated and trusted HSBC as a result of such a long relationship, a cause of action for breach of a fiduciary duty cannot be established as a matter of law.**

In Mans v. Peoples Bank of Imboden, the Supreme Court of Arkansas held that no fiduciary relationship is created merely because a customer trusts the bank to do some action and, likewise, the fact that the customer was unsophisticated or had been a bank customer for 23 years is also insufficient by itself to establish that a fiduciary relationship existed. Id. 10 S.W.3d 885, 889-890 (Ark. 2000); see also, Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993)(mere fact that a corporation has been a borrower from the same bank for many years is insufficient to transform the relationship into one which the bank is a fiduciary). Moreover, a fiduciary duty cannot be imposed unilaterally. See, Travel Services Network, Inc. v. Presidential Financial Corp. of MA, 959 F. Supp 135, 144 (D. Conn. 1997).

Based on the facts before this court, Plaintiffs complaint is utterly lacking of any facts so as to render Plaintiffs the marionette and HSBC the puppeteer. The facts of the instant case lack any circumstances transcending other than an ordinary lender-borrower relationship.

## VII.

**THE SIXTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.**

The Plaintiffs admit that they were advised by HSBC at least as early as February 17, 2003, that the bank would be ceasing operations on Guam, leaving island, that Plaintiffs promissory note would not be renewed or extended beyond August 31, 2003, and that full payment would be required on that date. Complaint at ¶ 7, Ex. "B". The Plaintiffs allege that

23

HSBC sold the subject promissory note and assigned the instruments securing the repayment of the note to Paradise Marine Corporation ("PMC") on August 11, 2003. Id. at ¶ 20.

In support of their Sixth Cause of Action, titled "Breach of Banking and Confidentiality Laws", Plaintiffs allege that certain unidentified "laws, rules and regulations" relating to confidentiality of customer "accounts and transactions" pertain to HSBC. Id. at ¶ 54. Plaintiffs assert that the sale of the promissory note to PMC "constitutes a breach of banking and confidentiality laws" by HSBC. Id. at ¶ 57. The Complaint does not claim that Plaintiffs have in any way been damaged by HSBC's alleged breach of such laws. For the reasons stated herein, the Sixth Cause of Action fails to state a cause of action against HSBC upon which relief can be granted.

It is axiomatic that a promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. Restatement (Second) of Contracts § 317(2) (1981). The Complaint does not claim that the subject promissory note prohibited sale or assignment by HSBC and Plaintiffs have failed to cite to any statute that forbids such sale. Instead, Plaintiffs assert, in conclusory fashion, that the sale and assignment of the promissory note to PMC "constitutes a breach of banking and confidentiality laws" by HSBC, even no such laws are cited by Plaintiffs. Complaint at ¶ 57.

The Sixth Cause of Action fails to state a claim against HSBC upon which relief can be granted because it has no legal basis. As shown above, the subject promissory note was a negotiable instrument which was freely assignable by HSBC to PMC. Plaintiffs have not, and

24

cannot, allege that the note contained any limitations on HSBC's right to sell and assign it and Plaintiffs have cited no law which prevents HSBC from selling or assigning the note. HSBC had the legal right to sell the subject promissory note and no cause of action for breach of alleged "confidentiality" arises.

There is ample reason why no such restrictions exist. If the law were as the Plaintiffs have alleged in the Sixth Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae'), would be virtually impossible.

Finally, Plaintiffs have failed to allege any damages from HSBC's alleged breach of "confidentiality". Without damages, Plaintiffs have no cause of action. The Sixth Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

*Respectfully submitted* on this __30__ day of December 2003.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By:_____
**JACQUES G. BRONZE**
*Attorneys for Defendant*
*Hongkong and Shanghai Banking*
*Corporation, Ltd.*

25

## CERTIFICATE OF SERVICE

I, **JACQUES G. BRONZE**, do hereby certify that I have caused a copy of Defendant

Hongkong and Shanghai Banking Corporation, Ltd.'s Memorandum of Points and Authorities in

Support of Motion to Dismiss to be personally served upon the following:

Joaquin C. Arriola, Esq.
Anita P. Arriola, Esq.
**ARRIOLA, COWAN & ARRIOLA**
Suite 201, C&A Professional Bldg.
259 Martyr Street
Hagåtña, Guam 96910

*Attorneys for Plaintiffs*

**EXECUTED** this ___30___ day of December 2003.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By:_____
　　**JACQUES G. BRONZE**
　　*Attorneys for Defendant*
　　*Hongkong and Shanghai Banking*
　　*Corporation, Ltd.*

26