FILED
DISTRICT COURT OF GUAM
JAN 1 6 2004
MARY L. M. MORAN
CLERK OF COURT

**JOAQUIN C. ARRIOLA**
**ANITA P. ARRIOLA**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

Counsel for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES

## DISTRICT COURT OF GUAM

| | |
|---|---|
| **ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,** <br> **Plaintiffs,** <br><br> **vs.** <br><br> **HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,** <br> **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL CASE NO. 03-00036

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HONGKONG AND SHANGHAI BANKING CORPORATION LTD.'S MOTION TO DISMISS**

# ORIGINAL

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      GUAM LAW RECOGNIZES THE TORT OF BREACH OF THE COVENANT GOOD FAITH AND FAIR DEALING; PLAINTIFFS' ALLEGATIONS FULLY ESTABLISH A VALID CLAIM FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.     PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    III.    PLAINTIFFS SUFFICIENTLY ALLEGE CAUSES OF ACTION FOR BREACH OF CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.     Plaintiffs' Loan Was Sold In Violation of the Workout Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.     Plaintiffs Establish Valid Claims that HSBC Breached the Terms of the Workout Agreement. . . . . . . . . . . . . . . . . . . . . . . . . 12

    IV.    PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    V.    PLAINTIFFS' ALLEGATIONS IN SUPPORT OF BREACH OF BANKING AND CONFIDENTIALITY LAWS ADEQUATELY ESTABLISHES A VALID CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

# TABLE OF AUTHORITIES

## CASES

Cabo Distributing Co., Inc. v. Brady, 821 F. Supp. 601 (N.D. Cal. 1992) . . . . . . . . . . . . . . . . . 19

Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, Tenn.,
706 F.2d 638, 641 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

Ada's Inc., et al. v. First Hawaiian Bank, et al., Civil Case No. CV0785-02 . . . . . . . . . . . . . . . 3

Barbara A. v. John G., 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422,
431-432 (Cal. Ct. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 17

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Conrad v. Bank of America, 45 Cal.App.4th 133, 53 Cal.Rptr. 2d 336 (1996) . . . . . . . . . . . 9, 10

Davis v. Scherer, 468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DeJoy v. Comcast Cable Communications, Inc., 941 F. Supp. 468 (D.N.J. 1996) . . . . . . . . . . 14

Espinoza v. Fry's Food Stores of Arizona, Inc., 806 F. Supp. 855 (D. Ariz. 1990) . . . . . . . . . . 18

Figueroa v. U.S., 7 F.3d 1405 (9th Cir. 1993), cert. denied, 511 U.S. 1030 (1993) . . . . . . . . . . 19

First Security Bank of Beaver of Oklahoma v. Taylor, 964 F.2d 1053
(10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Foman v. Davis, 371 U.S. 178, 182 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Garita Hotel Ltd. Partnership v. Ponce Federal Bank,
F.S.B., 958 F.2d 15 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gayle v. Hemlani, 2000 Guam 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hemlani v. Flaherty, et al., 2003 Guam 17 (Supreme Court 2003) . . . . . . . . . . . . . . . . . . . . . . . 8

Hotel Constructors, Inc. v. Seagrave Corp., 574 F. Supp. 384, 387
(S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Illinois Constructors Corp. v. Morency & Associates, Inc., 802 F. Supp. 185
(N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

In re Letterman Bros. Entergy Securities Litigation, 799 F.2d 967, 975
(5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Rexplore, 685 F.Supp. 1132, 1140 (D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

In re Wells Fargo Sec. Litigation, 12 F.3d 922, 925 (9t Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 2

Industrial General Corp. v. Sequoia Pacific Systems Corp., supra.;
Travel Services Network, Inc. v. Presidential Financial Corp. of Mass.,
959 F. Supp 135, 144 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

La Porte County Republican Cent. Committee v. Board of Commissioners
of County of La Porte, 43 F.3d 1126 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lowe v. Mass. Mutual Life Ins. Co., 54 Cal.App.3d 725, 127 Cal.Rptr. 23 (1976) . . . . . . . . . . 9

National Westminster Bank, U.S.A. v. Yaeger, 130 B.R. 656 (S.D.N.Y. 1991) . . . . . . . . . . . . 10

Official Publications, Inc. v. Kable News Co., Inc., 775 F.Supp. 631,
639 (D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pension Trust Fund for Operating Engineers v. Federal Ins. Co.,
307 F.3d 944, 955 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Scott v. Dimes Savings Bank of New York, 866 F.Supp 1073, 1078 (D.N.Y. 1995) . . . . . . . . . 16

The Glidden Company v. Jandernoa, 5 F.Supp.2d 541, 551 (W.D. Mich. 1998) . . . . . . . . . . . . 9

Transpacific Export Co. v. Oka Towers Corp., 2000 Guam 3 (Supreme Court 2000) . . . . . . . . 8

Travel Services Network, Inc. v. Presidential Financial Corp. of Mass.,
959 F. Supp 135, 144 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Walsh v. McGee, 918 F. Supp. 107 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Williamson v. General Dynamics Corp., 208 F.3d 1144, 1156 (9th Cir. 2000) . . . . . . . . . . . . . 10

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

# INTRODUCTION

Plaintiffs Alan Sadhwani, Laju Sadhwani, and K. Sadhwani's Inc. filed this lawsuit against defendant Hongkong & Shanghai Banking Corporation, Ltd. ("HSBC") for breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of contract; breach of fiduciary duty; and breach of confidentiality and banking laws. Plaintiffs were long-time customers of HSBC for approximately twenty-five years; they are in the business of acquiring real properties and developing them, as well as leasing real properties, including offices and other commercial buildings, and selling electronics, fixtures and appliances. Plaintiffs banked exclusively with HSBC, which lent funds to plaintiffs, took plaintiffs' mortgages, security instruments and other evidences of indebtedness, and accepted all of plaintiffs' deposits. Plaintiffs deposited about $100 million with HSBC during their twenty-five year relationship. As borrowers, plaintiffs have paid HSBC thousands of dollars in interest and fees. By virtue of this long relationship, plaintiffs placed explicit faith, trust, and confidence in HSBC, trusting that HSBC and its officers and employees would deal fairly and honestly with them.

In September 2002, plaintiffs had an outstanding loan balance of over $6.8 million with HSBC ("the Loan"). Apparently because it was not making sufficient profits on Guam to satisfy its management in Hong Kong, HSBC decided to abandon its operations in Guam. HSBC subsequently began to place undue pressure on plaintiffs to pay off their Loan. On March 5, 2003 the parties entered into a Promissory Note Modification Agreement which extended the maturity date of the Note to August 31, 2003. (Exh. C to Complaint) On March 21, 2003, HSBC and plaintiffs entered into a workout agreement to pay off plaintiffs' Loan, where plaintiffs would either sell their properties or obtain alternate financing. (Exhs G and H to Complaint) Relying upon this workout agreement and HSBC's representations, plaintiffs took all necessary steps to either sell their

1

properties or try to obtain alternate financing from March 2003 through August 2003. It came as a total surprise to plaintiffs to receive from HSBC, in July 2003, HSBC's notice of intent to sell their Loan. Yet even during July 2003, HSBC represented that so long as plaintiffs obtained alternate financing HSBC would try to stop sale of the Loan.

As plaintiffs came to discover only recently, HSBC never intended to work out plaintiffs' Loan, as it sold plaintiffs' Loan to Paradise Marine Corporation ("PMC") on June 25, 2003. HSBC lied to plaintiffs about intending to perform on the workout agreement. HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the securing real properties and obtain alternate financing. And HSBC lied about its agreement to try to stop the sale of the Loan if plaintiffs obtained alternate financing. HSBC never had any intention of keeping any of its promises. Based on the heavy burden imposed on HSBC to support its motion to dismiss, and its failure to meet that burden, the Court should deny HSBC's motion to dismiss in its entirety.

## ARGUMENT

"[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *E.g.*, In re Wells Fargo Sec. Litigation, 12 F.3d 922, 925 (9t Cir. 1993). The Court's role at this stage is not to evaluate the strengths or weaknesses of claims. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test"), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984).

HSBC studiously avoids discussion of this strict and settled standard and further ignores most of the factual allegations of the complaint, asking this Court to rule that the plaintiffs could not

2

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

ultimately establish their claims. But the only question before this Court is whether the factual allegations of the complaint and reasonable inferences therefrom, taken as true, could establish valid claims. They do.

## I.    GUAM LAW RECOGNIZES THE TORT OF BREACH OF THE COVENANT GOOD FAITH AND FAIR DEALING; PLAINTIFFS' ALLEGATIONS FULLY ESTABLISH A VALID CLAIM FOR RELIEF.

Plaintiffs agree with HSBC that a federal court sitting in diversity must apply the substantive law of the state whose law governs the action. (HSBC Memo. at 1) However, HSBC is remiss in claiming that this is "an issue of first impression in Guam courts." In Ada's Inc., et al. v. First Hawaiian Bank, et al., Civil Case No. CV0785-02, Decision and Order dated July 7, 2003, the Superior Court of Guam squarely addressed the issue of whether a cause of action for tortious breach of the covenant of good faith and fair dealing may be asserted against a bank and answered that question in the affirmative. (A copy of the decision is attached as Exhibit 1) Accordingly, the plethora of authorities cited by HSBC involving insurance cases and other state caselaw, (HSBC Memo. at 7-9), is irrelevant. Indeed, in the Ada's Inc. case, the Superior Court discussed several of the same cases cited by HSBC, yet concluded that plaintiffs should be allowed to pursue the tort of breach of the covenant of good faith and fair dealing in Guam.

The facts of the Ada's Inc. case are quite similar to this case. There, the plaintiffs, customers of First Hawaiian Bank ("FHB"), filed a complaint seeking, *inter alia*, damages for breach of the covenant of good faith and breach of contract. Like HSBC here, FHB filed a motion to dismiss, arguing that when a duty is breached in a commercial contract the resulting claim is merely a breach of contract claim and no tort damages are available. Decision at 5. The Superior Court, per the Honorable Joaquin V.E. Manibusan, Jr., noted that "[t]he concept of a bad faith action within

3

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

the context of a breach of a commercial contract in the banking area is relatively new and changing. Courts are beginning to see that such actions are plausible in the context of certain pleadings." Id. at 9. Canvassing numerous state court decisions, the Court concluded that ". . . there is a general rule of law which requires banks to adhere to an implied duty of good faith and fair dealing in relationship with and toward its customers." Id. at 10. Denying FHB's motion to dismiss, the Court held:

> A bank's failure to adhere to this implied duty [of good faith and fair dealing] should not bar a bad faith action merely because there is a remedy in a breach of contract action.... Plaintiffs must allege some act of dishonesty by the bank and allege that the bank acted outside accepted commercial practices. When Plaintiffs do make such allegations, an appropriate cause of action is raised by the Plaintiffs.

Decision at 11.

In this case, plaintiffs allege numerous facts establishing acts of dishonesty by the bank and that the bank acted outside accepted commercial practices. Yet HSBC addresses only two allegations made by plaintiffs in their Complaint: HSBC's refusal to consider the listing of certain properties for sale with Century 21 and its refusal to accept alternate financing from First Hawaiian Bank. HSBC ignores all of the other critical allegations, which together constitute a series of bad faith actions by HSBC.

At the February 13, 2003 meeting between HSBC representatives and Mr. Sadhwani, HSBC informed Mr. Sadhwani that HSBC was leaving Guam and, apparently under pressure to close out its loans on Guam, "encouraged" Mr. Sadwani to take steps to repay the loan. (Exh. B to Complaint) At that meeting, Mr. Sadhwani informed HSBC that he had listed the securing real properties for sale with Century 21.

/ / /

4

On March 5, 2003, Mr. Sadhwani met with HSBC representatives again. Regarding the sale of properties by Century 21, Mr. Sadhwani agreed to allow HSBC to contact Century 21 directly to discuss progress in finding buyers. (Exh. B to Complaint) At the same time that HSBC was urging Mr. Sadhwani to repay the Loan, HSBC also stated that it was prepared to consider a discount on the loan balance if Mr. Sadhwani agreed to a "friendly foreclosure." (Id.; Exh. E to Complaint)

By letter dated March 21, 2003, HSBC offered three proposals to work out the Loan: Plaintiffs could sell the mortgaged properties; plaintiffs could execute deeds in lieu of foreclosure at "negotiated values;" or plaintiffs could refinance the Loan. Additionally, HSBC assured plaintiffs that " . . . the Bank is ready, able and willing to assist . . . " plaintiffs in their " . . . negotiation of replacement financing." (Exh. G to Complaint) Plaintiffs accepted HSBC's first and third proposals. (Complaint, ¶ 13, Exhs. G and J) Pursuant to this workout agreement with HSBC, plaintiffs secured the services of Century 21, to find buyers for the properties subject to the HSBC mortgages. Century 21's employment by plaintiffs is confirmed in a letter reporting the progress of Century 21's efforts to sell the properties.[1] (Exh. H to Complaint)

It therefore came as a total surprise to plaintiffs to receive HSBC's "Notice of Intent to Sell Loan" on July 18, 2003. (Exh. K to Complaint) On July 22, 2003, Mr. Sadhwani met with HSBC's Mr. Underwood. (Complaint, ¶ 17) Mr. Sadhwani pleaded not to sell the Loan. Id. Mr. Sadhwani offered to pay $3 million for the Loan, but was refused. Id. Mr. Sadhwani then offered to pay $3.5

---

[1] In order to deflect attention from its actions, HSBC disingenuously claims that plaintiffs failed to provide a plan as required by the bank. (HSBC Memo. at 3-4) But the facts show that Mr. Sadhwani met with HSBC representatives and discussed his plans to repay the Loan, (Exhs. B and D to Complaint) and he advised HSBC in writing of his efforts to repay the Loan. (Exhs. H and J to Complaint) HSBC also complains that plaintiffs did not have a listing agreement with Century 21 and that HSBC be provided with copies of any listing agreements from Century 21. (HSBC Memo. at 4) Century 21 reported on its efforts to sell the properties, and this report was forwarded to HSBC. (Exh. H to Complaint).

5

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

million and Mr. Underwood replied, "Get me the money or guarantee, and I will try to stop the sale." Id.

On July 31, 2003, Mr. Sadhwani confirmed the agreement with Mr. Underwood: "You gave me until today to propose a repayment plan for the loans with you." (Exh. L to Complaint) Mr. Sadhwani met with Mr. Underwood again and pleaded not to sell the Loan. Mr. Sadhwani was assured by Mr. Underwood that if HSBC received an offer (i.e., money or bank letter) by August 8, Mr. Underwood said, "I will see what I can do." (Complaint, ¶ 18) Mr. Sadhwani obtained terms and conditions for alternate financing from First Hawaiian Bank on August 5, 2003, which he transmitted to HSBC on the same day. (Complaint, ¶ 19) Despite Mr. Underwood's agreement to stop the sale of the Loan if Mr. Sadhwani obtained a bank letter for alternate financing, HSBC sent a letter on August 11, 2003 gleefully informing Mr. Sadhwani that the Loan was sold to PMC. (Exh. O to Complaint)

Accepting these allegations as true, HSBC committed acts of dishonesty, which are outside accepted commercial practices: HSBC lied to plaintiffs about intending to perform on the workout agreement. HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the securing real properties and obtain alternate financing. And HSBC lied about its agreement to try to stop the sale of the Loan if plaintiffs obtained alternate financing. Even after HSBC entered into the agreement to sell plaintiffs' Loan to PMC, HSBC continued to lead Mr. Sadhwani to believe that he could pay off the Loan with HSBC. HSBC never had any intention of cancelling its contract with PMC, and was leading Mr. Sadhwani on a merry goose chase. All of these acts constitute bad faith and plaintiffs have stated an appropriate cause of action for breach of the covenant of good faith and fair dealing.

In addition, as a result of documents discovered by plaintiffs, there exists further support for

6

plaintiffs' claim of bad faith and unfair dealing. The Promissory Note executed by Plaintiffs in favor

of HSBC was endorsed over to PMC as follows:

> PAY TO THE ORDER OF PARADISE MARINE CORPORATION
> WITHOUT RECOURSE, REPRESENTATION OR WARRANTY,
> EXCEPT AS PROVIDED IN THE ***AGREEMENT FOR
> PURCHASE AND SALE OF LOANS DATED ~~AUGUST~~ 25 JUNE
> 2003, BETWEEN THE HONGKONG AND SHANGHAI
> BANKING CORPORATION LIMITED AND PARADISE
> MARINE CORPORATION.***

Exh. 2 to Pltf.'s Memo., (reverse side of Note) (emphasis added)[2]  Plaintiffs now know that HSBC

sold Plaintiffs' loan on June 25, 2003.[3]  The date is significant, because it shows that from March

2003 through July 2003, HSBC representatives continued to induce plaintiffs into believing that a

workout was possible;  HSBC gave notice of intent to the sell loan on July 15, 2003; and HSB

agreed in July 2003 that they would try to stop the sale of the Loan, *when the Loan had already been*

*sold to PMC.*  They simply lied to plaintiffs.  This newly discovered evidence and the additional

theories of recovery in tort which arise from the discovery of this evidence, warrant allowing

plaintiffs to amend their Complaint to provide further support for their claim of breach of the

covenant of good faith and fair dealing. Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend

should be given freely when justice so requires); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)

(dismissal without leave to amend is improper).

---

[2]  The Court may consider the Promissory Note in deciding HSBC's motion to dismiss, since it is referenced
in the Complaint and is a primary basis for plaintiffs' allegations. (Complaint, ¶¶ 6, 8, 22, 38, 39, 46, 50A, 57)  In re
Stacs Elecs. Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996), cert. denied, 520 U.S. 1103 (1997) ("documents whose
contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to
the pleading, may be considered"), quoting Fecht v. The Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995), cert. denied,
517 U.S. 1136 (1996).

[3]  Plaintiffs were unaware of this fact when they filed their complaint, since HSBC refused to disclose any
documents prior to that time and refused to disclose the terms of the loan purchase.

7

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## II. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION.

The tort of intentional misrepresentation has the same elements as fraud. <u>Hemlani v. Flaherty, et al.</u>, 2003 Guam 17 ¶ 9 (Supreme Court 2003). The elements of fraud are: "(1) misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." <u>Hemlani</u>, 2003 Guam 17 ¶ 9, quoting <u>Transpacific Export Co. v. Oka Towers Corp.</u>, 2000 Guam 3 ¶ 23.

Plaintiffs' allegations establish a valid claim for intentional misrepresentation: HSBC represented to plaintiffs that it would give a "hairline discount" on the Loan if plaintiffs paid off the Loan (Complaint, ¶ 32). HSBC also represented to Plaintiffs that it was willing to work out the Loan with plaintiffs and further represented that plaintiffs could resolve their indebtedness by accepting the workout options proposed by HSBC (<u>Id.</u>, ¶ 33, Exh. G) In reliance upon HSBC's representations, plaintiffs were induced to list their properties for sale with Century 21 and to apply for alternative financing with various banks. (<u>Id.</u>, ¶ 34) Had the alternative financing offered by First Hawaiian Bank and obtained by plaintiffs been accepted by HSBC, plaintiffs would have saved thousands of dollars in interest and loan payments and increased costs, and they would not be required to make the loan payments as required by PMC. (<u>Id.</u>, ¶ 35) HSBC intentionally misrepresented that it was interested in pursuing a commercially reasonable work out, when it had no desire or intention to work out the loan. (<u>Id.</u>, ¶ 36). As a result of HSBC's intentional misrepresentations, plaintiffs have suffered damages. (<u>Id.</u>, ¶ 37) Construing these allegations in the light most favorable to plaintiffs, and drawing all reasonable inferences therefrom, plaintiffs have stated a valid cause of action.

In addition, the Promissory Note recently obtained by plaintiffs provides strong support for

8

the claim of intentional misrepresentation. As established in Part I, above, this evidence shows that HSBC had no desire or intention to work out the loan, comply with its obligations under the workout agreement, or try to stop the sale of the Loan. Plaintiffs should be allowed to amend their complaint to add these allegations to their second cause of action. Foman. 371 U.S. at 182; Chang v. Chen, 80 F.3d at 1296.

HSBC contends that because plaintiffs never obtained a commitment for a loan to pay off the indebtedness with HSBC, plaintiffs did not comply with the workout agreement and no cause of action for intentional misrepresentation exists. (HSBC Memo. at 10-11). The only case cited by HSBC in support of this theory is Lowe v. Mass. Mutual Life Ins. Co., 54 Cal.App.3d 725, 127 Cal.Rptr. 23 (1976), which purportedly addresses the difference between a letter of commitment and a letter of indication. Lowe did not involve any claim of intentional misrepresentation. HSBC cites absolutely no authority for the proposition that because plaintiffs did not obtain a commitment letter they are barred from alleging a claim for intentional misrepresentation.

Apparently recognizing the weakness in the above argument, HSBC argues alternatively that plaintiffs' claims for intentional misrepresentation should be dismissed because they are based upon "alleged promises of future conduct," and "nonperformance of a contract." (HSBC Memo. at 11-13) The cases relied upon by HSBC are easily distinguishable. In First Security Bank of Beaver of Oklahoma v. Taylor, 964 F.2d 1053 (10th Cir. 1992), the court held, *after trial*, that nonperformance of a contract gives rise to a cause of action for breach of contract not fraud. Id. at 1059. Similarly, in Conrad v. Bank of America, 45 Cal.App.4th 133, 53 Cal.Rptr. 2d 336 (1996), the court held *after trial* that the debtor failed to prove fraud, as "a claim of fraud cannot be permitted to serve simply as an alternative cause of action whenever an enforceable contract is not formed." 45 Cal.App.4th at 157. In The Glidden Company v. Jandernoa, 5 F.Supp.2d 541, 551 (W.D. Mich. 1998), the court

9

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

granted *summary judgment* for the bank on the basis that the plaintiff's allegation of fraud was not supported by any evidence in the record. In <u>National Westminster Bank, U.S.A. v. Yaeger</u>, 130 B.R. 656 (S.D.N.Y. 1991), the court held that the guarantor's allegations of fraud were conclusory and contained no facts from which fraudulent intent may be inferred. <u>Id.</u> at 664-665.

Unlike the above cases, here plaintiffs allege that ***HSBC made specific representations with the intention not to perform***. It is well settled that such allegations sufficiently establish actionable fraud. <u>National Westminster Bank</u>, 130 B.R. at 664 (specific representation regarding future conduct, made with the undisclosed intention not to perform, is actionable fraud); <u>Hotel Constructors, Inc. v. Seagrave Corp.</u>, 574 F. Supp. 384, 387 (S.D.N.Y. 1983) ("an action for fraud will lie if the promisor did not intend to keep his promise at the time he made it. His present intent is the fact misrepresented."); <u>Conrad</u>, 45 Cal.App.4th at 157 (in order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promissor did not intend to perform at the time the promise was made).

The Court must accept the following allegations as true: HSBC represented to plaintiffs that it would accept sales of the securing real properties and alternate financing when it was in the process of selling the Loan and even after the Loan was sold. HSBC promised to try to stop the sale of the Loan if plaintiffs obtained alternate financing, after the Loan was already sold. HSBC never had any intention of keeping any of its promises. Plaintiffs' allegations sufficiently establish a claim for intentional misrepresentation and accordingly, HSBC's motion to dismiss this cause of action should be denied. <u>Williamson v. General Dynamics Corp.</u>, 208 F.3d 1144, 1156 (9th Cir. 2000) (reversing district court's dismissal of fraudulent misrepresentation claim in light of strict standard governing motions to dismiss).

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

10

## III. PLAINTIFFS SUFFICIENTLY ALLEGE CAUSES OF ACTION FOR BREACH OF CONTRACT.

### A. Plaintiffs' Loan Was Sold In Violation of the Workout Agreement.

A Promissory Note with a principal amount of $6.5 million was given by plaintiffs to HSBC on December 31, 1997. (Exh. 2 to Pltf.'s Memo.) The parties entered into an Amendment to Credit Facility/Lease dated November 6, 2002, (Exh. A to Complaint) and a Promissory Note Modification Agreement on March 5, 2003. (Exh. C to Complaint) On March 21, 2003, and by subsequent correspondence from plaintiffs, the parties entered into a workout agreement to resolve plaintiffs' Loan. (Exhs. G, H, J, L, and M to Complaint)

HSBC incorrectly asserts that plaintiffs' breach of contract claim is predicated on the theory that a promissory note is not assignable or transferrable and devotes several pages to discussing how a promissory note is a negotiable instrument. (HSBC Memo. at 14-16) However, plaintiffs' breach of contract claim is based upon the following allegations: the parties entered into an Amendment to Credit Facility/Lease and a Promissory Note Modification; plaintiffs were not in default of these agreements; (2) the parties entered into a workout agreement in March 2003 and plaintiffs were not in default of the workout agreement; (3) from March 2003 through August 2003, plaintiffs were fulfilling their obligations under the terms of the workout agreement; (4) when HSBC sold the Loan to PMC, HSBC breached the Loan agreement, as amended by the workout agreement. (Complaint, ¶¶ 42,46) The gravamen of plaintiffs' claim is that HSBC had no right to sell the Loan while the parties were obligated to resolve the Loan under the workout agreement. Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15 (1st Cir. 1992) (borrower's allegation that bank ultimately agreed to undertake loan, yet failed to consummate it, was sufficient to state claim against bank for breach of contract).

11

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Finally, as plaintiffs now know, HSBC sold the Loan to PMC on June 25, 2003. Yet the Promissory Note Modification Agreement (Exh. C to Complaint), provides:

> 1. Extension of Maturity Date. The Maturity Date of the Note is hereby extended for period of time up to and including August 31, 2003. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. ...

(Emphasis added) The foregoing provision expressly required HSBC to "review the note every six months." In conjunction with the terms of the workout agreement, HSBC breached this provision by failing to review the Promissory Note every six months and, instead, selling the Loan to PMC.

**B.** **Plaintiffs Establish Valid Claims that HSBC Breached the Terms of the Workout Agreement.**

**1.** **Plaintiffs' Efforts to Sell Their Properties Through Century 21.**

HSBC contends, in a conclusory fashion, that plaintiffs failed to fulfill "express conditions precedent," therefore excusing HSBC's obligations under the workout agreement. In support of this argument, HSBC argues vague generalities but fails to address the allegations of the complaint and the specific terms of the workout agreement.

By the terms of the workout agreement, HSBC agreed that:

> You represented that you have listed your property with Century 21 Realtors. We request a copy of the listing agreements or a written authorizing allowing Century 21 to provide copies to the Bank immediately. If you are able to sell your property at market price and have such listing agreements, the Bank may consider tolling collection efforts pending the closing in escrow of written accepted purchase offers with net proceeds paid to the Bank. The tolling of collection efforts would have to be part of a general liquidation or refinancing agreement. The Bank does not wish to negotiate with you on a parcel by parcel basis.

12

(Exh. M to Complaint) (emphasis added)    HSBC complains that plaintiffs failed to fulfill the condition precedent of listing the properties with a broker, (HSBC Memo. at 17), but even a cursory review of the complaint shows otherwise.  Plaintiffs complied with this condition by immediately listing certain properties for sale with Century 21 Realty Management.    (Complaint, ¶ 45) Christopher Felix's letter of April 3, 2003, (Exh. H to Complaint) which was forwarded to HSBC, (Exh. J to Complaint), evidences Century 21's efforts to "market" plaintiffs' commercial buildings. (Id.)  Mr. Sadhwani also confirmed, on April 4, 2003, his employment of Century 21: "I am working with Realty Management to sell the properties to pay off the loan." (Exh. J to Complaint)

HSBC also contends that plaintiffs' failure to obtain an <u>executed contract of sale </u>for plaintiffs' properties, negated HSBC's obligation to perform under the workout agreement. (HSBC Memo. at 17-18)    Again, HSBC ignores the actual terms of the workout agreement:  HSBC required plaintiffs to sell the properties "at market price." (Exh. M to Complaint)  In order to fulfill this condition and pay off the large outstanding balance on their Loan, plaintiffs would need to sell four or more commercial properties "at market price." As Exhs. H and J to the Complaint show, Century 21 had barely commenced marketing of the properties. <u>Id.</u>    HSBC's letter of March 21, 2003 did not contain a time limitation on when plaintiffs were required to sell their properties "at market price."  Where a contract does not specify time for performance, a party's obligation must be performed within a reasonable period of time under the circumstances of the case. <u>Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, Tenn.</u>, 706 F.2d 638, 641 (5th Cir. 1983).[4]    A court should be extremely reluctant to grant a motion to dismiss on a ground that requires a

---

[4]    What constitutes a "reasonable time" is a question of fact and depends upon the situation of the parties, the nature of the transaction, and the facts of a particular case.  <u>Hemlani v. Ticor Title Insurance, Inc.</u>, Civil Case No. CV1500-98, Decision and Order dated March 21, 2001.

13

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

determination of the reasonable length of time for performance of a contract, since such a determination depends on the specific circumstances of the case and the intentions of the parties, facts that are not normally ascertainable from the pleadings.   Abdul-Amin, 706 F.2d at 641 (reversing dismissal of action where contract did not specify time for performance and issue was whether reasonable period of time under contract had elapsed).

Plaintiffs are entitled to offer evidence supporting their claim that HSBC did not give them a reasonable period of time to sell their properties, and that HSBC breached the workout agreement by selling the Loan to PMC. DeJoy v. Comcast Cable Communications, Inc., 941 F. Supp. 468 (D.N.J. 1996) (on a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but whether plaintiff is entitled to offer evidence to support his claims).

### 2.      Plaintiffs' Attempts to Obtain Alternate Financing.

HSBC also contends that plaintiffs' failure to obtain a "binding commitment" from First Hawaiian Bank, excused the bank's performance under the workout agreement. (HSBC Memo. at 18)   This is not what was required under the workout agreement.  Instead, HSBC agreed:

> If you are seriously making an effort to refinance your loan facility, you may avoid this entire process.   We request immediate confirmation of your loan application and efforts to obtain refinancing.  The Bank is ready, able and willing to assist your negotiation of replacement financing.

(Exh. G to Complaint) (emphasis added)    Nowhere did HSBC state that it required only a "commitment letter" from a bank. Instead, HSBC required evidence of plaintiffs' "efforts to obtain refinancing" - the letter for alternate financing from First Hawaiian Bank was exactly that.  Further, HSBC's agreement to be "ready, able and willing to assist your negotiation of replacement financing" unambiguously indicates that HSBC would assist plaintiffs' "efforts to obtain refinancing." (If plaintiffs obtained a commitment letter from another bank, there would be no need

14

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

for HSBC to assist in the "negotiation of replacement refinancing." (Exh. G to Complaint))

In addition, there was no time limitation on when plaintiffs were required to provide evidence of their efforts to obtain refinancing. Given the large outstanding balance on the Loan, it would have taken plaintiffs several months to apply for, and negotiate alternate financing with other banks. As discussed in Part III(A) above, determination of the reasonable length of time for performance of a contract, and the intentions of the parties, requires that the Court deny HSBC's motion to dismiss. Abdul-Amin, 706 F.2d at 641. HSBC did not give plaintiffs a reasonable period of time to obtain alternate financing, and HSBC breached the workout agreement by instead selling the Loan to PMC.

## IV. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY.

"The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." Gayle v. Hemlani, 2000 Guam 25, at ¶30 citing Barbara A. v. John G., 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422, 431-432 (Cal. Ct. App. 1983). A "professional and close personal relationship" between the parties may establish a fiduciary relationship. In re Letterman Bros. Entergy Securities Litigation, 799 F.2d 967, 975 (5th Cir. 1986)(citations omitted) (fiduciary relationship found). A fiduciary duty may also be found where the lender exerts control or dominates the borrower. Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) (denial of summary judgment finding that facts may support a finding of fiduciary duty). Additionally, a fiduciary relationship may arise "from the assumption of control and responsibility and is founded upon trust reposed by one party in the integrity and fidelity of another." Industrial General Corp. v.

15

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Sequoia Pacific Systems Corp., supra.; Travel Services Network, Inc. v. Presidential Financial Corp. of Mass., 959 F. Supp 135, 144 (D. Conn. 1997). The critical analysis of whether a fiduciary duty exists is dependent on the facts. Official Publications, Inc. v. Kable News Co., Inc., 775 F.Supp. 631, 639 (D.N.Y. 1991).

HSBC contends that the Complaint is insufficient because there are no allegations of day-to-day involvement by HSBC in the Sadhwanis' operations or a lack of sophistication on the part of the Sadhwanis. However, whether a fiduciary duty exists does not depend on any "rigid rules," but on the level of trust and confidence between the parties. Scott v. Dimes Savings Bank of New York, 866 F.Supp 1073, 1078 (D.N.Y. 1995) (finding of fiduciary relationship).

Significantly, among the numerous cases cited by HSBC, only one case dealt with the sufficiency of the complaint as a basis for dismissal. In re Rexplore, 685 F.Supp. 1132, 1140 (D. Cal. 1988). The remaining thirty-three (33) cases cited by HSBC deal primarily with summary judgments or findings after a trial. HSBC cites to no authority supporting the proposition that a dismissal on a claim for breach of fiduciary duty was granted on facts similar to those alleged by the plaintiffs.

Unlike the cases cited by HSBC, the plaintiffs have made substantial factual allegations in their complaint supporting their claim for breach of fiduciary duty. First, the plaintiffs allege that "because of the longstanding, close and confidential relationship," including both business and social relationships, plaintiffs placed their "trust and confidence" in HSBC. (Complaint ¶ 49.) The plaintiffs further allege that HSBC disclosed confidential information between plaintiffs and HSBC to PMC; that HSBC represented that it would assist plaintiffs' negotiations for replacement financing; that HSBC represented that the parties' had contemplated a work out agreement, then refused to accept the replacement financing; that HSBC failed to give the "hairline discount," as

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

16

represented; and that, HSBC, without proper notice to plaintiffs sold the Loan to PMC. Complaint ¶ 50 . Construing these facts in a light most favorable to the plaintiffs, a cause of action for breach of fiduciary duty lies against HSBC. Therefore, HSBC's motion to dismiss this cause of action should be denied.

Alternatively, in the event that the Court is inclined to dismiss plaintiffs' cause of action for breach of fiduciary duty, plaintiffs should be given an opportunity to amend the Complaint. Where an amendment of the complaint may save the cause of action, it is proper for the court to grant leave to amend. Chang v. Chen, 80 F.3d at 1296. Notably, in In re Rexplore, the court granted the plaintiffs leave to amend on three separate occasions prior to dismissing its claim for breach of fiduciary duty. In re Rexplore, 685 F.Supp. at 1140.

## V.   PLAINTIFFS' ALLEGATIONS IN SUPPORT OF BREACH OF BANKING AND CONFIDENTIALITY LAWS ADEQUATELY ESTABLISHES A VALID CLAIM.

HSBC's argument to dismiss plaintiffs' six cause of action is merely a regurgitation of previous arguments, see HSBC's Memo. at 14-16, 18, 23-25, and reiterates its tiresome refrain that a promissory note is a negotiable instrument. See id. HSBC does not even address the specific allegations contained in the complaint, and for this reason its motion to dismiss should be denied.

Plaintiffs have alleged that HSBC is subject to the banking laws of the United States and the banking laws of Guam. (Complaint, ¶ 54). HSBC is governed by laws, rules and regulations relating to the confidentiality of its customers' accounts and transactions. (Id.) Plaintiffs trusted HSBC to comply with the banking laws, particularly those governing confidentiality of their banking relationship with HSBC and their accounts and transactions with HSBC. (Id.)

The purchaser of plaintiffs' Loan is PMC. (Complaint, ¶ 55) PMC is a Guam corporation, whose primary purpose, according to its Articles of Incorporation, is "to engage in the business of

17

commercial fisheries operation." (Id.)

PMC does not now and has never obtained a license to do banking business on Guam; it has never been in the banking business; and it is not now and has never been subject to the banking laws of the United States or of Guam. (Complaint, ¶ 56) PMC is not required to keep confidential any information concerning plaintiffs' Loan, or its banking relationship with HSBC, deposit accounts and transactions. (Id.)

HSBC expressly or impliedly agreed that it would not divulge to third persons the terms or the state of plaintiffs' accounts with HSBC, any of their transactions with HSBC, or any other information about the plaintiffs acquired by HSBC throughout their 25-year banking relationship. (Complaint, ¶ 57) The negotiation, sale, assignment, and transfer of plaintiffs' Loan to PMC constitutes a breach of banking and confidentiality laws by HSBC. (Id.)

In addressing a Rule 12 motion to dismiss, a court is under a duty to examine the complaint to determine if the allegations provide a basis for relief under any possible theory. Espinoza v. Fry's Food Stores of Arizona, Inc., 806 F. Supp. 855 (D. Ariz. 1990). Because federal courts simply require "notice pleading', the complaint need not specify the correct legal theory nor point to the right statute to survive a motion to dismiss. Illinois Constructors Corp. v. Morency & Associates, Inc., 802 F. Supp. 185 (N.D. Ill. 1992). HSBC assumes that because a promissory note is negotiable and that it had the legal right to sell the note, there can be no cause of action for breach of the banking and confidentiality laws. (HSBC Memo. at 25). But this is not what plaintiffs have alleged. Plaintiffs allege that the negotiation, sale, assignment, and transfer of plaintiffs' Loan to PMC (i.e., the communications between HSBC and PMC concerning this Loan) breached banking and confidentiality laws. These include, but are not limited to, information concerning plaintiffs' assets and liabilities; the payment history and status of plaintiffs' numerous loans with HSBC,

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

18

including the Loan that is the subject of this action; plaintiffs' deposits and other banking transactions with HSBC; and plaintiffs' rating in terms of their ability to pay back loans.

HSBC complains that plaintiffs have failed to identify the laws, rules and regulations relating to confidentiality of plaintiffs' accounts and transactions with HSBC. But just as a complaint need not plead facts, it also need not plead law, and it is not tied to one legal theory. La Porte County Republican Cent. Committee v. Board of Commissioners of County of La Porte, 43 F.3d 1126 (7th Cir. 1994). Viewed in the light most favorable to plaintiffs, their allegations sufficiently state a claim for breach of confidentiality and banking laws.

## CONCLUSION

A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. Walsh v. McGee, 918 F. Supp. 107 (S.D.N.Y. 1996). This is because the primary objective of the legal system is to obtain a determination on the merits of a case, rather than a dismissal based on pleadings. Cabo Distributing Co., Inc. v. Brady, 821 F. Supp. 601 (N.D. Cal. 1992). HSBC bears a heavy burden in establishing that plaintiffs can prove "no set of facts in support of his claim which would entitle him to relief." Figueroa v. U.S., 7 F.3d 1405 (9th Cir. 1993), cert. denied, 511 U.S. 1030 (1993). HSBC has failed to meet that burden, and its motion to dismiss should be denied in its entirety.

Dated this 16th day of January, 2004.

ARRIOLA, COWAN & ARRIOLA
Counsel for Plaintiffs Alan Sadhwani, et al.

By: _Anita P. Arriola_
ANITA P. ARRIOLA

Territorial Law Library

CLERK OF COURT

# IN THE SUPERIOR COURT OF GUAM

ADA'S INC., a Guam Corporation, and
ANTHONY SGRO,

CIVIL CASE NO. CV0785-02

               Plaintiffs/*Kehante siha,*

    v.

FIRST HAWAIIAN BANK, and JOHN
DOES 1-20,

*DISISION YAN OTDEN[1]*

               Defendants/*Difendante siha.*

---

The Court set the hearing on Defendant First Hawaiian Bank's motion to dismiss the above

action for March 03, 2003. At the appointed time, the parties advised the Court they would submit

the motion based upon the memoranda filed by the respective parties. Plaintiffs were represented

by Rodney J. Jacob, Esq., of Calvo & Clark, LLP, while Defendant was represented by Thomas C.

Moody, III, Esq., of Klemm, Blair, Sterling & Johnson. The Court, having reviewed the memoranda

filed by the parties, now renders this Decision and Order.

### *I MANMALOFFAN[2]*

On May 31, 2002, Plaintiffs filed the above captioned action against Defendant First

---

[1]Decision and Order

[2]Background



Hawaiian Bank and John Does 1 - 20. Therein, Plaintiffs alleged the following causes of action

against Defendants:

1. BREACH OF COVENANT OF GOOD FAITH
   A. Unreasonable Delay In Closing Agana Paradise Fitness Center Loan.
   B. Refusal to Act In a Commercially Reasonable Manner
   C. Misrepresenting Intention in Order to Increase Likelihood of Default
   D. Charging for Appraisals of Unpledged Property
   E. Refusing to Replace an Obviously Hostile Officer
   F. Fabricated Technical Defaults of Loan Ratios.
II. BREACH OF LOAN COMMITMENT
III. TORTIOUS INTERFERENCE WITH BUSINESS RELATION
IV. TORTIOUS INTERFERENCE WITH BUSINESS RELATION
V. PERMANENT INJUNCTION
VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs' complaint contained twenty-one (21) pages and one hundred ten (110) numbered

paragraphs. Plaintiffs seek an injunction against Defendants enjoining First Hawaiian Bank (FHB)

"from pursuing any private powers of sale"and "from collecting on any assignment of rents or notes

payable." In addition, Plaintiffs seek general, consequential, special, and exemplary damages against

Defendants.

Defendant FHB, in lieu of filing an answer to the complaint, has filed this motion to dismiss

the complaint. The motion is based upon Rules 8(a), (e), and 12(b)(6) of the Rules of Civil

Procedure. Defendant also seeks to strike paragraphs 42, 51 and 69 of the complaint pursuant to

Rule 12(f), alleging those paragraphs to be impertinent, argumentative, irrelevant, and scandalous.

The pertinent Rules of Civil Procedure cited by Defendant provide as follows:

**8(a) Claims For Relief.** A pleading which sets forth a claim for relief, whether
an original claim, counterclaim, cross-claim, or third-party claim, shall contain
(1) a short and plain statement of the grounds upon which the court's jurisdiction
depends, unless the court already has jurisdiction and the claim needs no new
grounds of jurisdiction to support it; **(2) a short and plain statement of the claim
showing that the pleader is entitled to relief;** and (3) a demand for judgment for the
relief to which the pleader seeks. Relief in the alternative or of several different

types may be demanded.

**(e) Pleading To Be Concise and Direct: Consistency.**
(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.
(2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11.

**12(b)(6) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted,
No defense or objection is waived by being joined to one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for which relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

**12(f) Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

## DINISKUTA[3]

Defendant FHB complains that plaintiffs pleadings are too long and not short and concise

---

[3]Discussion

Page 3 of 17

as required by Rule 8(a). A reading of Rule 8(a) reveals that it does not prohibit long and detailed pleadings, but only requires that the pleadings show that plaintiff is entitled to the relief which he seeks. See the Fifth Circuit Court ruling in **Black v. First Nat. Bank of Mobile, Ala.** 255 F.2d 373 C.A.5 1958:

> As we said in <u>John Walker & Sons v. Tampa Cigar Co., 5 Cir., 197 F.2d 72, 73:</u>
>
> <u>'Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A.</u>, provides that a pleading shall set forth a short, plain statement of the claim showing that the pleader is entitled to relief * * *. Absent from this rule is the old requirement of common law and code pleading that the pleader set forth 'facts' constituting a cause of action. It is also elementary that a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted."
>
> We follow it with a brief discussion giving our reasons for thinking that it was error to dismiss the action. It is in the light of these principles that the question posed must be answered. In their light, appellee's inveighing against the pleadings that they are prolix and complicated, is answered by the consideration that the very fact of their complexity tends to make more clear that an order dismissing the complaint rather than one requiring its simplification compounds and increases the error inherent in the attempt to dispose, on the pleadings, of the issues for decision here. In complete disregard of this consideration, the appellee, First National Bank, devotes a large part of its brief to the proposition that, because the amended complaint does not, as required by the rules, contain a short and plain statement of the claim and, what it calls a pall of confusion and self contradiction overhangs and clouds it, in short because the pleading is obscure, the dismissal was required. We have held to the contrary in the two cases......
>
> See also *American Nurses'Ass'n v. State of Ill.*, 783 F.2d 716, C.A. 7 (Ill), 1986:
> .................. a plaintiff can plead himself right out of court. But the court is not to pounce on the plaintiff and by a crabbed and literal reading of the complaint strain to find that he has pleaded facts which show that his claim is not actionable, and then dismiss the complaint on the merits so that the plaintiff cannot replead.

Case 1:03-cv-00036    Document 36    Filed 01/16/2004    Page 27 of 42

A complaint, however, is subject to dismissal under Rule 8(a) if it is incomprehensible. *Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir.1996). A complaint may be dismissed with prejudice if allowing further amendments would be futile. *Cf.* **Grossman v. Novell, Inc., 120 F.3d 1112, 1126 (10th Cir.1997)** (affirming a dismissal with prejudice after the denial of a motion for leave to amend the complaint under **Fed.R.Civ.P. 15** because amendment would be futile).

In its motion to dismiss the bad faith action, Defendant argues that when a duty is breached in a commercial contract the resulting claim is merely a breach of contract claim with its resulting remedies. Thus, plaintiffs complaint fails to state a claim under Rule 12(b)(6).

In *McCalister vs. Citibank, 829 P. 2d 1253(1992)*, the Court, while recognizing that a covenant of good faith and fair dealing was implied in every contract, indicated that the remedy for its breach was ordinarily by action on a contract, but tort damages may be available if a special relationship existed between the contracting parties. In the case, no special relationship was found between the bank and its customer and the customer could not recover for the alleged tortious breach of the implied covenant of good faith and fair dealing that occurred when the bank breached its alleged promise to renew the customer's credit line at a competitive interest rate.

A bank which leased a safe deposit box to a customer owed no duty of good faith to the customer. *Eller vs. National Bank of Texas, N.A., 975 S.W. 2d 803, (1998).*

In **Wallace v. National Bank of Commerce,** 938 S.W.2d 684 Tenn.,1996. , the Court stated:

Common-law duty of good faith in performance of contract does not apply to formation of contract, and thus, common-law duty of good faith does not extend beyond agreed-upon terms of contract and reasonable contractual expectations of the parties. Restatement (Second) of Contracts §

When determining whether complaint fails to state claim upon which relief can be granted, courts should construe complaint liberally in favor of plaintiff.

It is true that there is implied in every contract a duty of good faith and fair dealing

Page 5 of 17

in its performance and enforcement, and a person is presumed to know the law. *See* Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable.

In *Covington v. Robinson, 723 S.W.2d 643, 645-46 (Tenn.App.1986)*, which was relied upon by the Court of Appeals in *TSC Industries, Inc. v. Tomlin,* the Court of Appeals held that in determining whether the parties acted in good faith in the performance of a contract, the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument. In a later decision, the Court of Appeals held that good faith in performance is measured by the terms of the contract. "They [the parties] may by agreement, however, determine the standards by which the performance of obligations are to be measured."

In *Price v. Wells Fargo Bank, 261 Cal. Rptr. 735, (1989)*, the Court stated:

In the present case, appellants do not contend that their agreement with Wells Fargo satisfies the rigorous five-part test of the *Wallis* decision. Nor do they seek to prove special circumstances that might conceivably give a fiduciary character to a lender/borrower relationship. Relying on *Commercial Cotton* and *Barrett,* the complaint alleges only that plaintiffs "were customers of WELLS FARGO BANK, NATIONAL ASSOCIATION and had bank accounts, including checking, with defendant, WELLS FARGO, maintained at the Merced Branch of WELLS FARGO, and have been the beneficiaries of a fiduciary relationship with defendant, WELLS FARGO." These allegations, together with a description of the loan transactions, plainly are insufficient to state a tortious breach of the covenant of good faith and fair dealing. For the first time in this appeal, appellants argue that Wells Fargo is liable in tort under *Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158. The tort defined in *Seaman's,* however, is distinct from breach of the implied covenant of good faith and fair dealing; it occurs when a party "seeks to shield itself from liability by denying, in bad faith and without probable cause" that the contract exists. In their opening brief, appellants urge that Wells Fargo in fact denied the existence of a "renewal agreement." This theory,

however, finds no expression in the pleadings and cannot be considered for purposes of summary judgment. (*Kruse v. Bank of America* (1988) 201 Cal.App.3d 354, 373- 376, 248 Cal.Rptr. 217.)

Turning to more firmly established legal principles, appellants urge that the record shows a triable issue of fact concerning contractual breach of the implied covenant of good faith and fair dealing in both the original loans and the March 19, 1984, repayment agreement. "Every *479 contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205.) The term "good faith" has been described as an " 'excluder' " phrase which is 'without general meaning (or meanings) of its own and serves to exclude a wide range of heterogenous forms of bad faith. In a particular context the phrase takes on specific meaning, but usually this is only by way of contrast with the specific form of bad faith actually or hypothetically ruled out.' " (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d 654, 697, 254 Cal.Rptr. 211, 765 P.2d 373, quoting Summers, "Good Faith" *in General Contract Law and the Sales Provisions of the Uniform Commercial Code* (1968) 54 Va.L.Rev. 195, 201.) For example, the covenant precludes an owner from interfering with work of a contractor in performance of a construction agreement. (1 Witkin, Summary of Cal. Law (9th ed. 1987) § 745, p. 676.) Appellants here argue that Wells Fargo breached the implied covenant by taking a "hard line" in repayment negotiations. In particular, they rely on the testimony of John Richards, an expert witness of Wells Fargo, who conceded that, in his opinion, Pamela Bogle was not justified in publishing a notice of foreclosure sale after having received a $90,000 payment on June 10, 1985. The necessary implication of appellants' argument is that the bank owed them a duty of reasonable forbearance in enforcing its creditor's remedies. They do not, however, cite any authority supporting this proposition, and we are aware of none. Contracts are enforceable at law according to their terms. The covenant of good faith and fair dealing operates " 'as a kind of "safety valve" to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language.' " (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d 654, 684, 254 Cal.Rptr. 2 11, 765 P.2d 373, quoting Summers, *The General Duty of Good Faith--Its Recognition and Conceptualization* (1982) 67 Cornell L.Rev. 810, 812.) It does not impose any affirmative duty of moderation in the enforcement of legal rights. The equitable doctrines of estoppel or waiver may, of course, bar unfair tactics in the enforcement of agreements, but appellants have not raised any such equitable defenses.

In *Mann Farms Incorporated, v. Traders State Bank of Poplar, Montana and Northeast Montana Bank Shares, 801 P. 2d 73, (1990),* in a borrowers bad faith action against the bank for the

bank's revocation of conditional loan agreement the Supreme Court held that:

> (1) bank's revocation of its conditional offer to loan money did not offend reasonable commercial standards of fair dealing, and did not result in any breach of implied covenant of good faith and fair dealing; (2) no "fiduciary relationship" existed between bank and potential borrowers, for purpose of breach of fiduciary duty claim; and (3) bank's telephone call to other bank with whom potential borrowers had dealt qualified as legitimate credit check, which would not subject first bank to any liability for interference with borrower's contracts.
> Affirmed.

The Court further stated that tort damages are available, for contracting party's breach of implied covenant of good faith and fair dealing, only if contract involves a special relationship.

Furthermore, plaintiff must show that defendant acted dishonestly or outside of accepted commercial practices in order to deprive plaintiff of benefit of contract, in order to maintain cause of action for breach of implied covenant of good faith and fair dealing, whether action is based in contract or on special relationship criteria giving rise to tort.

In the above case, the Bank did not breach any implied covenant of good faith and fair dealing in revoking conditional commitment to extend financing to customers, where commitment was based on debtor's financial statement, and debtors had failed to disclose $74,000 debt to third party.

Defendant also argues that the Guam Supreme Court has not recognized a separate cause of action sounding in tort for bad faith breach of a commercial contract. Such a breach does not give rise to an independent tort claim, although an exception to this rule may apply in the case of a breach of the covenant by an insurance carrier.

Bad faith actions against insurance companies are indeed abundant in civil cases filed in the courts. Generally these cases are commenced against an insurer by an insured for the

Case 1:03-cv-00036     Document 36     Filed 01/16/2004     Page 31 of 42

insurer's failure to defend or settle a claim against the insured. These actions have been allowed because the courts have recognized that insurers owe a certain duty to their insured under the terms of their contract for insurance. While these bad faith claims have generally been recognized when filed by the insured (first party claimant), they have been extended to third party claimants based upon an assignment from the first party and have recently been extended wholly to third party claimants in certain jurisdictions. These actions all stand for the proposition that a breach of a duty by an insurer under an insurance contract gives rise to an independent action in tort for bad faith in favor of the insured, his assignee and even a third party.

The concept of a bad faith action within the context of a breach of a commercial contract in the banking area is relatively new and changing. Courts are beginning to see that such actions are plausible in the context of certain pleadings. Some see no difference between the problem of a bank customer and that of an insured. In *Lee v. Bank of America*, 267 Cal. Rptr. 387 (1990), Associate Justice Johnson, while concurring in the majority's decision sustaining the bank's demurrer, stated in dissent:

> In sum, based upon the Supreme Court's analysis of the special relationship test, a bank and its customers possess the requisite special relationship which warrants permitting the bank customer to proceed on a tort theory of breach of the covenant of good faith and fair dealing.
> To deny the existence of this relationship is to deny the realities involved. As we move closer and closer to a cashless society we become more and more reliant upon the services provided by banks and other financial institutions. If a bank so chooses, it may deny its customer access to her money for an indefinite period and the bank customer will have no recourse short of litigation. Until that litigation is resolved, the customer may be unable to purchase even the most basic necessities. I see no difference between this perilous dilemma and that involving an insured.

Page 9 of 17

Accordingly, I would hold a bank customer has a cause of action against its bank for breach of the covenant of good faith and fair dealing.

In Garrett v. BankWest, Inc., 459 N.W. 2d 833 (1990), the court stated:

> Garrett cites *K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir.1985) to support his claim that bad faith existed. **[FN9]** In this case Irving Trust extended K.M.C. $3.5 million in credit. All of K.M.C.'s receipts went into an account controlled by Irving Trust. K.M.C. relied upon the line of credit for its operation since it could not secure other financing on short notice. Without any notice Irving Trust refused to advance any money on the line of credit or to release the account funds. The court held that notice of cutting off the line of credit was a prerequisite to execution of the contract. The failure of Irving Trust to give notice left K.M.C. at its mercy and was a breach of good faith even though *847 Irving Trust had not breached any specific provisions of the contract.

It is abundantly clear, however, as evidenced by the cases cited above, that there is a general rule of law which requires banks to adhere to an implied duty of good faith and fair dealing in its relationship with and toward its customers. See also 55 A.L.R. 4th 1026 (1987), citing UCC and non-UCC cases..

With the above in mind, the Court will address the various claims of the plaintiffs in light of Defendant's arguments.

## I.    BREACH OF COVENANT OF GOOD FAITH.

Plaintiffs allege breach of the covenant of good faith against FHB. Defendant has generally argued that the breach of a commercial contract by the bank does not give rise to an action for bad faith. Defendant is generally correct in that assertion. There are many cases which stand for the proposition that a bank's breach of a certain obligation does not give rise to an independent action for bad faith but rather an action that is based upon a breach of contract.

Page 10 of 17

Thus a breach of contract should be the appropriate remedy. The same can be said with insurance contracts. An insured should more appropriately commence an action for breach of contract against its insurer for its failure to defend or settle an insurance claim. However, when the insurer has engaged in bad faith conduct during the course of a third party claim against its insured, the insured may maintain a separate action for the said bad faith.

Following the above analogy, when a customer complains of a breach by a bank of a commercial contract, a breach of contract action should be an appropriate remedy. However, a bad faith action commenced by a customer should not be dismissed simply because there is an available remedy under a breach of contract claim or merely because of the filing of the breach of contract claim. It is after all the general rule of law that a bank is required to adhere to an implied duty of good faith and fair dealing toward its customers. A bank's failure to adhere to this implied duty should not bar a bad faith action merely because there is a remedy in a breach of contract action. Furthermore, the fact that there is such a duty on banks with regards to their relationships with their customers indicate that a bad faith in one that is authorized under the law when facts alleging such bad faith are plead. Plaintiffs must allege some act of dishonesty by the bank and allege that the bank acted outside accepted commercial practices. When Plaintiffs do make such allegations, an appropriate cause of action is raised by the Plaintiff.

In the instant case, the plaintiffs allege various facts which they argue establishes bad faith on Defendant's part. The Court notes that plaintiffs must be given the opportunity to make such an allegation especially at this stage of the proceeding. While the plaintiffs may indeed have a breach of contract claim, an action based upon bad faith may also be commenced based upon the allegations of the complaint. Dismissal of Plaintiffs' cause of action at this stage of the

Page 11 of 17

proceeding is inappropriate. Therefore, the motion to dismiss with regard to the bad faith claim is denied.

## II. BREACH OF LOAN COMMITMENT

In their complaint, Plaintiffs allege that Defendant verbally committed to make a loan to Ada's Inc. for the construction of the Paradise Fitness Center. This loan was to close on or about June, 1998. The loan, however, did not close until January, 1999. The delay in providing the construction loan breached Defendant's verbal commitment to Ada's Inc. and resulted in damages to Plaintiff Ada's Inc. Plaintiffs seek damages as a result of the said breach.

Defendant moves to dismiss the breach action, citing 7 G.C.A. §11305(7). This section provides a three year period of limitation for an action not founded upon an instrument in writing. The Court finds merit in Defendant's motion. In their complaint, Plaintiffs allege Defendant verbally committed to close the Paradise Fitness Loan on or about June, 1998. Thus, any breach on the verbal commitment occurred in June, 1998 and the statute would have accrued then. Applying a three year limitation period, Plaintiffs' breach of commitment action should have been commenced on or before June, 2001. Plaintiffs' did not bring this action until May 31, 2002. Defendant's motion to dismiss the second cause of action is thus granted.

## III. TORTIOUS INTERFERENCE WITH BUSINESS RELATION

Plaintiffs bring a tort action with regard to Defendant's conduct in relation to the service of notices of assigned rentals. Plaintiffs allege notices were served on tenants whose rentals were not pledged as collateral to Defendant. Furthermore, notices were sent presumably to occupants in buildings not even owned by Plaintiff. Plaintiffs allege that Defendant's purpose was to injure

Page 12 of 17

Ada's Inc. by restricting Plaintiff's cash flow and scaring tenants into moving out or to stop paying rent. Plaintiffs further allege a wrongful and wilful intent to injure, harass, and humiliate Ada's Inc. This interference by Defendant in Plaintiff's relationship with certain of its tenants is the basis of the tortious interference claim.

Defendant argues that Plaintiff's claim, if any, from its action in serving notices of the assigned rentals is one for breach and not for tort. The Court disagrees. As it has pointed out supra, actions of a party with respect to a breach of a contract may lead to a tort action with regard to the same actions. The fact that a party has a remedy for breach under a contract theory does not restrict the same party from filing a tort claim if the other party's action rise to such a claim. The Court must allow Plaintiffs to proceed further in this matter based upon those allegations. The allegations provide relief if proven at trial. Thus, the Court will deny defendant's motion to dismiss the third cause of action-Defendant's tortious interference with Plaintiff's tenants.

## IV.    TORTIOUS INTERFERENCE WITH BUSINESS RELATION

Plaintiffs have also filed another tortious interference claim against Defendant. Therein, Plaintiffs allege that FHB demanded that Ada's Inc. breach its agreement with Rural Development for FHB's benefit. Plaintiffs further allege that this particular conduct of FHB interfered with Plaintiff's business relationship with Rural Development.

Defendant moves to dismiss this claim because the allegations do not establish the essential elements of a tort. The Court agrees. Unlike the first claim of tortious interference, the second claim fails to specify any direct action made or taken by FHB with regard to Rural Development and FHB. The fact that FHB demanded Plaintiff to breach its agreement with

Page 13 of 17

Rural Development without direct action on the part by FHB vis-a-vis Rural Development does not give rise to a tortious interference claim. Defendant's motion is granted.

## V.  PERMANENT INJUNCTION

Plaintiffs seek a permanent injunction against FHB alleging it will suffer irreparable harm and injury unless the Defendant is restrained from moving forward on its attempts to sell Ada Inc.'s property.

Defendant, in its motion papers, fails to address this issue and states only that its motion to dismiss the bad faith claims if granted would dispose of this particular claim for relief. Thus, by Defendant's analogy, if any one of Plaintiff's claims is not dismissed, then the Permanent Injunction remains viable.

## VI.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs last cause of action is their sixth claim. Plaintiff Anthony Sgro seeks damages for intentional infliction of emotional distress by Defendant.

Defendant argues that outrageous conduct, an element of intentional infliction of emotional distress, is not alleged by Plaintiff Sgro in his complaint. Moreover, Sgro has failed to plead essential facts that FHB intended to inflict injury or at least recklessly engaged in conduct "with the realization that Mr. Sgro would be medically or psychologically damaged." Sgro, however, counters by saying that his allegations of bad faith and heavy-handed collection efforts by FHB has caused him to be hospitalized and to seek psychiatric care and medication.

The Court finds that Sgro's allegations of bad faith, coupled with further allegations of underhanded collection efforts on the part of FHB sufficiently raises a prima facie case for

Page 14 of 17

intentional infliction of emotional distress. The Court will therefore deny Defendant's motion to dismiss the sixth cause of action.

## VII.    MOTION TO STRIKE

Defendant has moved the Court to strike paragraphs 4-31, 39, 42, 51, 59, 60-65, and 71-76. Defendant maintains these numbered allegations are immaterial to the complaint. Defendant further describes these allegations as an apparent effort by Plaintiffs to manufacture a basis for tort liability based upon an exaggeration of claims in an attempt to support such tort liability.

Furthermore, pursuant to Rule 12(f), Defendant further moves to strike Paragraphs 42 and 69 and other immaterial allegations.

Paragraph 42 provides:

The proposal offered no real solutions to Ada's Inc.'s decline in revenues. Rather, First Hawaiian's offer was nothing more than a thinly-veiled attempt to grab more collateral to secure its pre-existing loans to the detriment of Ada's Inc. and its other creditors and with the intent to cause the financial demise of Ada's Inc. Ada's Inc. refused to accept such a ridiculous offer, however, it did not stop pursuing a good-faith effort to pursue a realistic work out plan.

Paragraph 69 provides:

Ada's Inc.'s initial loan officer who arranged all the Ada's Inc. loans was former Vice-President Chris Murphy, who has since departed First Hawaiian. Since Mr. Murphy's departure, First Hawaiian officer assigned to Ada's Inc.'s account, Wilton Wong, who has criticized the original loans and done everything he could to raise technical issues and spread negative information about Mr. Sgro and Ada's Inc., rather than work with the company in the manner that banks normally do.

Defendant contends that Paragraph 42 contains impertinent and argumentative allegations while Paragraph 69 constitutes scandalous material. In addressing Defendant's motion to strike, the Court must take into consideration that parties must be allowed to make allegations if

Page 15 of 17

relevant to their cause of action. Plaintiffs sue Defendant for bad faith. Showing bad faith in a commercial setting requires a heavy burden. While Paragraph 69 may appear to be scandalous to a party defending a bad faith action, it may be a necessary component of its pleading when a party is required to show instances of bad faith on Defendant's part. While these allegations are vehemently denied by Defendant, it is an essential element of Plaintiffs' case. Certainly the pleadings evidenced by the said paragraphs and the other paragraphs which Defendant asks the Court to strike may in some form or another show bad faith on the part of Defendant. Because these allegations have some relevancy to the bad faith claim, they should not be stricken by the Court. Again the Court points out that certain of the pleadings, standing alone, may be a basis for a motion to strike. But when viewed in the overall context of the entire pleadings, it may have relevancy to a bad faith claim.

## DITETMINASIÓN[4]

After having carefully considered the arguments of the parties, the Court hereby:

1. Denies the motion to dismiss the claim for breach of covenant of good faith;

2. Grants the motion to dismiss the claim for breach of loan commitment;

3. Denies the motion to dismiss the first tortious interference claim;

4. Grants the motion to dismiss the second tortious interference claim;

5. Denies the motion to dismiss the Permanent Injunction claim;

6. Denies the motion to dismiss the intentional infliction of emotional distress claim;

---

[4]Conclusion

Case 1:03-cv-00036   Document 36   Filed 01/16/2004   Page 39 of 42

7. Denies the motion to strike Paragraphs 42 and 69 and other paragraphs;

With regard to the dismissed claims, Plaintiffs are granted leave to amend, said amendment, if so exercised, to be filed within ten days from the date of this decision. Defendants are ordered to file a responsive pleading within twenty days from the days hereof or within ten days after amendment of the complaint. *Este i sinneda i Kotte*[5].

So ordered this 7th day of July, 2003.

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JUL 0 7 2003

Ann D.L. Rivera
Deputy Clerk, Superior Court of Guam

---

[5]These are the findings of the Court.

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $6,500,000.00 | | 12-24-2002 | 100023-362 | | | | CR71 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** K. SADHWANI'S INC.
SHARP PLAZA 136 C KAYEN CHANDO SATEENA
MALL
DEDEDO, GU 96912

**Lender:** The Hongkong and Shanghai Banking Corporation, Limited
436 South Marine Drive
Tamuning, GU 96911

---

**Principal Amount: $6,500,000.00**     **Initial Rate: 9.250%**     **Date of Note:** 31 December 19

**PROMISE TO PAY.** K. SADHWANI'S INC. ("Borrower") promises to pay to The Hongkong and Shanghai Banking Corporation, Limited ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Five Hundred Thousand & 00/100 Dollars ($6,500,000.00), together with interest on the unpaid principal balance from December 31, 1997, until paid in full. The interest rate will not increase above 24.000%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan on demand, or if no demand is made, in 59 regular payments of $83,225.00 each and one irregular last payment estimated at $4,096,148.70. Borrower's first payment is due January 24, 1998, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due December 24, 2002, will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the RATE ESTABLISHED BY THE NEW YORK OFFICE OF THE LENDER (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each MONTH. The Index currently is 8.500% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 0.750 percentage points over the Index, adjusted if necessary for the minimum and maximum rate limitations described below, resulting in an initial rate of 9.250% per annum. Notwithstanding any other provision of this Note, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.000% per annum or more than (except for any higher default rate shown below) the lesser of 24.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (b) increase Borrower's payments to cover accruing interest, (c) increase the number of Borrower's payments, and (d) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in Borrower making fewer payments.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the Related Documents. (d) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (e) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (f) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (g) Any guarantor dies or any of the other events described in this default section occurs with respect to any guarantor of this Note. (h) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired. (i) Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 9.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the Territory of Guam. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the Territory of Guam. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Territory of Guam.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. In particular, this section means (among other things) that Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the Territory of Guam (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

K. SADHWANI'S INC.

By: _____
ASHOK H. SADHWANI, PRESIDENT

LENDER:

The Hongkong and Shanghai Banking Corporation, Limited

By: _____
Authorized Officer

Variable Rate. Balloon.     LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.24 (c) 1997 CFI ProServices, Inc. All rights reserved. [GU–D20 KSI2.LN C3.OVL]

"PAY TO THE ORDER OF PARADISE MARINE CORPORATION WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXCEPT AS PROVIDED IN THE AGREEMENT FOR PURCHASE AND SALE OF LOANS DATED ~~AUGUST 25th~~ June, 2003 BETWEEN THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED AND PARADISE MARINE CORPORATION."

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

BY: _____
TITLE: MANAGER GUAM _____

11th August 2003