**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

FILED
DISTRICT COURT OF GUAM

JAN 23 2004

MARY L. M. MORAN
CLERK OF COURT

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, <br><br> Plaintiffs, <br><br> v. <br><br> HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., <br><br> Defendants. | **CIVIL CASE NO. 03-00036** <br><br><br> **HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## ANALYSIS

For purposes of a Rule 12(b)(6) motion, liberal construction has its limits. Although a court must assume the truth of all facts alleged, it is improper for a court to presume a plaintiff can prove any facts not alleged in the complaint. See, Dejoy v. Comcast Cable Communications Inc., 941 F.Supp. 468, 473, (D.N.J. 1996).

### I.    THE SUPERIOR COURT OF GUAM DECISION IS NOT BINDING ON THIS COURT WHEN THE GUAM SUPREME COURT HAS NOT RULED ON AN ISSUE, THUS THE FIRST CAUSE OF ACTION MUST BE DISMISSED.

Where a state or territorial Supreme Court has not resolved an issue, the Ninth Circuit Court of Appeals has ruled that in such uncertainty, "a federal court must use its own best judgment in predicting" what the jurisdiction's Supreme Court would decide. See, Amfac Mortgage Corp. v. Arizona Mall of

Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir. 1978). Since the Ada's Inc., et al. v. First Hawaiian Bank, et al., Civil Case No. CV0785-02, Decision and Order dated July 7, 2003, is not a Guam Supreme Court Opinion, it has no precedential value with this Court. The assertion of only the Ada's Inc. decision to support Plaintiffs position speaks volume of any precedential value to be accorded to this decision. The failure by Plaintiffs to cite any other precedent is because of the unanimity by courts of every jurisdiction in rejecting a cause of action for tortious breach of the covenant of good faith and fair dealing in the noninsurance arena. See, HSBC's Memorandum of Points and Authorities, ("HSBC Memo"), p. 7-9. A review of the Ada's Inc. case indicates that the court relies on a plethora of California decisions for its holding of bad faith, but nowhere does the Superior Court cite the 1995 case of Freeman & Mills Inc. v. Belcher Oil Co., 44 CR2d 420 (Cal. 1995), in which the California Supreme Court decision overruled the Seamen's Direct Buying Service, Inc. v. Standard Oil Co., 206 CR 354 (1984) cited by Ada's Inc.. The Freeman case articulates a very thorough analysis of why a cause of action for tortious breach of the covenant of good faith and fair dealing should not be permitted in a noninsurance context.

Before addressing the Plaintiffs' claims of dishonest acts by HSBC which constitute "bad faith," HSBC will address one particular paragraph of Plaintiffs' Memorandum of Points and Authorities in Opposition to HSBC's Motion to Dismiss ("Plaintiffs' Memo") which it deems to be a misrepresentation of Plaintiffs' own complaint. On page 5 of Plaintiffs' Memo, Plaintiffs' state "[a]t the same time (referencing to a March 5, 2003 meeting between Plaintiffs and HSBC and Exhibit "B" of the Complaint) that HSBC was urging Mr. Sadhwani to repay the loan, HSBC also stated it was prepared to consider a discount on the loan balance if Mr. Sadhwani agreed to a 'friendly foreclosure.'" The quoted statement refers to Exhibit "E" of the Complaint which is devoid of any statement by HSBC that it was prepared on March 5, 2003, to consider a discount of the loan balance of Plaintiffs. The only mention of a discount by HSBC can be found in Exhibit "D" attached to Plaintiffs' Complaint, which states, in part, "[w]e told you that the bank is prepared, without in any way committing itself at this stage, to consider a discount on the loan balance **if you elect to give the secured properties to the bank**." (emphasis added). The Complaint makes it explicitly clear that Plaintiffs elected to list the property with Century 21 and seek

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

alternative financing rather than deed the property to HSBC, thus, HSBC was excused from having to offer any discount. See, ¶ 28 of the Complaint. Thus, Plaintiffs' claim that HSBC agreed to give a discount on the loan balance to it as of March 5, 2003, is a misrepresentation of their own pleading.

To support Plaintiffs' claim of bad faith, they argue that HSBC committed "acts of dishonesty," "which are outside accepted commercial practices." Plaintiffs' Memo, p. 6. These acts are as follows:

**A.     HSBC lied to Plaintiffs about intending to perform on the workout agreement.** First, a review of the first cause of action is devoid of the above statement as a basis for Plaintiffs' claim of bad faith. See, ¶¶ 25-29 of Plaintiffs' Complaint. Assuming there was a workout agreement, Plaintiffs utterly failed to meet the conditions expressed in the purported workout agreement, thus excusing HSBC's performance. See, HSBC's Memo, p. 2-6. Moreover, even assuming, *arguendo*, that there was a valid workout agreement, nothing in the workout agreement or the loan documents prevented HSBC from selling its loan to a third party. It is a general rule of law that all the rights and obligations under any assignment of the purported workout agreement would flow to the assignee. Thus, HSBC never lied to Plaintiffs about its intentions.

**B.     HSBC reneged on the workout by refusing to consider Plaintiffs' attempts to sell the securing real properties and obtain alternative financing.** Pages 2-6 of HSBC's Memo articulate why the aforementioned argument cannot form a basis to constitute bad faith.

**C.     HSBC lied about its agreement to try to stop the sale of the loan if Plaintiffs obtain alternative financing.** No amount of outright vituperation against HSBC would change Plaintiffs' own representation of what HSBC's officer, Mr. Underwood, stated in regards to stopping the sale of the loan.[1]

It is clear from Plaintiffs' Complaint, that HSBC never promised that the sale of the loan would not go through, but that it would only "try" to stop the sale. As a result, the eventual sale of the loan cannot be a basis to conclude that HSBC "lied."

---

[1] Paragraph 17 of Plaintiffs' Complaint states in part: Mr. Sadhwani asked Mr. Underwood whether the bank would accept $3 Million for the loan; Mr. Underwood replied 'no.' Mr. Sadhwani then said how about $3.5 Million. Mr. Underwood said 'get the money or guaranty, and I will try to stop the sale. (emphasis added).

Notwithstanding that statements A, B, and C above was never pleaded as a basis for Plaintiffs' Complaint in support of its claim for bad faith, it does not amount to bad faith. See, Plaintiffs' First Cause of Action. As the Court stated in Lee Careau Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1395 (1980), to assert bad faith one must show a ". . . conscious and deliberate act . . ." None of the new acts mentioned by Plaintiffs to support their claim of bad faith amounts to malicious conduct by HSBC. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. See, Epstein v. Washington Energy Co., 85 F.3d 1136, 1139 (9th Cir. 1996).

As further support of their claim of bad faith, Plaintiffs attached a Promissory Note endorsed to the buyer of the loan. Plaintiffs conclude that based on the June 25, 2003, date on the Note, HSBC ". . . induced Plaintiffs into believing that a workout was possible," ". . . when the loan had already been sold to PMC." See, p. 7 of Plaintiffs' Memo. Plaintiffs now wish the Court not to dismiss their first count, but to allow them to amend the Complaint to support their claim for bad faith. Paragraph 17 of Plaintiffs' Complaint makes it explicitly clear that HSBC never guaranteed or promised Plaintiff that it would stop the sale, but, rather that it would **"try"** to stop the sale. Thus, regardless whether the loan purchase agreement was executed on June 25, 2003, it cannot be a basis for bad faith based on the inducement of a party with no intention to perform. Moreover, Plaintiffs current claim that the loan transaction between HSBC and PMC, allegedly completed on June 25, 2003, is a misrepresentation to the Court. On December 12, 2003, HSBC served 497 pages of prediscovery disclosures which contained 3 particular documents; an Assignment of Mortgage, Assignment of Rental Income and a letter to K. Sadhwani's Inc., all of which proves that the loan was not sold until August 11, 2003. See, Exhibits "A," "B" and "C" attached to the Declaration of Jacques G. Bronze. HSBC concedes that a Loan Purchase Agreement was executed on June 25, 2003, but that it was subject to various contingencies and conditions to be met by PMC including that closing would be within 45 days of execution. See, Declaration of I. C. Underwood.

More importantly, the June 25, 2003, the Promissory Note referenced cannot be considered newly discovered evidence since Plaintiffs had the documents since the filing of this case and provided a copy to HSBC in their prediscovery disclosures served on December 12, 2003. See, Declaration of Jacques G.

Bronze. As the Court in <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995) held, a motion to amend will be denied if the amendment alone would be futile.

Notwithstanding the above, the facts alleged by Plaintiffs do not amount to proof of a special relationship between the parties in order to establish a tortious breach of the covenant of good faith and fair dealing. Tort liability has traditionally been recognized in the insurance context because of the "special relationship" between the insurer and insured. <u>See</u>, <u>Wallis v. Superior Court</u>, 160 Cal.App.3d 1109, 1116-18, 207 CR 123, 127-129 (1984). Consistent with the <u>Wallis</u> decision, the following factors are necessary prerequisites to tort liability based upon a fiduciary duty:

(1)     the contract must be such that the parties are in inherently unequal bargaining positions;

(2)     the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection;

(3)     ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole";

(4)     one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and

(5)     the other party is aware of this vulnerability.

<u>Wallis</u>, 160 Cal.App.3d at 1118; <u>see also</u>, <u>Denholm v. Houghton Mifflin Co.</u>, 912 F.2d 357, 361 (9th Cir. 1990). Plaintiffs' failure to meet any element of the aforementioned test is basis to determine that no "special relationship" existed as contemplated under <u>Wallis</u>. In the instant case, Plaintiffs owned "prime properties" on Guam worth "at one time more than $12 million dollars" and claim to have deposited about a "$100 million dollars with HSBC during its 25-year relationship with HSBC." <u>See</u>, ¶¶ 5 and 24 of the Complaint. Based on the above, one cannot find that the parties were in an "inherently unequal bargaining position." That both parties entered into the banking relationship for profit is beyond dispute. Furthermore, Plaintiffs offer no evidence as to the inadequacies of ordinary contract damages nor have they shown that they were in anyway vulnerable or of necessity placed any trust in HSBC. Thus, there is

no basis to establish the type of "special relationship" contemplated in <u>Wallis</u>. As a result, Plaintiffs' first cause of action for bad faith should be dismissed.

## II. SINCE PLAINTIFFS NEVER OBTAINED "ALTERNATIVE FINANCING", THE SECOND CAUSE OF ACTION IS FATALLY DEFECTIVE.

Plaintiffs' Second Cause of Action purports to be a claim based upon intentional misrepresentation. Plaintiffs assert that HSBC offered to "work out" their loan if mortgaged properties were listed with a broker and sold with the net proceeds to go to HSBC, the properties were deeded to HSBC in lieu of foreclosure at negotiated values, and/or Plaintiffs were to obtain replacement financing with another bank to pay off the loan with HSBC. Complaint at ¶ 27, Exhibit "G". Plaintiffs allege that they accepted HSBC's proposal to list the properties with a broker and to obtain "alternative financing". <u>Id.</u> at ¶ 28. Plaintiffs claim that they obtained "alternative financing" from First Hawaiian Bank ("FHB") on August 5, 2003 as embodied in Exhibit "M" attached to the Complaint. <u>Id.</u> ¶¶ 19, 28, Exhibit "M".

The problem that Plaintiffs have is that their Second Cause of Action is predicated upon the existence of the "workout agreement" by which Plaintiffs admit that they were required to obtain take-out financing for the loan with HSBC. The conditions precedent in the "workout agreement" were Plaintiffs listing their properties for sale with a broker **and** obtaining a firm commitment for replacement financing. If either of these conditions precedent were not met, the alleged "workout agreement" was unenforceable and no obligation on HSBC's part ever arose to comply with such agreement.

However, Plaintiffs' own Exhibit unequivocally shows that Plaintiffs never obtained replacement financing. Exhibit "M" to the Complaint, relied upon by Plaintiffs to prove that they obtained "alternative financing", clearly states that it is **NOT** a loan commitment. <u>See</u>, HSBC Memo at 10-11; <u>see, also</u>, <u>Taldan Investment Co. v. Comerica Mortgage Corp.</u>, 1990 U.S. Dist. LEXIS 19951, *2 at nt. 2 (a bank's letter of interest does not constitute a commitment to make a loan). Plaintiffs' claim that they obtained "alternative financing" is disingenuous and is refuted by their very own Exhibit.

Recognizing that the Second Cause of Action is deficient, Plaintiffs argue that they should be allowed to amend their Complaint to assert additional allegations. Plaintiffs' Memo at 9. Unfortunately

for Plaintiffs, they cannot amend Exhibit "M" which clearly shows that they did not obtain replacement financing, a condition precedent to the alleged "workout agreement", and it would be futile to allow any amendment of the Second Cause of Action.

    **A.**    **The second cause of action should also be dismissed because it fails to allege a misrepresentation of past or existing fact.**

As pointed out in HSBC's opening memorandum, all of Plaintiffs allegations in support of their claim of intentional misrepresentation are based upon purported promises of HSBC relating to future conduct. HSBC Memo at 11-12. The Second Cause of Action does not allege that HSBC intentionally misrepresented any present or pre-existing fact. In opposition, Plaintiffs admit that their Complaint contains no allegation of a misrepresentation of past or present fact but argue that several other courts have found that an allegation of a present intent not to perform a future promise may also state a valid claim for intentional misrepresentation. Plaintiffs' Memo at 10. However, even were that to be the case, Guam law does not recognize such a claim.

The Guam Supreme Court has definitively ruled upon what elements make up a claim of fraud. One of the common elements of an action for fraud, intentional misrepresentation, and negligent misrepresentation is the misrepresentation of a "past or existing material fact". Hemlani v. Flaherty, 2003 Guam 17, ¶ 9. A complainant must plead and prove that a misrepresentation of a past or present fact has occurred in order to sustain a claim of fraud. Id. Since Plaintiffs have, admittedly, not alleged any such misrepresentation, the Second Cause of Action fails to state a claim upon which relief can be granted.

Plaintiff's claim of intentional misrepresentation is based solely upon the allegation that HSBC "intentionally misrepresented that it was **interested** in pursuing a commercially reasonable work out, when it had no desire or intention to work out the Loan." Complaint at ¶ 36 (emphasis supplied). Other than this conclusory allegation, Plaintiffs make no other assertions regarding HSBC's supposed misrepresentation of its intent not to work out the subject loan.

The limited authority cited by Plaintiffs in support of such argument shows that they have failed to adequately plead their claim. In Hotel Constructors, Inc. v. Seagrave Corp., 574 F.Supp. 384

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

(S.D.N.Y. 1983), cited by Plaintiffs in their opposition, the Court construing New York law found that a "purely conclusory allegation that defendants never intended to perform, standing alone," will not convert a claim for breach of contract into one for fraud. <u>Id</u>. at 388. The other cases cited by Plaintiffs in support of such argument, <u>National Westminster Bank, U.S.A. v. Ross</u>, 130 B.R. 656 (S.D.N.Y. 1991) and <u>Conrad v. Bank of America</u>, 53 Cal. Rptr. 336 (1996), construe New York and California law, respectively, and not Guam law. Just as importantly, in the <u>Conrad</u> case the court held as follows:

> "Although it has been suggested that failure to perform a promise is sufficient to prove fraud, '[t]his is not, and has never been the law,' and 'if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he [should] never reach a jury."

<u>Conrad</u>, <u>supra</u>, at 352. In <u>Conrad</u>, <u>supra</u>, the appeals court found the evidence insufficient to support a claim for fraud and affirmed the trial court's judgment notwithstanding the verdict dismissing the fraud claim. <u>Id</u>. at 354.

Plaintiffs argue that this Court must accept their conclusory allegation that "HSBC never had any intention of keeping any of its promises" but fail to allege anything more. Plaintiffs' Memo at 10. Even under the limited authorities cited by Plaintiffs, which are not Guam's law, the Second Cause of Action is deficient and must be dismissed.

## III. SINCE HSBC'S SALE OF THE NOTE DID NOT BREACH THE LAW OR ANY AGREEMENT BETWEEN THE PARTIES THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED.

Plaintiffs' Third Cause of Action, entitled "Breach of Contract-Promissory Note Modification", claims that HSBC breached a Promissory Note Modification Agreement ("Agreement") which is attached to the Complaint as Exhibit "C". Complaint at ¶ 41. Specifically, Plaintiffs allege that since neither the Agreement nor the Loan between the parties authorized the sale of the Loan, then the sale of the Loan by HSBC to PMC breached its Loan agreement with Plaintiffs. <u>Id</u>. at ¶ 42. The word "Loan" is defined by Plaintiffs to be the Amendment to Credit Facility/Lease (Exhibit A to the Complaint), the Note in the amount of $6,6821,494.56 (sic), and the balance owed on such Note by Plaintiffs. <u>Id</u>. at ¶ 6.

In support of its motion to dismiss the Third Cause of Action, HSBC has shown that Guam law specifically authorizes the sale of the Note and Loan to a third party and that neither the Agreement nor the Loan prohibited HSBC from making such sale. HSBC Memo at 14-15. HSBC clearly had the unfettered right to sell the Loan and Note.

However, realizing that the Third Cause of Action is subject to dismissal, Plaintiffs resort to the age-old trick of arguing that its Complaint alleges something that it does not in a vain attempt to avoid dismissal. In opposition, Plaintiffs argue that the Third Cause of Action asserts that the Loan was sold in violation of the "workout agreement" and not the Loan. Plaintiffs' Memo at 11-12. Unfortunately for Plaintiffs, they are stuck with what their Complaint says and the Third Cause of Action does not make any reference to the purported "workout agreement".[2] Plaintiffs' argument that the Third Cause of Action is based upon a violation of the "work out" agreement conflicts with what is stated in the Third Cause of Action and must be disregarded. As previously discussed, Plaintiffs' argument that HSBC somehow breached the Loan by not "reviewing" the Loan every six months is without merit. According to the unambiguous terms of the Agreement, HSBC had the option, and not the duty, to review the note every six months and HSBC specifically reserved to itself "the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid." HSBC Memo at 16.

Plaintiffs' Complaint and Exhibits clearly show that the Third Cause of Action fails to state a claim against HSBC upon which relief may be granted and it must be dismissed.

IV.    **NOTWITHSTANDING PLAINTIFFS' FAILURE TO FULFILL THE EXPRESS CONDITIONS PRECEDENT OF THE PURPORTED WORKOUT AGREEMENT, NOTHING IN THE AGREEMENT PREVENTS HSBC FROM SELLING ITS LOAN TO A THIRD PARTY AND THE FOURTH CAUSE OF ACTION MUST BE DISMISSED.**

Plaintiffs' argue that they did meet HSBC's express conditions precedent based on Christopher Felix's letter of April 3, 2003, to HSBC and Mr. Sadhwani's letter of April 4, 2003, to HSBC. See, p. 13

---

[2] In fact, the Fourth Cause of Action is titled "Breach of Contract-Work Out Agreement" and purports to allege breaches of the "work out" agreement. Complaint at ¶¶ 44-47. It begs the question that if the Third Cause of Action is based upon a breach of the "work out" agreement, as Plaintiffs now claim, then why was it not instead alleged in the Fourth Cause of Action? Of course, the reason is that the Third Cause of Action is based upon the Loan and Note, as defined by Plaintiffs, and not the "work out" agreement.

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

of Plaintiffs' Memo; Exhibits "H" and "J" to Plaintiffs' Complaint. A review of the purported workout letter dated March 21, 2003, makes it explicitly clear how the expressed conditions precedent had to be met. That letter from HSBC provides in part:

> You represented that you have listed your property with Century 21 Realtors. We **request a copy of the listing agreements or a written of authorization allowing Century 21 to provide copies to the bank immediately.** If you are able to sell your property at market price **and have such listing agreements,** the bank may consider tolling collection efforts . . . . Ex. G to Plaintiffs' Complaint.

A listing agreement is defined as an "agreement between an owner of real property and a real estate agent, whereby the agent agrees to attempt to secure a buyer or tenant for specific property at a certain price and terms in return for a fee or commission." See, BLACK'S LAW DICTIONARY, 6th Ed. p. 932. The letter of Christopher Felix and Mr. Sadhwani's own letter of April 4, 2003 are not listing agreements. Contrary to Plaintiffs' assertion, paragraph 3 of Exhibit "G" to Plaintiffs' Complaint, does not require Plaintiffs to sell the properties at market price, but rather makes it equivocally clear that if Plaintiffs are able to sell the property at market price **and** have such listing agreements, ". . . the bank may consider tolling collection efforts. . . ." Plaintiffs' failure to provide a listing agreement to HSBC excuses HSBC's alleged duty to perform.

Additionally, Plaintiffs argue that since the workout agreement did not provide for a specific time to perform, Plaintiffs obligation to perform must be within a reasonable period of time. See, p. 13 of Plaintiffs' Memo. Thus, Plaintiffs conclude that as a result, ". . . HSBC breached a workout agreement by selling the loan to PMC." See, p. 14 of Plaintiffs' Memo. Plaintiffs are not arguing that the breach flows from HSBC's failure to provide a reasonable time to Plaintiffs to perform under the workout agreement, but rather from the sale of the loan to PMC. However, by operation of law, HSBC was free to sell the loan including the alleged workout agreement. See, 18 GCA § 81102 and § 81103.

Secondly, Plaintiffs now argue that the condition precedent regarding alternative financing did not require a letter of commitment but rather a mere letter from any bank. See, p. 14 of Plaintiffs' Memo. HSBC's letter of March 21, 2003, attached to the Complaint as Exhibit "G" gives Plaintiffs until April 4,

2003 to provide confirmation of the loan application and ". . . efforts to obtain refinancing." In response, Plaintiffs' own letter dated April 4, 2003, addressed to HSBC made it clear that Plaintiffs very well understood that HSBC expected a letter of commitment from it. Plaintiffs' letter states in part "[I]n my previous letter I have mentioned to you that I am trying to get financing **to pay my outstanding loan with HSBC.**" (emphasis added). <u>See</u>, Exhibit "J" to Plaintiffs' Complaint. A borrower can only pay a lender if he can secure a binding commitment from a bank to obtain the funds, not a letter of indication. Moreover, Mr. Sadhwani's own discussion with Mr. Underwood from HSBC could not have made it any clearer of the bank's expectation in regards to the "alternative financing."[3]

Mr. Underwood's statement could not be more clear that Plaintiffs needed to have cash or a guaranty under which another party would agree to satisfy the debt owed. Thus, Plaintiffs failure to have the cash or the guaranty for the benefit of HSBC excused its performance under the alleged workout agreement. Moreover, no breach can flow from HSBC's sale of its loan, including any alleged workout agreement, to a third party.

## V. PLAINTIFFS' ALLEGATIONS CONTAINED IN PARAGRAPHS 50(A)-(E) IN THE COMPLAINT CANNOT BE THE BASIS FOR THE IMPOSITION OF A FIDUCIARY DUTY BETWEEN A BORROWER AND A LENDER AND THE FIFTH CAUSE OF ACTION MUST BE DISMISSED.

The courts have unanimously held that a relationship between a lender and a borrower and a guarantor is not one of a fiduciary. <u>See</u>, HSBC's Memo, p. 19-20. The case law having establishing a fiduciary duty between a lender and a borrower arises in two general categories: (1) Where the lender has obtained controlled over the borrower; and (2) Where the lender has a special relationship with the borrower arising out of trust and confidence placed in the lender by the borrower, together with the giving of business advice to the borrower. <u>See</u>, HSBC's Memo, p. 21-23.

---

[3] On July 22, 2003, Mr. Sadhwani telephone Mr. Underwood . . . Mr. Sadhwani asked Mr. Underwood whether the bank would accept $3 Million for the loan; Mr. Underwood replied "no." Mr. Sadhwani then said how about $3.5 Million. Mr. Underwood said 'get the money or guaranty, and I will try to stop the sale. ¶ 17 of the Complaint.

A review of paragraph 50(A)-(E), provides no factual basis that HSBC was ever in control of Plaintiffs. Control is not established merely by the fact that lender has superior bargaining leverage in the relationship. See, In re Kidds Creek Partners, L.P., 200 BR 996, 1016 (BC ND Ill. 1996).

Regarding the requirement for a special relationship, various courts have emphasized that the existence of a fiduciary relationship is manifested not only by confidence placed by one party in another, but that there must also be a certain dependence, inequality, weakness in age or mental strength, lack of business intelligence or lack of knowledge of the true set of facts, or some other conditions which give one party an advantage over the other.[4] As stated in HSBC's Memorandum of Points and Authorities in Support of its Motion to Dismiss, a fiduciary duty cannot be imposed unilaterally, the trust and confidence which a party rests on the other party must be accompanied by some type of action on the second party showing that the relationship is recognized. See, Manns v. Peoples Bank of Imboden, 10 S.W.3d 885, 889-890 (Ark. 2000); General Motors Acceptance Corp. v. Baymon, 732 So.2d 262 (Miss. 1999).

In the instant case, the facts pleaded in paragraph 50(A)-(E) demonstrate that Plaintiffs never entrusted their financial affairs to HSBC nor did they rely on HSBC for business advice. Contrary to demonstrating any dependence, inequality, lack of business intelligence or a lack of knowledge, paragraph 24 of the Complaint asserts that Plaintiffs owned "prime properties" on Guam of which several are "Guam landmarks" which at one time were worth "much more than $12 million dollars." Moreover, Plaintiffs Complaint claims that they ". . . deposited about a hundred million dollars with the Defendant bank during these 25 years." See, ¶ 5 of the Complaint.

Notwithstanding the above, the authorities cited by Plaintiffs do not provide any support for their cause of action for breach of fiduciary duty. The case of Gayle v. Hemlani, 2000 Guam 25, is distinguishable because the Gayle case involved an attorney-client relationship rather than a borrower-lender relationship. Neither does the case of In re Letterman Bros., Energy Securities Litigation, 799 F.2d

Case 1:03-cv-00036     Document 41     Filed 01/23/2004     Page 12 of 22

967 (5th Cir. 1986), stand for the proposition that fiduciary relationship was found. In that case, although the jury returned verdicts against <u>Banc Texas</u> on the cause of action for breach of fiduciary duty, the court granted the <u>Banc Texas's</u> motion J.N.O.V. finding that the bank owed Plaintiffs no fiduciary duty. <u>Id.</u> at p. 971. The Fifth Circuit in that case held that the District Court's ruling was correct since "[u]nder Texas law there is no general fiduciary duty obligation between a lender and a borrower or between a business parties." <u>Id.</u> at p. 975. The Appellate Court also stated "[s]ubjective reliance or trust alone, however, is insufficient to establish a fiduciary relationship." <u>Id.</u> at p. 975. Neither does the case of <u>Pension Trust Fund v. Federal Ins. Company</u>, 307 F.3d 944 (9th Cir. 2002) provide any support to Plaintiffs' claims. In that case, the court held that a lender owed a fiduciary duty to a borrower which is excessively controlled or dominated the borrower. <u>Id.</u> at p. 955. None of the facts alleged in paragraph 50(A)-(E) of the Complaint demonstrates any excessive control or domination of Plaintiffs by HSBC. Moreover, the facts of <u>Pension Trust Fund</u> are distinguishable from the instant case since that case involved the execution of a loan transaction by Pension Trust Fund with two corporations wholly-owned by Pension Trust Fund. <u>Id.</u> at p. 948. <u>In re Rexplore</u>, 685 F.Supp. 1132, 1140 (D. Cal. 1988) is not the only case supporting HSBC's position that dismissal of the cause of action for breach of fiduciary duty is appropriate under a Rule 12(b)(6) motion. Recently, the Superior Court of Guam in the case of <u>The Estate of Tomas S. Tanaka, et al. v. Guam Economic Development Authority, et al.</u>, CV0245-02, Dission Yan Otden dated January 19, 2004, ruled that a 12(b)(6) motion is appropriate were Plaintiffs fail to plead facts showing Lender was in control or that Lender gave extensive advice to borrower.[5] <u>See</u>, Ex. "A" attached.

Plaintiffs have alleged no additional facts in their Opposition to support any amendment to the complaint. Despite the fact that in the case of <u>In re Rexplore</u>, the court granted Plaintiff's leave to amend, in this case the court should not permit Plaintiffs to use FRCP Rule 15 to frustrate the goals of FRCP Rule

---

[4] <u>See</u>, <u>In re Fordham</u>, 13 BR 632, 648-649 (BC Mass. 1991); <u>Power Equipment Company Inc. v. First Alabama Bank</u>, 585 So.2d 1291, 1297 (Ala. 1991); <u>Union State Bank v. Woell</u>, 434 N.W.2d 712 (N.D. 1989); <u>Garrett v. Bank West Inc.</u>, 459 NW2d 833, 838-839 (S.D. 1990); <u>First Security Bank of Utah v. Banberry Development Corp.</u>, 786 P.2d 1326, 1330-1334 (Utah 1990).

[5] This case only has precedential value in federal court if this court finds that Superior Court of Guam decisions should be accorded precedential authority in determining how the Supreme Court of Guam would rule on an undecided issue.

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

12(b)(6), especially when the claimed new facts were in the sole possession of Plaintiffs and the amendment would be futile.

A. **Alan and Laju Sadhwani are barred from claiming breach of fiduciary duty since their claim is derivative in nature.**

In the instant case, the claims of Alan and Laju Sadhwani as shareholders of K. Sadhwani's Inc., cannot be maintained since a claim by shareholders or guarantors that HSBC breached a fiduciary duty to the corporation, KSI, is derivative in nature and cannot be brought by shareholders as a direct action. See, NBD Bank N.A. v. Fulner, 109 F.3d 299 (6th Cir. 1997).

VI. **THE SIXTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT IS NOT BASED UPON ANY COGNIZABLE LEGAL THEORY.**

In support of their Sixth Cause of Action, titled "Breach of Banking and Confidentiality Laws", Plaintiffs allege that certain unidentified "laws, rules and regulations" relating to confidentiality of customer "accounts and transactions" pertain to HSBC. Complaint at ¶ 54. Plaintiffs assert that the sale of the promissory note to PMC "constitutes a breach of banking and confidentiality laws" by HSBC. Id. at ¶ 57.[6]        *

As pointed out in HSBC's opening Memorandum, a promissory note is a negotiable instrument and, by its very terms, a negotiable instrument is freely transferable by the holder to a third party. HSBC Memo, at 24. Guam law specifically provides that a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 G.C.A. § 81102. Further, Guam law provides that even nonnegotiable instruments may be transferred just as if they were negotiable instruments. Id. at § 81103.

In opposition, Plaintiffs refuse to identify which laws or statutes form the basis for their Sixth Cause of Action and, instead, merely reiterate what is said in their Complaint. Plaintiffs' Memo at 17-18.

---

[6] The Sixth Cause of Action does not claim that Plaintiffs have in any way been damaged by HSBC's alleged breach of such unspecified laws, which was pointed out in HSBC's Memo. HSBC Memo at 24. In as much as Plaintiffs did not respond to this argument in their Plaintiffs' Memo, it is deemed admitted. Since the Sixth Cause of Action fails to allege any damages to Plaintiffs, it fails to state a cause of action against HSBC upon which relief can be granted and must be summarily dismissed.

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

Plaintiffs argue that they do not need to have a cognizable legal theory to support the claims made in the Sixth Cause of Action or, in the alternative, any legal theory will suffice. Id. at 19. This is incorrect.

For purposes of a motion to dismiss under Rule 12(b)(6), allegations of material facts set forth in the complaint are read in the light most favorable to the non-moving party. However, conclusory allegations of law are not sufficient to defeat a motion to dismiss for failure to state a claim. Associated Gen. Contr. v. Metro. Water District, 159 F.3d 1178, 1181 (9th Cir. 1998) (conclusory allegations of law not sufficient); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998) (same).[7] Further, dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Cairns v. Franklin Mint Co., 24 F.Supp.2d 1013, 1023 (C.D. Cal. 1998); Roe v. Unocal Corp., 70 F. Supp. 2d 1073, 1075 (C. D. Cal. 1999).

In this case, Plaintiffs have alleged that HSBC illegally transferred a promissory note and loan to a third party, in violation of laws or statutes which Plaintiffs have refused to identify. On the other hand, HSBC has shown that the sale and transfer of the note and loan was specifically authorized under Guam statutes. Accordingly, Plaintiffs have no cognizable legal theory under the Sixth Cause of Action and it must be dismissed.

## CONCLUSION

For the foregoing reasons, HSBC's motion to dismiss each cause of action in Plaintiffs' Complaint should be granted.

*Respectfully submitted* this 22nd day of January 2004.

LAW OFFICES OF BRONZE & TANG

By: _____
JACQUES G. BRONZE
*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

---

[7] See, also, Anderson v. Clow 89 F.3d 1399, 1403 (9th Cir. 1996) (same); Epstein v. Washington Energy Co., 83 F.3d 1136, 1139 (9th Cir. 1996) (same); Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995) (Court not bound to accept conclusory allegations regarding legal effect of facts alleged); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-5 (9th Cir. 1994) (Court not required to accept legal conclusions cast in form of factual allegations if conclusions cannot reasonably be drawn from facts alleged); Barapind v. Reno, 72 F. Supp. 2d 1132, 1141 (E.D. Cal. 1999) (conclusions of law need not be accepted).

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\HSBC-Reply Memo.doc

*Jacques Bronze, Esq.*

FILED
SUPERIOR COURT
OF GUAM

2004 JAN 19 AM 10: 37

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

THE ESTATE OF TOMAS SANTOS
TANAKA and MARIA JOSEFINA
CAMACHO TANAKA, By and
Through its Co-Administrators
FREDERICK TANAKA and VIVIAN
C. T. HARDEE,

        Plaintiffs/*Kehante siha*,

        v.

GUAM ECONOMIC DEVELOPMENT
AUTHORITY, CRISTATA MICRONESIA
INCORPORATED, and THOMAS V. C.
TANAKA,

        Defendants/*Difendante siha*.

CIVIL CASE CV0245-02

DISISION YAN OTDEN[1]

---

    This matter came before the Court on September 11, 2003 on Defendant *Guam Economic Development Authority's* request for a status hearing. At that time, the said Defendant advised the Court that it had pending a motion for reconsideration which it had filed and was heard and argued but had not yet been decided. Upon review, the Court ascertained that *Guam Economic Development Authority's* motion for reconsideration was heard on October 1, 2002, along with Defendant's other

---

[1]Decision and Order

**EXHIBIT** "A"

BRONZE & TANG, P.C.
Date: 1/21/04
Time: 2:07 pm
Received: _____

motion for clarification filed by separate counsel. Representing the *Guam Economic Development Authority* (GEDA) was **Jacques G. Bronze**, Esq., of the Law Offices of Bronze & Tang, P. C. Representing then Plaintiff Josefina C. Tanaka[2] was **Michael F. Phillips,** Esq., of Phillips & Bordallo, P. C. The Court, having given due consideration to Defendant's motion, and after having reviewed the parties' memoranda, now renders this Decision and Order.

## *I MANMALOFFAN*[3]

On February 27, 2002, then Plaintiff Josefina C. Tanaka filed her complaint against the Defendants in which she alleged five separate causes of action against the Defendant GEDA. On March 13, 2002, Plaintiff amended her complaint and she asserted eight claims against GEDA. Plaintiff's claims were essentially as follows:

1. Co-defendants Cristata and GEDA have failed to obtain business licenses.

2. Fraud by Defendants in the procurement of the Cristata Mortgage

3. Fraud by Defendants in the procurement of the GEDA mortgage

4. Negligence by GEDA in its failure to preserve other collateral

5. There was an Accord and Satisfaction between Defendants Tanaka and Cristata with regard to Plaintiff's mortgage to Cristata of which Plaintiff was the intended beneficiary.

6. A Quiet Title action by Plaintiff on her foreclosed property against Cristata and GEDA.

7. A Permanent Injunction against Defendants.

8. Breach of a Fiduciary Duty by GEDA

---

[2]Josefina C. Tanaka was the original Plaintiff. By order, dated October 1, 2003, there was a plaintiff substitution.

[3]Background

Case 1:03-cv-00036     Document 41     Filed 01/23/2004     Page 17 of 22

Rather than filing its Answer, GEDA filed a motion to dismiss Plaintiff's complaint. GEDA's motion was heard on May 20, 2002. On June 28, 2002, the court rendered its decision and struck Plaintiff's First Count - Plaintiff's claim for business license violations; struck Counts Two and Three - Plaintiff's claim for fraud but allowed the Plaintiff to amend the complaint, but denied dismissal as to the remaining claims. GEDA subsequently filed its motion for reconsideration. GEDA, in another motion filed by separate counsel, moved the Court to clarify its decision and order, alternatively to dismiss the sixth cause of action. The Court heard both motions on October 1, 2002. On October 7, 2002, the Court issued its decision on GEDA's motion for clarification and denied its request to dismiss the sixth cause of action. The motion for reconsideration, however, remains pending and the Court was advised of its pendency at the September 11, 2003 status hearing.

### *DINISKUTA*[4]

GEDA has brought the instant motion, seeking reconsideration of the Court's decision made on June 28, 2002. GEDA seeks reconsideration on the grounds that the Court committed clear error or that its initial decision was unjust, a common law principle justifying reconsideration. GEDA contends that " the court committed clear error or the initial decision was unjust" as it related to Counts IV, V, and VIII when measured under summary judgment standards. .

When GEDA filed its motion, it was a motion to dismiss pursuant to Rule 12(b)(6) - the failure to state a claim upon which relief may be granted. GEDA did not move for summary judgment. In order to support its motion to dismiss, GEDA, however, included matters outside of the pleadings. As the Court pointed out in its earlier decision, its inquiry then in a Rule 12(b)(6) motion was confined to a determination of whether the Plaintiff should be permitted to proceed with

---

[4]Discussion

her complaint and provide evidence in support thereof. The issue was not whether Plaintiff would ultimately have prevailed but whether she would be entitled to offer evidence to support her eight claims. See <u>Scheuer v. Rhodes,</u> 416 U.S. 232, 236 (1974). The Court further pointed out that its review in a Rule 12(b)(6) motion was limited and ordinarily, it should look only at the face of the complaint to decide the motion to dismiss. However, when GEDA directed the Court to matters beyond the pleadings, Rule 12 permitted the conversion of the 12(b)(6) motion into one for summary judgment. Plaintiff, in her opposition to the motion, contended that GEDA's motion was not for summary judgment and the Court should not look outside of the pleadings. Plaintiff, however, included matters outside the pleadings to support her position that she was in possession of a business license. The Court's denial of GEDA's request for dismissal based upon Plaintiff's lack of business license was premised upon Plaintiff's submission of matters outside of the pleadings - Plaintiff filed a business license and payments of gross receipts taxes.

Rule 12 provides that if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, then the motion shall be treated by the Court as one for summary judgment and disposed of as provided in Rule 56. It also provides that all parties shall be given reasonable opportunity to present all materials made pertinent to such motion by Rule 56.

In its motion to dismiss, GEDA exceeded the parameters of a Rule 12(b)(6) by presenting matters outside of the pleadings to argue the dismissal of the complaint. Thus, the Court exercised its ability to convert the Rule 12(b)(6) motion into a Rule 56 summary judgment motion.

The Court notes that Plaintiff did acknowledge that some of GEDA's arguments were more suited for a motion for summary judgment rather than the Rule 12(b)(6) motion. However, Plaintiff

addressed the summary judgment issues.

In its present motion, GEDA asks the Court to review Plaintiff's claims, Counts, IV, V, and VIII and reconsider its prior ruling.

## COUNT IV

Count IV alleges a negligence cause of action by Plaintiff against the Defendant. Plaintiff contends that GEDA owed a duty to Plaintiff to deal fairly and in good faith in the preservation of her property. GEDA breached this duty when it failed to preserve other collateral that could have been used to satisfy the debt service. GEDA was in the sole position to preserve the other collateral.

GEDA argues, however, that it owed no duty to Plaintiff to preserve other collateral which could have been used to satisfy the debt service. Defendant points out that Plaintiff has not cited the Court to any Guam law, to a law from any other jurisdiction, or to any common law which supports her assertion of the existence of such a duty in such a situation. Defendant also points out that the Plaintiff's mortgage with GEDA does not require such an undertaking on the part of GEDA - the preservation of other collateral. GEDA also raises questions regarding Plaintiff's standing to raise such an issue. Defendant thus argues that the agreement between Plaintiff and GEDA did not create a type of relationship which springs forth such a duty. Therefore, GEDA, as lender, owed no duty to use reasonable care to preserve other collateral.

## COUNT V

Count V sets forth an Accord and Satisfaction claim against Defendants. A careful review of Plaintiff's allegations reveals that the claim therein is made against Defendant Cristata Micronesia Incorporated (Cristata). Cristata has not entered its appearance in this case nor has it filed an answer to the complaint nor has it filed any other responsive pleading to the complaint. It is very clear in

Page 5 of 7

Plaintiff's allegations in Paragraphs 54 through 59 that there is no claim of an Accord and Satisfaction which is made against GEDA. Therefore, GEDA thus has no standing to assert dismissal of this claim. Cristata remains the sole party which has standing to assert dismissal of this claim.

## COUNT VIII

Count VIII alleges a breach of a fiduciary duty on GEDA's part based upon a relationship of trust and confidence existing between the Tanakas and GEDA. Based upon this relationship of trust, GEDA owed a fiduciary duty of care and good faith to Plaintiff. Its breach occurred when GEDA elected not to protect its interest in Lot No. 5166-4-R1-R12, Harmon, Guam - property mortgaged to GEDA by Defendant Thomas Tanaka as additional security for the GEDA loan.

GEDA contends that a debtor (Plaintiff) and creditor (GEDA) relationship does not create a fiduciary relationship. However, fiduciary relationships may be created when (1) a lender acts or controls the debtor and (2) when a lender has given extensive advice to the debtor and the debtor has relied upon that advice. GEDA argues that it was never in control of the Plaintiff and it has not given extensive advice to Plaintiff - thus special circumstances which would arise to create such a fiduciary relationship is lacking in its relationship with Plaintiff.

At the hearing on Defendant GEDA's motion for reconsideration, GEDA asked the Court to preclude Plaintiff's attorney from making any arguments because Plaintiff had failed to file a memorandum in opposition to the motion for reconsideration. The Court granted this request.

After having reviewed GEDA's reconsideration request, the Court finds that it committed clear error when it denied Defendant's motion to dismiss Counts IV and VIII. The Court premised its denial on a (1) lack of factual background and/or (2) a limited factual background before it. Thus

the Court was reluctant to make a factual finding as it related to the summary judgment aspect of the motion. However, after further review of Defendant's arguments, the Court finds that the lack of a clear duty, while an issue of law which is a necessary ingredient in a summary judgment motion, is also an issue which is properly raised under a 12(b)(6) motion. In the absence of such duties on the part of Defendant GEDA, Plaintiff has failed to allege a cause of action against Defendant GEDA. Based upon the above reasons, the Court thus finds that it is proper to grant Defendant GEDA's request for reconsideration as it relates to Counts IV and VIII.

## *DITETMINASIÓN*[5]

Having given due consideration to Defendant GEDA's motion to reconsider this Court's Decision dated June 28, 2002, the Court finds merit in the said motion as it relates to Plaintiffs' Counts IV and VIII and does hereby grant the said motion. Plaintiff's Counts IV and VIII as the said counts relate to Defendant GEDA are hereby dismissed. The Court finds, however, that GEDA has no standing to assert a dismissal of Count V as the said claim is made solely against Co-defendant Cristata. The Court further orders that matters previously decided in its earlier decision are stricken or dismissed solely with respect to Defendant GEDA.

*Este i sinneda i Kotte.*[6]

So Ordered this 19th day of January, 2004.

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

---

[5]Conclusion

[6]These are the findings of the Court.

I hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam
Dated at Hagatna, Guam

JAN 23 2004

Therese M. Blas
Deputy Clerk, Superior Court of Guam