**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*



FILED
DISTRICT COURT OF GUAM
JAN 23 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>    Defendants. | CIVIL CASE NO. 03-00036 |

**HONGKONG AND SHANGHAI BANKING
CORPORATION, LTD.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO STRIKE JURY TRIAL DEMAND**

## ANALYSIS

Plaintiffs argue that their jury trial waiver in the Business Loan Agreement and Guaranty was not knowing and intelligent. <u>See</u>, p. 3 of Plaintiffs' Memorandum of Points and Authorities in Opposition to HSBC's Motion to Strike Jury Trial Demand ("Plaintiffs' Memo"). The test of whether a waiver was knowing and intelligent is:

> (1) whether there was a gross disparity in the bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous.

<u>See</u>, <u>Phoenix Leasing Inc. v. Sure Broadcasting, Inc.</u>, 843 F.Supp. 1379, 1384, (D. Nev. 1994).

A borrower can always argue that a financial institution has some inequality of bargaining power, however, that by itself should not invalidate otherwise valid contractual waiver. Guarantor Alan Sadhwani ("Mr. Sadhwani"), asserts that "[b]ased on [his] conversations with HSBC representatives, [he] understood that without the guaranty, HSBC would not give [his] company, K Sadhwani's Inc., any loans, and this would have resulted in the foreclosure and loss of [his] properties." <u>See</u>, ¶ 2 of Mr. Sadhwani's Declaration. Interestingly, Mr. Sadhwani recalls a conversation with HSBC representatives more than six (6) years ago but does not remember the name of the HSBC representatives. Although Mr. Sadhwani wants this Court to believe that only on July 24, 1997, was he made to understand that without a guaranty HSBC would not provide any loans to his company, the fact is that Mr. Sadhwani claims to have established a banking relationship with HSBC since 1978. <u>See</u>, ¶ 5 of Plaintiffs' Complaint. Moreover, after 25 years of a borrower-lender relationship, Mr. Sadhwani now claims that he

A:\HSBC-Reply(Jur.Tr.Demand).doc

- 2 -

Case 1:03-cv-00036 Document 44 Filed 01/23/2004 Page 2 of 8

only became aware of the jury trial waiver provision after the filing of the instant case. See, ¶ 3 of Mr. Sadhwani's Declaration.

As it relates to Guarantor Laju Sadhwani ("Mrs. Sadhwani"), she states "[b]ased on conversations my husband, Alan Sadhwani, had with HSBC representatives, I understood that without the guaranty, HSBC would not give us or our company, K Sadhwani's Inc., any loans." See, ¶ 2 of Mrs. Sadhwani's Declaration. Mrs. Sadhwani had an opportunity to object the jury trial waiver, but relied on her husband and voluntarily and knowingly executed the Guaranty.

In relation to K Sadhwani's Inc. ("KSI"), the President of KSI, Mr. Sadhwani, states that "[a]t the time I executed the Business Loan Agreement, K Sadhwani's Inc. was experiencing financial difficulties, and the execution of the Business Loan Agreement provided the much needed funds for the business. K Sadhwani's Inc., at the time, was in desperate need of cash, and the execution of the Business Loan Agreement provided the necessary funds." See, ¶ 7 of Mr. Sadhwani's Declaration.

The above statement by Mr. Sadhwani is nothing but a lie. It's an attempt to mislead the Court to believe that he was under duress and had to execute the Business Loan Agreement containing the waiver. A review of KSI's Renewal and Amendment of Credit Facilities dated December 29, 1997, which is attached to the Declaration of I.C. Underwood as Ex. 3, filed with this Court on December 30, 2003, and the Declaration of Stephen J. Grantham indicates that pursuant to this renewal of this credit facility, HSBC extended a new loan to KSI in the amount of $500,000.00 bringing the outstanding loan of KSI from HSBC to $9,775,000.00. Mr. Sadhwani's statement that KSI was experiencing financial difficulties cannot be supported when his own loan officer at that time increased KSI's loan facility and stated that HSBC would not

have increased the loan facility if KSI was in financial difficulties.  See, ¶ 6 of Declaration of Stephen J. Grantham.

The court in <u>Phoenix Leasing Inc.</u>, addressed an exact argument in which a defendant asserted that plaintiff had a monopoly in the field of startup loans for cable companies and as a result had an unequal power relationship sufficient to establish that the jury trial waiver was not knowing.  The District Court in <u>Phoenix Leasing Inc.</u> held:

> . . . defendant was not in the position of necessitous men.  The ability to take out a loan to start up a profit making cable company is not a necessity of life such as defendant was compel to accept plaintiff's loan on whatever terms it was offered.  The evidence before us does not indicate defendant was in any difficulty or under some form of duress.  Defendant/Counterclaimant *Sure Broadcasting* could have simply declined the terms.  Nothing compelled defendant to accept the loan under these terms, they were perfectly free to reject the deal.  This is not the countercase that supports a 'necessitous man are not free man' approach.  Nothing here calls on court to rescue defendant from a contract (or contract term) entered into knowingly and voluntarily.  <u>citing</u>, <u>AAMCO Transmissions, Inc. v. Harris</u>, CV-89-5533 1990, WL 83336 (E.D. Pa. 1990).

Similarly, in the instant case, HSBC's renewal of all KSI's previous loan facilities and the approval of a new term loan in the amount of $500,000.00 to be used as a down payment for the purchase of a warehouse facility does not indicate that KSI was in "desperate need of cash." <u>See</u>, Declaration of Stephen J. Grantham.  Based on that fact, Plaintiffs could have simply declined the terms being offered by HSBC.  Even assuming that, HSBC was naïve enough to provide another loan in the amount of $500,000.00 to KSI, Plaintiffs fail to state how they became into the position of necessitous man and woman in desperate need of funds.  Moreover, a borrower with an outstanding loan facility in the amount of $9,775,000.00 does not have a gross disparity in the bargaining power with a lender.  As the Court stated in <u>Bonfield v. AAMCO</u>

Transmissions, Inc., 717 F.Supp. 589, 596 (N.D. Ill. 1989), an unequal bargaining position by itself, should not invalidate an otherwise valid contractual waiver of the right to a jury trial.

Secondly, the evidence is abundantly clear that Mr. and Mrs. Sadhwani were not novices but was in fact experienced, professional, and sophisticated, running a multi-million dollar business. See, ¶¶ 5 and 24 of the Complaint. Even if Mrs. Sadhwani was not involved in the daily business operations of KSI or any negotiations with HSBC, at least one district court has held that the spouse's awareness of the need of her personal guaranty to guaranty the debts to be incurred, means she accepted the terms of the loan documents including its jury waiver. See, Okura and Co. (America.), Inc. v. Careau Group, 783 F.Supp. 482, 488 (C.D.Cal., 1991)

Thirdly, both Mr. and Mrs. Sadhwani and KSI asserts that they never had an opportunity to negotiate the terms of the guaranty and the Business Loan Agreement. First and foremost, HSBC provided KSI its Renewal and Amendment of Credit Facilities on December 29, 1997. See, Exhibit "3" to the Declaration of I.C. Underwood filed with this Court on December 30, 2003. Mr. and Mrs. Sadhwani and KSI executed the Renewal and Amendment of Credit Facility on December 31, 1997. Thus, there is no question that Plaintiffs had an opportunity to review and take the facility to counsel for review.

Moreover, Plaintiffs wish this Court to believe that HSBC provided an increase in a term loan in the amount of $500,000.00 without any negotiations of the terms of the new loan facility. Contrary to Plaintiffs' assertion of nonnegotability of the terms of the Business Loan Agreement, attached to the Declaration of I.C. Underwood as Ex. A is a draft Renewal and Amendment of Credit Facilities dated October 22, 1997, with a handwritten note by HSBC's Vice President of Corporate Banking stating "AS rejected as not meeting his requirement." "AS" is the code word in HSBC internal documents for Alan Sadhwani loan accounts. See, Declaration of I.C.

Underwood. The draft Renewal and Amendment of Credit Facilities dated October 22, 1997, sets an acceptance date of November 3, 1997, however since no facility was executed on that date, one can only conclude that the December 31, 1997, facility and Business Loan Agreement was the culmination of negotiations between the parties since October 22, 1997.

As this Court previously held in <u>Guam Economic Development Authority v. Mailloux, et al.</u>, 1986 WL 68510, p. 2 (D. Guam A.D.), "[a] guarantor has the affirmative duty to inquire and make himself aware of the guaranty contract terms." <u>citing</u>, <u>Marine Midland Bank v. Smith</u>, 482 F.Supp. 1279, 1287 (S.D.N.Y. 1979), *aff'd* 636 F.2d 1202 (2nd Cir. 1980). Moreover, in the instant case, Plaintiffs' Declaration is devoid of any evidence indicating that they objected to the jury trial waiver provision other than stating that HSBC told them it was non-negotiable.

Lastly, Plaintiffs argue that the clauses containing the waiver was not conspicuous. Although Mr. and Mrs. Sadhwani does not claim that the jury trial waiver and the guaranty was not in capital letters, they claim that the waiver was located at the bottom of a page in a "difficult-to-read font." A review of the Guaranty does not support Mr. and Mrs. Sadhwani's contention that the waiver provision is difficult to read unless you are practically blind. As it relates to KSI, it states that the ". . . provision is located towards the end of a seven page document, and is in a difficult-to-read font." <u>See</u>, ¶ 8 of Mr. Sadhwani's Declaration. Contrary to KSI's assertion, the jury trial waiver provision is found on top of the page in bold, with the last page of the Business Loan Agreement being the parties' signature page. In the instant case, the waivers were certainly not buried in fine print and this case is no different than the facts found in the case of <u>Phoenix Leasing Inc.</u>.

The court in <u>National Westminster Bank, USA v. Ross</u>, 130 BR 656, 667 (S.D.N.Y. 1991), did not find it to be a determinant factor that the jury trial waiver provision was above the

signature line. In that case, the court still upheld the jury trial waiver provision which was printed in small, but legible text. Id. at p. 667. The court held in Pers Travel, Inc. v. Canal Square Associates, 804 A.2d 1108, 1112 (D.C. 2002), that there was nothing unfair or unconscionable that the jury waiver clause was in the same size type as other provisions and that its placement as paragraph 32 in a 52 paragraph commercial lease for purposes of determining whether the jury waiver clause was enforceable in landlord's action against tenant for possession of the leased premises.

In ARH Distributors Inc. v. ITT Commercial Finance Corp., 1988 WL 17628 (N.D. Ill. 1988), the court held:

> Where plaintiff's officer said he did not read because he was presented with a large number of documents to sign 'all at once' and it would have been 'impractical' to read them with care or take them to an attorney and that the interest rate was the only matter that was bargained for, the court would grant defendant's motion to strike plaintiff's demand for a jury since it cuts no ice with this court even for a waiver of as important as the right for a jury trial in a civil case. Failure to read the loan documents does not prevent enforcement of a clause in a loan agreement in which plaintiff irrevocably waived its right to jury trial with respect to any action or proceeding in which plaintiff and defendant were parties.

Moreover, unlike the case of Whirlpool Financial Corp. v. Sevaux, 866 F.Supp. 1102, (N.D. Ill. 1994), Mr. and Mrs. Sadhwani has been operating and living on Guam for more than 25 years and thus, did not lack familiarity with the American civil jury system. See, ¶ 5 of the Complaint.

Based on the foregoing, HSBC's Motion to Strike Plaintiffs' Jury Trial Demand should be granted.

*Respectfully submitted* this 22nd day of January 2004.

LAW OFFICES OF BRONZE & TANG
A Professional Corporation

By: _____
JACQUES G. BRONZE
*Attorneys for Defendant*
*Hongkong and Shanghai Banking*
*Corporation, Ltd.*
