JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel:   (671) 477-9730
Fax:   (671) 477-9734

Attorneys for Plaintiffs Alan Sadhwani, et al.



FILED
DISTRICT COURT OF GUAM
FEB - 6 2004
MARY L. M. MORAN
CLERK OF COURT

51

### IN THE UNITED STATES
### DISTRICT COURT OF GUAM

ALAN SADHWANI, LAJU
SADHWANI,  and K. SADHWANI'S
INC., a Guam corporation,

                        **Plaintiffs,**

      **vs.**

HONGKONG AND SHANGHAI
BANKING CORPORATION, LTD., a
Foreign corporation,
JOHN DOE I through JOHN DOE X,

                        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. 03-00036

**NOTICE OF FILING OF
SUPPLEMENTAL AUTHORITY
IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE JURY
DEMAND**

Plaintiffs Alan Sadhwani, et al. hereby submit this Notice and the attached Disision Yan

Otden (Decision and Order) dated January 29, 2004 in Guam Economic Development Authority v.

Affordable Home Builders, Inc. dba Guam Concrete Builders, Inc., et al., Civil Case No. CV0841-01

(per the Honorable Joaquin V.E. Manibusan, Jr.).  The Decision and Order was issued after the filing

of plaintiffs' Opposition to Defendant's Motion to Strike Jury Demand and is submitted to the Court

as further support for Plaintiffs' Opposition.

Respectfully submitted this 6th day of February, 2004.

                **ARRIOLA, COWAN & ARRIOLA**
                Attorneys for Plaintiffs

By: *Anita P. Arriola*
                **ANITA P. ARRIOLA**

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on February 6, 2004, I caused to be served via

hand delivery, **NOTICE OF FILING OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE JURY DEMAND**

to:

> **Jacques A. Bronze**
> **Bronze & Tang, P.C.**
> **2nd Floor, BankPacific Building**
> **825 S. Marine Drive**
> **Tamuning, Guam 96913**

Dated this 6th day of February, 2004.

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

SUPERIOR COURT
OF GUAM

2004 JAN 22 PM 3: 27

CLERK OF COURT
BY

# IN THE SUPERIOR COURT OF GUAM

GUAM ECONOMIC DEVELOPMENT
AUTHORITY,

Plaintiff/*Kehante*,

v.

AFFORDABLE HOME BUILDERS, INC.
dba GUAM CONCRETE BUILDERS,
INC., a Guam corporation, and THOMAS
V.C. TANAKA and JANE C. TANAKA,
Husband and Wife,

Defendants/*Difendante siha*.

CIVIL CASE NO. CV0841-01

DISISION YAN OTDEN[1]

---

This matter came before the Court on September 11, 2003 on Plaintiff *Guam Economic Development Authority's* request for a status hearing. At that time, the said Plaintiff advised the Court that it had pending a motion for partial summary judgment which it had filed and was heard and argued but had not yet been decided by the Court. Upon review, the Court ascertained that *Guam Economic Development Authority's* motion for partial summary judgment was heard on February 18, 2003. Representing the *Guam Economic Development Authority* (GEDA) at the partial

---

[1]Decision and Order

summary judgment hearing was **Jacques G. Bronze**, Esq., of the Law Offices of Bronze & Tang, P. C. Representing the Defendants, *Affordable Home Builders, Inc., Thomas V. C. Tanaka* and *Jane C. Tanaka* was **Anthony C. Perez,** Esq., of Lujan, Aguigui & Perez. The Court advised the parties at the conclusion of that hearing that it would take the matter under advisement. The Court, having given due consideration to Plaintiff's motion for partial summary judgment, and after having reviewed the parties' pleadings and memoranda, now renders this Decision and Order.

## *I MANMALOFFAN*[2]

On May 17, 2001, Plaintiff *Guam Economic Development Authority* (GEDA) filed its complaint against the Defendants *Affordable Home Builders, Inc.* (AHBI), *Thomas v. C. Tanaka*, and *Jane C. Tanaka* in which GEDA alleged four separate causes of action against the Defendants. Plaintiff GEDA's four claims were essentially as follows:

1. Breach of Contract on the part of AHBI on its **$360,000 credit line** promissory note.

2. Breach of Contract on the part of AHBI on its **$1,200,000 term** promissory note.

3. Breach of Contract on the part of the Tanakas on their guaranty of AHBI's indebtedness.

4. Attorneys' fees pursuant to the loan agreement, credit line and term notes.

On August 2, 2001, Plaintiff amended its complaint (First Amended Complaint) and alleged two additional causes of action against Defendant AHBI in addition to the four claims made in the original complaint. The additional two claims were essentially as follows:

5. Foreclosure of its security under the Security Agreement and Financial Statement recorded at the Department of Revenue and Taxation - File No. 16435.

6. 5. Foreclosure of its security interest pursuant to a Security Assignment Agreement.

---

[2]Background

On August 29, 2001, Plaintiff GEDA further amended its complaint (Second Amended Complaint) and alleged two additional causes of action against Defendants AHBI and Thomas Tanaka in addition to the six claims made in the first amended complaint. The additional two claims were essentially as follows:

7. Fraud against AHBI and Thomas V. C. Tanaka.

8. Negligent misrepresentation against Thomas V. C. Tanaka.

GEDA sought general damages against the Defendants, jointly and severally, in the amount of $454,553.32 for breach of its credit line note; interest on the credit line note; repossession and foreclosure of its security in the Security Agreement and Financial Statement and Security Assignment Agreement; general damages for breach against the Defendants for breach under the term note; general, special, and consequential damages against AHBI and Thomas Tanaka for fraud; punitive damages for fraud against AHBI and Thomas Tanaka in the sum of $1,500,000; general, special, and consequential damages against Thomas Tanaka for negligent misrepresentation; punitive damages for fraud against Thomas Tanaka in the sum of $1,000,000; and for reasonable attorneys' fees and cost.

Defendants Thomas and Jane Tanaka filed their answer on September 24, 2001. The Answer set forth seven (7) affirmative defenses and incorporated therein a Counterclaim against GEDA. In their Counterclaim, Defendants (1) alleged that the guaranty they signed was void because it was so improvident and oppressive that it was unconscionable ; (2) alleged a fraud and deceit claim against GEDA based upon GEDA's failure to assist AHBI despite representations that it would assist and facilitate the development of AHBI as a viable business; and (3) alleged various negligence claims against GEDA, which included among the other claims, GEDA's failure to preserve its secured

interest in a leasehold interest and GEDA's disposal of AHBI assets in an unreasonable and imprudent manner in an amount which was unfair and below fair market value. At the time they filed their answer, Defendants also demanded a twelve (12) person jury trial on all triable issues.

Defendant AHBI also filed its Answer on September 24, 2001. The Answer also set forth seven (7) affirmative defenses and incorporated therein a Counterclaim against GEDA. In its counterclaim, AHBI alleged various negligence claims against GEDA similar to those claims made by the Tanakas against GEDA. At the time that it filed its Answer, Defendant AHBI also demanded a twelve (12) person jury trial on all triable issues.

Plaintiff filed its answer to the various counterclaims on October 15, 2001. On August 23, 2002, it filed a motion for partial summary judgment and a motion to strike the jury demand of the Tanakas and AHBI. Defendants filed their opposition to the said motions on February 4, 2003. Plaintiff filed its reply to the opposition on February 13, 2003 and the matter was heard by the Court on February 18, 2003.

## *DINISKUTA*[3]

GEDA has brought the instant motion, seeking partial summary judgment on Defendants' counterclaims and five (5) of their alleged affirmative defenses, specifically numbers two through six respectively. Plaintiff further seeks to strike Defendants' demand for a jury trial. GEDA has made fourteen (14) general arguments in its motions. Eight of its arguments relate to the counterclaim issues, one relates to the motion to strike and the remaining arguments relate to the affirmative defenses numbered two through six. In discussing Plaintiff's motions, the Court will first discuss the motion to strike the jury demand.

---

[3]Discussion

## I.    THE JURY DEMAND

Defendants, at the time they filed their answer, made a demand for a jury trial on all issues triable by a jury. In response to this demand, Plaintiff moved to strike the demand based upon its contention that the loan and guaranty agreements executed by the Defendants barred the Defendants from asserting a demand for a jury trial herein. Section 11.02.27 of GEDA's loan agreement with AHBI provides:

> **Waiver of Jury Trial and Setoff**
> Borrower hereby waives tr[ia]l by jury in any litigation in any court with respect to, in connection with, arising out of this agreement, or notes, the mortgages, or any instrument or document delivered to this agreement, or the validity, protection, interpretation, collection or enforcement, or any other claim or dispute howsoever arising between Borrower and GEDA; and borrower hereby waives the right to interpose any set off or counterclaim in connection with any such litigation, irrespective of the nature of such set off, counterclaim, or cross-claim.

Defendant AHBI executed a forty-four (44) page loan agreement with GEDA on December 20, 1996. The loan agreement contained numerous provisions, one of which contained the above provision in which AHBI expressly waived its right to a jury trial and to interpose any set offs or counterclaims against GEDA.

The Tanaka Defendants executed a guaranty with GEDA on January 14, 1997 in which they guaranteed the payment of AHBI's indebtedness to GEDA. The six page document includes a provision contained in Section 14 which provides:

> **Waiver of jury trial.**
> Each of the parties hereto waives trial by jury and the right to trial by jury in all actions or proceedings between them in any court, whether arising out of, under, or by reason of this agreement, or its validity or interpretation, or any other matter, cause, or thing whatsoever.

It is apparent from the documents referenced above that Defendants have indeed signed documents in which they have waived their right to a jury trial herein. GEDA asserts that no public policy disfavors or limits contractual waivers of the right to a civil jury trial. It cites the Court to various cases which uphold the right to waivers of a jury trial. Plaintiff further points out to the court that the jury waiver provisions in the agreements signed by Defendants were highlighted in bold and double spaced. It further points out that Defendant Thomas Tanaka is a sophisticated businessman and has been a Senator and Legislative Speaker for many years. His wife has worked at the accounting department of GEDA for nineteen years.

Defendants argue that they are entitled to a jury trial despite having waived this right in the above referenced agreements. The right to jury trial is guaranteed by the U.S. Constitution. This right is so fundamental that its waiver can only be relinquished knowingly and intentionally. Defendants contend that it is within the Court's discretion to determine whether GEDA has overcome the presumption and met its heavy burden in proving that Defendants knowingly, voluntarily, and intentionally waived their right to a jury trial. Common law requires the Court to consider four factors (the "Phoenix Test") in determining whether a jury trial waiver has been made knowingly, voluntarily, and intentionally. These are: (1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous. Defendants contend there was a gross disparity in bargaining power between themselves and GEDA and their was no meaningful negotiation of the contract terms. While acknowledging that the jury trial waiver provision in both agreements were conspicuous, they were not sophisticated borrowers. Defendants contend they were desperate for the loan and did not consult an attorney to review the

loan documentation nor the guarantees which they executed.

In its reply to Defendants' opposition, GEDA points that Guam courts have not yet addressed whether jury trial waivers are enforceable. The Phoenix Test represents a federal standard in determining the enforceability of such waivers. GEDA points out, however, that the majority of states have concluded that contractual jury trial waivers are generally enforceable. Under the federal standard, the federal courts are divided as to who bears the burden of proof regarding consent to the waivers. GEDA asks the Court to place this burden on Defendants as it is they who wish to avoid the jury trial waiver.

In *Lowe Enterprises Residential Partners, L.P. vs. Eight , 40 P. 3d 405 (2002)*, the Nevada Supreme Court stated:

> Contractual jury trial waivers are presumptively valid unless the challenging party can demonstrate that the waiver was not entered into knowingly, voluntarily or intentionally.
>
> The factors to consider in determining whether a contractual waiver of the right to jury trial was entered into knowingly and voluntarily include but are not limited to: (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement. Although many federal circuit courts, federal district courts and state courts have held that contractual jury trial waivers are valid and enforceable, at least one jurisdiction has held to the contrary. In **Bank South, N.A. v. Howard**, the *the Supreme Court of Georgia held that pre-litigation contractual jury trial waivers are unenforceable in Georgia because such waivers are not provided for by the state constitution and statutes. The court reasoned that the governing state's statutes contemplated that litigation had to be underway before a party could waive the right to a jury trial. The court likened the waiver of a jury trial to a confession of judgment because both involved giving up valuable rights. Accordingly, the court decided that contractual jury trial waivers, entered into prior to the commencement of litigation, were unenforceable in Georgia.*
>
> ...............................................
>
> The factors to consider in determining whether a contractual waiver of the right to jury trial was entered into knowingly and voluntarily include: (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the

provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement.

...................................................................................

Accordingly, we conclude that a court may consider, but is not limited to, the above factors when determining whether a jury trial waiver should be enforced.

It appears to this Court that the test employed by the Supreme Court of Nevada in the above case represents the type of analysis that may reasonably be employed in determining whether a waiver of a right to a jury trial may be enforceable. It requires the Court to consider the four prong test adopted by the federal courts and to consider any other factor relevant in deciding whether the jury trial waiver should be enforced. While the Court will adopt the above analysis, the Tanaka Defendants, however, make a separate argument that the guaranty which they signed was an adhesion contract and was unconscionable. The Court also notes that while they make this argument with regard to the guaranty which they signed, no such allegation is made with regards to the loan agreement signed by AHBI.

Courts have also dealt with the jury trial waiver issue within the context of adhesion agreements of which such waivers were allegedly a part of. In dealing with such an issue, the Massachussets Court in *Chase Commercial Corp. v. Owen, 588 N. E. 2d 705 (1992)* stated:

> Jury waiver provisions of loan and security agreements were enforceable against guarantors even though agreements may have been contracts of adhesion, given that jury waiver language was clear and legible, were mutually binding on lender and guarantors, offered potential of less costly and complicated litigation of disputes, lender could have believed that guarantors would have agreed to waiver if brought to guarantors' attention when documents were signed, and guarantors were experienced business people, parties dealt with each other at arm's length, and were represented by counsel.
>
> Like any other provision in a contract, including an agreement in advance to arbitrate, a provision waiving the right to a jury trial may be set aside on the basis of fraud or overreaching......................

Page 8 of 26

The jury trial waiver appears in two separate loan agreements which we assume to be standard forms prepared by Chase. One is three and one-half pages in length, and the waiver appears in clear language at the end of a paragraph on the same page as the signatures. The other agreement is four pages long, and the waiver language appears in the middle of a paragraph, also on the signature page. The print is relatively small but legible. The documents could well be described as a contract of adhesion in that it is unlikely that the parties actually negotiated most of the provisions. See Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv.L.Rev. 1173, 1177 (1983). When construction of such an agreement is in issue, it is to be construed strictly against the drafter. .... Generally, however, such contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances..... "Customers who adhere to standardized contractual terms ordinarily 'understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose.' " *Carpenter v. Suffolk Franklin Sav. Bank,* 370 Mass. 314, 327, 346 N.E.2d 892 (1976) (quoting from a comment accompanying tentative drafts of the Restatement [Second] of Contracts). The section of the Restatement dealing with enforceability of adhesion contracts now provides that such contracts are generally enforceable but not as to a term to which the party who drafted the agreement had reason to believe that the other party would not have assented had he known the writing contained the term in issue. Restatement (Second) of Contracts § 211 (1979).

We proceed to apply those standards to the situation before us. The jury waiver language is clear and, if not conspicuous, at least legible. Such agreements, calling for deprivations less severe than agreements to arbitrate, cannot be said to be unconscionable or against public policy. The jury trial waivers are, by their terms, binding mutually on Chase and the defendants, and they offer at least the potential of somewhat less costly and complicated litigation in the event of a dispute. Jury waiver provisions are not so unusual or oppressive that Chase should have believed that the defendants would not have agreed to them if brought to their attention at the time the documents were signed. We come, then, to the issue of fairness in the particular circumstances. The defendants were experienced businessmen, not average consumers. There has been no showing of any exploitation or gross inequality in their respective bargaining positions. According to the affidavits filed by the parties, they dealt with each other at arm's length, and the defendants had other lenders willing at the time to extend them the substantial financing they were seeking. According to testimony at trial, the defendants were represented by counsel who reviewed the documents before they were signed. In these circumstances, we do not regard enforcement of the jury waiver as unfair to the defendants. As there has been no showing that the contract provision was unconscionable, contrary to public policy, or unfair in the circumstances, we apply the usual rule that even standardized contracts are to be enforced according to their terms.

......................................................................

Should the waiver of jury trial be enforced against Defendants AHBI and the Tanakas? In order to defeat enforcement of their signed jury trial waiver, Defendants have the burden of proving that their waiver was not entered into knowingly, voluntarily, and intentionally. In this respect, the Court must ascertain the relative bargaining positions of the parties; their relative business sophistication; the parties' negotiations of the contract terms as well as the jury trial waiver provision; and whether the waiving parties' counsel had the opportunity to review the agreement.

In his declaration of January 31, 2003, Defendant Thomas Tanaka, stated that GEDA approved his company's $1,560,000 loan despite its "weak financial condition" [paragraph 4]. He further stated that he "had no meaningful opportunity to negotiate the terms and conditions of said agreements and was made to understand they were non-negotiable" - [paragraph 5]. In their memorandum in opposition to this motion, Defendants state that they "were desperate for the loan, and GEDA knew this". They had provided GEDA with their financial position and it was analyzed by GEDA to be weak. They had also submitted three letters from banks which indicated that the banks would not provide Defendants a loan[4].

Defendants also state in the opposition that they are not sophisticated business entities. While it is true that Thomas Tanaka was a former Senator, his wife was not an accountant at GEDA but a clerk. Defendants argue that this employment history did not qualify them as sophisticated business entities. "When an investor is an individual, this Court looks to several factors to determine if the investor is sophisticated, including "wealth[,] ... age, education, professional status, investment experience, and business background."", see *Banca Cremi, S.A. v. Alex Brown & Sons, Inc.*, 132 F.

---

[4]GEDA's Administrator's memo to the Board dated October 16, 1996 confirms that Defendants had submitted the required number of declinations from lending institutions to be eligible for GEDA funding.

Case 1:03-cv-00036   Document 53   Filed 02/06/2004   Page 12 of 28

3d 1017 C.A. 4 (Md.) 1997. In *Berardi v. Meadowbrook Mall Co.*, 572 S. E. 2d 900 W. Va. 2002, the Court determined that Plaintiff Berardi was a sophisticated businessman because he had operated a number of commercial enterprises and he had substantial assets and a considerable net worth.

In the memorandum to the Board referenced above, GEDA's Acting Administrator analyzed the Borrower and the Guarantors' financial condition. He pointed out (projection based upon eight months in 1996) that AHBI had total assets of $1,207,872 and total liabilities of $5,021,397. Thus, AHBI had a **negative net worth of $3,813,525.** In his findings on the financial condition of the guarantors, he pointed out that their assets totaled $5,164,000 and their total liabilities were $516,000. He concluded that the guarantors' **adjusted net worth was a positive $3,476,000.** When these two figures are joined together for the purpose of determining the relative strength of the loan application, it appears that overall - **the borrower and guarantors had a combined negative net worth.**

It does not appear that the parties negotiated the terms of the agreement, much less the jury trial waiver. There has been no declaration that the jury trial waiver was negotiated, only Tanaka's declaration that the terms of the agreement were non-negotiable.

Plaintiff GEDA argues in its reply memorandum that the Defendants were sufficiently sophisticated to understand the terms of the loan agreement. The loan agreement, however, was executed solely by Thomas Tanaka. It further points out that AHBI had been in existence since 1988 and had outstanding loans from other lenders. It further points out that Thomas Tanaka was its President and he had been a Senator in the Guam Legislature for many years and had been at one point its legislative Speaker. It also points out that in his deposition, Tanaka never objected to the waivers contained in the loan agreement and the guaranty. Furthermore, he was never told by GEDA

that the loan terms were not negotiable.

It is not disputed by the parties herein that the jury trial waiver was inconspicuous in either the loan agreement or the guaranty. The waiver was in the same type size print as with the other loan provisions and its heading was also in bold.

In executing the loan agreement, the Defendants did not have the opportunity to have counsel review the agreements. This matter also appears not to be in dispute.

The Court must also look at the parties' bargaining positions in addressing the jury trial waiver issue. Defendants allege in their opposition that they badly needed the funds. As pointed by GEDA's Administrator in his report, AHBI was in a severely weakened financial position when it applied for a loan with GEDA. It borrowed heavily from financial institutions and individuals - and personal assets from the majority stockholder were used to secure the indebtedness. As pointed out by the Court above, the borrower had a negative $3.8 million dollar net worth and combined with the guarantors, it still left the borrower and the guarantors with a negative net worth. In his deposition, Tanaka was quoted as stating: "you normally don't go to your lender and tell them that their terms are oppressive".

With this background in mind, did the Defendants waive their Organic Act right to a jury trial knowingly, voluntarily, and intentionally? The Court finds and concludes that the Defendants did not. In arriving at the above conclusion, the Court thus finds that there was gross inequality in bargaining power between GEDA and Defendants. Defendants came to GEDA as a last resort, having been denied a loan with three lending institutions. Defendants did not come into the loan with considerable assets or considerable net worth. Reviewing borrower's financial net worth and the principal owner's pledge of personal assets to secure the indebtedness of borrower, the parties

came into the GEDA transaction ready to grab any available loan as they were in desperate need of the same. Furthermore, they were not represented by counsel. There was no arms length discussion regarding the terms and conditions of the loan agreement between GEDA and the borrower. If the parties were truly bargaining at arms length, they did not negotiate the jury trial waiver.

Therefore based upon the above reasons, the Court finds that the jury trial waiver executed by the Defendants cannot be enforced against them because they did not sign the waiver knowingly, voluntarily and intelligently.

## II.    WAIVER OF SETOFF OR RIGHT TO COUNTERCLAIM .

Plaintiff GEDA argues that the Defendants are barred by the provisions of the loan agreement and the guaranty from asserting any setoff or counterclaims against it. As set forth in Section 11.02.27 of GEDA's loan agreement with AHBI, the set off provision provides:

### Waiver of ... Setoff

.....................................
borrower hereby **waives the right to interpose any set off or counterclaim** in connection with any such litigation, irrespective of the nature of such set off, counterclaim, or cross-claim.

Contained within the guaranty which the Tanakas executed with GEDA on January 14, 1997 was a provision which waived their rights to interpose any setoff or counterclaim against GEDA. Section Five of the guaranty agreement provides in part:

Guarantors also jointly and severally WAIVE: (d) all defenses, offsets and counterclaims which Guarantors may at any time have to any claim of GEDA against Borrower.

It is again apparent from a review of the loan agreement and the loan guaranty that the

Defendants have executed a waiver of their right to bring a setoff or counterclaim against Plaintiff. Based upon the waivers contained in the said agreements, GEDA moves to dismiss Defendant AHBI and Defendants Tanakas separately filed counterclaims.

Defendants argue that a contractual provision which waives a party's right to assert a setoff or counterclaim is rare. Defendants also cite the court to several federal decisions which appear to hold that such provisions, if it restricts a party's ability to litigate a compulsory counterclaim in a federal forum, are unenforceable with respect to the compulsory counterclaims. Defendants further argue that their counterclaims are compulsory under Rule 13 of the Superior Court Rules of Civil Procedure. Defendants also argue that GEDA's attempts to leave them without any remedies or defenses with all the waivers which they have been required to execute is egregious and unconscionable. Thus, the Court should not enforce the waivers which they executed.

In its reply to Defendants' opposition, GEDA argues that a waiver of the right of setoff is not rare as Defendants suggest but rather "part of all commercial loans made in the twenty-first century". GEDA also distinguishes the cases relied by Defendants as federal law and applying to federal jurisdiction of federal courts. It points out that there was no dispute that Defendants received the loan proceeds and the right of setoff waiver was supported by valuable consideration. GEDA, however, did not cite any case law supporting its argument other than to state that cases relied upon by the Defendants actually supported their argument.

The right to setoff or counterclaim waiver has been discussed by courts. Their application can be seen in the cases that follow. In <u>Barclays Bank of New York, N.A. v. Heady Elec. Co., Inc.</u>,174 A.D.2d 963, 571 N.Y.S.2d 650, N.Y.A.D. 3 Dept., Jun 27, 1991, the Court stated:

Case 1:03-cv-00036    Document 53    Filed 02/06/2004    Page 16 of 28

Next, the parties dispute the validity of provisions contained in the various agreements providing for the waiver of defendants' right to interpose setoff and counterclaims. Plaintiff contends that Supreme Court erred in not strictly enforcing these waivers and dismissing all of defendants' affirmative defenses and counterclaims. This argument has some merit. It must be remembered, however, that although "[a] waiver of the right to assert a setoff or counterclaim is not against public policy", the enforceability of such provisions depends on the nature of the claims involved (*Federal Deposit Ins. Corp. v. Marino Corp.*, 74 A.D.2d 620, 425 N.Y.S.2d 34; *see*, *European Am. Bank v. Mr. Wemmick, Ltd.*, 160 A.D.2d 905, 906, 554 N.Y.S.2d 628; *Marine Midland Bank v. CMR Indus.*, 159 A.D.2d 94, 104, 559 N.Y.S.2d 892; *Bayside Fuel Oil Depot Corp. v. Savino Oil & Heating Co.*, 133 A.D.2d 658, 659, 519 N.Y.S.2d 832).

For example, a waiver provision will not be enforced to bar a viable setoff or counterclaim sounding in fraud or one which is based upon the creditor's negligence in failing to liquidate collateral upon the guarantor's demand (*see*, *European Am. Bank v. Mr. Wemmick, Ltd.*, *supra*, 160 A.D.2d at 906-907, 554 N.Y.S.2d 628; *Marine Midland Bank v. CMR Indus.*, *supra*, 159 A.D.2d at 104, 559 N.Y.S.2d 892; *Federal Deposit Ins. Corp. v. Marino Corp.*, *supra*, 74 A.D.2d at 620-621, 425 N.Y.S.2d 34). Further, although a waiver limiting a creditor's responsibility as to collateral may not be enforceable, the creditor may not use such a provision to shield itself from liability if it breaches "the secured party's duty to use reasonable care in the custody and preservation of collateral" (*Marine Midland Bank v. CMR Indus.*, *supra*, 159 A.D.2d at 104, 559 N.Y.S.2d 892). It is beyond cavil that "[a] secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement" (*id.*).

**In BancBoston Mortg. Corp. v. Harbor Estates Partnership,** 768 F.Supp. 170

W.D.N.C.,1991, the Court, in deciding whether or not to dismiss Defendants counterclaims against

Plaintiff, stated:

Paragraph 8 of the Extension Agreement provides:
Borrower and Guarantors do hereby acknowledge that the Note and Deed of Trust are valid and existing obligations of the Borrower and that Borrower and Guarantors have no defenses of any kind or nature whatsoever nor any setoff or other counterclaims against Lender in connection with this loan transaction.
Despite the extension, Defendants failed to make the payments due under the promissory note by May 17, 1990.
On August 1, 1990, Plaintiff filed this action seeking to recover approximately

$1,000,000.00 due under the note plus interest and attorney's fees from Defendant Harbor Estates and the individual Defendants as guarantors of that loan. Thereafter, Defendants filed an answer and amended answer pleading as defenses and counterclaims that Plaintiff violated the loan agreement by failing to inspect the construction site and to obtain hard copy invoices from sub-contractors prior to disbursing funds to Maddalon. Defendants claim that Plaintiff's actions constitute a breach of contract and a negligent breach of the duty of care owed to them. In its reply to Defendants' defenses and counterclaims, Plaintiff has raised several defenses.

..................................................................

The court emphasized that the Plaintiff knew what he was doing when he signed the note.

*Id.* The parties intended to voluntarily adjust the dispute through utilizing a waiver. *Id.* Courts should encourage the voluntary resolution of conflicts because the law favors such agreements. *Cf. Hagler,* 354 S.E.2d at 235. When a clear intent to waive rights is demonstrated in order to resolve a conflict, the North Carolina Supreme Court has indicated it will enforce the agreement.


In *F.D.I.C. v. Hulsey,* 22 F. 3d 1472, C.A. 10 (Okl.), 1994, in determining whether particular

counterclaims were actionable, the 10th Circuit Court stated:

> However, the repayment amount is in dispute and disposition of some of the counterclaims is required to fully determine the rights of each of these parties.
> Even though more evidence will be necessary to support or refute the counterclaims relating to the loan agreements than is necessary to support the FDIC's suit, any evidence presented will encompass the entire relationship between the FDIC and LOH & Co. with regard to these loan agreements. This provides sufficient commonality to require all closely-related claims to be decided in one proceeding. Finally, for all of the reasons cited, there is a logical relationship between the principal claim and the counter-claims arising out of the loan agreements. Thus, we hold that the tort-based counterclaims which arise out of the loan agreements between CINB and LOH & Co. are compulsory counterclaims and therefore meet the first requirement under *Frederick* for claims in recoupment.

> To the extent that the counterclaims allege actions involving the loan transfer agreements between CINB and the FDIC, we hold that these allegations interject new controversies into the case, are not compulsory counterclaims, and therefore are not claims in recoupment
> Second, under *Frederick,* the compulsory counterclaims must seek relief of the same kind or nature. This has been interpreted to mean that if the plaintiff is seeking monetary relief, the defendant's counterclaims must also seek monetary relief to qualify as claims in recoupment. *See 2,116 Boxes of Boned Beef,* 726 F.2d at 1490-

Page 16 of 26

91. Here, both the FDIC and LOH & Co. seek monetary relief. The fact that the FDIC's suit is based on contract and the counterclaims are based on tort is not significant. *See Frederick,* 386 F.2d at 486-89; *FDIC v. Lattimore Land Corp.,* 656 F.2d 139, 142-43 (5th Cir.1981).

Third, the counterclaim must seek an amount not in excess of the plaintiff's claim. Appellants admit that their pleadings, in their original form, sought an amount in excess of the FDIC's claim. Therefore, if we determine that the counterclaims are claims in recoupment, appellants should be granted leave to amend the pleadings and to dismiss their prayer for punitive damages. However, if we determine that some of the counterclaims are claims in recoupment, our inquiry cannot end there. We must also determine whether other legal considerations would appropriately allow dismissal of these counterclaims. These inquiries necessitate addressing each counterclaim.

First, we address appellants' counterclaims of fraud/intentional misrepresentation, constructive fraud/breach of fiduciary duty, and negligence. To the extent that the allegations contained within these counterclaims involve the loan transfer agreement between the FDIC and CINB, we hold that these are not compulsory counterclaims and are therefore not claims in recoupment. As to these allegations, we affirm the district court's dismissal.

In *Resolution Trust Corp. v. Minassian,* 777 F. Supp. 385, D. N.J., 1991, the New Jersey

District Court addressed when right to setoff waiver in a contractual agreement would not be

enforced. The Court stated:

> Under law of New Jersey, clear and unambiguous waiver of right to setoff and counterclaim does not violate public policy, and is enforceable unless its enforcement would bar viable setoff or counterclaim sounding in fraud.
> A setoff is a claim "arising out of a completely independent and unrelated transaction," which is asserted to offset liability for another claim. *Guarantee Co. of North America v. Tandy & Allen Construction Co.,* 66 N.J.Super. 285, 289, 168 A.2d 860 (Law Div.1961), *aff'd,* 76 N.J.Super. 274, 184 A.2d 426 (App.Div.1962). Waiver of the right to assert a setoff or counterclaim, therefore, merely prevents a defendant from asserting the unrelated claim as a defense to liability in an action brought against him. It does not extinguish the unrelated liabilities, but merely prevents their assertion as a defense to liability to the plaintiff for an unrelated debt. Thus, if the waiver is effective, Minassian is not barred from asserting the usury claim, but its assertion will not preclude entry of judgment against him on the foreclosure claim. The RTC contends that, regardless of the validity of the Hackensack loan usury claim, it is entitled to judgment because Minassian expressly and effectively waived the right to interpose a claim of setoff or a counterclaim in a promissory note signed

Page 17 of 26

by Minassian in connection with the Fairview loan. That waiver provides:

> Obligor [Minassian] hereby waives ... the right to interpose any set-off or counterclaim of any nature in any litigation in which the Lender [Riverside] or any obligor shall be adverse parties.

It is clear and unambiguous. Therefore, unless invalid for other reasons, the waiver is enforceable.

[3] "The validity of contractual waivers of the right of setoff and counterclaim have not been addressed by the courts of New Jersey. New York courts, however, have held that such provisions do not violate public policy and are enforceable unless their enforcement would bar a "viable setoff or counterclaim sounding in fraud." *FDIC v. Borne*, 599 F.Supp. 891, 894 (S.D.N.Y.1984); *accord, Barclays Bank of New York v. Heady Electric Co.*, 174 A.D.2d 963, 571 N.Y.S.2d 650 (3d Dep't 1991).

This Court predicts that the courts of New Jersey would apply the same principles.

A review of these cases indicates that various Courts have concluded that compulsory counterclaims; viable setoff or counterclaims which sound in fraud; and lender or creditor negligence in preservation of collateral cannot be waived by borrowers or guarantors in loan or guaranty agreements. Furthermore, a lender's duty to use reasonable care in the custody and preservation of collateral cannot be shielded by a waiver provision. The Court must now examine the counterclaims filed by Defendants and determine whether these counterclaims are of the type which the above cases have held to survive a waiver of the right of offset or counterclaim provision contained in loan agreements.

Defendants Tanakas interpose three counterclaims and Defendant AHBI interposes one. All allege a negligence counterclaim against GEDA.

## A. DEFENDANT AHBI'S COUNTERCLAIM

AHBI alleges in Paragraph 7 that GEDA sold secured property in an unreasonable and imprudent manner resulting in unfair and below market prices being obtained for AHBI's personal properties. AHBI's negligence claims include allegations of GEDA's negligence in the preparation

of the loan and finance documents [Paragraph 8]; negligence in its failure to properly document, secure and mortgage collateral intended to secure AHBI's indebtedness [Paragraph 9]; negligence in its failure to acknowledge and document its secured interest in AHBI's personal property [Paragraph 10]; and GEDA's negligence in its disposition of AHBI's assets in an unreasonable and imprudent manner, which allowed the sale of the of the said assets in an amount which was unfair and substantially the fair market value [Paragraph 11]. Defendant also appears to have alleged certain duties on GEDA's part as it relates to its mandate to assist in the economic development of private enterprise and its failure to provide such assistance to Defendant.

In reviewing AHBI's allegations in its Counterclaim assertions, the Court finds that Paragraphs 7 and 11 state allegations that appear to be viable compulsory counterclaims that should survive the right of setoff waiver contained in AHBI's loan document. Paragraphs 8, 9, and 10 as well as those paragraphs which allege a duty on the part of GEDA to assist in the economic development of Defendant AHBI, do not appear to be compulsory counterclaims - and even if these claims were compulsory, the Court finds they are not viable counterclaims.

## B.    DEFENDANT TANAKAS COUNTERCLAIMS

The Tanakas allege the following three counterclaims:

(1) Defendants allege that the guaranty they signed was void because it was so improvident and oppressive that it was unconscionable ;

(2) Defendants allege a fraud and deceit claim against GEDA based upon GEDA's failure to assist AHBI despite representations that it would assist and facilitate the development of AHBI as a viable business; and

(3)Defendants allege various negligence claims against GEDA, which include among the

other claims, GEDA's negligence in preparation of the loan and finance documents [Paragraph 25];

GEDA's negligence in its failure to properly document, secure and mortgage collateral intended to

secure AHBI's indebtedness [Paragraph 26]; GEDA's negligence in its failure to acknowledge and

document its secured interest in AHBI's personal property [Paragraph 27]; GEDA's failure to

document and preserve its secured interest in a leasehold property of AHBI [Paragraph 28]; and

GEDA's disposal of AHBI assets in an unreasonable and imprudent manner in an amount which was

unfair and below fair market value [Paragraph 29].

Count One of the Tanakas counterclaim seeks to void the guaranty agreement because it is

unconscionable. Defendants allege the terms and conditions of the guaranty to be improvident and

oppressive. While the Defendants argue the unconscionable nature of the guaranty, it has not

provided the Court with authority supporting this argument. The Plaintiffs seek damages against

Defendants as guarantors. Defendants allegation that the guaranty is void appears to be counterclaim

which is compulsory. If it is compulsory, is it a viable counterclaim? The guaranty does not appear

on its face to be unconscionable. It would not have been unconscionable to require Thomas Tanaka

to guarantee the indebtedness of AHBI if he were the main shareholder and managing person of

AHBI. Whether or not the same is true with respect to Jane Tanaka is not so apparent. It is

conceivable that there could be a viable argument that requiring Jane Tanaka to guarantee an

indebtedness of AHBI merely because she is the spouse of the main shareholder is oppressive and

unconscionable if undertaken solely for the placement of liability - considering overall fairness and

community and separate debt statutes. Thus, on the face of the counterclaim, it does not appear that

Defendant Thomas Tanaka has a viable counterclaim is his assertion that the guaranty was

unconscionable. The Court, however, finds that the same may not be true with his spouse, Defendant

spouse, Defendant Jane Tanaka, and therefore would find her claim to have some viability and not precluded from being asserted by the waiver of offset provision in the guaranty which she signed.

Count Two of the Defendants' (Tanakas) counterclaim alleges a fraud and deceit claim against GEDA. It appears to allege that GEDA's representation that it would oversee and insure AHBI's compliance with its responsibilities and obligations under the terms of the loan agreement induced Defendants to guarantee the loan and further alleges that GEDA represented that it would assist AHBI so that it could facilitate its development as a viable business. Defendants allege the representations to be false and were made wantonly, willfully, maliciously, entitling the Defendants to punitive damages. The Court finds that counterclaims such as the above have been held by other courts to warrant exclusion from any provision waiving a right to offset or counterclaim. Thus, the Court finds this counterclaim to be compulsory ant not excluded by a waiver of setoff provision.

Count Three incorporates five basic negligence claims against GEDA. These claims include: GEDA's negligence in preparation of the loan and finance documents [Paragraph 25]; GEDA's negligence in its failure to properly document, secure and mortgage collateral intended to secure AHBI's indebtedness [Paragraph 26]; GEDA's negligence in its failure to acknowledge and document its secured interest in AHBI's personal property [Paragraph 27]; GEDA's failure to document and preserve its secured interest in a leasehold property of AHBI [Paragraph 28]; and GEDA's disposal of AHBI assets in an unreasonable and imprudent manner in an amount which was unfair and below fair market value [Paragraph 29]. After reviewing the five claims, the Court finds and concludes that these claims are not viable counterclaims with the exception of Paragraph 29. Paragraph 29 sets forth an allegation that GEDA disposed of AHBI assets in an unreasonable and imprudent manner resulting in an amount which was unfair and below fair market value. GEDA

has a duty to exercise commercial reasonableness to insure that assets which it disposes which belong to the Defendants are disposed of fairly and at market values. Defendants must be allowed by the Court to make this allegation [Paragraph 29] in its negligence counterclaim. The remaining four negligence counterclaims, Paragraphs 25 through 28, are dismissed, however, because they are barred from being interposed as counterclaims by the waiver provisions signed by the Defendants in the guaranty agreement.

As the Court has stated above, GEDA has made fourteen arguments in support of its partial summary judgment motion. With regards to Defendants' (Tanakas) fraud claim, GEDA argues, in addition to the waiver provision, that there was no misrepresentation on GEDA's part. It has also argued that the fraud claim is barred by the statute of limitations. The Defendants state in their complaint that the fraud was not discovered until 2001. Whether or not there was misrepresentation - and whether or not the statute of limitations has passed - these are questions of fact which cannot be disposed of in this summary judgment motion.

## III.    THE AFFIRMATIVE DEFENSES

Having decided whether or not the counterclaims may be asserted [ and which counterclaims may be asserted], the Court must now address GEDA's request to dismiss five of Defendants' affirmative defenses, Numbers 2 through 6 respectively. In its answer, Defendant AHBI asserted the following affirmative defenses which are pertinent herein:

2. Plaintiff's action is barred by the doctrine of estoppel.

3. Plaintiff has violated the terms and conditions of its own loan and financing documents.

4. Plaintiff has violated its fiduciary duty to AHB.

5. Plaintiff has violated its legal mandate to AHB.

6. Plaintiff's conduct excuses defendant's performance under the loan and financing agreements.

In their answer, the Tanaka Defendants asserted the following affirmative defenses which are pertinent herein:

2. Plaintiff's action is barred by the doctrine of estoppel.

3. Plaintiff has violated the terms and conditions of its own loan and financing documents and Guaranty.

4. Plaintiff has violated its fiduciary duty to TANAKA.

5. Plaintiff has violated its legal mandate to AHB and TANAKA.

6. Plaintiff's conduct excuses defendants' performance under the loan and financing agreements.

AHBI and the Tanakas allege affirmative defenses generally parallel to the other. Having reviewed Plaintiff GEDA's moving papers and the Defendants' opposition, the Court finds and concludes that it will dismiss the affirmative defenses numbered 3, 5, and 6.

GEDA asserts that the Defendants cannot argue that GEDA is estopped from pursuing its action to collect on its debt from Defendants. While it is true that GEDA has a claim to recover from Defendants based upon the loan agreement, it also maintains all together eight causes of action against the Defendants.

GEDA also maintains that it has no fiduciary responsibilities to the Defendants. In disallowing GEDA's request to dismiss this affirmative defense, the Court notes that it has dismissed several negligent claims against GEDA which bear upon alleged negligence. However, the Court must allow the Defendants to present evidence that GEDA worked and acted against Defendants

rather than assisting them.

For the reasons stated above, the Court will dismiss Defendant AHBI's negligence counterclaims as alleged therein in Paragraphs 8, 9, and 10. The Court will not dismiss the Defendant's negligence claims as alleged in Paragraphs 7 and 11.

With regard to the Tanaka Defendants, the Court will dismiss Defendant Thomas Tanaka's Counterclaim as set forth in Count One, in which he seeks to void the guaranty based upon the ground that it is unconscionable, but deny the motion with regard to Defendant Jane Tanaka. With regard to Count Two, the Court will deny GEDA's motion to dismiss the fraud and deceit counterclaim. With regard to Court Three, the Court will dismiss the negligence claims as alleged in Paragraphs 25, 26, 27, and 28. The Court finds that Paragraph 29 is a viable compulsory counterclaim and will not dismiss the same. Finally, the Court will dismiss the affirmative defenses numbered 3, 5, and 6. Affirmative defenses numbered 2 and 4 will not be dismissed.

## DITETMINASIÓN[5]

Having given due consideration to Defendant GEDA's motion for partial summary judgment filed herein, the Court will grant the motion in part and deny the same in part. In determining whether Plaintiff GEDA's motion to strike the Defendant's jury trial demand should be granted, the Court has concluded that the Supreme Court of Nevada's analysis in the *Lowe Enterprises* case may reasonably be employed in determining whether a contractual waiver of a right to a jury trial should be enforceable. It requires the Court to consider the four prong test adopted by the federal courts [to determine that a waiver was made knowingly, voluntarily and intelligently] and to consider any

---

[5]Conclusion

other factor relevant in deciding whether the jury trial waiver should be enforced. Having considered the four prong test and other relevant factors, the Court determined that Defendants did not waive their right to a jury trial knowingly, voluntarily, and intelligently.

With regard to Plaintiff's motion to dismiss Defendants' counterclaims, the Court has determined that regardless of Defendant's contractual waiver of the right of setoff or counterclaim, common law authority provides that certain counterclaims which are compulsory in nature and "viable" survive contractual waivers by borrowers and guarantors. Thus, the Court will dismiss Defendant AHBI's negligence counterclaims as alleged therein in Paragraphs 8, 9, and 10. The Court has determined these counterclaims not to be compulsory or viable or represent a type of allegation which survives a contractual waiver. The Court, however, will not dismiss the Defendant's negligence claims as alleged in Paragraphs 7 and 11. The Court has determined these negligence claims to be viable or compulsory counterclaims.

With regard to the Tanaka Defendants, the Court will dismiss Defendant Thomas Tanaka's Counterclaim as set forth in Count One, in which he seeks to void the guaranty he executed based solely upon the ground that it is unconscionable, but the Court will deny the motion with regard to Defendant Jane Tanaka. The Court has determined that Thomas Tanaka's claim is not a viable counterclaim. However, the Court finds that Defendant Jane Tanaka's counterclaim that the guaranty she executed was unconscionable has viability. With regard to Count Two, the Court will deny GEDA's motion to dismiss the fraud and deceit counterclaim. The Court finds Count Two to be a viable compulsory counterclaim. With regard to Court Three, the Court will dismiss the negligence claims as alleged in Paragraphs 25, 26, 27, and 28. The Court has determined these counterclaims not to compulsory or viable counterclaims. The Court, however, finds that Paragraph

Page 25 of 26

29 is a viable compulsory counterclaim and will not dismiss the same.

Finally, the Court will dismiss the affirmative defenses numbered 3, 5, and 6 in Defendant AHBI's answer as well as the answer by the Tanakas. Affirmative defenses numbered 2 and 4 in the answers of the said Defendants will not be dismissed.

**Este i sinneda i Kotte.**[6]

So Ordered this 29th day of January, 2004.

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

JAN 9 2004

---

[6]These are the findings of the Court.