LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*

DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, | ) ) ) ) | CIVIL CASE NO. 03-00036 |
| Plaintiffs, | ) ) | HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S |
| v. | ) ) | REPLY MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., | ) ) ) ) | TO STAY ALL DEPOSITIONS PENDING DETERMINATION OF ITS MOTION TO DISMISS |
| Defendants. | ) ) | |

ARGUMENT

I.

HSBC's CONSENT TO THE DATES FOR TAKING THE
PROPOSED DEPOSITIONS DOES NOT BAR ITS MOTION
TO STAY THE DEPOSITIONS

Without citation to any authorities, Plaintiffs argue that HSBC is foreclosed from moving to stay the depositions because of its consent to the scheduling of the proposed depositions. HSBC's consent to the proposed deposition dates cannot be construed as any type of waiver of its right to file the instant motion. HSBC has no right under the Federal Rules of Civil Procedure to object to Plaintiffs' right to notice the taking of proposed depositions. As a courtesy for both

parties, HSBC's counsel willingly consented to the proposed dates subject to its right to file any motion necessary to protect its interest. Brought to its logical conclusion, one could interpret Plaintiffs' argument to also mean that, based on HSBC's consent to the scheduling of the depositions, it has waived its rights for example, to object to the types or manner of questioning at the depositions.

HSBC's counsel did not discuss a stay of the potential depositions since they have been hoping that a ruling on the pending Motion to Dismiss will be forthcoming. See, Supplemental Declaration of Jacques G. Bronze. HSBC's counsel is not required to discuss prospective action he may take to protect his client's interest.

Again, without citation to any authorities, Plaintiffs' argue that HSBC's counsel did not ". . . reserve the right to depose the same witnesses . . ." should Plaintiffs' right to amend their complaint be permitted. See, p. 4 of Plaintiffs' Opposition. It has become clear that Plaintiffs are intending to litigate this case by ambush. Thus, HSBC has filed the instant motion. Plaintiffs' counsel has tactically chosen to assert frivolous grounds as a basis to amend their complaint so as to avoid the Court dismissing their complaint. Plaintiffs are now adamant about deposing witnesses before this Court has an opportunity to rule whether Plaintiffs will have an opportunity to amend their complaint or not.

Even assuming arguendo, that HSBC had reserved its right to re-depose these witnesses, another set of depositions of 5 to 10 witnesses is a waste of judicial resources as well as both parties' resources. Plaintiffs' argument is inconsistent since, on one hand, its takes the position that HSBC has failed to "reserve the right to re-depose" the same witnesses when, on the other hand, in a letter dated March 26, 2004, to HSBC's counsel, which is attached as Exhibit "1" to

the Declaration of Jacques G. Bronze, Plaintiffs' counsel stated that she " . . . disputes that such a right exists."

Alleged delay in filing the motion to stay the depositions has nothing to do with Plaintiffs' filing of their *Ex Parte* Application for Letters of Request, but rather that HSBC has chosen to wait as long as possible to see if a Court decision would be forthcoming on the Motion to Dismiss. See, Supplemental Declaration of Jacques G. Bronze. With the proposed depositions to commence sometime around April 28, 2004, and Plaintiffs' opposition to HSBC's right to re-depose these witnesses, should the Court permit Plaintiffs to amend their complaint, HSBC is left with no choice but to file the instant motion. See, Supplemental Declaration of Jacques G. Bronze. Moreover, Plaintiffs attempt to portray that all the proposed deposition dates were on accommodation of HSBC's counsel's travel plans is misleading since on March 10, 2004, Plaintiffs' counsel stated "[d]ue to the large volume of documents I reviewed from Paradise Marine Corporation last week which refer to Mr. Granillo and certain stateside witnesses, I am unable to take the depositions of those witnesses <u>in the latter part of March or early April.</u>" (emphasis added) See, Exhibit "4" of the Declaration of Anita P. Arriola. In short, HSBC's consent to the potential deposition dates does not serve as a basis to bar this motion.

II.

**HSBC's MOTION TO STAY DISCOVERY SHOULD BE GRANTED SINCE THE ISSUES RAISED IN HSBC's RULE 12(b)(6) MOTION ARE PURELY ISSUES OF LAW.**

Accordingly, where appropriate, courts may issue protective orders under Rule 26(c) to deny, limit or delay discovery to protect an individual from undue burden or expense, or to promote justice. See, <u>Chen Chi Wan v. United States</u>, 757 F.2d 1000, 1004 (9th Cir. 1985)

(district court has discretion to deny or restrict discovery); United Presbyterian Church v. Reagan, 738 F.2d 1375, 1382 (D.C. Cir. 1984) (same). Thus, until it is determined that a plaintiff's claims are properly before the court, "a defendant should not be put to the trouble and expense of any further proceedings." United Transp. Serv. Employees v. National Mediation Bd., 179 F.2d 446, 454 (D.C. Cir. 1949). That is particularly true when there is a dispositive motion pending that could resolve the issues raised, thus obviating the need for discovery. See, e.q., Chagnon v. Bell, 642 F.2d 1248, 1265-66 (D.C. Cir. 1980), cert. denied, 453 U.S. 911 (1981).

Plaintiffs' attempt to mischaracterize HSBC's legal arguments is nothing more than an attempt to mislead the Court that the various legal arguments raised by HSBC only challenge the "sufficiency of the allegations." It is hornbook law that, under a Rule 12(b)(6) motion, Plaintiffs' allegations are deemed true and accepted at face value. By its nature, a motion under Rule 12(b)(6) tests the formal sufficiency of the statement of a claim for relief. See, Fednav. Ltd. v. Sterling International, 572 F. Supp. 1268, 1270 (N.D. Cal. 1983). For the Court's convenience, HSBC will summarize the arguments it raised in its Motion to Dismiss, as follows:

1. *First Cause of Action – Breach of the Covenant of Good Faith* - HSBC's motion seeks to dismiss this cause of action on the basis that a covenant cannot be implied to contradict or limit HSBC's express conditions precedent to any workout and nor are those basis(s) alleged amount to a breach of good faith; See, p. 1 of HSBC's Motion to Dismiss;

   (a) Assuming Plaintiffs properly pleaded a cause of action for breach of the covenant of good faith and fair dealing, the cause of action fails as a matter of law. See, p. 7 of HSBC's Motion to Dismiss;

2. *Second Cause of Action – Intentional Misrepresentation* - The Second Cause of Action fails to state a claim upon which relief can be granted because Plaintiffs' failed to obtain refinancing;

    (a) The Second Cause of Action must be dismissed as a matter of law because Plaintiffs' claims of intentional misrepresentation are based upon alleged promises of future conduct. See, p. 11 of HSBC's Motion to Dismiss;

3. *Third Cause of Action – Breach of Contract* – The Third Cause of Action fails to state a claim upon which relief may be granted; See, p. 14 of HSBC's Motion to Dismiss;

4. *Fourth Cause of Action – Breach of Contract – Workout Agreement* - Plaintiffs' failure to fulfill the expressed conditions precedent contained in the purported Workout Agreement terminates HSBC's obligation to perform under said agreement as a matter of law. See, p. 16 of HSBC's Motion to Dismiss;

5. *Fifth Cause of Action – Breach of Fiduciary Duty* - As a matter of law, Plaintiffs' Fifth Cause of Action for Breach of Fiduciary Duty is barred since the relationship between HSBC and KSI is that of a debtor and a creditor and that with the principal shareholders is that of guarantors. See, p. 19, of HSBC's Motion to Dismiss;

    (a) The facts alleged, as a matter of law, fail to establish a fiduciary relationship;

6. *Sixth Cause of Action – Breach of Banking and Confidentiality Laws* - The Sixth Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted. See, p. 23 of HSBC's Motion to Dismiss.

In regards to the Sixth Cause of Action, Plaintiffs' argue that any defect could be cured by amendments to the complaint. See, p. 6 of Plaintiffs' Opposition. HSBC's argument as it

relates to this particular count is that no federal or Guam law exists that would support Plaintiffs' contention that the sale of this loan to a third-party is a violation of any banking or confidentiality law. Dismissal under Rule 12(b)(6) can be based on the lack of cognizable legal theory. See, Balistri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990); Cairns v. Franklin Mint Company, 24 F. Supp. 2d 1013, 1023 (C.D. Cal. 1998). Moreover, the Court does not have to grant a party a right to amend a complaint which would be deemed futile. It is important to note that the dispositive motion need only have a <u>clear possibility of success</u> when deciding to grant a stay of discovery rather than the use of the "immediately certain" or "forgone conclusion" standard. See, GTE Wireless, Inc. v. Qualcomm, Inc., 192 FRD 284, 287 (S.D. Cal. 2000).

Plaintiffs' reliance on the case of Hachette Distribution, Inc. v. Hudson County News Company, Inc., 136 FRD 356, 358 (E.D.N.Y. 1991), for support of its case is misplaced since the facts are clearly distinguishable from the instant case. In the Hachette case, there were multiple defendants in which at least two did not seek a stay of discovery when Hudson County News Company, Inc. filed its dispositive motion. Id. at p. 358. Moreover, the other two co-defendants had not filed any dispositive motions. Id. Also, the Court found that even if it would grant a motion to stay, the other two co-defendants had responded to the discovery. Id. at p. 359.

In Spencer Trask Software and Information Services, LLC v. Rpost International Ltd., 206 FRD 367 (S.D.N.Y. 2002), Plaintiffs brought an action alleging breach of contract, promissory estoppel, equitable estoppel, unjust enrichment and fraud. Id. at p. 376. In that case, the Court found that there were grounds to stay all discovery pending a ruling on defendant's 12(b)(6) motion and that the opposing party would not be prejudiced. Id.

Moreover, a stay is proper where the likelihood that such motion to dismiss may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay. See, Weisman v. Mediq, Inc., 1995 WL 273678 (E.D. Pa. 1995); citing Coca-Cola Bottling Company v. Grol, 1993 US Dist. Lexis 3734, at p. 6-7 (E.D. Pa.). The Court in Weisman went on to state:

> By imposing a stay while ruling on the motion, when discovery proceeds the parties will have full knowledge as to which claims are viable and, correspondingly, as to what discovery needs to occur. In short, the stay will potentially save time and money for all concerned. (emphasis added) Id.

## III.

**NOTWITHSTANDING THAT PREJUDICE IS NOT A FACTOR TO BE CONSIDERED BY COURT IN THE DETERMINATION OF WHETHER TO STAY DISCOVERY, THE CLAIM THAT PLAINTIFFS WOULD HAVE BEEN IN A BETTER POSITION HAD HSBC NOT SOLD THE LOAN IS CATEGORICALLY FALSE.**

Plaintiffs have failed to cite any authority for their claim that prejudice is a factor for the Court's determination on whether to stay discovery. The factors are highlighted on page 3 of HSBC's Motion to Stay. The Court in Weisman addressed the exact argument where Plaintiff argued that he would be prejudiced since a delay would result in the loss or alteration of potential evidence or witness testimony. Weisman, supra, at p. 2. In response to Plaintiff's argument, the Court stated:

> This case is no different from tens of hundreds of cases where a plaintiff accuses a defendant of fraudulent acts; such accusation does not carry with it a presumption that evidence would be destroyed nor is the argument proffered by plaintiff without evidentiary support, either direct or by inference sufficiently compelling to create such presumption. Id.

Similarly, just like comparable cases throughout the country, borrowers file frivolous lender liability claims against lenders claiming prejudice because the borrower has been foreclosed or the possibility of foreclosure exists against the borrower. Since Plaintiffs chose litigation, they have to deal with the delays that generally arise in litigation. This Court should not treat Plaintiffs any different from any other plaintiffs before this Court. Moreover, Plaintiffs should not look at this case as their lottery to pay off the loan.

On page 11 of Plaintiffs' Opposition to HSBC's Motion to Stay, Plaintiffs' claim that their loan payments are "extremely onerous," and that had HSBC allowed Plaintiffs to repay their loan they would not have to make such onerous payments. In addition, Plaintiffs state that ". . . while HSBC owned the loan, HSBC was making rental payments to Plaintiffs for the lease of the building in Tamuning, which paid a portion of the payments under the loan." See, p. 12 of Plaintiffs' Opposition.

Alan Sadhwani's statement on paragraph 6 of his Declaration that his payment to HSBC was significantly lower than $75,000.00 because of HSBC was making rental payments to Plaintiffs for the lease of HSBC building in Tamuning is false. On May 31, 2001, K. Sadhwani's Inc. ("KSI"), executed that certain Workout Agreement which called on monthly payments of $75,000.00 per month. See, p. 2 of Exhibit "1" attached to the Declaration of I.C. Underwood. On November 6, 2002, HSBC and KSI and its principal shareholders executed that certain Amendment to Credit Facility/Lease. See, Exhibit "2" attached to the Declaration of I.C. Underwood. Recital C of this Amendment provided, "it has been agreed that the lender prepay rental payments of $23,281.00 to borrower for the period of October 2002 through May 2003 which shall be applied to reduce the principal balance of the Note. . . ." Moreover, Section 5 of the Amendment provides:

> Monthly repayments of accrued principal and interest shall be modified from the existing $75,000.00 to the amount of $51,719.00. The decrease in monthly repayment represents the existing monthly repayment of $75,000.00 less the monthly rental payment of $23,281.00. The modified payment shall be payable on the 30th day of each month for the period of October 2002 to May 2003. Commencing June 30, 2003, the payment shall increase to the sum of $75,000.00 per month until the note is paid in full.

See, Exhibit "2" attached to the Declaration of I.C. Underwood.

In short, contrary to Alan Sadhwani's false allegations, KSI has been making payments of $75,000.00 from May 31, 2001 to September 2002, which thereafter resumed on June 30, 2003. Contrary to the false representation of Alan Sadhwani, the rental prepayments or credits were only for an eight month period. See, Section 5 of the Amendment to Credit Facility/Lease attached as Exhibit "2" to the Declaration of I.C. Underwood. It is also to be noted that HSBC vacated Plaintiffs' building on or about March, 2003. See, Declaration of I.C. Underwood. In short, Plaintiffs' claim of financial distress attributable to HSBC is disingenuous and should not be accorded much weight.

Moreover, the third-party buyer of the loan from HSBC has not placed Plaintiffs in default because of Plaintiffs' failure to make any monetary payment, but rather because Plaintiffs have failed to pay the balance of the loan after the loan matured, KSI's failure to pay real property taxes, and its failure to provide the current holder of the loan a current audit. See, Exhibit "1" to the Declaration of Alan Sadhwani.

This Court should not consider any prospective prejudice based on what Plaintiffs potential liabilities are or would have been depending upon the purported breach of HSBC's Workout Agreement. The alleged prejudiced must be present and not prospective.

Further, this Court should not put any credence in Plaintiffs' claimed ability to have obtained "alternative financing" to pay-off HSBC. It appears that Plaintiffs continue this attempt to mislead the Court regarding their claim to "alternative financing," despite the fact that First Hawaiian Bank denied Plaintiffs' application for commercial loan in the amount of $3.5M. In its Complaint, Plaintiffs stated that they had found "alternate financing," based on Exhibit "M" attached to the Complaint. Despite having knowledge of this fact since August 18, 2003, Plaintiffs continue this pattern of deceiving this Court that it had "alternative financing." As the letter from Patrick B. Oliva, the Assistant Vice President of First Hawaiian Bank shows, First Hawaiian Bank refused to extent credit to Plaintiffs because it was deemed to be "highly leveraged," had a "declining profit trend," and the "short term leases on rental property compared to the term of the proposed loan was not to the satisfaction of First Hawaiian Bank." See, Exhibit "1" attached to the Supplemental Declaration of Jacques G. Bronze.

Also, Plaintiffs' claim that their properties are worth more than the loan should not be provided any credence since Alan Sadhwani has failed to provide this Court with any evidence that he is a certified appraiser.

In addition, Plaintiffs' claim that they would be prejudiced if a stay was granted because HSBC is closing its office in Guam and that they would be forced to take depositions of "key witnesses" "off-island" and at a greater expense. Plaintiffs failed to cite any authorities why such argument amounts to prejudice. Again, Plaintiffs have chosen litigation and, thus, they have no choice but to bear the expense of litigation. Although HSBC has announced its closure of its Guam offices, the target date for closure is December of 2004. See, Declaration of I.C. Underwood. Thus, although Plaintiffs do not name who the "key witnesses" it is referring to, HSBC would surmise that Plaintiffs are referring to Messrs. Granillo and Underwood. In order

to alleviate Plaintiffs' concern, HSBC will agree to make Mr. I.C. Underwood available on Guam, for any deposition should they be relocated and the stay be granted. See, Declaration of I.C. Underwood. In addition, HSBC agrees to make Mr. Granillo available so long that he is employed with HSBC. See, Declaration of I.C. Underwood.

There should be no concern regarding the issues of fading memory since these events are very recent and HSBC is not asking for permanent stay. Moreover, since HSBC's motion to dismiss has been taken under advisement for over a month and a half, HSBC would expect that such Decision would be forthcoming soon. The Court should not consider Plaintiffs' claim of prejudice based on the fact that they have to take depositions of witnesses in foreign countries. Plaintiffs have chosen to sue a foreign corporation whose principal place of business is in Hongkong, thus, it is required under the Federal Rules to depose these officers at their principal place of business. Moreover, that is why Congress enacted FRCP 28(b) and why most nations have executed a portion of the Hague Convention relating to the taking of evidence abroad in civil and commercial matters.

Needless to say, this Court must balance Plaintiffs' claim of prejudice with the harm to be suffered by HSBC which also has to bear great expense to defend depositions despite the fact that the Court could very well dismiss all or part of Plaintiffs' Complaint. In addition, since Plaintiffs have taken the position that they should be allowed to amend their Complaint, and should the Court grant that right, without a stay these depositions would be meaningless since the factual allegations to be asserted in the Amended Complaint could not be tested or verified through the deposition process.

/ / /

/ / /

## IV.

### ANY DELAYS IN PROVIDING PLAINTIFFS' WITH THEIR REQUEST WAS EITHER A MISTAKE OR FULLY WARRANTED UNDER THE RULES OF FEDERAL CIVIL PROCEDURE UNDER THE CIRCUMSTANCES.

First, Plaintiffs argue that HSBC's failure to provide addresses and telephone numbers in their initial disclosures should be viewed as an attempt to avoid its discovery obligations. Since HSBC did not have all the pertinent information, it served Plaintiffs its initial disclosure with the information it had. See, Declaration of Jacques G. Bronze. In a letter dated January 23, 2004, HSBC's counsel specifically advised Plaintiffs that it was waiting for HSBC in Hongkong to provide some of the information so as to supplement its initial disclosures. See, Exhibit "2" attached to the Supplemental Declaration of Jacques G. Bronze. There is no dispute that FRCP 26(a) allows the parties to supplement their initial disclosures.

Secondly, Plaintiffs argue that HSBC has avoided its discovery obligations by refusing to answer Plaintiffs' First Set of Interrogatories and Request to Produce and Plaintiffs were required to execute a Stipulated Protective Order. See, p. 14 of Plaintiffs' Opposition. Plaintiffs attempt to place the cause of the claimed "months of wrangling" on HSBC could not be further from the truth. In a letter dated January 6, 2004, Plaintiffs forwarded various frivolous objections to the proposed Stipulated Protective Order which included a draft Stipulated Protective Order of their own despite the agreement with Plaintiffs made with HSBC's counsel that he should go ahead and prepare a draft Stipulated Protective Order. See, Exhibit "3" attached to the Declaration of Jacques G. Bronze. HSBC concedes that, due to the large volume of documents, there were documents that were missed, such as attachments to emails. However, once Plaintiffs pointed out these issues, HSBC immediately sought to address Plaintiffs

concerns. It was certainly not HSBC's intent to evade its discovery obligations. See, Declaration of Jacques G. Bronze.

Plaintiffs' assertion of this claim as a basis to support its argument that HSBC persistently avoids its discovery obligation is like the kettle calling the pot black. On December 16, 2003, HSBC forwarded a letter to Plaintiffs notifying them that they have failed to disclose and produce documents in their possession, which HSBC may use to support its claims of defenses as required by Rule 26(a)(1)(B). See, Declaration of Jacques G. Bronze. Specifically, the letter notified Plaintiffs that they have not provided any documents relating to the listing of the properties with Century 21 as well as all loan applications and other loan documents from First Hawaiian Bank. See, Declaration of Jacques G. Bronze. It was not until January 20, 2004, did Plaintiffs serve their Supplemental Initial Disclosures.

In addition, on January 5, 2004, HSBC forwarded a letter to Plaintiffs objecting to Plaintiffs conduct which it issued a Subpoena on the Custodian of Records of Paradise Marine Corporation, the third-party buyer of Plaintiffs' loan which was not served on HSBC's counsel's office until December 31, 2003. See, Declaration of Jacques G. Bronze. Based on Plaintiffs' conduct, HSBC had effectively one day to review and object, if necessary, to the Subpoena. See, Declaration of Jacques G. Bronze.

Finally, without citing to any authority, Plaintiffs' counsel argues that HSBC has avoided its discovery obligations when it failed to voluntary produce two employees working with HSBC's Hongkong office. As Plaintiffs' counsel well knows, since HSBC Guam is a foreign banking corporation, its principal place of business is not Guam and Plaintiffs are required under the Federal Rules of Civil Procedure to depose employees of such corporations at their principal place of business. HSBC is shocked at the gall of Plaintiffs' counsel who would not even

stipulate to an extra 15 pages for purposes of HSBC's filing of its motion to dismiss beyond the limits set by the Local Rules of Court. HSBC has no legal obligation to minimize Plaintiffs' burdens under FRCP 28(b).

In short, HSBC's conduct has not been dilatory and has acted within the ambit of the Federal Rules of Civil Procedure, notwithstanding, it has complied with all of Plaintiffs' requests. HSBC's motion to stay discovery is not propounded for purposes of delay, but to minimize the expenses of all parties and to protect HSBC from any prejudice that may arise should Plaintiffs be permitted to amended their complaint. See, Declaration of Jacques G. Bronze.

For the foregoing reasons, HSBC's motion to stay all depositions pending this Court's ruling on HSBC's Rule 12(b)(6) motion should be granted.

*Respectfully submitted* on this 5th day of April 2004.

    LAW OFFICES OF BRONZE & TANG
    A Professional Corporation

By: _____
    JACQUES G. BRONZE
    *Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*