FILED
DISTRICT COURT OF GUAM

APR - 9 2004

MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ALAN SADHWANI *et al.*, | Civil Case No. 03-00036 |
| Plaintiffs, | |
| vs. | |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., *et al.*, | ORDER |
| Defendants. | |

On February 13, 2004, this case came before the Court for hearing on a Motion to Dismiss filed by defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC"). Present at the hearing were Attorneys Anita P. Arriola and Joaquin C. Arriola for the Plaintiffs. Attorney Jacques A. Bronze appeared on behalf of HSBC. At the conclusion of the hearing, the Court took the motion under advisement. The Court now issues this written Order setting forth the bases for its rulings herein.

## FACTS

The Complaint raises six separate causes of action which arise out of a long relationship between the parties. The Plaintiffs have been customers of HSBC for approximately 25 years. Complaint at ¶5. The Plaintiffs first went into business as Tick Tock, in 1978. Id. Mr. Sadhwani met the then manager of HSBC in 1978 and has since banked exclusively with HSBC (with the exception for credit card deposits to Citibank because HSBC, a foreign corporation, did not accept credit card deposits from merchants). Id. The Plaintiffs assert that all of their deposits and borrowings were with HSBC exclusively. Id. Over the 25 years, the Plaintiffs have

1    deposited about $100 million with HSBC. Id. The Plaintiffs also socialized with the bank

2    managers (who changed every 3 years) at Mr. Sadhwani's home, at the home of the bank

3    managers, or in restaurants. Id. By virtue of this long-standing relationship, the Plaintiffs assert

4    that they placed explicit faith, trust, and confidence in HSBC, trusting that the bank and its

5    officers/employees would deal with them in a fair and honest manner. Id.

6        In September 2002, the Plaintiffs had an outstanding loan balance of over $6.8 million

7    with HSBC (the "Loan"). When HSBC determined it would discontinue its operations in Guam,

8    it "placed pressure" on the Plaintiffs to pay off the Loan.[1] Thus, on March 5, 2003, the parties

9    entered into a Promissory Note Modification Agreement (see Exhibit C to Complaint), which

10    extended the maturity date of the Note to August 31, 2003.

11        Prior to March 5, 2003, however, the parties met on February 13, 2003. HSBC sent a

12    letter to Mr. Sadhwani on February 17, 2003 (see Exhibit B to Complaint). This letter purports

13    to memorialize the February 13, 2003 meeting wherein the parties discussed, among other things,

14    extending the maturity date of the Note to the end of August 2003 and Mr. Sadhwani's listing of

15    certain securing real estate properties with Century 21.

16        Following the execution of the Promissory Note Modification Agreement, on

17    March 6, 2003, HSBC sent a letter to Mr. Sadhwani (see Exhibit D to Complaint). The letter

18    reiterated the parties' discussions on March 5, 2003. The letter indicates that Mr. Sadhwani had

19    agreed to provide HSBC with a written plan by March 12, 2003. Said written plan would explain

20    how Mr. Sadhwani would repay the Note by the due date. Additionally, the letter stated that

21    HSBC was "prepared, without in any way committing itself at this stage, to consider a discount

22    on the loan balance if [Mr. Sadhwani] elect[ed] to give the secured properties to [HSBC]. This

23    'friendly foreclosure' method would transfer the burden of property liquidation to [HSBC] and

24    minimise (sic) legal fees for both parties." Exhibit D to Complaint at ¶3. HSBC went on to state

25    that if Mr. Sadhwani wished "to explore this approach," he should assign a value to the property

26

27

     [1] HSBC's decision to discontinue its operations in Guam appears to be the propelling event

28    in this lawsuit.

1    a submit a written proposal for HSBC's consideration.  Id.

2          On March 13, 2003, HSBC again wrote to Mr. Sadhwani.  See Exhibit E to Complaint.

3    The letter stated that Mr. Sadhwani had failed to provide the written plan by March 12, 2003 as

4    agreed upon.  HSBC stated that it would need the written plan by that day (March 13, 2003) so

5    that it could "understand how [Mr. Sadhwani] intend[s] on repaying the loan by the revised

6    maturity date."  Id.  The bank also urged Mr. Sadhwani to "consider [its] recommended approach

7    under 'friendly foreclosure.'"  Id.

8          On March 14, 2003, Mr. Sadhwani wrote to HSBC.  See Exhibit F to Complaint.  Mr.

9    Sadhwani stated that he was "working with a bank to pay off [the] outstanding loan with

10   [HSBC]."  Id.  Mr. Sadhwani requested more information about the "friendly foreclosure" since

11   he did not understand what exactly HSBC wanted.  Id.  Mr. Sadhwani also asked HSBC to

12   explain the "discounting" and how that would happen.  Id.

13         On March 21, 2003, HSBC once again wrote to Mr. Sadhwani.  See Exhibit G to

14   Complaint.  This letter (which the Plaintiffs refer to as the "work out agreement" in the

15   Complaint and in its Opposition Brief) detailed several options which HSBC gave to the

16   Plaintiffs.  See id.  The first option was that Mr. Sadhwani could continue to list his properties

17   with Century 21.  If he was able to sell the property at market price and had the listing

18   agreements, the Bank "may consider tolling collection efforts pending the closing in escrow of

19   written accepted purchase offers with net proceeds paid to [HSBC]."  Id.  In the event he was

20   unable to sell the properties through Century 21, Mr. Sadhwani's second option was that HSBC

21   "may consider accepting deeds in lieu of foreclosure at negotiated values."  Id.  Finally, Mr.

22   Sadhwani could avoid the entire process if he were "seriously making an effort to refinance [the]

23   loan facility."  Id.  If Mr. Sadhwani was proceeding via this route, HSBC requested "immediate

24   confirmation of your loan application and efforts to obtaining refinancing."  Id.  HSBC stated

25   that it was "ready, able and willing to assist [Mr. Sadhwani's] negotiation of replacement

26   financing."  Id.  In conclusion, HSBC requested Mr. Sadhwani to respond to the letter with the

27   required information by April 4, 2003.

28         In reliance upon this "work out agreement," the Plaintiffs assert that they took all

1  necessary steps to either sell their properties or try to obtain alternate financing.  On

2  April 3, 2003, Century 21 provided Mr. Sadhwani with a letter detailing its efforts to market the

3  Plaintiffs' properties.  See Exhibit H to Complaint.  Additionally, Mr. Sadhwani wrote to HSBC

4  on April 4, 2003, informing it that he tried to get the refinancing but had not yet received a

5  confirmation of the loan.  See Exhibit J to Complaint.  Also, Mr. Sadhwani stated that he was

6  still trying to sell the properties but that if he was unsuccessful, he would hand them over to

7  HSBC.  Mr. Sadhwani pleaded for "sometime" since he was working to satisfy the outstanding

8  loan.  Id.

9          On July 18, 2003, the Plaintiffs received from HSBC a "Notice of Intent to Sell Loan"

10  (dated July 15, 2003).  See Exhibit K to Complaint.

11          On July 22, 2003, Mr. Underwood, the Guam Manager of HSBC, met with Mr. Sadhwani

12  at Mr. Sadhwani's office.  See Complaint at ¶ 17.  Mr. Sadhwani pleaded with Mr. Underwood

13  not to sell the Loan and offered him $3 million to settle the Loan.  Mr. Underwood stated that

14  HSBC would not accept that amount.  Thus, Mr. Sadhwani asked whether $3.5 million would be

15  sufficient.  Mr. Underwood stated "Get me the money or guarantee, and I will try to stop the

16  sale."  Id.

17          On July 31, 2003, Mr. Sadhwani wrote to Mr. Underwood and detailed his attempts to

18  settle the Loan.  See Exhibit L to Complaint.  Thereafter, Messrs. Sadhwani and Underwood met

19  again, and Mr. Underwood assured Mr. Sadhwani that if he received the offer (i.e., money or

20  bank letter) by August 8, 2003, Mr. Underwood would "see what [he could] do."  Complaint

21  at ¶ 18.

22          On August 5, 2003, Mr. Sadhwani sent HSBC a copy of a letter from First Hawaiian

23  Bank  See Exhibit M to Complaint.  The letter was an "indication of the terms and conditions"

24  for financing a loan to the Plaintiffs to pay off the HSBC Loan.  Id.  The letter explicitly stated

25  that it should "not be construed as a commitment on the part of [First Hawaiian Bank], and is

26  only provided for indication purposes only."  Id.

27          On August 11, 2003, HSBC sent Mr. Sadhwani a letter informing him that as of

28  August 11, 2003, the Loan was sold to Paradise Marine Corporation.  See Exhibit O to

- 4 -

1   Complaint.

2           Thereafter, the Plaintiffs brought suit against HSBC and Doe defendants in the Superior

3   Court of Guam asserting six (6) separate causes of action. HSBC removed the action to this

4   Court based on diversity jurisdiction. Shortly thereafter, HSBC brought the present Motion to

5   Dismiss. The Plaintiffs filed an Opposition Brief, and HSBC filed a Reply Brief. Because

6   separate grounds are raised to dismiss the various causes of action, the Court will address each

7   one in turn.

8                                           **ANALYSIS**

9           Standard for Motions to Dismiss

10          As noted by the Plaintiffs, a motion to dismiss for failure to state a claim is viewed with

11  disfavor and is rarely granted. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997)

12  (citing Hall v. City of Santa Barbara, 833 F.2d 1270, 1274) (9th Cir. 1986), *cert. denied*, 485

13  U.S. 940, 108 S. Ct. 1120 (1988)(overruled on other grounds)). This is because courts prefer to

14  rule on the merits of a case rather than dismiss on the pleadings. Cabo Distrib. Co., Inv. v.

15  Brady, 821 F. Supp. 601, 608 (N.D. Cal. 1992). Thus, "a complaint should not be dismissed . . .

16  unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

17  which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102

18  (1957). All allegations of material fact must be taken as true and construed in the light most

19  favorable to the plaintiff. Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000), *cert.*

20  *denied*, 532 U.S. 1021, 121 S. Ct. 1962 (2001). The Court's role at this stage of the proceedings

21  is not to evaluate the strengths or weaknesses of the claims. See Scheuer v. Rhodes, 416

22  U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974) (In evaluating a Rule 12(b)(6) motion to dismiss

23  "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

24  to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a

25  recovery is very remote and unlikely but that is not the test.")(overruled on other grounds). With

26  this standard in mind, the Court now turns to the arguments raised in support of the dismissal of

27  each cause of action.

28  ///

1    <u>1st Cause of Action – Breach of Covenant of Good Faith & Fair Dealing</u>

2    The first count of the Complaint alleges that HSBC acted in bad faith and failed to deal

3    fairly with the Plaintiffs when it refused to agree to a commercially reasonable workout and

4    refused to accept the alternative financing obtained by the Plaintiffs. <u>See</u> Complaint at ¶29.

5    HSBC argues that this cause of action should be dismissed for two reasons. First, HSBC

6    contends that such a cause of action is not recognized by Guam law outside of insurance actions.

7    In the alternative, HSBC argues that even if the cause of action was legally cognizable, the

8    Plaintiffs fail to allege facts to support such a claim.

9    As to HSBC's first argument, it is important to note that under the *Erie Doctrine*, in

10   diversity cases, the federal court must apply state substantive law. <u>Erie R. Co. v. Tompkins</u>, 304

11   U.S. 64, 58 S. Ct. 817 (1938). The parties agree on this point. Thus, the focus is on whether

12   Guam law would permit such an action in tort.

13   Most bad faith claims stemming from a contractual relationship arise in the insurer-

14   insured context, and HSBC's motion cites to a plethora of these cases. HSBC's motion also

15   notes that many courts have refused to recognize a bad faith action when a duty is breached in

16   commercial contract cases outside of the insurance arena, holding instead that the aggrieved party

17   merely has a breach of contract claim. HSBC contends that this is "an issue of first impression in

18   Guam courts," and thus this Court must use "its own best judgment" in predicting how the Guam

19   Supreme Court would rule on the matter. Motion at 1-2. However, as the Plaintiffs point out,

20   while the Guam Supreme Court has not ruled on the issue, a Superior Court of Guam judge has

21   held that such a cause of action is cognizable under Guam law. <u>See Ada's Inc., *et al.* v. First</u>

22   <u>Hawaiian Bank, *et al.*</u>, Superior Court of Guam Civil Case No. CV0785-02, Decision and Order

23   (July 7, 2003) (authored by Judge Joaquin V.E. Manibusan, Jr.), attached as Exhibit 1 to

24   Plaintiffs' Opposition Brief. The Plaintiffs urge the Court to follow the reasoning established in

25   <u>Ada</u> by Judge Manibusan. Because a Guam court has ruled on the matter, the Plaintiffs assert

26   that all the other cases cited to by HSBC are irrelevant since the Court must apply Guam

27   substantive law.

28   The facts of <u>Ada</u> are similar to those in the present case. There, the plaintiffs were

- 6 -

1    customers of First Hawaiian Bank ("FHB"). The plaintiffs sought damages for breach of the

2    covenant of good faith and for breach of contract. FHB moved to dismiss and argued that when a

3    duty in a commercial contract is breached, the resulting claim is merely one for breach of

4    contract and no tort damages are available. The Ada decision, however, noted that

> [t]he concept of a bad faith action within the context of a breach of a commercial
> contract in the banking area is relatively new and changing. Courts are beginning
> to see that such actions are plausible in the context of certain pleadings. Some see
> no difference between the problem of a bank customer and that of an insured.
> Ada at 9.

> The Ada decision analyzed a variety of cases on the issue and held that

> when a customer complains of a breach by a bank of a commercial contract a
> breach of contract action should be an appropriate remedy. **However, a bad faith
> action commenced by a customer should not be dismissed simply because
> there is an available remedy under a breach of contract claim or merely
> because of the filing of the breach of contract claim.** It is after all the general
> rule of law that a bank is required to adhere to an implied duty of good faith and
> fair dealing toward its customers. A bank's failure to adhere to this implied duty
> should not bar a bad faith action merely because there is a remedy in a breach of
> contract action. Furthermore, the fact that there is such a duty on banks with
> regards to their relationships with their customers indicate[s that a bad faith
> action] . . . is authorized under the law when facts alleging such bad faith are
> plead. **Plaintiffs must allege some act of dishonesty by the bank and allege
> that the bank acted outside accepted commercial practices. When Plaintiffs
> do make such allegations, an appropriate cause of action is raised by the
> Plaintiff.** Id. at 11 (emphasis added).

     The Court finds Judge Manibusan's decision to be well reasoned. Based on this decision,
it appears that in the banking arena, Guam law would recognize a cause of action for breach of
bad faith arising from a breach of a commercial contract between a customer and a bank.
Nevertheless, HSBC urges the Court to ignore this local case on the basis that the Ada decision
relied on the case of Seamen's Direct Buying Service, Inc. v. Standard Oil Co., 206 Cal.
Rptr. 354 (1984), yet the Seamen's case and its progeny were overruled by the California
Supreme Court decision in Freeman & Mills Inc. v. Belcher Oil Co., 44 Cal. Rptr.2d 420 (1995).
This argument is unconvincing. The Freeman case was decided in 1995. The Ada decision was
issued in July 2003. It would be reasonable to presume that Judge Manibusan was aware that
Freeman overruled the Seamen's case, yet, because California caselaw is merely persuasive and
not controlling, chose to follow the reasoning in Seamen's.

1    Additionally, it is important to note that neither the Seaman's or Freeman case involved

2  the breach of a commercial contract between a bank and a customer. Rather, the Seaman's case

3  involved a would-be dealer and an oil company, while the Freeman case concerned a contract

4  between an accounting firm and an oil company.

5    While the Freeman case overruled the Seamen's decision, the California Supreme Court

6  did so "in favor of a general rule precluding tort recovery for noninsurance contract breach, *at*

7  *least in the absence of violation of 'an independent duty arising from principles of tort law'* other

8  than the bad faith denial of the existence of, or liability under, the breached contract." Freeman,

9  900 F.2f at 679-80 (internal citation omitted) (emphasis added). The California Supreme Court

10  affirmed the finding of the Court of Appeal majority that no "special relationship" between the

11  parties existed to justify a tort theory of recovery. Id. at 671. Thus, the Ada decision does not

12  conflict with the Freeman holding as Judge Manibusan found the existence of a "special

13  relationship" in that banks have an implied duty of duty of good faith and fair dealing toward its

14  customers. Similarly, in this case the Complaint does allege sufficient facts to support a finding

15  that a "special relationship" existed between the Plaintiffs and HSBC.

16    The Court is bound by substantive local law on this issue. Although there is no definitive

17  ruling by the Guam Supreme Court, the Court has before it a valid and well-reasoned decision by

18  the Superior Court of Guam. The Court cannot and will not simply ignore this local decision

19  which recognizes a cause of action available to plaintiffs under Guam law. Accordingly, the

20  Court rejects HSBC's contention that the first cause of action should be dismissed as a matter of

21  law.

22    As for its second argument, HSBC maintains that the Plaintiffs' allegations are

23  insufficient to support such a claim. The Court notes it must assume that all facts in the

24  Complaint are true and must draw all reasonable inferences in the Plaintiffs' favor. The Court

25  does not have the option, at this stage, of evaluating the strengths and weaknesses of the claims.

26  Based on this standard, the Complaint sufficiently alleges facts that HSBC acted dishonestly and

27  that it acted outside accepted commercial practices. Accordingly, the motion to dismiss the First

28  cause of action must be denied.

1          2nd Cause of Action – Intentional Misrepresentation

2          The Plaintiffs' Second cause of action asserts that HSBC intentionally misrepresented

3    that it was interested in pursuing a commercially reasonable work out, when it had no desire or

4    intention to work out the Loan.  See Complaint at ¶36.

5          HSBC raises two arguments why this cause of action should be dismissed.  First, HSBC

6    argues that because the Plaintiffs themselves failed to comply with the work out agreement by

7    failing to obtain the alternative financing (a condition precedent), it should not be held

8    responsible under the work out agreement.  HSBC, however, fails to cite any authority for this

9    proposition.  The Plaintiffs should not be barred from alleging a claim against HSBC for

10   intentional misrepresentation just because the they were only able to obtain an indication letter

11   and not a commitment letter.  The indication letter does show action by the Plaintiffs in

12   accordance with the work out agreement.

13         HSBC's second argument is that its actions (or alleged misrepresentations) could not give

14   rise to this cause of action because they were "mere promises of future conduct."  Motion

15   at 12-14.  HSBC, however, misses the whole point behind the Plaintiffs' allegations.  The

16   Plaintiffs do not allege that HSBC promised to take action in the future but failed to do so.

17   Rather, the Complaint alleges that HSBC made specific representations to the Plaintiffs knowing

18   full well that it had no intention of performing.  Specifically, the Complaint alleges that HSBC

19   represented to the Plaintiffs that it would accept sales of the securing real properties and/or

20   alternate financing when in fact HSBC was in the process of selling the Loan, yet it continued to

21   let the Plaintiffs believe such representations even after the Loan was sold.  Based on these

22   allegations, the Complaint sufficiently establishes a claim for intentional misrepresentation.

23   Thus, HSBC's motion to dismiss the Second cause of action must also be denied.

24         3rd Cause of Action – Breach of Contract: Promissory Note Modification Agreement

25         The Third cause of action asserts that HSBC breached the March 5, 2003 Promissory

26   Note Modification Agreement entered into by the parties.  Specifically, HSBC breached said

27   agreement by (1) failing to review the Note every 6 months, see Complaint at ¶41, and (2) selling

28   the Loan to Paradise Marine Corporation, see Complaint at ¶ 42.

1    HSBC contends that the allegations supporting this cause of action fail to state a claim

2  against HSBC upon which relief may be granted.  Specifically, HSBC maintains that under

3  Guam law, a promissory note which evidences a loan is a negotiable instrument.  13 GUAM CODE

4  ANN. § 3104.  Additionally, under Guam law a right arising out of an obligation is the property

5  of the person to whom it is due and may be freely transferred.  18 GUAM CODE ANN. § 81102.

6  There is nothing in the March 5, 2003 Promissory Note Modification Agreement which prohibits

7  a transfer, sale, or assignment of the Note.  Thus, HSBC asserts that selling the Loan to Paradise

8  Marine Corporation ("PMC") could not form the basis for a breach of contract action.

9    The Plaintiffs do not discuss this issue in detail in their Opposition Brief.  The Plaintiffs

10  do state "when HSBC sold the Loan to PMC, HSBC breached the Loan agreement, **as amended**

11  **by the workout agreement."**  Plaintiffs' Opposition Brief at 11 (emphasis added).  As HSBC

12  notes, the Plaintiffs are confined by the actual words of the Complaint, and, unfortunately, the

13  Third cause of action does not make any reference to the purported "work out agreement."

14    Additionally, HSBC states that the Plaintiffs' argument that HSBC somehow breached

15  the Promissory Note Modification Agreement by not reviewing the Loan every six months is

16  without merit.  The Promissory Noted Modification Agreement was entered on March 5, 2003,

17  yet the maturity date of the Note was set at August 31, 2003.  The maturity date was less than 6

18  months away.  Thus, what benefit is there to a review of the Note after the Note was supposed to

19  be paid in full.

20    HSBC's motion to dismiss as to the Third cause of action is hereby granted.  Even

21  viewing the facts in a light most favorable to the Plaintiffs, the Complaint fails to state a claim

22  against HSBC upon which relief may be granted.  However, this failure may be cured by

23  amendment.  Thus, dismissal of this cause of action is without prejudice.

24    4th Cause of Action – Breach of Contract: Work Out Agreement

25    The Plaintiffs' Fourth cause of action asserts that HSBC breached the work out agreement

26  (Exhibit G to Complaint).  Specifically, ¶46 of the Complaint states that

27    [HSBC] failed to assist Plaintiffs' negotiations for replacement financing; refused
     to accept the replacement financing as detailed in the terms and conditions for
28    alternative financing from [FHB]; failed to give a "hairline discount" on the Loan

- 10 -

1  when Plaintiffs obtained the terms and conditions for alternative financing from
   [FHB]; and sold the Loan to [PMC] instead of complying with the parties' work
2  out agreement. All of these acts constitute breaches of the work out agreement.

3  HSBC asserts that dismissal of this cause of action is warranted. HSBC contends that

4  since the Plaintiffs failed to fulfill the express conditions precedent contained in the alleged work

5  out agreement, this failure terminates HSBC's reciprocal obligation to perform under the said

6  agreement. A similar argument was raised by HSBC in an attempt to dismiss the Second cause

7  of action, but rejected by the Court. Likewise, the Court rejects the argument as it pertains to the

8  Fourth cause of action. Moreover, as the Plaintiffs assert, the requirements of actually selling the

9  properties and obtaining a commitment letter for alternate financing cannot be construed as

10 "conditions precedent" since the work out agreement does not specify a time limitation for

11 Plaintiffs to provide evidence of such efforts. Thus, only a reasonable length of time for

12 performance is required. The Plaintiffs contend that HSBC did not give the Plaintiffs a

13 reasonable period of time to obtain the alternate financing or close sales on the properties.

14 Unlike the Third cause of action which failed to sufficiently state a cause of action against

15 HSBC, in this case, construing the facts contained in the Complaint as true and resolving all

16 reasonable inferences in favor of the Plaintiffs, the Court finds that the Complaint sufficiently

17 alleges a cause of action for breach of the work out agreement. Accordingly, HSBC's motion as

18 to the Fourth cause of action is hereby denied.

19 ### 5th Cause of Action – Breach of Fiduciary Duty

20 The Fifth cause of action asserts a breach of fiduciary duty claim against HSBC. The

21 Complaint describes the fiduciary relationship as follows:

22    [b]ecause of the longstanding, close and confidential relationship between
      [HSBC] and Plaintiffs, and by virtue of the trust and confidence which [HSBC]
23    encouraged Plaintiffs to place in [it] and which the Plaintiffs did place in [HSBC],
      as well as the assurances that [HSBC] gave Plaintiffs that it would agree to a
24    commercially reasonable work out, [HSBC] owed to Plaintiffs a duty of fiduciary
      care. Complaint at ¶49.
25

26 Specifically, the Complaint asserts specific acts by HSBC which resulted in the breach of

27 this fiduciary duty:

28    A. By disclosing confidential information, including but not limited to, account

- 11 -

1
2
and deposit information, loan payment history, and other banking transactions between Plaintiffs and [HSBC], to [PMC], a non-bank and purchaser of Plaintiffs' Loan with [HSBC];

B.  By failing to assist Plaintiffs' negotiations for replacement financing, as [HSBC] had represented;

3
4
C.  By refusing to accept the replacement financing as detailed in the terms and conditions for such financing from FHB and as required by the parties' work out agreement;

5
D.  By failing to give a "hairline discount" on Plaintiffs' Loan when Plaintiffs obtained the terms and conditions for alternative financing from [FHB];

6
E.  By selling the Loan to [PMC], a Guam corporation that is not licensed to conduct banking and has never conducted banking business in Guam.

7
Complaint at ¶50.

8

9
HSBC acknowledges that under certain special circumstances, a lender may be found to

10
have a fiduciary relationship with a borrower.  However, HSBC maintains that in this case, the

11
Fifth cause of action should be dismissed because the Complaint is devoid of any facts

12
delineating how the relationship of trust and confidence arose or any other special circumstances

13
that would establish a fiduciary relationship.

14
Again, the Court cannot evaluate the strengths and weaknesses of the claims.  Rather, the

15
Court must accept as true the facts alleged in the Complaint, and it must also draw all reasonable

16
inferences in favor of the Plaintiffs.  Based on this standard and the facts alleged, the Complaint

17
sufficiently states a cause of action for breach of fiduciary duty.  Accordingly, HSBC's attempts

18
to dismiss the Fifth cause of action is denied.

### 6th Cause of Action – Breach of Banking and Confidentiality Laws

19
The Sixth and final cause of action alleged in the Complaint is that

20
21
22
23
[a]bsent the consent of the plaintiffs, [HSBC] expressly or impliedly agreed that it . . . [would] not divulge to third persons the terms or the state of Plaintiffs' accounts with [HSBC], any of their transactions with [HSBC], or any other information about the Plaintiffs acquired by [HSBC] through the 25 years of their banking relationship.  The negotiation, sale, assignment, and transfer of Plaintiffs' Loan to [Paradise Marine Corporation] constitutes a breach of banking and confidentiality laws by [HSBC]."  Complaint at ¶57.

24

25
HSBC complains that this cause of action must be dismissed because it (1) has no legal

26
basis and (2) fails to allege any damages from the alleged breach.  HSBC asserts that the

27
Complaint does not cite to any law – federal or local – which would forbid it from assigning its

28
rights under the Note to a third party.  Additionally, the Complaint fails to allege any damages

- 12 -

1 which resulted from the purported breach, and without damages Plaintiffs have no cause of

2 action.

3        As to the first argument, HSBC is correct. Although the Federal Rules of Civil Procedure

4 permit liberal "notice pleading" and do not require specificity with regard to the correct legal

5 theory or statute, see Fed. R. Civ. P. 8(a), the complaint must contain sufficient notice to permit

6 HSBC to prepare a defense. Here, the Complaint merely alleges a breach of "banking and

7 confidentiality laws." The banking industry is a highly regulated one. There are a myriad of

8 federal and local laws with which banks must comply. It is unreasonable to expect HSBC to sort

9 through all banking laws and regulations to determine which one (or ones) it allegedly violated.

10       Additionally, the Plaintiffs have failed to allege how they have been injured or damaged

11 by this alleged "breach of banking and confidentiality laws." Thus, the Court must dismiss this

12 cause of action, however, such dismissal is without prejudice. The Plaintiffs are permitted to

13 amend their Complaint to re-assert this cause of action and to specify what law(s) HSBC

14 allegedly violated.

15                              **CONCLUSION**

16       The Court hereby DENIES the Motion to Dismiss as to the First, Second, Fourth, and

17 Fifth Causes of Action. Additionally, the Court GRANTS the Motion to Dismiss as to the Third

18 and Sixth Causes of Action, which are dismissed without prejudice. The Plaintiffs are hereby

19 permitted to amend their Complaint to re-assert the dismissed causes of action.

20       SO ORDERED this 9th day of April, 2004.

21

22

23                                        JOHN S. UNPINGCO
                                          District Judge
24    Notice is hereby given that this document was
      entered on the docket on __APR 1 2 2004__.
25    No seperate notice of entry on the docket will
      be issued by this Court.
26         Mary L. M. Moran
           Clerk, District Court of Guam
27
      By:_____    APR 1 2 2004
28    Deputy Clerk          Date