Joaquin C. Arriola
Anita P. Arriola
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Telecopier: (671) 477-9734



FILED
DISTRICT COURT OF GUAM

APR 27 2004

MARY L. M. MORAN
CLERK OF COURT

85

Counsel for Plaintiffs Alan Sadhwani, Laju Sadhwani,
and K. Sadhwani's Inc., a Guam corporation

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

<table>
<tr><td>

**ALAN SADHWANI, LAJU
SADHWANI, and K. SADHWANI'S
INC., a Guam corporation,**

Plaintiffs,

       **vs.**

**HONGKONG AND SHANGHAI
BANKING CORPORATION, LTD., a
foreign corporation, JOHN DOE I
through JOHN DOE X,**

Defendants.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

CIVIL CASE NO. CV03-00036


**FIRST AMENDED COMPLAINT
FOR DAMAGES; DEMAND
FOR JURY TRIAL**

</td></tr>
</table>

Plaintiffs complain of Defendants:

    1.    Jurisdiction is vested in this Court pursuant to Section 3105, Title 7, Guam

Code Annotated, this being an action arising under the laws of Guam.

    2.    Plaintiffs Alan Sadhwani and Laju Sadhwani are husband and wife, residents

of Guam for many years. K. Sadhwani's Inc., is a Guam corporation authorized and

licensed to do business in Guam. Defendant Hongkong & Shanghai Banking Corporation,

Ltd., is a foreign corporation licensed and authorized to do banking business in Guam.

ORIGINAL

3. Defendants John Doe I through John Doe X, are the fictitious names of defendants whose true names are unknown to the Plaintiffs, and Plaintiffs ask that when such true names are discovered that this Complaint may be amended by inserting such true names in the place and stead of said fictitious names.

4. At all times material herein, Plaintiffs have engaged in the business of acquiring real properties and developing them. They have also engaged in the business of leasing, renting real properties, including offices and other commercial building, and selling electronics, fixtures and appliances. At all times material herein, Defendant Hongkong & Shanghai Banking Corporation, Ltd. (hereafter "Defendant Bank") was in the business of a full service bank, lending funds to customers, taking mortgages, security instruments and other evidences of indebtedness, and taking deposits.

5. Plaintiffs have been for about twenty five (25) years, customers of Defendant Bank, executing and delivering to Defendant Bank evidences of their indebtedness secured by mortgages and other security instruments, and depositing funds in Defendant Bank. Plaintiffs went into business, Tick Tock, in 1978. Mr. Sadhwani met the then Manager of Defendant Bank, in 1978, at a meeting of Rotarians, and since then has banked exclusively with Defendant Bank (except for credit card deposits to Citibank, because Defendant Bank, a foreign corporation, did not accept credit card deposits from merchants). All of Plaintiffs' deposits and borrowings, were with Defendant Bank exclusively. Plaintiffs deposited

-2-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

about $100 million with Defendant Bank during these twenty-five (25) years. Throughout the years, plaintiffs would borrow money from Defendant Bank, purchase real properties and develop them, and/or develop their retail business of electronics, fixtures and appliances. At one time, Plaintiffs total obligation to Defendant Bank was $12 million. Mr. Sadhwani negotiated with Defendant Bank to build their Bank building in Tamuning, thus becoming Defendant Bank's Landlord. In addition to the long-standing relationship, Plaintiffs also had social relationships with the Defendant Bank. The Sadhwanis socialized with Bank Managers (who changed every 3 years) at Mr. Sadhwani's home, at the home of the Bank Managers, or in restaurants. As borrowers, Plaintiffs have paid the Defendant Bank thousands of dollars in interest and fees. By virtue of such long relationship, Plaintiffs placed explicit faith, trust, and confidence in the Defendant Bank, trusting that the Defendant Bank and its officers and employees would deal fairly and honestly with them, the Plaintiffs.

6. On November 6, 2002, Plaintiffs and Defendant Bank entered into an agreement entitled "Amendment to Credit Facility/Lease" a copy of which is attached as **Exhibit "A"**. Pursuant to this Agreement, the balance of Plaintiffs' Note to Defendant Bank was $6,821,494.56, as of September 27, 2002 (hereafter the "Loan").

7. On February 13, 2003, representatives of the Defendant Bank met with Plaintiff Alan Sadhwani (hereafter "Mr. Sadhwani"), and informed Mr. Sadhwani that

-3-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

HSBC would close its office in Guam. On February 17, 2003, the Defendant Bank wrote to Mr. Sadhwani purportedly memorializing the discussion which took place on February 13, 2003. A copy of Defendant Bank's letter is attached as **Exhibit "B"**.

8.      On March 5, 2003, Mr. Sadhwani met with representatives of the Defendant Bank at the Defendant Bank's office, at which time representatives of the Defendant Bank informed Mr. Sadhwani that Defendant Bank would give a "hairline discount" if Plaintiffs paid off the Loan.    Additionally, said representatives suggested a "friendly foreclosure". Based upon these representations, Mr. Sadhwani was induced to believe that if he found funding for repayment of the Plaintiffs' Loan with Defendant Bank, the Defendant Bank would discount or reduce the balance of the Loan.    On the same date, Plaintiffs and Defendant Bank entered into an agreement entitled "Promissory Note Modification Agreement", a copy of which is attached and marked **Exhibit " C "**.

9.      On March 6, 2003, Defendant Bank wrote to the Plaintiffs again reiterating that the Defendant Bank would consider a discount on the Loan and a "friendly foreclosure". A copy of such letter is attached as **Exhibit "D"**.

10.     By letter dated March 13, 2003, Defendant Bank reiterated its recommendation for a "friendly foreclosure". A copy of said letter is attached as **Exhibit "E"**.

11.     By letter dated March 14, 2003, Mr. Sadhwani requested clarification and

-4-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

asked for details about the "friendly foreclosure". Additionally, Mr. Sadhwani requested

more information about the "discount" which was offered by the Defendant Bank in the

March 5, 2003 meeting. A copy of such letter is attached as **Exhibit "F"**.

12.  By letter dated March 21, 2003, Defendant Bank offered three proposals to

work out the Loan: Plaintiffs could sell the mortgaged properties; Plaintiffs could execute

deeds in lieu of foreclosure at "negotiated values;" or Plaintiffs could refinance the Loan.

Additionally, Defendant Bank assured Plaintiffs that " . . . Bank is ready, able and willing

to assist . . ." Plaintiffs in their " . . . negotiation of replacement financing." A copy of such

letter is attached as **Exhibit "G"**.

13.  Plaintiffs accepted Defendant Bank's first and third proposals. Pursuant to

the on-going work out agreement with Defendant Bank, Plaintiffs sought the services of

Century 21, to find buyers for the properties subject to the Defendant Bank mortgage. By

letter dated April 3, 2003, Century 21 reported on its efforts to sell the properties. A copy

of such letter is attached as **Exhibit "H"**.

14.  By letter dated April 3, 2003, Defendant Bank transmitted a copy of the

Promissory Note Modification dated March 5, 2003. A copy of such letter is attached as

**Exhibit "I"**.

15.  By letter dated April 4, 2003, Mr. Sadhwani wrote to Defendant Bank

notifying it that he was trying to obtain financing to pay off Plaintiff's Loan, and the

-5-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

attempt to sell the properties to pay off the Loan, enclosing a copy of the Century 21 letter (Exhibit "H"). A copy of such letter is attached and marked **Exhibit "J"**.

16. While plaintiffs were attempting to find alternate financing and to sell their properties in furtherance of the workout agreement, in early May 2003 HSBC, without plaintiffs' knowledge, began negotiations with Joseph K. Fang to sell the Loan to Mr. Fang's Guam company, Paradise Marine Corporation ("PMC"). After over a month of negotiations, HSBC and Mr. Fang executed a Loan Purchase Agreement on June 25, 2003 for the sale of plaintiffs' Loan. In May 2003 HSBC did not disclose to plaintiffs that the Loan was for sale. HSBC also did not disclose to plaintiffs that the Loan was sold on June 23, 2003.

17. On July 18, 2003, Plaintiffs received a document entitled "Notice of Intent to Sell Loan", dated July 15, 2003, a copy of which is attached as **Exhibit "K"**. This Notice came as a total surprise to Plaintiffs, since Defendant Bank assured Mr. Sadhwani that the Plaintiffs had until August 31, 2003, to settle their Loan.

18. On July 22, 2003, Mr. Sadhwani telephoned Mr. Underwood. Mr. Underwood came to Mr. Sadhwani's office. Mr. Underwood did not inform Mr. Sadhwani that the Loan had been sold. Mr. Sadhwani asked, but Mr. Underwood declined to name the purchase price for the Loan. Mr. Sadhwani pleaded not to sell the Loan. Mr. Sadhwani asked Mr. Underwood whether the Bank would accept $3 million for the Loan; Mr. Underwood replied "No." Mr. Sadhwani then said how about $3.5 million. Mr.

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

Underwood said: "Get me the money or guarantee, and I will try to stop the sale."

19.     On July 31, 2003, Mr. Sadhwani detailed his attempts to settle the Loan. A copy of such letter is attached and marked **Exhibit "L"**. Mr. Sadhwani saw Mr. Underwood and again pleaded not to sell the Loan. Mr. Underwood assured him that if he received the offer [i.e., money or bank letter] by August 8, Mr. Underwood said, "I will see what I can do."

20.     On August 5, 2003, Mr. Sadhwani obtained terms and conditions for alternative financing from First Hawaiian Bank for $3.5 million, a copy of which is attached and marked **Exhibit "M"**. On the same date, by letter (**Exhibit "N"**) Mr. Sadhwani transmitted the First Hawaiian Bank letter to Defendant Bank.

21.     Although First Hawaiian Bank eventually denied Mr. Sadhwani's application for a loan, Mr. Sadhwani continued to make efforts to obtain alternate financing. He had an oral agreement with two individuals that in the event bank financing was unavailable, he could borrow up to $3.5 million from both individuals in order to buy his loan from HSBC.

22.     On August 11, 2003, Mr. Underwood addressed a letter to Mr. Sadhwani stating: "I am pleased to inform you that on Monday , the 11ᵗʰ of August 2003 your loan was sold to Paradise Marine Corporation." A copy of such letter is attached and marked **Exhibit "O"**.

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

23. Although Plaintiffs requested of the Bank and Paradise Marine Corporation a copy of the Loan purchase agreement, they both refused. Both also refused to divulge the purchase price. Upon information and belief, Plaintiffs allege that the purchase price for the Loan is less than $3 million.

24. Paragraph 1 of the Promissory Note Modification Agreement (**Exhibit "C"**) provides:

"1. Extension of Maturity Date. The Maturity Date of the Note is hereby extended for a period of time up to and including August 31, 2003. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of one." (Emphasis added).

25. Plaintiffs fully complied with the payment terms provided in the Amendment to Credit Facility/Lease (**Exhibit "A"**), i.e., payment of $51,719 from October 2001 to May 2003, and $75,000 commencing June 30, 2003.

26. Many parcels of real property owned by the Plaintiffs were mortgaged to secure the Loan. These parcels are prime properties on Guam. Several of the buildings are Guam landmarks, e.g., the Tick Tock Building in East Agana; the HSBC Building, Marine Drive, Tamuning; the Deloitte & Touche Building along Marine Drive, Tamuning; and

Sateena Mall in Dededo, among others. At one time, these properties were worth much more than $12 million. At one time, these properties secured a Loan to the Plaintiffs from Defendant Bank in excess of $12 million. Yet, Defendant Bank, notwithstanding the pleas of the Plaintiffs to give them time within which to obtain other financing in order to buy back their Loan, nonetheless sold the Loan to Paradise Marine Corporation for an amount, according to information and belief, of less than $3 million, even though Plaintiffs and HSBC had a workout agreement to settle plaintiffs' Loan.

## FIRST CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

27.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

28.     Defendant Bank, as a party to the Loan agreement and the work out agreement with plaintiffs, has a duty to deal fairly with Plaintiffs and in good faith.

29.     In the March 21, 2003 letter (**Exhibit "G"**), Defendant Bank offered three (3) proposals to work out the Loan: Plaintiffs could sell the mortgaged properties; Plaintiffs could execute deeds in lieu of foreclosure "at negotiated values"; or Plaintiffs could refinance the Loan. On this latter option, Defendant Bank agreed that it was "ready, able and willing to assist your negotiation of replacement financing."

30.    Plaintiffs accepted the first and third proposals offered by Defendant Bank. Relying on these work out proposals, Plaintiffs immediately listed certain properties for sale with Century 21 Realty Management and applied to various banks, including First Hawaiian Bank, to obtain alternative financing.   Plaintiffs obtained terms and conditions for alternative financing  from First Hawaiian Bank and forwarded such  terms and conditions to  Defendant Bank on August 5, 2003.   Defendant Bank failed and refused to allow plaintiffs a reasonable time under the workout agreement to sell their properties and failed and refused to allow plaintiffs a reasonable time under the workout agreement to obtain alternate financing to pay off their Loan.

31.    Defendant Bank acted in bad faith and failed to deal fairly with Plaintiffs as follows:

A.    By misrepresenting to plaintiffs that it intended to perform on the workout agreement when in fact it intended to sell plaintiffs' Loan;

B.    By reneging on the workout agreement and refusing to allow plaintiffs a reasonable time under the agreement to sell their properties or to obtain alternate financing;

C.    By misrepresenting that it would try to stop the sale of the Loan if plaintiffs obtained alternate financing when the Loan had already been sold to PMC;

-10-

D. By failing to inform plaintiffs that it was selling the Loan and refusing to give plaintiffs the opportunity to purchase or pay off their Loan at the same price offered by PMC.

32. As a result of Defendant Bank's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

33. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

34. Defendant Bank represented to Plaintiffs that it would give a "hairline discount" on the Loan if Plaintiffs paid off the Loan.

35. Defendant Bank also represented to Plaintiffs that it was willing to work out the Loan with Plaintiffs and further represented that Plaintiffs could resolve its indebtedness by accepting the options proposed by Defendant Bank, as detailed in paragraph 12, above.

36. Defendant Bank further represented to Plaintiffs that it would try to stop the sale of the Loan if Plaintiffs obtained alternate financing.

37. In reliance upon Defendant Bank's representations, Plaintiffs were induced to list their properties for sale with Century 21 Commonwealth Realty and to apply for

-11-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

alternative financing with various banks and others.

38.     Had HSBC given Plaintiffs a reasonable time to sell their properties and/or obtain alternate financing, Plaintiffs would have saved thousands of dollars in interest and loan payments and increased costs, and they would not be required to make the loan payments as required by Paradise Marine Corporation.

39.     Defendant Bank intentionally misrepresented that it would give a "hairline discount" on the Loan if Plaintiffs paid off the Loan; that it was interested in pursuing a commercially reasonable work out, when it had no desire or intention to work out the Loan; and that it would try to stop the sale of the Loan if plaintiffs obtained alternate financing, when it had no desire or intention to stop the sale of the Loan to Paradise Marine Corporation.

40.     As a result of the intentional misrepresentations made by Defendant Bank to Plaintiffs, Plaintiffs have suffered damages in an amount to be proved at trial.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT - PROMISSORY NOTE MODIFICATION

41.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

42.     Plaintiffs and Defendant Bank entered into a valid loan contract for the Loan.

Paragraph 1 of the Promissory Note Modification Agreement (**Exhibit "C"**) provides:

-12-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

**Extension of Maturity Date.** The Maturity Date of the Note is hereby extended for a period of time up to and including August 31, 2003. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of one. (Emphasis added)

43.     Plaintiffs fully complied with the payment terms provided in the Amendment to Credit Facility/Lease (**Exhibit " A"**), i.e., payment of $51,719 from October 2001 to May 2003, and $75,000 commencing June 30, 2003. Plaintiffs were not in default of the Loan documents, the Amendment to Credit Facility/Lease, or the Promissory Note Modification Agreement.

44.     The Promissory Note Modification Agreement explicitly provided that the maturity date of the Note is "extended up to and including August 31, 2003." The workout agreement between the parties implicitly extended the date of maturity under the Promissory Note Modification Agreement. While the workout agreement did not contain a specific deadline for plaintiffs to sell their properties and/or obtain alternate financing, the law implies a reasonable time under the circumstances of the case. Plaintiffs performed

-13-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

their obligations under the terms of the workout agreement. When Defendant Bank sold the Loan to PMC, Defendant Bank breached the Promissory Note Modification Agreement, as amended by the workout agreement.

45. Because the workout agreement implicitly extended the maturity date under the Promissory Note Modification Agreement, Defendant Bank failed to fulfill the terms of the Promissory Note Modification Agreement to review the Note every six months, in violation of the Promissory Note Modification Agreement.

46. In addition, none of the Loan agreements between Plaintiffs and Defendant Bank allow for the sale of the Loan to Paradise Marine Corporation. Defendant Bank breached its Loan agreement, as amended by the workout agreement, with Plaintiffs by selling the Loan to Paradise Marine Corporation.

47. As a proximate result of Defendant Bank's breaches of contract, Plaintiffs suffered damages including but not limited to, increased interest payments, increased costs, and other damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT - WORK OUT AGREEMENT

48. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49. Plaintiffs and Defendant Bank entered into a valid work out agreement,

-14-

where Defendant Bank offered proposals to work out the Loan and Plaintiffs accepted two of the proposals. Plaintiffs immediately listed certain properties for sale with Century 21 Realty Management and Plaintiffs attempted to obtain alternative financing from First Hawaiian Bank and others.

50. Defendant Bank failed to assist Plaintiffs' negotiations for replacement financing. While the workout agreement did not contain a specific deadline for plaintiffs to sell their properties and/or obtain alternate financing, the law implies a reasonable time under the circumstances of the case. Defendant Bank did not give plaintiffs a reasonable time to sell their properties or obtain alternate financing and failed to give a "hairline discount" on the Loan. Defendant Bank sold the Loan to Paradise Marine Corporation instead of complying with the parties' work out agreement. All of these acts constitute breaches of the work out agreement.

51. As a proximate result of Defendant Bank's breaches of the work out agreement, Plaintiffs suffered damages including but not limited to increased interest payments, increased costs, as well as other damages to be proven at trial.

## FIFTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

52. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

-15-

53.    Because of the longstanding, close and confidential relationship between Defendant Bank and Plaintiffs, and by virtue of the trust and confidence which Defendant Bank encouraged Plaintiffs to place in the Bank and which the Plaintiffs did place in the Bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable work out, Defendant Bank owed to Plaintiffs a duty of fiduciary care.

54.    Defendant Bank breached its fiduciary duties owed to Plaintiffs by its acts, including but not limited to the following:

A.    By disclosing confidential information, including but not limited to, account and deposit information, loan payment history, and other banking transactions between Plaintiffs and Defendant Bank, to Paradise Marine Corporation, a non-bank and purchaser of Plaintiffs' Loan with Defendant Bank.

B.    By failing to assist Plaintiffs' negotiations for replacement financing, as Defendant Bank had represented;

C.    By failing and refusing to give plaintiffs a reasonable time to sell their properties and/or obtain alternate financing, as required by the parties' work out agreement;

D.    By failing to give a "hairline discount" on Plaintiffs' Loan;

-16-

E.     By selling the Loan to Paradise Marine Corporation, a Guam corporation that is not licensed to conduct banking and has never conducted banking business in Guam; and

F.     By failing to notify plaintiffs that their Loan was for sale and refusing to allow plaintiffs the opportunity to purchase or pay off their Loan at the same price offered by PMC.

55.     As a proximate result of the breaches of fiduciary duty as alleged herein, Plaintiffs have suffered damages, including but not limited to, increased interest payments, increased costs, and other damages in an amount to be proven at trial.

56.     In doing the acts herein alleged, Defendant Bank acted with oppression, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages.

## SIXTH CAUSE OF ACTION

## <u>BREACH OF DUTY NOT TO DIVULGE PLAINTIFFS'</u><br><u>CONFIDENTIAL BANKING INFORMATION</u>

57.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 56 above as if fully set forth herein.

58.     HSBC has a general duty not to disclose the financial condition of plaintiffs to third parties. In addition, it is an implied term of the contract between HSBC and plaintiffs that HSBC will not divulge to third persons without plaintiffs' consent, either the state of plaintiffs' account or any of plaintiffs' transactions with HSBC. Like other banks,

-17-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

HSBC demanded and received financial information from the Plaintiffs. Unless provided as demanded by HSBC, it, HSBC, would not loan funds to Plaintiffs. Having no choice, Plaintiffs did provide such information to HSBC with the explicit understanding that absent their consent and permission, HSBC would not divulge such information to third parties who may be competitors of the Plaintiffs' business. The competition for rentals of buildings and sales of various electronic products is extremely stiff given the economic condition of the Island. Like other banks, HSBC has a general duty not to disclose information received by it from the Plaintiffs concerning Plaintiffs' financial condition, business plans, rentals, marketing and pricing strategies, and a host of other information, including personal matters, without the consent and permission of the Plaintiffs. Thus, it is an implied condition of the contract between HSBC and the Plaintiffs that HSBC will not divulge to third persons without Plaintiffs' consent and permission the financial condition and the business affairs of the Plaintiffs.

59.     The purchaser of Plaintiffs' Loan is Paradise Marine Corporation. Paradise Marine Corporation (hereafter "PMC"), is a Guam corporation, whose primary purpose, according to its Articles of Incorporation, is "to engage in the business of commercial fisheries operation."

60.     PMC does not now and has never obtained a license to do banking business on Guam; PMC is not now and has never been in the banking business; PMC is not

-18-

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

required to keep confidential any information concerning Plaintiffs' Loan, banking relationship with Defendant Bank, deposit accounts and transactions.

61. Absent the consent of the plaintiffs, Defendant Bank expressly or impliedly agreed that it, Defendant Bank, will not divulge to third persons the terms or the state of Plaintiffs' accounts with the Defendant Bank, any of their transactions with Defendant Bank, or any other information about the Plaintiffs acquired by Defendant Bank throughout the 25 years of their banking relationship. Disclosure of information about plaintiffs' financial condition, their accounts and transactions with HSBC, which were acquired by PMC from HSBC during the negotiation, sale, assignment, and transfer of Plaintiffs' Loan to PMC, constitutes a breach of Defendant Bank's general duty not to disclose the financial condition of plaintiffs to third parties. In addition, such conduct by HSBC constituted a breach of the implied contract between HSBC and plaintiffs that HSBC will not divulge to third persons without plaintiffs' consent, either the state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC.

62. As a proximate result of Defendant Bank's breach of its duty not to disclose plaintiffs' financial condition and its breach of the implied contract not to divulge plaintiffs' accounts or any of plaintiffs' transactions with HSBC, Plaintiffs suffered damages including but not limited to increased interest payments, increased costs, as well as other damages to be proven at trial.

-19-

WHEREFORE, Plaintiffs pray judgment against Defendant Bank as follows:

1.  For compensatory and consequential damages according to proof.

2.  For punitive damages according to proof.

3.  For costs of suit and for such other and further relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated this _____ day of April, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorney for Plaintiffs

BY: _____
JOAQUIN C. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

## CERTIFICATE OF SERVICE

I, JOAQUIN C. ARRIOLA, hereby certify that on April 27, 2004, I caused to be served via hand delivery, **FIRST AMENDED COMPLAINT FOR DAMAGES;**

**DEMAND FOR JURY TRIAL** to:

**Jacques A. Bronze**
**Bronze & Tang, P.C.**
**2nd Floor, BankPacific Building**
**825 S. Marine Drive**
**Tamuning, Guam 96913**

Dated this 27th day of April, 2004.

_____
JOAQUIN C. ARRIOLA

## AMENDMENT TO CREDIT FACILITY/LEASE

This instrument is made as of this _6th_ day of _November_, 2002, by and among **THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED**, a foreign corporation ("Lender") and **K. SADHWANI'S, INC.**, (the "Borrower"), and **ALAN SADHWANI and LAJU SADHWANI**, (the "Guarantors").

**RECITALS:**

A.  Borrower has heretofore executed and delivered in favor of Lender certain banking facilities amended by that certain Workout Agreement dated May 31, 2001 which provided for Borrower's repayment of the original principal amount of **SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($7,500,000.00)** (the "Note");

B.  It has been agreed that the Maturity Date of the Note shall be extended for a period of time up to and including December 31, 2002;

C.  It has been agreed that the Lender shall prepay monthly rental payments of $23,281.00 to Borrower for the period October 2002 through May 2003 which shall be applied to reduce the principal balance of the Note; and

D.  Lender, Borrower and Guarantors have agreed to amend the Note as provided below.

**NOW, THEREFORE**, for and in consideration of the premises and of the covenants hereinafter contained, the parties agree as follows:

1.  Confirmation of Obligations. Borrower does hereby expressly confirm and agree that Borrower is primarily, jointly and severally, liable to Lender under the terms of the Note (as now existing and as herein amended), whether as a maker, guarantor, mortgagor or by way of assumption of liability. All terms of the Note and of any Mortgage securing the Note, and of any other document, instrument or thing arising in connection with the loan contemplated herein, shall continue in full force and effect, except as specifically amended herein.

2.  Confirmation of Principal Balance. The parties confirm that, as of September 27, 2002, the unpaid principal balance of the Note is the sum of $6,821,494.56.

3.  Extension of Maturity Date. The Maturity Date of the Note is hereby extended for a period of time up to and including December 31, 2002. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of principal and interest then outstanding and unpaid.

Exhibit "A"

4. **Interest Rate.** Interest shall continue to accrue on all unpaid principal balances at the rate of Lender's Base Lending Rate ("BBLR") plus one percent (1.0%).

5. **Payments.** Monthly repayments of accrued principal and interest shall be modified from the existing **SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($75,000)** to the amount of **FIFTY-ONE THOUSAND SEVEN HUNDRED NINETEEN DOLLARS AND NO CENTS ($51,719.00)** . The decrease in monthly repayment represents the existing monthly repayment of $75,000.00 less the monthly rental payment of $23,281.00. The modified payment shall be payable on the 30th day of each month for the period October 2002 to May 2003. Commencing June 30, 2003, the payments shall increase to the sum of **SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($75,000.00)** per month until the Note is paid in full.

6. **Satisfaction of Lease.** Borrower acknowledges that Lender has prepaid all rents due and payable under the lease dated July 23, 1992, as extended and modified, in the amount of $186,248.00. Borrower agrees that Lender has performed and satisfied all of the duties and obligations imposed by the lease and is hereby released from any further obligation whatsoever.

7. **No Waiver.** Nothing contained herein shall be construed as a waiver of any right or remedy which Lender may have under the terms of the Note or mortgages or other security instruments securing repayment of the Note.

**IN WITNESS WHEREOF**, Borrower, Lender and Additional Borrower have executed these presents on the day and year first above written.

**"LENDER"**

**THE HONGKONG AND SHANGHAI**
**BANKING CORPORATION LIMITED**

By: _____
Name: _____
Its: _____

**"BORROWER"**

**K. SADHWANI'S, INC.**

By: _____
Name: _____
Its: _____

"GUARANTORS"

_____
ALAN SADHWANI

_____
LAJU SADHWANI

**HSBC**

Our Ref: GUM CCU 030014

17 February 2003

PRIVATE AND CONFIDENTIAL
K. Sadhwani Inc.
371 South Marine Drive
Tamuning, Guam 96911

Attn.: Mr. Alan Sadhwani, President

**Re:    13FEB03 Meeting at HSBC Guam Office**

Dear Alan,

Thank you for taking time to meet Magnus Montan, Guy Priestley, and myself on February 13, 2003 in the Bank. This letter is to memorialize the discussion, namely:

1.  We expressed great concern over the prolonged economic depression on Guam, which casts doubt upon your company's ability to meet its financial obligations and specifically its scheduled loan repayments

2.  We re-emphasized that the Bank is leaving the island, and will not be able to renew or extend the facility when it becomes due for repayment on 31 August 2003; therefore, we encouraged you to take urgent steps to identify how you will repay us on that date

3.  You agreed to provide the Bank with a written plan to address point 2 above, and meet with us again on 24 February 2003

4.  You said that you have listed the securing real estate properties for sale with Century 21, and asked them to refer all offers to you. ~~You further suggested that we contact them to discuss progress in finding buyers and other related information~~

Please sign the acknowledgement below and return it to us at your earliest convenience. We look forward to meeting with you again on 24 February 2003 to discuss your plan.

Sincerely,

Lawrence Zhang
Vice President Credit and Risk Management

cc: Guy Priestley, CEO

The Hongkong and Shanghai Banking Corporation Limited
HSBC Box 10001 PMB, Saipan, MP 96950 U.S.A.
The HSBC Building, Garapan, Saipan, MP 96950
Telephone: (670) 234-2468 • Fax: (670) 234-8882

*Incorporated in Hong Kong SAR with limited liability.*

**Exhibit "B"**

## ACKNOWLEDGEMENT

I acknowledge that the above points are true and correctly reflect the content of our discussion.

_(signature)_
Alan Sadhwani

_(signature)_ March. 5. 03
Date

# PROMISSORY NOTE MODIFICATION AGREEMENT

INSTALLMENT LOAN NO.100023-361

This Promissory Note Modification Agreement ("Agreement") is entered into this ____ day of ___March__, 2003, by and among THE HONGKONG AND SHANGHAI BANKING CORPORATION LTD., a foreign corporation ("Lender") and K. SADHWANI'S, INC. ("Borrower"), and ALAN SADHWANI and LAJU SADHWANI, (THE "Guarantors").

On __08 November 2002__  Borrower executed an Amendment To Credit Facility/Lease (the "Note") in the amount of _SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($7,500,000.00)_ payable to the order of the Bank. The outstanding balance of the Note as of December 31, 2002 is _SIX MILLION FIVE HUNDRED SEVENTY ONE THOUSAND NINE HUNDRED THREE AND FORTY TWO CENTS (USD6,571,903.42)_.

NOW, THEREFORE, in consideration of the premises and the covenants herein contained, the parties agree to amend as follows:

1. Extension of Maturity Date. The Maturity Date of the Note is hereby extended for a period of time up to and including August 31, 2003.  The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of principal and interest then outstanding and unpaid.

2. Effective date. This Agreement and the regular payment modification provided in _____ shall be deemed effective as of December 31, 2002.

3. General. The terms, conditions, and covenants of the Note, the guarantees, the security agreement, and all other loan documents which may secure the Note or to the loan transaction which may have been executed in relation to the Note or the loan transaction which the Note evidences remain in full force and effect except as amended by the express terms of this Agreement, and none other.

IN WITNESS WHEREOF, the parties have executed this Modification Agreement the day and date first above written.

Exhibit "C"

PROMISSORY NOTE MODIFICATION AGREEMENT
INSTALLMENT LOAN NO.100023-351

LENDER:

THE HONGKONG AND SHANGHAI
BANKING CORPORATION LIMITED

By: _____

Name: FREDERICK GRANILLO

Its: ASSISTANT VICE-PRESIDENT - CREDIT CONTROL

"BORROWER"

K. SADHWANI'S, INC.

By: _____

Name: D.H. SADHWANI

Its: PRESIDENT.

"GUARANTORS"

ALAN SADHWANI

_____
LAJU SADHWANI

**HSBC**

Our Ref: GUM CCU 030021

06 March 2003

PRIVATE AND CONFIDENTIAL
K. Sadhwani Inc.
371 South Marine Drive
Tamuning, Guam 96911

Attn.: Mr. Alan Sadhwani, President

Re:    05MAR03 Meeting at HSBC Guam Office

Dear Alan,

Thank you for taking time to meet Guy Priestley, Fred Granillo and myself on March 5, 2003 in the Bank. This letter is to memorialize the discussion, namely:

1.  You provided the signed Promissory Note Modification Agreement which formally extends the facility to 31 August 2003. We re-emphasized that there will be no further extensions and encouraged you to take urgent steps to identify how you will repay us on that date.

2.  You did not provide a written plan to repay us on the due date, as you had agreed in the 13 February 2003 meeting. Instead, you reiterated that you have listed the securing real estate properties for sale with Century 21, and that you would accept only reasonable offers. We noted that this is unacceptable in that it is not a written plan, nor did you quantify the term 'reasonable'. We reiterated that we need to know how the loan will be paid off by 31 August 2003 and asked again that you provide a written plan no later than 12 March 2003. You agreed.

3.  We told you that the Bank is prepared, without in any way committing itself at this stage, to consider a discount on the loan balance if you elect to give the secured properties to the Bank. This "friendly foreclosure" method would transfer the burden of property liquidation to the Bank and minimise legal fees for both parties. If you wish to explore this approach, we ask that you assign a value to the property and submit a written proposal for our consideration.

4.  You agreed to allow the bank to directly contact Century 21 to discuss progress in finding buyers and other related information.

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588   Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*

**Exhibit "D"**

Please sign the acknowledgement below and return it to us at your earliest convenience.
We look forward to receipt of your written plan on 12 March 2003.

Sincerely,

Lawrence Zhang
Vice President - CRM

## ACKNOWLEDGEMENT

I acknowledge that the above points are true and correctly reflect the content of our discussion.

_____
Alan Sadhwani

_____
Date

**HSBC**

**●FACSIMILE COVER SHEET**

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 37-C
Hagatna, Guam 96932

*Date* 13 March 2003

*File Ref:*

*To* K. Sadhwani's Inc.
Attn: A.H. Sadhwani

*Total no. of pages = cover +0*

*Fax No:* 687-1555/646-6917

*If you do not receive all pages, please telephone or telex immediately*

*From* Frederick Granillo
Assistant Vice President Credit Control

*Fax No:* 646-3767    *Telephone/Telex*

*Urgent*  ☒ *Yes*  ☐ *No*

*Confidential*  ☒ *Yes*  ☐ *No*

*Subject* Written Plan

*This facsimile is intended for the named recipient only and may contain privileged and/or confidential information. If you have received this facsimile in error, please notify us immediately. Please do not disclose the contents to anyone or copy it to anybody. Thank you.*

*Message:*

Dear Mr. Sadhwani:

The deadline for the requested plan was yesterday as stated in a letter dated 6 March 2003 referenced GUM CCU 030021. Please provide the written plan today, as we have agreed upon, so that we understand how you intend on repaying the loan by the revised maturity date. Please also consider our recommended approach under "friendly foreclosure."

In addition to the above, in review of our files we have noted that the last appraisals done on the mortgaged properties were performed during 2000. As such, given significant market changes, we request that updated appraisals be done on all mortgaged properties to determine the actual current values. We will have Captain and Co. provide an appraisal quotation for your review. The appraisals are to be completed no later than 15 April 2003.

If you have any questions, please feel free to contact me at 647-8528.

Regards,



Frederick Granillo

**Exhibit "E"**

# K. Sadhwani's Inc.

371 South Marine Drive • Tamuning, Guam 96913
Phone 671-649-5948/49/50 • Fax 671-646-6917 • Email ticktock@guamcell.net

Exhibit "F"

March 14 2003

Dear Mr. Granillo

I am working with a bank to pay off  our out standing loan with you.

As for friendly foreclosure I do not understand what you want exactly.
Please give me more details.

You were talking about discounting , please explain how that will happen.

In future please fax me at 671 649 5938 this is direct fax to my office

Thanking you

Regards

Alan Sadhwani.

**HSBC**

Our Ref: GUM CCU 030030

21 March 2003

Mr. Sadhwani
c/o K. SADHWANI INC.
371 South Marine Drive
Tamuning, Guam 96911

**RE: PAYOFF PLAN**

Dear Mr. Sadhwani:

We are concerned that you have not taken seriously the Bank's notice to K. Sadhwani Inc. that it will not be able to renew or extend your loan facility when it becomes due for repayment on August 31, 2003. You have previously negotiated an extension of your loan facility and the liquidation of several parcels of real property assets sufficient to reinstate the loan facility not two years ago. In fact, you executed several deeds in lieu of a foreclosure via the private power of sale contained in the mortgages to secure an extension of your loan facility with the bank.

Your recent fax on March 14, 2003 requested the details of a friendly foreclosure. As stated above, I believe that you are familiar with the process that the Bank used to liquidate the real property. It is possible that the bank may accept deeds in lieu of foreclosure at a negotiated release price in order to reduce the balance of your loan facility. This process provides certainty to the winding down of your business and satisfaction of its debt to the Bank. The Bank cannot guarantee that there will not be a resulting deficiency from the liquidation process. However, you have the control and discretion to reduce the exposure to a deficiency to a minimum by negotiating such an agreement.

You represented that you have listed your property with Century 21 Realtors. We request a copy of the listing agreements or a written authorization allowing Century 21 to provide copies to the Bank immediately. If you are able to sell your property at market price and have such listing agreements, the Bank may consider tolling collection efforts pending the closing in escrow of written accepted purchase offers with net proceeds paid to the Bank. The tolling of collection efforts would have to be part of a general liquidation or refinancing agreement. The Bank does not wish to negotiate with you on a parcel by parcel basis.

In the event that you cannot sell the properties through the efforts of Century 21, the Bank may consider accepting deeds in lieu of foreclosure at negotiated values. If you are not willing to negotiate a liquidation agreement, then the Bank may be forced to foreclose via the private power of sale contained in the bank's mortgages. You may assist the Bank in this process by providing interested buyers and cooperate through the foreclosure process. The

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588    Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*

**Exhibit "G"**

foreclosure process does, however, add costs, expenses and attorneys' fees to the amount secured by your mortgages and could result in an increased deficiency amount.

If you are seriously making an effort to refinance your loan facility, you may avoid this entire process. We request immediate confirmation of your loan application and efforts to obtaining refinancing. The Bank is ready, able and willing to assist your negotiation of replacement financing.

If you do not respond to this letter with the required information by close of business, April 4, 2003, the Bank will refer this matter to its attorneys at Klemm, Blair, Sterling & Johnson. The firm will contact you thereafter to address the issues in this letter.

I look forward to your response.

Yours sincerely,

Frederick Granillo
Assistant Vice President, Credit Control

Century 21

**Realty Management Company**
P.O. Box 7088
Tamuning, GU 96931
Website: www.guamproperties.com
Email: remco@ite.net
Business (671) 647-5003
Fax (671) 646-6604

April 3, 2003

Alan Sadwani
Al's Mechanical
Tamuning, Guam

Via Fax. 649-5938

Dear Alan,

As per our phone conversation I am writing you with an update of our marketing efforts for your commercial buildings located on marine Drive (Old HSBC office building, Old Guam Marketing building/Deloitte & Touche Building). The buildings have been shown to a number of prospective buyers and tenants. We have presented the building to such tenants as GWA, DEDCA, Fire Department, Revenue & Taxation, PSA, Metro Bank, Camacho Family (for their lending institution, Community First, Sony and other prospective tenants. To date the strongest interest is PSA if we can work out the parking /area situation

On the selling side I have shown the buildings to an investment group from Korea, and Mr & Mrs. Fang. The Korean group have left island and plan to return Mid April with their decision. It is my understanding they are an electronic firm who have sold some property here on Guam and are trying to re-invest it to income producing property. The Fang's also were interested in doing a 1031 type exchange to income producing properties here in Guam. I have not heard from them in a while but I will contact them this week to se if there is interest in their making an offer. They seemed very serious after inspecting all three of the buildings.

I hope this brings you up to date on our marketing efforts. Please feel free to contact me if you have any questions.

Sincerely,

Christopher Felix CPM,CIPS
President          CCIM

*Each Office is Independently Owned and Operated*

Exhibit "H"

# HSBC ◇

## FACSIMILE COVER SHEET

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C
Hagatna, Guam 96932

*To* **K. Sadhwani's Inc.**
**Attn: A.H. Sadhwani**

*Fax No* **646-6917**

*From* **Frederick Gramillo**
**Assistant Vice President Credit Control**

*Fax No* **646-3767**     *Telephone/Telex*

*Subject* **Promissory Note Modification Agreement**

*Date:* **03 April 2003**

*File Ref:*

*Total no of pages ~ cover +2*

*If you do not receive all pages, please telephone or telex immediately*

*Urgent:* [×] *Yes* [ ] *No*

*Confidential* [×] *Yes* [ ] *No*

*This facsimile is intended for the named recipient only, and may contain privileged and confidential information. If you have received this facsimile in error please notify us immediately. Please do not disclose the contents to anyone or copy it to outside parties. Thank you.*

**Message**

Dear Mr. Sadhwani:

Please see attached Promissory Note Modification dated 05 March 2003.

If you have any questions, please feel free to contact me at 647-8528.

Regards,



Frederick Gramillo

Exhibit "I"

# K. Sadhwani's Inc.

371 South Marine Drive • Tamuning, Guam 96913
Phone 671-649-5948/49/50 • Fax 671-646-6917 • Email ticktock@guamcell.net

April 4 2003

Mr. Granillo
The Hongkong and Shanghai Banking Corporation Limited
Post office Box 27-C
Hagatna Guam 96932

Dear Mr. Granillo,

In my previous letter I have mentioned to you that I am trying to get financing to pay my Outstanding loan with HSBC. I have not received confirmation on my loan as of today. Hope to receive shortly.

I am working with Realty Management to sell the properties to pay off the loan.

If I am unsuccessful then I will hand over to you certain properties.

Please give me sometime, I will work with you to satisfy outstanding loan

Thanking you

Alan Sadhwani

Incl: letter from Century 21 ( Chris Felix )

Exhibit "J"



**HSBC** ◆

PRIVATE AND CONFIDENTIAL

15th July 2003

K. Sadhwani Inc.
371 South Marine Drive
Tamuning, Guam 96911

Attn.: Mr. Alan Sadhwani, President

Dear Alan,

<u>NOTICE OF INTENT TO SELL LOAN</u>

Notice is hereby given that the Hongkong & Shanghai Banking Corporation Limited ("HSBC") has entered into a loan purchase agreement with Paradise Marine Corporation (the "Buyer") whereby HSBC has agreed to sell, transfer and assign to the Buyer all of HSBC's right, title and interest in and to HSBC's loan with K. Sadwani Inc., including all mortgages, security agreements, promissory notes and any investments securing such loan, and together with any liens, security interests, charges and other rights related thereto (the "Loan") provided the Buyer complies with the requirements of the agreement upon closing. The Closing for the sale is currently scheduled for 11th August 2003 or such other date as agreed by the parties. Should the Closing occur, the Buyer shall be a party to the Loan and any related loan documents and HSBC shall be absolutely released from any obligation, covenants, and agreements under said Loan and any related loan documents. Further, in the event that the Closing shall occur, you will receive further notice regarding the manner in which all further loan payments shall be paid.

Yours faithfully,

I.C.Underwood
Manager Guam.

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588 Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*

**Exhibit "K"**

# K.Sadwani's Inc.

371 South Marine Dr.
Tamuning Guam 96913-3911
Phone 671 649-5948

HSBC
P.O.Box 27-C
Hagatna Guam

Dear Mr. Underwood

You gave me until today to propose a repayment plan for the loans with you. Your letter dated 15 2003 I Received on July 18 03. You gave me a Notice of Intent to sell loan. I want to assure that I have been working hard to repay the debt to you. The decision by the bank to sell the debt has opened up new possibilities for us to settle the debt. However 12 days has proved to be too short a time for me to put together an offer to settle the debt. Since it is summer time many of the bank managers with whom I am negotiating are away from their offices. While they have verbally assured me that they will be able to make substantial funds available, they cannot give a commitment in this short a time. I am sure that that you better then anyone

Understands the way banks work. Therefore I am asking that you postpone the sale of the loan for thirty days and that you give me until August 31, 2003 to make you an offer.

I realize that the bank wishes to settle this matter. I promise you that I want to settle it as well. The bank and I have had twenty five [25] years of mutually profitable relationship and I have never defaulted on any of my obligations to the bank. I recognize that the bank must make business decisions in its best interest, but I hope that by granting this last extension of thirty days will allow us to end our business relationship on Good terms. If not ,then will be forced to consider other options.

Yours Truly

Alan Sadhwani

Exhibit "L"



First Hawaiian Bank
Guam Business Banking Center
400 Route 8
Mongmong, Guam 96910-2010

August 5, 2003

Mr. Alan Sadhwani, President
K. Sadhwani's, Inc.
371 South Marine Drive
Tamuning, Guam 96913

<u>Loan for $3,500,000</u>

Dear Mr. Sadhwani:

First Hawaiian Bank (the "Bank") is pleased to provide the following indication of the terms and conditions for a new term. This letter shall not be construed as a commitment on the part of the Bank, and is only provided for indication purposes only. A commitment, should one be issued, shall be subject to modification and formal approval from the officers of the Bank, and would be in accordance with the Bank's normal underwriting standards.

The Loan will be made to K. Sadhwani's, Inc., a Guam corporation, (the "Borrower"), subject to the following terms and conditions:

<u>TERMS</u>

Loan Amount:  $3,500,000

Interest Rate Prior to Maturity:

**OPTION I**

Prevailing three-year fixed rate fixed for the first three years of the loan, adjusted every three years thereafter to prevailing (currently 5.75%).

**OPTION II**

Prevailing five-year fixed rate fixed for the first five years of the loan, adjusted every five years thereafter to prevailing (currently 6.75%).

Required Payments:

**OPTION I**

Principal amortized over 15 years with monthly payments of interest and principal of approximately $29,064.35 which would amortize the Loan over a period of 15 years. Term: 9 years.

**Exhibit "M"**

**OPTION II**
Principal amortized over 15 years with monthly payments of interest and principal of approximately $30,971.83 which would amortize the Loan over a period of 15 years. Term: 10 years.

Loan Fee:

1.50% of the total loan amount or $52,500 due upon acceptance of the commitment letter, should one be issued.

Property:

1) First mortgage over the leased fee interest and Assignment of Rental Income on commercial property containing 2,482+/- square meters described as Lots 2141-1-1-R1 and 2141-1-3NEW, Tamuning, improved with a three-story commercial building known as the Sharp Plaza.

2) First leasehold mortgage and Assignment of Rental Income on a two-acre leasehold parcel described as Lot 2, Tract 217, Dededo, improved with three one-story commercial and buildings known as the Sateena Mall.

3) First fee simple mortgage and Assignment of Rental Income on commercial property described as Lots 2023-2-1-1, 2023-2-1-R1, and 2025-4, Tamuning, Guam (Tick Tock Building)

4) First fee simple mortgage and Assignment of Rental Income on commercial property containing 3,195.96+/- square meters described as Lot 2104-6NEW, Tamuning improved with a commercial building (HSBC Building)

Guarantees:

Personal continuing guarantee of all individuals who retains 25% ownership of K. Sadhwani's, Inc., namely Mr. Ashok (Alan) Sadhwani and Mrs. Laju Sadhwani (collectively the "Guarantors").

Loan Conditions:

1) The Guarantors shall submit annual personal financial statements within 30 days after each

year end, and personal income tax returns within 15 days of filing..

2)  Borrower shall submit CPA Audited financial statements annually within 120 days from the end of its fiscal period.

3)  The Borrower shall submit CPA-prepared Corporate Income Tax returns within 15 days of filing.

4)  The Borrower shall submit, upon request, interim financial statements prepared by the Borrower.

5)  The Borrower shall submit annual company prepared rent rolls and operating statements within 30 days of each fiscal year end.

6)  Loan is subject to the Bank's receipt and satisfactory review of the Borrower's and Lender's Hazardous Waste Report Questionnaires.

Maximum Loan to Value Ratio:     60%

Interest Rate After
Maturity or Default:     Four percentage points (4%) higher than the higher of (i) the rate which would be charged in absence of default or (ii) the Bank's prime rate, fluctuating with prime.

## CONDITIONS

1.  <u>Security</u>. The Loan shall be secured by:

(a)  A mortgage (the "Mortgage"), constituting (i) a first lien upon the Borrower's estate in the Property together with all buildings, fixtures, equipment and appurtenant improvements comprising the Improvements, (ii) a first security interest in all fixtures, furniture, furnishings, equipment, appliances and any other personal property now owned or hereafter acquired by the Borrower and situated on the Property, and (iii) an assignment

of rentals. (The property subject to the Mortgage is hereafter referred to as the "Mortgaged Property".)

(b)  A security agreement ("Security Agreement"), granting to the Bank a first security interest in certain collateral (the "Collateral"), including, but not limited to, (i) all contracts, permits and authorizations, respecting the management and operation of the Improvements, and (ii) all furniture, furnishings, equipment, appliances and other personal property owned by the Borrower and incorporated in the Improvements or located on the Property.

(c)  A financing statement (the "Financing Statement") to perfect the first security interest of the Bank in certain of the Mortgaged Property and in the Collateral.

(d)  A separate assignment of rentals and lessor's interest in leases (the "Assignment of Rentals"), assigning to the Bank all rentals and rights of the Borrower as lessor under the Tenant Leases.

5.  <u>Escrow.</u>  At least 30 days prior to the Closing Date, the Borrower shall select and inform the Bank of the name of the escrow company which will process the payoff of any loans currently secured by the Property.  The escrow company shall, at the Borrower's cost and expense, provide the Bank with copies of any documents which the Bank may require for preparation of the Loan documents.

6.  <u>Optional Prepayment.</u>  Provided that a minimum of three (3) business day's notice is given to the Bank, the Borrower shall have the option to prepay principal on any monthly payment date and shall be subject to a prepayment charge equal to the product of (A) the prepayment multiplied by or (B) a percentage equal to the number of years (in whole numbers rounded upwards) from the date of prepayment to the next adjustment date; in any event, the prepayment charge shall be no less than 1%.

Until the Loan is paid in full (principal and interest), no optional prepayment pursuant to this paragraph 6 shall be credited to or relieve the Borrower to any extent from its obligation thereafter to pay the monthly installments in the amount required by this commitment.

7.  <u>Additional Closing Requirements.</u>  The Borrower shall furnish to the Bank on or before the Closing Date the following:

(a)  (i)  A copy of the Articles of Organization of the company and By-Laws certified by the Department of Revenue and Taxation of the Government of Guam.

(ii)  A certificate of good standing issued by the Department of Revenue and Taxation of the Government of Guam.

(b) Title Insurance; Chattel Lien Report.

(i)   A policy of title insurance, together with such endorsements and reinsurance as the Bank may require (such policy, endorsements and reinsurance being hereinafter referred to as the "Title Policy") issued by any title company authorized to do business in the Territory of Guam and approved by the Bank, in the amount of the Loan, insuring that the Mortgage is a valid first lien on the Mortgaged Property, free and clear of all defects, liens, encumbrances and exceptions to title whatsoever, except such as the Bank may approve in writing.   Without limiting the foregoing, the Title Policy shall effect full coverage, against losses arising out of encroachments against boundary or setback lines, against losses from existing or subsequent mechanics' or materialmen's liens which may gain priority over the Mortgage, and against losses arising out of zoning ordinances and regulations and such other losses with respect to which the Bank may request coverage.   The endorsements shall include, without limitation, a CLTA 100 endorsement (or its equivalent), a survey endorsement and an assignment of rents endorsement.

(ii)   A chattel lien report in form UCC-3 completed and certified by the Director of the Department of Revenue and Taxation verifying that a search of the public records has not disclosed any security interest liens or encumbrances against any personal property owned by the Borrower, except the Financing Statement.

(c)   Survey (also referred to as an ALTA survey); Certification

(i)   A perimeter survey map, prepared and certified as correct by a registered surveyor, disclosing (A) the location of the perimeter of the Property, (B) all easements and rights-of-way, (C) the lines of the street abutting the Property and the width thereof, (D) the location of the Improvements and their relation by distance to the perimeter of the Property, established setback lines and the street lines and (E) encroachments, if any.

(d)   Appraisal Report.   A report prepared by the Bank's Appraisal Department or ordered by the Bank from a recognized real estate appraiser, appraising the fair market value of the Mortgage Property in accordance with the Uniform Standards of Professional Appraisal Practice and applicable Bank regulations resulting in a Loan-to-Value ratio of not more than 60%.

(e)   Insurance.   Fire and extended coverage insurance, including typhoon insurance, with adequate coinsurance, for the full insurable value of the Improvements, fixtures and equipment, together with flood insurance (if the Improvements are required to be so insured by the Bank's Federal Regulators), and such other insurance customarily required by prudent lenders or required by the Bank.

(f)   <u>Financial Statements</u>.  Current financial statements of the Borrower.

(g)   <u>Governmental Authorizations</u>.  Evidence satisfactory to the Bank that the construction and the use of the Improvements fully comply with all federal and territorial statutes, laws, ordinances and regulations relating to land use classification, zoning, coastal zone management, subdivision, setback, environmental, ecological and pollution control, and waste product and sewage disposal (or, if such compliance is not necessary, verification that such compliance is not necessary.

(h)   <u>Hazardous Materials</u>.

    (i)   If requested by the Bank, the Borrower will, at its own cost and expense, furnish to the Bank prior to the Closing Date an environmental inspection report by an independent environmental consultant acceptable to the Bank, identifying and evaluating any existing or potentially hazardous or toxic materials on, under or about the Mortgaged Property. If such report discloses any hazardous or toxic materials in amounts or of a nature unacceptable to the Bank, the Bank shall have the option of either refusing to fund the Loan or requiring an additional environmental inspection and audit report acceptable to the Bank as a condition to the closing of the Loan.

    (ii)   The Mortgage shall contain warranties by the Borrower that the Mortgaged Property and the soil and groundwater thereunder are free of any hazardous or toxic materials. In addition, the Mortgage shall incorporate covenants by the Borrower (A) to keep and maintain the Mortgaged Property, including the soil and ground water thereunder, in full compliance with all federal, state and county laws relating to environmental conditions and hazardous and toxic materials, and (B) to indemnify the Bank from and against any loss, damage, cost or expense which may be sustained or incurred by the Bank as the result of any violation of such laws by the Borrower, or as the result of any work required to remove any hazardous or toxic materials or to remedy any adverse conditions.

8.   <u>Due-on-Sale and Secondary Financing</u>.  The Borrower will not, without the Bank's prior written consent, obtain any other financing secured by a lien or security interest on any portion of the Mortgaged Property or Collateral. The Borrower will not, without the Bank's prior written consent, sell, convey, assign, transfer or encumber in any way any interest in the Mortgaged Property or Collateral. The Mortgage and Security Agreement shall provide that a breach of either of such covenants shall constitute an event of default and permit the Bank to declare the entire indebtedness owing by the Borrower to the Bank to be immediately due and payable.

9.  **Loan Closing Expenses.** Whether or not the Loan is closed, the Borrower shall pay all expenses incurred by the Bank in the issuance of this Loan commitment and the satisfaction of the conditions thereof, including, but not limited to, premiums for the Title Policy, survey costs, property inspection costs, recording fees, taxes, appraisal fees, fees and expenses of legal counsel for the Bank (and each participant in, or purchaser of, the Loan), and any other costs incurred by the Bank in connection with any of the matters provided for in this commitment.

10.  **Accuracy of Information, etc.** This commitment is subject to the accuracy as of the date hereof, of all information, data, representations, exhibits, and other material submitted in connection with the Borrower's application.

11.  **Approval of Bank and its Counsel.** All documents, agreements, contracts, leases, instruments, certificates, survey maps, Plans and Specifications, appraisals, financial statements, operating statements, reports and opinions required by this commitment must be in form and substance satisfactory to the Bank and its counsel. Any insurance or title insurance policy must be in form and amount satisfactory to the Bank. The Bank reserves the right to review after the acceptance of this commitment all information, documents, Plans and Specifications previously furnished by the Borrower and this commitment is not an indication or agreement that such items have been approved by the Bank or its counsel. If requested by the Bank, the Borrower shall deliver to the Bank on the Closing Date, an opinion of Borrower's independent legal counsel, in form and substance satisfactory to the Bank.

If the above terms and conditions are acceptable, please execute the form of acceptance on the enclosed copy of this letter and return the same to us and all other required documents detailed herein. As stated above, the above terms are for indication purposes only and are subject to formal approval by the Bank.

We hope you will find the above terms favorable and look forward to your reply. However, if you have any questions, please call me at 475-7853.

Sincerely,

FIRST HAWAIIAN BANK

**PATRICK B. OLIVA**
Assistant Vice President

K. Sadhwani's, Inc.
Letter of Indication
August 5, 2003
Page 8

ACCEPTED BY BORROWER:
K. SADHWANI'S, INC.

By: _Sadhitan_

Its

Date: _August 5, 03_

By: _____

Its

Date: _____

# K.Sadhwani's Inc.

371 South Marine Dr.
Tamuning Guam 96913-3911
Phone 671 649-5948

August 5 2003

HSBC
P.O.Box 27-C
Hagatna Guam

Dear Mr. Underwood

As you requested a letter from bank indicating that they will loan K. Sadhwani's Inc 3.5 million to Settle my out standing debt with HSBC is enclosed.

I hope this is acceptable to you.

Yours truly

Alan Sadhwani

Exhibit "N"



**HSBC**

11 August 2003

K.Sadhwani's Inc.
371 South Marine Drive
Tamuning, Guam 96911

Dear Mr. Sadhwani

I refer to my letter of 15 July 2003.

I am pleased to inform you that on Monday 11th August 2003 your loan was sold to Paradise Marine Corporation. The terms and conditions of your loan remain unchanged, but Paradise Marine Corporation will contact you shortly and let you know where to make your payments.

Yours sincerely

I.C. Underwood
Manager Guam

The Hongkong and Shanghai Banking Corporation Limited
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588   Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*

Exhibit "O"