LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, | ) ) ) ) | CIVIL CASE NO. 03-00036 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | HSBC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

### FACTS

All of the statements other than the first and last sentence of Plaintiffs Statement of Facts should be striken since there is no factual basis to support Plaintiffs' allegations and nor is there any declaration, documents, or depositions filed with their motion to support such allegations. Neither does the Complaint support such allegations. This Court should not consider the allegations contained in Plaintiffs First Amended Complaint since the amendments to Counts 1, 2, 4, and 5 were asserted without leave of court. The First Amended Complaint is subject to



HSBC's Motion to Strike which will be heard on May 28, 2004. The only purpose of these allegations in Plaintiffs Motion is to cast bad light upon HSBC.

## ANALYSIS

The scope of discovery is governed by FRCP 26(b). The authorities cited in Plaintiffs' Motion are inapplicable since these authorities predate Congress's extensive amendments in 2000 to Rule 26(b). The 2000 amendments to Rule 26 (b) created a two-step discovery process.

The first level of discovery permits discovery regarding any unprivileged matter relevant to the "claim or defense" of any party. Thus, the 2000 amendments to Rule 26(b) narrowed the scope of party-controlled discovery to matters "relevant to the claim or defense of any party." FRCP 26(b) (1). Prior to the 2000 amendments, the parties were entitled to discovery of any information that was not privileged so long as it was relevant to the "subject matter involved in the pending action." FRCP 26(b)(1) (1983).

Under the second category of discovery, the court, for "good cause," may order discovery of any matter relevant to the "subject matter involved in the action." Thus, the 2000 amendments narrowed the scope of discovery available without court order.

In short, when there is an objection to a discovery request on the ground that it goes beyond material relevant to the parties claims and defenses, the Court must determine whether the request, in fact, exceeds the bounds of the claims of defenses and, if so, whether there is, nevertheless, good cause to permit the discovery so long as the material sought is relevant to the subject matter involved in the action. See, FRCP 26(b)(1) Advisory Committee's Note (2000).

The Rules of Evidence, Rule 401 defines "relevant evidence" to mean "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

I

**PLAINTIFFS' REQUEST OF DOCUMENTS NUMBERED 1-7 RELATING TO THE JOSEPH K. FANG, HIS COMPANIES AND FAMILY AND REQUESTS 9-12 RELATING TO OTHER LOANS OF HSBC SHOULD BE DENIED BECAUSE THEY ARE NOT RELEVANT TO PLAINTIFFS' CLAIMS OR DEFENSES.**

On page 4 of Plaintiffs' Motion, they argue that "the discovery sought is relevant to the claims... and to the subject matter of this action." As set forth above, Plaintiffs analysis is fundamentally flawed since it runs contrary to the 2000 amendments of Rule 26(b)(1). This expansion is permissible only after the party seeking it has made a showing of "good cause" to support it. FRCP 26(b)(1) Advisory Committee's Note (2000).

Resolving a discovery dispute on the ground of relevance, the Court must, under the 2000 amendments, focus on the specific claim or defense alleged in the pleadings.[1] In addition, the Court's determination must look beyond the allegation of a claim or defense and to the controlling substantive law.[2] Thus, the issue in looking at the substantive law and Plaintiffs' complaint and portions of its Amended Complaint, is whether copies of all "loan agreements,

---

[1] In regards to Counts 3 and 6 of Plaintiffs' causes of action, the Court should focus on these counts as set forth in Plaintiffs' First Amended Complaint filed with this Court on April 27, 2004, but in reference to Counts 1, 2, 4 and 5, the Court's focus should be on the claims as pled in Plaintiffs' Complaint filed in October 24, 2003, rather than the First Amended Complaint. Since Plaintiffs amended these counts surreptitiously, in violation of this Court's order dated April 9, 2004, and without leave of Court. See, FRCP 26(b)(1) Advisory Committee's Note (2000).

[2] For example, in a suit contending that a hospital had wrongfully disciplined a doctor for improper performance of a surgical procedure, information concerning the techniques other doctors followed in performing the same procedure in the same hospital may not be "relevant" for discovery purposes, in the absence that the disciplinary action was motivated by factors such as race or gender. See, Hayden v. Bracy, 744 F2.d 1338, 1342 (8th Cir. 1984).

letters of credit, promissory notes, or other credit facilities extended by [HSBC] to Joseph K. Fang [as well his family members and companies he is a shareholder of, including PMC] ("Fangs") from January 1, 1999 through the date of this request," are relevant to Plaintiffs' causes of action. See, Plaintiffs' Third Set of Request of Production of Documents attached as Exhibit "1" to the Declaration of Jacques G. Bronze. On page 6 of Plaintiffs' Motion, they argue that Request 1 through 7 of their Requests to Produce are relevant to their claims of "breach of covenant of good faith and fair dealing, intentional misrepresentation, breach of workout agreement, and for breach of fiduciary duty."

In focusing on Plaintiffs' first cause of action for tortious breach of the covenant of good faith and fair dealing, Plaintiffs' Complaint of October 21, 2003, alleges that "Defendant acted in bad faith and failed to deal fairly with Plaintiffs' in refusing to agree to a commercially reasonable agreeable workout and in refusing to accept the alternative financing obtained by Plaintiffs." See, Paragraph 29 of Complaint. Plaintiffs' also alleges that "[a]s a result of Defendant's bank's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages...." See, Paragraph 30 of Complaint.

Focusing on the substantive law regarding Plaintiff's First Cause of Action, HSBC invites this Court to review its Memo of Points and Authorities in Support of its Motion to Dismiss and its Reply Memorandum filed on December 30, 2003, and January 23, 2004, respectively. It is important to note that Judge John Unpingco's denial of HSBC's Motion to Dismiss Plaintiffs' First Cause of Action was based on a Superior Court of Guam Decision. Such reliance runs contrary to the clear precedent established in the case Amfac Mortgage Corp.

v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir. 1978), which provides that a federal court sitting in diversity "...must use its own best judgment in predicting" what the State Supreme Court would decide when it faces an issue of first impression. Thus, the Superior Court of Guam decision should not be relied on as the substantive law regarding the tortious breach of the covenant of good faith.

Relying on Haroco, Inc. v. American National Bank and Trust Co. of Chicago, 38 F.3d 1429 (7th Cir. 1994), Plaintiffs argue that "... HSBC's duty of good faith and fair dealing requires that the bank exercise [its] discretion 'reasonably, not arbitrarily, ... or in a manner inconsistent ... .' " See, p.6 of Motion. First, the Haroco case did not involve a cause of action for the tortious breach of the covenant of good faith. The focus here is whether documents requested by Plaintiffs relating to any financial relationship between HSBC and the Fangs, and the Requests for Documents from HSBC relating to the sale of its other loans to third parties and the number and manner of loan workouts, are relevant to prove that HSBC's sale of Plaintiffs' loan to Paradise Marine Corporation ("PMC") without completing the purported workout agreement constitutes tortious breach of the covenant of good faith. Plaintiffs cannot show that their Requests to Produce are relevant to prove that HSBC did not have the absolute discretion and right to sell its loan. The implied covenant of good faith and fair dealing cannot contradict the expressed terms of the loan agreement and note that HSBC had the right to sell its loan. See, Carma Developers Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 374, 6 C R.2d 467 (1990). Moreover, the requests of documents from the Fangs and HSBC are not relevant to show a conscious and deliberate conduct with malice by HSBC against Plaintiffs. See, Lee

Careau Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1395 (1980) (addressing what constitutes bad faith). Lastly, the rationale justifying the extension of a bad faith cause of action from first-party insurance cases to commercial contract cases has almost unanimously been refused by the Courts of this nation except for the Superior Court of Guam decision. See, p. 7 of HSBC's Memo of Points and Authorities in Support of Motion to Dismiss filed on December 30, 2003.

Moreover, in a deposition noticed by Plaintiffs and taken on May 7, 2004, Joseph K. Fang testified that the purchase of Plaintiffs' loan from HSBC was an arm's-length transaction. See, Declaration of Joseph K. Fang attached as Exhibit "2" to the Declaration of Jacques G. Bronze. He testified that he even had to increase his purchase price by $500,000 due to competing bidders. Mr. Fang further testified that Paradise Marine Corporation ("PMC"), the acquisition entity of Plaintiffs' loan, did not receive any financing from HSBC in acquiring the loan. He testified that the monies used to purchase Plaintiffs' loan came from the sale of a building in early 2003, located in Anchorage, Alaska. The sale proceeds were deposited in a Wells Fargo account in Alaska and, prior to closing of Plaintiffs' loan on August 11, 2004, Mr. Fang testified that four million dollars was wired from the Wells Fargo account to HSBC USA, San Francisco branch, part of which was used to pay HSBC for the loan. Mr. Fang further testified that he terminated his employment with HSBC in 1989. *Id.*

Mr. Fang also testified that at the time of closing of PMC's purchase of Plaintiffs' loan, neither he, PMC nor his other companies had any loans with HSBC Guam. As of July 2002, his Guam companies and himself had closed all their deposit accounts with HSBC Guam. *Id.* Thus,

based on the alleged facts by Plaintiffs in support of their first claim, the substantive law as it stands, and the testimony of Joseph K. Fang, there is no support for Plaintiffs' claim that Requests to Produce 1 through 7 relating to the Fangs and Requests 8 through 12 relating to HSBC are relevant to support their first cause of action.

Plaintiffs also argue **that their** Requests to Produce are relevant to support their claim for intentional misrepresentation. Focusing on the second cause of action, Plaintiffs' complaint allege that their acceptance of HSBC's proposal to list their properties with a broker and to obtain "alternative financing" and HSBC's subsequent sale of the loan constitutes intentional misrepresentation. See, Paragraphs 27, 28, and Exhibit M of Plaintiffs' Complaint. In looking at the substantive law, according to Plaintiffs' claim, HSBC invites this Court to look at pages 10-14 of its Memorandum of Points and Authorities in Support of Motion to Dismiss filed in December 30, 2003. It is to be noted that in actions alleging fraud, the courts have consistently held the parties to the allegations in their claims and defenses in determining whether the requested discovery was relevant for discovery purposes, primarily because of the requirement of Rule 9(b). "The 2000 amendments to Rule 26(b)(1) require the Courts to look more closely at the pleaded claims and defenses than they have in the past in determining whether the information sought in discovery request is relevant, and therefore, discoverable." 6 Moore's Federal Practice 3d, Section 26.46[10] (Matthew Bender 3d Ed.).

In the instant case, Requests 1-7 relating to the financial relationship between the Fangs and HSBC and Requests to Produce 8-12 relating to HSBC's other loans are not relevant to prove Plaintiffs' claim that HSBC intentionally misrepresented the facts as alleged.

Similarly, one can only reach the same conclusion as it relates to Plaintiffs' fourth cause of action for breach of the purported workout agreement. See, Paragraphs 45 and 46 of Plaintiffs' Complaint. The courts have confined the parties in contract actions to discovery of information relating to the specific complaint they have alleged in their pleadings. See, e.g., Detweiler Bros., Inc. v. John Graham & Co., 412 F.Supp 416, 422 (E.D. Wash. 1976) (when defendant's request for production extended to all of plaintiff's work on a large construction project, discovery was limited to materials relating to installation of steam piping, which was the portion of the project that was subject of Plaintiff's subcontract and was subject to its action); Blatt v. Casa Blanca Cigar Co. 51 F.R.D. 312, 313 (M.D. Pa. 1970)

Lastly, Plaintiffs are of the position that Requests to Produce 1-7 from the Fangs and 8-12 from HSBC are relevant to support their claim for breach of HSBC's fiduciary duty to Plaintiffs. In essence, Plaintiffs are claiming that the documents requested are relevant to show their "longstanding, close, and confidential relationship," with HSBC, thus establishing a fiduciary duty between themselves and HSBC. See, Paragraph 49 of the Complaint. Such position is absurd and an abuse of the discovery process. In focusing, on the substantive law of establishing a fiduciary duty, HSBC invites the Court to look at pages 19-23 and pages 11-14 of its Memo of Points and Authorities in Support of its Motion to Dismiss and its Reply Memorandum filed on December 30, 2003 and January 23, 2004, respectively. Establishment of a fiduciary relationship can only can be supported by the acts and omissions of HSBC and Plaintiffs. Documents relating to the financial relationship between the Fangs and HSBC are not relevant to prove that a fiduciary relationship was established between Plaintiffs and HSBC. Moreover,

documents relating to the sale or workout of HSBC's other loans are not relevant to establish a fiduciary relationship since these documents serve no consequence to make the establishment of such fiduciary relationship more or less probable than without such documents. Based on the above, the discovery requested by Plaintiffs is not relevant to Plaintiffs' claims. Thus, Plaintiffs' motion should be denied in its entirety.

Under Rule 26(b) as amended, the Court may only order discovery of any matter relevant to the "subject matter involved in the action 'only for good cause.'" FRCP 26(b)(1). Plaintiffs are required to "…to make more than conclusory allegations of good cause and to show more that the requested additional discovery is likely to lead to information relevant to the case." 6 Moore's Federal Practice, § 26.41[3][C] (Matthew Bender 3d Ed.).

II

**PLAINTIFFS' FAILURE TO SHOW "GOOD CAUSE" TO SUPPORT THEIR THIRD REQUEST TO PRODUCE PROHIBITS THIS COURT FROM EXPANDING THE SCOPE OF DISCOVERY TO THE "SUBJECT MATTER OF THE PENDING ACTION."**

Even if this Court is inclined to find "good cause," a request for discovery is considered relevant if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. See, Miller v. Doctors General Hospital, 76 FRD 136, 138-139 (W.D. Okla. 1977). Plaintiffs contend on page 6 of their Motion that "[i]f HSBC provided any funding, loans or other credit facilities to … [the Fangs] in order to purchase Plaintiffs' loan, Plaintiffs submit that this would constitute evidence of HSBC's bad faith and in unfair dealing."

As his Declaration demonstrates, Mr. Fang did not receive any financing from HSBC to purchase Plaintiffs loan. Similarly, "discounts," "friendly foreclosures" and refinancing of loans of other customers by HSBC are not relevant to this action because Plaintiff's complaint is not a civil discrimination or civil rights case. Relying on Laufman v. Oakley Building and Loan Company, 72 F.R.D. 116 (1976), Plaintiffs argue that the production of all documents relating to HSBC's sales or workouts, of its other loans are relevant to the subject matter of their case because it shows that HSBC treated Plaintiffs differently and thus breaching its covenant of good faith and fair dealing and HSBC's fiduciary duty to Plaintiffs. See, p. 6-7 of Plaintiffs' Motion.

Unfortunately, the substance of the cause of action in Laufman is clearly distinguishable from the causes of action pled in the instant case. In Laufman, the complaint was a civil rights action based on Civil Rights Act of 1964 and 1968 and on regulations issued by the Federal Home Loan Bank Board, 12 CFR 528 and 531. Id, p. 118. The Laufman case essentially deals with the practice of "redlining." It is also to be noted that the Laufman case predates the 2000 amendments to Rule 26(b). In Laufman, Plaintiffs sought to prove that non-racial reasons provided by Defendant for rejecting their loan application was a pretext. Id, p. 119. The Court was convinced that the loan applications and appraisals sought will help prove and aid "…in the determination of the actual criteria used by Defendants in approving or rejecting the loan applications." Id, p. 119-120. In the instant case, Plaintiffs' complaint sounds in tort and contract, not as a civil rights action. Plaintiffs' reliance on Laufman demonstrates that Plaintiffs are clearly engaging in a fishing expedition on matters unrelated to the claims or defenses of the parties which is an abuse of the discovery process.

### a. Plaintiffs' Motion should be striken for their failure to adhere to Local Rule 37.1(b).

Plaintiffs have violated the Local Rules in the filing of their Ex Parte Motion to Compel. Local Rule 37.1(b) requires the parties, in the event that counsel are unable to settle their differences regarding a discovery dispute, to formulate a written stipulation specifying separately and with particularity each issue that remains to be determined at a hearing and the points and authorities of each party. The stipulation "shall be served and filed with the notice of motion."

However, Plaintiffs filed their Motion, supporting memorandum of points and authorities, declaration of counsel, and proposed order granting the Motion on April 19, 2004, without the required stipulation of the parties and without leave of this Court to do so. The mandatory stipulation of the parties was not filed with this Court until April 21, 2004. To top it, Plaintiffs' counsel intentionally misrepresents to the Court that the Stipulation was filed "contemporaneously with this Motion." See, p. 4 of Plaintiffs' Motion to Compel. Plaintiffs have provided no explanation for their intentional violation of the Local Rules. The violation of or failure to conform to a Local Rule subject the offending attorney or party to such penalties, including monetary sanctions and/or the imposition of costs and attorney's fees to opposing counsel. GR 2.1(a).

### b. Objections to discovery are sustainable when the information sought is marginally relevant, at best, and the burden and expense of the proposed discovery outweighs its likely benefit, if any.

The Third Set of Requests for Production of Documents contains Requests which are broad and far reaching. Request No. 9 demands production of all documents relating to any loans

sold, transferred or assigned by HSBC to parties other than PMC from January 1, 2002, to the present. Request No. 10 would require production of all documents which relate to any "discounts" extended by HSBC on any of its loans from January 1, 2002, to the present. Request No. 11 wants production of all documents relating to any "friendly foreclosures" between HSBC and any of its customers from January 1, 2002, to the present. Finally, in Request No. 12 Plaintiffs demand production of any documents relating to any "refinancing of loan balances" by any of HSBC's customers from January 1, 2002, to the present. These Requests are objectionable.

Under Rule 26 of the FRCP, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defenses of any party. A court may limit discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit. *FRCP 26(b)(2)(iii)*. In determining whether the burden or expense of the proposed discovery outweighs its likely benefit, the court must take into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Id.*

In *Ricotta v. Allstate Insurance Co., 211 F.R.D. 622 (S.D. Cal. 2002)*, plaintiffs demanded production of every report prepared by an expert and his company for Allstate Insurance Company for the ostensible purpose of trying to prove "bias" on the part of Allstate's expert. *Id. at 623*. After Allstate objected and refused to produce the reports, the Plaintiffs filed a motion to compel. The Magistrate Judge found that Allstate would have to examine an estimated 50,000 files and that the "probative value" of the reports would be "questionable". *Id. at 624*. Pursuant

to Rule 26(b)(2)(iii), the court concluded that the burden and expense of requiring Allstate to examine its files and produce the requested reports would far outweigh any likely benefit to Plaintiffs. *Id.*

In *Bryant v. City of New York, 2000 U.S. Dist. LEXIS 18548 (S.D.NY. 2000),* the plaintiffs in a civil rights action for false arrest and unreasonable force moved to compel the City to identify 107 persons who were arrested during a demonstration. *Id. at *1-*2.* The plaintiffs argued that the other 107 detainees may have some information that may be helpful to their claims and moved to compel production of information that would identify each of the detainees. *Id.* The Magistrate Judge engaged in the balancing test required by Rule 26(b)(2)(iii) and found that the power to limit discovery may also be used "where the burden is not measured in the time or expense . . . , but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged, material." *Id. at *3* (quoting *Johnson v. Nyack Hospital, 169 F.R.D. 550, 562 (S.D.NY. 1996)*). In denying the motion to compel, the court held that the requested discovery would impose an administrative burden on the City and, more importantly, a "burden on the privacy interests of the 107 non-parties" and that these burdens far outweigh the "likely benefit" of the requested discovery. *Id. at *9.*

Plaintiffs argue that the documents demanded in Requests Nos. 9 thru 12 will somehow assist them in "determining whether HSBC violated the covenant of good faith and fair dealing and breached its fiduciary duty to plaintiffs." *Plaintiffs' Memo of Points & Authorities in Support of Motion to Compel, filed on April 19, 2004, at 6.* In the alternative, Plaintiffs argue that the requested documents "may" tend to prove that HSBC offered to "resolve" the loans of other bank

customers but fail to indicate to what claims or defenses this putative information would relate. *Id.* at 7.

First and foremost, the requested documents would provide no relevant information to any of the claims and defenses in this case, as discussed above. A duty of good faith and fair dealing is a personal duty allegedly owed by HSBC to Plaintiffs and it simply makes no difference to Plaintiffs' claims how HSBC treated other bank customers. The *Laufman* case cited by Plaintiffs is of no use in this case because it is a "redlining" case in which a bank was accused of discriminatory lending practices affecting a large number of bank customers. *See, Id.*

Further, even assuming, *arguendo*, some marginal relevance in the documents requested, the burden and expense to HSBC and others of the proposed discovery far outweighs any likely benefit to Plaintiffs. As shown by the Declaration of I. C. Underwood filed herein in support of this Opposition, HSBC maintains approximately 130 "banker boxes" of documents in Guam which constitute paid off loans and old records from current loans. HSBC also has approximately 60 "banker boxes" of files of current loans in Guam. *Id.* Each "banker box" contains an estimated minimum of 2000 to 3000 pages of documents. *Id.* HSBC's files contain the private loan records and account information of hundreds of bank customers that are not parties to this litigation. *Id.* The information contained in the records reflects the marketing and sales of HSBC loans which continues to this date and is the confidential and proprietary information of HSBC. *Id.* In order to respond to Requests 9 thru 12, HSBC and its personnel would be forced to expend hundreds of hours to review all of the documents contained in the approximately 190 "banker boxes" at great expense to HSBC. *Id.*

As shown above, the burden and expense to HSBC and others far outweighs any likely benefit to Plaintiffs. HSBC's objections to Request Nos. 9 thru 12 must be sustained.

**b. HSBC should have an opportunity to be heard before imposition of expense shifting sanctions, if this Court rules in Plaintiff's favor.**

Before imposing expense shifting sanctions on a party who unsuccessfully opposes a motion to compel discovery, a Court must afford the persons or parties to be sanctioned an opportunity to be heard. FRCP 37(a) (4)(A), (B). Courts may comply with this requirement by considering written submissions from the affected parties. See, FRCP 37 (a)(4) Advisory Committee's Note (1993).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied. The Court should order Plaintiffs to submit written arguments why expense shifting sanctions should not be assessed thirty (30) days from the Court's Order denying Plaintiffs' Motion to Compel.

**Respectfully submitted** on this 11th day of May, 2004.

LAW OFFICES OF BRONZE & TANG
A Professional Corporation

By: _____
JACQUES G. BRONZE
Attorneys for Defendant Hongkong and
Shanghai Banking Corporation, Ltd.