FILED
DISTRICT COURT OF GUAM
MAY 1 4 2004
MARY L. M. MORAN
CLERK OF COURT

120



JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

Counsel for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>          Plaintiffs,<br><br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br><br>          Defendants. | ) CIVIL CASE NO. 03-00036<br>)<br>)<br>)<br>) PLAINTIFFS' OPPOSITION TO<br>) HONGKONG SHANGHAI BANK'S<br>) MOTION TO STRIKE THE FIRST<br>) AMENDED COMPLAINT IN WHOLE<br>) OR IN PART, OR IN THE<br>) ALTERNATIVE, MOTION TO DISMISS<br>) THIRD AND SIXTH CAUSES OF<br>) ACTION AND FOR SANCTIONS<br>)<br>) |

## INTRODUCTION

On April 9, 2004, the Court granted Plaintiffs leave to amend. On April 27, 2004, Plaintiffs

Alan Sadhwani, Laju Sadhwani, and K. Sadhwani's Inc. filed their First Amended Complaint against

defendant Hongkong & Shanghai Banking Corporation, Ltd. ("HSBC") for breach of the covenant

of good faith and fair dealing; intentional misrepresentation; breach of contract; breach of fiduciary

duty; and breach of duty not to divulge confidential banking information.

Plaintiffs were long-time customers of HSBC for approximately twenty-five years. Plaintiffs

banked exclusively with HSBC, which lent funds to plaintiffs, took plaintiffs' mortgages, security

instruments and other evidences of indebtedness, and accepted all of plaintiffs' deposits. Plaintiffs

**ORIGINAL**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

deposited about $100 million with HSBC during their twenty-five year relationship. As borrowers, plaintiffs disclosed its confidential and proprietary information to HSBC during its long term relationship. Plaintiffs disclosed its confidential financial information related to its business of acquiring real properties and developing them, as well as leasing real properties, including offices and other commercial buildings, and selling electronics, fixtures and appliances, in applying for loans with HSBC. Additionally, plaintiffs have paid HSBC thousands of dollars in interest and fees. By virtue of this long relationship, plaintiffs placed explicit faith, trust, and confidence in HSBC, trusting that HSBC and its officers and employees would deal fairly and honestly with them and would not disclose its confidential and proprietary information.

In September 2002, plaintiffs had an outstanding loan balance of over $6.8 million with HSBC ("the Loan"). Apparently because it was not making sufficient profits on Guam to satisfy its management in Hong Kong, HSBC decided to abandon its operations in Guam. HSBC subsequently began to place undue pressure on plaintiffs to pay off their Loan.

On March 5, 2003 the parties entered into a Promissory Note Modification Agreement which extended the maturity date of the Note to August 31, 2003. (Exh. C to First Amended Complaint).

On March 21, 2003, HSBC and plaintiffs entered into a workout agreement to pay off plaintiffs' Loan, where plaintiffs would either sell their properties or obtain alternate financing. (Exhs G and H to Complaint). Relying upon this workout agreement and HSBC's representations, from March 2003 through August 2003, plaintiffs took numerous steps to comply with its obligations under the workout agreement. First, plaintiffs obtained realtor services to attempt to sale their properties. Second, plaintiffs sought alternative financing with First Hawaiian Bank. Lastly and most importantly, plaintiffs continued to pay on the Promissory Note Modification Agreement.

-2-

Plaintiffs were surprised in July 2003 when it received from HSBC a notice of intent to sell their Loan. Yet even during July 2003, HSBC represented that so long as plaintiffs obtained alternate financing HSBC would try to stop sale of the Loan. However, HSBC never intended to work out plaintiffs' Loan, as it sold plaintiffs' Loan to Paradise Marine Corporation ("PMC") on June 25, 2003. HSBC intentionally misled plaintiffs about its intent to perform on the workout agreement. HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the securing real properties and obtain alternate financing. HSBC reneged on the workout agreement by not granting reasonable time for plaintiffs to perform under the workout agreement. Additionally, HSBC lied about its agreement to try to stop the sale of the Loan if plaintiffs obtained alternate financing. HSBC never had any intention of keeping any of its promises. Based on the heavy burden imposed on HSBC to support its motion to dismiss, and its failure to meet that burden, the Court should deny HSBC's motion to dismiss in its entirety.

## ARGUMENT

**(I)     HSBC'S MOTION TO STRIKE IS WITHOUT MERIT.**

HSBC's attempts to mislead the Court by citing E.E.O.C. v. Pacific Maritime Association, Marine Terminals, Corp., 2000 WL 222 627 (D. Or. 2000) for the proposition that the First Amended Complaint should be stricken. HSBC contends that E.E.O.C. is the "exact strategy" employed by Plaintiffs. However, E.E.O.C. does not stand for the proposition asserted by HSBC. In E.E.O.C., upon motion for leave to amend the complaint, the plaintiff attached the proposed amendments. The court granted the plaintiff leave to amend the complaint. Subsequently, the plaintiff filed an amended complaint that was different from the proposed amended complaint submitted with the motion. Additionally, the plaintiff also filed the amended complaint late. The court ordered the amended

-3-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

complaint stricken based on the untimely filing and because the amended complaint filed was not the amended complaint attached to the motion.

There is no dispute that the Court clearly granted the plaintiffs leave to amend. Order (Apr. 9, 2004). There is also no allegation that the plaintiffs untimely filed their First Amended Complaint. Additionally, upon moving to amend the Complaint, the plaintiffs did not attach its proposed amendments then later file a different amendment. The facts of E.E.O.C. are nowhere "exact" as purported by HSBC. HSBC's failure to be candid with the Court is clearly an underhanded attempt at advocating its unsupported theories that the First Amended Complaint should be stricken.

More importantly, in E.E.O.C., the plaintiff attempted to allege several new claims. The plaintiffs do not allege any new claims. The plaintiffs merely add several new factual allegations to causes of action sustained by the Court. Order (Apr. 9, 2004).

Yet again, HSBC cites Kirk v. IRS, 2000 WL 1902254 (D.Ariz. 2000) for the proposition that in this case it is proper to strike the Amended Complaint. However, in Kirk, the plaintiffs, after dismissal of its causes of action and entry of judgment and without an order authorizing any amendments, filed its amended complaint. The court struck the amended complaint. Kirk is not instrumental in this matter as the Court clearly granted the plaintiffs leave to amend, unlike the plaintiff in Kirk. Based on the foregoing, there is no authority warranting a striking of the entire First Amended Complaint.

Alternatively, even if the Court finds that the leave to amend was specific as to only the third and sixth causes of action, a distinction must be made between improperly asserting new cause of action and disclosing additional factual allegations in support of its claims. The latter is the case

-4-

here. Plaintiffs have asserted factual allegations in ¶¶ 1- 26 of the First Amended Complaint. The facts alleged in ¶¶ 1- 26 not only support the third and sixth causes of action, but the remaining causes of action were upheld by the Court as sufficient. Moreover, plaintiffs sought leave to amend the complaint to include additional factual allegations discovered after the filing of the complaint. Plaintiffs' Memorandum of Points and Authorities in Opposition to HSBC's Motion to Dismiss Complaint (Jan. 16, 2004) pgs. 7, 9,17. Although HSBC complains that the plaintiffs have disclosed additional facts in support of their claims, HSBC benefits from the disclosure of additional factual information for purposes of preparing for discovery and for trial. In the event that the Court finds that the assertion of factual allegations, which in no way affect the viability of the causes of action nor assert new cause of action, were not appropriate, plaintiffs seek leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure.

HSBC contends that Rule 11 sanctions are appropriate. However, HSBC without any support asserts that plaintiffs' conduct was intentional, surreptitious and in violation of Rule 15. Sanctions under Rule 11 should be reserved *"for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."* OveratingEng 'rs Pension Trust v. A-C Co., 859 10 F.2d 1336, 1344 (9th Cir. 1988)(Emphasis added.) In this case, plaintiffs sought leave to amend the complaint and the Court granted leave to amend. *See* Plaintiffs' Memorandum of Points and Authorities in Opposition to HSBC's Motion to Dismiss Complaint (Jan. 16, 2004) pgs. 7, 9,17; Order (Apr. 9, 2004). Plaintiffs' conduct was not clearly frivolous, legally unreasonable or without legal foundation or brought for an improper purpose. Plaintiffs' conduct in filing the Amended Complaint was consistent with its request to amend and the Court's granting of leave to amend. Therefore, sanctions are not appropriate.

-5-

## (II) HSBC HAS FAILED TO MEET THE HEAVY BURDEN OF PROVING THAT THE THIRD AND SIXTH CAUSES OF ACTION IN THE FIRST AMENDED COMPLAINT CAN PROVE NO SET OF FACTS TO SUPPORT A CLAIM WHICH WOULD ENTITLE PLAINTIFFS TO RELIEF

"[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *E.g.,* In re Wells Fargo Sec. Litigation, 12 F.3d 922, 925 (9t Cir. 1993). The Court's role at this stage is not to evaluate the strengths or weaknesses of claims. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test"), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984).

### a. Plaintiffs sufficiently allege a claim for breach of contract in its third cause of action

"It is well settled that where no time for performance is established in the agreement, the law implies that performance must occur within a reasonable time." Ujdur v. Thompson, 878 P.2d 180, 183 (Id.Ct.App.1994); see also J.C. Millet Co. v. Distillers Distrib. Corp., 258 F.2d 139, 143 (9th Cir.1958) (holding that where a contract does not establish a time for performance, the court will infer that performance must occur within a reasonable time); Restatement (Second) of Contracts § 33 cmt. d ("Valid contracts are often made which do not specify the time for performance. Where the contract calls for a single performance such as the rendering of a service or the delivery of goods, the time for performance is a 'reasonable time.' "). The "workout agreement" between Plaintiffs and HSBC did not specify a time for performance. Therefore, the law implied a reasonable time for plaintiffs to perform under the workout agreement.

-6-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Where there is no specific time for performance specified in a workout agreement, there is a cause of action where the borrower is not given reasonable time to perform. Gainer Bank, N.A. v. Broadhurst, 633 N.E.2d 326 (Ind.App. 1994)(appellate court citing to trial court holding). In Broadhurst, borrower entered into a workout agreement with bank in order to avoid bankruptcy. Under the workout agreement, the borrower was required to liquidate his assets to pay the remaining debt. The workout agreement failed to set a time for performance by borrower, i.e. Borrower did not have a deadline to liquidate and pay the remaining debt owed. In compliance with the workout agreement, borrower immediately proceeded to liquidate his business in May 1985, including the sale of real property. Borrower reduced the remaining debt over $100,000.00 in compliance with the workout agreement. Six months later, the bank proceeded with foreclosure. At the close of trial, the court subsequently held that bank improperly proceeded with the foreclosure without giving the borrower a reasonable time to complete performance.

Although the trial court's decision was subsequently overturned by the appellate court, the trial court's determination in Broadhurst is instructive for purposes of this motion to dismiss under Rule 12(b)(6). The facts in Broadhurst and the facts in this case are strikingly similar. On March 21, 2003, Plaintiffs entered into a workout agreement with HSBC to avoid the sale of its loan to a third party. As part of the workout agreement, plaintiffs were required to sell its mortgaged properties and find alternate financing to purchase the promissory note. Plaintiffs, upon accepting the terms of the workout agreement, sought the services of Century 21 to sell the properties and sought alternative financing. All the while, plaintiffs complied with the monthly payment terms. Less than three months later, HSBC negotiated with Joseph Fang for the purchase of the plaintiffs loan, and subsequently sold the loan to Paradise Marine Corporation in June 2003.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-7-

In Broadhurst, the debt owed was $362,131.45. The trial court found that six months to sale property was not a reasonable amount of time. In this case, plaintiffs held a $6.8 million dollar debt, and HSBC gave less than three months to plaintiffs to perform under the terms of its workout agreement. Plaintiffs submit that a reasonable amount of time would be greater than the maturity date of August 31, 2003 for the sale and location of alternative financing for a $6.8 million dollar loan. When viewing these facts in a light most favorable to the plaintiffs, it is indisputable that plaintiffs have alleged facts sufficient to state a cause of action for breach of contract against HSBC.

Additionally, by the terms of the Amendment to Credit Facility/Lease, there was an implicit extension of the maturity date beyond August 31, 2003 because plaintiffs were required to pay monthly until the debt was paid in full. The Amendment to Credit Facility/Lease executed on November 6, 2002 required plaintiffs to make payments on the loan "per month until the Note is paid in full." ¶5 Exh. A, First Amended Complaint. Additionally, the Promissory Note Modification Agreement confirmed the terms and conditions of the Amendment to Credit Facility/Lease. Exh. C., First Amended Complaint. ¶3 of the Promissory Note Modification Agreement provides:

> General. The terms, conditions, and covenants of the Note, the guarantees, the security agreement, and all other loan documents which may secure the Note or which may have been executed in relation to the Note or to the loan transaction which the Note evidences remain in full force and effect except as amended by the express terms of the Agreement, and none other.

The Promissory Note Modification Agreement also expressly confirmed the Amendment to Credit Facility/Lease setting forth the payment schedule. Although there is an apparent conflict between the stated maturity date and the confirmed condition providing that the plaintiffs were to make monthly payments until the debt is paid in full, any ambiguity in the terms must be construed against

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-8-

HSBC, as the drafting party. CITATION. When viewing these facts in a light most favorable to the plaintiffs, the court may find that an implicit extension of the maturity date existed.

### b. Plaintiffs sufficiently allege a cause of action for breach of duty not to disclose confidential information

In an attempt to obscure the issues in this case, HSBC relies on the transferability of the promissory note. However, the transferability of the promissory note is not in issue, and neither is whether HSBC was entitled to transfer the note. The issue is whether there is a cause of action where a bank violates its duty of confidentiality when it without authorization or consent of the customer, the bank releases confidential information regarding the customer's account. In its misguided attempt to apply provisions of Guam law which are irrelevant to these proceedings, HSBC completely misses the point as is painfully obvious by its example on the transferability of mortgages by the Federal National Mortgage Association. Plaintiffs are not alleging that general information that is public knowledge, such as mortgages, were disclosed. Rather it is the disclosure of *confidential* and *proprietary* information, that is subject to HSBC's duty not to disclose. HSBC's example is fatally flawed because foreclosure proceedings do not involve the release of business plans, rentals, marketing and pricing strategies.

Courts have held that banks have a duty to refrain from disclosing confidential information to third parties. Djowharzadeh v. City Nat. Bank and Trust Co. of Norman, 646 P.2d 616 (Okl.App., 1982); Milohnich v. First Nat. Bank of Miami Springs, 224 So.2d 759, 760 (Fla.App. 1969); Peterson v. Idaho First Nat. Bank, 367 P.2d 284 (Id. 1961). In Djowharzadeh, the bank disclosed confidential financial investment information to a third party. The Oklahoma Appellate court, on bank's motion for summary judgment, held that there is an implied contract between a bank

-9-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

and its customer not to disclose confidential information. In determining whether an implied contract exists between the bank and borrower, the court considered the following:

> This intimate, private information is not furnished to any bank official lightly, nor, strictly speaking, voluntarily. Rather, the borrower is compelled to disclose the information. The delicately balanced relationship thus temporarily created is not, in ordinary cases, one composed of equals because of the inordinate power of the bank. The precarious position of the borrower and the relatively superior position of the bank mandates there be a counterbalancing special duty imposed on the part of the bank. (Emphasis added.)

Djowharzadeh v. City Nat. Bank and Trust Co. of Norman, 646 P.2d at 619. The court sustained the cause of action against bank stating:

> Bank's relationship to a loan applicant implicitly imposes the duty to keep the contents of loan applications confidential. This duty has existed traditionally and continues to exist, if not specifically in the law books, at least in the mind of the public in general and within the banking community in particular. (Emphasis added.)

Similarly, in Milohnich v. First Nat. Bank of Miami Springs, the court sustained a complaint based on an implied contractual duty to a plaintiff depositor against Bank for disclosing information concerning its accounts to individual third parties.

The holding in Graney Development Corp. v. Taksen, 400 N.Y.S.2d 717 (N.Y., 1978) is distinguishable. In Graney Development, the harm alleged was the disclosure of loan information to a prospective purchaser of the loan. Specifically, the bank had disclosed that the borrower had failed to keep current on the loan. The court held that the disclosure of loan information, including payment history, is not the type of information a borrower expects to be kept confidential. Graney Development, 400 N.Y.S.2d at 768. Moreover, the court held that in this situation, bank was only disclosing the status of the loan as a creditor. In this context, the court dismissed the action against bank. HSBC's reliance on Graney Development is misplaced.

-10-

# CONCLUSION

Based on the foregoing, HSBC has failed to establish proper grounds for striking the First Amended Complaint and the Court should deny this motion in its entirety. Furthermore, HSBC bears a heavy burden in establishing that plaintiffs can prove "no set of facts in support of his claim which would entitle him to relief. As set forth above, courts in factual circumstances present before the Court recognize causes of action for breach of contract, third cause of action, and implied contract, sixth cause of action. Therefore, HSBC has failed to meet its heavy burden and the alternative motion to dismiss should be denied.

Respectfully submitted on May 14, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs

By: JOAQUIN C. ARRIOLA

-11-

## CERTIFICATE OF SERVICE

I, JOAQUIN C. ARRIOLA, hereby certify that on May 14, 2004, I caused to be served via hand delivery, the **PLAINTIFFS' OPPOSITION TO HONGKONG SHANGHAI BANK'S MOTION TO STRIKE THE FIRST AMENDED COMPLAINT IN WHOLE OR IN PART, OR IN THE ALTERNATIVE, MOTION TO DISMISS THIRD AND SIXTH CAUSES OF ACTION AND FOR SANCTIONS** to:

>    Jacques A. Bronze, Esq.
>    Bronze & Tang, P.C.
>    2nd Floor, BankPacific Building
>    825 S. Marine Drive
>    Tamuning, Guam 96913

Dated this 14th day of May, 2004.

_____
JOAQUIN C. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910