**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*



## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>Defendants. | CIVIL CASE NO. 03-00036<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE FIRST AMENDED COMPLAINT IN WHOLE OR IN PART OR, IN THE ALTERNATIVE, MOTION TO DISMISS THIRD AND SIXTH CAUSES OF ACTION AND FOR SANCTIONS |

### I. INTRODUCTION

This memorandum of points and authorities is in reply to Plaintiffs' Opposition to Defendant's Motion to Strike the First Amended Complaint in Whole or in Part, or in the Alternative, Motion to Dismiss the Third and Sixth Causes of Action and for Sanctions.

//

//

//

//

## II. THE FIRST AMENDED COMPLAINT SHOULD BE STRICKEN BECAUSE IT IS NOT SUPPORTED BY THE LEAVE OF COURT SPECIFIC TO THE THIRD AND SIXTH CAUSES OF ACTION.

Plaintiffs' Opposition Memorandum ("Opposition Memo") is fatally flawed in one very important and obvious respect. They cite no authority which would permit them to amend their Complaint without leave of court! They fail to cite any supporting rule, case law, treaties or lesser authority because of the simple fact that leave of court to amend after responsive pleadings are served is absolutely mandatory. Rule 15(a) states in no uncertain terms that *"a party may amend the party's pleading only by leave of court or by written consent of the adverse party..."* FRCP 15(a), (Emphasis added).

In contrast, Defendant Hong Kong Shanghai Banking Corporation ("HSBC") properly relies on *E.E.O.C. v. Pacific Maritime Association, Marine Terminals, Corp.*, 2000 WL 222 627 (D. Or. 2000, for the proposition that amendments exceeding any leave to amend provided by the Court is subject to striking. Plaintiffs argue that *E.E.O.C.* is not applicable here because Plaintiffs did not offer a proposed amended complaint. However, whether or not the proposed amended complaint is identical to the actual amended complaint is only the manifestation of a legal principle and not the principle itself. In other words, the court in *E.E.O.C.* did not strike the actual amended complaint because it contained different fonts form the proposed amended complaint or because they had different margins. Instead, the actual amended complaint was stricken because it exceeded the scope of leave that was provided by the court and was therefore made without leave of court. Moreover, by not properly seeking leave, Plaintiffs have deprived

HSBC of the opportunity to examine and address the reasons for denying leave, such as undue delay, undue prejudice and futility of amendment.

While the Plaintiffs attempt to hide their Opposition Memo's glaring deficiency of any supporting authority behind their lengthy "Introduction" of irrelevant allegations, they take a ominous turn towards the absurd when they argue that "even if the Court finds that the leave to amend was specific as to only the third and sixth causes of action, a distinction must be made between improperly asserting a new cause of action and disclosing additional factual allegations in support of its claims." *Opposition Memo at 4.*

Yet again, Plaintiffs cite no supporting rule, case law, treaties or lesser authority that supports their fictional distinction. There simply is no authority which holds that leave to amend is not necessary if the amendment only discloses additional factual allegations! Even worse, how could Plaintiffs reasonably claim that leave was not specific to the third and sixth causes of action when this Court's Order of April 9, 2004 defines explicitly the specific parts of the Complaint that were amendable? In pertinent part, the Order states "the Court GRANTS the motion to Dismiss as the Third and Sixth Causes of Action, which are dismissed without prejudice. *The Plaintiffs are hereby permitted to amend their Complaint to re-assert the dismissed causes of action.* Order, p.13 (Emphasis added). With respect to the sixth cause of action, the Order further states "[t]he Plaintiffs are permitted to amend their Complaint to re-assert this cause of action and specify what law(s) HSBC allegedly violated." *Order at 13.*

This blatant, unremitting and intentionally improper conduct of Plaintiffs is clearly the type of action that should be sanctioned under Rule 11. Even under Plaintiffs' argument that

sanctions should be reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose", the Plaintiffs' conduct is a model case for sanctions. First, Plaintiffs completely ignore the explicit terms of the Court's Order and make wholesale changes to all parts of the Complaint. Second, their "interpretation" of the Order is legally unreasonable. Third, Plaintiffs wholesale amendment of the Complaint is without legal foundation. Finally, instead of admitting their mistakes and requesting for additional leave to amend their Complaint, Plaintiffs frivolously create a fictional distinction that is also without legal foundation.

Based on the forgoing, HSBC respectfully submits that the entire First Amended Complaint ("FAC") be stricken as being without legal effect or, in the alternative, all new amendments except for the amendments to the third and sixth causes of action to be stricken. In all cases, HSBC respectfully submits that sanction should be imposed in accordance with Rule 11.

## III. THE THIRD CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.

In Plaintiffs' original Complaint, they alleged in their Third Cause of Action that HSBC breached the March 5, 2003, Promissory Note Modification Agreement ("PNMA") by failing to review the Note every six months and by selling the Note and loan to Paradise Marine Corporation ("PMC"). *See, Order, filed herein on April 9, 2004, at 9.* This Court dismissed the

Third Cause of Action for failure to state a claim upon which relief may be granted and permitted Plaintiffs limited leave to amend the dismissed claim. *Id. at 10, 13.*

In support of their amended Third Cause of Action, titled "Breach of Contract-Promissory Note Modification", Plaintiffs assert that while the PNMA, attached to the FAC as Exhibit "C", only extends the maturity date of the subject Note to August 31, 2003, the alleged "workout agreement" between the parties "implicitly extended the date of maturity" under the PNMA to a date unknown. *FAC at ¶ 44.* Plaintiffs claim that when HSBC sold and assigned the subject note, loan, and security instruments to PMC HSBC thereby breached the PNMA "as amended by the workout agreement". *FAC at ¶ 44.*

In its opening Memorandum, HSBC presented clear arguments based upon Guam statutory provisions which detail the requirements under Guam law for implied contracts relating to consideration and the necessity for the terms of the implied contract to be manifested by conduct. *HSBC's Memorandum of Points and Authorities in Support of Motion to Strike First Amended Complaint in Whole or in Part, or, in the Alternative, to Dismiss the Third and Sixth Causes of Action and for Sanctions* ("HSBC Memo"), *filed herein on April 30, 2004, at 5-6.* Further, HSBC pointed out that it had an absolute right to sell the Note and loan under Guam law. *Id. at 7.* Plaintiffs have utterly failed to address these arguments in their Opposition Memorandum. Instead, Plaintiffs attempt to argue that the alleged workout agreement somehow implicitly extended the maturity date of the Note and prohibited HSBC from selling the Note, even though the PNMA explicitly extended the maturity date to August 31, 2003, and placed no restriction on HSBC's right to sell the Note. *Opposition Memo at 6-8.* Plaintiffs conclude that

since the alleged workout agreement did not purportedly specify a time for performance, then a "reasonable time" to perform is implied. *Id. at 6*. Unfortunately for Plaintiffs, the documents they rely on to prove the "implied" extension actually show otherwise.

The PNMA specifically provides that the maturity date of the Note is extended to August 31, 2003. *FAC, Exh. "C"*. The alleged "workout agreement", as embodied in Exhibit "G" to the FAC, specifically advises Plaintiffs that HSBC is "concerned that you have not taken seriously the Bank's notice to K. Sadhwani Inc. that it will **not** be able to renew or extend its loan facility when it becomes due for repayment on August 31, 2003." It could not have been any clearer to Plaintiffs that HSBC would not agree to extend the maturity of the Note beyond August 31, 2003, even assuming that Exhibit "G" constituted a "workout agreement".

Next, Plaintiffs argue that the Amendment to Credit Facility/Lease ("ACFL") dated November 6, 2002, somehow contained an "implicit extension of the maturity date beyond August 31, 2003". *Opposition Memo at 8*. Yet, the ACFL specifically provides that the maturity date of the Note is December 31, 2002, and it is impossible to imply another maturity date when the ACFL is unambiguous. *See, FAC, Exh. "A"*. Thereafter, the PNMA extended the maturity date of the Note to August 31, 2003, and the alleged "workout agreement" explicitly confirmed that there would be no further extension of the maturity date. Based upon the Exhibits attached to the FAC, it is simply impossible to imply, by conduct or otherwise, that HSBC somehow agreed to extend the maturity date.

Unfortunately for Plaintiffs, there are no documents attached to the FAC and no facts alleged therein that support Plaintiffs' conclusion that the maturity date of the note was

- 6 -

"implicitly extended". Plaintiffs admit that the maturity date of the Note as specified in the PMNA is August 31, 2003. *FAC at ¶ 44.* There is nothing in either Exhibit "G" or "H" from which it may be implied that either party ever contemplated, much less agreed to, an extension of the maturity date of the note.

Plaintiffs' citation to the case of *Broadhurst v. Moenning, 633 N.E.2d 326 (Ind. 1994)*, is truly curious. Plaintiffs claim that even though the trial court was reversed by the appellate court the decision is "instructive" because the facts of the case are "strikingly similar" to those in this case, even though Plaintiffs fail to discuss the facts in *Broadhurst*. *Opposition Memo at 7-8.*

In *Broadhurst,* the bank made an **unsecured** loan to Broadhurst in 1983. When he failed to repay the note at maturity, the bank obtained a mortgage on properties as security for repayment. In order to avoid bankruptcy in 1985, Broadhurst entered into a written "workout" agreement with the bank that required him to liquidate his mortgaged properties to pay the remaining debt and the bank agreed to release Broadhurst and his wife from their personal guaranties, freeze the amount of the debt, and not assess further interest. The workout agreement did not set a time for performance by Broadhurst. When the note had still not been paid in 1988, the bank filed for foreclosure on its mortgage. *Id. at 328.* In the first appeal of the case, the appeals court reversed the trial court and determined that the bank was entitled to foreclosure. *Id. at 329.* In his second action, Broadhurst sued the bank on lender liability and bad faith claims. *Id. at 329-330.* The court concluded that the bank was entitled to summary judgment on all claims as they should have been raised in the foreclosure action since Broadhurst failed to sell his properties as required by the workout agreement. *Id. at 332-3.*

On its face, the *Broadhurst* is inapplicable to Plaintiffs arguments and actually supports dismissal of the Third Cause of Action because the Plaintiffs, like Broadhurst, failed to liquidate their properties as required by the alleged "workout agreement". Unlike Broadhurst, however, the maturity date of Plaintiffs' Note was never extended beyond August 31, 2003.

Plaintiffs cite *Ujdur v. Thompson, 878 P.2d 180 (Idaho 1994)*, for the proposition that where there is no time for performance established in the agreement, a reasonable time for performance is implied. *Opposition Memo at 6*. However, the court actually concluded that "where the parties make time of the essence in setting a deadline for payment, strict compliance with such deadline is required." *Ujdur, supra at 183*. As shown above, HSBC set a strict deadline for payment and strict compliance was required.

Plaintiffs cite *J. C. Millet Co. v. Distillers Distrib. Corp., 258 F.2d 139 (9th Cir. 1958)*, for the same proposition. *Opposition Memo at 6*. In the *J. C. Millet* case, a distributor sued an importer and manufacturer for breach of contract for periodic deliveries of liquor. *Id. at 140-1*. The court concluded that since the delivery dates of liquor were not set by the contract the court imposed a reasonable time for the deliveries "considering the standard practice of the industry and the usual practice between these parties". *Id. at 143*. The case has no application to this case. Here, the underlying documents relied upon by Plaintiffs indisputably show that the maturity date of the Note was August 31, 2003, and no other date can be implied.

As shown above, Plaintiffs have failed to plead any facts in the FAC which show conduct on the part of HSBC or, for that matter, on the part of Plaintiffs, which manifested any implied contract to extend the maturity date of the Note. Further, Plaintiffs have failed to allege any facts

showing there was any benefit conferred upon HSBC or detriment suffered by Plaintiffs that they were not already bound to suffer under the legal obligations they had a duty to perform pursuant to the subject Note and loan. Accordingly, there was no conduct by the parties alleged showing an agreement to extend the maturity date and no consideration alleged. For these reasons alone, the Third Cause of Action fails to state a claim upon which relief can be granted.

Plaintiffs also assert in the Third Cause of Action that since "none of the Loan agreements" allow for the sale of the loan to PMC, then HSBC breached such loan agreements, as amended by the "workout agreement", by selling the loan to PMC. *FAC at ¶ 46.* This claim is a ruse and was earlier disposed of in this Court's April 9 Order. HSBC has shown that it had the clear right under Guam law to sell the Note. *HSBC Memo at 7.* Since Plaintiffs have failed to respond to this argument, it must be deemed as admitted for purposes of this Motion.

# IV. THE SIXTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.

The original Complaint in this case ("Complaint"), dated October 21, 2003, claimed in the Sixth Cause of Action that HSBC had violated unspecified "banking and confidentiality laws". The Order filed by this Court on April 9, 2004, granted HSBC's motion and dismissed the Sixth Cause of Action contained in the Complaint and granted limited leave to Plaintiffs to replead their claim and "to specify what law(s) HSBC allegedly violated." *Order at 13.* However, without the Court's permission, Plaintiffs have alleged a new Sixth Cause of Action

based upon an alleged "general duty" of confidentiality and implied contract. In support of their Sixth Cause of Action, Plaintiffs assert that HSBC has a "general duty" not to disclose their "financial condition" to third parties. *FAC at ¶ 58.* Plaintiffs also claim that there was "an implied term of contract" between the parties that prohibited HSBC from divulging to third persons "either the state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC." *Id.* Additionally, Plaintiffs allege that "it is an implied condition of the contract" between the parties that HSBC will not divulge to third persons the "financial condition and the business affairs of the Plaintiffs." *Id.* As discussed in HSBC's Motion to Strike, the new Sixth Cause of Action must be stricken because it is in violation of this Court's Order and because Plaintiffs failed to seek leave of this Court to amend their Complaint. Assuming, *arguendo*, that this Court does not strike the new Sixth Cause of Action in its entirety, it should be dismissed for failure to state a claim upon which relief can be granted.

HSBC has shown that the Note and loan were negotiable instruments freely transferable under Guam law, Plaintiffs have failed to plead the elements of an implied contract under Guam law, and, even assuming the Note and loan were not freely transferable, there exists no general duty of confidentiality owed by a lender to a borrower. *See, HSBC Memo at 8-10.*

In response, Plaintiffs do not discuss, much less refute, HSBC's cited authorities which clearly show the Note and loan to have been freely transferable and Plaintiffs' failure to plead facts, as opposed to conclusions, required to support a claim of implied contract. As noted above, since Plaintiffs have failed to address these arguments, they must be admitted for

purposes of this Motion. Instead, Plaintiffs only argue that banks have a "general" duty "to refrain from disclosing confidential information to third parties." *Opposition Memo at 9-10.*

In support of their "duty of confidentiality" argument, Plaintiffs cite *Djowharzadeh v. City National Bank and Trust Co. of Norman,* 646 P.2d 616 (Okla. App. 1982). However, the facts are entirely inapplicable to this case. In *Djowharzadeh,* a regular bank customer with good credit learned of a real estate opportunity which was far below market value that was not on the open market. *Id. at 617.* The customer went to the bank for a loan and gave the loan officer all the details of the sale. While the loan application was pending, the loan officer advised wives of the bank's president and senior vice president about the property being offered for sale and they purchased the property for themselves. In the meantime, the bank turned down the loan application to the customer on dubious grounds, at best. *Id. at 617-8.* The customer sued the bank and the trial court granted summary judgment to the bank on the defense that the bank owed no duty of confidentiality to the customer. *Id. at 618.* The appeals court reversed and found that banks may "not use their favored position to the detriment of their customers, either directly or indirectly". *Id. at 619.* The appeals court held that, under the specific circumstances presented in the case, the bank had an implied duty "to keep the contents of loan applications confidential." *Id. at 619-620.*

Of course, the egregious conduct of the bank in *Djowharzadeh* is not presented in this case. Here, Plaintiffs argue that HSBC violated an implied duty of confidentiality by selling the Note and loan to PMC, which HSBC had every right to do under Guam law. If the Court were to adopt Plaintiffs' argument, then HSBC and every other bank would have to get consent from

borrowers before a loan could be sold or assigned to another party or to the secondary market, such as Fannie Mae or Ginnie Mae, or when a bank wanted to provide credit information to a credit rating agency. Plaintiffs have not alleged that HSBC appropriated any of their investment opportunities and the *Djowharzadeh* case is totally inapplicable to the facts of this case.

Next, Plaintiffs cite the case of *Milohnich v. First National Bank of Miami Springs,* 224 So.2d 759 (Fla. App. 1969), for the same argument. In *Milohnich*, a **depositor** at a bank alleged that the bank divulged information to third parties about funds on deposit who, in turn, sued the depositor and enjoined the bank from distributing any of the monies on deposit. *Id. at 760.* The depositor sued the bank, the trial court dismissed the case for failure to state a claim, and the depositor appealed. *Id.* The appeals court found that the complaint alleged a cause of action for violation of an implied duty by the bank not to disclose information "negligently, willfully or maliciously or intentionally to third parties, concerning the **depositor's** account." *Id. at 762 (emphasis supplied).* However, the appeals court limited the decision's application to the facts presented and specifically pointed out that its decision did **not** attempt to deal with disclosures of a bank "relating to loan information" or "general credit information between banks". *Id.* Accordingly, the decision in *Milohnich* is limited to its facts and provides no support to Plaintiffs in this case where the alleged disclosure relates entirely to "loan information". By its very holding, the decision in *Milohnich* is inapplicable to this case.[1]

---

[1] The *Milohnich* case was overruled, in part, by the Supreme Court of Florida in *Barnett Bank of West Florida v. Hooper,* 498 So.2d 923 (Fla. 1986). However, the Court in *Barnett Bank* approved an exception to the duty of confidentiality owed to a **depositor** when disclosure is made "pursuant to the bank's interests". *Id. at 925.*

*Alan Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation, Ltd., et al.*
*Civil Case No. CV03-00036*

Finally, Plaintiffs cite the case of *Peterson v. Idaho First National Bank*, 367 P. 2d 284 *(Idaho 1961),* as support for their theory of a "general duty of confidentiality" allegedly owed by a bank to its borrower. In *Peterson*, a depositor sued a bank for damages for an alleged violation of the right to privacy when a bank officer released information to the depositor's employer about checks that the depositor was bouncing. *Id. at 286.* The employer, Family Finance Corporation, also had accounts at the bank and had asked the bank manager to advise the employer whenever an employee might be doing anything that might discredit the employer. *Id.* The depositor sued the bank and the trial court dismissed for failure to state a claim. *Id. at 285.* While concluding that there was no claim for a violation of the right to privacy, the court held that there was an implied contract between the bank and a depositor not to disclose information about the depositor's accounts. *Id. at 588.* Again, the *Peterson* case is inapplicable on its facts. It involves a depositor, not a borrower, and it relates to the disclosure of information concerning amounts on deposit with the bank, not loan information.

There is no question that the relationship between HSBC and Plaintiffs was that of lender and borrower. It is equally clear that HSBC was explicitly authorized under Guam law to sell and assign to subject note, loan and security instruments. Since the Sixth Cause of Action is wholly based upon the allegation that HSBC "divulged" financial information to PMC by selling the subject loan and Note, which HSBC had the right to do under Guam law, then no cause of action can arise against HSBC for doing that which it was legally entitled to do. Further, as shown above, no duty of confidentiality exists between debtor and creditor. Accordingly,

*Alan Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation, Ltd., et al.*
*Civil Case No. CV03-00036*

Plaintiffs have no cognizable legal theory under the Sixth Cause of Action and it must be dismissed for failure to state a claim upon which relief may be granted against HSBC.

For the foregoing reasons, HSBC's Motion to Strike the First Amended Complaint in Whole or in Part, or, in the Alternative, Motion to Dismiss the Third and Sixth Causes of Action and for Sanctions should be granted.

*Respectfully submitted* this 21st day of May, 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By: _____
JACQUES G. BRONZE
*Attorneys for Hongkong and Shanghai*
*Banking Corporation, Ltd.*

- 14 -

Case 1:03-cv-00036   Document 146   Filed 05/21/2004   Page 14 of 14

*Alan Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation, Ltd., et al.*
*Civil Case No. CV03-00036*

Plaintiffs have no cognizable legal theory under the Sixth Cause of Action and it must be dismissed for failure to state a claim upon which relief may be granted against HSBC.

For the foregoing reasons, HSBC's Motion to Strike the First Amended Complaint in Whole or in Part, or, in the Alternative, Motion to Dismiss the Third and Sixth Causes of Action and for Sanctions should be granted.

*Respectfully submitted* this 21st day of May, 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By: _____
JACQUES G. BRONZE
*Attorneys for Hongkong and Shanghai*
*Banking Corporation, Ltd.*