ORIGINAL

FILED
DISTRICT COURT OF GUAM
MAY 27 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ALAN SADHWANI *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORP., LTD., *et al.*,<br><br>Defendants. | Civil Case No. 03-00036<br><br>ORDER |

Pursuant to the authority granted by General Orders 04-00016 and 04-00017,[1] on May 18, 2004, this Court heard oral argument from counsel regarding the Plaintiffs' Motion to Compel Answers to Third Set of Requests for Production of Documents and for Sanctions (the "Motion to Compel"). Present at the hearing was Attorney Joaquin C. Arriola for the Plaintiffs. Attorney Jacques A. Bronze appeared on behalf of the defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC"). At the conclusion of the hearing, the Court took the motion under advisement. The Court now issues this written Order setting forth the bases for its rulings herein.

I. **Background**

A. Factual Background

The Plaintiffs Alan Sadhwani, Laju Sadhwani and K. Sadhwani's, Inc. (collectively the

---

[1] While the Court exercises its jurisdiction over this matter pursuant to the above-cited General Orders, the Court recognizes that there may be instances wherein its authority is broader than that conferred by the General Orders.

"Plaintiffs") allege that they had a long-term banking relationship with HSBC which spanned over 25 years. (Complaint[2] at ¶5.) In September 2002, the Plaintiffs had an outstanding loan balance of over $6.8 million with HSBC (the "Loan"). The Loan was secured by several pieces of Guam real estate.

Sometime in early 2002, HSBC determined it would soon discontinue its operations in Guam. On March 5, 2003, the parties entered into a Promissory Note Modification Agreement (Complaint at ¶8, Exh. C thereto), which extended the maturity date of the note to August 31, 2003.

The Plaintiffs assert that when they had difficulty making payments on the Loan, the parties entered into a loan workout agreement. (Complaint at ¶12, Exh. G thereto) The Plaintiffs contend that pursuant to that loan workout agreement, the Plaintiffs sought replacement financing and attempted to sell some of their properties. The Plaintiffs allege that notwithstanding the loan workout agreement, HSBC sold the Loan to a non-bank, Paradise Marine Corporation ("PMC") on June 25, 2003.

B. <u>Procedural History</u>

On October 21, 2003, the Plaintiffs brought suit against HSBC and doe defendants in the Superior Court of Guam. The original Complaint asserted six (6) separate causes of action.[3] On November 5, 2003, HSBC removed the action to this Court based on diversity jurisdiction.

On December 30, 2003, HSBC filed a Motion to Dismiss the Complaint. In a written Order filed April 9, 2004, the district judge granted in part and denied in part the Motion to Dismiss. The district judge denied the Motion to Dismiss as to the First, Second, Fourth, and

---

[2] The Complaint is attached as Exhibit B to the Notice of Removal of Action, Docket Number 1 (November 5, 2003).

[3] The Complaint alleged the following causes of action:

I. Breach of Covenant of Good Faith and Fair Dealing;
II. Intentional Misrepresentation;
III. Breach of Contract: Promissory Note Modification Agreement;
IV. Breach of Contract: Work out Agreement;
V. Breach of Fiduciary Duty; and
VI. Breach of Banking and Confidentiality Laws.

Fifth causes of action. However, the Third and Sixth causes of action were dismissed without prejudice. The district judge permitted the Plaintiffs to amend the Complaint to re-assert the dismissed causes of action.[4]

On March 8, 2004, the Plaintiffs served their Third Set of Requests for Production of Documents ("Third Set of Requests") on HSBC. (A. Arriola Decl. at ¶2, Exh. 1 thereto) On April 2, 2004, HSBC served its Objections and Responses upon the Plaintiffs. (Id. at ¶3, Exh. 2 thereto) HSBC did not produce a single document requested. (Id.)

On April 5, 2004, the Plaintiffs' counsel Anita Arriola telephoned HSBC's counsel Jacques Bronze and requested HSBC to provide the documents requested in the Third Set of Requests. (Id. at ¶4) Mr. Bronze again refused to produce the documents. (Id.)

On April 6, 2004, Ms. Arriola then wrote to HSBC's counsel to confirm the previous day's conversation. (Id. at ¶5, Exh. 3 thereto) On April 9, 2004, HSBC's other counsel Richard Pipes responded to Ms. Arriola's letter since Mr. Bronze was off-island. (Id., Exh. 4 thereto) Mr. Pipes reiterated that HSBC had not changed its position with respect to the Third Set of Requests. (Id.)

On April 12, 2004, Ms. Arriola again wrote to Mr. Pipes to advise HSBC that the Plaintiffs intended to file a motion to compel. (Id. at ¶6, Exh. 5 thereto) On April 14, 2004, counsel met to discuss the discovery dispute as required by Local Rule LR 37.1(a). The parties were unable to resolve the dispute. (Id. at ¶7)

Thus, on April 19, 2004, the Plaintiffs filed the instant Motion to Compel. HSBC filed its Opposition Brief on May 11, 2004. The Plaintiffs filed a Reply Brief on May 14, 2004.

II. **Discussion**

    A. <u>Local Rules of Practice</u>

HSBC contends that the Motion to Compel should be stricken because the Plaintiffs' failed to comply with Local Rule LR 37.1(b) of the Local Rules of Practice for the District court

---

[4] On April 27, 2004, the Plaintiffs filed their First Amended Complaint. On April 30, 2004, HSBC filed a Motion to Strike the First Amended Complaint in Whole or in Part, or, in the alternative, to Dismiss the Third and Sixth Causes of Action. Said motion is set to be heard on June 28, 2004 by Judge Dean D. Pregerson.

of Guam. Local Rule LR 37.1(b) requires the parties, in the event they are unable to settle their differences regarding a discovery dispute, to formulate a written stipulation specifying separately and with particularity each issue that remains to be determined at a hearing. Said stipulation is required to be filed with the motion.

In this instance, the required stipulation was filed a mere two (2) days following the filing of the Motion to Compel. The Plaintiffs maintain that such failure was inadvertent and not a willful or intentional violation of the Local Rules. As HSBC fails to show how it was prejudiced by the Plaintiffs' two-day delay in filing the required stipulation, the Court excuses this as a minor *faux pas*. The Court hereby denies HSBC's request to strike the Motion to Compel.

### B. Discovery Standard

The next issue is what standard should the Court apply to the Plaintiffs' discovery requests. As noted by both parties, Fed. R. Civ. P. 26(b)(1) was amended in 2000. Presently, Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Thus, as noted by HSBC, there are two tiers to discovery. First, the parties may obtain discovery regarding any non-privileged matter that is *relevant to the claim or defense of any party*. Id. If not relevant to a claim or defense, *for good cause* the court may order discovery of any matter *relevant to the subject matter involved in the action*. Id. Furthermore, because the dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision, "the good-cause standard warranting broader discover is meant to be flexible." Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment.

### B. Analysis

The Plaintiffs' Third Set of Requests for sought the production of 13 categories of

documents. At issue here are two classes of documents: Request Nos. 1 through 7 and Request Nos. 9 through 12.[5] Request Nos. 1 through 7[6] sought the production of all information and documents relating to any loan agreements, letters of credit, promissory notes, or other credit facilities extended by HSBC to Joseph K. Fang ("Mr. Fang");[7] Mr. Fang's family (comprising of his wife, children, siblings or parents); any business entity in which Mr. Fang or his family had any ownership interest; or any business entity in which Mr. Fang or a member of his family held a position of officer or director. On the other hand, Request Nos. 9 through 12 sought information about other HSBC customers who may have benefitted from more favorable treatment than that received by the Plaintiffs.[8]

The Plaintiffs contend that the requested documents are directly relevant to their claims.[9] HSBC, on the other hand, asserts that said documents are not relevant. Furthermore, even if the information sought is relevant, HSBC maintains that it still should not be required to produce them since the burden and expense of production outweigh their likely benefit, if any.

### 1. Request Nos. 1 through 7: Fang Requests

The Plaintiffs assert that the Fang Requests seek to discover the means by which Mr.

---

[5] The Plaintiffs do not seek further responses to Requests Nos. 8 and 13 as HSBC has stated that it does not have documents responsive to those requests. See Motion to Compel at p. 7, footnote 2 and A. Arriola Decl., Exhibit 2 thereto.

[6] Requests Nos. 1 through 7 shall be referred to collectively as the "Fang Requests."

[7] Mr. Fang is the president of PMC, the company that purchased the Plaintiffs' Loan from HSBC. Mr. Fang's declaration is attached as Exhibit 2 to the Bronze Declaration (May 11, 2004).

[8] Specifically, Request Nos. 9 through 12 sought:

  9. All documents concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by HSBC to parties other than PMC, from January 1, 2002 through the date of the request;
  10. All documents that address, refer to, relate to any discounts on loan balances extended by HSBC to any of its bank customers, other than Plaintiffs, from January 1, 2002 through the date of the request;
  11. All documents that address, refer to, or relate to any "friendly foreclosures," as that term is used by HSBC between it and any of its bank customers, other than Plaintiffs, from January 1, 2002 through the date of the request; and
  12. All documents that address, refer to, or relate to the refinancing of loan balances by any of your bank customers, other than Plaintiffs, from January 1, 2002 through the date of the request.

[9] HSBC argues that when analyzing the Plaintiffs' claims, the Court should focus on the First, Second, Fourth and Fifth causes of action in the original Complaint, and the Third and Sixth Causes of Action in the First Amended Complaint. See HSBC's Opposition Brief at p. 3, footnote 1.

Fang acquired the funds to purchase the Plaintiffs' Loan from HSBC. Specifically, the Plaintiffs want to know if Mr. Fang, any member of his family, or any entity associated with Mr. Fang or his family obtained any financial benefit or consideration from HSBC as a result of PMC's purchase of the Loan. The Plaintiffs contend that these matters are relevant to their claims for breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of the workout agreement; and breach of fiduciary duty (the First, Second, Fourth, and Fifth causes of action). For instance, if HSBC provided any funding, loans or other credit facilities to Mr. Fang or his family in order to purchase the Plaintiffs' Loan, the Plaintiffs maintain that such evidence would support its claim of bad faith and fair dealing.

HSBC, on the other hand, argues that none of the requested documents are relevant to the Plaintiffs' claims. First, HSBC asserts that the requested documents are not relevant to the First cause of action because the Court erroneously found that Guam law would recognize a claim for bad faith in this commercial contract. What HSBC is actually attempting to do is re-litigate the arguments raised in its Motion to Dismiss, which the Court denied on April 9, 2004. Thus, the Court will disregard this argument in its entirety as it is not a proper objection to a discovery request.

HSBC's further argues that production of the documents is not necessary since Mr. Fang already testified that the purchase of the Plaintiffs' Loan involved the proceeds from the sale of property Mr. Fang owned in Alaska and did not involve any financing from HSBC. (Fang Decl. at ¶7) Furthermore, Mr. Fang's declaration provides that "[a]t the time of closing, none of my companies, including PMC, nor I had any loans or credit facilities with HSBC Guam. All our loan[s], as well as deposit accounts, with HSBC Guam had been closed as of July, 2002." (Id. at ¶4)

HSBC again is mistaken. At the hearing, the Court asked HSBC's counsel point blank whether Mr. Fang's deposition precluded further discovery in the areas to which he testified. Attorney Bronze himself conceded that as long as the documents requested were relevant, discovery would still be necessary to determine whether Mr. Fang testified truthfully.

In this instance, it is immaterial that Mr. Fang's deposition has concluded. Regardless of

the deposition, if the documents exist, the Plaintiffs want the documents produced, and they are entitled to no less. The Plaintiffs should not have to merely rely on HSBC's representation that Mr. Fang testified truthfully. Rather, the documents must be produced since they are necessary to corroborate or refute the deposition testimony.

Finally, HSBC contends that the requested documents are not relevant to prove that it did not have the absolute discretion and right to sell the Loan. HSBC, however, misses, the point as the negotiability of the loan is irrelevant. However, HSBC's motives and intent in entering the workout agreement and then purportedly breaching said agreement are relevant. HSBC's motives and intent are directly relevant to the Plaintiffs' claims that HSBC had a duty to act "reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the expectations of the parties." Haroco v. American Nat'l Bank & Trust of Chicago, 38 F.3d 1429, 1436 (7th Cir. 1994).[10]

In this instance, the documents involved with the Fang Requests are not directly relevant to the Plaintiffs' claims. The Court, however, finds that the requested documents are relevant to the subject matter in this action. The gravamen of the Plaintiffs' claims is that HSBC breached its duty and the workout agreement by selling the Loan to PMC "for peanuts" during the time when the Plaintiffs were still in the midst of obtaining alternate financing and selling its commercial properties to pay off the Loan. Thus, it is necessary to determine whether there was a special relationship between Mr. Fang and HSBC which resulted in PMC getting a "sweetheart deal" as alleged by the Plaintiffs.

Here, it is alleged that Mr. and Mrs. Fang "seemed very serious" about purchasing the property after he had "inspect[ed] all three of the buildings." (Complaint at ¶13, Exh. H thereto) However, rather than purchase the property from the Plaintiffs, Mr. Fang instead chose to purchase the Plaintiffs' Loan outright. HSBC is in the business to make money. Yet, HSBC sold the Loan to PMC for $2.75 million (Fang Decl. at ¶7), but would not accept an amount less than

---

[10] HSBC urges the Court to reject the Haroco case since it did not involve a cause of action for the tortious breach of the covenant of good faith. While not directly on point, the Court in Haroco did recognize that in setting a prime rate estimate, "the common law duty of good faith and fair dealing requires that the bank exercise that discretion 'reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the expectations of the parties.'" 38 F.3d at 1436 (quoting First Nat'l Bank of Cicero v. Sylvester, 554 N.E.2d 1063, 1069(1st Dist. IL 1990)).

- 7 -

$3.5 million from the Plaintiffs. The Court also notes that Mr. Fang was a "management employee of HSBC (Hong Kong) from about 1979 to 1989." (Id. at ¶6) Given these facts, an inference may be drawn that there is some sort of "special relationship" between Mr. Fang and HSBC. Accordingly, the Court concludes that the requested information is relevant to the subject matter and further finds the existence of good cause to warrant the production of the requested documents.

### 2. Request Nos. 9 through 12

The Plaintiffs assert that Request Nos. 9 through 12 seek to discover documents relating to any discounts, friendly foreclosures, or refinancing on loan balances extended by HSBC to its customers, other than the Plaintiffs. The Plaintiffs maintain that information regarding how HSBC clients' loan balances were handled as a result of HSBC's closure of its Guam office will aid in determining whether HSBC violated its covenant of good faith and fair dealing and breached its fiduciary duty to the Plaintiffs. For instance, if HSBC gave discounts on loan balances or engaged in "friendly foreclosures," but failed to do so with the Plaintiffs, the Plaintiffs contend that such information would tend to prove that HSBC provided favorable terms or engaged in workout agreements with other customers but reneged on its workout agreement with the Plaintiffs.

HSBC opposes the requests on the basis that the requested documents involve third parties unrelated to the instant case and are thus irrelevant to any of the Plaintiffs' claims. HSBC maintains that the Plaintiffs are "clearly engaging in a fishing expedition on matters unrelated to the claims or defenses of the parties which is an abuse of the discovery process." Opposition Brief at p. 10.

The Court disagrees with HSBC's assertion. Just as the Court concluded in the Fang Requests, the information sought by Request Nos. 9 through 12 are relevant to the subject matter in this action. Specifically, the requested information is relevant to HSBC's motives and intent and may tend to prove whether HSBC acted arbitrarily and capriciously in selling the Plaintiffs' Loan when it may have extended discounts or friendly foreclosures to other customers. As for HSBC's objections relating to confidential or proprietary information, the parties have already

entered into a stipulated protective order to prevent further disclosure of certain bank records. Thus, any concerns that this "sensitive" information will be released is premature and speculative.

Finally, HSBC contends that even if the requested documents are relevant, pursuant to Rule 26(b)(2)(iii) the Court may limit discovery if the burden or expense of the proposed discovery outweighs its likely benefits.[11] Here, HSBC asserts that there are approximately 130 "banker boxes" of documents in Guam which constitute paid off loans and old records from current loans." Additionally, there are about 60 "banker boxes" of files of current loans in Guam. Each "banker box" contains about 2000-3000 pages of documents. Thus, HSBC contends that its expense in money and time to review all the documents outweigh the Plaintiffs' limited need for said documents.

The Court disagrees with HSBC's assertion that the information is too burdensome too produce. In evaluating "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues," the Court concludes that the burden or expense of the proposed discovery does not outweigh its importance and benefit. The Court notes that the requests are limited to those loans in existence in 2002 to the present – a mere eighteen (18) months. Additionally, the Court will limit the request by excluding from production all non-commercial loan agreements, promissory notes, letters of credit, or other credit facilities involving only a mortgage on a single-family dwelling.[12] Moreover, the Court will further confine the request by limiting it to loan agreements, promissory notes, letters of credit, or other credit facilities assigned or extended by HSBC's Guam office. These reasonable restrictions will mitigate any burden or expense associated with the production of the requested information.

///

---

[11] The rule further provides that the Court should consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

[12] To the extent that a mortgage on a single-family dwelling is encompassed in a larger commercial transaction, then said documents are not exempt from production.

### III. Conclusion

The Court hereby GRANTS IN PART the Plaintiffs' Motion to Compel. Consistent with this Order, HSBC is directed to produce and permit the Plaintiffs to inspect and to copy the documents as requested in Request Nos. 1 through 7 and Request Nos. 9 through 12. The place of inspection shall be at the law offices of the Plaintiffs' counsel on June 4, 2004 at 9:00 a.m., and continuing so long as is reasonably required.

Additionally, the Court DENIES the Plaintiffs' request to impose sanctions upon HSBC. Because HSBC repeatedly refused to produce the requested documents, the Plaintiffs argued that HSBC should pay for the Plaintiffs' expenses, including attorney's fees, incurred in bringing this motion. The Court believes that HSBC's nondisclosure of the requested documents does not constitute sanctionable conduct. HSBC's objections to the production of the documents were based on its belief that the requested documents were not relevant to the claims or defenses. As the Court itself has concluded, the requests are relevant to the subject matter though not directly relevant to the claims and defenses of the parties. Accordingly, Court intervention was required prior to the production of the requested documents.

SO ORDERED this 27th day of May, 2004.

JOAQUIN V. E. MANIBUSAN, JR.
U.S. Magistrate Judge

Notice is hereby given that this document was entered on the docket on MAY 2 7 2004.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ MAY 2 7 2004
Deputy Clerk    Date