**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>Defendants. | CIVIL CASE NO. 03-00036<br><br>**HSBC'S OBJECTIONS TO MAGISTRATE JUDGE ORDER COMPELLING PRODUCTION; REQUEST FOR ORAL ARGUMENT** |

### FACTS

On May 27, 2004, this Court's Magistrate Judge issued an Order ordering HSBC to produce all documents relating to the "Fang Requests," which are Plaintiffs Request to Produce 1-7 and Requests 9-12 relating to "any discounts, friendly foreclosures, or refinancing on loan balances extended by HSBC to its customers, other than Plaintiffs." See, pp. 5-6 and 9. HSBC objects to the Magistrate Order and hereby submits the grounds for its objections and also requests for oral argument.

### ANALYSIS

A magistrate judge has the authority to hear matters that are not dispositive of a claim or defense. Fed.R.Civ.P. 72. These include discovery motions. Bhan v. NME Hosp., Inc., 929

F.2d 1404, 1414 (9th Cir. 1991). Reconsideration of a magistrate judge's order is governed by 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). Section 636(b)(1)(A) provides, in pertinent part: "A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Rule 72(a) implements § 636(b)(1)(A), providing that:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order . . . The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed.R.Civ.P. 72(a).

Where the magistrate judge determines issues of fact, review by the district court is limited to conclusions that are "clearly erroneous". Medical Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F.Supp. 717, 719 (S.D. Cal. 1996). However, § 636(b)(1)(A) provides for de novo review by the district court on issues of law. Medical Imaging, 917 F.Supp. at 719 (citing Adolph Coors Co. v. Wallace, 570 F.Supp. 202 (C.D. Cal. 1983)). The Magistrate Court has committed clear legal error, and this Court should undertake a de novo review of the magistrate judge's legal findings. Based on the Magistrate's Order, HSBC was given only three working days to comply with his Order to produce the requested documents.

The scope of discovery is governed by FRCP 26(b). The 2000 amendments to Rule 26(b) created a two-step discovery process. Prior to the 2000 amendments, the parties were entitled to discovery of any information that was not privileged so long as it was relevant to the "subject matter involved in the pending action." FRCP 26(b)(1) (1983). Under the second category of discovery, the court, for "good cause," may order discovery of any matter relevant to the "subject matter involved in the action." In short, when there is an objection to a discovery request on the

ground that it goes beyond material relevant to the parties claims and defenses, the Court must determine whether the request, in fact, exceeds the bounds of the claims of defenses and, if so, whether there is, nevertheless, good cause to permit the discovery so long as the material sought is relevant to the subject matter involved in the action. See, FRCP 26(b)(1) Advisory Committee's Note (2000).

I

### THE MAGISTRATE'S ORDER FAILS TO CORRECTLY DETERMINE WHAT CONSTITUTES "GOOD CAUSE," UNDER RULE 26(b)(1) AND, THUS CONSTITUTES CLEAR ERROR.

Under Rule 26(b) as amended, the Court may only order discovery of any matter relevant to the "subject matter involved in the action 'only for good cause.'" FRCP 26(b)(1). The Magistrate Order found that "... because the dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision, 'the good-cause standard warranting broader discovery is meant to be flexible.'" See, p. 4 of Order.

The claimed flexibility certainly is not meant to render the standard of "good cause," meaningless or a mere formality. The flexibility claimed to exist under the Magistrate's Order in determining "good cause" is beyond what was contemplated by Congress and decided by caselaw. See, p. 4 of Order. The Court is required to "...to make more than conclusory allegations of good cause and to show more that the requested additional discovery is likely to lead to information relevant to the case." 6 Moore's Federal Practice, § 26.41[3][C] (Matthew Bender 3d Ed.). For example, the Supreme Court in Schlagenhauf v. Holder, 379 U.S. 104, 118-119, 85 S. Ct 234 (1964), found that movant for physical and mental examination of another party under FRCP 35 must rely on more than conclusory allegations in pleadings and showing of

mere relevance of requested information to carry the burden of "good cause." In the instant case, the Magistrate Court concluded that "... the requested information is relevant to the subject matter and further finds the existence of good cause to warrant the production of the requested documents." See, p. 8 of Order. In essence the Magistrate Court has turned the rule on its head because the rule calls for finding "good cause" first, then determining whether the requests are relevant or not. The Magistrate's Order determination of "good cause" is relegated to be a mere formality, which was not the intent of the amendment to the Rule, and thus, is contrary to law.

### THE MAGISTRATE'S ORDER THAT PLAINTIFFS' REQUESTS 1-7 ARE RELEVANT TO THE SUBJECT MATTER OF THIS CASE IS CLEAR ERROR AND SHOULD BE REVIEWED DE NOVO.

HSBC concedes that pretrial discovery is not, limited to a search for evidence. "It encompasses the uncovering of information that will assist in defining or clarifying the issues in the case or that will illuminate issues upon which a trial court must pass in administering or deciding a case." 6 Moore's Federal Practice, § 26.41[6][a] (Matthew Bender 3d Ed.). Toward this end, Rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct 2380, 2389 (1978). Thus, discovery would be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. See, U.S. v. IBM, 66 F.R.D. 215, 218 (S.D.N.Y. 1974). Demonstrating that the requests are relevant is still required albeit under a liberal standard. The Rules of Evidence, Rule 401 defines "relevant evidence" to mean "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy is left to the discretion of the judge, not the jury, thus is an issue of law.

Resolving a discovery dispute on the ground of relevance, the Court must, under the 2000 amendments, focus on the specific claim or defense alleged in the pleadings.[1] In addition, the Court's determination must look beyond the allegation of a claim or defense and to the controlling substantive law.[2] Thus, the issue is whether in looking at the substantive law and Plaintiffs' complaint and portions of its Amended Complaint, is whether copies of all "loan agreements, letters of credit, promissory notes, or other credit facilities extended by [HSBC] to Joseph K. Fang [as well as his family members all of which do not live on Guam and companies he is a shareholder of, including PMC] ("Fangs") from January 1, 1999 through the date of this request," are relevant to Plaintiffs' causes of action. See, Plaintiffs' Third Set of Request of Production of Documents attached as Exhibit "1" to the Declaration of Jacques G. Bronze.

In an attempt to focus the Court on the correct substantive law as it relates to Plaintiffs' claim of bad faith, the Magistrate Order accuses HSBC of attempting to relitigate arguments it raised in its previous Motion to Dismiss. See, p. 6 of the Order. The Magistrate cannot consider relevancy in a vacuum, but must consider controlling substantive law. In reaching its decision on the Fang Requests, the Magistrate Order focuses entirely on Plaintiffs claim of breach of covenant of good faith and fair dealing and thus, HSBC will limit its focus to that cause of action. The Order found that "negotiability" is not an issue and that HSBC's "motives and intent in entering the workout agreement and then purportedly breaching said agreement are relevant." See, p. 7 of the Order.

---

[1] In regards to Counts 1,2,3, 4 and 5 of Plaintiffs' causes of action, the Court should focus on these counts as set forth in Plaintiffs' Second Amended Complaint filed with this Court on June 2, 2004, but in reference to Counts 6, the Court's focus should be on the claims as pled in Plaintiffs' Complaint filed in October 24, 2003, rather than the Second Amended Complaint. Plaintiffs amended Count 6 is in violation of this Court's orders dated April 9, 2004, and the May 28, 2004.

[2] For example, in a suit contending that a hospital had wrongfully disciplined a doctor for improper performance of a surgical procedure, information concerning the techniques other doctors followed in performing the same procedure in the same hospital may not be "relevant" for discovery purposes, in the absence that the disciplinary action was motivated by factors such as race or gender. See, Hayden v. Bracy, 744 F2d 1338, 1342 (8th Cir. 1984).

Focusing on Plaintiffs' first cause of action for tortious breach of the covenant of good faith and fair dealing, Plaintiffs' Second Amended Complaint of June 2, 2004, alleges that "[r]elying on these work out proposals, Plaintiffs immediately listed certain properties for sale with Century 21 Realty Management and applied to various banks, including First Hawaiian Bank, to obtain alternative financing. Plaintiffs obtained terms and conditions for alternative financing from First Hawaiian Bank and forwarded such terms and conditions to Defendant Bank on August 5, 2003. Defendant Bank refused to accept such alternative financing and instead sold the Loan to Paradise Marine Corporation on August 11, 2003 for *an amount less than the amount Plaintiffs had secured as alternative financing.*" See, ¶ 28 of Second Amended Complaint. In addition, Plaintiff alleges that "Defendant acted in bad faith and failed to deal fairly with Plaintiffs' in refusing to agree to a commercially reasonable agreeable workout and in refusing to accept the alternative financing obtained by Plaintiffs." See, ¶ 29 of the Second Amended Complaint. Plaintiffs' also alleges that "[a]s a result of Defendant's bank's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages...." See, ¶ 30 of Second Amended Complaint.

Focusing on the substantive law regarding Plaintiff's First Cause of Action, HSBC invites this Court to review its Memo of Points and Authorities in Support of its Motion to Dismiss and its Reply Memorandum filed on December 30, 2003, and January 23, 2004, respectively. It is important to note that Judge John Unpingco's denial of HSBC's Motion to Dismiss Plaintiffs' First Cause of Action was based on a Superior Court of Guam Decision. Such reliance runs contrary to the clear precedent established in the case Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir. 1978), which provides that a federal court sitting in diversity "...must use its own best judgment in predicting" what the State Supreme Court would decide when it faces an issue of first impression. Thus, the Superior Court

6
D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\Obj to Magis Ord for Prod-Oral Agrument.doc
Case 1:03-cv-00036   Document 162   Filed 06/04/2004   Page 6 of 15

of Guam decision cannot be relied on as the substantive law regarding the tortious breach of the covenant of good faith and fair dealing.

The Magistrate Order relying on Haroco, Inc. v. American National Bank and Trust Co. of Chicago, 38 F.3d 1429 (7th Cir. 1994), held that "HSBC's motives and intent are directly relevant to the Plaintiffs claims that HSBC had a duty to act 'reasonably, not arbitrarily, ... or in a manner inconsistent ... .' " See, p. 7 of Order. First, the Haroco case did not involve a cause of action for the tortious breach of the covenant of good faith.

To support a claim for tortious breach of the covenant of good faith and fair dealing, courts have generally held that proof of a special relationship between the parties is necessary[3] as well as conduct showing a conscious and deliberate conduct with malice by HSBC against Plaintiffs.[4] Contrary to the Magistrate Order, the above cases does not support the finding that "motive and intent" are relevant to support a claim for tortious breach of the covenant of good faith and fair dealing.

The focus here is whether documents requested by Plaintiffs relating to any financial relationship between HSBC and the Fangs, are relevant to prove any issue bearing on the substance of Plaintiffs allegations as set forth in ¶¶ 28-30 of their Second Amended Complaint. The Fang Requests serve no consequence to make the establishment of a special relationship between HSBC and Plaintiffs more probable or less probable than without the documents. That can only be established by the conduct of the two parties herein. Moreover, nor does the Fang Requests make the establishment of HSBC's conduct showing a conscious and deliberate conduct with malice more or less probable than without such documents. Documents relating to

---

[3] Denholm v. Houghton Mifflin Co., 912 F2d 357, 361 (9th Cir. 1990, Freeman & Mills, Inc. v. Belcher Oil Co., 44 C.R.2d 420 (Cal. 1990)).

[4] Lee Careau Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1395 (1980).

a financial relationship in its nature cannot show the conduct of HSBC and whether it was with malice or not.

Moreover, the Fang Requests does not help Plaintiffs establish that HSBC refused to agree to "a commercially reasonable work-out" and "accept the alternative financing obtained by Plaintiffs," more or less probable than without such documents. Rather than the Fang Requests, the First Hawaiian Bank's letter of denial of Plaintiff's purported "alternative financing" clearly establishes why HSBC did not accept Plaintiffs' purported "alternative financing." See, Exhibit "2" to the Declaration of Jacques G. Bronze.

As further support that the Fang Requests are relevant to the subject matter of the action, the Magistrate Order found that "... it is necessary to determine whether there was a special relationship between Fang and HSBC which resulted in PMC getting a 'sweetheart deal... .'" See, p. 7 of Order. Taking in consideration the grade and loan-to value ratio of the loan, HSBC disputes the characterization that Fang got a "sweetheart deal." It is to be noted that Plaintiffs' failed to submit any evidence that would support their characterization that the loan was sold for "peanuts." As pointed out above, for purposes of establishing tortious breach of the covenant of good faith and fair dealing, the 9th Circuit requires proof of special relationship with the parties, not Fang, an unrelated third party.

Even assuming arguendo, that HSBC financed the acquisition of Plaintiffs' loan for Fang, such is not sufficient to establish tortious breach of the covenant of good faith and fair dealing. For example in <u>ADT Operations Inc. v. Chase Manhattan Bank</u>, 662 N.Y.S.2d 190, 191,197 (Supp. 1997), the Supreme Court of New York County dismissed ADT's third cause of action for tortious breach of the covenant of good faith and fair dealing even based on the fact that

Chase Manhattan agreed to finance a hostile takeover for another company against ADT, which had a $500 million loan facility with Chase.[5]

Although on one hand, the Magistrate Order found that "negotiability of the loan is irrelevant," it found that the Fang Requests are relevant to determine why the loan was sold in the "midst of obtaining alternative financing …." Focusing on the substantive law of bad faith, the implied covenant of good faith and fair dealing cannot contradict the expressed terms of the loan agreement and note that HSBC had the right to sell its loan. See, Carma Developers Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 374, 6 C R.2d 467 (1990).

Based on the alleged facts by Plaintiffs in support of their first claim, the substantive law as it stands, the Magistrate committed clear error when he ruled that the Fang Requests are relevant or bears on any issue in this action.

The Magistrate Court appears to rely mostly on Plaintiffs claim for tortious breach of the covenant of good faith and fair dealing to support its Order that the Fang Requests are relevant, for the exception of a statement that "… . HSBC's motives and intent in entering the workout agreement and then purportedly breaching said agreement are relevant." See, p. 7 of Order. It is not clear to HSBC if the Court is just focusing on Plaintiffs' claim for tortious breach of the covenant of good faith and fair dealing or count four of Plaintiffs second amended complaint. If the Court's above statement relates to Plaintiffs' cause of action for tortious breach of the covenant of good faith and fair dealing, then the Fang Requests serve of no consequence to make the establishment of a "motive and intent" for HSBC to enter the workout agreement more

---

[5] To imply a common law fiduciary duty of banks not to deal with competitors of their borrowers, or even just potential acquirers of those borrowers, could wreak havoc with the availability of funding for capital ventures … Companies seeking to insulate themselves from takeovers, or even from ordinary competition, could simply arrange for a series of loans from most of the major banks, supplying those banks with the requisite non-public information. Under the rationale being urged by the Magistrate, the banks would thereby be foreclosed from financing competitors and potential acquirers of the borrowing firms. As the court in *American Medicorp, Inc. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 475 F.Supp 5, (N.D. Ill. 1977), recognized, such a result "would tend to burden the free flow of bank financing and the ability which a bank now has to deal with customers who may have adverse interests to other customers."

probable or less probable than without the documents. Any financial relationship between the Fangs and HSBC would not make it more or less probable that HSBC would enter into the purported workout agreement and why HSBC purportedly beached the agreement.

As it relates to Plaintiffs' fourth cause of action for breach of the purported workout agreement. See, ¶ 46 of Plaintiffs' Complaint. The courts have confined the parties in contract actions to discovery of information relating to the specific complaint they have alleged in their pleadings. See, e.g., Detweiler Bros., Inc. v. John Graham & Co., 412 F.Supp 416, 422 (E.D. Wash. 1976) (when defendant's request for production extended to all of plaintiff's work on a large construction project, discovery was limited to materials relating to installation of steam piping, which was the portion of the project that was subject of Plaintiff's subcontract and was subject to its action); Blatt v. Casa Blanca Cigar Co., 51 F.R.D. 312, 313 (M.D. Pa. 1970). Moreover, the law does not distinguish between good and bad motives for breaching a contract. See, Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 516, 28 C.R.2d 475 (1994).

II

**THE MAGISTRATE'S ORDER THAT PLAINTIFFS' REQUESTS 9-12 ARE RELEVANT TO THE SUBJECT MATTER OF THIS CASE IS CLEAR ERROR AND SHOULD BE REVIEWED DE NOVO.**

The Magistrate's Order forcing HSBC to produce documents relating to "... any discounts, friendly foreclosures or refinancing on loan balances extended by HSBC to its customers, other than Plaintiffs'," is not relevant to the subject matter of the action, and thereby the Order is "clearly erroneous." The Magistrate Order found that the Requests 9-12 are "... relevant to HSBC's motives and intent and may tend to prove whether HSBC acted arbitrarily and capriciously in selling Plaintiffs' loan when it may have extended discounts or friendly

foreclosures to other customers." <u>See</u>, p. 8 of Order. The Magistrate's Court's focus as it relates to these requests appear to be that the requests are relevant because it bears on issues relating to Plaintiffs claim for tortious breach of the covenant of good faith and fair dealing. HSBC respectfully requests this Court to review pages 6-8 of this pleading, for the substance of the allegations and the substantive law relating to the claim of tortious breach of the covenant of good faith and fair dealing.

The focus here is whether documents requested by Plaintiffs relating to any financial relationship between HSBC and various loan customers from 2002 forward, are relevant to prove any issue bearing on the substance of Plaintiffs allegations as set forth in ¶¶ 28-30 of their Second Amended Complaint. These requests from HSBC serve no consequence to make the establishment of a special relationship between HSBC and Plaintiffs more probable or less probable than without the documents. That can only be established by the conduct of the two parties herein. Moreover, nor does these requests make the establishment of HSBC's conduct showing a conscious and deliberate conduct with malice more or less probable than without such documents. Documents relating to a financial relationship between the Bank and its other loan customers in its nature cannot show the conduct of HSBC and whether it was with malice or not.

At what price HSBC sold a loan of one customer to a third party has no bearing on any issue relating the subject matter of this case. To follow the Magistrate's Order to its logical conclusion would mean that if the bank sells a customer's loan below its outstanding principal, it may create grounds for another customer to file a claim tortious breach of the covenant of good faith and fair dealing. Such reasoning is flawed and would wreak havoc in the trading of loans in the secondary market.

Moreover, the HSBC requests does not help Plaintiffs establish that HSBC refused to agree to "a commercially reasonable work-out" and "accept the alternative financing obtained by Plaintiffs," more or less probable than without such documents.

Although the Magistrate's Order may be appropriate under the theory of the case in Laufman v. Oakley Building and Loan Company, 72 F.R.D. 116 (1976), a case relied on by Plaintiffs, the substance of the cause of action in Laufman is clearly distinguishable from the causes of action pled in the instant case. In Laufman, the complaint was a civil rights action based on Civil Rights Act of 1964 and 1968 and on regulations issued by the Federal Home Loan Bank Board, 12 CFR 528 and 531. Id, p. 118. The Laufman case essentially deals with the practice of "redlining." It is also to be noted that the Laufman case predates the 2000 amendments to Rule 26(b). In Laufman, Plaintiffs sought to prove that non-racial reasons provided by Defendant for rejecting their loan application was a pretext. Id. p. 119. The Court was convinced that the loan applications and appraisals sought will help prove and aid "…in the determination of the actual criteria used by Defendants in approving or rejecting the loan applications." Id. pp. 119-120. In the instant case, Plaintiffs' complaint sounds in tort and contract, not as a civil rights action. The Magistrate Order is permitting Plaintiffs to engage in a fishing expedition on matters unrelated to the subject matter of the action.

### III

**THE MAGISTRATE JUDGE COMMITTED CLEAR ERROR BY ORDERING HSBC TO PRODUCE DOCUMENTS, WHICH ARE NOT WITHIN ITS POSSESSION, CUSTODY OR CONTROL.**

On May 27, 2004, the Magistrate Judge issued the Order ("Order") which granted, in part, Plaintiffs' motion to compel related to their Third Set of Requests for Production of

Documents.[6] In the Order, the Magistrate Judge directed that HSBC was required to produce and permit Plaintiffs to inspect and copy approximately 475,000 pages of documents.[7] Order at 10. Further, the Order directed that HSBC must produce the documents for inspection "at the law offices of the Plaintiffs' counsel on June 4, 2004 at 9:00 a.m." and such inspection will continue "so long as is reasonably required". Id. The Order gives HSBC less than three full, working days to locate and arrange for the transportation by truck of the documents.[8]

Requests Nos. 1-7 sought production of all information and documents relating to any loan agreements, letters of credit, promissory notes, or other credit facilities extended "by HSBC to Joseph K. Fang . . . ; Mr. Fang's family (comprising of his wife, children, siblings or parents); any business entity in which Mr. Fang or his family had any ownership interest; or any business entity in which Mr. Fang or a member of his family held a position of officer or director".[9] Order at 5. The magistrate judge ordered HSBC to produce all documents requested relating to Mr. Fang and his family. Id. at 8. Requests 9-12 seek information about other HSBC customers who may have benefited "from more favorable treatment than that received by the Plaintiffs". Id. at 5. The magistrate judge ordered a "limited" response to these Requests by excluding residential loans and limiting production to certain specified documents located in "HSBC's Guam office". Id. at 9.

---

[6] HSBC received a copy of the Order on May 28, 2004.

[7] The documents to be reviewed and produced are contained in 190 "banker boxes" and each box contains 2000 to 3000 pages of documents. See, Declaration of I. C. Underwood, filed herein on May 11, 2004.

[8] HSBC did not receive the Order until May 28 and that date is not counted in computing the time allowed for HSBC to comply with the Order, pursuant to FRCP 6(a), May 29 and 30 were Saturday and Sunday, and May 31 was Memorial Day, a Federal holiday. Accordingly, HSBC only had three working days before compliance is required on June 4.

[9] The original Cantonese name of Mr. Fang, the names of his family members, the name of any business entity in which Mr. Fang or any member of his family held an interest is not provided by Plaintiffs in the Requests. HSBC is left to speculate who these parties may be. For this reason alone, it is impossible for HSBC to comply with Requests 1-7.

Even assuming, arguendo, that the documents requested regarding Mr. Fang and his family come within the permissible scope of discovery in this case, which HSBC denies, the magistrate judge committed clear error in ordering the production of such documents from HSBC's Guam office because it would be unduly burdensome, if not impossible, for HSBC to comply with the Order and the burden on HSBC outweighs any minimal evidentiary value to Plaintiffs.

HSBC operates in Guam as a branch of a Hong Kong corporation registered locally as a foreign banking corporation. See, Declaration of I. C. Underwood. HSBC has over 600 branches and retail outlets and operates in over 25 countries in the Asia Pacific region. Id. HSBC has no control over and cannot compel the production of documents from any branch of the Hongkong and Shanghai Bank USA Ltd. in the United States since they are not within the Hongkong and Shanghai Bank Asia Pacific Ltd. that HSBC Guam is a part of. Id. Mr. Joseph Fang has testified that he has had banking relationships with branches of the Hong Kong Shanghai Bank in the United States but HSBC Guam is not able to produce any documents related to these branches and cannot comply with the Order filed herein on May 27, 2004 as stated. Id.

It is important to note that the magistrate judge limited production of documents under Requests 9-12 to those located within the "Guam office" of HSBC. If a similar limit had been placed upon the documents demanded in Requests 1-7, HSBC may have been able to comply, in whole or in part. As shown above, HSBC cannot comply with the Order because many of the documents are not within the possession, custody or control of HSBC.

## CONCLUSION

For the foregoing reasons, the Magistrate's Order should be reversed and Plaintiffs be ordered to return all the documents already produced. Moreover the Court should order Plaintiffs to submit written arguments why expense shifting sanctions should not be assessed within five (5) days from the Court's Order reversing the Magistrate.

*Respectfully submitted* on this 4th day of June, 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By: _____
JACQUES G. BRONZE
*Attorneys for Defendant Hongkong and*
*Shanghai Banking Corporation, Ltd.*
