**FILED**
DISTRICT COURT OF GUAM

**JUN 16 2004**

MARY L. M. MORAN
CLERK OF COURT

169

1

2

3

4

5          **IN THE DISTRICT COURT OF GUAM**

6              **TERRITORY OF GUAM**

7                    * * *

8

9    ALAN SADHWANI, LAJU          )    COURT OF APPEALS
     SADHWANI, and K. SADHWANI'S  )    CASE NO. 04-
10   INC., a Guam Corporation,    )
                   Plaintiffs,    )
11                                )
          vs.                     )    CASE NO. CV03-00036
12   HONGKONG AND SHANGHAI        )
     BANKING CORPORATION, LTD., a )
13   foreign corporation,         )
     JOHN DOE I through JOHN DOE X,)
14                                )
              Defendants.         )
15   _____)

16

17          TRANSCRIPT OF PROCEEDINGS

18                  BEFORE

19   THE HONORABLE JOAQUIN V.E. MANIBUSAN, JR.

20              Magistrate Judge

21

22              **MOTIONS HEARING**

23          **THURSDAY, JUNE 3, 2004**

24

25              ORIGINAL

1    **APPEARANCES:**

2

3    FOR THE PLAINTIFFS:

4    ARRIOLA COWAN & ARRIOLA
     Attorneys At Law
5    +BY:   ANITA P. ARRIOLA, Esq.
     259 Martyr Street, Suite 201
6    Hagatna, Guam  96910

7

8    FOR DEFENDANT HONGKONG AND SHANGHAI BANKING
     CORPORTATION LIMITED:
9
     LAW OFFICES OF BRONZE & TANG, P.C.
10   BY:  JACQUES G. BRONZE, Esq.
     BankPacific Building, 2nd floor
11   825 S. Marine Corps Drive
     Tamuning, Guam  96913
12

13

14

15

16

17

18

19

20

21

22

23

24

25

HAGATNA, GUAM; THURSDAY, JUNE 3, 2004; 10:08 A.M.

* * *

THE CLERK: Civil case 03-00036, Alan Sadhwani, et al., versus HongKong and Shanghai Banking Corporation, Limited, et al., hearing on the following motions:

HSBC's *ex parte* motion to reconsider order denying motion to stay all depositions pending determination of its motion to strike first amended complaint in whole or in part; or in the alternative, motion to dismiss the third and sixth causes of action, and for sanctions; HSBC's motion to vacate scheduling order and continue discovery and trial date; and plaintiff's *ex parte* motion to compel discovery, and for sanctions.

Counsel, please state your appearances.

MS. ARRIOLA: Good morning, Your Honor. Anita Arriola for the plaintiffs Alan and Laju Sadhwani and K. Sadhwani's Incorporated.

MR. BRONZE: Good morning, Your Honor. Jacques Bronze on behalf of HSBC.

THE COURT: Okay. The Court has three motions before it today. I'm wondering whether any of these motions have been agreed to by the parties in terms of its disposition, or we're just going to hear the

1   motions today?

2           MR. BRONZE:  No, Your Honor.

3           THE COURT:  Okay.  I suppose the first one

4   that we need to take is the one filed first, and that

5   would be the May 4th *ex parte* motion to reconsider

6   order denying the motion to stay all depositions.

7           Has that been rendered moot in some respects?

8           MR. BRONZE:  Your Honor, I haven't -- Judge

9   Pregerson heard the motion.  He did circulate a

10  preliminary tentative order; we have not received it.

11  So to a certain extent, assuming that is what is

12  eventually filed, it would be to a certain extent

13  rendered moot.

14          However, there's still no first amended

15  complaint on file.

16          MS. ARRIOLA:  Excuse me, Your Honor?

17          THE COURT:  Yes.

18          MS. ARRIOLA:  We did receive an order from the

19  Court, and we did serve a second amended complaint

20  yesterday.

21          THE COURT:  All right.  I do have an order

22  here dated -- is it the order dated May 28, or is that

23  another order that you're talking about?

24          MS. ARRIOLA:  It would have been the order

25  dated May 28, but it did not come out until Tuesday, I

1   believe; that's when our office received it.

2         MR. BRONZE: Your Honor, I did not receive any

3   order from the Court yesterday. And I didn't go to the

4   office this morning, so --

5         THE COURT: All right. The order basically

6   grants the defendant's motion to strike, and -- the

7   first amended complaint in its entirety. The second

8   part of the order vacates as moot the defendant's

9   motion to dismiss the third and sixth causes of action;

10   and the third part of the order denies the defendant's

11   motion for sanctions.

12         And I have been informed that that was entered

13   on the docket yesterday, June 2nd, although it was

14   filed May 28. It was entered on the docket yesterday.

15   And you received your copy yesterday, Ms. Arriola?

16         MS. ARRIOLA: Yes, Your Honor.

17         THE COURT: So you should be receiving yours

18   then, Mr. Bronze.

19         MR. BRONZE: I will check the court box, Your

20   Honor.

21         MS. ARRIOLA: Your Honor, based on that order,

22   we believe that HSBC's motion to reconsider, it has

23   been rendered moot.

24         THE COURT: Assuming that you get the order,

25   would counsel be in agreement with that? Actually

1    that's what the order --

2         MR. BRONZE:  I haven't seen the order, but I

3    assume the order is what --

4         THE COURT:  Okay.  Then maybe we could go on

5    to the second motion then, and that's the motion to

6    vacate the scheduling order.  And I'm wondering whether

7    things have also been put in place where this motion

8    might appear to be proper because of the -- you've just

9    filed an amended complaint, right, Ms. Arriola?

10        MS. ARRIOLA:  Second amended complaint, yes,

11   Your Honor.

12        THE COURT:  So, does that necessitate a new

13   scheduling order?

14        MS. ARRIOLA:  We don't believe so, Your Honor.

15        I can state, Your Honor, that insofar as the

16   bank has asked for an amendment of the scheduling order

17   in terms of extending the discovery deadline, we have

18   to agree to that, and primarily out of necessity, only

19   because we have not been able to take the depositions

20   of the HSBC representatives who failed to show up at

21   their depositions.  So to that extent, I think that

22   there is some agreement, but the plaintiffs do oppose a

23   rescheduling of the trial date.  And we don't think

24   that the second amended complaint --

25        THE COURT:  But basically your position then

1    is that discovery can take place even though you've

2    alleged more claims within the time frame that is set

3    for trial of the matter?

4         MS. ARRIOLA:  That's right, Your Honor.

5         And, Your Honor, I would note we haven't added

6    more claims.  The judge just allowed us to reassert the

7    third and sixth causes of action in his original order.

8         THE COURT:  So my understanding is that you've

9    basically stated more allegations in terms of your

10   other causes of action?

11        MS. ARRIOLA:  No, Your Honor.  That's why

12   there was the motion to strike, and that's why the

13   motion to strike was granted.  We, because the motion

14   to strike was granted, we cut out all the other

15   allegations that we had alleged, the new allegations

16   that we had alleged, and --

17        THE COURT:  So that would mean you've gone

18   forward on your original complaint?

19        MS. ARRIOLA:  Uhm --

20        THE COURT:  My understanding is that you had

21   a complaint, and then there was a motion to dismiss and

22   I think it was granted in part as to the -- is it the

23   fourth or sixth or third --

24        MS. ARRIOLA:  It was granted in part as to the

25   third and sixth --

1          THE COURT:  Okay, third and sixth.  And then

2     when you filed your first amended complaint, you

3     incorporated other allegations in the first, second,

4     fourth, fifth causes of action.

5          MS. ARRIOLA:  Correct.  And then the judge

6     granted the motion to strike.

7          THE COURT:  The motion to strike.

8          MS. ARRIOLA:  So we filed a second amended

9     complaint only as to the third and the sixth causes

10    of action.  In other words, it's the same original

11    complaint.

12         THE COURT:  So that's what I'm saying.

13         MS. ARRIOLA:  We just reasserted the third and

14    the sixth causes of action pursuant to Judge Unpingco's

15    order.

16         THE COURT:  So you did not avail yourself of

17    the Judge's order that says you could file your new

18    complaint as -- I mean, the first amended complaint?

19    It seemed to me that what he was saying was that he

20    gave you leave to file your complaint as you -- I mean

21    your first amended complaint.

22         MS. ARRIOLA:  That was not what the order

23    said, Your Honor.

24         THE COURT:  Oh, okay.  I'm sorry.

25         MS. ARRIOLA:  The order said very clearly

1  "follow Judge Unpingco's order, you are only allowed

2  to reassert the third and sixth causes of action".

3          THE COURT:  I see.  Okay.  So basically, any

4  response or any answer would be as to the third and

5  sixth claims then?

6          MS. ARRIOLA:  Well, they would have to file an

7  amended answer to our second amended complaint, and --

8          THE COURT:  Incorporating the first, second,

9  third, fourth, fifth and sixth?

10          MS. ARRIOLA:  Yes, Your Honor.

11          THE COURT:  Mr. Bronze?

12          MR. BRONZE:  Your Honor, what the plaintiffs

13  are asking is that, actually, the September trial date

14  would stay.

15          THE COURT:  Is that September 2004?

16          MR. BRONZE:  Yes.

17          THE COURT:  And when was this case filed?

18          MR. BRONZE:  October 21st of 2003.

19          And so she's saying basically, let's assume

20  we'll just use from June to August or three months to

21  do discovery, and we have September 21st for the trial.

22  I think HSBC here has been diligent, we have laid out

23  all the discovery, moved on today, with the exception

24  of depositions.

25          On April 30th we received a response as it

1  relates to our first set of interrogs, where it

2  appeared two names of two individuals which were not

3  disclosed to us in their initial disclosures or

4  supplemental disclosures.  One of these individuals

5  lives in Philippines, one lives in Dubai in the United

6  Arab Emirates.  We requested plaintiffs to provide us

7  a supplemental disclosure, a letter was sent to her on

8  May 23rd, in order to comply with 26(a)(1)(A); to this

9  date we have not received a response.  However, we can

10  only surmise that these two individuals involve --

11  these potentially individuals were to provide financing

12  to Mr. Sadhwani other than First Hawaiian Bank.

13       HSBC intends to depose these two individuals.

14  And I contacted, immediately contacted HSBC's general

15  counsel in the Philippines to find out what's the

16  process, how long the process; I mean, this was filed

17  May 7th, I found this information on April 30th.  The

18  general counsel indicated to me that Philippines is not

19  part of The Hague Convention, it's not a signatory.

20       I went to the U.S. State Department website,

21  and the U.S. State Department website indicates that

22  you can only do it through -- a letter of request can

23  only be done through diplomatic channels.  And the

24  website, I've attached the copy of what's on the

25  website, I think it's Exhibit 3 to my declaration,

1   states it takes a year for this process to undertake.

2   The general counsel for the HSBC in the Philippines

3   filed a declaration with this court, Jerry Lipcomb,

4   he stated it takes three to four months.

5           In terms of Dubai, I attempted to contact

6   the counsel for HSBC in Dubai; he is not a litigation

7   counsel, however, he has had experience in these

8   matters.  He also indicated to me, and this is

9   supported by my declaration on file with the Court,

10  that United Arab Emirates is not a signatory of The

11  Hague Convention, and this is a process that will take

12  more than a year to undertake.  HSBC has subsequently

13  retained a litigation counsel in this matter to get

14  further advice; however, the counsel is on leave.  I

15  briefly spoke to him from Greece, and he'll be back in

16  Dubai, I believe, in a week.

17          But the facts are that based on -- what's

18  being requested by plaintiffs is nonsensical, it's not

19  achievable.  We have about four foreign countries

20  depositions have to take place.  They have stated in

21  their reply they intend to depose HSBC's former Guam

22  CEO, Mr. Priestly, who is now the CEO in Pakistan.  I

23  spoke to -- I have an e-mail here, HSBC has tried to

24  retain Mr. Sajid Zahid; I have not had an opportunity

25  to file his declaration with the court because we

1    finally just retained this guy on May 29, and he has

2    indicated to me again that Pakistan is not -- it's a

3    signatory to The Hague Convention but only as it

4    relates to service of documents, not for taking

5    evidence abroad.  He's indicated to me that it could

6    take up to a year to get this process done in terms of

7    they want to seek deposition in Pakistan.  Based on --

8              THE COURT:  These are your employees?

9              MR. BRONZE:  No, these are not employees.

10   These are -- this is independent counsel from a firm by

11   the name of Orr, O-R-R, Dignam, D-I-G-N-A-M, and

12   Company.  This is an independent counsel, this is not

13   -- in Pakistan.  For Philippines, we have the general

14   counsel of the Philippines, who says it's three to four

15   months, we have the U.S. State Department website that

16   says one year.

17             It is to be noted, Your Honor, that based on

18   the schedule being offered by the plaintiffs here,

19   where there's no time to file any motion for summary

20   judgment, the Local Rules of Court 16.7 requires that

21   a trial brief be filed 30 days prior to trial; this is

22   just not feasible.  I mean, we're going to be back here

23   doing this, asking this Court again to reschedule this

24   matter.  I originally objected to such a short period

25   of time.  And we are now here --

1      THE COURT:  I'm sorry, who set the date for

2  trial?

3      MR. BRONZE:  The judge did.

4      THE COURT:  Okay.

5      MR. BRONZE:  I mean, we have both filed

6  objections, and I think the judge moved some dates,

7  but set it what it is now.

8      In conclusion, Your Honor --

9      THE COURT:  Let me just ask in furtherance

10  of that prior question, what trial time frame were you

11  looking at?

12      MR. BRONZE:  Your Honor, I can't recall

13  exactly.  I think at that time we had proposed the

14  following -- next year or December.  I can't remember.

15  I can go back to the file and look; I can't remember.

16      And at that time when we had entered into the

17  scheduling order, HSBC was not in a position to know

18  about these foreign depositions.  We knew we were --

19  we would have to defend depositions as it relates in

20  particular to the Hong Kong depositions.  These two

21  individuals just popped up on April 30th; we didn't

22  know we had to take depositions anywhere else.  We knew

23  we had to defend it at the very least in Hong Kong.  So

24  those were certainly not contemplated, not foreseeable,

25  at least from my perspective, as of the time when we

1 entered the scheduling order.

2 And I think the true facts of the situation

3 here is this is not achievable in three months. We

4 are really kidding ourselves when we're dealing with

5 foreign courts, especially where countries are not

6 members of The Hague Convention, you know, to achieve

7 this discovery within three months. I mean, for Hong

8 Kong alone, I'm informed by our counsel in Hong Kong

9 that it just filed it in Hong Kong Court I think

10 yesterday or a few days ago. And this order was issued

11 more than a month ago. So I ask Your Honor to

12 seriously -- to set aside the scheduling order, and,

13 you know, the range here really for discovery is

14 between four months to a year. And the Court at its

15 convenience can set whatever trial date, whoever the

16 judge is available at that time.

17 So, really, we've been diligent, there's good

18 cause to set aside the scheduling order. And

19 the trial date cannot be maintained under these

20 circumstances. And no amount of diligence by HSBC

21 would have -- even if I got a litigation counsel in

22 the Philippines, we got this information April 30th,

23 the discovery cut-off is June 7, there's no way I could

24 do a deposition in the Philippines within a month.

25 Thank you, Your Honor.

1    THE COURT:  Assuming that it becomes necessary
2    to amend the scheduling order based on discovery needs,
3    what time frame are you looking at in terms of setting
4    this matter for trial?

5    MR. BRONZE:  Your Honor, I guess it would just
6    follow what the discovery period the Court wishes to
7    give.

8    THE COURT:  But aren't we under some rule that
9    requires trials within a certain time period, so we
10   just can't say that we're going to let discovery run
11   until exhausted and then we set a trial after discovery
12   is complete --

13   MR. BRONZE:  I think it's 18 months, and we
14   are far from that.  I think there's a rule, yeah, it
15   says 18 months.  I've seen it put in the schedule
16   order, it's 18 months.  And we are far from that.
17   This case was filed in October.

18   I mean, the plaintiffs themselves admitted
19   they need time, except for their argument that, oh,
20   we can accomplish all that in three months; it's
21   nonsensical.  I mean, they have not provided this
22   Court with any facts other than their word.  I mean,
23   I at least have spoken to lawyers in the Philippines,
24   lawyers in Pakistan, who has informed me what the true
25   timelines are.  An independent source, the U.S. State

1     Department, Judicial Assistance Section says it's going

2     to take a year.  I don't know which one it is, but we

3     certainly know it's between three months to a year.

4          THE COURT:  All right.  No, I just need to --

5     these individuals that you say whose depositions are

6     going to be taken, whose witnesses are they?

7          MR. BRONZE:  They are their witnesses.

8          THE COURT:  The plaintiff's witnesses?

9          MR. BRONZE:  Yes.

10         THE COURT:  And they are -- what is the

11    relationship again, counsel, general counsel to your --

12    to the defendants?

13         MR. BRONZE:  No, these witnesses are purely

14    witnesses, fact witnesses for plaintiffs.

15         THE COURT:  Who have worked for the

16    defendants?

17         MR. BRONZE:  No, no.  I believe, it's not --

18    it's not clear from the complaint because the

19    individuals in the first amended complaint remain

20    nameless, but we believe these are individuals that

21    supposedly Mr. Sadhwani is now alleging were available

22    to provide financing to him as alternative, other than

23    First Hawaiian Bank, these were individuals.  This was

24    never disclosed to us, it was never disclosed in the

25    original complaint, they were never disclosed to us in

1    the --

2            THE COURT:   I see.  So you want to take their

3    depositions?

4            MR. BRONZE:   That's correct.  And we didn't

5    know that until April 30th.  And we still don't have

6    contact numbers for these individuals --

7            THE COURT:   And you're talking about two

8    individuals?

9            MR. BRONZE:   Yes.  Yes, one in the

10   Philippines, one in Dubai.  And plaintiffs have stated

11   in their reply memo that they intend to depose

12   Priestly, Mr. Priestly, in Pakistan.  So they're going

13   to have to file letters of request.  And I'm telling

14   the Court that I have consulted with an independent

15   attorney in Pakistan and he's told me that it's going

16   to take at least a year.

17           THE COURT:   But Priestly works for you,

18   though?

19           MR. BRONZE:   Correct.

20           THE COURT:   I mean, wouldn't it be reasonable

21   to believe that you can have him available without

22   going through diplomatic channels, because he is an

23   employee of the defendant?

24           MR. BRONZE:   Your Honor, that's what the

25   letter -- he's not employed with HSBC Guam.

1        THE COURT:  But he's an employee of one of the

2   defendants.

3        MR. BRONZE:  That's what Rule 28 --

4        THE COURT:  -- who came to this Court to ask

5   for a change in forum because of diversity.  So having

6   availed itself to the, I suppose one of the benefits of

7   this forum, now to come in and say, well, but I cannot

8   be deposed because of international --

9        MR. BRONZE:  Your Honor, that's what Rule 28

10  is for.  The process of doing any depositions abroad is

11  in Rule 28.  You are required to comply with Rule 28.

12  And that's what they are required to do.  And we will

13  do the same, we'll comply with Rule 28.

14       THE COURT:  But this is an employee of one of

15  the defendants, though?

16       MR. BRONZE:  I don't think it matters, Your

17  Honor.  We have no jurisdiction; this guy lives in

18  Pakistan.  HSBC Guam is a completely separate, distinct

19  entity.

20       THE COURT:  But hasn't that company availed

21  itself to this court's jurisdiction by asking this

22  court to undertake this case?

23       MR. BRONZE:  HSBC Guam, yes; not HSBC

24  Pakistan.  HS Pakistan is a different corporate

25  structure.

1    THE COURT:  But we wouldn't grant jurisdiction

2  if HSBC Guam is asking this Court to take jurisdiction

3  because it's a Guam company, there's no diversity.

4    MR. BRONZE:  It's a foreign banking

5  corporation which falls under Hong Kong.  HSBC in

6  Pakistan does not, my understanding, fall under Hong

7  Kong.  And the process to undertake these depositions,

8  you go to the principal place of business of the

9  corporate defendant and take the deposition, and in

10  accordance -- Rule 28 says that's the mechanics for it.

11    THE COURT:  So HSB Guam is a foreign

12  corporation?

13    MR. BRONZE:  It's a foreign banking

14  corporation, operating -- which is essentially a

15  subsidiary of HSBC in Hong Kong, whose parent is HSBC

16  Group Holdings PLC in London.

17    THE COURT:  And the individual in Pakistan

18  used to be the general manager here?

19    MR. BRONZE:  Correct.

20    THE COURT:  Or the branch manager?

21    MR. BRONZE:  Correct.  I think he moved in

22  December of 2002, I'm not sure, or earlier than that.

23    THE COURT:  But don't you have the -- don't

24  you have the right to move him places, and to move him

25  here for vacation, so a deposition can be taken?

1    MR. BRONZE: Your Honor, the orders I've got

2    is, they want to take depositions of HSBC officers

3    worldwide, they get a court order, they'll make them

4    available. I wish I could come to this court and say

5    otherwise; I'm not in a position to.

6    THE COURT: But isn't the whole purpose really

7    of, you know, litigation to facilitate discovery, one

8    by the other side expects you to facilitate discovery

9    to the plaintiff just like I expect the plaintiff to

10   facilitate discovery for you?

11   MR. BRONZE: Your Honor, and that's the

12   problem in this case. We've got no facilitation from

13   plaintiff. We can't get -- you can go back to the

14   file, we can't get a 15-page extension, okay, when we

15   need more than 15, more than 25 pages in a brief, we

16   couldn't even get an extended stipulation. Okay. I'm

17   all for the policy of you scratch my back, I scratch

18   yours; that's -- it should be that way. Unfortunately,

19   dealing with plaintiff's counsel, it's not that way,

20   and we don't expect --

21   THE COURT: But isn't the policy that you

22   provide discovery whether you scratch my back or not?

23   MR. BRONZE: No. I mean, the rules are there,

24   it's not -- this is -- this is what the rules are. I

25   mean, this is not serving us interrogs and asking us

1     questions or deposing HSBC officers here. They want to

2     depose an officer of HSBC out in Pakistan; there's a

3     process for that. And I don't see why we -- we should

4     be punished or penalized because they have to undertake

5     a process that the Federal Rules have set for them to

6     do. I mean, that's typical in these cases involving

7     these big corporations where you've got people

8     scattered all over the world, is these letters of

9     request. And the bank, I don't know that, I'll have to

10    check; the bank may have a policy that they don't make

11    their officers available unless you get a court order

12    to do that.

13         THE COURT: All right. So the reason why

14    you say the trial should be moved is because the

15    individuals that the plaintiffs intend to depose can

16    only be deposed by going through a procedure which may

17    take a year?

18         MR. BRONZE: They have to do it, we have to do

19    it. And they've already done one as it relates to Hong

20    Kong.

21         THE COURT: But is that the rationale for

22    extending the trial date and vacating the scheduling

23    order?

24         MR. BRONZE: Well, we've still got depositions

25    to take; we have not done any of our depositions.

1    They've still got depositions; I believe they want to

2    depose certain First Hawaiian officers, and they can

3    clarify that --

4         THE COURT:  But the depositions that you want

5    to take though, I mean, what foreseeable time frame do

6    we say will they be completed?  What's the time frame

7    for completion of the depositions that you want to

8    take?  Is it going to take a year based on

9    international policies?

10        MR. BRONZE:  No, I don't think -- no, the

11   local depositions, obviously, assuming all these

12   witnesses are available.  Not all the --

13        THE COURT:  They can take 30 days?

14        MR. BRONZE:  Depending on the witnesses'

15   availability.  I think to be fair to the witnesses, to

16   say they're available two to three month period --

17        THE COURT:  All right.  These witnesses are --

18        MR. BRONZE:  The witnesses are here --

19        THE COURT:  -- they're employees, related to

20   the plaintiffs, or, what relationship do these

21   witnesses have to the parties?

22        MR. BRONZE:  Well, our -- our deponents would

23   be obviously the plaintiffs themselves, and

24   Chris Felix.

25        THE COURT:  Well, you know, I mean I suppose

1    you could schedule a notice for ten days and they'll be

2    there to have their deposition taken.

3            MR. BRONZE:  A couple of First Hawaiian

4    officers.  And in regards to, I believe, they want to

5    take HSBC's former officer in, I think he's in San

6    Francisco, and then --

7            THE COURT:  All right.  They want to take the

8    San Francisco deposition, the plaintiffs?

9            MR. BRONZE:  Yes, plaintiffs.  And he's no

10   longer an employee of HSBC.

11           THE COURT:  But it seems like -- see, I'm

12   trying to figure out the rationale here for extending

13   the scheduling date of the trial.  And you say you want

14   to extend it because you're accommodating the

15   plaintiffs' discovery, and that does not seem to be

16   rationale for extending the trial date.

17           MR. BRONZE:  Well, on our part, if we have

18   the local depositions, it could be accomplished in

19   two to three months.  But then we got the foreign

20   depositions.

21           THE COURT:  That they want to take, the

22   plaintiffs want to take?

23           MR. BRONZE:  No, that we want to take, and

24   they want to take.  They have stated in their reply

25   memo they want to take the deposition --

1          THE COURT:  All right.  So the foreign

2     depositions that you want to take, who are these

3     individuals?

4          MR. BRONZE:  These are the two individuals

5     that they identified in the April 30th first set of

6     interrogs as potentially the individuals that would

7     have --

8          THE COURT:  The one in the Philippines?

9          MR. BRONZE:  Yes, and the one in Dubai.

10         THE COURT:  Okay.

11         MR. BRONZE:  Thank you, Your Honor.

12         THE COURT:  Ms. Arriola?

13         MS. ARRIOLA:  Thank you, Your Honor.

14         The standard in determining whether to modify

15    a scheduling order is whether good cause exists.  And

16    good cause as determined by the various case law that's

17    cited in both of our briefs is whether or not the

18    moving party has conducted due diligence in their

19    pursuit or their defense of the case.

20         You'll notice that the bank has not said

21    very much about their due diligence in this case.

22    Mr. Bronze stated one sentence that said "we have

23    been diligent".  But let's look at the record to see

24    exactly what the bank has done, because the record

25    shows that the bank has not been diligent in their

1    defense of the case, but instead, has done everything

2    possible to try to delay depositions and discovery, to

3    try to stall the trial date, and to make it as

4    expensive as possible for the plaintiffs to pursue

5    their case.

6         To date the bank's discovery has been one

7    request for production of documents served in December;

8    a first set of interrogatories served in March, five

9    months after the complaint was filed; and one

10   deposition of a custodian of records at First Hawaiian

11   Bank.  They haven't even tried to take the deposition

12   of the plaintiffs or of any other witnesses.  That is

13   not the conduct of a party who is diligently pursuing

14   their case.

15        On the other hand, let's look at the record

16   to see what the bank has filed in this case.  They've

17   filed five *ex parte* motions to stay all depositions

18   and to stay the proceedings in this case on March 31st,

19   April 23rd, April 30th, May 4th--two motions on May 4.

20   So what we see is a pattern of conduct where the bank

21   has tried everything in their power to delay this case,

22   delay discovery, and that was a deliberate and

23   calculated decision by the bank not to do any

24   discovery, but to try to file all these meritless,

25   groundless motions to try to stay discovery and not

1    do anything until the very last minute, and then come

2    into court and say, please, vacate the trial date and

3    the discovery dates because we haven't had time to do

4    our depositions.

5         Your Honor, you know, that's the bank's

6    problem; that's not our problem, and that's not the

7    court's problem. We agreed to take the depositions

8    of their bank representatives in the beginning of May.

9    In fact, you know, Your Honor, it really aggravates me

10    that Mr. Bronze comes into court and says that we have

11    not agreed to cooperate with them, because at the very

12    beginning of this case I wrote a letter saying, "we

13    know you have off-island witnesses who are employed by

14    the bank; will you agree to make them available?"

15    Response: Absolutely not, you're going to have to go

16    through Rule 28 if you want to take depositions of our

17    people off-island. That's what we did. We filed a

18    letter of request for two depositions in Hong Kong, we

19    filed that request or that application over a month ago

20    in Hong Kong; we expect to hear an answer this week.

21         Judge Unpingco ruled on one of their motions

22    to stay depositions in this case, and in his order he

23    called the bank's conduct a delay tactic. And that's

24    exactly what it is. The Court should not reward the

25    bank's lack of diligence and their delaying tactics by

1 allowing them an additional nine months of discovery,

2 and a year and four months before trial, which is what

3 they're asking for in their proposed scheduling order.

4 Your Honor asked, what did the bank propose

5 when we had the proposed scheduling order and discovery

6 plan before the court. The bank asked for a trial date

7 of October 2004; the plaintiffs asked for a trial date

8 of August, 2004. In our scheduling conference before

9 Judge Unpingco, the judge basically split it between

10 the parties and said, you know, I'm ordering the trial

11 to be held in September since you two can't agree.

12 Now, much has been made of the fact by

13 Mr. Bronze that these foreign depositions are going

14 to take a great deal of time, and that we didn't

15 disclose these two individuals in our answers to

16 interrogatories until April 30th. Well, Your Honor,

17 they didn't serve their first interrogatories until

18 March, five months after the complaint was filed.

19 So that's lack of diligence on their part.

20 As Your Honor knows, because I have been

21 before Your Honor in the Superior Court in cases

22 involving letters of request on foreign depositions,

23 I've had a great deal of experience in them. And,

24 Your Honor, the website on the State Department and

25 what is required in each country is simply not

1    informative.   In fact, there's a disclaimer on the

2    website that specifically says, "we do not guarantee

3    the authenticity of the information in this website";

4    you are, you know, required to go and seek local

5    counsel or other more pertinent information in the

6    location in which you attempt to takes depositions or

7    other evidence abroad.

8         Our experience has been that once you have

9    experienced counsel, they diligently pursue a letter

10   of request, or Letters Rogatory, you can have an order

11   from a foreign court within a few weeks, at the most

12   a month or so, before you get an order granting the

13   taking of depositions of individuals abroad.   We did

14   that last year in the Western Systems case in

15   Australia, in India, and in London.   So, you know,

16   it doesn't take a very long period of time, and it

17   certainly doesn't take a year.

18        The only reason that we are asking for an

19   extension of the discovery deadline is because we're

20   forced to.   The bank agreed to produce their witnesses

21   for deposition the first week of May; in fact, we went

22   round and round on this.   Mr. Bronze, you know, went so

23   far --

24        THE COURT:   You're asking to extend the

25   discovery deadline by how much time?

1    MS. ARRIOLA:  We would ask until the end of

2    July or the end of August.  And we'd ask the trial date

3    remain intact.

4         Here, Your Honor, this is not a situation

5    where we -- in every trial that I've been involved in,

6    almost always there are depositions that are late or

7    that take -- that are asked leave of court, people ask

8    leave of court if they can take depositions beyond the

9    discovery deadline due to extenuating circumstances.

10        Obviously, we would have no objection if the

11   bank wanted to take their depositions right up until

12   trial date of these people in the Philippines and in

13   Dubai, if that's what they wanted to do, because, you

14   know, they're obviously entitled to take those

15   depositions.   But we don't believe that the trial

16   date should be continued up to a year and four months

17   from now, which they've proposed in their amended

18   scheduling order; they've asked for a trial date of

19   October 2005, and they've asked for additional

20   discovery of nine months.

21        THE COURT:  But are these witnesses on your

22   trial list of -- or are these individuals on your trial

23   list of witnesses?

24        MS. ARRIOLA:  They are not on our trial list;

25   they were simply answers to interrogatories.  We do not

1    at this point intend to call them as witnesses. We

2    believe that that information can be obtained from the

3    plaintiffs. But obviously, you know, if the bank feels

4    that that is not the case, they can certainly go and

5    take these depositions.

6          THE COURT: Through interrogatories, through

7    your office maybe or not?

8          MS. ARRIOLA: That's certainly the case, they

9    still have, you know, additional interrogatories under

10    the rules that they can ask for.

11          I mean, Your Honor, you know, your questions

12    are right on point, which is, you know, what is the

13    least expensive and the most efficient way for us to

14    conduct the discovery in this case.

15          For example, you know, we have stated our

16    intention to take Guy Priestly's deposition in Pakistan

17    if we're forced to do that. But, frankly, we believe

18    that we might be able to get the deposition from the

19    two witnesses who refused to appear for their

20    depositions, who are bank employees now, because they

21    were there at the same time as all the, you know, the

22    facts and the events that are giving rise to this

23    complaint. It may very well be that we may not need

24    to take his deposition at all.

25          THE COURT: I see.

MS. ARRIOLA: What I have not heard the bank state in this case is what prejudice do they suffer from moving the trial date or from, you know, extending --

THE COURT: Will the plaintiffs suffer any prejudice if it's moved two months?

MS. ARRIOLA: Absolutely. Your Honor, absolutely. Let me tell you what the prejudice is.

My clients have a promissory note that they had with the bank, they are making monthly payments of $75,000 a month. That's a huge amount for them to be making, particularly in this economy, particularly in the rental market, and particularly in the type of business that they're in, which involves inventory and retail sales, for example, at Tick Tock Shop.

Had the bank allowed my clients the opportunity to fulfill their obligations under the work-out agreement, which is the centerpiece of this case, that the bank and the plaintiffs had a work-out agreement where the bank would allow the plaintiffs to either sell off their properties or obtain alternate financing, they would not be here today and they would not be required to make those $75,000 a month payments to Paradise Marine Corporation which bought the note from the bank.

1          Now, you know, the bank is -- counsel is going

2     to come up and --

3          THE COURT:  They're making monthly payments

4     on a note that has matured?

5          MS. ARRIOLA:  It has matured, true.  As such,

6     Your Honor, which is a good point, as such, Paradise

7     Marine Corporation has already claimed that they are

8     in default.  Therefore, the prejudice to my clients is

9     that if they are in default and the bank seizes or

10    forecloses on these valuable pieces of property, which

11    includes the HongKong Shanghai Bank building in, you

12    know, Tamuning, as well as other valuable pieces of

13    property in Guam --

14         THE COURT:  Wouldn't you be able -- Well,

15    assuming if you suffer losses, wouldn't you be able to

16    claim more damages?

17         MS. ARRIOLA:  That's correct, Your Honor.

18    That's correct.  Except, of course, Your Honor,

19    foreclosure of real property is in many instances

20    irreparable damage; you know, it's an intangible that

21    you cannot recover once those properties are foreclosed

22    upon.  And that is a serious prejudice and harm to my

23    client.  By contrast, we haven't heard anything from

24    the bank in terms of what their prejudice, except for

25    the fact that, number one, they refuse to bring their

1    employees, you know, to a place where we can depose

2    them conveniently; and secondly, that they need an

3    extension of the trial date and the discovery date

4    because they just weren't diligent.

5         THE COURT:  Is the monthly payment the

6    prejudice, or the fear that it might be foreclosed?

7         MS. ARRIOLA:  It's both, Your Honor, because

8    frankly, they are not able to make the monthly

9    payments.  And that has already been borne out by

10   letters from Paradise Marine Corporation's attorneys

11   saying that they are in default.  So it's both, they

12   can't make the monthly payment, and they are in real

13   danger of the properties being foreclosed.

14        With all that, Your Honor, we would ask for

15   a brief extension of the discovery deadline so we can

16   take the depositions of the bank employees who refused

17   to appear for their depositions, and so that the

18   defendants can take the plaintiffs' depositions.

19        THE COURT:  What's the deadline at the moment

20   in terms of discovery?

21        MS. ARRIOLA:  The deadline is Tuesday, June 8.

22        THE COURT:  June 8.  And you're asking for an

23   extension to when?

24        MS. ARRIOLA:  Until the end of July or mid-

25   August.

1    THE COURT:  And the trial is on the 21st of

2  September?

3    MS. ARRIOLA:  Yes.

4    THE COURT:  Well, that's another thing I don't

5  know, whether we might have a visiting judge to hear

6  the case.

7    MS. ARRIOLA:  I understand that, Your Honor.

8  However, as Your Honor knows, if we take the trial date

9  off the calendar, you know, and we don't have a firm

10  trial date, it doesn't give the parties, particularly

11  the bank, any incentive to diligently pursue their

12  case, and for us to even, you know, complete our case.

13    You know, another thing that I want to state,

14  Your Honor, I'm sure this will come up in the

15  plaintiff's motion to compel the depositions of the

16  bank employees, you know, I notice that the bank filed

17  a reply stating that, you know, there's no need for a

18  motion to compel our bank employees' depositions

19  because we will agree to produce them as soon as the

20  Court issues an order on our motion to stay; and once

21  the Court issues an order, we would like the

22  depositions to be held 30 days from the date of that

23  order.

24    You know, Your Honor, we're willing to take

25  the depositions next week; we want to take the

1  depositions as soon as possible. We just want to
2  prosecute this case and get our case to trial.
3       And unless Your Honor has any questions,
4  that -- we would submit on that.
5       THE COURT: Okay. Thank you.
6       Mr. Bronze, reply?
7       MR. BRONZE: Your Honor, based on the fact
8  that this case has only been filed in October, on Page
9  5 of my opening brief requesting the Court to vacate
10 this trial date, we have shown that we have been
11 diligent. I think before you take depositions, and you
12 can look at various treatises on this, that you try to
13 do all your paper discovery as much as possible.
14      The disclosures were made to them on December
15 12, there were hundreds if not thousands of additional
16 disclosures that we made on January 29th and February
17 11th. We then subpoenaed First Hawaiian Bank documents
18 on December 29th, we did a request --
19      THE COURT: But you haven't even taken the
20 deposition of the plaintiffs, which appears --
21      MR. BRONZE: Your Honor, we cannot take the
22 deposition of plaintiffs until we get all this paper
23 discovery done, then there's all this paper -- amended
24 complaint filed where we are being asked to depose a
25 plaintiff when we don't even know what the facts are.

1  The Court has struck the first amended complaint.  We

2  are litigating the case by ambush where I cannot go

3  back later on and try to re-depose Mr. Sadhwani over

4  issues that were raised in an amended complaint which

5  was not in a court file.

6  THE COURT:  All right.  But even if it struck

7  the first amended complaint, though, you have to

8  remember that the causes of action continue, it's the

9  causes of action that, you know, bears on the case,

10  that's what you're defending, not so much certain

11  allegations within each cause of action but the cause

12  of action.  It has remained -- it has remained in the

13  case.

14  MR. BRONZE:  You cannot depose a party to a

15  case without knowing what the allegations are and test

16  those allegations in --

17  THE COURT:  But you know what the allegations

18  are in the first complaint that was filed because your

19  subsequent motion was basically to strike.

20  MR. BRONZE:  Correct.  And this was not --

21  THE COURT:  The only thing that would be

22  stricken was the additional verbiage that was put in

23  the first amended complaint.

24  MR. BRONZE:  So what we have -- what the Court

25  is telling me is the Court -- the plaintiffs can

1  violate the Federal Rules and I still have to take a

2  deposition on a complaint that has no legal effect.

3  And that's what the judge found, that they didn't.

4  THE COURT: Well, you know, if you move to

5  strike, and it appears that the common-sensical thing

6  would be to strike the verbiage that appeared in the

7  first amended complaint --

8  MR. BRONZE: Granted, Your Honor, but at least

9  once a complaint is filed, we know what the facts will

10  be in the complaint and not be in the complaint.

11  THE COURT: But you've known since the date

12  the complaint was filed what the facts are in the

13  original complaint.

14  MR. BRONZE: Yes, but they are seeking to

15  amend the complaint, which --

16  THE COURT: I don't think they're seeking to

17  amend the complaint.

18  MR. BRONZE: The Court order allowed them to

19  -- Judge Unpingco's order allowed them to amend.

20  THE COURT: The third and the sixth.

21  MR. BRONZE: The third and the sixth. And

22  that's not what they did. They filed a completely

23  different first amended complaint from just the third

24  and the sixth; they amended the factual allegations,

25  they amended counts 1, 2, 3, 4 --

1      THE COURT: And you objected to the amendments

2  of those claims.

3      MR. BRONZE: Right. And my point is how can

4  I take a deposition? We have filed a motion to strike

5  this pending the Court's resolution what the true state

6  of the status of the complaint is.

7      THE COURT: But what I'm saying, though, is

8  that your motion to strike only relates to the

9  additional verbiage. You still have the original

10  complaint that you can use as a basis for getting

11  information, discovery.

12      MR. BRONZE: Then we are litigating by ambush,

13  Your Honor. I would not -- if they did something else,

14  which they have a pattern of doing, if they add

15  something else to their first amended complaint, or

16  second amended complaint, we have no ability later on

17  to get information from a material witness as it

18  relates to these facts. We are being set up for ambush

19  here.

20      THE COURT: You can ask the Court to have

21  another deposition.

22      MR. BRONZE: Your Honor, that is not right.

23  I mean, it's just giving the plaintiffs another second

24  bite at the apple that -- they themselves have attached

25  to the declaration to the motion to reconsider, they

1  wrote me a letter saying they do not believe that
2  there's such a right to re-depose witnesses.  Okay,
3  they have taken that position.

4       THE COURT:  Then you come to court and the
5  court will give you that right.  You respect what --

6       MR. BRONZE:  (Overlapping/unintelligible.)

7       THE COURT:  -- the rule says, the court can
8  give you the right to take the deposition of a witness
9  that has previously been deposed.

10      MR. BRONZE:  Your Honor, I don't believe that
11 there's a rule for it; they've taken the position
12 that's not, the fact that we have not taken --

13      THE COURT:  Well, I've had witnesses deposed
14 again when the parties come to court and ask that they
15 take the deposition again.

16      MR. BRONZE:  Your Honor, granted, okay, we
17 didn't do the deposition.  We filed this, and 30 days
18 prior to the discovery cut-off, it's being now heard
19 for various reasons on June, whatever today is, June 4.
20 That is clearly, we have been diligent in this case.
21 The fact that they have not -- then there's these
22 issues regarding these foreign depositions.

23      Ms. Arriola talks about she's done depositions
24 in London and Australia; you cannot compare
25 jurisdictions like London and Australia to places like

1    Pakistan and the Philippines where -- I mean, it's

2    common knowledge, these places take forever to resolve

3    cases.  And the fact that these countries, London and

4    Australia, the Court can do the search, these countries

5    I'm pretty sure are signatories to The Hague

6    Convention; the process is a much faster process.

7    That is not the case for Dubai, for the Philippines,

8    for Pakistan.

9         In regards -- well, she may not be, need to

10   take the deposition of Priestly because she will take

11   the deposition of Mr. Underwood.  Mr. Underwood, I do

12   not believe was here when Mr. Priestly was in Guam, so

13   maybe she will need it, maybe she will not.

14        The burden on KSI is no different than any

15   litigant that chooses to come to this court and file a

16   case.  Litigants always face immeasurable either

17   damages or burdens.  What they faced when they face

18   this loan, 75,000, is the same they face now having to

19   pay PMC 75,000.  And I'm informed by PMC they have now

20   stopped making payments on that; that's their problem.

21   If they are refusing to pay PMC to finance this

22   litigation, they do that at their own peril.

23        In regards to the initial disclosures, where

24   we should have asked these names at the beginning of

25   the case, we didn't -- we're narrowing down which

witnesses they will call, and we filed the interrogs,
they then popped up with these two names, which they
are required.  If this was not a sham concocted at the
last minute, they should have known these names when
they gave us the initial disclosures.  And I'm telling
the Court they never did, nor in their supplemental.
They only did it on April 30th.  And now they're
placing the blame on us for wanting to depose the
witnesses.  And the fact that, you know, it takes, you
know, three months, six months to a year --

THE COURT:  But Ms. Arriola said that these
individuals are not going to be on their witness list,
so whatever it is that they've said --

MR. BRONZE:  It's my obligation to depose
these witnesses.  Yes, it's on their witness list, but
I have a right to depose them.

THE COURT:  All right.  But whatever
information it is that they're going to shed on the
case may not come in because they're not going to be
here to testify.

MR. BRONZE:  Well, I --

THE COURT:  You're arguing over discovery of
these individuals, and more likely there's no evidence
that's going to come from them because they're not
going to be witnesses.

1    MR. BRONZE: Your Honor, that's what she says

2    now; six months down the road, it may be a different

3    story.

4    THE COURT: In six months, if they're going to

5    be produced, then you're going to get your extension,

6    see?

7    MR. BRONZE: Your Honor, and for motion for

8    summary judgment, we want to depose these witnesses.

9    I'm not going to rely on counsel's statement that

10   he's not -- I mean, she has identified them in the

11   interrogs. She's making the statement now, well, you

12   know, it's in their complaint, it's the first amended

13   -- I'll bet you it's in the first amended complaint

14   that she says these are -- although they don't put

15   these -- identify these individuals by name, they say,

16   there are other individuals that were supposed to

17   provide financing, and these are the two individuals

18   they're talking about.

19   THE COURT: But wouldn't it make sense for the

20   court, if they come with these individuals and they say

21   at a later point that they are going to be witnesses,

22   and when you come in to me and ask for an extension

23   that I will grant your extension because of that?

24   Wouldn't that be the logical thing to do?

25   MR. BRONZE: Your Honor, we wouldn't know that

1   until at a point of motion for summary judgment or at a

2   point of trial, now we've got to delay trial to go

3   depose two witnesses when we can go do it now.  This

4   issue of burden is like any plaintiffs who come to this

5   court, why --

6           THE COURT:  Because we don't need to delay

7   trial now because that event may not occur.  But when

8   it's a certainty, then there's a need to delay it.

9           MR. BRONZE:  Well, they've raised a factual

10  issue, and we have a right to depose these people.

11  And this issue about discovery, when are we going to

12  be able to file a motion for summary judgment, even

13  assuming July 30th is the discovery cutoff.  The rules,

14  the local rules states that you have to file a trial

15  brief 30 days prior to the trial date.

16          So, are we saying that we're going to -- I

17  mean, when is the Court going to have time to hear

18  a motion for summary judgment, rule on it, filing a

19  trial brief within 30 days from trial date.  It is

20  not feasible, Your Honor.

21          And this prejudice being argued, this is not

22  -- the test under 60(b) is fairly --

23          THE COURT:  Well, you know, if we look at the

24  practicalities really, if you feel a need to file your

25  summary judgment and that summary judgment is pending

1  before trial, you may get an extension of the trial

2  pending disposition of the summary judgment motion.

3         MR. BRONZE:  That may be the case.  It gives

4  us no time to prepare, we'll be doing discovery up to

5  July 30th, when is the -- we're going to get one week

6  to file or two weeks to file a major motion for summary

7  judgment.

8         What they are trying to do here, this case,

9  and Judge Pregerson asked plaintiffs, how long has this

10  case been -- this case has only been here on October

11  21st, filed last year.  And what they are trying to do

12  is --

13         THE COURT:  And in part, though, you've agreed

14  to move it on a fast track by saying that you want

15  trial on October 2004.  You're part of the process that

16  has moved it on a fast track.

17         MR. BRONZE:  Your Honor, like I told the

18  court, I don't know what was proposed, I can't

19  remember --

20         THE COURT:  Well, right here, October, I have

21  it right here on your proposed --

22         MR. BRONZE:  And --

23         THE COURT:  -- it says October 18, 2004,

24  that's when you wanted to go to trial on this case.

25         MR. BRONZE:  But that's the problem, sometimes

1    in cases, like you go through cases, you anticipate --
2    ou encounter problems that you don't anticipate, just
3    like these witnesses.  I mean, she needs time; I mean,
4    she's asking the Court basically grant me an additional
5    two, three months, but let's keep the trial date.  You
6    cater to me, but it's okay, HSBC, never mind, I mean,
7    they'll figure it out.  You know, that is not fair, and
8    that's not what the rules state.

9            THE COURT:  But what I'm saying, though, is
10   that once discovery is completed and you feel a
11   necessity to file a summary judgment motion, the filing
12   of that motion and its lack of disposition by a trial
13   date may continue the trial date.

14           MR. BRONZE:  That may be the case.  Still
15   brings us the issue of -- let's say, let's for
16   argument's sake we say, well, as a condition precedent
17   to the work-out, they have to get alternative
18   financing, and we -- I mean, it is clear First Hawaiian
19   never gave them financing.  Plaintiff is going to --
20   their argument is, oh, I have two individuals, I will
21   guarantee the court there are two individuals that were
22   going to provide financing; this is the guy in Dubai,
23   this is the guy in the Philippines.

24           What do we do now?  Now we are stuck.  Are we
25   going do lose this motion because there's a factual

argument being raised that these two individuals that had a secret agreement with Sadhwani to do the -- to provide financing. And that's exactly their tactic here is to litigate this case by ambush. Granted as much as possible you cannot do anything, and that's their tactic, that's all along. We have not --

THE COURT: But have you set the machinery in place to take their deposition?

MR. BRONZE: We are working on the -- we just retained litigation counsel both in Dubai and in the Philippines, we are currently working on this. Obviously, we have this issue, we've got a June 7th discovery cut-off; it's not feasible to take these depositions. And granted, we get some time, then obviously we have started the process, and it's --

THE COURT: But you haven't filed any papers that shows that you've started the process.

MR. BRONZE: Your Honor, we are -- to date we have not, we're waiting -- we're working on it, I have a draft that's gone to counsel in the Philippines. Dubai, the guy is still on vacation. We have discussed it, he's interested to take the case; however, he is not in Dubai, and I believe he returns this week or the end of the week or something, or this weekend he's going to be back in Dubai. And the stuff, Your Honor,

is time consuming, they have their own rules in Dubai and the Philippines. You know, they've got to prepare in accordance to their rules and then file it here. If there's a mistake in it, we're back to square one. These things are not as simple as --

THE COURT: You know, I have some cousins in the Philippines; maybe I can expedite it for you.

MR. BRONZE: Maybe.

(Laughter.)

MR. BRONZE: And so, in summary, Your Honor, the July discovery cut-off period is not feasible. We're going to be back here, it's -- we have been diligent, and I think what we're asking, we'll propose a shorter discovery period, which is maybe July of next year.

Thank you, Your Honor.

THE COURT: Okay. On your request on this motion, the court is going to take it under advisement, really. And if I make any decisions on that motion, it's taking into consideration the fact that we have visiting judges that come by here; we are tentatively planning on scheduling some of them to come in different times. As of the moment, I don't see any judge coming here in September. So that may play a part in terms of what the court ultimately decides

1   here. It might move it to a time in which there will

2   be a judge that's actually going to be here. So those

3   would be considerations that the court will take when

4   it issues a decision on this matter. So I'll take it

5   under advisement.

6         On the third motion, it's a motion to compel

7   and for sanctions, that's the plaintiff's motion.

8         MS. ARRIOLA: Your Honor, we filed this motion

9   to compel because we knew that we would not be able to

10  take the depositions of Fred Granillo and Chris

11  Underwood, the bank's representatives, before the

12  discovery deadline in this case, which is next week

13  Tuesday, June 8th, and it was purely out of a

14  precautionary measure, but also because we had had an

15  agreement with the bank that they were going to produce

16  their clients the first week of May for their

17  depositions. They reneged on that agreement and

18  instead filed several motions to stay the depositions

19  and the proceedings.

20        Before getting to the merits of it, Your

21  Honor, though, I do want to address one issue, and that

22  is that the bank has raised the issue that we did not

23  comply with the Local Rules concerning notifying them

24  that we were going to file this *ex parte* matter. And

25  that is true. And there is good cause, however, Your

1   Honor.

2          I did want to let Your Honor know that at the

3   time that we were preparing the *ex parte* motion to

4   compel the depositions of these two individuals, we

5   were preparing our oppositions to the various motions,

6   which numbered I would say eight or nine motions that

7   the defendant had filed. I was getting ready to leave

8   off island on May 12th, I had prepared a letter to

9   Mr. Bronze for my partner, Joaquin Arriola, to sign,

10  and that it simply, you know, got waylaid, and it was

11  neglect that we did not send this letter out to

12  opposing counsel informing him that we were going

13  to do the *ex parte* motion.

14          I did write to him beforehand for a meet and

15  confer; he did not respond, which was put in my

16  declaration. But again, Your Honor, we would ask that

17  our neglect and our failure to follow the local rules

18  in terms of notifying them about the filing of the *ex*

19  *parte* motion be excused because there was good cause.

20          On the merits of the motion to compel, Your

21  Honor, these two individuals, Fred Granillo and Chris

22  Underwood, are not third party witnesses; they are

23  parties in the case. They are the general manager of

24  the bank and they are one of the assistant vice

25  presidents. As I said previously, the parties agreed

to --

THE COURT: Which one is the general manager?

MS. ARRIOLA: Chris Underwood.

THE COURT: All right.

MS. ARRIOLA: And Mr. Granillo is the assistant vice president, I believe, of credit management, but I may have that title wrong.

We had an agreement to take their depositions the first week of May. The bank reneged on that, and failed to show up at their depositions, and they filed all of these motions to stay.

On May 3rd was the date of Fred Granillo's deposition, and at that time there was no pending motion under Rule 26. And that is what the bank is relying on, they're relying on the fact that they had pending motions during -- on the days that the depositions were scheduled, May 3rd and May 5th. However, there was not a pending motion on May 3rd because their motion to stay had already been denied by the Court on Friday, April 28th.

Similarly, on May 5th, the date scheduled for the deposition of Chris Underwood, they claim that there was a pending motion, but in fact, the only motions on file at that time were two motions to reconsider the orders denying the motion to stay.

1    Those are not motions under Rule 26(c); those are

2    motions to reconsider. 26(c) is very clear about what

3    motions are required under that rule, and those are

4    essentially motions for protective orders, or to stay

5    depositions.

6         Instead, what was present on the two days

7    that these men were scheduled to show up for their

8    depositions were two court orders denying the bank's

9    motion to stay depositions; there was an order by Judge

10   Unpingco denying the first motion to stay depositions

11   pending determination of its first motion to dismiss,

12   and there was the order of April 28th where the judge

13   denied the motion to stay all depositions again.

14        So it is our position that sanctions should

15   be granted against the bank for failing to show up when

16   there were no pending motions.

17        THE COURT:  But the bank is saying that they

18   didn't receive notice of those orders prior to the May

19   3rd deposition.

20        MS. ARRIOLA:  Well, you know, Your Honor, we

21   received the order May 3rd, the date of Fred Granillo's

22   deposition, and it was incumbent -- our position is it

23   was incumbent upon the bank to check the Court for the

24   orders, for any orders, because they were doing this on

25   an *ex parte* motion basis.

1    In fact, if you read Mr. Bronze's deposition
2    -- or, I'm sorry -- declaration, which was filed in
3    support of the motion to stay, he specifically
4    requested please try to make a decision before the
5    date of the depositions because we have these pending
6    motions on -- or these depositions that are scheduled
7    to be taken on May 3rd and May 5th. And in his
8    declaration and his motion, he specifically pleaded for
9    the Court to make a decision sometime before that week
10   and before the date of the depositions.

11   You know, had he been more diligent in terms
12   of following up and finding out whether or not an order
13   has been received or had been entered on the docket, he
14   would have found that the order had been entered that
15   Friday before the date of the depositions, or at the
16   very least, on that Monday when we received notice of
17   it. So --

18   THE COURT: Did you receive notice before the
19   deposition?

20   MS. ARRIOLA: We received notice, I believe,
21   in the morning of May 3rd.

22   THE COURT: Before the scheduled time?

23   MS. ARRIOLA: No, not before the scheduled
24   deposition.

25   THE COURT: After the scheduled time?

1           MS. ARRIOLA:  After the scheduled time, that's
2    true.

3           But, Your Honor, you know, regardless of
4    whether you grant sanctions, what we want in this case
5    is we want to take their depositions.  That's all we're
6    asking for.  We cannot possibly take it in a time
7    before the discovery deadline in this case, which is
8    next Tuesday; we simply want an order from the Court
9    compelling them to produce these two guys for their
10   depositions, because we want to take them as soon as
11   possible.  And that is really the whole basis of our
12   motion, we just want them to produce their people so
13   that we can take their depositions, because we are
14   prepared to do that, and we've been prepared to do that
15   since the first week of May when their depositions were
16   scheduled and noticed.

17          And if Your Honor is going to, you know, rule
18   on the motion to vacate the scheduling order, and make
19   some other deadlines, we would ask the court, you know,
20   try to give us notice of that as soon as possible so we
21   can take depositions as soon as possible.

22          THE COURT:  Well, you know, I think as of the
23   moment, we have to proceed as if the trial were to go
24   September, because that's the only order.  Until you
25   hear otherwise, you would continue the due diligence

1    that you talked about.

2           MS. ARRIOLA:  Except that the discovery

3    deadline, the order that is outstanding on the

4    discovery deadline is Tuesday; if we can get some

5    indication, for example --

6           THE COURT:  Well, the Court is definitely

7    going to extend the discovery deadline.  The only thing

8    that I'm going to reconsider, really, is whether

9    extending the discovery deadline necessitates extending

10   the trial date.

11          MS. ARRIOLA:  Thank you, Your Honor.  Then we

12   can proceed with our depositions?

13          THE COURT:  Anything else?

14          MS. ARRIOLA:  I'm asking, then, Your Honor,

15   I'm asking whether we can proceed with our depositions.

16          THE COURT:  Well, I suppose the Court would

17   have to make that decision after this motion.

18          MS. ARRIOLA:  But I mean with other

19   depositions.

20          THE COURT:  Yes.  Yes.

21          MS. ARRIOLA:  I just want to make sure of

22   that.

23          THE COURT:  Yes.  The Court is going to extend

24   discovery because even the defendant hasn't engaged

25   in much discovery, so I think with regards to both

1    sides, there is a need to extend discovery.

2         You're only asking to the end of August,

3    I think, or July?  Or mid-August?

4         MS. ARRIOLA:  August -- mid-August.

5         THE COURT:  And the defendant is asking for

6    at least a year, so, obviously it would seem to be

7    prudent to extend it at least to mid-August, because

8    that's not being opposed on the other side because they

9    want a year.

10        MS. ARRIOLA:  Okay.

11        THE COURT:  So just for purposes of, you know,

12   some guidance, of course discovery would extend to mid-

13   August.

14        MS. ARRIOLA:  Great.

15        THE COURT:  August 18th, let's say.

16        MS. ARRIOLA:  Thank you, Your Honor.

17        THE COURT:  It can be longer, it can be less

18   depending on how that motion is decided -- I mean, it

19   can be more, not less.

20        MS. ARRIOLA:  Thank you very much.  I

21   appreciate it, Your Honor.

22        THE COURT:  Mr. Bronze, on the motion to

23   compel.

24        MR. BRONZE:  Your Honor, the plaintiffs have

25   argued that the motion to reconsider are not motions

1   under FCRP 26(c), and they have provided nowhere in

2   their reply brief any authority for that proposition.

3   The facts of this case is I did not get a copy of the

4   Court's order, it was actually faxed by plaintiff's

5   counsel about 2:30 in the afternoon.  We didn't -- I

6   did not get the one from the Court box until sometime

7   about 4:00 o'clock.  I never got any call from, my

8   recollection, or my staff never got any call from the

9   Court that the order had been issued.  And --

10          THE COURT:  But the parties -- case law, case

11  law provides that parties can be sanctioned even when

12  they have pending motions for failure to appear at a

13  deposition.

14          MR. BRONZE:  Your Honor, that's not what the

15  rules say.  The rules --

16          THE COURT:  Well, read 186 FRD.

17          MR. BRONZE:  I don't have the Federal Rules

18  with me, Your Honor, but 37(d) says that the --

19          THE COURT:  Well, no, what I'm saying is that

20  parties have been sanctioned by courts even though they

21  have a pending motion, pending protective order, for

22  failure to appear at a deposition.  There are cases to

23  that effect.

24          MR. BRONZE:  Your Honor, well, none of the

25  cases cited by --

1          THE COURT:  Well, it doesn't matter what they
2    cite, it's what the case law on the subject is.
3          MR. BRONZE:  Your Honor, then I will have to
4    see the --
5          THE COURT:  I was just giving you a cite, 186
6    FRD.
7          MR. BRONZE:  Well, Your Honor, in reliance
8    on the Rule 26(c), reading it from the face of the
9    statute --
10          THE COURT:  Well, these courts also relied on
11    Rule 26(c) and Rule 37 to say that a party may be
12    sanctioned, even though you have a pending protective
13    order, because it's discretionary with the court to
14    excuse, not mandatory.
15          MR. BRONZE:  Well, I don't think -- I think
16    you've looked at the cases that -- this is not I have
17    been willful, you have relied on what the statute says,
18    I have cited case law that support our position.  We
19    didn't know about the order until at least as it
20    relates to the first deponent --
21          THE COURT:  But it seems to me that your
22    position is that every time you have a pending
23    protective order, you're not subject to sanction.
24          MR. BRONZE:  Certain cases that I have read
25    that, that that is correct, that so long -- I mean, the

1  cases cited by the defendant -- by the plaintiffs in

2  this case --

3       THE COURT:  But what I'm saying is that there

4  are other cases that say otherwise.

5       MR. BRONZE:  I haven't found the authority,

6  and to the extent the Court believes that is the case,

7  then I'll take what the Court --

8       THE COURT:  Like I said, 186 FRD, D.DC 7, it's

9  a July 10, 1988 case, and it's Alexander versus the

10 FBI.

11      MR. BRONZE:  Well, we believe our actions have

12 been in good faith in this case.  In regards to the

13 Underwood, we had filed a motion to reconsider --

14      THE COURT:  But in all pf these instances,

15 though, Mr. Bronze, you've already had an order that

16 has denied the protective order.  So how can it be in

17 good faith not to appear at the deposition on May 5th

18 when your motion for the protective order has been

19 denied?

20      MR. BRONZE:  Yes, but we have asked the Court

21 to reconsider the motion, which is --

22      THE COURT:  After it has been denied?

23      MR. BRONZE:  Yes.

24      THE COURT:  Is counsel really serious that

25 after a judge has denied your motion for a protective

1 order, that it would reconsider that decision when you

2 have a deposition that's pending?

3       MR. BRONZE: Your Honor, a motion for

4 reconsideration where the Court has not considered

5 factual arguments based on the local rules, the Court

6 can -- it's valid under the local rules, it's valid

7 under Ninth Circuit precedence that the court can

8 reconsider.

9       THE COURT: So if you're going to take a

10 deposition in the future and you set it for June 11th,

11 all Ms. Arriola has to do is file a motion for a

12 protective order on June 10th and tell her parties "do

13 not appear because I have a motion for protective order

14 pending", that's the rule that you suggest, and I don't

15 think it's a good rule.

16       MR. BRONZE: Your Honor, to the extent that

17 it is not frivolous, you cannot just file a Rule 26;

18 I mean, we have asserted grounds of why we believe the

19 motion should have been stayed and why it --

20       THE COURT: But the judge has already denied

21 it.

22       MR. BRONZE: The judge may have denied it,

23 but we have the right to ask the judge to reconsider

24 his decision. Your Honor, I've been before you --

25       THE COURT: And if he denies that

1   reconsideration, are you going to file a third motion

2   for reconsideration?

3        MR. BRONZE:  Of course, you're only allowed

4   one time to file a motion for reconsideration.

5        Your Honor, when you were in the Superior

6   Court, I have filed motion for reconsideration before

7   you and you have undertaken it and actually reversed

8   yourself in this -- in the *GEDA case versus Tommmy*

9   *Tanaka* on certain counts regarding --

10       THE COURT:  But I have never reconsidered on a

11  motion to attend a deposition.  I may have reconsidered

12  on substantive grounds, on legal issues, finding that

13  your memorandum has enlightened me, enlightened me to

14  the point that I had erred in my previous ruling.  But

15  not on -- but not on failure to attend a deposition,

16  really.  I mean, it doesn't seem to me right that the

17  other party would be there attending, having their

18  court reporter there, having people there, and then

19  the only justification you have is that, oh, I have a

20  pending motion, even though it's the prior motion for

21  protective order has been denied.

22       MR. BRONZE:  And that's the other point,

23  Your Honor.  We advised counsel that we will not be

24  appearing, so any excuse about that they incurred

25  expenses is completely frivolous.  We sent a letter,

1  it's attached to Exhibit 4 to my declaration, that

2  on May 4th, the deposition for Underwood which we're

3  discussing was supposed to be May 5th.  At 4:00 o'clock

4  in the afternoon I faxed a letter to plaintiff's

5  counsel that I will not be appearing on the May 5th.

6  So if she undertakes to have the court reporter there,

7  knowing that we're not going to show up, we should not

8  be sanctioned for that.

9         THE COURT:  Well, yes, because you haven't

10  gotten an order from the Court that says your motion

11  has been granted, that's why you should be sanctioned.

12         MR. BRONZE:  Well, if that's the Court's

13  position, then, you know, we'll --

14         THE COURT:  That's the position that we have

15  to take for every litigant, because I don't want

16  Ms. Arriola on the eve of your deposition to run to

17  the court and file a protective order, and nothing is

18  done with that protective order, she's going to tell

19  her client not to come to your deposition.  I'm not

20  going to tolerate that.

21         MR. BRONZE:  To the extent that they have no

22  grounds to do it.  I mean, we had grounds.

23         THE COURT:  No, no, she has grounds.  Unless

24  I tell you that your protective motion is granted, then

25  that's, as far as I'm concerned, that's the only time

1    you're going to get sanctioned.

2          MR. BRONZE:  Well, obviously, Your Honor,

3    there's differing authority on this, and so that's

4    maybe what the position is.  There's differing

5    authority.  There's authority supporting your position,

6    and there's authority supporting our position, and if

7    the court --

8          THE COURT:  But, you know, doesn't it seem

9    that maybe what Ms. Arriola is saying is true here,

10   that you've not really been diligent in discovery?

11         MR. BRONZE:  That is absolutely not true.

12         THE COURT:  That you're preventing discovery?

13         MR. BRONZE:  We are not preventing discovery.

14   We have -- The substance of this motion was we didn't

15   want to have to -- Your Honor, we're arguing this

16   motion, the motion to reconsider the stay, more than

17   a month later.  We were facing a June 7th discovery

18   cut-off, or June 8 discovery cut-off, being forced to

19   take depositions, again going back, and we've gone over

20   this issue about the amended complaint, where we're

21   essentially doing a deposition by ambush with

22   potentially no rider under the federal rules that I

23   know of to then have to re-depose the witness.

24         And that was the basis of filing our motion

25   for protective order.  And it was not a willful -- it

1    was not, you know, like these cases cited where these

2    people agreed to show at their deposition, they never

3    filed anything with the court.  And that is not the

4    case here, I don't think there's contumacious behavior

5    on our part.  We relied on what case law I have.  I

6    mean, obviously, there's differing authorities over

7    this issue.  And I don't think that's sufficient to --

8    for the Court to give sanctions.

9         And to the extent we'll make Mr. Underwood --

10   but the problem we have, Your Honor, is the Court -- we

11   ask the court to, if they're going to issue an order,

12   Mr. Underwood --

13        THE COURT:  But the problem is, you're also

14   asking that the deposition cannot take place earlier

15   than 30 days from the court's order, and that's further

16   delaying discovery.

17        MR. BRONZE:  Your Honor, bottom line is we're

18   asking that we are given an opportunity to discuss

19   everybody's schedule and make -- if the court says you

20   make him available in three weeks, then we have to say,

21   okay, we'll find everybody's schedule.  The problem

22   with

23   Ms. Arriola is she just imposes a date, and whether

24   I have a conflict or somebody else, it doesn't matter,

25   that's the date.

1          THE COURT:  Do you have a conflict in ten

2     days?

3          MR. BRONZE:  I don't know; I'll have to check

4     my -- I don't know.

5          THE COURT:  Could you check it, please?

6          MR. BRONZE:  I will check.  And I will need

7     to check Mr. Underwood's schedule also, or whoever the

8     deponent is; I'm not sure who the Court is talking

9     about.

10         That's all, Your Honor.

11         THE COURT:  Ms. Arriola?

12         MS. ARRIOLA:  You know, Your Honor, again,

13    I am just really aggravated by some of the

14    representations that are made here.  Mr. Bronze had to

15    leave in April off island; he told me because he had to

16    care for an ailing parent.  For that reason I did not

17    schedule any depositions for April in order to

18    accommodate his personal schedule.

19         I then wrote to him and said, can you produce

20    your clients for deposition on April 28th?  He said no,

21    he couldn't; his clients were more available or it was

22    more convenient for them for me to take their

23    depositions on May 3rd and May 5th.  That's why I

24    scheduled their deposition on that time, and that's

25    what we agreed to.  And, you know, Your Honor, that's

1    in a declaration that I filed in opposition to the

2    first motion to stay all depositions that they filed

3    way back when in March.  But it irritates me to no end

4    that Mr. Bronze is making all these statements that,

5    you know, they have been, you know, so accommodating

6    and they have, you know, been willing to produce their

7    clients; that is just not the case.

8            And, Your Honor, in terms of, you know,

9    sanctions, the facts are as they are, and they are

10   this.  Number one:  They agreed to produce their

11   clients, they never did; number two, they had five

12   pending motions to stay depositions, one filed right

13   after another, instead of conducting discovery, clearly

14   aimed to making it more expensive for us to litigate

15   this case, but also clearly aimed to not take their

16   clients' depositions when we had a chance to.

17           And then as Your Honor noted, there were two

18   court orders that specifically said, you know, we're

19   denying your motion for a protective order in terms of

20   staying the depositions.  So what we had on the record

21   on May 3rd and May 5th was, we had two court orders

22   basically stating the depositions are going forward;

23   the scheduling order is intact as it stands.  All of

24   those facts lead us to believe that sanctions should

25   be imposed here.

1    And, Your Honor, when Mr. Bronze says, you

2    know, I gave her enough adequate notice, she didn't

3    have to have the court reporter there; Your Honor,

4    every single case that I have read says if you have a

5    deposition that's noticed and that's scheduled, you

6    bring the court reporter and you wait for the witness

7    to show up, and you make a record of what happened at

8    that deposition, whether they failed to show up or they

9    didn't fail to show up. And regardless of whether

10   Mr. Bronze, you know, sent me letters notifying me that

11   the clients were not -- his clients were not going to

12   come, I was going to make that record, because in my

13   understanding of the rules and the cases, that's what

14   you're required to do.

15       So, we would ask that Your Honor schedule

16   these depositions as soon as possible, grant our motion

17   to compel, and grant the motion for sanctions.

18       Thank you.

19       THE COURT: All right. You know, Mr. Bronze,

20   I don't think 30 days really is reasonable in light of

21   the fact that these depositions did not take place on

22   May 3rd and 5th. I think any notice to take a

23   deposition given within ten days is reasonable, really.

24   That's why I asked you what your schedule would be like

25   within ten days. Is that something you could --

1          MR. BRONZE:  Your Honor, I could check my
2     schedule, and I need to check the two deponents'
3     schedule, and I can contact your law clerk and tell
4     her.
5          THE COURT:  You know, the only time I'm going
6     to excuse them from not attending is if they have
7     planned trips off island.
8          MR. BRONZE:  I don't know, Your Honor.
9          THE COURT:  But otherwise, if they're here,
10    they must attend the deposition, really.
11         MR. BRONZE:  I have no problem in regards to
12    that, Your Honor.  I will check with them, and if I
13    have a scheduled conflict, then I will let the Court
14    know.
15         THE COURT:  Let Ms. Arriola know so that it
16    can be scheduled on or about ten days.  All right?
17         MR. BRONZE:  Your Honor, is that from today
18    or --
19         THE COURT:  Well, it should start from today,
20    because we've already lost 30 days from May 3rd, 30
21    days in terms of discovery time.  So check your
22    schedule, and if you have a court case on a certain
23    day, I'm sure Ms. Arriola really can adjust dates or
24    times to accommodate your court schedule.
25         But, let's have the deposition take place ten

1    days from today, on or about; only to be rescheduled if

2    you have a scheduling conflict.  All right?  And also

3    if, let's say you talk to the deponents and they tell

4    you that one is in Alaska, or one is on a vacation

5    right now and they're not going to be back for another

6    two weeks, then of course you'll need to schedule it

7    when they come back.

8         Also, if they have a planned trip, you know

9    -- because this is the summer months, people are

10   traveling, I don't know whether that's the case -- let

11   Ms. Arriola know and maybe you can work out something

12   convenient in terms of when they're going to be coming

13   back.  Maybe you can speed up the deposition really, if

14   they're going to be leaving within five days, maybe you

15   might want to take the deposition in four days,

16   especially if their vacation is going to be 30 days.

17   I don't want to disrupt a vacation that's planned,

18   especially if it's with the family.  So those are

19   matters to take into consideration in terms of the

20   deposition.  But let's just say ten days from today

21   to be rescheduled, if there are conflicts.  All right?

22        Is that a problem, Ms. Arriola?

23        MS. ARRIOLA:  That's not a problem, Your

24   Honor.  I appreciate it.

25        THE COURT:  All right.  So for both

1  individuals, or do you want another individual on a

2  different date?

3      MS. ARRIOLA:  Your Honor, I anticipate that

4  these depositions will take all day, and so they will

5  probably be two days, but one day after another is

6  fine, or with a day in between is fine.

7      THE COURT:  All right.  We can do it the same

8  way you noticed previously so there's a gap in between.

9  So ten days from today for either one of them, and then

10 12 days from today for the other one.

11     MR. BRONZE:  12 days, Your Honor?

12     THE COURT:  12 days from today for the other

13 one.

14     And as for the motion for sanction, really,

15 I'm going to incorporate that in I guess a decision

16 that will be coming forth from the Court.  I've

17 reviewed some cases prior to this hearing, and it does

18 discuss instances in which sanctions have been imposed

19 against a party even though they had a pending motion

20 for protective order at the time of the scheduled

21 deposition.  So I want to revisit those cases and look

22 at them again one more time for what they may be worth,

23 and incorporating it in a written decision.  So I'll

24 have this decision out as soon as possible so we know

25 where we stand in terms of the scheduling order, the

1   anticipated trial date, and whether or not the Court
2   will grant sanctions in this matter.

3          Any other matters that we need to take up?

4          One of our problems here, really, is that we
5   can hear certain matters for certain issues but we
6   can't for others; so it's like having a dual forum in
7   terms of disposing of all of these issues, which
8   doesn't make it too accommodating, really, you know,
9   for moving cases forward, because sometimes we don't
10  know what's happening here when someone is hearing
11  another matter.

12         So, with that in mind, let me thank you for
13  being here this morning, and for being here for the
14  past hour and a half.  Thank you very much counsel.

15         Unless there are any other matters?

16         MR. BRONZE:  Thank you.  No, Your Honor.

17         MS. ARRIOLA:  Nothing further, Your Honor.

18         THE COURT:  Thank you very much.

19         (Proceedings concluded at 11:31 a.m.)

20                        * * *

21

22

23

24

25

# CERTIFICATE OF REPORTER

CITY OF AGANA          )
                       ) ss.
TERRITORY OF GUAM      )


        I, Wanda M. Miles, Official Court Reporter
of the District Court of Guam, do hereby certify the
foregoing pages 1-70, inclusive, to be a true and
correct transcript of the shorthand notes taken by me
of the within-entitled proceedings, at the date and
time therein set forth.

        Dated this 15th day of June, 2004.


        _Wanda M. Miles_