JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel: (671) 477-9730
Fax: (671) 477-9734



Attorneys for Plaintiffs Alan Sadhwani, et al.

# IN THE UNITED STATES
# DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br><br>Defendants. | CIVIL CASE NO. 03-00036<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT HSBC'S OBJECTIONS TO MAGISTRATE JUDGE ORDER COMPELLING PRODUCTION** |

## STATEMENT OF FACTS

Plaintiffs had a virtually exclusive banking relationship with HSBC for over 25 years. In September 2002, plaintiffs had an outstanding loan balance of over $6.8 million with HSBC ("the Loan"). Apparently because it was not making sufficient profits on Guam to satisfy its management in Hong Kong, HSBC decided to abandon its operations in Guam. HSBC subsequently began to place undue pressure on plaintiffs to pay off their Loan. On March 5, 2003 the parties entered into a Promissory Note Modification Agreement which extended the maturity date of the Note to August

31, 2003. (Exh. C to Complaint) On March 21, 2003, HSBC and plaintiffs entered into a workout agreement to pay off plaintiffs' Loan, where plaintiffs would either sell their properties or obtain alternate financing. (Exhs G and H to Complaint) Relying upon this workout agreement and HSBC's representations, plaintiffs took all necessary steps to either sell their properties or try to obtain alternate financing from March 2003 through August 2003. It came as a total surprise to plaintiffs to receive from HSBC, in July 2003, HSBC's notice of intent to sell their Loan. Yet even during July 2003, HSBC represented that so long as plaintiffs obtained alternate financing HSBC would try to stop sale of the Loan.

As evidence produced in discovery by HSBC and PMC shows, HSBC never intended to work out plaintiffs' Loan, as it sold plaintiffs' Loan to PMC on June 25, 2003. HSBC lied to plaintiffs about intending to perform on the workout agreement. HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the securing real properties and obtain alternate financing. And HSBC lied about its agreement to try to stop the sale of the Loan if plaintiffs obtained alternate financing.

Plaintiffs filed their Second Amended Complaint in this matter alleging six causes of action: breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of contract under the Promissory Note Modification Agreement; breach of contract under the workout agreement; breach of fiduciary duty; and violation of banking and confidentiality laws.

**PROCEDURAL HISTORY RELATING TO THIS MOTION**

Plaintiffs served their Third Set of Requests for Production of Documents on HSBC on March 8, 2004, more than three months ago. In response, HSBC served Objections and Responses

-2-

on April 2, 2004. HSBC failed to produce a single document in response to the Third Set of Requests for Production of Documents.

Plaintiffs filed a motion to compel responses, which was granted in part and denied in part on May 27, 2004. The Court directed that by June 4, 2004, HSBC was to produce and permit the plaintiffs to inspect and copy the documents as requested in Request Nos. 1 through 7 and Request Nos. 9 through 12. On June 3, 2004, HSBC filed a Motion to Stay Order Granting, In Part, Motion to Compel Pending Ruling by District Judge on HSBC's Objections; Request for Oral Argument, and other supporting pleadings. That motion was denied by Order dated June 7, 2004.

HSBC's motion to stay Order is one of several frivolous and meritless motions to delay discovery and the trial in this action. The other motions include:

- Motion to Stay all Depositions Pending Determination of HSBC's Motion to Dismiss (filed on March 31, 2004 and denied on April 9, 2004);
- Motion for an Order Certifying the Denial of HSBC's Motion to Strike Jury Demand for Immediate Appeal (filed on April 23, 2004 and denied on April 30, 2004);
- *Ex Parte* Application for Order Staying All Depositions Pending Determination of HSBC's Motion to Strike the First Amended Complaint in Whole or in Part, or in the Alternative, Motion to Dismiss the Third and Sixth Causes of Action & for Sanctions (filed on April 3, 2004 and denied on the same date);
- *Ex Parte* Application for Reconsideration of Order Denying Stay of all Depositions Pending Determination of HSBC's Motion to Strike the First Amended Complaint in Whole or in Part, or in the Alternative, Motion to Dismiss the Third and Sixth Causes of Action & for Sanctions (filed on May 4, 2004 and mooted by May 28, 2004 Order);
- Motion to Reconsider Order Denying HSBC's Motion for an Order Certifying the Denial of HSBC's Motion to Strike Jury Demand for Immediate Appeal (filed on May 4, 2004 and denied on May 26, 2004; and
- Motion to Vacate Scheduling Order and Continue Discovery and Trial Dates (filed on May 7, 2004).

As the Magistrate observed in denying HSBC"s motion to stay Order, "the trial date is fast approaching, yet HSB has repeatedly delayed the discovery process by filing numerous motions which either seek to stay discovery or which would have such an effect." Order of June 7, 2004 at 3.

## ARGUMENT

**I. VIRTUALLY ALL OF HSBC'S OBJECTIONS ARE MOOT, AS HSBC HAS PRODUCED MANY OF THE REQUESTED DOCUMENTS.[1]**

The Court's Order of June 7, 2004 required HSBC to produce certain documents in response to Requests 1-7 and 9-12 on or before June 4, 2004. HSBC's counsel Richard Pipes and Jacques Bronze appeared at the office of plaintiffs' counsel between June 4 and June 9, 2004 and produced close to 6,000 pages of documents pursuant to the Court's Order. These documents include responses to Requests 1 - 7 ("Fang Requests") from the HSBC office in Guam and responses to Requests 1- 12 (requests relating to limited loan information about other HSBC customers).

In his Declaration in support of HSBC's Application on Motion to Stay Order Granting, In Part, Motion to Compel Pending Ruling by District Judge on HSBC's Objections, Bronze conceded: "If HSBC complies with the Order on June 4 and produces the documents which are the subject of the objections, then the objections are rendered moot . . . " J. Bronze Decl. ¶ 4. Accordingly, by producing all of the documents in response to the Third Set of Requests and the Court's Order of June 7, 2004, HSBC's objections are moot. (The only remaining issue is the documents to be produced from other HSBC branches).

---

[1] Plaintiffs do not waive their right to obtain further documents or to file any further motions to compel compliance with the Court's Order of June 7, 2004, especially since it is already clear that many documents were not produced by HSBC. Plaintiffs' right to compel production of such documents are expressly reserved.

## II. THE PROPER STANDARD FOR DISCOVERY WAS PROPERLY CONSIDERED AND IMPLEMENTED BY THE MAGISTRATE JUDGE.

The Magistrate Judge properly considered both parties' claims regarding the standard to apply to plaintiffs' discovery requests, and, in agreement with HSBC, found that there are two tiers of discovery. See Order of May 27, 2004 at 4. The first is where parties may obtain discovery regarding any non-privileged matter that is relevant to the claim or defense of any party. Id. The second is where discovery is not relevant to a claim or defense, the court for good cause may order discovery of any matter relevant to the subject matter involved in the action. Id. Citing the Advisory Committee Notes for the 2000 Amendment, the Magistrate Judge observed that "the good cause standard warranting broader discovery is meant to be flexible." Id.

After analyzing the parties arguments and plaintiffs' document requests, the Magistrate Judge properly held that Requests 1 - 7 are directly relevant to plaintiffs' claims. Order at 5. The Magistrate Judge also properly held that Requests 9 - 12 are relevant to the subject matter in this action, as the requested information is relevant to HSBC's motives and intent and may tend to prove whether HSBC acted arbitrarily and capriciously in selling the Plaintiffs' Loan when it may have extended discounts or friendly foreclosures to other customers. Order at 8.

Contrary to HSBC"s argument, the amendment to Rule 26(b)(1) from "relevant to the subject matter" to "relevant to a claim or defense" is not a dramatic change and broad discovery remains the same under the new amendment. Thompson v. Dept. Housing and Urban Development, 199 F.R.D. 168 (Md. 2001); Sanyo Laser Products, Inc. v. Arista Records, Inc., 214 F.R.D. 496 (D.Ind. 2003). As one court observed:

> Lest litigants and the court become consumed with the philosophical exercise of debating the difference between discovery relevant to the

-5-

> "claims and defenses" as opposed to the "subject matter" of the pending action--the juridical equivalent to debating the number of angels that can dance on the head of a pin– . . .

Thompson, 199 F.R.D. at 173.

The amendments to Rule 26(b)(1) do not change the relevancy analysis in this case as the documents requested are relevant to the claims of plaintiffs, in addition to the subject matter of the pending litigation. Moreover, HSBC cites no authority for its hyperbolic assertions that the Magistrate Judge's finding of "good cause" went "beyond what was contemplated by Contress and decided by caselaw;" (HSBC's Objections at 3) or that such findings were "not the intent of the amendment to the Rule." Id. at 4. Instead, paradoxically, HSBC cites pre-2000 Amendment cases in support of its contention that the discovery standard has changed and is somehow different.

The Magistrate Judge correctly found that HSBC could not meet its burden, as the party resisting discovery, to establish that the document requests lack relevance. The Order of May 27, 2004 should be affirmed in its entirety.

## III. HSBC'S ATTEMPTS TO RE-ARGUE ITS MOTION TO DISMISS ARE IMPROPER AND SHOULD NOT BE CONSIDERED BY THE COURT.

On pages 6 to 8 of its Objections, HSBC reiterates its arguments in support of its motion to dismiss plaintiffs' causes of action for breach of the covenant of good faith and fair dealing. Objections at 6. These arguments should not be considered, as they were previously raised and rejected by the Court in its Order of April 9, 2004. They were also raised before the Magistrate Judge and disregarded in its entirety, as it was not a proper objection to plaintiffs' discovery requests. Order of May 27, 2004 at 6. But HSBC does not stop there - HSBC then argues that the caselaw previously cited in their motion to dismiss (and specifically rejected by Judge Unpingco) does not

support the Magistrate's Order requiring production of the documents! The Court should reject outright HSBC"s attempt to re-argue its motion to dismiss.

The Court's Order of April 9, 2004 clearly held that Guam recognizes a duty of good faith and fair dealing in a commercial lending case such as this one, citing <u>Ada's Inc. v. First Hawaiian Bank</u>, Civil Case No. CV0785-02, Decision and Order of July 7, 2003. In the <u>Ada's Inc.</u> case, the Superior Court had found breach of a duty of good faith and fair dealing where: (1) plaintiffs allege some act of dishonesty by the bank and (2) plaintiffs allege that the bank acted outside accepted commercial practices. Plaintiffs HSBC lied to plaintiffs about intending to perform on the workout agreement. HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the securing real properties and obtain alternate financing. And HSBC lied about its agreement to try to stop the sale of the Loan if plaintiffs obtained alternate financing. Even after HSBC entered into the agreement to sell plaintiffs' Loan to PMC, HSBC continued to lead Mr. Sadhwani to believe that he could pay off the Loan with HSBC. Plaintiffs have also alleged that the bank acted outside accepted commercial practices: HSBC's disclosure of confidential information to a third party; failure to assist plaintiffs' efforts to obtain alternate financing; and by selling the Sadhwani Loan to Paradise Marine Corporation, a third party that is not a bank or lending institution.

Paradise Marine Corporation's principal is Joseph K. Fang. From his deposition, plaintiffs have discovered that Fang is a former manager of HSBC, who worked there for 10 years. A. Arriola Decl. Fang worked at HSBC's Hong Kong office and is therefore an HSBC "insider." <u>Id.</u> In particular, he worked with Christopher Page, the HSBC representative who was a key figure in the negotiations of the sale of the Sadhwani Loan to Fang. <u>Id.</u> Several documents produced by HSBC in response to the "Fang Requests" demonstrate Fang's connections to HSBC, as well as his family's

-7-

Case 1:03-cv-00036   Document 181   Filed 06/21/2004   Page 7 of 11

wealth and influence. A. Arriola Decl., Exhs. A and B. Further, discovery has revealed that there were a series of events leading to the sale of the Sadhwani Loan that shows that Fang was given special treatment by the bank in his effort to purchase the Loan. A. Arriola Decl. The motive and intent of HSBC, as well as Fang's connections and position as an HSBC "insider", are therefore highly relevant to whether the sale was outside of accepted commercial practice and constituted a "sweetheart deal."

In addition, the Fang Requests are relevant in showing whether Fang or his family or businesses obtained any special benefit or consideration in purchasing the Loan. Again, in documents produced by HSBC in response to the Fang Requests, HSBC has previously provided certain benefits and facilities to Fang in exchange for other consideration. See Exhibit C to A. Arriola Decl. Accordingly, whether Fang or his family or businesses obtained any special benefit or consideration in purchasing the Loan is relevant in determining whether HSBC acted outside accepted commercial practices or breached its fiduciary duties to plaintiffs.

Finally, HSBC's counsel conceded that as long as the documents requested were relevant, discovery would still be necessary to determine whether Mr. Fang testified truthfully. Order of May 27, 2004 at 6. Thus, the documents are relevant to show whether Fang testified truthfully at his deposition about whether he purchased the plaintiffs' Loan in exchange for any benefit or consideration.

IV. **REQUESTS 9-12 ARE RELEVANT TO THE SUBJECT MATTER OF THIS CASE.**

The Magistrate Judge found that Requests 9 - 12 are "relevant to HSBC's motives and intent and may tend to prove whether HSBC acted arbitrarily and capriciously in selling Plaintiffs' loan when it may have extended discounts or friendly foreclosures to other customers." Order of May

-8-

27, 2004 at 8. From documents produced by HSBC in response to these requests, and from the deposition of Fred Granillo, Assistant Vice President of Credit Control (taken on June 15, 2004), it is clear that HSBC treated the Sadhwani Loan differently from its other customers' loans. See A. Arriola Decl. These documents are highly relevant to whether HSBC acted outside accepted commercial practices and whether it breached its fiduciary duties to plaintiffs, particularly by selling the loan to a third-party non-banking institution.

## IV. HSBC SHOULD BE REQUIRED TO PRODUCE ALL DOCUMENTS RELATING TO THE FANG REQUESTS.

HSBC objects to the document production due to the alleged burdens associated with production of the documents. Specifically, HSBC claimed that it would be required to inspect and copy 190 "bankers' boxes" consisting of 475,000 pages of documents. This was clearly a gross exaggeration. On 4 business days (from June 4 - June 9), Pipe and Bronze appeared at the the office of plaintiffs' counsel and reviewed several boxes and allowed inspection and copies of over 1,000 pages of documents. A. Arriola Decl. On June 14 and 15, they produced over 4,000 pages of documents. The hours spent in reviewing the documents and the numbers of documents produced are not unusual in a case of this type. The Magistrate Judge's Order clearly allowed HSBC sufficient time to produce the documents, as the inspection lasted "so long as is reasonably required."

HSBC concedes that it is a foreign corporation registered locally as a foreign banking corporation. HSBC filed a motion to remove this case from the Superior Court on the basis of diversity jurisdiction. Accordingly, HSBC should allow discovery of all documents in its "possession, custody or control," F.R.C.P. 34(a), that are responsive to the Fang Requests. It is no answer to suggest that because plaintiffs did not make requests using Mr. Fang's Cantonese name,

such documents would be excluded. Clearly, HSBC will have records and documents relating to Mr. Fang and his family and businesses whether in his Cantonese name or in his English name. HSBC should produce all documents from its branches and other retail outlets within the Asia Pacific region, including but not limited to Hong Kong.

With regard to branches of HSBC in the United States, it is not clear whether there is **no** affiliation between HSBC USA and HSBC Asia Pacific. Mr. Underwood's declaration does not rule out that there may be some affiliation between the two after all, why do they share the same name if there is no affiliation? Further, his declaration does not indicate whether HSBC Asia Pacific has any custody, possession or control over documents in the HSBC USA.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that this Court affirm the Magistrate Judge's Order of May 27, 2004 in its entirety and that the documents previously produced by HSBC not be returned.

Dated this 21st day of June, 2004.

ARRIOLA COWAN & ARRIOLA

By: _____
ANITA P. ARRIOLA
Counsel for Plaintiffs Alan Sadhwani, et al.

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on June 21, 2004, I caused to be served via hand delivery, a **PLAINTIFFS' RESPONSE TO DEFENDANT HSBC'S OBJECTIONS TO MAGISTRATE JUDGE ORDER COMPELLING PRODUCTION** to:

>Jacques G. Bronze, Esq.
>Bronze & Tang, P.C.
>2nd Floor, BankPacific Building
>825 S. Marine Drive
>Tamuning, Guam 96913

Dated this 21st day of June, 2004.

_____
**ANITA P. ARRIOLA**