**JOAQUIN C. ARRIOLA**
**ANITA P. ARRIOLA**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

Counsel for Plaintiffs Alan Sadhwani, et al.

FILED
DISTRICT COURT OF GUAM
JUL 14 2004
MARY L. M. MORAN
CLERK OF COURT

202

**IN THE UNITED STATES**
**DISTRICT COURT OF GUAM**

ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,

Plaintiffs,

vs.

HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,

Defendants.

CIVIL CASE NO. 03-00036

**DECLARATION OF ANITA P. ARRIOLA IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO MODIFY STIPULATED PROTECTIVE ORDER GOVERNING DISCOVERY; CERTIFICATE OF COUNSEL (L.R. 16(j)(1))**

ANITA P. ARRIOLA declares:

1. I am one of the attorneys for the plaintiffs Alan Sadhwani, et al. in the above-entitled case. I make this Declaration in support of Plaintiffs' Ex Parte Motion to Modify Stipulated Protective Order Governing Discovery. I have personal knowledge of the facts contained herein.

2. I represent Alan Sadhwani, Laju Sadhwani and K. Sadhwani's Inc., (the same plaintiffs in this litigation ), as plaintiffs in the Superior Court of Guam in an action entitled Alan Sadhwani et al., v. Paradise Marine Corporation, Civil Case No. CV0739-04, ("the Related Litigation"). The Related Litigation raises issues that are related to this litigation. In this case, HSBC has produced documents that are relevant to the claims and defenses and the subject matter

ORIGINAL

Case 1:03-cv-00036 Document 215 Filed 07/14/2004 Page 1 of 101

of the Related Litigation. The plaintiffs in this case seek a modification of the Stipulated Protective Order to allow them to use the information produced in this litigation in the Related Litigation. As required by the Stipulated Protective Order, plaintiffs in the Related Litigation will abide by the terms and conditions of the Stipulated Protective Order including filing with the Superior Court under seal, all documents designated as confidential by HSBC.

3. Plaintiffs requested that HSBC stipulate to a modification of the Stipulated Protective Order, but HSBC refused to do so. A true and correct copy of my letters of July 12 and 13, 2004 are attached hereto as Exhibits 1 and 2. HSBC's counsel failed to provide a response. Consequently, plaintiffs are forced to file a motion to modify the Stipulated Protective Order.

4. Plaintiffs filed a Verified Complaint against PMC on June 30, 2004, seeking a Temporary Restraining Order, Preliminary and Permanent Injunctions, Declaratory Relief and Damages against PMC. A true and correct copy of the Verified Complaint with Exhibits is attached hereto as Exhibit 3. Plaintiffs contend in the Related Litigation that PMC purchased the Sadhwani Loan in violation of the Business Loan Agreement executed between the Sadhwanis and HSBC. Specifically, the Business Loan Agreement expressly limits sale of the Sadhwani's Loan to "one or more participation interests" only. Plaintiffs further contend that the sale of their Loan to PMC was not a sale or transfer of "one or more participation interests."

6. Plaintiffs filed their Verified Complaint and a Ex Parte Motion for a Temporary Restraining Order against PMC on the grounds that PMC was attempting to collect rents from the Sadhwani tenants and foreclose on the property securing the Sadhwani Loan based on the Loan documents executed by the Sadhwanis and HSBC. A Temporary Restraining Order was granted by the Court on July 2, 2004. That Order enjoined and restrained PMC from collecting any rents from the Sadhwani tenants and taking any action to foreclose on the mortgaged properties. A true and correct copy of the form of the Temporary Restraining Order is attached hereto as Exhibit 4.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

7. At a hearing on July 12, 2004, Judge Maraman, by agreement of the parties, continued the Restraining Order in effect and set a briefing schedule for the parties. The briefing Order requires PMC to file a motion for summary judgment and a motion for a receiver by July 20, 2004. The Order requires plaintiffs to file their oppositions to the motion for summary judgment and motion for receiver on August 6, 2004, and a reply in support of their motion for preliminary injunction on August 11, 2004. A true and correct copy of the form of the Order is attached hereto as Exhibit 5. (The Court, per the Honorable Katherine Maraman, has not yet signed the Order due to her presiding over the *Gutierrez* criminal trial.)

8. The primary issue in the Related Litigation is the interpretation of the Business Loan Agreement executed by HSBC and plaintiffs. Plaintiffs contend that the Loan expressly restricts sale or transfer of the Sadhwani Loan as part of a participation loan and not otherwise. PMC contends that the Loan documents allow for transfer or assignment of the Loan without restriction. HSBC has produced documents in this litigation which are relevant to the interpretation of the Sadhwani-HSBC Business Loan Agreement. Those documents, which have been designated as Confidential Business Information by HSBC, are filed contemporaneously with this Declaration and under seal as Exhibits 6, 7 and 8. Plaintiffs seek to use these documents in the Related Litigation.

9. The documents that plaintiffs seek to use in the related litigation are documents contained in HSBC's Credit Policy Manual, Business Instruction Manual-Credit, and Volume III of the Business Instruction Manual. These documents were produced by HSBC in response to the Fourth Set of Requests for Production of Documents by plaintiffs. The documents are relevant to the issues in the Related Litigation in that they define "participation loans", a banking term that is used in the Business Loan Agreement executed between the Sadhwanis and HSBC. The documents are also relevant in that they discuss the drafting of certain loan documents and how HSBC drafts terms relating to the assignment or transfer of loan documents. All of these documents are relevant

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

to interpretation of the Business Loan Agreement that is at issue in the Related Litigation. There is a substantial degree of overlap in the facts, parties and issues between this litigation and the related litigation. This litigation is a lawsuit between the plaintiffs Sadhwani and HSBC based on HSBC's sale of the Loan to PMC. The related litigation involves the same plaintiffs Sadhwani against PMC as a result of the sale of the Sadhwani loan by HSBC to PMC.

10. As established by the foregoing, good cause exists for modification of the Stipulated Protective Order. Plaintiffs respectfully request that the Court modify the Stipulated Protective Order to allow use of the documents filed under seal in the Related Litigation and that such documents be subject to the same terms and conditions of the Protective Order when they are filed or used in the Related Litigation.

11. On July 14, 2004 I wrote to Jacques Bronze, counsel for HSBC, to inform him of the filing of this ex parte application. A true and correct copy of the letter is attached hereto as Exhibit 9. I received no response from him, consequently I assume that he opposes the motion and wishes to be present at a hearing on the motion.

I declare under penalty of perjury under the laws of the United States and the laws of Guam that the foregoing is true and correct.

Dated this 14th day of July, 2004.

[signature]

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on July 14, 2004, I caused to be served via hand delivery, a **DECLARATION OF ANITA P. ARRIOLA IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO MODIFY STIPULATED PROTECTIVE ORDER GOVERNING DISCOVERY; CERTIFICATE OF COUNSEL (L.R. 16(j)(1))** to:

**Jacques G. Bronze, Esq.**
**Bronze & Tang, P.C.**
**2nd Floor, BankPacific Building**
**825 S. Marine Drive**
**Tamuning, Guam 96913**

Dated this 14th day of July, 2004.

[signature]

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Law Offices

**Arriola, Cowan & Arriola**

Joaquin C. Arriola
Mark E. Cowan
Anita P. Arriola
Joaquin C. Arriola, Jr.
Jacqueline T. Terlaje

259 Martyr Street, Suite 201
C & A Building
Post Office Box X
Hagåtña, Guam 96910

Telephone:(671) 477-9730/3
Telecopier: (671) 477-9734
E-mail: acalaw@netpci.com

July 12, 2004

**VIA FACSIMILE: (671) 647-7671**

Jacques G. Bronze, Esq.
Bronze & Tang, P.C.
2nd Floor, BankPacific Building
825 S. Marine Drive
Tamuning, Guam 96913

**Re: Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al, District Court of Guam, Civil Case No. CV03-00036**

Dear Jacques:

As you know from your attendance at the Superior Court hearing today, the hearing on Paradise Marine Corporation's motion for summary judgment/plaintiffs' motion for preliminary injunction will be held on August 13, 2004.

I am writing to request your stipulation to my use of certain documents produced in the District Court case in the Superior Court case, pursuant to paragraph III.A. of the Stipulated Protective Order Governing Discovery. Specifically, I will use certain documents produced by HSBC and located in the Credit Policy Manual, the Department Instruction Book, and the Group Instruction Manual. As provided in the Stipulated Order, all documents will be used in compliance with the terms and conditions of the Protective Order; for example, any documents I use in the Superior Court case will be filed under seal and designated as confidential.

Please provide a response to me by July 13, 2004 at 12 noon if you will stipulate to the use of such documents, otherwise I will file an ex parte motion for an Order allowing such use of the evidence.

Very truly yours,

Anita P. Arriola

**ANITA P. ARRIOLA**

FAXED 7/12/04

Law Offices

# *Arriola, Cowan & Arriola*

Joaquin C. Arriola
Mark E. Cowan
Anita P. Arriola
Joaquin C. Arriola, Jr.

Jacqueline T. Terlaje

259 Martyr Street, Suite 201
C & A Building
Post Office Box X
Hagåtña, Guam 96910

Telephone:(671) 477-9730/3
Telecopier: (671) 477-9734
E-mail: acalaw@netpci.com

July 13, 2004

**VIA FACSIMILE: (671) 647-7671**

Jacques G. Bronze, Esq.
Bronze & Tang, P.C.
2nd Floor, BankPacific Building
825 S. Marine Drive
Tamuning, Guam 96913

**Re: Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al, District Court of Guam, Civil Case No. CV03-00036**

Dear Jacques:

This is a follow up to my letter of yesterday concerning the Stipulated Protective Order Governing Discovery. The specific documents that I wish to use in the Superior Court case against Paradise Marine Corporation are Bate-stamped numbers 003159, 003652, 003882-003889, 003891-003892, 003556 and 003572. Many of these pages have another page on the reverse side that were not numbered. Accordingly, the foregoing numbers include the reverse side of the page which were not Bate-stamped numbered.

With regard to plaintiffs' responses to HSBC's Second Set of Requests for Production of Documents, please be informed that we will provide the documents to you on Friday, July 16, 2004.

Very truly yours,

**ANITA P. ARRIOLA**

APA/ctt




JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Telecopier: (671-) 477-9734

Counsel for Plaintiffs Alan Sadhwani, Laju Sadhwani, and K. Sadhwani's Inc., a Guam corporation

IN THE SUPERIOR COURT OF GUAM

ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,

Plaintiffs,

vs.

PARADISE MARINE CORPORATION, a Guam Corporation,

Defendant.

CIVIL CASE NO. CV 0739-04

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INJUNCTIONS; DECLARATORY RELIEF; AND DAMAGES**

Plaintiffs complain of defendant as follows:

1. Jurisdiction is vested in this Court pursuant to Section 3105, Title 7, Guam Code Annotated, this being an action arising under the laws of Guam.

2. Plaintiffs Alan Sadhwani and Laju Sadhwani are husband and wife, and are residents of Guam. K. Sadhwani's Inc., is a Guam corporation authorized and licensed to do business in Guam.

3. Defendant Paradise Marine Corporation (PMC") is a Guam corporation, with its principal place of business in Guam, and doing business in Guam.

4. At all times material herein, plaintiffs have engaged in the business of acquiring real properties and developing them. They have also engaged in the business of leasing, renting real

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

RECEIVED
McCully and Beggs, P.C.
Date: 6/30/04 Time: 10:20am

properties, including offices and other commercial building, and selling electronics, fixtures and appliances.

5. Plaintiffs were customers of Hongkong and Shanghai Banking Corporation, Ltd. ("HSBC") for over 25 years, executing and delivering to the bank evidences of their indebtedness secured by mortgages and other security instruments, and depositing funds in the bank. Plaintiffs banked exclusively with HSBC (except for credit card deposits to Citibank). All of plaintiffs' deposits and borrowings, were with HSBC exclusively. Plaintiffs deposited about $ 100 million with HSBC over these past 25 years. At one time, plaintiffs' total obligation to HSBC was $12 million.

6. On December 29, 1997, K. Sadhwani's Inc. and HSBC executed a "Renewal and Amendment of Credit Facilities" ("Renewal"). A true and correct copy of the Renewal is attached hereto as Exhibit 1.

7. The parties memorialized the terms of the Renewal and Amendment of Credit Facilities by executing a Business Loan Agreement ("BLA") on December 31, 1997. A true and correct copy of the BLA is attached hereto as Exhibit 2. The BLA evidenced the loan given by HSBC to plaintiffs ("the Loan").

8. On the same day (December 31, 1997) that the BLA was executed, K. Sadhwani's Inc. also executed a Promissory Note ("the Note") in favor of HSBC. A true and correct copy of the Promissory Note is attached hereto as Exhibit 3.

9. On the same day (December 31, 1997), K. Sadhwani's Inc. also executed an Assignment of Rental Income. A true and correct copy of the Assignment of Rental Income is attached hereto as Exhibit 4.

10. On November 6, 2002, plaintiffs and HSBC executed an agreement entitled "Amendment to Credit Facility/Lease." A true and correct copy of the Amendment is attached hereto as Exhibit 5.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

11. On March 5,2003, plaintiffs and HSBC executed an agreement entitled "Promissory Note Modification Agreement." A true and correct copy of the Modification Agreement is attached hereto as Exhibit 6. The Modification Agreement extended the maturity date for the Note to August 31,2003.

12. On March 21, 2003, HSBC offered to plaintiffs a "Payoff Plan" containing three proposals to settle or work out the Loan: plaintiffs could sell the mortgaged properties; plaintiffs could execute deeds in lieu of foreclosure; or plaintiffs could refinance the Loan. A true and correct copy of the March 21, 2003 letter is attached hereto as Exhibit 7.

13. By letters dated April 3,2003 and April 4,2003, plaintiffs accepted HSBC' s first and third proposals. Pursuant to the on-going work out agreement with HSBC, plaintiffs sought the services of Century 21 to find buyers for the properties and Century 21 reported on its efforts to sell the properties. Mr. Sadhwani wrote to HSBC notifying it that he was trying to obtain financing to pay off the Loan, and his attempt to sell the properties to pay off the Loan. True and correct copies of the letters are attached hereto as Exhibits 8 and 9.

14. On June 26, 2003, without notice to plaintiffs, HSBC executed a Loan Purchase Agreement with PMC to sell the Loan to PMC. PMC engages primarily in the business of commercial fishing. The Loan was purportedly sold to PMC for $2.75 million, less than half the value of the Loan, which on that date was $6,457,044.56.

15. On July 18, 2003, plaintiffs received a document entitled "Notice of Intent to Sell Loan", dated July 15, 2003. A true and correct copy of the Notice is attached hereto as Exhibit 10. This Notice came as a total surprise to plaintiffs, since they had been fulfilling their obligations under the workout agreement of March 21, 2003 in order to settle their Loan.

16. On August 5, 2003, Mr. Sadhwani obtained terms and conditions for alternative financing from First Hawaiian Bank for $3.5 million and transmitted the First Hawaiian Bank letter to HSBC.

17. On August 11,2003, Mr. Underwood addressed a letter to Mr. Sadhwani stating: "I am pleased to inform you that on Monday, the 11th of August 2003 your loan was sold to Paradise Marine Corporation." A copy of such letter is attached hereto as Exhibit 11.

18. Plaintiffs are the owners in fee simple of certain real properties that were mortgaged to HSBC to secure the Loan. These parcels are prime properties on Guam. Several of the buildings are Guam landmarks, e.g., the Tick Tock Building in East Agana; the HSBC Building, Marine Drive, Tamuning; the Deloitte & Touche Building along Marine Drive, Tamuning; and Sateena Mall in Dededo, among others. At one time, these properties were worth much more than $12 million. At one time, these properties secured a Loan to the plaintiffs from HSBC in excess of $12 million. Many of these real properties are leased to commercial tenants and plaintiffs derive substantial rental income from them.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

19. On August 11,2003, HSBC purportedly assigned the mortgages to the real properties to PMC in connection with the purported sale of the Loan. A true and correct copy of the Assignment of Mortgages is attached hereto as Exhibit 12. In addition, HSBC purportedly assigned the Assignment .of Rental Income (Exh. 4) by an "Assignment of Loan Instruments", which is attached hereto as Exhibit 13. Also on August 11, 2003, HSBC executed an "Assignment of Rights to Receive Rental Income", which is attached hereto as Exhibit 14.

20. Plaintiff filed an action in Superior Court of Guam on October 21, 2003 against HSBC due to the sale of the Loan, alleging breach of good faith and fair dealing, breach of fiduciary duty, breach of contract and breach of the duty not to divulge confidential information.

21. Beginning on June 22, 2004, PMC wrote letters to Kim Chee Warehouse Grocers, Deloitte & Touche, LLP, Mic Mac, Uniform Masters Tailoring & Professional Alteration, OPS Bread & Cake, Imagine This Imagine That, Water & Ice Express, and Lin's Jewelry Co. (collectively "Sadhwani tenants") directing those tenants to pay their rent to PMC. True and correct copies of those letters are attached hereto as Exhibits 15-22.

22. On June 23, 2004, PMC, by its duly authorized representative Duncan McCully, executed a Notice of Exercise of Right to Collect Rent, which is attached hereto as Exhibit 23. The Notice was purportedly pursuant to the Assignment of Rights to Receive Rental Income (Exh. 14). PMC caused the Notice to be filed at the Department of Land Management on the same day.

23. Plaintiffs' attorney sent a letter to PMC' s counsel requesting that PMC withdraw the Notice of Exercise of Right to Collect Rent, withdraw the letters sent to the Sadhwani tenants, and cease sending any further letters. A true and correct copy of that letter (without enclosures) is attached hereto as Exhibit 24. PMC refused to do so and also informed plaintiffs of the filing of a Notice of Default and Election to Sell Under Mortgage by Power of Sale A true and correct copy of PMC's letter and attachments are attached hereto as Exhibit 25.

**FIRST CAUSE OF ACTION**

**TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS**

24. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 23 above as if fully set forth herein.

25. The BLA(Exh.2) executed December 31,1997 between HSBC and K. Sadhwani's, Inc. expressly restricted the ability of HSBC to sell or transfer the Sadhwani's loan. In particular, page 6 of the BLA provides in pertinent part as follows:

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

> ***Consent to Loan Participation***. Borrower agrees and consents to ***Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans*** to one or more purchasers, whether related or unrelated to Lender .. .

The parties clearly intended, and the banking industry usage confirms, that "participation" means a lead bank selling or transferring a portion of the loan to another bank or financial institution, not to a fishing company. The sale of the Loan to PMC does not constitute a sale "of one or more participation interests in the loan to one or more purchasers..." and accordingly, the sale of the Loan to PMC is in violation of the BLA.

26. 13 G.C.A. § 3119 (1) provides that "[a]s between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as apart of the same transaction ..." (Emphasis added) The BLA was "executed as a part of the same transaction" and executed on the same date as the Promissory Note. The BLA refers to and incorporates by reference therein, all notes executed by the Sadhwanis and includes "without limitation any and all commercial loans and financial accommodations" from HSBC to the Sadhwanis, "whether now or hereafter existing." (BLA at 1) The BLA modified the Promissory Note by explicitly restricting the sale or transfer of the Loan to one or more participation interests only, and not to a third-party purchaser such as PMC. Accordingly, PMC took the Promissory Note subject to the express limitation under the BLA that HSBC could only sell one or more participation interests in the Loan.

27. In addition, the "Assignment of Rights to Receive Rental Income" provides that "[a]***ll*** rights to the rents, receivables and monies shall be subject to the terms and conditions of the loans originally from Bank to K. Sadhwani's Inc." (Emphasis added) PMC's rights to the rents, receivables and monies are therefore "subject to the terms and conditions" of the BLA and the Promissory Note

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

(as modified by the BLA). Because the BLA allows for the sale of the Loan only as to participation interests, and not to a third-party such as PMC, PMC has no rights to the rents or to foreclose the mortgage.

28. PMC's "rights to the rents, receivables and monies" are also subject to the workout agreement between HSBC and the Sadhwanis. The workout agreement modified the loan instruments executed by HSBC and the Sadhwanis by providing that the Sadhwanis could obtain alternate financing or sell their properties in order to settle their loan. The workout agreement also implicitly extended the maturity date of the Note in order to allow the Sadhwanis a reasonable time to obtain alternate financing or to sell their properties.

29. Plaintiffs will suffer irreparable harm, damage and injury unless PMC's conduct described above is enjoined, as PMC's actions threaten to deprive plaintiffs of the rental income derived from the real properties and threaten to interfere with the contractual relations between plaintiffs and their tenants. PMC's election to sell under the mortgages will deprive plaintiffs of their valuable properties.

30. Plaintiffs have no adequate remedy at law or otherwise for the harm or damage done or to be done by PMC because plaintiffs will be unable to recover their rents and monies once those funds are paid over to PMC. Further, for each month that PMC collects rents from the Sadhwani tenants, plaintiffs will be forced to bring a multiplicity of actions to protect their rights. In addition, plaintiffs will have no adequate remedy at law if their properties are sold at a foreclosure sale.

31. As a result of PMC's acts, plaintiffs are entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

///

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF

32. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33. In view of PMC' s actual and threatened enforcement of its purported right to receive rents from the Sadhwani tenants, and to foreclose on the mortgages, and plaintiffs' contention that PMC has no such right, there is an actual controversy within the jurisdiction of this Court.

34. The Sadhwani tenants are in doubt as to whether plaintiffs or PMC is entitled to be paid the rents, and plaintiffs require a declaratory judgment declaring that plaintiffs, and not PMC, are entitled to receive the rents, income and receivables from the Sadhwani tenants. Plaintiffs also require a declaratory judgment that PMC has no rights under the Assignment of Mortgages.

## THIRD CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

35. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 34 above as if fully set forth herein.

36. Plaintiffs executed lease agreements with the Sadhwani tenants, wherein plaintiffs leased certain real properties to said tenants. Pursuant to the lease agreements, plaintiffs received rents from the Sadhwani tenants.

37. PMC's Notice of Exercise of Right to Collect Rent and its letters instructing the Sadhwani tenants to pay their rents to PMC instead of to plaintiffs, were all done with the intent to damage plaintiffs and to ruin plaintiffs' rental business and with the intent to enrich PMC. As a proximate result of PMC's actions, plaintiffs have been damaged in an amount to be proven at trial.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

WHEREFORE, plaintiffs pray as follows:

1. A temporary restraining order issue restraining PMC, its servants, employees, agents and representatives from collecting any rents, income or receivables from the Sadhwani tenants; or from exercising any rights under the Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997; Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003; Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003; and Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003;

2. A preliminary injunction issue enjoining PMC, its servants, employees, agents and representatives from collecting any rents, income or receivables from the Sadhwani tenants; or from exercising any rights under the Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997; Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003; Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003; and Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003;

3. On a final hearing, PMC, its servants, employees, agents and representatives be permanently enjoined from collecting any rents, income or receivables from the Sadhwani tenants; or from exercising any rights under the Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997; Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003; Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003; and Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003;

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

4. A declaratory judgment declaring the acts of PMC to be invalid and that PMC has no right to receive the rents, income or receivables from the Sadhwani tenants; or from exercising any rights under the Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997; Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003; Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003; and Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003;

5. The Court award damages to plaintiffs for intentional interference with contractual relations in an amount to be proven at trial;

6. For attorneys fees and costs of suit; and

7. For such further and other relief as may be proper.

Dated this 30th day of June, 2004.

**ARRIOLA, COWAN & ARRIOLA**
Attorney for Plaintiffs

By: [signature]
**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## VERIFICATION

GUAM )
) SS.:
CITY OF HAGATNA )

We, ALAN SADHWANI, LAJU SADHWANI and K. SADHWANI'S INC. being duly sworn, depose and state that we are the Plaintiffs in the above-entitled action and that we have read the foregoing Complaint and know the contents thereof. The same is true of our own knowledge except as to those matters which are therein alleged upon information and belief, and, as to those matters, we believe them to be true.

Dated: June 29, 2004.

**ALAN SADHWANI**

**LAJU SADHWANI**

**K. SADHWANI'S INC.**
**By and through its Duly Authorized Representative**

GUAM )
) SS.:
CITY OF HAGATNA )

Subscribed and sworn to before me by ALAN SADHWANI, LAJU SADHWANI and K. SADHWANI'S, INC. by and through its duly authorized representative on this 29th day of June, 2004.

**NOTARY PUBLIC**

AGNES M.S. M[illegible]
NOTARY PUBLIC
In and For Guam, U.S.A.
My Commission Expires: June 16, 2007
P.O. Box 170217 Inarajan, Guam 96917

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

| HSBC CORPORATE BANKING | | |
|---|---|---|
| RECEIVED BY / DATE: | [handwritten initials] | 31 Dec 97 |
| CRF COPY BY / DATE: | [handwritten initials] | 31 Dec 97 |
| I/E INITIAL / DATE: | [handwritten initials] | 06 Jan 98 |

# HongkongBank

Member HSBC Group
The Hongkong and Shanghai Banking Corporation Limited
436 So. Marine Drive, Tamuning, Guam 96911 U.S.A.

29 December 1997

Our Ref: GUM CBA 970995

**PRIVATE AND CONFIDENTIAL**
K. Sadhwani's Inc.
Sharp Plaza Building
136 C Kayen Chando
Sateena Mall
Dededo, Guam 96912

Attn: Mr. Alan Sadhwani, President

RE: **RENEWAL AND AMENDMENT OF CREDIT FACILITIES**

Dear Mr. Sadhwani:

With reference to our discussions we, The Hongkong and Shanghai Banking Corporation Limited (the "Bank"), are pleased to confirm our agreement to the amendment and renewal of the undermentioned credit facilities granted to K. Sadhwani's Inc. (the "Borrower"). These facilities are made available on the specific terms and conditions outlined herein and upon the satisfactory completion of the security detailed below. These facilities are subject to review at any time and in any event by 31 October 1998 and also subject to our overriding right of withdrawal and repayment on demand, including the right to call for cash cover for prospective and contingent liabilities.

| A. | FACILITY TYPE | OLD LIMITS | NEW LIMITS |
|---|---|---|---|
| 1. | Term Loan | NIL | USD6,500,000 |
| 2. | Term Loan | USD1,151,643 | USD 800,000 |
| 3. | Term Loan | NIL | USD 500,000 |
| 4. | Overdraft | NIL | USD 250,000 |
| 5. | Import Line: | | |
| | a) Letters of Credit (LC) of which | USD2,500,000 | USD1,500,000 |
| | b) Clean Import Loans (CIL) | USD1,500,000 | NIL |
| 6. | Standby Letters of Credit (Standby LC) | USD 330,000 | USD 225,000 |
| 7. | Term Loan | USD 386,000 | NIL |
| 8. | Term Loan | USD4,900,000 | NIL |
| | | USD9,267,643 | USD9,775,000 |

*Incorporated in Hong Kong with limited liability*
P.O. Box 27C, Agana, Guam 96932 • Telephone: (671) 646-3757-62 • Cables: Hongbank
Telex: 6309 • Fax: (671) 646-3767

*Please address all letters to The Manager*

EXHIBIT 1

B. **PURPOSE:**

1. To consolidate Term, Revolving and Clean Import Loans.
2. To term our past due Clean Import Loans.
3. To finance the purchase of a warehouse complex.
4. For working capital purposes.
5. To facilitate the importation of stock.
6. To issue Standby LCs in favor of suppliers/airlines.

C. **INTEREST RATES:**

1-4. 0.75% over the Bank's Base Lending Rate adjusted monthly.
5a. LC - 1/8 of 1.00% of LC amounts per month.
6. Standby LC - 1/8 of 1.00% of Standby LC amounts per month.

The Bank's Base Lending Rate means the base index rate established by the New York Office of the Bank from time to time in good faith in its discretion for general pricing of its short term loans to ordinary commercial borrowers. Such rates may be established and changed from time to time.

Interest on overdue payments, both principal and interest, will accrue at 5% over the above rate.

D. **REPAYMENT TERMS:**

1. USD83,225 per month inclusive of interest for 5 years with a balloon repayment due at the end of the 60th month. Repayments are based on a 10 year amortization.
2. USD25,535 per month inclusive of interest for 3 years.
3. USD6,402 per month inclusive of interest for 5 years with a balloon repayment due at the end of the 60th month. Repayments are based on a 10 year amortization.
4. Interest monthly, principal payable on demand. Interest charges will be automatically charged from the checking account.

5a. Due at sight.
6. Due upon claim in accordance with Standby L/C terms.

E. **OTHER CHARGES:**

A non-refundable renewal fee of USD5,000.00 is due upon acceptance of this letter.

F. **SECURITY:**

1. Consolidated first mortgage over the following properties for the full facility amount:
   a. Lot No. 2136-1-2,Tamuning, Guam (Dallas Lounge Building).
   b. Lot Nos. 2141-1-3NEW & 2141-1-1-R1 Tamuning, Guam (Sharp Plaza Building).
   c. Lot Nos. 2023-2-1-R1, 2025-4, & 2023-2-1-1 Tamuning, Guam (Tick Tock Building).
   d. Lot No. 7, Block 8, Tamuning, Guam (Perezville vacant land).
   e. Lot Nos. 10054-6, 10054-7, 10054-8, & 10054-R8, Dededo, Guam (Vacant Lot).
   f. Lot No. 2104-6NEW, Tamuning, Guam (HongkongBank Building).
   g. Lot No. 16 & 19, Block 10, Dededo, Guam (Sateena Shopping Mall).
   h. Lot Nos. 2136 #1-9-1, 2136 #1-8-1, & 2136 #1-7-1, Tamuning, Guam.
   I. New property to be acquired (Second Mortgage) Tamuning, Guam.
2. Consolidated Title Insurance policy over the above properties for the mortgaged amount showing the bank as beneficiary.
3. First leasehold mortgage for USD139,000 over Lot No. 006 H45 (the Saipan Tick Tock Building), Chalan Kanoa, Saipan.
4. Title Insurance Policy on security item no. 3 above for the mortgaged amount showing the Bank as beneficiary.
5. Hazard insurance policies on the improved properties listed above for not less than their replacement value showing the Bank as loss payee.
6. Assignment of rental income over the above properties.
7. Uniform Commercial Code First (UCC1) Financing Statement on all inventory, receivables, furniture, fixtures and equipment of the Borrower showing the Bank as senior lien holder.
8. Hazard insurance policy on the items covered by the UCC1 Financing Statement above in form and content satisfactory to the Bank showing the Bank as loss payee.
9. Joint and several personal guarantees of Ashok and Laju Sadhwani for the full facility amount.

G. **COVENANTS:**

1. The Borrower shall maintain Gearing and Debt-to-Equity ratios (defined in the Appendix to this document) of no greater than 3.50 and 4.0 respectively.
2. The Borrower will at all times retain an adjusted Tangible Net Worth (defined in the Appendix to this document) of no less than USD 2.3 million.
3. The Borrower will not enter into any additional financial commitments without the Bank's prior written consent.

4. The audited financial statements of the Borrower should be submitted to the Bank no later than four months after the end of its fiscal year. Interim financial statements should be submitted to the Bank on a semi-annual basis, no later than 60 days after the end of each half year.
5. A detailed inventory report to be submitted by the Borrower to the Bank on a half yearly basis by the 15th of the following month.

H. **OTHER TERMS AND CONDITIONS:**

1. This facility is subject to review at any time and, in any event, by 31 October 1998.
2. The net worth statement of Ashok and Laju Sadhwani shall be submitted to the Bank on request.
3. The Bank reserves the right to require updated property appraisals once every two years by an appraiser approved by the Bank. The cost of the appraisal shall be for your account and will be automatically debited to your account if no other arrangements are made.
4. All appraisal/processing/legal/recording/inspection fees, if any, shall be for the Borrower's account. Your account will be debited automatically for these charges.
5. In the event the Bank has not received evidence that a required insurance policy has been renewed at least 10 days prior to expiry, the Bank reserves the right to purchase the required insurance without reference to you. The cost of this insurance will be automatically debited to your account or added to the loan amount payable.
6. Sale proceeds from any mortgaged property sales are to be applied to outstanding loans.
7. The loan documents, including without limitation the Business Loan Agreement (or Credit Agreement, whichever applies), shall contain terms and conditions satisfactory to the Bank with respect to any items not specifically provided herein.

Notwithstanding the other terms mentioned above, we reserve our customary overriding right of repayment upon demand.

If the effect of any, or a change in any, law or regulation is to increase the cost to us of advancing, maintaining or funding this facility or to reduce the effective return to us, we reserve the right to require payment on demand of such amounts as we consider necessary to compensate us for any increased costs which continued to be incurred after the serving of 60 days notice.

Please arrange for the authorized signatories of your company, in accordance with the terms of the mandate given to the Bank, to sign and return to us the duplicate copy of this letter to signify your confirmation as to the correctness of the security held, and your continued understanding and

acceptance of the terms and conditions under which these facilities are granted.

These facilities will remain open for acceptance until the close of business on 31 December 1997 and if not accepted by that date will be deemed to have lapsed.

We are pleased to be of continued assistance.

Yours sincerely,

Stephen J. Grantham
Assistant Vice President - Corporate Banking

SJG\egv
enc.

## BORROWER'S ACKNOWLEDGMENT AND ACCEPTANCE:

On behalf of K. SADHWANI'S INC., I hereby accept the terms and conditions of this commitment letter.

By: Mr. Alan Sadhwani
Its: President
Date: 31DEC97

## GUARANTORS' ACKNOWLEDGMENT:

As guarantors, we hereby acknowledge the terms and conditions of this offer letter.

Mr. Alan Sadhwani
Date: 31DEC97

Mrs. Laju Sadhwani
Date: 31DEC97

## APPENDIX

"Adjusted Tangible Net Worth" as defined by the Bank, includes capital stock plus retained earnings and other reserves (including the hidden reserve accruing from the market value of fixed assets) less tangible assets.

"Gearing", as defined by the Bank, is total interest bearing debt divided by adjusted tangible net worth.

"Debt to Equity", as defined by the Bank, is total debts divided by adjusted tangible net worth.



# BUSINESS LOAN AGREEMENT

CONFIDENTIAL

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $9,775,000.00 | | | 001-100023 | | | 001-100023 | CR71 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** K. SADHWANI'S INC.
SHRAP PLAZA 136 C KAYEN CHANDO SATEENA MALL
DEDEDO, GU 96912

**Lender:** The Hongkong and Shanghai Banking Corporation, Limited
436 South Marine Drive
Tamuning, GU 96911

**THIS BUSINESS LOAN AGREEMENT between K. SADHWANI'S INC. ("Borrower") and The Hongkong and Shanghai Banking Corporation, Limited ("Lender") is made and executed on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans and other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. All such loans and financial accommodations, together with all future loans and financial accommodations from Lender to Borrower, are referred to in this Agreement individually as the "Loan" and collectively as the "Loans." Borrower understands and agrees that: (a) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements, as set forth in this Agreement; (b) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (c) all such Loans shall be and shall remain subject to the following terms and conditions of this Agreement.**

**TERM.** This Agreement shall be effective as of December 31 1997 and shall continue thereafter until all Indebtedness of Borrower to Lender has been performed in full and the parties terminate this Agreement in writing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means K. SADHWANI'S INC.. The word "Borrower" also includes, as applicable, all subsidiaries and affiliates of Borrower as provided below in the paragraph titled "Subsidiaries and Affiliates."

**CERCLA.** The word "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended.

**Cash Flow.** The words "Cash Flow" mean net income after taxes, and exclusive of extraordinary gains and income, plus depreciation and amortization.

**Collateral.** The word "Collateral" means and includes without limitation all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Debt.** The word "Debt" means all of Borrower's liabilities excluding Subordinated Debt.

**ERISA.** The word "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

**Event of Default.** The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "EVENTS OF DEFAULT."

**Grantor.** The word "Grantor" means and includes without limitation each and all of the persons or entities granting a Security Interest in any Collateral for the Indebtedness, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with any Indebtedness.

**Indebtedness.** The word "Indebtedness" means and includes any Documentary Credits (DCs)/Bills Receivable (BR) of which Trust Receipts (TR)/ Clean Import Loans (CILs).

**Lender.** The word "Lender" means The Hongkong and Shanghai Banking Corporation, Limited, its successors and assigns.

**Liquid Assets.** The words "Liquid Assets" mean Borrower's cash on hand plus Borrower's readily marketable securities.

**Loan.** The word "Loan" or "Loans" means and includes without limitation any and all commercial loans and financial accommodations from Lender to Borrower, whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means and includes without limitation Borrower's promissory note or notes, if any, evidencing Borrower's Loan obligations in favor of Lender, as well as any substitute, replacement or refinancing note or notes therefor.

**Permitted Liens.** The words "Permitted Liens" mean: (a) liens and security interests securing Indebtedness owed by Borrower to Lender; (b) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (c) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (d) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (e) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (f) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

EXHIBIT 2

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean and include without limitation any type of collateral security, whether in the form of a lien

charge, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**SARA.** The word "SARA" means the Superfund Amendments and Reauthorization Act of 1986 as now or hereafter amended.

**Subordinated Debt.** The words "Subordinated Debt" mean indebtedness and liabilities of Borrower which have been subordinated by written agreement to indebtedness owed by Borrower to Lender in form and substance acceptable to Lender.

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i.e., goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total Debt.

**Working Capital.** The words "Working Capital" mean Borrower's current assets, excluding prepaid expenses, less Borrower's current liabilities.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Loan Advance and each subsequent Loan Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender in form satisfactory to Lender the following documents for the Loan: (a) the Note, (b) Security Agreements granting to Lender security interests in the Collateral, (c) Financing Statements perfecting Lender's Security Interests; (d) evidence of insurance as required below; and (e) any other documents required under this Agreement or by Lender or its counsel, including without limitation any guaranties described below.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents, and such other authorizations and other documents and instruments as Lender or its counsel, in their sole discretion, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any advance a condition which would constitute an Event of Default under this Agreement.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of Loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation which is duly organized, validly existing, and in good standing under the laws of the Territory of Guam and is validly existing and in good standing in all states in which Borrower is doing business. Borrower has the full power and authority to own its properties and to transact the businesses in which it is presently engaged or presently proposes to engage. Borrower also is duly qualified as a foreign corporation and is in good standing in all states in which the failure to so qualify would have a material adverse effect on its businesses financial condition.

**Authorization.** The execution, delivery, and performance of this Agreement and all Related Documents by Borrower, to the extent to be executed, delivered or performed by Borrower, have been duly authorized by all necessary action by Borrower; do not require the consent or approval of any other person, regulatory authority or governmental body; and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Borrower or (b) any law, governmental regulation, court decree, or order applicable to Borrower.

**Financial Information.** Each financial statement of Borrower supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement required hereunder to be given by Borrower when delivered will constitute, legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used, or filed a financing statement under, any other name for at least the last five (5) years.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Agreement, shall have the same meanings as set forth in the "CERCLA," "SARA," the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (a) During the period of Borrower's ownership of the properties, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from any of the properties. (b) Borrower has no knowledge of, or reason to believe that there has been (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the properties by any prior owners or occupants of any of the properties, or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters. (c) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the properties shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from any of the properties; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation those laws, regulations and ordinances described above. Borrower authorizes Lender and its agents to enter upon the properties to make such inspections and tests as Lender may deem appropriate to determine compliance of the properties with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the p[illegible] of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence investigating the properties for hazardous waste and hazardous substances. Borrower hereby (a) releases and waives any future claims agains[illegible] Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Borrower's ownership or interest in the properties, whether or not the same was or should have been known to Borrower. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination or expiration of this Agreement and shall not be affected by Lender's acquisition of any interest

PMC 00623

in any of the properties, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all tax returns and reports of Borrower that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements directly or indirectly securing repayment of Borrower's Loan and Note and all of the Related Documents are binding upon Borrower as well as upon Borrower's successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**Commercial Purposes.** Borrower intends to use the Loan proceeds solely for business or commercial related purposes.

**Employee Benefit Plans.** Each employee benefit plan as to which Borrower may have any liability complies in all material respects with all applicable requirements of law and regulations, and (i) no Reportable Event nor Prohibited Transaction (as defined in ERISA) has occurred with respect to any such plan, (ii) Borrower has not withdrawn from any such plan or initiated steps to do so, (iii) no steps have been taken to terminate any such plan, and (iv) there are no unfunded liabilities other than those previously disclosed to Lender in writing.

**Location of Borrower's Offices and Records.** Borrower's place of business, or Borrower's Chief executive office, if Borrower has more than one place of business, is located at SHRAP PLAZA 136 C KAYEN CHANDO SATEENA MALL, DEDEDO, GU 96912. Unless Borrower has designated otherwise in writing this location is also the office or offices where Borrower keeps its records concerning the Collateral.

**Information.** All information heretofore or contemporaneously herewith furnished by Borrower to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Borrower to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

**Survival of Representations and Warranties.** Borrower understands and agrees that Lender, without independent investigation, is relying upon the above representations and warranties in extending Loan Advances to Borrower. Borrower further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, while this Agreement is in effect, Borrower will:

**Litigation.** Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with generally accepted accounting principles, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with, as soon as available, but in no event later than one hundred sixty (160) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, audited by a certified public accountant satisfactory to Lender, and, as soon as available, but in no event later than sixty (60) days after the end of each fiscal half–year, Borrower's balance sheet and profit and loss statement for the period ended, prepared and certified as correct to the best knowledge and belief by Borrower's chief financial officer or other officer or person acceptable to Lender. All financial reports required to be provided under this Agreement shall be prepared in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Tangible Net Worth.** Maintain a minimum Tangible Net Worth of not less than **$2,300,000.00.**

**Net Worth Ratio.** Maintain a ratio of Total Liabilities to Tangible Net Worth of less than **4.00 to 1.00.** Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies reasonably acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the properties insured; (e) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (f) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually) Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions spelled out in those guaranties.

PMC 00624



| Guarantors | Amounts |
|---|---|
| ASHOK H. SADHWANI | Unlimited |
| LAJU A. SADHWANI | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (a) the legality of the same shall be contested in good faith by appropriate proceedings, and (b) Borrower shall have established on its books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with generally accepted accounting practices. Borrower, upon demand of Lender, will furnish to Lender evidence of payment of the assessments, taxes, charges, levies, liens and claims and will authorize the appropriate governmental official to deliver to Lender at any time a written statement of any assessments, taxes, charges, levies, liens and claims against Borrower's properties, income, or profits.

**Performance.** Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in the Related Documents in a timely manner, and promptly notify Lender if Borrower learns of the occurrence of any event which constitutes an Event of Default under this Agreement or under any of the Related Documents.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner and in compliance with all applicable federal, state and municipal laws, ordinances, rules and regulations respecting its properties, charters, businesses and operations, including without limitation, compliance with the Americans With Disabilities Act and with all minimum funding standards and other requirements of ERISA and other laws applicable to Borrower's employee benefit plans.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificate.** Unless waived in writing by Lender, provide Lender at least annually and at the time of each disbursement of Loan proceeds with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of t date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with all environmental protection federal, state and local laws, statutes, regulations and ordinances; not cause or permit to exist, as a result of an intentional or unintentional action or omission on its part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except U.S. federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (a) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (b) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (c) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (a) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (b) except as allowed as a Permitted Lien, sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets, or (c) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (a) Engage in any business activities substantially different than those in which Borrower is presently engaged, (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, (c) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result fr the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrow may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of stock of Borrower, or (d) purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (a) Loan, invest in or advance money or assets, (b) purchase, create or acquire any interest in any other enterprise or entity, or (c) incur any obligation as surety or guarantor other than in the ordinary course of business.

CONFIDENTIAL

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (a) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (b) Borrower or any Guarantor becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (c) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; (d) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (e) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**BE IT FURTHER RESOLVED.** that the Corporation is hereby authorized to apply for and obtain from the Lender letters of credit and in connection therewith to execute such agreements, applications, guarantees, indemnities and other financial undertakings as the Lender may require, to apply to said Bank for letters of guaranty, bonds to produce bills of lading or bonds in lieu of production of original bills of lading, to make, execute and deliver to the Lender trust receipts and other (similar) security instruments or documents in such form and amounts and for such property as Lender may require, and to enter into and execute foreign exchange contracts with the Lender. BE IT FURTHER RESOLVED THAT THE AGGREGATE AT ANY ONE TIME OF LETTERS OF CREDIT AND ACCEPTANCES, TRUST RECEIPTS, FOREIGN EXCHANGE CONTRACTS ISSUED, IF ANY, PURSUANT TO THIS AUTHORITY, SHALL NOT EXCEED THE TOTAL COMBINED LIMITS AS PRESCRIBED IN THE LOAN AGREEMENT OR THE BANK'S COMMITMENT LETTER ISSUED FROM TIME TO TIME.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Default on Indebtedness.** Failure of Borrower to make any payment when due on the Loans.

**Other Defaults.** Failure of Borrower or any Grantor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of Borrower to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or any Grantor under this Agreement or the Related Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any Security Agreement to create a valid and perfected Security Interest) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower, any creditor of any Grantor against any collateral securing the Indebtedness, or by any governmental agency. This includes a garnishment, attachment, or levy on or of any of Borrower's deposit accounts with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor, as the case may be, as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding, and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and furnishes reserves or a surety bond for the creditor or forfeiture proceeding satisfactory to Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure the Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender, in good faith, deems itself insecure.

**Right to Cure.** If any default, other than a Default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (a) cures the default within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

PMC 00626

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

CONFIDENTIAL

**Applicable Law. This Agreement has been delivered to Lender and accepted by Lender in the Territory of Guam. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the Territory of Guam. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Agreement shall be governed by and construed in accordance with the laws of the Territory of Guam.**

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Multiple Parties; Corporate Authority.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loans and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure or insolvency of any holder of any interest in the Loans. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Costs and Expenses.** Borrower agrees to pay upon demand all of Lender's expenses, including without limitation attorneys' fees, incurred in connection with the preparation, execution, enforcement, modification and collection of this Agreement or in connection with the Loans made pursuant to this Agreement. Lender may pay someone else to help collect the Loans and to enforce this Agreement, and Borrower will pay that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also will pay any court costs, in addition to all other sums provided by law.

**Notices.** All notices required to be given under this Agreement shall be given in writing, may be sent by telefacsimile (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower, notice to any Borrower will constitute notice to all Borrowers. For notice purposes, Borrower will keep Lender informed at all times of Borrower's current address(es).

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used herein shall include all subsidiaries and affiliates of Borrower. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any subsidiary or affiliate of Borrower.

**Successors and Assigns.** All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure to the benefit of Lender, its successors and assigns. Borrower shall not, however, have the right to assign its rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival.** All warranties, representations, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

**Time Is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or of any Grantor as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of Lender.

PMC 00627

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT, AND BORROWER AGREES TO ITS TERMS. THIS AGREEMENT IS DATED AS OF 31 December 1999

BORROWER:

K. SADHWANI'S INC.

By: ______________________
ASHOK H. SADHWANI, PRESIDENT

LENDER:

The Hongkong and Shanghai Banking Corporation, Limited

By: ______________________
Authorized Officer

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.24 (c) 1997 CFI ProServices, Inc. All rights reserved. [GU-C40 KSI.LN C1.OVL]

PMC00628

"PAY TO THE ORDER OF PARADISE MARINE CORPORATION WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXCEPT AS PROVIDED IN THE AGREEMENT FOR PURCHASE AND SALE OF LOANS DATED ~~AUGUST~~ 25 June, 2003 BETWEEN THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED AND PARADISE MARINE CORPORATION."

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

BY: ______________________

TITLE: MANAGER GUAM

11th August 2003

PMC 00629

EXHIBIT 3

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $6,500,000.00 | | 12-24-2002 | 100023-362 | | | | CR71 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** K. SADHWANI'S INC.
SHARP PLAZA 136 C KAYEN CHANDO SATEENA MALL
DEDEDO, GU 96912

**Lender:** The Hongkong and Shanghai Banking Corporation, Limite
436 South Marine Drive
Tamuning, GU 96911

**Principal Amount: $6,500,000.00** **Initial Rate: 9.250%** **Date of Note:** 31 December 9

**PROMISE TO PAY.** K. SADHWANI'S INC. ("Borrower") promises to pay to The Hongkong and Shanghai Banking Corporation, Limit ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Five Hundred Thousand & 00/1 Dollars ($6,500,000.00), together with interest on the unpaid principal balance from December 31, 1997, until paid in full. The interest rate w not increase above 24.000%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan on demand, or if no demand made, in 59 regular payments of $83,225.00 each and one irregular last payment estimated at $4,096,148.70. Borrower's first payment is d January 24, 1998, and all subsequent payments are due on the same day of each month after that. Borrower's final payment due December 2 2002, will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The annual interest rate for this No is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding princip balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrue unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index whic is the RATE ESTABLISHED BY THE NEW YORK OFFICE OF THE LENDER (the "Index"). The Index is not necessarily the lowest rate charged b Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrowe Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates a well. The interest rate change will not occur more often than each MONTH. **The Index currently is 8.500% per annum. The interest rate to b applied to the unpaid principal balance of this Note will be at a rate of 0.750 percentage points over the Index, adjusted if necessary for th minimum and maximum rate limitations described below, resulting in an initial rate of 9.250% per annum. Notwithstanding any other provisio of this Note, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates.** NOTIC Under no circumstances will the interest rate on this Note be less than 4.000% per annum or more than (except for any higher default rate show below) the lesser of 24.000% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at i option, may do one or more of the following: (a) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity dat (b) increase Borrower's payments to cover accruing interest, (c) increase the number of Borrower's payments, and (d) continue Borrower's paymen at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, they will reduce th principal balance due and may result in Borrower making fewer payments.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks an promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or conditio contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Borrower defaults unde any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person tha may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of th Related Documents. (d) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in an material respect either now or at the time made or furnished. (e) Borrower becomes insolvent, a receiver is appointed for any part of Borrower' property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower unde any bankruptcy or insolvency laws. (f) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. Thi includes a garnishment of any of Borrower's accounts with Lender. (g) Any guarantor dies or any of the other events described in this default sectio occurs with respect to any guarantor of this Note. (h) A material adverse change occurs in Borrower's financial condition, or Lender believes th prospect of payment or performance of the Indebtedness is impaired. (i) Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediatel due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, i permitted under applicable law, increase the variable interest rate on this Note to ~~3.000~~ 5.000 percentage points over the Index. The interest rate will no exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's lega expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify o vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrowe also will pay any court costs, in addition to all other sums provided by law. **This Note has been delivered to Lender and accepted by Lender in the Territory of Guam. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the Territory o Guam. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender o Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Territory of Guam.**

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check o preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some othe account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding howeve all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

# PROMISSORY NOTE
(Continued)

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. In particular, this section means (among other things) that Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the Territory of Guam (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

**BORROWER:**

**K. SADHWANI'S INC.**

**By:** ______________________________
ASHOK H. SADHWANI, PRESIDENT

**LENDER:**

**The Hongkong and Shanghai Banking Corporation, Limited**

**By:** ______________________________
**Authorized Officer**

Variable Rate. Balloon. LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.24 (c) 1997 CFI ProServices, Inc. All rights reserved. [GU-D20 KSI2.LN C3.OVL]

"PAY TO THE ORDER OF PARADISE MARINE CORPORATION WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXCEPT AS PROVIDED IN THE AGREEMENT FOR PURCHASE AND SALE OF LOANS DATED ~~AUGUST~~ 25th June, 2003 BETWEEN THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED AND PARADISE MARINE CORPORATION."

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

BY: ______________________________
TITLE: MANAGER GUAM

11th August 2003

Doc #15 /

Recording requested by THE HONGKONG AND SHANGHAI BANKING CORPORATION, LTD. After recordation, deliver copies to: The Hongkong and Shanghai Banking Corporation, Ltd., 436 So. Marine Drive, Tamuning, Agana, Guam 96911. The real property affected by this instrument is registered land, and the numbers of the certificates of last registration being Numbers 74211, 5964, 34224, 66111, 18963, 14469, 54417, 7561, 83147, 83148, 83149, 83150, 104288, 20135, and 34880.

TERRITORY OF GUAM, DEPARTMENT OF LAND MANAGEMENT
OFFICE OF THE RECORDER
INSTRUMENT NUMBER 575583
This instrument was filed for record on 8 Day of JAN 1998, at 12:37 P.M
and duly recorded in Book ______ at Page ______ Recording Fee ______ Voucher No. ______

Deputy Recorder

(Space Above This Line for Recorder's Use Only)

ASSIGNMENT OF RENTAL INCOME

KNOW ALL MEN BY THESE PRESENTS that K. SADHWANI'S, INC. ("Assignor" or "Borrower"), whose address is 136 C Kayen Chando, Sateena Mall, Dededo, Guam 96912, for valuable consideration, the receipt of which is hereby acknowledged, do hereby assign, transfer and convey to THE HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a foreign corporation authorized to transact business in the Territory of Guam, (the "Bank"), whose address is 436 So. Marine Drive, Tamuning, Guam, 96911, its successors and assigns, all of the right, title and interest of Assignor in and to all rental income, lease income, rental payments, profits, monies, issues and right to payment which

EXHIBIT 4

now and which may hereafter become due under any and all existing or future leases, subleases, rental agreements, use agreements or occupancy agreements (collectively referred to as the "Leases") whereby Assignor assigns, lets, leases, rents or allows occupancy of the following-described property or any portion thereof or any improvement thereon or any space or facilities within any structure or improvement located thereon; said property being described as follows:

1. LOT NUMBER 2104-6NEW, (Consolidation of Lot 2104-9-R1 & 2104-6), MUNICIPALITY OF TAMUNING, (formerly of Dededo), TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on Drawing number L-1096, as LM Check Number 032 FY 91, as described in that Consolidation Survey of L2104-6NEW, dated November 30, 1990 and recorded December 6, 1990, in the Department of Land Management, Government of Guam, under Document Number 445994, containing an area of 3,195.96 +/- square meters or 34,401 +/- square feet. Last Certificate of Title Number being 8949 (Basic Lot 2104-6; Est.#9594) in the name of Antonia C. Quitugua, and 66111 (Basic Lot 2104-9-R1; Est#56972) issued in the name of Vicente Laguana Iriarte.

2. LOT NUMBERS 2023-2-1-1 & 2023-2-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 60525, SUBURBAN, as said lots are marked and designated on Drawing Number 083-01, as L.M. Check Number 164 FY 83, as described in that Parceling Survey of Basic Lot 2023-2-1, dated May 6, 1983 and recorded May 19, 1983 in the Department of Land Management, Government of Guam, under Document Number 338024. Containing an area of approximately 412 ± square meters as to Lot Number 2023-2-1-1 and 653 ± square meters as to Lot Number 2023-2-1-R1. Said property is registered property and the Last Certificate of Title Number being 74211 as to Lot Number 2023-2-1-1 and 5964 as to Lot Number 2053-2-1-R1.

LOT NUMBER 2025-4 (SUBDIVISION OF LOT NUMBER 2025), MUNICIPALITY OF TAMUNING, formerly of Dededo, ESTATE

NUMBER 67, SUBURBAN, as said lot is described in Sketch 94, and recorded on April 5, 1956 in the Department of Land Management, Government of Guam, under Document Number 30954. Containing an area of approximately 484.77 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34224.

Lot Numbers 2025-4, 2023-2-1-1 and 2023-2-1-R1 have been consolidated and redesignated as follows:

LOT NUMBER 2025-4NEW, (Consolidation of Lot No. 2023-2-1-1, 2023-2-1-R1, 2025-4 and adjoining old trail), MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER L-874, as L.M. CHECK NUMBER 139 FY 86, as described in that Consolidation Survey and Land Registration, dated April 4, 1986 and recorded April 7, 1986 at the Department of Land Management, Government of Guam under Document No. 370138. Containing an area of 1,673.43 +/- square meters of 18,013+/- square feet. Last certificate of title numbers being 34224 (Basic Lot 2025-4, Est#67) issued in the name of Gee Dee Enterprises, Inc., 74211 (Basic Lot 2023-2-1-1, Est#60505) issued in the name of K. Sadhwani's Inc., and 5967 (Basic Lot 2023-2-1/2023-2-1-R1) issued in the name of Luis Palomo Perez.

3. LOT NUMBER 2104-9-R1, (SUBDIVISION OF LOT NUMBER 2104-9), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBER 56972, SUBURBAN, as said lot is marked and designated on Drawing Number JAA-789-15, as L.M. Check Number 403 FY 79, as recorded September 18, 1979 in the Department of Land Management, Government of Guam under Document Number 306029. Containing an area of approximately 2,279 ± square meters. Said property is registered property and the Last Certificate of Title Number being 66111.

4. LOT NUMBER 2136#1-2 (SUBDIVISION OF LOT NUMBER 2136#1), MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, SUBURBAN, ESTATE NUMBER 11485, as said lot is marked and designated on Drawing Number ISL10-65D391, as described in that Subdivision of Lot Number 2136#1 situated in Tamuning, Dededo, Land Sq. 13, Section 4 dated November 19, 1965 and recorded May 11, 1966 in the Department of Land Management, Government of Guam, under Document Number 75987. Containing an area of approximately 906.04 ± square meters.

Said property is registered property and the Last Certificate of Title Number being 18963, issued in the name of Barbara Perez Sarmiento.

5. LOT NUMBER 7, BLOCK NUMBER 8, (SUBDIVISION OF LOT NUMBER 5173), PEREZVILLE SUBDIVISION, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 11246, SUBURBAN, as said lot is marked and designated on Drawing Number FSP-15, recorded January 26, 1961 in the Department of Land Management, Government of Guam under Document Number 40322. Containing an area of approximately 1,320 ± square meters. Said property is registered property and the Last Certificate of Title Number being 14469 issued in the names of Frank D. Perez and Carmen D. Perez.

NOT IN Matrix Released

6. LOT NUMBER 2141-1-3NEW, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 9783, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, as L.M. Check Number 191 FY 68, as described in that Consolidation and Parceling Lot 2141-1, dated December 5, 1967 and recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1254.36 ± square meters. Said property is registered property and the Last Certificate of Title Number being 54417, issued in the name of Footstep Incorporated..

7. LOT NUMBER 2141-1-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 6681, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1,227.25 ± square meters. Said property is registered property and the Last Certificate of Title Number being 54418, issued in the name of Footstep Incorporated.

8. LOT NUMBERS 10054-6, 10054-7, 10054-8, and 10054-R8, (SUBDIVISION OF LOT NUMBER 10054-5), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBERS 22790, 22791, 22793, and 22792, SUBURBAN, as said lots are marked and designated on Drawing Number SDC130373, as L.M. Check Number 605 FY 73, as described in that

Agricultural Subdivision of Lot 10054-R3, dated April 12, 1973 and recorded August 3, 1973 under Document Number 226809. Containing an area of approximately 12,318 ± square meters as to Lot Number 10054-6; 20,590 ± square meters as to Lot Number 10054-7; 8,272 square meters as to Lot Number 10054-8 and 10,320 ± square meters as to Lot Number 10054-R8. Said property is registered property and the Last Certificate of Title Number being 83147 as to Lot Number 10054-6; 83148 as to Lot Number 10054-7; 83149 as to Lot Number 10054-8 and 83150 as to Lot Number 10054-R8, all issued in the name of Dynasty Development Corporation.

9. Lease of the below described real property from Calvo Finance Corporation, a Guam corporation, as landlord to Jones and Guerrero Company, Inc., which lease is dated March 22, 1972, recorded August 25, 1972, in the Department of Land Management, Government of Guam, under Document Number 115460, as assigned to Calvo Enterprises, Inc., by that Warranty Deed with Assumption of Mortgage and Assignment of Lease dated May 12, 1983, and recorded May 31, 1983, as Document Number 338246, having been assigned to K. Sadhwani's Inc., as lessee by an Assignment Agreement dated June 24, 1987, a Notice of Assignment having been recorded July 1, 1987, as Instrument Number 387003.

Said lease being of Lot Numbers 16 and 19, Block Number 10, Tract Number 100C, Dededo, South Acre Agriculture Subdivision, located in the Municipality of Dededo, Territory of Guam, each containing an area of 1 acre ±.

Which lots have been consolidated and designated as follows:

LOT NUMBER 2, TRACT NUMBER 217 (formerly known as Lot No. T100C, B10, L16 & 19), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER RRV87-16BBA, as L.M. CHECK NUMBER 273 FY 87, as described in that Retracement Survey Map, dated July 2, 1987 and recorded July 6, 1987, at the Department of Land Management, Government of Guam, under Instrument Number 387109, containing an area of 8,094 +/- square meters. Last certificate of title number being 11208 issued in the name of Government of Guam.

10. That Lease Agreement by and between Josephina P. Castro, Landlord, and Remedios M. Domingo, Tenant, dated November 24, 1976 and recorded

March 18, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 277783, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, dated February 14, 1979 and recorded on May 14, 1979 under Document Number 302289, as further assigned by that Assignment of Lease to K. Sadhwani's Inc. and recorded March 14, 1988 as Document Number 395651;

Which lease is of Lot Number 2136#1-9-1, Estate Number 8949, Suburban, Tamuning, Municipality of Dededo, Territory of Guam, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam, on May 11, 1966 under Document Number 75987. Containing an area of approximately 990.86 ± square meters. Said property is registered property and the Last Certificate of Title Number being 104288, issued in the names of Josephine C. Parenteau, Angelica C. Leon Guerrero, H.O. June C. Bermudez, namely Angel N. Bermudez-Castro, Rony C. Bermudez and Michael C. Bermudez.

11. That Lease Agreement by and between Beatrice S.N. Perez, Landlord, and Remedios M. Domingo, Tenant, dated October 16, 1976 and recorded November 15, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 273543, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, recorded in the Department of Land Management under Document Number 307561; as further assigned by that Assignment of Lease to K. Sadhwani's Inc. dated March 1, 1988 and recorded March 14, 1988 as Document Number 395652;

Which lease is of:

LOT NUMBER 2136#1-8-1, ESTATE NUMBER 9754, SUBURBAN, TAMUNING, MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 988.98 ± square meters. Said property is registered property and the Last Certificate of Title Number being 20135.

CONSOLIDATED into lot 2136-1-8-

LOT NUMBER 2136#1-7, ESTATE NUMBER 22014, SUBURBAN, TAMUNING, MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 906.98 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34880.

Lot Numbers 2136#1-7 and 2136#1-8 have been consolidated and designated as follows:

LOT NUMBER 2136#1-8-1NEW, (Parceling Lot 2136#1-7 and 2136#1-8 and Consolidation of Lot 2136#1-7-1 and 2136#1-8-1 into 2136#1-8-1NEW), MUNICIPALITY OF TAMUNING, GUAM, ESTATE NUMBER 65417, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER CC-8902D, L.M. CHECK NUMBER 138 FY 89, as dated August 14, 1989 and recorded August 14, 1989 under Document Number 421351. Containing an area of 622.73 +/- square meters, last certificate of title number being 86608, issued in the name of Beatrice S.N. Perez.

Bank shall have the right and exclusive power (acting as agent for Assignor or acting on its own behalf) to take possession of and to collect all rents, issues and profits arising from the foregoing-described premises (whether under the Leases or otherwise) and apply such rents, issues and profits at the option of Bank to the payment of all obligations secured hereby, insurance, taxes, costs of maintenance and operation, repairs and other expenses similar to the foregoing-described property to pay and deliver all such rents, issues and profits to Bank hereby granting and releasing to Bank all right to retain possession and to collect such rents, incomes and profits. Bank shall be liable to account only for such rents, issues and profits as it actually receives.

Provided, however, that without waiver of any of the rights and security interests given to Bank hereunder Assignor may, subject to the continued consent of Bank, collect the rental income and Lease income assigned hereunder. Provided further, the Bank may, at its sole option, at any time and from time to time, whether or not Assignor is in default in any of its obligations to Bank, and without regard to the adequacy of security for the indebtedness hereby secured, terminate such collection of rental income and lease income by Assignor, and thereupon the Bank, either in person or by agent with or without bringing any action or proceeding in the Bank's own name directly collect and receive all rents, issues and profits from the subject property and from the Leases, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including without limitation taxes, insurance, maintenance costs and reasonable attorneys' fees, upon any indebtedness secured hereby in such order as the Bank may determine.

Assignor hereby delegates to Bank, without limitation, the following specific powers: The exclusive right to collect rents, issues and profits from the subject property and to demand, receive and enforce payment thereof; to bring, prosecute and settle in the name of Assignor or in the name of Bank, summary proceedings or actions at law for the recovery of rents, issues and profits due; to give receipts, releases and satisfactions; and, at the sole option of the Bank after any default hereunder, to take physical possession of the leased premises to the extent the Bank deems possession necessary or convenient to protect or preserve the Bank's security and to protect or preserve the premises; and to take in its own name or in the name of Assignor any and all other steps which the Bank, in its sole discretion, may deem

necessary for the collection of any rents, issues and profits due and/or for the protection of the Leases and any rental agreements. Assignor hereby constitutes and appoints Bank as Assignor's true and lawful attorney-in-fact for the purpose of collecting such rents, issues and profits and taking such other actions as are herein authorized, and it is understood that this power of attorney is coupled with an interest and is irrevocable for the period of this Assignment.

1. This Assignment is made to secure:

(a) Payment of loans from Bank to Borrower in a principal sum outstanding not to exceed NINE MILLION SEVEN HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($9,775,000.00) and interest thereon according to the terms of any notes, letter of credit agreement, or other credit agreements now existing or executed by Borrower from time to time including those evidencing advances under revolving lines of credit extended to Borrower by Bank, including all future advances; and

(b) Performance of each and every agreement of Assignor contained herein and in the notes and letter of credit agreements and other credit agreements executed by Borrower from time to time.

2. The Assignor shall fulfill or perform each and every condition and covenant of the Leases by Lessor to be fulfilled or performed; give prompt notice to the Assignee of any notice of default by the Assignor under the Leases received by the Assignor together with a complete copy of any such notice; at the sole cost and expense of the Assignor, enforce, short of termination of the Leases, the performance or observance of each and

every covenant and condition of the Leases by the lessee to be performed or observed; not modify nor in any way alter the terms of the Leases; not terminate the term of the Leases nor accept a surrender thereof unless required to do so by the terms of the Leases; not anticipate the rents thereunder for more than thirty (30) days prior to the date upon which such rents are due under the Leases; and not waive nor release the lessee from any obligations or conditions by the lessee to be performed.

3. At the Assignor's sole cost and expense, the Assignor shall appear in and defend any action growing out of or in any manner connected with the Leases or the obligations or liabilities of Assignor.

4: Should the Assignor fail to do any act as herein provided, then the Bank, but without obligation so to do and without notice to or demand on the Assignor and without releasing the Assignor from any obligation herein, may make or do the same, including specifically, without limiting its general powers, appearing in and defending any action purporting to affect the security hereof or the rights or powers of the Bank and performing any obligation of the lessor in the Leases contained, and in exercising any such powers paying necessary costs and expenses, employing counsel and incurring and paying reasonable attorneys' fees; and the Assignor shall pay immediately upon demand all sums expended by the Bank under the authority hereof, together with interest thereon at eighteen percent (18%) per annum, and the same shall be secured hereby.

5. The whole of all indebtedness secured hereby shall become due (a) upon the election by the Bank to accelerate the maturity of the indebtedness pursuant to the

provisions of the note or notes secured hereby, or any instrument which may be held by the Bank as security for the indebtedness, or (b) at the option of the Bank, after any default by the Assignor hereunder.

6. In addition to any other rights given to the Bank hereunder to collect rents and profits, upon and at any time after any default by the Assignor in the payment of any indebtedness secured hereby or in the performance of any obligation of the Assignor herein or in any other instrument securing said indebtedness, the Bank, at its option, without notice, and without regard to the adequacy of security for the indebtedness hereby secured, either in person or by agent with or without bringing any action or proceeding, or by a receiver to be appointed by a court, may: enter upon, take possession of, and operate the subject property; make, enforce, modify, and accept the surrender of Leases; obtain and evict tenants; fix or modify rents; take any and all actions which an assignee of the Leases would be entitled to take; and do any acts which the Bank deems proper to protect the security hereof and/or the subject property and/or the Leases until all indebtedness secured hereby is paid in full. Without limitation the Bank, either with or without taking possession of the subject property, in its own name, sue for or otherwise collect and receive all rents, issues and profits from the subject property and from the Leases, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby in such order as the Bank may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default of Assignor.

7. Assignor warrants as follows:

(a) The Assignor has not executed any prior assignment of any of its rights under the Leases to any person other than Bank;

(b) The Assignor has not done anything which might prevent the Bank from or limit the Bank in operating under any of the provisions hereof;

(c) So far as the Assignor knows, there is no present default by the lessee under any presently existing Leases; and

(d) Any presently existing Leases are in full force and effect, and are unmodified.

8. The Bank shall not be obligated to perform or discharge any obligation under the Leases, or under or by reason of this Assignment, and the Assignor hereby agrees to indemnify the Bank against and hold it harmless from any and all liability, loss, or damage which it may or might incur under the Leases or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms of the Leases; should the Bank incur any such liability, loss, or damage under the Leases or under or by reason of this Assignment, or in defense against any such claims or demands, the amount thereof, including costs, expenses, and reasonable attorneys' fees, together with interest thereon at eighteen percent (18%) per annum, shall be secured hereby and the Assignor shall reimburse the Bank therefor immediately upon demand.

9. All rights and remedies given to Bank hereunder shall be cumulative and shall be in addition to any and all rights given to Bank by law or under any security agreement, mortgage, credit agreement or loan agreement. The right given to Bank hereunder to collect the rents, issues and profits from the above-entitled property and from the Leases may be exercised concurrently with or independently of any other right or remedy afforded by law, by any other security agreement or mortgage or any other document or agreement given by Assignor to Bank. The Bank may exercise its rights to collect rents, issues and profits hereunder whether or not Assignor is in default in any of Assignor's obligations to Bank. The powers given to Bank hereunder may be exercised by Bank at its sole option and each of the powers delegated herein shall be considered separate and distinct for all purposes. The Bank may exercise all or any of said powers and by exercising only some or a portion of the powers given herein the Bank shall not be bound to exercise any of the other or remaining powers given hereby. An exercise of only a portion of the powers given herein shall not constitute a waiver of the Bank's rights to exercise any additional powers, nor shall a delay in exercising or a failure to exercise any specific power constitute a waiver thereof. The Bank shall not be liable for its failure to exercise any powers provided for herein, including the collection of rent.

10. The Bank may at any time and from time to time give notice of this Assignment to any tenant or lessee under any of the Leases or to any occupant of the premises. Concurrently with the execution of this Assignment, Assignor has executed and delivered to the Bank a mortgage on the real property described in this Assignment. Said

mortgage contains, among other provisions, an assignment of rents provision. The assignment of rents provision contained in the mortgage is and for all purposes shall remain separate and severable from this Assignment and the Bank may exercise any and all rights given to it hereunder whether or not the Bank would be entitled to exercise any rights under the assignment of rents contained in the mortgage.

11. This Assignment shall be binding upon the successors and assigns of the parties hereto. The Bank may give notice of this Assignment at any time and from time to time to any person in its sole discretion.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed this 31st day of Dec, 1997.

ASSIGNOR:

K. SADHWANI'S INC.

By: [signature]
ASHOK SADHWANI
Its PRESIDENT

TERRITORY OF GUAM

Municipality of Tamuning

On this 31st day of December, 1997 before me, a notary public in and for the Territory of Guam, personally appeared Ashok Sadhwani, known to me to be the person whose name is subscribed to the foregoing ASSIGNMENT OF RENTAL INCOME, and acknowledged to me that he signed it voluntarily for its stated purpose as President of K. SADHWANI'S INC., a corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

)SEAL(

Ann B. Manibusan

ANN B. MANIBUSAN
NOTARY PUBLIC
In and for the Territory of Guam
My commission expires August 13, 2001
P.O. Box 20804
GMF, GUAM 96921

EXHIBIT
5

# AMENDMENT TO CREDIT FACILITY/LEASE

This instrument is made as of this 6th day of NOVEMBER, 2002, by and among **THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED**, a foreign corporation ("Lender") and **K. SADHWANI'S, INC.**, (the "Borrower"), and **ALAN SADHWANI** and **LAJU SADHWANI**, (the "Guarantors").

**RECITALS:**

A. Borrower has heretofore executed and delivered in favor of Lender certain banking facilities amended by that certain Workout Agreement dated May 31, 2001 which provided for Borrower's repayment of the original principal amount of **SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($7,500,000.00)** (the "Note");

B. It has been agreed that the Maturity Date of the Note shall be extended for a period of time up to and including December 31, 2002;

C. It has been agreed that the Lender shall prepay monthly rental payments of $23,281.00 to Borrower for the period October 2002 through May 2003 which shall be applied to reduce the principal balance of the Note; and

D. Lender, Borrower and Guarantors have agreed to amend the Note as provided below.

**NOW, THEREFORE,** for and in consideration of the premises and of the covenants hereinafter contained, the parties agree as follows:

1. Confirmation of Obligations. Borrower does hereby expressly confirm and agree that Borrower is primarily, jointly and severally, liable to Lender under the terms of the Note (as now existing and as herein amended), whether as a maker, guarantor, mortgagor or by way of assumption of liability. All terms of the Note and of any Mortgage securing the Note, and of any other document, instrument or thing arising in connection with the loan contemplated herein, shall continue in full force and effect, except as specifically amended herein.

2. Confirmation of Principal Balance. The parties confirm that, as of September 27, 2002, the unpaid principal balance of the Note is the sum of $6,821,494.56.

3. Extension of Maturity Date. The Maturity Date of the Note is hereby extended for a period of time up to and including December 31, 2002. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of principal and interest then outstanding and unpaid.



4. Interest Rate. Interest shall continue to accrue on all unpaid principal balances at the rate of Lender's Base Lending Rate ("BBLR") plus one percent (1.0%).

5. Payments. Monthly repayments of accrued principal and interest shall be modified from the existing SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($75,000) to the amount of FIFTY-ONE THOUSAND SEVEN HUNDRED NINETEEN DOLLARS AND NO CENTS ($51,719.00) . The decrease in monthly repayment represents the existing monthly repayment of $75,000.00 less the monthly rental payment of $23,281.00. The modified payment shall be payable on the 30th day of each month for the period October 2002 to May 2003. Commencing June 30, 2003, the payments shall increase to the sum of SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($75,000.00) per month until the Note is paid in full.

6. Satisfaction of Lease. Borrower acknowledges that Lender has prepaid all rents due and payable under the lease dated July 23, 1992, as extended and modified, in the amount of $186,248.00. Borrower agrees that Lender has performed and satisfied all of the duties and obligations imposed by the lease and is hereby released from any further obligation whatsoever.

7. No Waiver. Nothing contained herein shall be construed as a waiver of any right or remedy which Lender may have under the terms of the Note or mortgages or other security instruments securing repayment of the Note.

IN WITNESS WHEREOF, Borrower, Lender and Additional Borrower have executed these presents on the day and year first above written.

**"LENDER"**

**THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED**

By: ______________________
Name: G. PRIESTLEY
Its: CEO Guam & Saipan

**"BORROWER"**

K. SADHWANI'S, INC.

By: ______________________
Name: A. SADHWANI
Its: ______________________

"GUARANTORS"

ALAN SADHWANI

LAJU SADHWANI

# PROMISSORY NOTE MODIFICATION AGREEMENT

INSTALLMENT LOAN NO.100023-361

This Promissory Note Modification Agreement ("Agreement") is entered into this 5 day of MARCH, 2003, by and among THE HONGKONG AND SHANGHAI BANKING CORPORATION LTD., a foreign corporation ("Lender") and K. SADHWANI'S, INC. ("Borrower"), and ALAN SADHWANI and LAJU SADHWANI, (THE "Guarantors").

On 06 November 2002 Borrower executed an Amendment To Credit Facility/Lease (the "Note") in the amount of SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($7,500,000.00) payable to the order of the Bank. The outstanding balance of the Note as of December 31, 2002 is SIX MILLION FIVE HUNDRED SEVENTY ONE THOUSAND NINE HUNDRED THREE AND FORTY TWO CENTS (USD6,571,903.42).

NOW, THEREFORE, in consideration of the premises and the covenants herein contained, the parties agree to amend as follows:

1. Extension of Maturity Date. The Maturity Date of the Note is hereby extended for a period of time up to and including August 31, 2003. The Lender will review the note every six months, and reserves the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid. Default on the terms of the Note will supercede this review process, and entitle the Lender to call for immediate repayment of principal and interest then outstanding and unpaid.

2. Effective date. This Agreement and the regular payment modification provided ~~herein~~ in 11/6 Agreement shall be deemed effective as of December 31, 2002.

3. General. The terms, conditions, and covenants of the Note, the guarantees, the security agreement, and all other loan documents which may secure the Note or which may have been executed in relation to the Note or to the loan transaction which the Note evidences remain in full force and effect except as amended by the express terms of this Agreement, and none other.

IN WITNESS WHEREOF, the parties have executed this Modification Agreement the day and date first above written.

EXHIBIT 6

PENGAD-Bayonne, N. J.

PROMISSORY NOTE MODIFICATION AGREEMENT
INSTALLMENT LOAN NO.100023-361

LENDER:

THE HONGKONG AND SHANGHAI
BANKING CORPORATION LIMITED

By: [signature]

Name: FREDERICK GRANILLO

Its: ASSISTANT VICE-PRESIDENT - CREDIT CONTROL

"BORROWER"

K. SADHWANI'S, INC.

SIGNATURE VERIFIED

By: [signature]

Name: A. H. SADHWANI

Its: PRESIDENT.

"GUARANTORS"

SIGNATURE VERIFIED

[signature]

ALAN SADHWANI

[signature]

LAJU SADHWANI

SIGNATURE VERIFIED

"PAY TO THE ORDER OF PARADISE MARINE CORPORATION WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXCEPT AS PROVIDED IN THE AGREEMENT FOR PURCHASE AND SALE OF LOANS DATED ~~AUGUST~~ June 25 2003 BETWEEN THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED AND PARADISE MARINE CORPORATION."

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

BY: ______________________

TITLE: MANAGER GUAM



Our Ref: GUM CCU 030030

21 March 2003

Mr. Sadhwani
c/o K. SADHWANI INC.
371 South Marine Drive
Tamuning, Guam 96911

**RE: PAYOFF PLAN**

Dear Mr. Sadhwani:

We are concerned that you have not taken seriously the Bank's notice to K. Sadhwani Inc. that it will not be able to renew or extend its loan facility when it becomes due for repayment on August 31, 2003. You have previously negotiated an extension of your loan facility and the liquidation of several parcels of real property assets sufficient to reinstate the loan facility not two years ago. In fact, you executed several deeds in lieu of a foreclosure via the private power of sale contained in the mortgages to secure an extension of your loan facility with the bank.

Your recent fax on March 14, 2003 requested the details of a friendly foreclosure. As stated above, I believe that you are familiar with the process that the Bank used to liquidate the real property. It is possible that the bank may accept deeds in lieu of foreclosure at a negotiated release price in order to reduce the balance of your loan facility. This process provides certainty to the winding down of your business and satisfaction of its debt to the Bank. The Bank cannot guarantee that there will not be a resulting deficiency from the liquidation process. However, you have the control and discretion to reduce the exposure to a deficiency to a minimum by negotiating such an agreement.

You represented that you have listed your property with Century 21 Realtors. We request a copy of the listing agreements or a written authorization allowing Century 21 to provide copies to the Bank immediately. If you are able to sell your property at market price and have such listing agreements, the Bank may consider tolling collection efforts pending the closing in escrow of written accepted purchase offers with net proceeds paid to the Bank. The tolling of collection efforts would have to be part of a general liquidation or refinancing agreement. The Bank does not wish to negotiate with you on a parcel by parcel basis.

In the event that you cannot sell the properties through the efforts of Century 21, the Bank may consider accepting deeds in lieu of foreclosure at negotiated values. If you are not willing to negotiate a liquidation agreement, then the Bank may be forced to foreclose via the private power of sale contained in the bank's mortgages. You may assist the Bank in this process by providing interested buyers and cooperate through the foreclosure process. The

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588 Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*



foreclosure process does, however, add costs, expenses and attorneys' fees to the amount secured by your mortgages and could result in an increased deficiency amount.

If you are seriously making an effort to refinance your loan facility, you may avoid this entire process. We request immediate confirmation of your loan application and efforts to obtaining refinancing. The Bank is ready, able and willing to assist your negotiation of replacement financing.

If you do not respond to this letter with the required information by close of business, April 4, 2003, the Bank will refer this matter to its attorneys at Klemm, Blair, Sterling & Johnson. The firm will contact you thereafter to address the issues in this letter.

I look forward to your response.

Yours sincerely,

Frederick Granillo
Assistant Vice President, Credit Control



Realty Management Company
P.O. Box 7988
Tamuning, GU 96931
Website: www.guamproperties.com
Email: remco@ite.net
Business (671) 647-5003
Fax (671) 646-6604

April 3, 2003

Alan Sadwani
Aj's Mechanical
Tamuning, Guam

Via Fax. 649-5938

Dear Alan,

As per our phone conversation I am writing you with an update of our marketing efforts for your commercial buildings located on marine Drive (Old HSBC office building, Old Guam Marketing building/Deloitte & Touche Building). The buildings have been shown to a number of prospective buyers and tenants We have presented the building to such tenants as GWA, DEDCA, Fire Department, Revenue & Taxation, PSA, Metro Bank, Camacho Family (for their lending institution, Community First, Sony and other prospective tenants. To date the strongest interest is PSA if we can work out the parking /area situation

On the selling side I have shown the buildings to an investment group from Korea, and Mr & Mrs. Fang The Korean group have left island and plan to return Mid April with their decision. It is my understanding they are an electronic firm who have sold some property here on Guam and are trying to re-invest it to income producing property. The Fang's also were interested in doing a 1031 type exchange to income producing properties here in Guam. I have not heard from them in a while but I will contact them this week to se if there is interest in their making an offer They seemed very serious after inspecting all three of the buildings.

I hope this brings you up to date on our marketing efforts. Please feel free to contact me if you have any questions.

Sincerely,

Christopher Felix CPM,CIPS
President CCIM

Each Office is Independently Owned and Operated

EXHIBIT
8

# K. Sadhwani's Inc.

371 South Marine Drive • Tamuning, Guam 96913
Phone 671-649-5948/49/50 • Fax 671-646-6917 • Email ticktock@guamcell.net

April 4 2003

Mr. Granillo
The Hongkong and Shanghai Banking Corporation Limited
Post office Box 27-C
Hagatna Guam 96932

Dear Mr. Granillo,

In my previous letter I have mentioned to you that I am trying to get financing to pay my Outstanding loan with HSBC. I have not received confirmation on my loan as of today. Hope to receive shortly.

I am working with Realty Management to sell the properties to pay off the loan.

If I am unsuccessful then I will hand over to you certain properties.

Please give me sometime, I will work with you to satisfy outstanding loan

Thanking you

Sadhwani

Alan Sadhwani

Incl: letter from Century 21 ( Chris Felix )

EXHIBIT 9



**PRIVATE AND CONFIDENTIAL** 15th July 2003

K. Sadhwani Inc.
371 South Marine Drive
Tamuning, Guam 96911

Attn.: Mr. Alan Sadhwani, President

Dear Alan,

**NOTICE OF INTENT TO SELL LOAN**

Notice is hereby given that the Hongkong & Shanghai Banking Corporation Limited ("HSBC") has entered into a loan purchase agreement with Paradise Marine Corporation (the "Buyer") whereby HSBC has agreed to sell, transfer and assign to the Buyer all of HSBC's right, title and interest in and to HSBC's loan with K. Sadwani Inc., including all mortgages, security agreements, promissory notes and any investments securing such loan, and together with any liens, security interests, charges and other rights related thereto (the "Loan") provided the Buyer complies with the requirements of the agreement upon closing. The Closing for the sale is currently scheduled for 11th August 2003 or such other date as agreed by the parties. Should the Closing occur, the Buyer shall be a party to the Loan and any related loan documents and HSBC shall be absolutely released from any obligation, covenants, and agreements under said Loan and any related loan documents. Further, in the event that the Closing shall occur, you will receive further notice regarding the manner in which all further loan payments shall be paid.

Yours faithfully,

I.C.Underwood
Manager Guam.

**The Hongkong and Shanghai Banking Corporation Limited**
Post Office Box 27-C, Hagåtña, Guam 96932 U.S.A.
436 South Marine Drive, Tamuning, Guam 96913
Tel: (671) 647-8588 Fax: (671) 646-3767

*Incorporated in Hong Kong SAR with limited liability.*

EXHIBIT
10

 

EXHIBIT
11

11 August 2003

K.Sadhwani's Inc.
371 South Marine Drive
Tamuning, Guam 96911

Dear Mr. Sadhwani

I refer to my letter of 15 July 2003.

I am pleased to inform you that on Monday 11th August 2003 your loan was sold to Paradise Marine Corporation. The terms and conditions of your loan remain unchanged, but Paradise Marine Corporation will contact you shortly and let you know where to make your payments.

Yours sincerely

I.C. Underwood
Manager Guam

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

K. SADHWANI'S INC.
371 SOUTH MARINE DRIVE
TAMUNING, GUAM 96911

Re: Paradise Marine Corp.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature ☐ Agent ☐ Addressee

B. Received by (Printed Name) JAMES TENORIO C. Date of Delivery 8/13/03

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

7001 1940 0001 6977 5577

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1035

al Service
IED MAIL RECEIPT
ic Mail Only; No Insurance Coverage Provide

FICIAL US

| | |
|---|---|
| Postage | $ .37 |
| tified Fee | 2.30 |
| ceipt Fee Required) | 1.75 |
| livery Fee Required) | |
| e & Fees | $ 4.42 |

Postmark Here
8-12-0

SADHWANI'S INC.
371 SOUTH MARINE DRIVE
City, State, ZIP+4 TAMUNING, GUAM 96911

Recording requested by THE HONGKONG AND SHANGHAI BANKING CORPORATION, LTD. and PARADISE MARINE CORPORATION. After recordation, deliver copies to PARADISE MARINE CORPORATION, P.O.Box 8246, Tamuning, Guam 96931. The real property affected by this Instrument is registered land, the name of the registered owner(s) being

______________________________

______________________________

and the number of the certificate of last registration being No. ____________.

---

(Space Above This Line for Recorder's Use Only)

## ASSIGNMENT OF MORTGAGES

KNOW ALL MEN BY THESE PRESENTS that The Hongkong and Shanghai Banking Corporation Limited (hereinafter called "Assignor"), whose Guam address is 744 North Marine Drive, Upper Tumon, Guam 96913, for value received from Paradise Marine Corporation, a corporation incorporated under the laws of the Territory of Guam (hereinafter called "Assignee") whose Guam address is P.O.Box 8246, Tamuning Guam 96931, does hereby assign, transfer and convey to Assignee, its successors and assigns, the following described mortgages:

///

A. Description of Mortgages:

EXHIBIT
12

ORIGINAL

| | |
|---|---|
| Mortgagee: | The Hongkong and Shanghai Banking Corporation Limited<br>436 South Marine Drive<br>Tamuning, Guam 96913 |
| Mortgagor: | K.SADHWANI'S, INC. |

| | |
|---|---|
| Date of Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 22 April 1985<br>358080 |
| Date of Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 16 December 1986<br>379308 |
| Date of Addendum to Mortgage<br>Revised Indebtedness:<br>Recordation No.:<br>(Department of Land Management) | <br>20 November 1987<br>392344 |
| Date of Addendum to Mortgage<br>Revised Indebtedness:<br>Recordation No.:<br>(Department of Land Management) | <br>20 November 1987<br>392345 |
| Date of Second Leasehold Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 20 November 1987<br>392342 |
| Date of Leasehold Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 31 March 1988<br>396505 |
| Date of Second Amendment to Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 30 March 1989<br>415174 |
| Date of Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 15 December 1989<br>427132 |

| | |
|---|---|
| Date of Mortgage:<br>Recordation No.:<br>(Department of Land Management) | 30 August 1990<br>440892 |

Case 1:03-cv-00036 Document 215 Filed 07/14/2004 Page 63 of 101

Date of First Addendum: 30 August 1990
Recordation No.: 440893
(Department of Land Management)

Date of Second Addendum: 21 August 1991
Recordation No.: 459108
(Department of Land Management)

Date of Third Addendum: 6 March 1992
Recordation No.: 467452
(Department of Land Management)

Date of Fourth Addendum: 6 August 1992
Recordation No.: 475186
(Department of Land Management)

Date of Fifth Addendum: 30 November 1995
Recordation No.: 537987
(Department of Land Management)

Date of Sixth Addendum: 31 December 1997
Recordation No.: 575582
(Department of Land Management)

Date of Seventh Addendum: 9 March 1998
Recordation No.: 579678
(Department of Land Management)

Property Description:

1) TICK-TOCK BUILDING
LOT NUMBERS 2023-2-1-1 & 2023-2-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 60525, SUBURBAN, as said lots are marked and designated on Drawing Number 083-01, as L.M. Check Number 164 FY 83, as described in that Parceling Survey of Basic Lot 2023-2-1, dated May 6, 1983 and recorded May 19, 1983 in the Department of Land Management, Government of Guam, under Document Number 338024. Containing an area of approximately 412 ± square meters as to Lot Number 2023-2-1-1 and 653 ± square meters as to Lot Number 2023-2-1-R1. Said property is registered property and the Last Certificate of Title

Number being 74211 as to Lot Number 2023-2-1-1 and 5964 as to Lot Number 2053-2-1-R1.

LOT NUMBER 2025-4 (SUBDIVISION OF LOT NUMBER 2025), MUNICIPALITY OF TAMUNING, formerly of Dededo, ESTATE NUMBER 67, SUBURBAN, as said lot is described in Sketch 94, and recorded on April 5, 1956 in the Department of Land Management, Government of Guam, under Document Number 30954. Containing an area of approximately 484.77 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34224.

Lot Numbers 2025-4, 2023-2-1-1 and 2023-2-1-R1 have been consolidated and redesignated as follows:

LOT NUMBER 2025-4NEW, (Consolidation of Lot No. 2023-2-1-1, 2023-2-1-R1, 2025-4 and adjoining old trail), MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER L-874, as L.M. CHECK NUMBER 139 FY 86, as described in that Consolidation Survey and Land Registration, dated April 4, 1986 and recorded April 7, 1986 at the Department of Land Management, Government of Guam under Document No. 370138. Containing an area of 1,673.43 +/- square meters of 18,013+/- square feet. Last certificate of title numbers being 34224 (Basic Lot 2025-4, Est#67) issued in the name of Gee Dee Enterprises, Inc., 74211 (Basic Lot 2023-2-1-1, Est#60505) issued in the name of K. Sadhwani=s Inc., and 5967 (Basic Lot 2023-2-1/2023-2-1-R1) issued in the name of Luis Palomo Perez.

2) SHARP PLAZA BUILDING
LOT NUMBER 2141-1-3NEW, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 9783, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, as L.M. Check Number 191 FY 68, as described in that Consolidation and Parceling Lot 2141-1, dated December 5, 1967 and recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1254.36 ± square meters. Said property is registered property and the Last

Certificate of Title Number being 54417, issued in the name of Footstep Incorporated..

LOT NUMBER 2141-1-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 6681, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1,227.25 ± square meters. Said property is registered property and the Last Certificate of Title Number being 54418, issued in the name of Footstep Incorporated.

3) MOGFOG
LOT NUMBERS 10054-6, 10054-7, 10054-8, and 10054-R8, (SUBDIVISION OF LOT NUMBER 10054-5), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBERS 22790, 22791, 22793, and 22792, SUBURBAN, as said lots are marked and designated on Drawing Number SDC130373, as L.M. Check Number 605 FY 73, as described in that Agricultural Subdivision of Lot 10054-R3, dated April 12, 1973 and recorded August 3, 1973 under Document Number 226809. Containing an area of approximately 12,318 ± square meters as to Lot Number 10054-6; 20,590 ± square meters as to Lot Number 10054-7; 8,272 square meters as to Lot Number 10054-8 and 10,320 ± square meters as to Lot Number 10054-R8. Said property is registered property and the Last Certificate of Title Number being 83147 as to Lot Number 10054-6; 83148 as to Lot Number 10054-7; 83149 as to Lot Number 10054-8 and 83150 as to Lot Number 10054-R8, all issued in the name of Dynasty Development Corporation.

4) SATEENA MALL BUILDING
Lease of the below described real property from Calvo Finance Corporation, a Guam corporation, as landlord to Jones and Guerrero Company, Inc., which lease is dated March 22, 1972, recorded August 25, 1972, in the Department of Land Management, Government of Guam, under Document Number 115460, as assigned to Calvo Enterprises, Inc., by that Warranty Deed with Assumption of Mortgage and Assignment of Lease

dated May 12, 1983, and recorded May 31, 1983, as Document Number 338246, having been assigned to K. Sadhwani's Inc., as lessee by an Assignment Agreement dated June 24, 1987, a Notice of Assignment having been recorded July 1, 1987, as Instrument Number 387003.

Said lease being of Lot Numbers 16 and 19, Block Number 10, Tract Number 100C, Dededo, South Acre Agriculture Subdivision, located in the Municipality of Dededo, Territory of Guam, each containing an area of 1 acre ±.

Which lots have been consolidated and designated as follows:

LOT NUMBER 2, TRACT NUMBER 217 (formerly known as Lot No. T100C, B10, L16 & 19), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER RRV87-16BBA, as L.M. CHECK NUMBER 273 FY 87, as described in that Retracement Survey Map, dated July 2, 1987 and recorded July 6, 1987, at the Department of Land Management, Government of Guam, under Instrument Number 387109, containing an area of 8,094 +/- square meters. Last certificate of title number being 11208 issued in the name of Government of Guam.

5) DONALDS MART

(i) That Lease Agreement by and between Josephina P. Castro, Landlord, and Remedios M. Domingo, Tenant, dated November 24, 1976 and recorded March 18, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 277783, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, dated February 14, 1979 and recorded on May 14, 1979 under Document Number 302289, as further assigned by that Assignment of Lease to K. Sadhwani's Inc. and recorded March 14, 1988 as Document Number 395651;

Which lease is of Lot Number 2136#1-9-1, Estate Number 8949, Suburban, Tamuning, Municipality of Dededo, Territory of Guam, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam, on May 11, 1966 under Document Number 75987. Containing an area of approximately 990.86 ± square meters.

Said property is registered property and the Last Certificate of Title Number being 104288, issued in the names of Josephine C. Parenteau, Angelica C. Leon Guerrero, H.O. June C. Bermudez, namely Angel N. Bermudez-Castro, Rony C. Bermudez and Michael C. Bermudez.

(ii) That Lease Agreement by and between Beatrice S.N. Perez, Landlord, and Remedios M. Domingo, Tenant, dated October 16, 1976 and recorded November 15, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 273543, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, recorded in the Department of Land Management under Document Number 307561; as further assigned by that Assignment of Lease to K. Sadhwani's Inc. dated March 1, 1988 and recorded March 14, 1988 as Document Number 395652;

Which lease is of:

LOT NUMBER 2136#1-8-1, ESTATE NUMBER 9754, SUBURBAN, TAMUNING, MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 988.98 ± square meters. Said property is registered property and the Last Certificate of Title Number being 20135.

LOT NUMBER 2136#1-7, ESTATE NUMBER 22014, SUBURBAN, TAMUNING, MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 906.98 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34880.

Lot Numbers 2136#1-7 and 2136#1-8 have been consolidated and designated as follows:

LOT NUMBER 2136#1-8-1NEW, (Parceling Lot 2136#1-7 and 2136#1-8 and Consolidation of Lot 2136#1-7-1 and 2136#1-8-1

into 2136#1-8-1NEW), MUNICIPALITY OF TAMUNING, GUAM, ESTATE NUMBER 65417, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER CC-8902D, L.M. CHECK NUMBER 138 FY 89, as dated August 14, 1989 and recorded August 14, 1989 under Document Number 421351. Containing an area of 622.73 +/- square meters, last certificate of title number being 86608, issued in the name of Beatrice S.N. Perez.

6) TOVES WAREHOUSE
Lot Numbers A & B, (Portion of Lot 2140-5), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, SUBURBAN, as said Lots are marked and designated on Drawing Number 116 T6 3D, as recorded August 8, 1967, in the Department of Land Management, Government of Guam, under Document Number 81293, containing an area of 305 +/- square meters or 5,471 +/- square feet. SAID LOT NUMBER A & B, (Portion of Lot No. 2140-REM), are integral parts of Basic Lot 2140-5 described as follows:

LOT NUMBER 2140-5, (Subdivision of Lot No. 2140-REM), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBER 557655, SUBURBAN, as said Lot is marked and designated on Drawing Number 03-0280, as L.M. Check No. 158 FY 90, dated March 24, 1980 and recorded March 26, 1980 in the Department of Land Management, Government of Guam, under Document Number 310934:

Last Certificate of Title Number: 67798 (Basic 2140-5)

Said lots are sometimes referred to as Lot No. 2140-5-3 and 2140-5-R3, respectively.

7) HSBC BUILDING
Lot Number 2104-6NEW, (Consolidation of Lot 2104-9-R1 & 2104-6), MUNICIPALITY OF TAMUNING, (formerly of Dededo), TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on Drawing Number L-1096, as L.M. Check Number 032 FY 91, as described in that Consolidation Survey of L2104-6NEW, dated November 30, 1990 and recorded December 6, 1990, in the Department of Land Management, Government of Guam, under Document Number 445994, containing an area of 3,195.96 +/- square meters or 34,401 +/- square feet. Last Certificate of Title Number being 8949 (Basic Lot 2104-6; Est.#9594) in the name of Antonia C. Quitugua, and 66111 (Basic Lot 2104-9-R1); Est#56972) issued in the name of Vicente Laguana Iriarte.

Which mortgages were given for the purpose of securing money due and to become due and other obligations (collectively, the "Obligations") to Assignor, which Obligations have been assigned to Assignee by a separate Assignment Agreement.

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed this 11th day of August, 2003

**ASSIGNOR:**

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

By: ______________________
I.C. Underwood
Its Manager - Guam

GUAM, U.S.A. )
) ss:
Municipality of Tamuning )

On this 11 day of August, 2003, before me, a notary public in and for the Guam, U.S.A. personally appeared I.C. UNDERWOOD, known to me to be the person who executed the foregoing ASSIGNMENT OF MORTGAGE, and acknowledged to me that he/she executed the same as MANAGER – GUAM of THE HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

)SEAL(

ANTOINETTE T. LEON GUERRERO
NOTARY PUBLIC
In and For Guam, U.S.A.
My Commission Expires: Jul. 10, 2005
P.O. Box 2538 Hagatna, Guam 96932

ASSIGNMENT OF LOAN INSTRUMENTS

THIS ASSIGNMENT OF LOAN INSTRUMENTS (this "Assignment") is made this 11th day of August, 2003, by and between THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, whose address is 744 North Marine Drive, Suite 201
Upper Tumon, Guam 96913 (the "Assignor"), and PARADISE MARINE CORPORATION, a corporation, whose address is P.O.Box 8246, Tamuning, Guam 96931 (the "Assignee").

RECITALS:

A. Assignor and Assignee have entered into that certain Loan Purchase Agreement dated 25 th June 2003 (the "Agreement"), pursuant to which Assignor agreed to sell, and Assignee agreed to purchase, all of Assignor's right, title and interest in and to a certain credit facility and loan in the total outstanding principal amount of SIX MILLION FOUR HUNDRED FIFTY-SEVEN THOUSAND FORTY-FOUR U.S. DOLLARS FIFTY-SIX CENTS (US$6,457,044.56) as of May 31, 2003, issued by Assignor to K. Sadwani's, Inc., a Guam corporation (the "Loan").

B. In accordance with the terms of the Agreement, concurrently with the delivery of this Assignment, Assignor is delivering to Assignee the original promissory note evidencing the Loan together with separate assignments of the mortgages which secure the Loan.

C. Assignor now desires to assign to Assignee all of Assignor's right, title and interest in and to any and all other documents, agreements and instruments executed in connection with the Loan.

AGREEMENT:

EXHIBIT 13

NOW, THEREFORE, in consideration of good and valuable consideration Assignor does hereby transfer, assign, endorse, grant, convey and deliver unto Assignee, its successors and assigns, forever, all of Assignor's right, title and interest in and to all other documents, agreement and instruments executed in connection with the Loan, WITHOUT RECOURSE, "AS IS", "WHERE IS" and "WITH ALL FAULTS" (the "Loan Instruments").

AND Assignor does hereby covenant and agree to and with Assignee that: (1) Assignor is the sole and lawful owner and holder of the Loan Instruments; (2) Assignor has good right to sell and assign the Loan Instruments as aforesaid; and (3) Assignor has not sold, endorsed, assigned or otherwise encumbered the Loan Instruments.

Except as expressly set forth in this Assignment and the Agreement, this Assignment is made without recourse to, and without covenant or warranty by, Assignor in any case or event, or for any purpose whatsoever.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the day and year first above written. ASSIGNOR:

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

By: ______________________
Name:
Its:

ASSIGNEE:

PARADISE MARINE CORPORATION

By: ______________________
Name:
Its:

# EXHIBIT 2

Assignment of Mortgages



[illegible] of Guam, Government of Guam
Department of Land Management Office of The Recorder

679505

File for record is Instrument No. ______

on the year 20 03 Month Aug Day 12 Time 8:58

Recording Fee 11- Receipt No. 1309485

Deputy Recorder [signature]

**ASSIGNMENT OF RIGHTS
TO RECEIVE RENTAL INCOME**

This Assignment is dated August 11th, 2003, and is by The Hongkong and Shanghai Banking Corporation, Limited, hereafter called the "Bank", to and for the benefit of Paradise Marine Corporation, hereafter called the "Assignee."

FOR AND IN CONSIDERATION of $10.00 and other valuable consideration received, the Bank hereby assigns, transfers, grants and gives over to the Assignee all rents, receivables, and monies, and all rights, title and interest that the Bank has, may have, and has the right to receive as a result of, or arising out of the following document:

> ASSIGNMENT OF RENTAL INCOME, dated December 31, 1997, as recorded in the Department of Land Management, Government of Guam under instrument no. 575538.

Further, the Bank hereby assigns, transfers, grants and gives over to the Assignee all rents, receivables, and monies, and all rights, title and interest that the Bank has, or may have, and has the rights to receive as a result of, or arising out of the loans from Bank to K. Sadhwani's Inc. shall hereafter belong to the Assignee. All rights to the rents, receivables and monies shall be subject to the terms and conditions of the loans originally from Bank to K. Sadhwani's Inc.

This Assignment has been made as of the date as stated above.

The Hongkong and Shanghai Banking Corporation, Limited

By: [signature]

EXHIBIT 14

I.C. Underwood
Its Manager-Guam

Territory of Guam )
( ss.:
City of Hagatña. )

On this 11 day of August, 2003 before me, a notary public in and for Guam, personally appeared **I.C. Underwood,** known to me to be the person whose name is subscribed to the foregoing instrument, and he acknowledged to me that he executed the same as the Manager-Guam of The Hongkong and Shanghai Banking Corporation, Limited.

WITNESS my hand and official seal.

Antoinette Leon Guerrero
Notary Public

ANTOINETTE T. LEON GUERRERO
NOTARY PUBLIC
In and For Guam, U.S.A.
My Commission Expires: Jul. 10, 2005
P.O. Box 2538 Hagatna, Guam 96932

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 646-8282**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. SANG BUM KIM**
Kim Chee Warehouse Grocers
P.O. Box 2031
Hagatna, Guam 96932

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Kim:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). Kim Chee Warehouse Grocers leases space within the Sateena Mall from Sadhwani and pays monthly rent of approximately $17,347.20. Paradise Marine is now exercising its right to demand and collect Kim Chee Warehouse Grocers' monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

EXHIBIT
15

3.    Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4.    Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Kim Chee Warehouse Grocers. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Kim Chee Warehouse Grocers continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Kim Chee Warehouse Grocers pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Kim Chee Warehouse Grocers will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc:    Paradise Marine Corp.
DMC/nsa:SBK.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 473-4370**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. JOHN LIMTIACO**
Water & Ice Express
P.O. Box 10838
Tamuning, Guam 96931

**Re:** **Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Limtiaco:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). Water & Ice Express leases space within the Sateena Mall from Sadhwani and pays monthly rent of approximately $2,227.50. Paradise Marine is now exercising its right to demand and collect Water & Ice Express' monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

EXHIBIT 16

3. Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4. Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Water & Ice Express. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Water & Ice Express continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Water & Ice Express pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Water & Ice Express will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

[signature]

Duncan G. McCully

Encs.
cc: Paradise Marine Corp.
DMC/nsa:JL.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 637-8036**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. BEL MAGAT**
Imagine This! Imagine That!
136C Kayen Chando St.
Suite 105, Sateena Mall
Dededo, Guam 96929

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Magat:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). Imagine This! Imagine That! ("Imagine This") leases space within the Sateena Mall from Sadhwani and pays monthly rent of approximately $1,500. Paradise Marine is now exercising its right to demand and collect Imagine This' monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

EXHIBIT 17

3.   Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4.   Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Imagine This. HSBC assigned that right to Paradise Marine.  You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it.  Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me.  I would suggest that you consult with your legal advisor concerning this matter.  If Imagine This continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine.  In other words, even if Imagine This pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible.  Would you please confirm that Imagine This will pay Paradise Marine rent beginning July 1, 2004.  Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc:   Paradise Marine Corp.
DMC/nsa:BM.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 647-1688**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. ANGELO LIN**
Lin's Jewelry Co.
618 East Marine Drive
Hagatna, Guam 96910

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Lin:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). Lin's Jewelry leases space within the Sateena Mall from Sadhwani and pays monthly rent of approximately $1,575. Paradise Marine is now exercising its right to demand and collect Lin's Jewelry's monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

3. Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4. Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Lin's Jewelry. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Lin's Jewelry continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Lin's Jewelry pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Lin's Jewelry will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc: Paradise Marine Corp.
DMC/nsa:BM.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 649-4265**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. JEROLD W. FILUSH**
Managing Partner
Deloitte & Touche LLP
316 S. Marine Drive
Tamuning, Guam 96913

**Re: Sharp Plaza Building**
**Lot Nos. 2141-1-3New & 2141-1-1-R1, Tamuning, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Jerry:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). Deloitte & Touche leases the Sharp Plaza building from Sadhwani and pays monthly rent of approximately $30,000. Paradise Marine is now exercising its right to demand and collect Deloitte & Touche's monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

EXHIBIT
19

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

3. Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4. Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Deloitte & Touche. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Deloitte & Touche continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Deloitte & Touche pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent..

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Deloitte & Touche will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

D McCully

Duncan G. McCully

Encs.
cc: Paradise Marine Corp.
DMC/nsa:AA.010804.3776

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 637-3548**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. HENRY MAMINTA**
Uniform Masters Tailoring & Professional Alteration
P.O. Box 25168
GMF Barrigada, Guam 96921

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Maminta:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani") Uniform Masters Tailoring & Professional Alteration ("Uniform Masters") leases space within the Sateena Mall from Sadhwani. Paradise Marine is now exercising its right to demand and collect Uniform Masters' monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

EXHIBIT 20

3. Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4. Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Uniform Masters. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Uniform Masters continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Uniform Masters pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Uniform Masters will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc: Paradise Marine Corp.
DMC/nsa:HM.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 649-0055**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MS. JOYEN RHEE**
MSK Corp. Bakery dba OPS Bread & Cake
P.O. Box 315823
Tamuning, Guam 96931

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Ms. Rhee:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani"). OPS Bread & Cake leases space within the Sateena Mall from Sadhwani and pays monthly rent of approximately $3,000. Paradise Marine is now exercising its right to demand and collect OPS Bread & Cake's monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

EXHIBIT
21

3.     Assignment of Mortgages between HSBC and Paradise Marine dated August 11, 2003.

4.     Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from OPS Bread & Cake. HSBC assigned that right to Paradise Marine.   You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it.  Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me.  I would suggest that you consult with your legal advisor concerning this matter.  If OPS Bread & Cake continues to pay the rent to Sadhwani, then the payment will <u>not</u> relieve it of the obligation to pay the monthly rent to Paradise Marine.  In other words, even if OPS Bread & Cake pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible.  Would you please confirm that OPS Bread & Cake will pay Paradise Marine rent beginning July 1, 2004.  Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc:    Paradise Marine Corp.
DMC/nsa:JR.062104.3776.DLTR

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW

DUNCAN G. McCULLY
MARK S. BEGGS

SUITE 200, 139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910

Telephone:
(671) 477-7418
Telecopier:
(671) 472-1201
mblaw@kuentos.guam.net

June 22, 2004

**VIA FACSIMILE: (671) 632-9327**
**HAND DELIVERY &**
**CERTIFIED MAIL**

**MR. NICK MIRTURI**
Mic Mac
P.O. Box 10841
Tamuning, Guam 96913

**Re: Sateena Mall**
**Lot No. 2, Tract 217, Dededo, Guam**
**Paradise Marine Corporation**
**MB File No. 3776**

Dear Mr. Mirturi:

This office represents Paradise Marine Corporation ("Paradise Marine") which acquired Hongkong & Shanghai Banking Corporation's ("HSBC's") loan to K. Sadhwani Inc. ("Sadhwani") Mic Mac leases the Sateena Mall from Sadhwani. Paradise Marine is now exercising its right to demand and collect Mic Mac's monthly rent. Beginning with the rent due July 1, 2004, please pay your monthly rent to this office in a check made payable to the "Paradise Marine Corporation".

In support of this demand, please find the following documents enclosed by mail and hand delivery:

1. Assignment of Rental Income between Sadhwani and HSBC dated December 31, 1997.

2. Assignment of Rights to Receive Rental Income from HSBC to Paradise Marine dated August 11, 2003.

3. Assignment of Mortgages between HSBC and Paradise Marine dated August

EXHIBIT
22

11, 2003.

4. Assignment of Loan Instruments between HSBC and Paradise Marine dated August 11, 2003.

As you can see from the attached documents, Sadhwani assigned to HSBC the right to receive the monthly rent from Mic Mac. HSBC assigned that right to Paradise Marine. You will notice that at page 7 of the Assignment of Rental Income, Paradise Marine had the right to collect all rents. At page 8, Paradise Marine allowed Sadhwani to continue to collect the rent until Paradise Marine, "at its sole option" terminates Sadhwani's collection and demands that the rents be paid directly to it. Paradise Marine is now exercising that right.

Should you have any questions, then please feel free to call me. I would suggest that you consult with your legal advisor concerning this matter. If Mic Mac continues to pay the rent to Sadhwani, then the payment will not relieve it of the obligation to pay the monthly rent to Paradise Marine. In other words, even if Mic Mac pays Sadhwani, it will still be have to pay Paradise Marine the monthly rent.

I would look forward to discussing this with you or your legal advisor as soon as possible. Would you please confirm that Mic Mac will pay Paradise Marine rent beginning July 1, 2004. Would you also please provide me with a copy of your lease agreement with Sadhwani.

Sincerely,

Duncan G. McCully

Encs.
cc: Paradise Marine Corp.
DMC/nsa:AA.010804.3776

Recording requested by Paradise Marine Corporation After recordation deliver copies to PARADISE MARINE CORPORATION, c/o McCully & Beggs, P.C. 200, Pan American Building, 139 Murray Blvd., Hagatna, Guam 96910. The real property affected by this instrument is registered land, and the numbers of the certificates of last registration being Numbers 74211, 5964, 34224, 66111, 18963, 14469, 83149, 83150, 104288, 20135, and 34880.

Island of Guam, Government of Guam
Department of Land Management, Office of The Recorder
File for record is Instrument No. 694520
for the year 20 04 Month June Day 24 Time 11:33
Recording Fee 10 Receipt No. 00/3679
Deputy Recorder [signature]

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

## NOTICE OF EXERCISE OF RIGHT TO COLLECT RENT

On December 31, 1997, K. Sadhwani, Inc. assigned to the Hongkong and Shanghai Banking Corporation, Ltd. ("HSBC") its right, title and interest to all rental income, lease income, payments, profits, monies, issues and rights to payment from the property described below in that certain Assignment of Rental Income recorded on January 8, 1998 with the Department of Land Management under Instrument Number 575583.

On August 11, 2003, HSBC assigned and transferred its rights under the Assignment of Rental Income to the Paradise Marine Corporation in that certain

EXHIBIT 23

Assignment of Rights to Receive Rental Income which was recorded with the Department of Land Management on August 12, 2003 under Instrument Number 679505.

Paradise Marine Corporation has exercised its right to collect and to receive directly, all rental income and monies due under any and all existing and future leases concerning the below described property. As allowed by the Assignment of Rental Income, Paradise Marine has terminated any right of K. Sadhwani, Inc. to collect the rental or lease income from any tenant or lessee of the following property:

1. LOT NUMBER 23104-6NEW, (Consolidation of Lot 2104-9-R1 & 2104-6), MUNICIPALITY OF TAMUNING, (formerly of Dededo), TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on Drawing number L-1096, as LM Check Number 032 FY 91, as described in that Consolidation Survey of L2104-6NEW, dated November 30, 1990 and recorded December 6, 1990, in the Department of Land Management, Government of Guam, under Document Number 445994, containing an area of 3,195.96 -/+ square meters of 34,401 +/- square feet. Last Certificate of Title Number being 8949 (Basic Lot 2104-6; Est#9594) in the name of Antonia C. Quitugua, and 66111 (Basic Lot 2104-9-R1; Est#56972) issued in the name of Vicente Laguana Iriarte.

2. LOT NUMBERS 2023-2-1-1 & 2023-2-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 60525, SUBURBAN, as said lots are marked and designated on Drawing Number 083-01, as L.M. Check Number 164 FY 83, as described in that Parceling Survey of Basic Lot 2023-2-1, dated May 6, 1983 and recorded May 19, 1983 in the Department of Land Management, Government of Guam, under Document Number 338024. Containing an area of approximately 412 ± square meters as to Lot Number 2023-2-1-1 and 653 ± square meters as to Lot Number 2023-2-1-R1. Said property is registered property and the Last Certificate of Title Number being 74211 as to Lot Number 2023-2-1-1 and 5964 as to Lot Number 2053-2-1-R1.

LOT NUMBER 2525-4 (SUBDIVISION OF LOT NUMBER 2025), MUNICIPALITY OF TAMUNING, formerly of Dededo, ESTATE

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

NUMBER 67, SUBURBAN, as said lot is described in Sketch 94, and recorded on April 5, 1965 in the Department of Land Management, Government of Guam, under Document Number 30954. Containing an area of approximately 484.77 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34224.

Lot Numbers 2025-4, 2023-2-1-1 and 2023-2-1-R1 have been consolidated and redesignated as follows:

LOT NUMBER 2025-4NEW, (Consolidation of Lot No. 2023-2-1-1, 2023-2-1-R1, 2025-4 and adjoining old trail), MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER L-874, as L.M. CHECK NUMBER 139 FY 86, as described in that Consolidation Survey and Land Registration, dated April 4, 1986 and recorded April 7, 1986 at the Department of Land Management, Government of Guam under Document No. 370138. Containing an area of 1,673.43 +/- square meters of 18,013 +/- square feet. Last certificate of title numbers being 34224 (Basic Lot 2023-2-1-1, Est#60505) issued in the name of K. Sadhwani's Inc., and 5967 (Basic Lot 2023-2-1/2023-2-1-R1) issued in the name of Luis Palomo Perez.

3. LOT NUMBER 2104-9-R1, (SUBDIVISION OF LOT NUMBER 2104-9), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBER 56972, SUBURBAN, as said lot is marked and designated on Drawing Number JAA-789-15, as L.M. Check Number 403 FY 79, as recorded September 18, 1979 in the Department of Land Management, Government of Guam under Document Number 306029. Containing an area of approximately 2,279 ± square meters. Said property is registered property and the Last Certificate of Title Number being 66111.

4. LOT NUMBER 2141-1-3NEW, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 9783, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, as L.M. Check, Number 191 FY 68, as described in that Consolidation and Parceling Lot 2141-1, dated December 5, 1967 and recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1254.36 ± square meters. Said property is registered property and the Last Certificate of Title Number being 54417, issued in the name of Footstep Incorporated.

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5585

5. LOT NUMBER 2141-1-1-R1, MUNICIPALITY OF TAMUNING, formerly of Dededo, TERRITORY OF GUAM, ESTATE NUMBER 6681, SUBURBAN, as said lot is marked and designated on Drawing Number LCJ67T102, recorded March 18, 1968 in the Department of Land Management, Government of Guam, under Document Number 85108. Containing an area of approximately 1,227.25 ± square meters. Said property is registered property and the Last Certificate of Title Number being 54418, issued in the name of Footstep Incorporated.

LOT NUMBER 10054-6, 10054-7, 10054-8, AND 10054-R8, (SUBDIVISION OF LOT NUMBER 10054-5), MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, ESTATE NUMBERS 22790, 22791, 22793, and 22792, SUBURBAN, as said lots are marked and designated on Drawing Number SDC130373, as L.M. Check Number 605 FY 73, as described in that Agricultural Subdivision of Lot 10054-R3, dated April 12, 1973, and recorded August 3, 1973 under Document Number 22689. Containing an area of approximately 12,318 ± square meters as to Lot Number 10054-6; 20,590 ± square meters as Lot Number 10054-7; 8,272 square meters as to Lot Number 10054-8 and 10,320 ± square meters as to Lot Number 10054-R8. Said property is registered property and the Last Certificate of Title Number being 83147 as to Lot Number 10054-6; 83148 as to Lot Number 10054-7; 83149 as to Lot Number 10054-8 and 83150 as to Lot Number 10054-R8, all issued in the name of Dynasty Development Corporation.

6. That Lease of the below described real property from Calvo Finance Corporation, a Guam corporation, as landlord to Jose and Guerrero Company, Inc., which lease is dated March 22, 1972, recorded August 25, 1972, in the Department of Land Management, Government of Guam, under Document Number 115460, as assigned to Calvo Enterprises, Inc., by that Warranty Deed with Assumption of Mortgage and Assignment of Lease dated May 12, 1983, and recorded May 31, 1983, as Document Number 338246, having been assigned to K. Sadhwani's Inc., as lessee by an Assignment Agreement dated June 24, 1987, a Notice of Assignment having been recorded July 1, 1987, as Instrument Number 387003.

Said lease being of Lot Numbers 16 and 19, Block Number 10, Tract Number 100C, Dededo, South Acre Agriculture Subdivision, located in the Municipality of Dededo, Territory of Guam, each containing an area of 1 acre ±.

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

Which lots have been consolidated and designated as follows:

LOT NUMBER 2, TRACT NUMBER 217 (formerly knows as Lot No. T100C, B10, L16 & 19), MUNICIPALITY OF DEDEDO, TERRITOFY OF GUAM, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER RRV87-16BBA, as L.M. CHECK NUMBER 273 FY 87, as described in that Retracement Survey Map, dated July 2, 1987 and recorded July 6, 1987, at the Department of Land Management, Government of Guam, under Instrument Number 387109, containing an area of 8,094 +/- square meters. Last certificate of title number being 11208 issued in the name of Government of Guam.

7. That Lease Agreement by and between Josephina P. Castro, Landlord and Remedios M. Domingo, Tenant, dated November 24, 1976 and recorded March 18, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 277783, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, dated February 14, 1979 and recorded May 14, 1979 under Document Number 302289, as recorded March 14, 1988 as Document Number 395651;

Which lease is of Lot Number 2136#1-9-1, Estate Number 8949, Suburban, Tamuning, Municipality of Dededo, Territory of Guam, as said a lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 990.86 ± square meters. Said property is registered property and the Last Certificate of Title Number being 104288, issued in the names of Josephine C. Parenteau, Angelica C. Leon Guerrero, H.O. June C. Bermudez, namely Angel N. Bermudez-Castro, Rony C. Bermudez and Michael C. Bermudez.

That Lease Agreement by and between Beatrice S.N. Perez, Landlord, and Remedios M. Domingo, Tenant, dated October 16, 1976 and recorded November 15, 1977 in the Office of the Recorder, Department of Land Management, Government of Guam, as Document Number 273543, as assigned by that Assignment of Lease between Remedios M. Domingo, Assignor and Bonifacio L. and Virginia G. Jose, Assignee, recorded in the Department of Land Management under Document Number 307561, as further assigned by that Assignment of Lease to K. Sadhwani's Inc. dated March 1

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

1988 and recorded March 14, 1988 ad Document Number 395652.

Which lease is of:

LOT NUMBER 2136#1-8-1, ESTATE NUMBER 9754, SUBURBAN, TAMUNING, MUNICIPALITY OF DEDEDO, TERRITORY OF GUAM, as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 988.98 ± square meters. Said property is registered property and that Last Certificate of Title Number being 20135.

LOT NUMBER 2136#1-7, ESTATE NUMBER 22014, SUBURBAN TAMUNING, MUNICPALITY OF DEDEDO, TERRTORY OF GUAM , as said lot is marked and designated on Drawing Number ISL10-65D391, dated November 12, 1965 and recorded in the Department of Land Management, Government of Guam on May 11, 1966 under Document Number 75987. Containing an area of approximately 906.98 ± square meters. Said property is registered property and the Last Certificate of Title Number being 34880.

Lot Numbers 2136#1-7 and 2136#1-8 have been consolidated and designated as follows:

LOT NUMBER 2136#1-8-1NEW, (Parceling Lot 2136#1-7 and 2136#1-8 and Consolidation of Lot 2136#1-7-1 and 2136#1-8-1 into 2136#1-8-1NEW), MUNICIPALITY OF TAMUNING, GUAM ESTATE NUMBER 65417, SUBURBAN, as said Lot is marked and designated on DRAWING NUMBER CC-8902D, L.M. CHECK NUMBER 138 FY 89, as dated August 14, 1989 and recorded August 14, 1989 under Document Number 421351. Containing an area of 622.73 +/- square meters, last certificate of title number being 86608, issued in the name of Beatrice S.N. Perez.

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

McCULLY & BEGGS, P.C.
ATTORNEYS AT LAW
SUITE 200, 139 MURRAY BOULEVARD
AGANA, GUAM 96910
PHONE: (671) 477-7418, 472-5685

**PARADISE MARINE CORPORATION**

By: [signature]
**DUNCAN G. McCULLY, ESQ.**
It's Duly Authorized Representative

Dated: 6/23/04

STATE GUAM )
) ss
CITY OF HAGATNA )

On the 23rd day of June, 2004 before me, a Notary Pubic, Guam, personally appeared DUNCAN G. McCULLY, to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in her/his authorized capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[signature]

NEILISHA C. SAN AGUSTIN
NOTARY PUBLIC
In and For Guam, U.S.A.
My Commission Expires: Feb. 25, 2008
Suite 200, 139 Murray Boulevard Hagatna, Guam 96910

Case 1:03-cv-00036 Document 215 Filed 07/14/2004 Page 98 of 101



LAW OFFICES
Arriola, Cowan & Arriola
259 MARTYR STREET, SUITE 201
C & A BUILDING
HAGÅTÑA, GUAM 96910

JOAQUIN C. ARRIOLA
MARK E. COWAN
ANITA P. ARRIOLA
JOAQUIN C. ARRIOLA, JR.

JACQUELINE T. TERLAJE

MAILING ADDRESS:
P.O. BOX X
HAGÅTÑA, GUAM 96932
TELEPHONE
(671) 477-9730/3
TELECOPIER
(671) 477-9734
E-MAIL
acalaw@netpci.com

June 24, 2004

**VIA HAND DELIVERY**

Duncan C. McCully, Esq.
McCully & Beggs
Suite 200, 139 Murray Boulevard
Hagåtña, Guam 96910

Re: **Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al.**
**District Court of Guam, Civil Case No. CV03-00036**

Dear Duncan:

This is in response to your letter dated June 23, 2004. Thank you very much for your courtesy copies of the letters you sent to the Sadhwani's tenants.

Alan Sadhwani, Laju Sadhwani and K. Sadhwani's, Inc. ("The Sadhwanis") dispute that Paradise Marine Corporation ("PMC") has any right to collect the rents due and owing to the Sadhwanis. The Business Loan Agreement ("BLA") executed December 31, 1997 between Hong Kong Shanghai Banking Corporation, Ltd. ("HSBC") and K. Sadhwani's, Inc. expressly restricted the ability of HSBC to sell or transfer the Sadhwani's loan. In particular, page 6 of the Business Loan Agreement provides as follows:

> **Consent to Loan Participation.** Borrower agrees and consents to ***Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans*** to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever to any or or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as notices of any repurchase of such participation interests. Borrower also agrees the ***purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loans and will have all rights granted under the***

RECEIVED
McCully and Beggs, P.C.
Date: 6/24/04 Time: 5:04

EXHIBIT
24

Arriola, Cowan & Arriola

PAGE 2

Duncan C. McCully, Esq.
McCully & Beggs
Re: Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al. District Court of Guam, Civil Case No. CV03-00036
June 24, 2004

> ***participation agreement or agreements governing the sale of such participation interests.*** Borrower further waives rights of offset or counterclaim that it may have now or later against any purchaser of such a participation interest unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure insolvency of any holder of any interest in the Loans. Borrower further agrees that ***the purchaser of any such participation interests may enforce interests*** irrespective of any personal claims or defenses that Borrower may have against Lender.

From the foregoing provision, it is clear that the BLA restricts HSBC's ability to sell or transfer the Sadhwani loan only as to "one or more participation interests" in the loan. The parties clearly intended, and the banking industry usage confirms, that "participation" means a lead bank selling or transferring a portion of the loan to another bank or financial institution, not a fishing company. Other provisions of the BLA demonstrate this intention: "Recovery of Additional Costs", (BLA, p. 4) refers to the "reserve requirements, capital adequacy requirements or other obligations" which would increase the cost to the Lender for extending or maintaining the credit facilities; "Right of Setoff" (BLA, p. 5) refers to the Lender's right to setoff the loan payments from "Borrower's accounts with Lender;" and "Events of Default", (BLA, p. 5), refers to the Lender's ability to deem itself "insecure, and to initiate steps which the "Lender deems in Lender's sole discretion sufficient to cure the default." There are all terms and conditions that refer to and support the sale or transfer of participation interests in the Sadhwani loan to another bank or financial institution.

In addition, HSBC has conceded in pleadings filed in the district court that on December 29, 1997, the parties mutually executed a Renewal and Amendment of Credit Facilities and "memorialized the terms of the Renewal and Amendment of Credit Facilities by executing that certain Business Loan Agreement which took effect as of December 31, 1997." (HSBC's Memorandum of Points and Authorities in Support of Motion to Strike Jury Trial Demand at 2) The Renewal and Amendment of Credit Facilities ("Renewal") also supports the intention of the parties that any sale of the Sadhwani loan would be restricted only to banks or financial institutions. The Renewal states that the loan facilities are "subject to review at any time and in any event by 31 October 1998 and also subject to our overriding right of withdrawal and repayment on demand." (Renewal, p.1) The Renewal also provides that the "the Bank's Base Lending Rates means the base index rate established by the New York Office of the Bank from time to time in good faith in its discretion for general pricing of the short term loans to ordinary commercial borrowers." (Renewal, p.2) The Renewal states that the repayment terms are "[i]nterest monthly, principal payable on demand. Interest charges will be automatically charged from the checking account; and due at

Arriola, Cowan & Arriola

PAGE 3

Duncan C. McCully, Esq.
McCully & Beggs
Re: Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al. District Court of Guam, Civil Case No. CV03-00036
June 24, 2004

sight." (Id.) HSBC reserved in the Renewal its "customary overriding right of repayment upon demand." (Id., p. 4) Finally, the Renewal states, "[i]f the effect of any, or a change in any, law or regulation is to increase the cost to us of advancing, maintaining or funding this facility, . . . we reserve the right to require payment on demand . . . " (Id.)

All of the above establishes that the BLA restricted HSBC's ability to sell or transfer the SAdhwani loan to sale of "one or more participation interests" in the loan. The sale of the Sadhwani loan to PMC does not constitute a sale "of one or more participation interest in the loan to one or more purchasers..." Accordingly, the sale of the Sadhwani's loan to PMC is in violation of the BLA.

The BLA was executed on December 31, 1997, the same date that the Promissory Note between HSBC and K. Sadhwani's, Inc. was executed. 13 G.C.A. § 3119 (1) provides as follows:

> **§3119. Other Writings Affecting Instrument.** (1) As between the obligor and his immediate obligee or any transferee ***the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction***, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.

The BLA was "executed as a part of the same transaction" and executed on the same date as the Promissory Note. The BLA expressly refers to and incorporates by reference therein, all notes executed by the Sadhwanis and evidencing their loan obligations in favor of HSBC, including the Promissory Note. (BLA p. 1) The BLA also expressly defines "Loan" to mean and include "without limitation any and all commercial loans and financial accommodations" from HSBC to the Sadhwanis, "whether now or hereafter existing." (BLA p. 1) The BLA modified or "affected" the Promissory Note by explicitly restricting the sale or transfer of the Sadhwani loan to one or more participation interests only, and not to a third-party purchaser such as PMC. Accordingly, PMC took the Promissory Note subject to the express limitation under the BLA that HSBC could only sell one or more participation interests in the Sadhwani loan.

Section 3119 contains an exception for a "holder in due course." Even assuming that PMC would otherwise be a "holder in due course" (which the Sadhwanis dispute) PMC had "notice" of the limitation contained in the BLA when it took the Promissory Note. 19 G.C.A. §1201(25)(a)-(c). For similar reasons, PMC is not a "holder in due course", as it took the Promissory Note with notice of the Sadhwanis' claim to it, which was explicitly contained in the BLA. 19 G.C.A. §3302(1)(c).