JACQUES G. BRONZE
LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES
LAW OFFICES OF RICHARD A. PIPES
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001



FILED
DISTRICT COURT OF GUAM
AUG 2 0 2004
MARY L. M. MORAN
CLERK OF COURT

Attorneys for Defendant The Hongkong and Shanghai Banking Corporation Ltd.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>    Defendants. | CIVIL CASE NO. 03-00036<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO BIFURCATE TRIAL; REQUEST FOR ORAL ARGUMENT** |

Defendant The Hongkong and Shanghai Banking Corporation Limited ("HSBC") submits this memorandum of points and authorities in support of its Motion to Bifurcate Trial ("Motion"). HSBC also requests that the Motion be scheduled for oral argument.

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 2 of 7 pages

Since 1938 Federal Rural of Civil Procedure 42(b) has authorized federal judges to try issues separately, a procedure commonly known as bifurcation. In its most familiar form, the issues of liability and damages are tried separately, with the jury usually hearing and deciding liability first. Judges have used Rule 42(b) to separate the trial of discrete issues, such as affirmative defenses or punitive damages. *See, e.g., Scheufler v. General Host Corp.*, 895 F. Supp. 1411, 1414-15 (D. Kan. 1995); *Mattison v. Dallas Carrier Corp.*, 947 F. 2d 95, 110 (4th Cir. 1991); *Simpson v. Pittsburgh Corning Corp.*, 901 F. 2d 277, 283 (2d Cir. 1990)

On the surface, issue bifurcation promises a substantial potential for trial efficiency. In a unitary trial, the jury hears all of the evidence and decides all of the issues at the same time. In the large share of those cases where the jury finds for the defendant on liability, however, all of the trial time spent presenting evidence on damages has been wasted. Bifurcation also saves trial time even in cases where the plaintiff prevails on liability because of the parties will often settle instead of proceeding with the damages stage. *See, Hans Zeisel & Thomas Callahan, Split Trials and Time Saving; A Statistical Analysis*, 76 Harv. L. Rev. 1606, 1607-08 (1963)

The courts have broad authority to try issues and claims separately, pursuant to Rule 42(b) "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." If any one of these factors is present, it is sufficient to warrant a district court's order of a separate trial. *Dollar System, Inc. v. Avcar Leasing, Inc.*, 890 F. 2d 165, 170 (9th Cir. 1989); *Treece v. Hochstetler*, 213 F. 3d 360, 365 (7th Cir. 2000).

When a jury's reaction to potentially prejudicial material contained within one claim or

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 3 of 7 pages

issue threatens to injure a litigant, courts are authorized to bifurcate the case and separately try other issues in the action first, so as to minimize the risk of untoward prejudice. *Mattison v. Dallas Carrier Corp., supra, 947 F. 2d at 110* (when evidence relevant to appropriate amount of punitive damages will be prejudicial to a jury's consideration of liability or compensatory damages, bifurcation of trial remains available solution).

Cases where liability and damages may be effectively separated often have been held to the proper subjects for bifurcation. *Moore's Fed. Prac. 3D. § 42.20[6][b]*. As might be expected in light of reaction to the more general question of bifurcating liability and damages, Rule 42 (b) authorizes presentation of evidence relating to punitive damages after the jury's determination of other issues, thereby insulating the jury from considering that evidence while determining liability and compensatory damages. *Id. at § 42.20[6][c]; Mattison v. Dallas Carrier Corp., supra, 947 F. 2d at 110.*

When ordering separate trials, the district court is authorized to stay discovery as to a second claim or issue, if appropriate. *In re Master Key Antitrust Litigation, 528 F. 2d 5,14 (2d Cir. 1975).* Indeed, one of the primary purposes of bifurcation is to defer costly discovery pending resolution of preliminary issues such as liability. *Moore's Fed. Prac. 3D § 42.23[3].*

Claims alleging punitive damages are frequently bifurcated for trial. *Id. at §42.24[1].* One of the primary reasons for bifurcation of a punitive damages claim is that the prejudice to the defendants from the introduction of evidence on punitive damages frequently outweighs any inconvenience the plaintiffs might suffer, if any, in having to present proof of compensatory

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 4 of 7 pages

damages separately from the punitive damage evidence. *Id.; North Dakota Fair Housing Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (N. D. 2004) (defendants' financial condition and net worth should not be presented to the jury during the first phase of trial on liability and compensatory damages; evidence of defendants' net worth can have an adverse effect on jury deliberations concerning liability and compensatory damages); *Bowen v. W. R. Grace & Co.*, 781 F. Supp. 682, 683 (D. Mont. 1991); *State Farm Fire & Casualty Co. v. Woods*, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (net worth information in liability phase of trial "could severely prejudice" party in calculation of actual damages); *Scheufler v. General Host Corp., supra*, 895 F. Supp. at 1414 (bifurcation would also prevent possible prejudice to defendant and eliminate possibility that jury would consider evidence for improper purpose). Studies have shown that juries in unitary trials appear to use damages evidence to support their substantive decisions, particularly causation. Irwin Horowitz & Kenneth Bordens, *An Experimental Investigation of Procedural Issues in Complex Tort Trials*, 14 Law & Hum. Behav. 269, 283-84 (1990). Of course, this is exactly the type of prejudice which bifurcation will avoid.

It appears that the federal judiciary as a whole is overwhelmingly supportive of bifurcation. Judges love bifurcation, or at least so they say. According to a 1987 Harris poll, federal judges "overwhelmingly support" bifurcation. Lewis Harris, *Judge's Opinions on Procedural Issues; A Survey of State and Federal Trial Judges Who Spend At Least Half Their Time On General Civil Cases*, 69 B. U. L. Rev. 731, 733-34; See also, John K. Setear, Comment, *Judge's Opinions on Procedural Issues*, 69 B. U. L. Rev. 765, 778 (1989). Of the federal judges whose jurisdiction's rules allowed

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 5 of 7 pages

bifurcation, 94% said they had bifurcated at least one case. When they did bifurcate, the judges were very pleased with the results. Of the group who had bifurcated, 84% stated that bifurcation helped the process, compared to only 3% who stated it did not help the process. When asked if bifurcation had a positive or negative impact on specific aspects of litigation, the federal judges were similarly complementary: 82% said bifurcation speeded up the trial process, 85% said bifurcation expedited settlement, 79% said bifurcation reduced transaction costs, and 80% said bifurcation improved the fairness of the outcome. Thus, as the authors of the Harris poll noted, "bifurcation has few critics among judges." *Id.*

In this case, Plaintiffs are requesting punitive damages against HSBC. Plaintiffs have served a Fifth Set of Requests for Production of Documents ("Fifth Request"), a true copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference. The Fifth Request demands production of all of HSBC's financial statements, tax returns, profit and loss statements, earnings calculations, auditor's reports, net worth calculations, gross income calculations, periodic financial reports, confidential reports submitted to regulatory authorities, all documents that refer to the countries or jurisdictions in which HSBC has branches, all documents that relate to the number of employees HSBC has in all of its branches and offices, and all documents that relate to HSBC's ranking to other banks.[1] *See, Exh "A" at Request Nos. 7 - 26.* Obviously, Plaintiffs intend to use the financial documents and information requested in the Fifth Request to provide a basis for computing an amount of punitive damages. It is

---

[1] The Fifth Request is clearly objectionable for a number of reasons and HSBC has or will lodge objections to all such requests.

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 6 of 7 pages

equally clear that such evidence has absolutely no relevance to the determination of HSBC's liability for the claims asserted by Plaintiffs and the computation of any compensatory damages to which Plaintiffs may be entitled.

In this case, the Court will save time and expense by bifurcating the trial. The initial phase of the case should cover liability, compensatory damages, and the issue of whether Plaintiffs are entitled to punitive damages. If the fact-finder determines that Plaintiffs are entitled to punitive damages, then the trial should proceed to the second phase, with the same fact-finder, to hear relevant evidence concerning HSBC's financial condition. If the fact-finder determines in the first phase that HSBC is not liable for punitive damages, then there will be no need to proceed to the second phase and the Court, the parties, and the fact-finder will have been saved the time and expense of the presentation of evidence of HSBC's financial condition.[2] Any inconvenience to the Plaintiffs is non-existent to minimal because the same fact-finder would determine the amount of punitive damages immediately after the completion of the first phase of the trial, assuming the fact-finder answers the punitive damages liability question in the affirmative.

As discussed above, another important reason to bifurcate is the prejudice to HSBC by the fact-finder improperly considering evidence of HSBC's financial condition when determining issues of liability and compensatory damages. It is clear that what Plaintiffs intend

---

[2] Plaintiffs may argue that the presentation of evidence on the amount of punitive damages will take little time. However, at a minimum, HSBC will certainly call its own financial consultants and experts to testify on such matters and rebut evidence presented by the Plaintiffs. Evidence on these issues may well take days to present.

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial; Request for Oral Argument
Page 7 of 7 pages

to do is present evidence to the fact-finder that HSBC has vast and unlimited resources and is one of the largest banks in the world and, therefore, HSBC can well afford to pay damages to Plaintiffs, even if liability is not proven. The fact that juries are prejudiced by the introduction of information on the financial condition of the defendant during the liability phase of a trial is well documented, as shown above. Bifurcation of the trial will eliminate this prejudice.

Accordingly, HSBC moves this Court for an Order bifurcating the trial in this case into two phases. The first phase will be on liability, compensatory damages, and whether HSBC is liable for punitive damages. Should the fact-finder answer the liability question on the issue of punitive damages in the Plaintiffs' favor in the first phase of the trial of this action, then Plaintiffs may present evidence relevant to the amount of punitive damages before the same jury in the second phase of the trial. Evidence relevant only to the amount of punitive damages sought by Plaintiffs against HSBC should not be introduced during the liability phase of the trial in this case.

Dated this 16th day of August, 2004.

LAW OFFICES OF RICHARD A. PIPES
Attorneys for Defendant The Hongkong and Shanghai Banking Corporation Ltd.

By: _____
RICHARD A. PIPES

JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

Counsel for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br>    Plaintiffs,<br><br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br>    Defendants. | CIVIL CASE NO. 03-00036<br><br>**PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

**TO: DEFENDANT HONGKONG SHANGHAI BANKING CORPORATION, LTD. AND ITS COUNSEL OF RECORD JACQUES A. BRONZE**

Plaintiffs Alan Sadhwani, et al. request that defendant produce and permit plaintiffs to inspect and to copy each of the following documents.

The place of inspection shall be Arriola, Cowan & Arriola, 259 Martyr Street, Suite 201, Hagatna, Guam 96910. The date and time for inspection shall be August 16, 2004, at 9 a.m., and continuing so long as is reasonably required.

## DEFINITIONS

As used herein, the following definitions shall apply:

    a.    "HSBC" means HongKong Shanghai Banking Corporation, Ltd.

EXHIBIT A

b. "DOCUMENTS" includes, but is not limited to, handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any written, recorded, or graphic matter however produced or reproduced, including, but not limited to, electronic files, documents, records or data, documents stored in or retrievable by computer, memoranda, reports, studies, analyses, contracts, agreements, checks, charts, graphs, indices, data sheets, computer disks, data processing cards or tapes, notes, post-its, work papers, entries, letters, telegrams, telecopies (including facsimiles), internal memoranda, advertisements, brochures, circulars, catalogs, tapes, records, bulletins, papers, books, pamphlets, accounts, calendars, or diaries. The term "document" or "documents" shall also include any carbon or photographic or any other copies, reproductions, or facsimiles or any original, and shall mean the original an any copy or reproduction or facsimile that is in any way different from the original.

c. "This action" means *Alan Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation, Ltd.*, Civil Case No. 03-00036 (U.S. District Court of Guam).

d. "Net worth" means assets minus liabilities.

e. "Regulatory authority" means any governmental agency, commission, board or other entity that regulates, oversees or supervises operation of banks or financial institutions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

The documents to be produced are:

1. All DOCUMENTS concerning, relating to, or comprising emails, correspondence, or other communications between HSBC and any lawyers or law firms in which HSBC solicited legal services to be performed in this action.

-2-

2. All DOCUMENTS concerning, relating to, or comprising emails, correspondence, or other communications received by HSBC from any lawyers or law firms in response to the communications referenced in Request No. 1, above.

3. All DOCUMENTS concerning, relating to, or comprising fee agreements and amendments thereto between HSBC and the following law firms for services to be performed in this action:

    A. Bronze & Tang, P.C.;

    B. Law Offices of Richard Pipes;

    C. Johnson Stokes & Master;

    D. Abdul Wahid Alulama;

    E. Balgos & Perez;

    F. Any other law firm that has performed and/or is performing services in this action.

4. All DOCUMENTS concerning, relating to, or comprising billings or invoices received from the following law firms for services performed in this action:

    A. Bronze & Tang, P.C.;

    B. Law Offices of Richard Pipes;

    C. Johnson Stokes & Master;

    D. Abdul Wahid Alulama;

    E. Balgos & Perez;

    F. Any other law firm that has performed and/or is performing services in this action.

5. All DOCUMENTS concerning, relating to, or comprising checks, copies of checks, wire transfers, billing receipts and the like evidencing payment for services performed in this action by the following law firms:

    A. Bronze & Tang, P.C.;

    B. Law Offices of Richard Pipes;

    C. Johnson Stokes & Master;

    D. Abdul Wahid Alulama;

    E. Balgos & Perez;

    F. Any other law firm that has performed and/or is performing services in this action.

6. All DOCUMENTS that support, address, refer to, or relate to HSBC's counterclaim for attorneys fees and costs in this action.

7. All DOCUMENTS comprising or containing financial statements for HSBC from 1999 to 2004, including but not limited to audited or unaudited financial statements, and annual or quarterly financial statements.

8. All DOCUMENTS comprising or containing HSBC's corporate, income and all other tax returns filed with any taxing authority from 1999 to 2004.

9. All DOCUMENTS comprising or containing balance sheets for HSBC from 1999 to 2004.

10. All DOCUMENTS comprising or containing profit and loss statements for HSBC from 1999 to 2004.

-4-

11. All DOCUMENTS comprising or containing HSBC's earnings, including but not limited to retained or net earnings, from 1999 to 2004.

12. All DOCUMENTS comprising or containing independent accountant's or independent auditor's reports for HSBC from 1999 to 2004.

13. All DOCUMENTS comprising, referring to, or containing HSBC's net worth from 1999 to 2004.

14. All DOCUMENTS comprising or containing HSBC's gross income (i.e., total amount of income from all sources) from 1999 to 2004.

15. All DOCUMENTS comprising or containing HSBC's net income (i.e., the excess of total revenues over expenses and taxes) from 1999 to 2004.

16. All DOCUMENTS comprising or containing HSBC's net worth submitted to any regulatory authority in Guam from 1999 to 2004.

17. All DOCUMENTS comprising or containing HSBC's net worth submitted to any regulatory authority in any jurisdiction other than Guam from 1999 to 2004.

18. All DOCUMENTS comprising or containing HSBC's annual, semi-annual, quarterly or monthly reports to any regulatory authority in Guam from 1999 to 2004.

19. All DOCUMENTS comprising or containing HSBC's annual, semi-annual, quarterly or monthly reports to any regulatory authority in Guam from 1999 to 2004.

20. All DOCUMENTS that address, refer to, or relate to the countries, territories and jurisdictions in which HSBC has branches or offices.

21. All DOCUMENTS that address, refer to, or relate to the number of HSBC's employees in all of HSBC's branches and offices.

-5-

22. All DOCUMENTS that address, refer to, or relate to HSBC's rank in comparison to other banks in the world, based on size.

23. All DOCUMENTS that address, refer to, or relate to HSBC's rank in comparison to other banks in the world, based on total number of branches and offices.

24. All DOCUMENTS that address, refer to, or relate to HSBC's rank in comparison to other banks in the world, based on total number of employees.

25. All DOCUMENTS that address, refer to, or relate to HSBC's rank in comparison to other banks in the world, based on total assets.

26. All DOCUMENTS that address, refer to, or relate to HSBC's rank in comparison to other banks in the world, based on types of and number of financial and banking services provided by HSBC.

Dated: July 16, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: *[signature]*
**ANITA P. ARRIOLA**

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on July 16, 2004, I caused to be served via hand delivery, **PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** to:

>Jacques G. Bronze, Esq.
>Bronze & Tang, P.C.
>2nd Floor, BankPacific Building
>825 S. Marine Drive
>Tamuning, Guam 96913

Dated this 16th day of July, 2004.

_____
ANITA P. ARRIOLA