# JACQUES G. BRONZE
## LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

# RICHARD A. PIPES
## LAW OFFICES OF RICHARD A. PIPES
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001



DISTRICT COURT OF GUAM
**FILED**
AUG 3 0 2004
MARY L. M. MORAN
CLERK OF COURT
252

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, )))) | CIVIL CASE NO. 03-00036 |
| Plaintiffs, )) | |
| v. )) | |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., ))))) | |
| Defendants. )) | |

**HONGKONG AND SHANGHAI BANKING
CORPORATION, LTD.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
FIRST, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION**

ORIGINAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bank of America v. City and County of San Francisco, 309 F.3d 551,
557-58 (9th Cir. 2002), cert. den., 123 S. Ct. 2220 .............................................................. 14

Bohm v. Union Bank of Tennessee, 794 F. Supp. 158,
161 (WD Pa. 1992) .............................................................................................................. 11

Brown v. Lynn, 392 F. Supp. 559, 561-62 (N.D. Ill. 1975) ........................................................ 17

Citizens First Nat'l Bank v. Moe Motor Co., 813 P.2d
400, 403 (Mont. 1991) ................................................................................................... 5, 14

Continental Bank N.A. v. Everett, 760 F. Supp. 713,
717 (ND Ill 1991) ............................................................................................................... 11

Cooperative Centrale Ruiffeisern - Boerenleen Bank B.A. v. Bailey,
(C.D. Cal; 1989) 710 F. Supp. 737 .................................................................................... 5

Credit Managers Assn. v. Superior Court, Cal. App. 3d
352, 359-60 (1975) ............................................................................................................. 12

Crisci v. Security Ins. Co., 66 Cal.2d 425, 432,
fn.3, 58 CR 13 (1967) .......................................................................................................... 3

Denholm v. Houghton Mifflin Co., 912 F.2d 357, 361 (9th Cir. 1990) ...................................... 4

Ebenhoh v. Production Credit Association of Southeast Minnesota,
426 N.W.2d 490, 493 (Minn. App. 1988) ......................................................................... 17

Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809,
169 CR 691 (1979) .......................................................................................................... 2, 3

First State Bank of Hudson County v. U.S., 599 F.2d 558,
564 (3rd Cir. 1979), cert. den., 444 U.S. 1013 (1980) ...................................................... 17

Foley v. Interactive Data Corp., 47 Cal. 3d 654,
684-685, 254 CR 211 (1988) ........................................................................................... 2, 4

Freeman & Mills Inc. v. Belcher Oil Co.,
44 CR2d 420 (Cal. 1995) ................................................................................................. 3, 4

Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990) ......................................................... 13

Case 1:03-cv-00036   Document 267   Filed 08/30/2004   Page 2 of 24

**Cases**

Graney Development Corp. v. Taksen, 400 N.Y.S. 2d 717 (Sup. 1978),
aff'd, 411 N.Y.S. 2d 756 (App. Div. 1978) .......................................................................................... 16

Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993) ........................................................................ 3

In re Letterman Bros. Energy Securities Litigation,
799 F.2d 967 (5th Cir. 1986) ................................................................................................................. 13

In re Rexplore, Inc. Securities Litigation, 685 F. Supp.
1132 (ND Cal. 1988) ............................................................................................................................. 13

Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986) .................................................................................... 13

Mans v. Peoples Bank of Imboden, 10 S.W.3d 885, 889-890 (Ark. 2000) ................................................ 13

Manufacturers Hanover Trust Co., v. Yanakas,
7 F.3d 310, 318 (2nd Cir. 1993) ..................................................................................................... 11, 14

Morse v. Crocker Nat. Bank, 142 Cal. App. 3d 228, 232 (1983) .............................................................. 11

NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997) ......................................................................... 11

Northwestern Bank v. Neal, (S.C.; 1978) 248 S.E. 2d. 585 .................................................................... 5, 6

Paradise Hotel Corp. v. Bank of Nova Scotia,
842 F.2d 47, 53 (3rd Cir. 1988) ............................................................................................................ 13

Production Credit Assn. of Midlands v. Eldin Haussermann Farms, Inc.,
529 N.W.2d 26 (Neb. 1995) .................................................................................................................... 5

Regency Savings Bank, F.S.B. v. Merritt Park Lands Associates, 139 F. Supp. 2d 462,
2001 U.S. Dist. LEXIS 4406 (S.D.N.Y. 2001) ..................................................................................... 7

Reno v. DH Cattle Holdings Company, (Sup. Ct. App. Div. N.Y., 1993)
196 A.D. 2d 670 ...................................................................................................................................... 6

Rutherford v. Rideout Bank, 11 Cal.2d 479, 481 (1938) .......................................................................... 12

Saglio v. Chrysler First Commercial Corp., 839 F. Supp.
830, 833 (MD Fla. 1993) ...................................................................................................................... 11

Seamen's Direct Buying Service v. Standard Oil Co.,
206 CR 354 (1984) .................................................................................................................................. 3

## Cases

State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d
231, 2002 U.S. Dist. LEXIS 15265 (S.D.N.Y. 2002) .......................................................................... 7

State v. Security Nat'l Bank & Trust Co., 922 P.2d
600, 603 n.4 (Okla. 1996) ................................................................................................................ 7

Stenberg v. Northwestern Nat. Bank of Rochester,
307 Minn. 487, 238 N.W.2d 218 (1976) ......................................................................................... 13

Travel Services Network, Inc. v. Presidential Financial Corp. of MA,
959 F. Supp 135, 144 (D. Conn. 1997) .......................................................................................... 14

Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989) ............................................................ 13

Wallis v. Superior Court, 160 Cal. App. 3d 1109,
1116-18, 207 CR 123, 127-129 (1984) ....................................................................................... 4, 5

Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982) ....................................................................... 13

## Statutes and Rules

13 G.C.A. § 3104 ............................................................................................................................. 10, 16

13 G.C.A. § 3105(2)(a) ......................................................................................................................... 5, 6

13 G.C.A. § 3110(1) ................................................................................................................................. 8

13 G.C.A. § 3119(2) ............................................................................................................................ 5, 6

13 G.C.A. § 3201 .............................................................................................................................. 10, 16

13 G.C.A. § 3202 .............................................................................................................................. 10, 16

15 U.S.C. § 6802(b)(1) ............................................................................................................................ 14

15 U.S.C. § 6802(e)(1)(C) ....................................................................................................................... 14

15 U.S.C. § 6802(e)(7) ....................................................................................................................... 14, 15

**Statutes and Rules**

18 G.C.A. § 81102 ................................................................................................................... 10

18 G.C.A. § 81103 ................................................................................................................... 10

18 G.C.A. § 85102 ..................................................................................................................... 9

18 G.C.A. § 85501 ................................................................................................................... 10

18 G.C.A. § 86101 ..................................................................................................................... 9

18 G.C.A. § 86103 ..................................................................................................................... 9

28 U.S.C. § 1322 ........................................................................................................................ 1

48 U.S.C. 1424 ........................................................................................................................... 1

FRCP 12(b)(6) ............................................................................................................................ 1

**Miscellaneous**

68 A.L.R. 2d 883 ....................................................................................................................... 3

BENDER'S UNIFORM COMMERCIAL CODE SERVICE, VOL. 2, § 2.10A ......................................... 6

GRAMMN-LEACH-BLILEY ACT ......................................................................................... 14, 15

OFFICIAL UCC COMMENT 5 TO CODE SECTION 3119(2) ....................................................... 5, 6

OFFICIAL UCC COMMENT ON SECTION 3105(2)(a) ................................................................. 5

RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (1981) ...................................................... 10

RESTATEMENT (SECOND) OF CONTRACTS, § 205, COMMENT A (1981) ........................................ 2

## JURISDICTION

This action is before this Court under federal diversity jurisdiction pursuant to 28 U.S.C. § 1322 and 48 U.S.C. § 1424. This Court has authority to hear this motion pursuant to FRCP 12(b)(6).

## PROCEDURAL FACTS

On or about October 21, 2003, Plaintiffs filed their Complaint alleging six causes of action. On December 30, 2003, Hongkong and Shanghai Banking Corporation, Ltd. ("HSBC") filed its Motion to Dismiss the Plaintiffs' entire Complaint pursuant to FRCP 12(b)(6). On April 9, 2004, District Judge John S. Unpingco, granted HSBC's Motion to Dismiss as to the Third and Sixth Causes of Action. See, Order of April 9, 2004. However, the dismissal was "without prejudice." Id.

On April 27, 2004, Plaintiffs' filed their First Amended Complaint for Damages ("FAC") amending Counts Three and Six. However, Plaintiffs surreptitiously, without leave of court, asserted new facts in their FAC. On April 30, 2004, HSBC filed its Motion to Strike the FAC in whole or in part, or in the Alternative, Dismiss the Third and Sixth Causes of Action. On May 28, 2004, Judge Dean D. Pregerson issued an Order granting HSBC's Motion to Dismiss the FAC in its entirety.

On June 2, 2004, Plaintiffs filed their Second Amended Complaint ("SAC"). Then, pursuant to that certain Stipulation dated August 18, 2004, HSBC stipulated to permitting Plaintiffs to file their Third Amended Complaint ("TAC"). On August 16, 2004, Plaintiffs filed their TAC alleging eight causes of action: Breach of the Covenant of Good Faith and Fair Dealing; Intentional Misrepresentation; Breach of Contract under the Promissory Note and Business Loan Agreement; Breach of Contract under the Promissory Note Modification Agreement, Breach of Contract under the Workout Agreement; Breach of Fiduciary Duty; and Breach of Duty Not to Divulge Plaintiffs' Confidential Banking Information and Punitive Damages.

I

## PLAINTIFFS' FIRST CAUSE OF ACTION FAILS AS A MATTER OF LAW SINCE THE MAJORITY OF COURTS HAVE CONSISTENTLY HELD THAT TORT LIABILITY FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD NOT BE EXTENDED TO INCLUDE THE RELATIONSHIP BETWEEN BANKS AND COMMERCIAL BORROWERS.

HSBC concedes that all contracts contain an implied covenant of good faith and fair dealing. See, RESTATEMENT (SECOND) OF CONTRACTS, § 205, COMMENT A (1981). The concept of bad faith as a tort originated in the insurance arena. Although the rationale that justifies the extension of the bad faith cause of action to first-party insurance cases[1] could be applied to ordinary commercial contract cases as well, the courts have almost unanimously refused to do so.[2]

Unlike other commercial contract situations, tort recovery in insurance law is considered appropriate for a variety of policy reasons. Unlike most other contracts for goods and services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility. See, Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684-685, 254 CR 211 (1988), citing, Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 CR 691 (1979). In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of accident or other catastrophe. See, Foley, supra, at p.684. Moreover, an insured faces a unique "economic dilemma" when an insurer breaches the implied covenant of good faith and fair dealing. Id at p. 692. Unlike other

---

[1] Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970).

[2] Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F2d 698 (7th Cir. 1984); Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984); Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985); Sinclair Broadcast Group, Inc. v. Bank of Montreal, 1995 WL 70577 (S.D.N.Y. 1995); In re Mullaney, 179 BR 942 (D.Colo. 1995); French American Banking Corp., v. Flota Merante Grancolombiana, S.A., 609 F. Supp. 1352 (S.D.N.Y.1985); Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo. 1987); Rigby Corp. v. Boatmen's Bank & Trust Co., 713 SW2d 517 (Mo.App. 1986); Union State Bank v. Woell, 434 NW2d 712 (ND 1989); Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) (action in tort for violation of implied in law duty of good faith and fair dealing applies only to insurance contracts; court refuses to extend theory to commercial lending transaction); Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989); Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998); Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co., 763 SW2d 809 (Tex.App. Texarkana 1988); Charles E. Brauer Co. v. Nations Bank of VA, N.A., 466 SE2d 382 (1996); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989).

2

parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurer willing to pay for a loss already incurred. Id.

In addition, the tort duty of a liability insurer ordinarily is based on its assumption of the insured's defense and of settlement negotiations of third party claims. See, Crisci v. Security Ins. Co., 66 Cal.2d 425, 432, fn.3, 58 CR 13 (1967). The assumption of those responsibilities obligates the insurer to give at least as much consideration to the welfare of its insured as it gives to its own interests so as not to deprive the insured of the benefits of the insurance policy. See, Egan, supra at p. 818; 68 A.L.R. 2d 883. That is why courts have exercised great caution in considering whether to extend this exception in those cases to another contract setting.

California, being one of two states which had previously recognized the tort of bad faith denial of non-insurance contracts in the case of Seamen's Direct Buying Service v. Standard Oil Co., 206 CR 354 (1984), decided in 1995, that its decision was incorrect. In Freeman & Mills Inc. v. Belcher Oil Co., 44 CR2d 420 (Cal. 1995), the California Supreme Court specifically overruled the earlier decision in Seamen's. The California Supreme Court recognized that the lower court had had great difficulty in attempting to apply the theory, noting that one commentator had written "in recent decisions, almost every court offers a different interpretation of the tort."[3] The California Supreme Court in Freeman decided with approval of the Court of Appeals decision in Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993), where the court argued that public policy mitigated against awarding tort damages for breach of contract. Id. at p. 427-428. The reasons for denying the tort recovery included:

> (1) the different objectives underlying the remedies for tort or contract breach, (2) the importance of predictability in assuring commercial stability in contractual dealings, (3) the potential for converting every contract breached into a tort, with accompanying punitive damage recovery, and (4) the preference for legislative action in affording appropriate remedies.

---

[3] COMMENT, CALIFORNIA'S DETORTIFICATION OF CONTRACT LAW: IS THE SEAMEN'S TORT DEAD? 26 Loyola L.A. L. Rev. 213, 223 (1992).

3

Id. at p. 428.    As the court pointed out in Freeman, "of all States, only Montana has recognized the tort of bad faith in a typical arm's length commercial contracts, and recently even that State has qualified the tort by requiring a showing of a special relationship between the contracting parties." Id. at p. 428.

In the insurance arena, tort liability is predicated on proof of a "special relationship" between the insurer and insured.    See, Wallis v. Superior Court, 160 Cal. App. 3d 1109, 1116-18, 207 CR 123, 127-129 (1984).  Consistent with the Foley decision, the court in Wallis, found the following factors to be necessary prerequisites to tort liability:

(1)    the contract must be such that the parties are in inherently unequal bargaining positions;

(2)    the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection;

(3)    ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole";

(4)    one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and

(5)    the other party is aware of this vulnerability.

Wallis, 160 Cal. App. 3d at 1118; see also, Denholm v. Houghton Mifflin Co., 912 F.2d 357, 361 (9th Cir. 1990).

Plaintiffs' failure to meet any element of the aforementioned test is a basis to determine that no "special relationship" existed as contemplated under Wallis.  In the instant case, Plaintiffs owned "prime properties" on Guam worth "… much more than $12 million dollars" and claim to have deposited about a "$100 million dollars with HSBC during its 25-year relationship with HSBC."  See, ¶¶ 5 and 28 of TAC. Based on the above, one cannot find that the parties were in an "inherently unequal bargaining position." That both parties entered into the banking relationship for profit is beyond dispute.  Furthermore, Plaintiffs offer no evidence as to the inadequacies of ordinary contract damages nor have they shown that they were in anyway vulnerable.  Thus, there is no basis to establish the type of "special relationship"

4

contemplated in Wallis. Courts have been willing to find no special relationship as a matter of law,[4] even in the case of lending relationships existing thirty years and more. Production Credit Assn. of Midlands v. Eldin Haussermann Farms, Inc., 529 N.W.2d 26 (Neb. 1995); Citizens First Nat'l Bank v. Moe Motor Co., 813 P.2d 400, 403 (Mont. 1991) (30-year lending relationship did not constitute special relationship as a matter of law). As a result, Plaintiffs' first cause of action for bad faith should be dismissed.

## II

## THE BUSINESS LOAN AGREEMENT DOES NOT AFFECT THE NEGOTIABILITY OF THE PROMISSORY NOTE, THUS, THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED.

Even though the Business Loan Agreement ("BLA") and the Promissory Note were not signed on the same day, the BLA did not – and cannot – affect the negotiability of the Promissory Note. It is well established that the negotiability of a note is only determined from the face of the document itself. "The negotiability of an instrument is always to be determined by what appears on the face of the instrument alone. . ." See, OFFICIAL UCC COMMENT 5 TO CODE SECTION 3119(2). See also, 13 G.C.A. § 3119(2). "Whether an instrument is negotiable is a question of law to be determined solely from the face of the instrument, without reference to the intent of the parties." Cooperative Centrale Ruiffeisern - Boerenleen Bank B.A. v. Bailey, (C.D. Cal; 1989) 710 F. Supp. 737. Similarly, the OFFICIAL UCC COMMENT ON SECTION 3105(2)(a) states that the purpose of the rule causing a note to be non-negotiable if on its face it states it is governed by a separate agreement is "to make it clear that, so far as negotiability is affected, the conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself." See also, 13 G.C.A. § 3105(2)(a); Northwestern Bank v. Neal, (S.C.; 1978) 248 S.E. 2d. 585.

---

[4]  See, Standard Wire & Cable Co. v. Ameritrust Corp., 697 F. Supp. 368, 373 (C.D. Cal. 1988) (borrower failed to establish any fact issues as to existence of special relationship with lender); Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1226-27 (Okla. 1988) (lender owed no duty of good faith and fair dealing to commercial borrower); FDIC v. Coleman, 795 S.W.2d 706 (Tex. 1990) (creditor-guarantor relationship does not create duty of good faith). See also, Copesky v. Superior Court of San Diego County, 229 Cal. App. 3d 678, 280 Cal. Rptr. 338 (1991); Black Canyon Racketball Club, Inc. v. Idaho First Nat'l Bank, 804 P.2d 900 (Idaho 1991).

It is equally clear that 13 G.C.A. § 3119(2) means just what it says – "a separate agreement cannot affect the negotiability of an instrument." "The existence of a separate writing, no matter what its terms, does not affect the negotiability of the instrument itself," unless the instrument itself says that it is "subject to" or "governed by" the separate writing. BENDER'S UNIFORM COMMERCIAL CODE SERVICE, VOL. 2, § 2.10A, p. 2-122.

In Northwestern Bank, supra, the defendant/promisor asserted an argument similar to that made by the Plaintiffs in this case. He asserted that a conditional sales contract which he executed simultaneously with a promissory note should be read together with the promissory note. As here, his promisee had assigned both the note and the conditional sales contract to the plaintiff bank. The trial court concluded that provisions of the conditional sales contract merged into the note and therefore it was not negotiable and the bank lost its status as holder in due course. The Supreme Court of North Carolina held that because the note and conditional sales contracts were separate documents, the conditional sales contract did not affect the negotiability of the note under Section 3119(2). Even though the bank had notice of the conditional sales contract, it did not create a defense to the banks enforcement of the note as a holder in due course.

Similarly, in Reno v. DH Cattle Holdings Company, (Sup. Ct. App. Div. N.Y., 1993) 196 A.D. 2d 670, the court dismissed a challenge to the negotiability of a note, after suit by the holder, holding that negotiability is determined from the note itself and Section 3119(2) prevents another agreement – even one referred to in the note-from defeating negotiability.

The Plaintiffs' primary argument in their third cause of action is that the BLA's authorization for HSBC to sell participating interests limited the negotiability of the note to partial assignments to banks. See, ¶¶ 44 and 45 of TAC. This argument is a direct attack on the negotiability of the note based on provisions of a separate document and runs squarely into the rule of 13 G.C.A. § 3119(2). Because the Promissory Note's negotiability was unaffected by the BLA, HSBC was free to assign the note to Paradise Marine Corporation ("PMC"). Thus, Plaintiffs' Third Cause of Action should be dismissed.

6

### (a) Even if the BLA could affect the negotiability of the Note, the BLA imposed no restrictions on the transfer or negotiation of the loan.

The Plaintiffs assert that the Consent to Loan Participation section to the BLA "... modified the Promissory Note by explicitly restricting the sale or transfer of the Loan to one or more participation interests only." See, ¶ 44 of TAC. However, nothing in this section restricted, limited or modified impliedly any of HSBC's rights.[5] The section is simply – and no more – than what its caption says it is – K. Sadhwani's Inc. consent for HSBC to sell one or more "participation interests" to "purchasers." Nowhere in the section is it stated that HSBC cannot transfer or assign the entire loan to a non-bank. Banks and financial institutions are not even mentioned. The section is the grant of a right, not a limitation. The Plaintiffs' argument that the section restricts – or was intended to restrict – HSBC's rights, is logically flawed.

A loan participation is an agreement utilized when "two or more lenders join a loan with each lender loaning a portion of the amount to the borrower."[6] See, State v. Security Nat'l Bank & Trust Co., 922 P.2d 600, 603 n.4 (Okla. 1996). Contrary to Plaintiffs' allegation that HSBC would only be limited to transfer a portion of the loan, a lender can also sell a 100 percent interest in the loan, as opposed to only a certain percentage. See, State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d 231, 2002 U.S. Dist. LEXIS 15265 (S.D.N.Y. 2002) (bank sold its entire interest to other banks, known as participants, retaining servicing rights); Regency Savings Bank, F.S.B. v. Merritt Park Lands Associates, 139 F. Supp. 2d 462, 2001 U.S. Dist. LEXIS 4406 (S.D.N.Y. 2001) (bank sold a 100% undivided participation interest in a mortgage).

---

[5] **Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans to one or more purchasers, whether related to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notice of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure or insolvency of any holder of any interest in the Loans. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

[6] Entities other than banks can also enter into participation agreements in connection with a loan. See, e.g., Turner v. City of Clearwater, 789 So. 2d 273; 2001 Fla. LEXIS 732 (2001).

The Plaintiffs' argument are that because K. Sadhwani's Inc. consented to HSBC assigning the loan in one type of financial transaction – participation– it was agreed that HSBC could not assign the loan in any other type of financial transaction – such as negotiation to a third party. There is no rule of contract construction that supports Plaintiffs' argument. The meaning of contract provisions is determined from the party's intent. The fact that the parties expressly consented to a particular type of transaction is not evidence that they intended other statutorily authorized and commercially common transactions to be prohibited or restricted. The Plaintiffs' argument is specious to the point of being intentionally misleading. HSBC is entitled to judgment as a matter of law dismissing the Plaintiffs' Third Cause of Action.

### (b) The BLA, the Promissory Note and other loan documents expressly authorized the transfer of the loan.

The loan documents expressly contemplated and authorized HSBC's transfer of the loan. As stated above, in its Promissory Note, K. Sadhwani's Inc. promised to pay to the "order" of HSBC. See, Exhibit C to TAC. When a promise is made to the "order" of another, the promissor is authorizing the assignment of the obligation. See, 13 G.C.A. § 3110(1). Clearly the parties agreed that HSBC would have the power to transfer the note.

Similarly, the BLA contemplated and therefore authorized HSBC to assign the loan. On its first page of the BLA defines "Lender" to mean HSBC, "its successors and assigns." On the last page, below the consent to Loan Participation section, appears the following provision:

> **Successors and Assigns.** All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure . . . .

### III

### THE FOURTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.

In support of their Fourth Cause of Action, titled "Breach of Contract-Promissory Note Modification Agreement," Plaintiffs' assert that while the Promissory Note Modification Agreement

8

("PMNA"), attached to the TAC as Exhibit "C", only extends the maturity date of the subject Note to August 31, 2003, the alleged "workout agreement" between the parties "implicitly extended the date of maturity" under the PMNA to a date unknown. TAC at ¶ 50. The "workout agreement" alleged by Plaintiffs is not clearly identified, however, it appears to be embodied in letters attached as Exhibits "G" "H" and "J" to the TAC. See, TAC at ¶¶ 12, 13 and 15.

Unfortunately for Plaintiffs, there are no documents attached to the TAC and no facts alleged therein that support Plaintiffs' conclusion that the maturity date of the note was "implicitly extended". Plaintiffs admit that the maturity date of the Note as specified in the PMNA is August 31, 2003. TAC at ¶ 50. There is nothing in either Exhibit "G" "H" or "J" from which it may be implied that either party ever contemplated, much less agreed to, an extension of the maturity date of the note. Plaintiffs allegation that the maturity date of the note was "implicitly extended" pursuant to the "workout agreement" is drawn from thin air and nothing more.

Further, it is simply of no consequence whether there was any agreement to extend the maturity date of the note because HSBC admittedly sold the note to PMC before it matured. Plaintiffs' conclusion that the PMNA was breached by HSBC when it sold the note is nothing more than sheer sophistry. Also, the operative loan agreement upon which the PMNA is based specifically provides that no amendment to the loan agreement or any related documents, including any promissory note, "shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment." See, Exhibit "B" attached to TAC. Plaintiffs cannot claim that the PMNA was "implicitly" amended by the "workout agreement" since the claimed extension was never reduced to writing, as required by the Business Loan Agreement. Accordingly, there was no "implicit extension".

Finally, Plaintiffs' claim of an "implied contract" fails to clear several other legal hurdles. Under Guam law, a contract is either express or implied. 18 G.C.A. § 86101. An "implied contract" is one in which the "existence and terms of (the contract) are manifested by conduct." 18 G.C.A. § 86103. One of the essential elements of all contracts is "sufficient cause or consideration". 18 G.C.A. § 85102. "Good consideration" is any benefit conferred upon the promisor or any prejudice suffered by the promisee that

9

at the time of consent he or she is not legally bound to suffer. 18 G.C.A. § 85501. As shown above, Plaintiffs have failed to plead any facts in the TAC, which show conduct on the part of HSBC, or, for that matter, on the part of Plaintiffs, which manifested any implied contract to extend the maturity date of the note. Further, Plaintiffs have failed to allege any facts showing there was any benefit conferred upon HSBC or detriment suffered by Plaintiffs that they were not already bound to suffer under the legal obligations they had a duty to perform pursuant to the subject loan. Accordingly, there was no conduct by the parties alleged showing an agreement to extend the maturity date and no consideration alleged. For these reasons alone, the Fourth Cause of Action fails to state a claim upon which relief can be granted.

As a fallback, Plaintiffs also assert in the Fourth Cause of Action that " [w]hen HSBC sold the loan to PMC, HSBC breached the Promissory Note Modification Agreement, as amended by the workout agreement." TAC at ¶ 50. This claim is a ruse and was earlier disposed of in this Court's April 9 Order.

A promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (1981). Even more importantly, Guam law specifically provides that a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 G.C.A. § 81102. Further, Guam law provides that even nonnegotiable instruments, including written contracts for the repayment of money, may be transferred just as if they were negotiable instruments. Id. at § 81103. Accordingly, HSBC had the explicit right under Guam law to sell the loan and note to PMC and needed no further consent to do so under the PMNA or the "workout agreement". Thus, Plaintiffs have no cognizable legal theory under the Fourth Cause of Action and it must be dismissed.

**AS A MATTER OF LAW, PLAINTIFFS' SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS BARRED SINCE THE RELATIONSHIP BETWEEN HSBC AND K. SADHWANI'S INC. WAS THAT OF A DEBTOR AND CREDITOR AND WITH ALAN AND LAJU SADHWANI WAS THAT OF GUARANTORS.**

Plaintiffs' allege that "[b]ecause of the longstanding, close and confidential relationship between HSBC and Plaintiffs, and by virtue of the trust and confidence which HSBC encouraged Plaintiffs to place in the bank and which Plaintiffs did place in the bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable workout, Defendant Bank owed to Plaintiffs a duty of fiduciary care." See, ¶ 58 of TAC.

K. Sadhwani's Inc. was a borrower of HSBC and a relationship between a lender and a borrower is described as that of a debtor and a creditor, not a fiduciary.[7]

The principle enunciated above applies with equal force to the relationship between a lender and any guarantors of the borrower's loans. See, Manufacturers Hanover Trust Co., v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993); Bohm v. Union Bank of Tennessee, 794 F. Supp. 158, 161 (WD Pa. 1992); Saglio v. Chrysler First Commercial Corp., 839 F. Supp. 830, 833 (MD Fla. 1993); NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997); Continental Bank N.A. v. Everett, 760 F. Supp. 713, 717 (ND Ill 1991). Even as a depositor, it has long been held as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." Morse v. Crocker Nat. Bank, 142 Cal. App. 3d 228, 232 (1983).

To be sure, borrowers and depositors expect banks to handle their loans and accounts properly. It is equally true that we expect car mechanics to repair our cars properly, and Payless Supermarkets to sell

_____

[7] See, Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2nd Cir. 1984); Motorcity of Jacksonville Ltd. v. Southeast Bank, N.A., 83 F.3d 1317 (11th Cir. 1996); Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989); Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927, 262 Cal.Rptr. 260, 278 (1989); Idaho First Nat. Bank v. David Steed & Associates, Inc., 121 Idaho 356, 825 P.2d 79 (1992); Dugan v. First Nat. Bank in Wichita, 227 Kan. 201, 606 P.2d 1009 (1980); Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194, N.W.2d 910 (1991); Klein v. First Edina Nat. Bank, 293 Minn. 418, 196 N.W.2d 619 (1972); Union State Bank v. Woell, 434 N.W.2d 712, (ND 1989); Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Assn, 786 S.W.2d 386, 391 (Tex.App. 1991); First Security Bank of Utah v. Banberry Development Corp., 786 P.2d 1326, 1332 (Utah 1990); Tokarz v. Frontier Federal Savings & Loan Ass'n, 33 Wash.App. 456, 656 P.2d 1089 (1982); Lachenmaier v. First Bank Systems, Inc., 803 F.2d 614 (Mont. 1990).

us untainted wholesome food. Most, if not all, consumer and commercial transactions are founded on some degree of trust in the other party; else why contract at all? One would simply be buying in a lawsuit. The expectation that the other party will perform his promise and the dependence of his doing so do not distinguish the lender-borrower and bank-depositor relationship from any contractual relationship. Unless the car mechanics and Payless Supermarkets are to be treated as fiduciaries, that common expectation and dependence cannot suffice to create the kind of quasi-fiduciary relationship which would justify the imposition of such duty or the extension of the tort of bad faith either. In short, no more trust is reposed in the bank than in other ordinary parties to contractual relationships.

**(a)  Although under certain special circumstances a lender may be elevated to a fiduciary relationship, the TAC is devoid of any facts establishing how the relationship of trust and confidence arose or any other special circumstances that would establish a fiduciary relationship.**

HSBC concedes that under certain special circumstances, a lender may be elevated to a fiduciary relationship, however the facts alleged in the TAC does not elevate to what courts have found necessary to establish such a "special relationship." See, ¶ 59 of TAC. This may occur when a debtor is in control of a debtor[8] or where the lender has given extensive business advice to a customer who relies on that advice.

For example, in Credit Managers Assn. v. Superior Court, the court found a fiduciary relationship, where (1) the borrower, against its will, was compelled to employ an agent of the Bank as a business consultant and (2) the borrower was compelled to surrender to the business consultant complete management control to such extent that the agent was to able to overrule and supplant the board of directors and shareholders. 51 Cal. App. 3d 352, 359-60 (1975). The Rutherford v. Rideout Bank, case

---

[8] Pepper v. Litton, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939); Taylor v. Standard Gas & Electric Co., 306 US 307, 83 L Ed 669, 59 S Ct. 543 (1939); In re EMB Associate Inc., 18 BCD 617, 92 BR 9, 15 (BC RI 1988); In re Teltronics Services, Inc., 29 BR 139, 171 (BC ED NY 1983) ("non-insider creditor will be held to a fiduciary standard only where his ability to command the debtor's obedience to his policy directives is so overwhelming that there has been, to some extent, a merger of identity"); In re Vietri Homes, Inc., 58 BR 663 (BC Del 1986) (construction lender deemed to be fiduciary to other creditors); In re N&D Properties, Inc., 799 F.2d 726 (11th Cir. 1986); Security Pacific Nat. Bank v. Williams, 213 Cal. App. 3d 927, 262 Cal. Rptr. 260 (1989); Garrett v. BankWest, Inc., 459 NW2d 833, 838 (SD 1990) (entering into workout agreement concerning repayment of loan did not place lender in "control" of borrower; bank was entitled to repayment and could impose such conditions to loan as any other secured creditor would want without such actions creating fiduciary relationship with debtor.

12

illustrates a situation where the bank has given extensive advice to its customer who has completely relied on it. The court found a fiduciary relationship where (1) the borrower was a widow who was unfamiliar with finance; (2) the borrower constantly and continually consulted with the bank in the management of her finances; and (3) the borrower relied wholly and exclusively on the bank for all financial matters and reposed complete trust and confidence in the bank regarding such matters. 11 Cal.2d 479, 481 (1938).

Many courts have been reluctant to find that the mere existence of a relationship of trust and confidence, in and of itself, requires a finding that a lender is under a fiduciary duty to the borrower. See, e.g.: Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); In re Letterman Bros. Energy Securities Litigation, 799 F.2d 967 (5th Cir. 1986); In re Rexplore, Inc. Securities Litigation, 685 F. Supp. 1132 (ND Cal. 1988); Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986); Stenberg v. Northwestern Nat. Bank of Rochester, 307 Minn. 487, 238 N.W.2d 218 (1976); Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990).

No allegations have been made that HSBC was involved in actual day-to-day involvement in the management and operations of K. Sadhwani's Inc. or that HSBC had the power to compel K. Sadhwani's Inc. or its Guarantors to engage in unusual transactions which would give the requisite control by HSBC over K. Sadhwani's Inc. or its Guarantors. See, Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989). As the Third Circuit stated in the Paradise Hotel Corp. case, it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table," given the parties essentially adversarial positions, supra, at p. 53 quoting Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982).

**(b)    Even assuming, _arguendo_, that it is true that Plaintiffs were unsophisticated and trusted HSBC as a result of such a long relationship, a cause of action for breach of a fiduciary duty cannot be established as a matter of law.**

In Mans v. Peoples Bank of Imboden, the Supreme Court of Arkansas held that no fiduciary relationship is created merely because a customer trusts the bank to do some action and, likewise, the fact that the customer was unsophisticated or had been a bank customer for 23 years is also insufficient by itself to establish that a fiduciary relationship existed. Id. 10 S.W.3d 885, 889-890 (Ark. 2000); see also,

13

<u>Manufacturers Hanover Trust Co. v. Yanakas</u>, 7 F.3d 310, 318 (2nd Cir. 1993)(mere fact that a corporation has been a borrower from the same bank for many years is insufficient to transform the relationship into one which the bank is a fiduciary); <u>Citizens First Nat'l Bank, supra</u>, at p. 403. Moreover, a fiduciary duty cannot be imposed unilaterally. <u>See, Travel Services Network, Inc. v. Presidential Financial Corp. of MA</u>, 959 F. Supp 135, 144 (D. Conn. 1997).

Based on the facts before this court, Plaintiffs' complaint is utterly lacking of any facts so as to render Plaintiffs the marionette and HSBC the puppeteer. The facts of the instant case lack any circumstances transcending other than an ordinary lender-borrower relationship.

V

### PLAINTIFFS' SEVENTH CAUSE OF ACTION IS PREEMPTED UNDER THE GRAMMN-LEACH-BLILEY ACT.

Enacted in 1999, the GRAMMN-LEACH-BLILEY ACT ("GLBA") is a wide-ranging financial services deregulation act effecting banking, securities, insurance and other industries. GLBA includes a number of provisions regarding consumer privacy. 15 U.S.C. § 6802(b)(1) provides that in general "a financial institution may not disclose nonpublic personal information to a nonaffiliated third-party," unless it falls within the listed exceptions. 15 U.S.C. § 6802(e)(1)(C) and (e)(7) provides in part:

> Subsections (a) and (b) of this Section shall not prohibit disclosure of nonpublic personal information – (C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;

> (7) in connection with the propose or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business unit.

There is no dispute that as of 2002 HSBC was closing its operations in Guam and as a result of that decision, it had to divest of all its assets. <u>See,</u> ¶ 10 of TAC.

The Ninth Circuit in <u>Bank of America v. City and County of San Francisco</u>, 309 F.3d 551, 557-58 (9th Cir. 2002), <u>cert. den.</u>, 123 S. Ct. 2220, held that federal law may pre-exempt state law in three different ways:

First, Congress may preempt state law by also stating in express terms . . . . Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable inference that Congress left no room for the States to supplement it . . . . In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit Congressional intent to displace all state law . . . . Third, preemption may be implied when state law actually conflicts with federal law . . . . Such conflict arises when compliance with both federal and state regulations is a physical impossibility . . . or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . (internal quotations and citations omitted)

In the instant case, Plaintiffs' claim that there is "a general common law duty not to disclose financial condition of Plaintiffs to third-parties," and that ". . . it is an implied condition of the contract between HSBC and Plaintiffs that HSBC will not divulge to third-persons without Plaintiffs' consent and permission financial conditions and business affairs of the Plaintiffs'," clearly conflicts with 15 U.S.C. § 6802(e)(1)(C) and (e)(7). Both exceptions to the GBLA preempts any Guam law or common law cause of action relating to HSBC's sale of its loans. In addition, conflict arises because adherence to federal law leads to violations of Guam law as pled in Plaintiffs' Seventh Cause of Action.

By providing consumers only limited control of a dissemination of information to third-parties and by prohibiting consumers from seeking recourse for privacy violations, Congress has clearly ruled that efficiency is paramount in today's economy so to adhere to the law as pled by Plaintiffs would thwart Congressional purposes in enacting GLBA.

> **(a)** **Even assuming that the Seventh Cause of Action is not preempted, it must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.**

In support of their Seventh Cause of Action, Plaintiffs assert that HSBC has a "general common law duty not to disclose their "financial condition" to third parties. TAC at ¶ 62. Plaintiffs also claim that there was "an implied term of the contract" between the parties that prohibited HSBC from divulging to third persons "either the state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC." Id. Additionally, Plaintiffs' allege that "it is an implied condition of the contract" between the parties that HSBC will not divulge to third persons the "financial condition and the business affairs of the Plaintiffs." Id.

Plaintiffs complain that HSBC's sale and assignment of the subject loan to PMC and other banks and investors previously interested in purchasing the assets of HSBC constituted not only a breach of HSBC's "general duty" not to disclose Plaintiffs' financial condition, but a breach of the "implied contract" between the parties which required that HSBC not divulge the "state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC." TAC at ¶ 66.

It is axiomatic that a promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. HSBC incorporates its discussion above related to assignability of its loan and implied contracts under Guam law found on pages 5-6 and 10-11 which supports HSBC's arguments that Plaintiffs have failed to plead a cognizable legal theory.

There is ample reason why no such restrictions on the right to sell and transfer a note and loan exist. If the law were as the Plaintiffs have alleged in the Seventh Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the express consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae"), would be virtually impossible. Further, a mortgagor would not be able to file notices of foreclosure and conduct foreclosure proceedings, without the express consent of the debtor, because such actions would invariably divulge information concerning the borrower's "account" and "financial condition" to third parties.

Simply put, a lender has no implied obligation or "general duty" of confidentiality to a borrower. In Graney Development Corp. v. Taksen, 400 N.Y.S. 2d 717 (Sup. 1978), aff'd, 411 N.Y.S. 2d 756 (App. Div. 1978), the plaintiff claimed that a bank breached an implied agreement not to disclose information about the plaintiff's financial affairs and the bank moved to dismiss. Id. at 718. In distinguishing the relationship between a bank and depositor with that of a lender and borrower, the court held that the bank, in its capacity as a lender, is in no different position than that of any other lender or creditor and that there

existed no implied agreement of confidentiality to the relations of a bank with its borrowers. Id. at 720. The court dismissed the borrower's claim.[9] Id.

Even assuming arguendo that HSBC violated its "own policies and procedures," regarding confidentiality, it does not create a private cause of action for Plaintiffs. See, First State Bank of Hudson County v. U.S., 599 F.2d 558, 564 (3rd Cir. 1979), cert. den., 444 U.S. 1013 (1980) (FDIC manual does not create an enforceable duty on the part of the FDIC to inform bank about misapplication of its funds by bank president); Brown v. Lynn, 392 F. Supp. 559, 561-62 (N.D. Ill. 1975) (HUD handbook directing a private lender servicing HUD insured mortgages to refrain from foreclosure when other procedures were available does not create a private cause of action as it was intended only as a policy guideline); Ebenhoh v. Production Credit Association of Southeast Minnesota, 426 N.W.2d 490, 493 (Minn. App. 1988) (bank's violation of its own internal policies did not create a private cause of action). There is no question that the relationship between HSBC and Plaintiffs was that of a lender and borrower, thus, no duty of confidentiality arose when Lender sold its Loan. Since the Seventh Cause of Action is wholly based upon the allegation that HSBC "divulged" financial information to PMC by selling the subject loan and note, which HSBC had the right to do under Guam law, then no cause of action can arise against HSBC for doing that which it was legally entitled to do. Accordingly, Plaintiffs have no cognizable legal theory under the Seventh Cause of Action and it must be dismissed for failure to state a claim upon which relief may be granted.

/ / /

/ / /

---

[9] See also, Boccardo v. Citibank, N.A., 579 N.Y.S. 2d 836, 838-9 (Sup. 1991) (as to the relationship between bank and borrower, there is no basis for imposing a duty of confidentiality on bank; motion to dismiss granted); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F. Supp. 693, 721 (S.D.N.Y. 1996) (no duty of confidentiality exists between debtor and creditor); Hopewell Ent., Inc. v. Trustmark Nat. Bank, 680 So. 2d 812, 817-818 (Miss. 1996) (Supreme Court holds that no duty of confidentiality exists in bank-borrower relationship); Schoneweis v. Dando, 435 N.W.2d 666, 673 (Neb. 1989) (Supreme Court holds that in debtor-creditor relationship bank owed no duty of confidentiality).

## CONCLUSION

For the foregoing reasons, HSBC's Motion to Dismiss the First, Third, Fourth, Sixth and Seventh

Causes of Action should be granted.

*Respectfully submitted* this ___30___ day of August 2004.

> **LAW OFFICES OF BRONZE & TANG**
> **A Professional Corporation**
>
> By:_____
> **JACQUES G. BRONZE**
> *Attorneys for Hongkong and Shanghai*
> *Banking Corporation, Ltd.*

# CERTIFICATE OF SERVICE

I, JACQUES G. BRONZE, hereby certify that on August _____, 2004, I caused to be served via hand delivery, **Agreement of Hearing Date re: HSBC's Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth and Seventh Causes of Action, Motion to Dismiss and HSBC's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth and Seventh Causes of Action** to:

Joaquin C. Arriola
Anita P. Arriola
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910

*Attorneys for Plaintiffs*

**DATED**: August _30th_, 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By:_____
   **JACQUES G. BRONZE**
   *Attorneys for Defendant HSBC*

D:\CLIENTS FILE\HSBC-Sadhwani\Pldgs\Memo.Pts.Auth.-Mtn to Dismiss (3) - Rev.8-28-04.doc

19