**JOAQUIN C. ARRIOLA**
**ANITA P. ARRIOLA**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel: (671) 477-9730
Fax: (671) 477-9734

Attorneys for Plaintiffs Alan Sadhwani, et al.

FILED
DISTRICT COURT OF GUAM
SEP -8 2004
MARY L. M. MORAN
CLERK OF COURT

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>Plaintiffs,<br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation,<br>JOHN DOE I through JOHN DOE X,<br><br>Defendants. | CIVIL CASE NO. 03-00036<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S MOTION TO BIFURCATE TRIAL** |

### INTRODUCTION

Defendant Hongkong and Shanghai Banking Corporation, Ltd. ("HSBC") has filed a motion to bifurcate this action into two trials, the first involving liability, compensatory damages and plaintiffs' entitlement to punitive damages, and the second involving the amount of punitive damages to be awarded. In support of its motion, HSBC relies principally upon some law review articles which purport to establish that juries use damages evidence to support their substantive decisions and that "[j]udges love bifurcation." (HSBC Memo. at 4, 7). Further, HSBC contends that it will be prejudiced by the introduction of evidence of HSBC's net worth in the liability phase,

but its contention is supported only by a general statement that "juries are prejudiced by the introduction of information on the financial condition of the defendant during the liability phase of a trial is well documented." (HSBC Memo. at 7). In fact, a great deal of information concerning HSBC's financial status and net worth is available on the Internet for millions of individuals to read and download. *See* www.hsbc.com (type in "Annual Report" in search engine then click "HSBC HOLDINGS PLC")." HSBC will therefore not suffer any prejudice as a result of the jurors' exposure to evidence of its net worth.

A bifurcated trial will not be convenient, expedite the trial, or promote judicial economy in this case. Instead, bifurcation will result in added procedural and logistical burdens for the Court, the jury and the parties; more delay in the resolution of this case; severe prejudice to plaintiffs due to the additional expenses of preparing for and conducting two phases of the litigation; and duplication of testimony, as there is a substantial overlap in the liability and punitive damages phase of the same evidence involving HSBC's financial status. In determining HSBC's motion, the "paramount consideration" for the Court is whether bifurcation would result in a fair and impartial trial to all litigants.[1] As established below, plaintiffs submit that it would not.

## ARGUMENT

Federal Rule of Civil Procedure 42(b) provides, in relevant part: "The court, *in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy*, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . . " (Emphasis added) The general rule is that an action should be tried in a single trial. In re Blech Secs. Litigation, 2003 WL 1610775 (D.C.N.Y. 2003). Although

---

[1] Beauchamp v. Russell, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982).

bifurcation is not unusual, "bifurcation is the exception rather than the rule," Guidi v. Intercontinental Hotels Corp., 2003 WL 184686 at 1 (S.D.N.Y. 2003), as separation "is not to be routinely ordered." Data General Corp. v. Grumman Systems Support Corp., 795 F. Supp. 501, 503 (D.Mass. 1992), *quoting* Advisory Committee Note to the 1966 amendment of Rule 42(b); Liz v. Robert Packer Hospital 579 F. 2d 819 (3d Cir., 1978). Instead, separation should "be used sparingly." Moss v. Associated Transportation Inc. 344 F. 2d 23, 26 (6th Cir., 1965); Hosie v. Chicago & North Western Ry. Co., 282 F. 2d 639, 643-644 (7th Cir.) *cert. den.* 365 U.S. 814, (1960). Whether to bifurcate a trial is a matter within the sound discretion of the trial court, Davis v. Cox Summa Corp., 751 F. 2d 1507, 1517 (9th Cir. 1985) and is dependent upon the facts and circumstances of each particular case.

The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties. The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issues in severed claims is not to be the usual course. Thus, Rule 42(b) should be resorted to only in the exercise of informed discretion when the court believes that the separation will achieve the purposes of the rule. Wright & Miller, Federal Practice & Procedure, 2d, § 2388, p. 473.

Bifurcating a trial creates its own problems, not the least of which is that to do so leaves the court on the horns of a dilemma. On the one hand, if the court does not tell the jury beforehand that further proceedings may result in the event of a verdict in favor of the plaintiff, upon returning such a verdict the jurors (believing their duties fulfilled) will receive the unexpected news that they are obliged to sit through more evidence, more instructions and yet another round of deliberations. This

-3-

is simply not fair to the jury. On the other hand, if the court informs the jury at the outset that there will be further proceedings in the event of a verdict for the plaintiff, it creates a subtle incentive for the jury to return a verdict for the defendants. This would be unfair to the plaintiff. In light of these concerns, the court is unwilling to upset the traditional decision making process of the jury by artificially bifurcating the issues of this case. *See* Roger H. Trangsrud, Joinder Alternatives in Mass Tort Litigation, 70 Cornell L.Rev. 779, 827 (1985); *see also* Hamm v. American Home Products Corporation, 888 F. Supp. 1037, 1039 (C.D. Cal. 1995).

While HSBC argues that "[c]laims alleging punitive damages are frequently bifurcated for trial", (HSBC Memo. at 3-4), there are more cases where courts have refused to bifurcate such claims. *See., e.g.,* McLaughlin v. State Farm Mutual Automobile Insurance Co., 30 F.3d 861, 870-71 (7th Cir. 1994) (affirming trial court's denial of motion to bifurcate trial, finding that possible risk of prejudice in simultaneous presentation of a contract claim and a punitive damages claim was "slight"); Getty Petroleum Corp. v. Island Transportation Corp., 862 F.2d 10, 14-15 (2d Cir. 1988) (affirming district court's refusal to bifurcate trial, appellate court "not persuaded" that proof pertaining to defendant's net worth prejudiced the jury's determination of liability); TVT Records v. Island Def Jam Music Group, 257 F. Supp. 2d 737, 748 (S.D. N.Y. 2003) (denying defendant's motion to exclude evidence of net worth until after jury decides that it intends to award punitive damages); DeSanto v. Rowan University, 224 F.Supp.2d 819, 832 (D.N.J. 2002) (denying motion to bifurcate trial on issues of "front pay" and punitive damages where defendants failed to provide evidence or arguments supporting request for bifurcation); Shults v. Champion International Corp., 821 F. Supp. 517, 520 (E.D Tenn. 1992) (despite defendant's attempt to prevent any mention of its

-4-

financial status or net worth for purposes of liability, court held there was "no good reason to separate the punitive damage issue").

I. **A BIFURCATED TRIAL WILL NOT BE CONVENIENT FOR THE PARTIES, THE JURORS, OR THE COURT, NOR WILL IT BE CONDUCIVE TO EXPEDITION OR ECONOMY.**

  A. **Evidence of HSBC's Financial Status and Net Worth Is Relevant to Liability, Compensatory Damages, and Punitive damages.**

As HSBC correctly points out, plaintiffs seek discovery of HSBC's profit and loss statements, financial statements, balance sheets, and other evidence of HSBC's financial status and net worth (hereafter "HSBC's financial information"). *See* R. Pipes Decl., Exh. A. HSBC's financial information is relevant to three issues in this case.

First, it is relevant to the issue of the closure of the HSBC Guam office. As the district court judge observed in his Order of April 9, 2004, "HSBC's decision to discontinue its operations in Guam appears to be the propelling event in this lawsuit." Order of April 9, 2004 at 2 n.1. Plaintiffs contend that when HSBC determined it would discontinue its operations in Guam, it placed pressure on the plaintiffs to pay off their Loan ("the Plaintiffs' Loan") and led to the workout agreement between plaintiffs and HSBC. *See* Plaintiffs' Third Amended Complaint, ¶¶ 10, 16. Plaintiffs further allege that HSBC, in violation of the workout agreement, sold the Plaintiffs' Loan to a fishing company, Paradise Marine Corporation ("PMC"). Ostensibly, the reason HSBC sold the Plaintiffs' Loan and its other customers' loans was because HSBC was in a rush to close its Guam office. During the course of discovery, plaintiffs learned that HSBC had indicated to its customers and to its employees that it was planning to close its Guam office as soon as possible. Yet only recently, HSBC's General Manager Chris Underwood testified in his deposition that HSBC is in no hurry to

-5-

close its Guam office, that the bank continues to hold numerous loans with certain customers, and that it may not close the Guam office until 2010 or 2011. A. Arriola Decl. HSBC's financial information is relevant to establish HSBC's economic or financial reasons for closing the Guam office and is further relevant in establishing that HSBC acted in bad faith by refusing to allow plaintiffs a reasonable time under the workout agreement to sell their properties or to obtain alternate financing or to offer to plaintiffs the same amount it offered PMC. *See* Plaintiffs' Third Amended Complaint ¶ 34B.

Second, the evidence is relevant to how the sale of the plaintiffs' Loan was disclosed in HSBC's financial information and how it affected HSBC's financial status. The evidence in this case establishes that PMC paid HSBC $2.75 million (but was refunded $90,000 based on loan payments made by plaintiffs between the execution of the loan purchase agreement and the closing of the sale) for plaintiffs' Loan, which had a balance of $6,457,044.56. The evidence also indicates that HSBC took a "write back" on the sale of the Loan. *See* A. Arriola Decl., Exh. 1. Plaintiffs have requested documents evidencing this "write back" and documents concerning HSBC's tax treatment of the sale of plaintiffs' Loan. *Id.*, Exh. 2. This evidence is relevant to plaintiffs' claim that HSBC acted in bad faith and failed to deal fairly with plaintiffs when the bank sold the Loan to PMC at a loss to the bank, for an amount that was less than half the balance of the Loan.

Third, the evidence is relevant to the issue of punitive damages sought by plaintiffs. *See* Plaintiffs' Third Amended Complaint, ¶¶ 68-69.

Because of the overlap of evidence (HSBC's financial information) that plaintiffs intend to introduce to establish liability, compensatory damages, and punitive damages, it would be highly inconvenient for the parties or the Court to attempt to sort out the evidence by redacting or deleting

-6-

portions of financial statements, profit and loss statements, or other evidence relating to HSBC's financial status or net worth. McLaughlin, 30 F.3d at 871; EEOC v. HBE Corp., 135 F.3d at 551 (affirming trial court's refusal to bifurcate trial on liability and punitive damages where evidence was relevant on issues of liability and punitive damages and defendant not prejudiced by admission of such evidence in a single proceeding); Shults v. Champion, 821 F. Supp. at 520 (where evidence of defendant's financial status or net worth is relevant to plaintiffs' case in chief, motion to bifurcate denied). A unitary trial on all issues should be held in order to further convenience and judicial economy.

### B. Bifurcation of the Trial into Two Phases Will Result in Procedural and Logistical Burdens for the Court, the Jurors and the Parties.

HSBC suggests that bifurcation will save the Court time and expense, since if there is no liability for punitive damages, there will be no need to proceed to the second phase. (HSBC Memo. at 6). Alternatively, if HSBC is liable for punitive damages, any inconvenience to plaintiffs will be "minimal" because the same "fact-finder" would determine the amount of punitive damages "immediately" after completion of the first phase. Id. HSBC's arguments do not comport with the reality of trying a case in Guam.

The parties in this case recently stipulated to a trial date of January 25, 2005. *See* Stipulation and Order dated August 18, 2004. At the hearing where the parties presented the Stipulation to the Magistrate Judge, he informed them that since the U.S. District Court of Guam does not yet have a judge, the trial date would be dependent on the availability of a trial judge from off-island. A. Arriola Decl. Consequently, it is unknown whether the trial in this case will actually be held on January 25, 2005. Id. Even assuming that the trial will be held on that date, it is very common for

jury trials in Guam to extend much longer than anticipated because of the press of other cases. Id. For example, it is very common for a judge presiding over a jury trial to take frequent recesses to hear other matters, particularly bankruptcy and other cases that cannot be heard by the Magistrate Judge. Id.

And while HSBC appears to be overly optimistic that if a second phase is required it will be held "immediately" after completion of the first phase, plaintiffs do not share such optimism. There is a very real possibility that the judge who tries the first phrase will be unavailable for the second phase, so that bifurcation would extend the time of the trial rather than shorten it. Alternatively, if another judge is required to preside over the second phase, this would result in a huge expenditure of judicial resources and result in further delay in order to allow a different judge to become familiar with the case.

In addition, plaintiffs have demanded a jury trial. Assuming that one panel of jurors hears and resolves liability, compensatory damages, and plaintiffs' entitlement to punitive damages, holding separate trials raises the risk that the Court and the parties will lose jurors between the first and second phases. *See* John Hopkins Univ. v. CellPro, 160 F.R.D. 30, 35 (D.Del. 1995) (denying motion to bifurcate in part because of risk of losing jurors between first and second trial). This is not a risk that plaintiffs wish to take. Unlike the jury pools in the U.S. mainland, Guam does not have as large jury pools. In their Initial Disclosures, HSBC and the plaintiffs have listed a combined number of thirty-three (33) witnesses in the case. A. Arriola Decl. The number of witnesses, as well as the long-established businesses of both plaintiffs and HSBC (with their many employees over the years), will certainly limit the number of jurors available to sit on this case. Id.

Finally, as discussed above in Part IA, there will be an overlap in the witnesses' testimony and documents to be introduced at trial concerning HSBC's financial information. It would be a waste of resources and time to have a duplication of trial testimony and evidence. U.S. v. Mottolo, 107 F.R.D. 276, 270 (D.C. N.H. 1985) (denying motion to bifurcate in part due to duplication of evidence).

In short, bifurcation would not serve the interest of judicial economy, convenience for the parties or witnesses, or result in a more efficient or economical trial. It is much more efficient to have a single trial, which would achieve the Court's goal under the Civil Justice Reform Act of resolving litigation within eighteen months after the filing of the complaint. *See* 42 U.S.C. § 473(a)(2)(B).

## II. PLAINTIFFS WILL BE SEVERELY PREJUDICED BY A BIFURCATED TRIAL.

The Federal Rules of Civil Procedure, including Rule 42(b), "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." *See also* General Rule 1.1 (c). Bifurcation of the trial in this case would not achieve that goal.

The same plaintiffs here filed a related action in the Superior Court of Guam against PMC, the purchaser of their Loan, in the Superior Court of Guam. A. Arriola Decl. In Sadhwani v. PMC, Civil Case No. CV0739-04, plaintiffs obtained a temporary restraining order preventing PMC from foreclosing on the properties securing their Loan or from collecting any rents owed by plaintiffs' tenants. Id., Exh. 3. By Order of the Court at a hearing on August 13, 2004, the Court extended the restraining order until September 17, 2004, the next hearing date in the case. A. Arriola Decl.

Plaintiffs are therefore prosecuting two lawsuits due to HSBC's sale of their Loan. They are already stretched thin financially and can ill afford further delay in the case. A. Sadhwani Decl.

Plaintiffs will be severely prejudiced by a bifurcated trial, as they will be put to undue and unfair expenditure of resources (i.e., attorneys fees and costs, and other expenses) to prepare for and conduct two phases of litigation. A. Sadhwani Decl. *See, e.g.,* U.S. v. Mottolo, 107 F.R.D. at 270 (denying motion to bifurcate trial where defendants would be prejudiced by having to expend undue and unfair expenditure of resources on two trials).

### III. HSBC WILL NOT BE PREJUDICED IF EVIDENCE OF ITS NET WORTH IS SUBMITTED TO THE JURY PRIOR TO A DETERMINATION OF PUNITIVE DAMAGES.

HSBC will not be prejudiced by the jurors' consideration of HSBC's financial information, including evidence of its net worth or financial status. A great deal of information concerning HSBC's wealth and financial status is available on the Internet for millions of persons to view and download on www.hsbc.com.

HSBC is a Hong Kong banking corporation registered to do business on Guam as a foreign corporation. The above-mentioned website offers the Annual Report and Accounts of HSBC Holdings plc, which include the consolidated financial statements of HSBC Holdings plc and its "subsidiary undertakings". A. Arriola Decl., Exh. 4 at p. 239. HSBC "Hong Kong" is one of the "subsidiary undertakings" of HSBC Holdings plc. The Annual Report and Accounts of HSBC Holdings plc are comprised of 366 pages of balance sheets, financial statements, notes to financial statements, and financial analyses of the subsidiary undertakings of HSBC Holdings plc. A. Arriola Decl., Exh. 4. The net interest income, other operating income and bad and doubtful debts (pp.49-50), profit/(loss) before tax excluding goodwill amortisation (pp. 79-87), average balance sheet and net interest income (pp. 123-141), gross loans and advances to customers (pp. 142-157), deposits

(pp. 179-183), and Consolidated Financial Statements (pp. 233-239) are all reported in detail on the website. A. Arriola Decl., Exh. 4.

For example, HSBC "Hong Kong" reported the following pre-tax profits, before goodwill amortisation:

**Hong Kong**
Profit/(loss) before tax excluding goodwill amortisation

|  | Year ended 31 December | | |
|---|---|---|---|
|  | **2003 US$m** | 2002 US$m | 2001 US$m |
| Personal Financial Services | **1,740** | 1,705 | 1,631 |
| Commercial Banking | **711** | 733 | 726 |
| Corporate, Investment Banking and Markets | **1,275** | 1,226 | 1,244 |
| Private Banking | **127** | 107 | 84 |
| Other | **(123)** | (61) | 198 |
| Total | **3,730** | 3,710 | 3,883 |

A. Arriola Decl., Exh. 4 at p. 79. Because a good deal of information concerning HSBC's financial status and net worth is already on the Internet for millions of viewers to read, HSBC will not suffer any prejudice by having the jurors hear or examine such evidence.

Moreover, in McLaughlin, *supra*, the Seventh Circuit quoted approvingly the trial court's decision to deny the defendant's motion to bifurcate the issues of liability and compensatory damages in one trial and punitive damages in another:

> . . . I've handled at least a half a dozen cases against insurance companies such as this. Probably more. In all of those cases, the question of both actual and punitive damages has been submitted to the jury in one trial. I have not seen that there has been any prejudice either to the plaintiff or to the defendant insurance company in those cases. At least one has resulted in a plaintiff's verdict for compensatory damages alone. And at least one has resulted in a plaintiff's verdict for actual and compensatory damages. So I believe, based on past experience, the jury will be able to follow any instructions and sort out the various issues.

-11-

McLaughlin, 30 F.3d at 870-71.

As the McLaughlin court noted, any prejudice suffered by HSBC can be minimized by the effect of appropriate jury instructions. Where the evidence overlaps, as it does here, the normal procedure is to try compensatory and punitive damage claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages. McLaughlin, 30 F.3d at 871; Brown v. Advantage Engineering, Inc., 732 F. Supp. 1163, 1170 (N.D. Ga. 1990) (any potential prejudice to defendant may be addressed, and the prejudice cured, with appropriate limiting instructions); Grissom v. Union Pac. R. Co., 14 F.R.D. 263, 265 (D. Colo. 1953) (court refused to grant separate trial but in order to avoid prejudice to defendant would give appropriate instruction to jury).

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court deny HSBC's motion to bifurcate the trial. In the interest of fairness to the parties and judicial economy, the case should be tried as a whole to the same jury.

Dated this 8th day of September, 2004.

**ARRIOLA, COWAN & ARRIOLA**
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: _____
**ANITA P. ARRIOLA**

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on September 8, 2004, I caused to be served via hand delivery, **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S MOTION TO BIFURCATE TRIAL** to:

> Jacques G. Bronze, Esq.
> Bronze & Tang, P.C.
> 2nd Floor, BankPacific Building
> 825 S. Marine Drive
> Tamuning, Guam 96913

Dated this 8th day of September, 2004.

_____
ANITA P. ARRIOLA