**JACQUES G. BRONZE, ESQ.**
LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

**RICHARD A. PIPES, ESQ.**
LAW OFFICES OF RICHARD A. PIPES
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001



FILED
DISTRICT COURT OF GUAM
SEP 10 2004
MARY L. M. MORAN
CLERK OF COURT

266

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, | ) CIVIL CASE NO. 03-00036 )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**HSBC'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS
TO DEPOSITION QUESTIONS; TO RE-DEPOSE FREDERICK GRANILLO;
FOR PRODUCTION OF DOCUMENTS; FOR SANCTIONS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alexander v. FBI, 186 F.R.D. 113 (D.D.C. 1998) ......................................................... 3

Alexander v. FBI, 186 F.R.D. 128 (D.D.C. 1998) ......................................................... 6

Baine v. General Motors Corp., 141 F.R.D. 332, 336 (M.D. Ala. 1991) ....................................... 7

Box v. Ferellgas, Inc., 942 F.2d 942 (5th Cir. 1991) ......................................................... 6

Bud Antle, Inc. v. Grow-Tech Inc., 131 F.R.D. 179,
    183 (N.D. Cal. 1990) ........................................................................................... 15

Caplan v. Fellheimer Eichen Braverman & Kaskey,
    161 F.R.D. 29 (E.D. Pa. 1995) ............................................................................ 2

Chevron Corporation v. Penzoil Company, 974 F.2d 1156,
    1162 (9th Cir. 1992) ........................................................................................ 18

Collins v. International Dairy Queen, 189 F.R.D.
    496, 498 (N.D. Ga. 1999) .................................................................................. 1

Continental Ins. Co. v. McGraw, 110 F.R.D. 679,
    681-682 (D. Colo. 1986) .................................................................................... 2

Continental Oil Co. v. U.S., 330 F.2d 347, 350 (9th Cir. 1964) .................................................. 13

Doanbuy Lease and Company, Inc. v. Melcher,
    488 P.2d 339, 341 (N.M. 1971) ......................................................................... 3

Eureka Financial Co. v. Hartford Accident & Indemnity Co.,
    136 F.R.D. 179, 183-84 (E.D. Cal. 1991) ............................................................ 16

FDIC v. Marine Midland Realty Credit Corporation,
    138 F.R.D. 479, 484 (E.D. Va. 1991) .................................................................. 19

Griffith v. Davies, 161 F.R.D. 687, 692 (C.D. Cal. 1995) ...................................................... 12

Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D. Pa. 1993) ................................................ 4

**Cases**

Hunydee v. U.S., 355 F.2d 183, 184-85 (9th Cir. 1965) .............................................................. 12

In re Bevill, Bresler & Schulman Asset Management Corp.,
     805 F.2d 120, 126 (3rd Cir. 1986) ................................................................................. 12

In re Columbia/HCA Healthcare Corp Billing Practices Litigation,
     293 F.3d 289 (6th Cir. 2002) ....................................................................................... 11

In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984) ........................................ 10

In re Kidder Peabody Securities Litigation, 168 F.R.D.
     459, 462 (S.D.N.Y. 1996) ................................................................................... 17, 18

In re von Bulow, 828 F.2d 94, 100-03 (2nd Cir. 1987) ....................................................... 16, 17

James N. Pappas & Sons Inc. v. McDonalds Corp.,
     21 Fed. R. Serv. 2d 773 (D.D.C. 1976) ........................................................................... 2

Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.,
     109 F.R.D. 12, 21 (D.Neb.1985) .................................................................................. 15

Kenford v. County of Erie, 55 A.D.2d 466, 469, 471,
     390 N.Y.S.2d 715, 719 (4th Dep't 1977) ......................................................................... 9

Matter of Bekins Storage Co., 118 Misc.2d at 179,
     460 N.Y.S.2d 691 ................................................................................................... 9

Mendenhall v. Barber-Greene Co., 531 F. Supp 951, 955 (1982) .............................................. 14

Munoz-Santana v. United States, 742 F.2d 561,
     563-564 (9th Cir. 1984) ............................................................................................ 8

SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D.Conn. 1976) ................................................ 9

Transamerica Computer Company, Inc. v. International Business
     Machines Corporation, 573 F.2d 646, 651 (9th Cir. 1978) ..................................................... 13

United States v. Bilzerian, 926 F.2d 1285, 1291-1294 (2nd Cir.),
     cert. den., 502 U.S. 813 (1991) ................................................................................... 17

## Cases

United States v. Dakota, 188 F.3d 663, 667 (6th Cir. 1999) ......................................................... 12

United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990) ....................................................... 11

United States v. Zolin, 809 F.2d 1411, 1415 (9th Cir. 1987) ........................................................ 12

Weil v. Investment Indicators, Research and Management, Inc.,
    647 F.2d 18, 25 (9th Cir. 1981) ......................................................................................... 11, 18

## Statutes and Rules

FRCP 26(b) .................................................................................................................................... 5

FRCP 26(b)(2) ............................................................................................................................... 1

FRCP 30(d)(2) ............................................................................................................................... 3

FRCP 30(d)(3) ............................................................................................................................... 2

FRCP 37(a)(2), (3) ...................................................................................................................... 19

FRCP 37(a)(4)(A), (B) ................................................................................................................ 19

Rule 26(f) ....................................................................................................................................... 5

## Miscellaneous

COMMENTS TO FRCP RULE 30(d) .................................................................................................... 5

MOORE'S FED. PRACTICE, § 37.05[5] (MATHEW BENDER 3d ED.) ..................................................... 2

## PLAINTIFFS' MOTION FOR ADDITIONAL TIME TO CONTINUE THE DEPOSITION OF FREDERICK GRANILLO SHOULD NOT BE GRANTED BECAUSE THE DISCOVERY SOUGHT IS "UNREASONABLY CUMULATIVE OR DUPLICATIVE."

FRCP 26(b)(2) requires the Court to limit discovery if it is determined that (i) the discovery sought is "unreasonably cumulative or duplicative," or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . .; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought, or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, importance of the issues at stake in the litigation, and the importance of the proposed discovery and resolving issues.

Plaintiffs' argue that the District Court should grant its Motion to Re-depose Frederick Granillo ("Granillo") based on three grounds: (1) that Granillo's responses that "he did not recall" or that "he did not remember" to various questions of Plaintiffs' counsel was evasive or incomplete; (2) Plaintiffs' did not have the opportunity to question Granillo about the documents produced on June 14 and 15, July 13 and August 14, 2004, and (3) that Granillo's failure to testify regarding HSBC's policies and procedures governing confidentiality of its customers. See, pp. 5-9 of Plaintiffs' Memorandum.

Plaintiffs' reliance on Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (N.D. Ga. 1999), is misplaced since in that case the court allowed defendant to take an additional four hours of deposition because Plaintiffs' amended their complaint and that the witnesses were apparently significant as ". . . the only non-plaintiff franchisees included on the plaintiffs'

1

current witness list." In the instant case, the key or significant witness relating to Plaintiffs' claims is HSBC's Guam Manager, Mr. I.C. Underwood. Neither does the Caplan v. Fellheimer Eichen Braverman & Kaskey, 161 F.R.D. 29 (E.D. Pa. 1995), supports Plaintiffs' motion since it involves a motion for a protective order under FRCP 30(d)(3).

A motion to compel discovery or disclosure should both identify specifically the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the responses adequate. See, MOORE'S FED. PRACTICE, § 37.05[5] (MATHEW BENDER 3d ED.) Other than counting how many times Granillo responded that "he does not recall," Plaintiffs have failed to meet their burden on its motion. See, James N. Pappas & Sons Inc. v. McDonalds Corp., 21 Fed. R. Serv. 2d 773 (D.D.C. 1976). The burden is on Plaintiffs on proving that Granillo's answers are evasive or incomplete. See, Continental Ins. Co. v. McGraw, 110 F.R.D. 679, 681-682 (D. Colo. 1986). The federal rules presume that a witness's memory would fade over time and the burden is on the movant to prove its otherwise.

Neither have Plaintiffs cited any authority that would authorize additional time for the re-deposition of a witness who cannot recall or doesn't remember a certain fact during the deposition. It is not unusual for an employee not to recall what he or other employees or his superiors may have heard, stated or performed or simply not to remember certain events that took place through the passage of time. In his deposition, Granillo testified that he has been Assistant Vice President of Credit Control since September 2000 and his duties has been limited to managing a portfolio of what he termed as "special assets," or non-performing loans. See, p. 14, ll. 3-9, of the Deposition of Granillo attached as Exhibit "36" to the Declaration of Plaintiffs' counsel. Granillo had nothing to do with bank policy or confidentiality policies of HSBC.

2

The facts of <u>Alexander v. FBI</u>, 186 F.R.D. 113 (D.D.C. 1998), is in stark contrast to the instant case. In <u>Alexander</u>, the court under FRCP 26(b)(2) permitted the re-deposition because the witness's misunderstanding that if his memory was less than certain, he was to respond "I do not recall." The witness admitted that he had answered the questions under that erroneous standard. <u>Id</u>. at p. 121. In the instant case, there is no evidence submitted by Plaintiffs that Granillo was instructed that when his memory was less than certain, he was to respond "I do not recall." Moreover, the facts in <u>Doanbuy Lease and Company, Inc. v. Melcher</u>, 488 P.2d 339, 341 (N.M. 1971), is also distinguishable since in that case the deponent refused to "give any information of any kind to any of purported facts of the lawsuit . . . ."

Secondly, Plaintiffs' argue that Granillo should be re-deposed because HSBC failed to comply with the Court's May 27, 2004, Order because HSBC produced various documents between July 14 and August 17, 2004. <u>See</u>, p. 17 of Plaintiffs' Memorandum. As usual, Plaintiffs' counsel is not being candid with the Court. Had Plaintiffs' counsel just delayed the deposition of Granillo for a few days, she would not have found herself to be in the situation of needing leave of court to continue the deposition of Granillo. To permit Plaintiffs to insist on an unreasonable course of conduct knowing full well that an extensive amount of documents would be produced shortly would be to allow Plaintiffs to frustrate the limits placed by Congress that a deposition cannot be more than one day of seven hours. <u>See</u>, FRCP 30(d)(2).

Moreover, HSBC was under no obligation to provide documents to Plaintiffs under an expedited basis based on Plaintiffs' insistence on moving forward on the deposition of Granillo, which was set for June 15, 2004. The Court's May 27, 2004, Order specifically provided that HSBC would provide copies of the subject documents at Plaintiffs' counsel's office "until

3

production was complete." The Order did not specify any time period for the completion of the production since the Court knew full well it involved large volumes of documents.

Plaintiffs' claim that HSBC failed to comply with the Court's May 27, 2004, Order is baseless since on June 10, 2004, Attorney Richard A. Pipes forwarded a letter to Plaintiffs' counsel advising her that since <u>her</u> copier machine was not working, HSBC will copy Requests Nos. 1 through 7 and deliver it to Plaintiffs' counsel's office "no later than noon on June 14, 2004." <u>See</u>, Exhibit "1" attached to the Declaration of Richard Pipes. In addition, the June 10, 2004, letter, provided that "HSBC personnel will continue locating and completing documents specified by the Order which relate to Request Nos. 9 through 12 and would be able to continue producing these documents on Monday as well." <u>Id</u>. Due to a large volume of documents to be reviewed and copied, some of the Requests 9 through 12 were delivered on the day of the deposition of Mr. Granillo.

Plaintiffs' counsel never made any objection to the June 10, 2004, letter and could not, since HSBC was accommodating her and naturally expediting the production of the documents. Had HSBC not undertaken the steps it proposed in the June 10, 2004, letter, it would have taken a significant period of time to produce all these documents since Plaintiffs could only copy documents using a fax machine. <u>See</u>, Exhibit "1" attached to the Declaration of Richard A. Pipes.

Moreover, these documents are not relevant to a proper conduct of a deposition since the underlying purpose of a deposition is to find out what the witness saw, heard, or did or what a witness thinks. <u>See</u>, <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525, 528 (E.D. Pa. 1993). Plaintiffs' Motion to Re-depose Granillo is nothing more than a tool of Plaintiffs' counsel to harass the witness.

4

The Court may consider extending an extension of time to continue the deposition where for example, ". . . the examination reveals that the documents have been requested, but not produced. . . ." See, COMMENTS TO FRCP RULE 30(d). In the instant case, Plaintiffs' counsel was very well aware prior to June 15, 2004, that not all the documents would be produced and she should now be barred from seeking additional time for the deposition of Granillo.

Moreover, Plaintiffs' claim that HSBC failed to produce documents relating to "the sale of HSBC's loans," until "more than eight months after the Plaintiffs' First Set of Request for Production of Documents were served on HSBC," is misleading. Plaintiffs' initial Complaint was filed in the Superior Court of Guam in or about October 2003. Plaintiffs' First Request for Production of Documents was served with Plaintiffs' Complaint. HSBC removed the case to this Court. Pursuant to FRCP 26(b), HSBC was not obligated to respond to Plaintiffs' First Request for Production of Documents until ". . . the parties [had] conferred as required by Rule 26(f)." In compliance with the federal rules, on February 23, 2004, HSBC served its Supplemental Objections and Responses to Plaintiffs' First Set of Request for Production of Documents. See, Declaration of Jacques G. Bronze.

Due to the large volume of boxes in HSBC's storage to be examined, HSBC supplemented its responses as the relevant documents were discovered. See, section 4 of the Declaration of I.C. Underwood filed with this Court on May 11, 2004. The last supplemental response relating to Plaintiffs' First Set of Request for Production of Documents was served on Plaintiffs on July 16, 2004. See, Declaration of Jacques G. Bronze. Thus, the claimed eight months delay is misleading. Plaintiffs have failed to submit any evidence that HSBC sought to evade or delay its obligation to produce responsive documents relating to Plaintiffs' Request.

5

Neither the case of <u>Box v. Ferellgas, Inc.</u>, 942 F.2d 942 (5th Cir. 1991) nor the <u>Alexander v. FBI</u>, 186 F.R.D. 128 (D.D.C. 1998), support Plaintiffs' argument that HSBC's claim and untimely production warrants the re-deposition of Granillo. In the <u>Alexander</u> case, the court permitted the re-deposition to answer two questions posed in the deposition ". . . along with reasonable follow-up questions tailored to inquire into the adequacy of the search of 35-50 boxes of documents," not because of untimely production. <u>Id.</u> at p. 134.

More importantly, any re-deposition of Granillo relating to HSBC's Third Supplemental Objections and Responses to Plaintiffs' Third Set of Requests for Production of Document and HSBC's Third Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents served on Plaintiffs' counsel July 13 and 14, 2004, would be "unreasonably cumulative or duplicative." <u>See</u>, Declaration of Jacques G. Bronze. Likewise would any questions to Granillo relating to HSBC's Fourth Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents served on Plaintiffs' counsel on July 16, 2004. <u>See</u>, Declaration of Jacques G. Bronze. Any testimony regarding the Third Requests for Production of Documents involves the "Fang requests" or documents relating to "discounts, friendly foreclosures, sales of loans or alternate financings obtained," by HSBC's other borrowers. <u>See</u>, Exhibit "1" attached to the Declaration of Jacques G. Bronze.

Any testimony of Granillo relating to HSBC's sale of its loans, Plaintiffs' loan to Paradise Marine Corporation ("PMC") or other third parties is "unreasonably cumulative or duplicative" since sales of loans was not handled by Granillo as part of his duties. <u>See</u>, p. 21, ll. 8-12, of the Deposition of Granillo attached as Exhibit "36" to the Declaration of Plaintiffs' counsel. Mr. Granillo testified that it was Mr. Underwood, the General Manager of HSBC Guam, who was in charge of all sales of loans. Since Plaintiffs have already deposed Mr.

6

Underwood on July 29, 2004, any re-deposition of Granillo on the same subject matter as the claimed late responses Plaintiffs aforementioned requests would be "unreasonably cumulative or duplicative."[1]

Lastly, Plaintiffs' claim that the Court should grant it leave to re-depose Granillo because ". . . it is unbelievable that Granillo is ignorant as to the bank's policies and procedures for keeping confidentiality of its customers account information." See, p. 9 of Plaintiffs' Memorandum. As pointed out above, Granillo's position with the bank was as Assistant Vice President for Credit Control, not compliance. Plaintiffs have already taken the deposition of HSBC's Compliance Officer for many years, Ms. Cathy Champaco, on August 9, 2004. See, Declaration of Jacques G. Bronze. Ms. Champaco testified that it was her duties to maintain the bank's policy manuals as well as any policies relating to confidentiality of the customer's account information. Id. Thus, any re-deposition of Granillo regarding bank's internal policies or procedures regarding confidentiality would be "unreasonably cumulative or duplicative." The Court in Baine v. General Motors Corp., 141 F.R.D. 332, 336 (M.D. Ala. 1991) found that it was duplicative to depose all 18 people who received a memorandum describing the prototype vehicles seatbelt restrain system that allegedly failed.

Notwithstanding that any testimony of Granillo relating to the three grounds asserted by Plaintiffs are "unreasonably cumulative or duplicative," since the time of taking the deposition of Granillo on June 15, 2004, Plaintiffs have had ample opportunity to get the same information it is seeking from Granillo from Mr. Underwood. Moreover, the burden or expense of the proposed discovery outweighs any likely benefit taking into account that Granillo was not

---

[1] The Court should consider staying a ruling on this motion pending preparation of the transcripts of Mr. Underwood since the transcripts will clearly indicate any questions relating to the aforementioned document requests would be "unreasonably cumulative or duplicative."

7

involved in the sales of loans which is the crux of these claimed late responses. Moreover, what price HSBC sold its loans to third-parties or other borrowers is irrelevant to resolving the claims contained in Plaintiffs' Third Amended Complaint.

The Court must act in an even ended manner to prevent the misuse of discovery to wage a war of attrition or to coerce a party or witness, irrespective of the party's financial ability. See, Munoz-Santana v. United States, 742 F.2d 561, 563-564 (9th Cir. 1984).

Should the Court be inclined to permit any re-deposition, the Court should impose time limitations on Plaintiffs' counsel to avoid abuse.

II

**SINCE NO CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION IS DIVULGED, BY VIRTUE OF THE DISCLOSURE OF EXHIBITS 22, 23 AND 24 ATTACHED TO GRANILLO'S DEPOSITION, ATTORNEY-CLIENT PRIVILEGE IS NOT TRIGGERED NOR IS IT DEEMED WAIVED.**

Plaintiffs' argue that Exhibits 22, 23 and 24 of Granillo's deposition are attorney-client communications whose disclosure constitutes a waiver of HSBC's attorney-client privilege, thereby warranting the production of all documents concerning the subject matter of such exhibits. See, p. 10 of Plaintiffs' Memorandum.

To establish privilege, the elements are as follows:[2]

Exhibit 22 which is attached to the Declaration of Plaintiffs' counsel as Exhibit 12 relates to a draft letter addressed to Plaintiffs prepared by HSBC containing a handwritten initial of some employee of HSBC requesting "FG" to "please run this pass TM." Since there is no confidential communication contained or legal advice sought in Plaintiffs' Exhibit 22,

---

[2] (1) the legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) or at his insistence formerly protected, (7) from the disclosure by himself or by the legal advisor. See, United States v. Plache, 913 F.2d 1375, 1379, fn. 1, (9th Cir. 1990) (citations omitted).

8

attorney-client privilege is not implicated. Moreover, since Granillo testified that he did not remember the contents of his email nor his discussions with Attorney Moody relating to Exhibit 22, privileged communication was not divulged.

Plaintiffs' Exhibit 23 which is attached as Exhibit 12 to Plaintiffs' counsel's Declaration, is a facsimile coversheet from HSBC to Attorney Thomas Moody which enclosed four different letters which HSBC had sent or received from K. Sadhwani's Inc.. Again, nothing contained in these letters to and from HSBC and Plaintiffs are confidential communications relating to legal advice. In addition, since Granillo's response in his deposition that he did not recall his communications with Attorney Moody, no confidential communications has been divulged which would implicate a waiver of the attorney-client privilege. See, pp. 144-145 attached as Exhibit 4 to the Declaration of Plaintiffs' counsel.

Plaintiffs' Deposition Exhibit 24, which is attached as Exhibit 14 to the Declaration of Plaintiffs' counsel, is a draft letter, which was addressed to Plaintiffs. Again, nothing contained in Exhibit 24 contains attorney-client communications since it was a document prepared to be sent to Plaintiffs. Thus, attorney-client privilege is not implicated. Neither does Granillo's response to Plaintiffs' counsel's questions relating to Exhibit 4 involve the divulging of confidential attorney-client communications, thus, attorney-client privilege is not waived. See, pp. 146-147 of Exhibit 4 attached to the Declaration of Plaintiffs' counsel. In the absence of such confidential information supplied by HSBC, the draft document is not privileged merely because the attorney prepared it. See, e.g., Kenford v. County of Erie, 55 A.D.2d 466, 469, 471, 390 N.Y.S.2d 715, 719 (4th Dep't 1977); Matter of Bekins Storage Co., 118 Misc.2d at 179, 460 N.Y.S.2d at 691. See also, SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 522 (D.Conn. 1976).

9

In addition, Plaintiffs' argue that HSBC's failure to remove Exhibits 11 through 28 from the loan files waived the attorney-client privilege since these documents constituted confidential attorney-client communications. See, p. 12 of Plaintiffs' Memorandum. A review of Exhibits 11 through 28 indicates that these documents were either letters or facsimile transmittals letters between HSBC and Klemm, Blair, Sterling & Johnson and Carlsmith Ball attaching various documents including preliminary title reports, recorded Notice of Default filed against Plaintiffs, recorded Notice of Sale filed against Plaintiffs and copies of mortgages. For example, Exhibit 21 is an email in which an HSBC employee communicated to another employee that Attorney Thomas Moody "advised that HSBC can foreclose and a Notice of Default will be sent to KSI." Such information consists of factual information and does not call for a legal opinion nor analysis. The private power of sale is contained in a mortgage recorded at the Department of Land Management.

It is a well settled rule that "the [attorney-client] privilege does not apply to the situation where it is intention or understanding of the client or the attorney that the communication is to be made known to others, either in the form of an offering brochure or income tax returns." In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984). That case involved a disclosure of attorney-client communications relating to the preparation of a prospectus to be used in connection with a proposed private placement. Id. The court concluded that the attorney-client privilege was inapplicable to the attorney-client communications at issue, based upon "[t]he significant fact that the information given to the [attorney] was to assist in preparing such prospectus which was to be published to others and was not intended to be kept in confidence. That is the critical circumstance, to wit, the absence of any intent that the information was to be kept in confidence." Id. at p. 1358. Similarly, Exhibits 11 through 28 consists of

10

nonconfidential factual information between client and counsel in which one party or the other was providing copies of publicly recorded documents such as mortgages, notices of sale and preliminary title reports to each other. Such does not constitute attorney-client communications.

Thus, Plaintiffs' attempt to explore core attorney mental processes and to seek other documents involving attorney-client communications through its attempt to claim that Exhibits 11 through 28 as disclosed attorney-client communications should not be condoned by this court.[3] As will be argued later, regardless, Exhibits 11 through 28 are protected under the common interest doctrine.

Plaintiffs' reliance on the case of Weil v. Investment Indicators, Research and Management, Inc., 647 F.2d 18, 25 (9th Cir. 1981), is misplaced since in that case the Court found that the company was deemed to have waived its privilege as to communications actually disclosed, namely, the substance of Blue Sky counsel's advise regarding registration of foreign shares pursuant to the Blue Sky laws of the various states.

A review of Exhibits 22, 23 and 24 to the deposition transcript of Granillo clearly indicates that they do not contain any legal advice to HSBC relating to any matter that may be contained in these exhibits. The same applies to Exhibits 11 through 28. Nor does the case of United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990) provide any support to Plaintiffs since in that case, the court found that the witness waived the privilege by testifying about his counsel's advise before the grand jury. Again, neither the exhibits nor Granillo's deposition contains any confidential attorney-client communication. Neither does the case of In re Columbia/HCA Healthcare Corp Billing Practices Litigation, 293 F.3d 289 (6th Cir. 2002) help

---

[3] It is to be noted that Plaintiffs do not claim privilege has been waived as to Exhibits 11 through 28 due to lack of objections at the deposition, but rather that it was voluntarily disclosed and given to PMC, the third-party buyer of the loan, which then provided copies of these exhibits to Plaintiffs.

Plaintiffs' position since that case strictly involved a decision by the Sixth Circuit to reject the selective waiver doctrine. It is to be noted that in that case the court made it clear that any court should begin its analysis with the presumption in favor of preserving privilege. Id. at p. 308. (citations omitted). Plaintiffs' reliance on United States v. Dakota, 188 F.3d 663, 667 (6th Cir. 1999), is misplaced since that case did not involve a waiver of attorney-client communications, but rather the court found that the privilege was not implied since Dakota's discussions with counsel for a party was on a personal basis rather than as counsel.

     a.      **HSBC's voluntary disclosure to PMC of the various documents claimed to be attorney-client communications by Plaintiffs is protected under the common interest doctrine.**

As argued above, HSBC is of the position that none of these exhibits contains any confidential attorney-client communications. Even assuming arguendo, that these documents do contain attorney-client communications, its disclosure to PMC is still protected under the common interest privilege, which protects the communications made when an nonparty sharing the client's interest is a party to a confidential communication between attorney and client. See, United States v. Zolin, 809 F.2d 1411, 1415 (9th Cir. 1987).

The common interest privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege was not been waived. See, In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3rd Cir. 1986); Griffith v. Davies, 161 F.R.D. 687, 692 (C.D. Cal. 1995). The privilege applies even where the interests of the parties are not identical, and it applies even where the party's interests are adverse in substantial respects. See, Hunydee v. U.S., 355 F.2d 183, 184-85 (9th Cir. 1965). Pending

12

litigation is not necessary to invoke the common interest extension of the attorney-client privilege. See, Continental Oil Co. v. U.S., 330 F.2d 347, 350 (9th Cir. 1964).

In the instant case, HSBC had an interest to disclose all the legal risks to PMC and PMC had an interest to be aware of all the legal risks disclosed in any attorney-client communications contained in the loan files of Plaintiffs' loan before and after PMC purchased Plaintiffs' loan. Based on Plaintiffs' position, HSBC would be placed in a serious legal quandary since it could be sued for fraud/misrepresentation by PMC should any claims arise relating to the legal issues which should have been fully disclosed to a third-party buyer of the loan, but was removed or disclosing all attorney-client communications to a third-party buyer of the loan, then facing a subsequent claim like Plaintiffs that HSBC has waived its privilege.

      b.      **Even assuming arguendo that the exhibits were privileged, HSBC did not waive its privilege since the documents were compelled by Plaintiffs through a Subpoena Duces Tecum to PMC.**

The Ninth Circuit in Transamerica Computer Company, Inc. v. International Business Machines Corporation, 573 F.2d 646, 651 (9th Cir. 1978), affirmed the District Court's order denying Transamerica's motion to compel production of documents based on the waiver of attorney-client privilege since the court found that a disclosure of confidential material constitutes a waiver of such privilege only if it is "voluntary." PMC's disclosure of the claimed privileged documents cannot be deemed to be voluntary since a Subpoena Duces Tecum was served on PMC. See, Exhibit 7 attached to the Declaration of Plaintiffs' counsel.

/ / /

/ / /

/ / /

13

## ASSUMING ARGUENDO THAT THE SUBJECT EXHIBITS WERE PRIVILEGED COMMUNICATIONS, ITS DISCLOSURE WAS INADVERTENT.

HSBC will now address the elements relating to the test regarding inadvertent disclosures of privilege matter *seriatim*:

HSBC's precautions to prevent disclosure under these circumstances were reasonable. The Loan Purchase Agreement executed between HSBC and PMC contained a confidentiality provision that all the information in Plaintiffs loan files should be kept confidential except under certain limited instances it could be disclosed. See, Section 16 of the Loan Purchase Agreement attached as Exhibit "2" to the Declaration of Jacques G. Bronze. Plaintiffs' claim that HSBC's counsel, Jacques G. Bronze, "examined the Sadhwani loan file at the McCully office," is misplaced. See, ¶ 6 of Declaration of Plaintiffs' counsel. Jacques G. Bronze ("Bronze") was not at McCully's law office for more than an hour and a half. See, Declaration of Jacques G. Bronze. Bronze's review was limited to reviewing the security file, which contained all the agreements, notes, mortgages and similar credit facilities. See, Declaration of Jacques G. Bronze. Thus, any claim that Bronze knew the entire contents of Sadhwani loan file is incorrect. Neither was HSBC's co-counsel, Richard A. Pipes ("Pipes"), aware that an attorney-client communications was contained in the loan files delivered over to PMC until he was informed of that fact by Duncan McCully through a phone conference sometime in late February of 2004. See, Declaration of Pipes. Thereafter, Pipes then examined the Sadhwani loan files and removed various documents which were privileged. Thus, HSBC immediately took action to remedy any error. The Court in Mendenhall v. Barber-Greene Co., 531 F. Supp 951, 955 (1982) held that more than negligence of counsel is required before the client should be deemed to have

14

intentionally abandoned the attorney-client privilege. See also, Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co., 109 F.R.D. 12, 21 (D.Neb.1985).

The scope of the discovery in the instant case involves nearly 6,000 pages of documents. cf. Bud Antle, Inc. v. Grow-Tech Inc., 131 F.R.D. 179, 183 (N.D. Cal. 1990) (the court considered 2,500 to 3,000 pages of documents produced in a discovery to be fairly broad). HSBC concedes that the contents of the documents claimed by Plaintiffs to be waived were actually turned over to Plaintiffs.

Given the large volume of documents and the fact that the nature of the transaction required HSBC to transfer the entire loan file to PMC, the "overriding issue of fairness," favors a nonwaiver. Plaintiffs' claim that "the fact that the workout agreement was signed by Granillo, but drafted by HSBC's attorney (instead of Granillo or some other HSBC employee) makes an enormous difference in the strategy of Plaintiffs and their theories of prevailing at trial." See, p. 15 of Plaintiffs' Memorandum. Plaintiffs' argument is nothing more than a fabrication to attempt to claim that it would be unfair to deny waiver. Plaintiffs' Fifth Cause of Action contained in their Third Amended Complaint claims that the parties entered into "a valid workout agreement, where HSBC offered proposals to work out the loan and Plaintiffs accepted two of the proposals." See, ¶ 54 of Plaintiffs' Third Amended Complaint. How the subject Exhibits and any Order to Compel Production of Documents relating to these Exhibits would make "an enormous difference in the strategy of Plaintiffs and their theories . . . ," based on their Fifth Cause of Action that a valid workout had already been entered is sophistry at its best.

Even assuming that HSBC may have failed to identify confidential attorney-client communications in the privilege logs, it does not automatically waive the privilege for the omitted documents. Court's distinguish between a "slothful" and "arguable" failure to properly

15

assert privilege. See, Eureka Financial Co. v. Hartford Accident & Indemnity Co., 136 F.R.D. 179, 183-84 (E.D. Cal. 1991). The facts do not demonstrate that HSBC was "slothful."

## EVEN ASSUMING ARGUENDO THAT HSBC DISCLOSED PRIVILEGE COMMUNICATIONS, THE WAIVER OF THE PRIVILEGE NOT GO BEYOND WHAT THE MATTERS REVEALED RATHER THAN TO "ALL DOCUMENTS CONCERNING THE SUBJECT MATTER."

Plaintiffs' argue that the "[v]oluntary disclosure of the content of privileged attorney communications constitutes waiver of the privilege as to all such communications on the subject matter." See, p. 17 of Plaintiffs' Memorandum. The doctrine of subject matter waiver is clearly inapplicable to the facts of the instant case. Plaintiffs' claim that "because HSBC voluntary disclosed the subject documents to PMC and McCully & Beggs, Plaintiffs request that the Court require HSBC to disclose all communications on the same topics as those addressed in the subject documents including but not limited to the email and other communications referenced in Exhibit 22 of the Granillo deposition."[4]

The Second Circuit dealt with the scope of implied waiver in the case of In re von Bulow, 828 F.2d 94, 100-03 (2nd Cir. 1987). An issue in that case was the effect on the privilege from the publication of a book by von Bulow's counsel, in which the attorney described portions of certain privileged communications with his client. The client's wife sought disclosure of the balance of a conversation that had been partially disclosed, as well as discovery of all other privilege conversations on the same topics. Id. at p. 96. The Second Circuit Court held that the

---

[4] It is unclear for HSBC to ascertain whether Plaintiffs are claiming subject matter waiver as it relates to Exhibits 22, 23 and 24 of the deposition of Granillo and Exhibits 11 through 28 attached to the Declaration of Plaintiffs' counsel since Plaintiffs have previously argued that they were privileged communications which was waived or that Plaintiffs are only claiming subject matter waiver relating to Exhibit 22. Since only Exhibit 22 is delineated in the body of Plaintiffs' Motion, HSBC will safely assume that any subject matter waiver would be limited to Exhibit 22.

scope of any waiver by virtue of disclosure was to be defined by the so-called "fairness doctrine," which "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege holder's selective disclosure during litigation of otherwise privilege information." Id. at p. 101. Thus, the extent of any waiver by implication turns on the circumstances of the disclosure. Since the disclosed in von Bulow had occurred in an "extra judicial, setting-by publication of a book-the court there held that the unfairness to which the waiver doctrine was addressed was not implicated. As a result, the publication waived the privilege only with respect to the particular communications or portions of communications actually disclosed." Id. at p. 103.

The unfairness suggested by the Second Circuit in von Bulow would be a misleading pattern of disclosure, in which the privilege holder releases only communications or portions of communications favorable to his litigating position, while withholding any unfavorable ones. Id. at p. 102. Alternatively, if the privilege holder puts those communications in issue by virtue of his claims of defense in the case, then a broader, so-called "subject matter" waiver should also be recognized. Id. at pp. 102-103. See also, United States v. Bilzerian, 926 F.2d 1285, 1291-1294 (2nd Cir.), cert. den., 502 U.S. 813 (1991).

The Second Circuit in In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D.N.Y. 1996), dealt with the subject matter waiver issue squarely in that case. The court recognized subject matter waiver doctrine in a class plaintiffs and a co-defendant which argued that the documents prepared in contemplation of litigation had been waived by the public release of the investigative report by Kidder Peabody's counsel in which counsel summarized their factual findings and recommendations for reform of Kidder Peabody, as well as Kidder's use of

the report for litigation purposes.[5]  Id at p. 462.  The Second Circuit found the "the fairness doctrine is still more explicitly triggered by Kidders's use of the Lynch Report in the pending lawsuits and arbitrations. Id. at p. 472.  The Court held that Kidder would "in effect . . . use the substance of the documents as a sword while at the same time invoking the privilege as a shield to prevent disclosure of the very materials that it was repeatedly invited the courts to rely on. This it cannot do." Id. at p. 472-473 (citations omitted).  The Second Circuit concluded :

> . . . Kidder's affirmative use of the Lynch Report and, by implication, of the underlying interview documents, triggers a waiver of the privilege for those portions of the documents that embody the substance of any statements by Kidder's employees interviewed by the Lynch team prior to the issuance of its report. In the exercise of our discretion, we limit the piercing of privileged purely factual summaries of witness statements, and thus avoid any danger that a waiver might encompass corn attorney mental processes, for which we are required to demonstrate particular solicitude. Id. at p. 473. (citations omitted).

Plaintiffs have utterly failed to show how HSBC has used the substance of Exhibit 22 as a sword while at the same time invoking privilege as a shield to prevent the disclosure of such materials that it had previously authorized release or which it has "invited the courts to rely on." Clearly, the facts in the instant case are stark contrast to the facts in In re Kidder Peabody Securities Litigation.

Moreover, Plaintiffs' reliance on the Weil case is misplaced since the court held that the disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver "only as to communications about the matter actually disclosed." Weil, supra, at p. 25. In another case, the Ninth Circuit in Chevron Corporation v. Penzoil Company, 974 F.2d 1156, 1162 (9th Cir. 1992),  held that Penzoil was not required as a result of a limited disclosure to provide Chevron with every document of communication that touched on a more general tax

---

[5] The subject report was known as the Lynch Report.

deferral question which had been placed in dispute in the litigation with Chevron. The other two cases cited by Plaintiffs are inapplicable to the facts of the instant case and as binding precedent in the Ninth Circuit.

Thus, should the court be inclined to find a waiver, the wavier of the privilege should only be in respect to Exhibit 22 and not to the subject matter of any documents relating to Exhibit 22. See also, FDIC v. Marine Midland Realty Credit Corporation, 138 F.R.D. 479, 484 (E.D. Va. 1991).

V

## EVEN IF PLAINTIFFS SHOULD PREVAIL, NO EXPENSE SHIFTING SANCTIONS SHOULD BE IMPOSED SINCE HSBC'S NONDISCLOSURE WAS SUBSTANTIALLY JUSTIFIED.

There is a distinction between a complete failure to respond to a discovery demand and an incomplete response. Plaintiffs' Motion is grounded on the fact that witness Granillo's responses at the deposition were incomplete. If a response is given, but the discovering party deems the response to be incomplete, the party must move to compel an adequate response. FRCP 37(a)(2), (3). Sanctions that are available to a party that has prevailed on a motion to compel are limited to expenses, regardless, if a moving party prevails. The opposing party may rebut any presumption in favor of expense shifting sanctions by demonstrating its nondisclosure was substantially justified. FRCP 37(a)(4)(A), (B). The Court should provide HSBC an opportunity to supplement this pleading to show such justifications.

## CONCLUSION

Since Plaintiffs have failed to identify which portion of the responses of Granillo are inadequate or failed to explain what is missing or what kind of information would be necessary

19

to make the responses adequate, the Court should deny Plaintiffs' Motion in its entirety. However, should the Court be inclined to grant the Motion, the Court should not order the deposition to be more than two (2) hours. Moreover, Plaintiffs' counsel should be ordered to submit to the Court and counsel a list of the questions, which she intends to revisit because of Granillo's evasive or incomplete answers. This would avoid any abuse by Plaintiffs' counsel to revisit areas and harass the witness if the witness does not remember or recall the event or subject matter of the question.

Plaintiffs' Motion to order HSBC to produce all documents relating to the subject matter of Exhibit 22 should be denied in its entirety. However, should the Court be inclined to grant Plaintiffs' Motion, any waiver must be limited to the privileged documents actually disclosed. HSBC should not be required to provide every document that touched on the issue contained in Exhibit 22.

*Respectfully submitted* this 10th day of September 2004.

LAW OFFICES OF BRONZE & TANG
A Professional Corporation

By: _____
JACQUES G. BRONZE

20