JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel:    (671) 477-9730
Fax:    (671) 477-9734

Attorneys for Plaintiffs Alan Sadhwani, et al.



FILED
DISTRICT COURT OF GUAM
SEP 1 7 2004
MARY L. M. MORAN
CLERK OF COURT
275

# IN THE UNITED STATES
# DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>               Plaintiffs,<br><br>    vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation,<br>JOHN DOE I through JOHN DOE X,<br><br>               Defendants. | CIVIL CASE NO. 03-00036 |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S MOTION TO DISMISS PLAINTIFFS' FIRST, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION**

ORIGINAL

# TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  THE DOCTRINE OF "LAW OF THE CASE" BARS RECONSIDERATION OF HSBC'S MOTION TO DISMISS PLAINTIFFS' FIRST AND SIXTH CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  GUAM LAW RECOGNIZES THE TORT OF BREACH OF THE COVENANT GOOD FAITH AND FAIR DEALING; PLAINTIFFS' ALLEGATIONS FULLY ESTABLISH A VALID CLAIM FOR RELIEF. . . . . . 8

III.  PLAINTIFFS' THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT-PROMISSORY NOTE AND BUSINESS LOAN AGREEMENT ESTABLISHES A VALID CLAIM FOR RELIEF. . . . . . . . . . 11

      A.  HSBC Breached the BLA and Promissory Note By Selling Plaintiffs' Loan to PMC, Despite an Express Restriction that the Loan Be Sold to "Participation Interests" Only. . . . . . . . . . 11

      B.  The BLA and Note Were Executed as Part of the Same Transaction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.  13 G.C.A. § 3119(1) Allows for Separate Agreements that Modify or Affect an Instrument. . . . . . . . . . . . . . . . . . . . . . . . . . 15

      D.  The Loan Participation Clause in the BLA Restricted HSBC's Ability to Transfer or Assign the Sadhwani Loan to Participation Interests Only. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      E.  Other Provisions of the BLA Did Not Allow HSBC to Sell the Sadhwani Loan Except As Provided in the BLA. . . . . . . . . . 18

IV.  PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM FOR BREACH OF CONTRACT IN THEIR FOURTH CAUSE OF ACTION. . . . . . . . . . . . . . . 18

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

V.   PLAINTIFFS' ALLEGATIONS OF BREACH OF FIDUCIARY DUTY
     ADEQUATELY ESTABLISH A VALID CLAIM. . . . . . . . . . . . . . . . . . . . . . . 21

VI.  PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR
     BREACH OF DUTY NOT TO DISCLOSE CONFIDENTIAL
     INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          A.   The Gramm-Leach-Bliley Act Has No Applicability To This
               Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          B.   Plaintiffs Sufficiently State a Cause of Action for Breach of
               Duty Not to Divulge Plaintiffs' Confidential Banking
               Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## TABLE OF AUTHORITIES

PAGE

**CASES**

Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, Tenn.,
706 F.2d 638, 641 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ada's Inc., et al. v. First Hawaiian Bank, et al., Civil Case No. CV0785-02 . . . . . . . . . . . . . 8, 10

Alexander, 106 F.2d at 876 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Armstrong v. Colletti, 88 Wis.2d 148, 276 N.W.2d 364 (App. 1979) . . . . . . . . . . . . . . . . . . . . 16

Barbara A. v. John G., 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422, 431-432
(Cal. Ct. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cabo Distributing Co., Inc. v. Brady, 821 F. Supp. 601 (N.D. Cal. 1992) . . . . . . . . . . . . . . . . 28

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Davis v. Scherer, 468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DeJoy v. Comcast Cable Communications, Inc., 941 F. Supp. 468 (D.N.J. 1996) . . . . . . . . . . . 20

Djowharzadeh v. City Nat. Bank and Trust Co. of Norman, 646 P.2d 616 (Okl.App., 1982) . 26

Elsberry Equip. Co.v. Short, 211 N.E.2d 463, 468 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Figueroa v. U.S., 7 F.3d 1405 (9th Cir. 1993), cert. denied, 511 U.S. 1030 (1993) . . . . . . . . . . 28

Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15 (1st Cir. 1992) . . . . . 21

Gayle v. Hemlani, 2000 Guam 25 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hauser v. Western Group of Nurseries, Inc., 767 F. Supp. 475, 490 (S.D.N.Y. 1991) . . . . . . . 14

Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir.), cert. denied, 516 U.S. 1029 (1995) . . . . . . . . . . 6

Hemlani v. Ticor Title Insurance, Inc., Civil Case No. CV1500-98 . . . . . . . . . . . . . . . . . . . . . 19

In re Autostyle Plastics, Inc., 216 B.R. 784, 222 B.R. 812 (Bkrtcy.W.D. Mich. 1997) . . . . . . . 12

In re Benny, 81 F.3d 91, 94 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

*In re Letterman Bros. Entergy Securities Litigation*, 799 F.2d 967, 975 (5th Cir. 1986) . . . . . . . 22

*In re Rexplore*, 685 F.Supp. 1132, 1140 (D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Wells Fargo Sec. Litigation*, 12 F.3d 922, 925 (9t Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 4

*Industrial General Corp. v. Sequoia Pacific Systems Corp., supra.;*
    *Travel Services Network, Inc. v. Presidential Financial Corp. of Mass.,*
    959 F. Supp 135, 144 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*J.C. Millet Co. v. Distillers Distrib. Corp.*, 258 F.2d 139, 143 (9th Cir.1958) . . . . . . . . . . . . . 19

*Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jenkins v. Karlton*, 329 Md. 510, 620 A.2d 894 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jenkins v. Thyer*, 758 S.W. 2d 878, 884 (Mo. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kemmler Mem. Foundation v. 691/733 East Dublin-Granville Road Co.,*
    62 Ohio St.3d 494, 584 N.E.2d 695 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Knut. Co. v. Knutson Constr. Co.*, 433 N.W.2d 149, 151 (Minn.App. 1988) . . . . . . . . . . . . . . 16

*Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 71 (5th Cir.1987) . . . . . . . . . . . . . . . . . . . . . 14, 16

*Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir.),
    *cert. denied*, 516 U.S. 955 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Main Bank of Chicago v. Baker*, 88 Ill.App. 328, 410 N.E.2d 681, 686 (1980) . . . . . . . . . . . . . 15

*McVay v. Western Plains Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987) . . . . . . . . . . . . . . . . 11, 12

*Merchants Nat'l Bank & Trust Co. v. Professional Men's Ass'n, Inc.,*
    409 F.2d 600, 601 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 715 (9th Cir. 1990) . . . . . . . . . . . . . . . 5

*Milohnich v. First Nat. Bank of Miami Springs*, 224 So.2d 759, 760 (Fla.App. 1969) . . . . . . . 26

*Northwestern Bank v. Neal*, 271, S.C. 544. 248 S.E.2d 585 (1978) . . . . . . . . . . . . . . . . . . . . . 13

*Official Publications, Inc. v. Kable News Co., Inc.*, 775 F.Supp. 631, 639 (D.N.Y. 1991) . . . . 22

*Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 955
    (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Peterson v. Idaho First Nat. Bank, 367 P.2d 284 (Id. 1961) .......................... 26

Pit River Home and Agric. Coop Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir. 1994) ... 5

PMC, DH Cattle Holdings Co. v. Reno, 196 A.D.2d 670, 601 N.Y.S.2d 714 (1993) ......... 13

Reese v. First Missouri Bank & Trust Co. of Crete Coeur, 664 S.W. 2d 530, 533
    (Mo. App. E.D. 1983) ...................................................... 14, 18

Reese v. First Mo. Bank & Trust Co., 664 S.W.2d 530, 533 (Mo.App. 1983) .............. 16

Ridgeway v. Montana High School Ass'n, 858 F.2d 579, 587-88 (9th Cir. 1988) ............ 5

Sanden v. Hanson, 201 N.W.2d 404, 11 UCC Rep.Serv. 1002 (1972) .................... 17

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ....................................... 4

Scott v. Dimes Savings Bank of New York, 866 F.Supp 1073, 1078 (D.N.Y. 1995) ......... 22

Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951 (1993) ......... 5, 21

Travel Services Network, Inc. v. Presidential Financial Corp. of Mass.,
    959 F. Supp 135, 144 (D. Conn. 1997) ...................................... 22

United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ........................... 5

Walsh v. McGee, 918 F. Supp. 107 (S.D.N.Y. 1996) ................................ 28

## **OTHER AUTHORITIES**

15 U.S.C. § 6809(4)(A)(i)-(iii) ................................................... 24

15 U.S.C. § 6809(9) ........................................................... 25

15 U.S.C. §§ 6802(e)(1)(C) and (e)(7) ............................................ 24

1B Moore's Federal Practice para. 0.404[4-1] (1995) ................................ 7

The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. ............................. 24

U.C.C. section 3-119 comment 3 ................................................. 13

Willier & Hart, U.C.C. Reporter-Digest & 3-104, A2, Comment 1 ................... 13, 15

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## INTRODUCTION

Plaintiffs Alan Sadhwani, et al.file this Opposition to defendant HongKong and Shanghai

Corporation Ltd.'s ("HSBC") motion to dismiss plaintiffs' First, Third, Fourth, Sixth and Seventh

Causes of Action.  HSBC previously filed a motion to dismiss plaintiffs' First and Sixth Causes of

action, and this Court previously denied the motion as to those two causes of action in an Order

dated April 9, 2004 ("the April 9 Order").  The Court's Order of April 9, 2004 establishes the law

of the case as it relates to plaintiffs' First and Sixth Causes of Action and HSBC's motion should

be denied on that basis.

HSBC bears a heavy burden in showing beyond doubt that plaintiffs can prove no set of facts

in support of their claims which would entitle them to relief.  HSBC fails to discuss this standard

and fails to meet it.  The Court should deny HSBC's motion to dismiss in its entirety.

## STATEMENT OF FACTS

Plaintiffs Alan Sadhwani, Laju Sadhwani, and K. Sadhwani's Inc. ("plaintiffs") filed this

lawsuit against HSBC for breach of the covenant of good faith and fair dealing;  intentional

misrepresentation;  breach of contract; breach of fiduciary duty; and breach of confidentiality and

banking laws.  Plaintiffs were long-time customers of HSBC for approximately twenty-five years;

they are in the business of acquiring real properties and developing them, as well as  leasing real

properties, including offices and other commercial buildings, and selling electronics, fixtures and

appliances. Third Amended Complaint ("TAC") ¶¶ 4-5. Plaintiffs banked exclusively with HSBC,

which lent funds to plaintiffs, took plaintiffs' mortgages, security instruments and other evidences

of indebtedness, and accepted all of plaintiffs' deposits. Id. ¶ 5.  Plaintiffs deposited about $100

million with HSBC during their twenty-five year relationship.  Id.  As borrowers, plaintiffs have

1

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

paid HSBC thousands of dollars in interest and fees. Id. By virtue of this long relationship, plaintiffs placed explicit faith, trust, and confidence in HSBC, trusting that HSBC and its officers and employees would deal fairly and honestly with them. Id.

Over the course of their banking relationship, plaintiffs had obtained numerous loans from HSBC. TAC, ¶ 6. The parties executed a Business Loan Agreement ("BLA") on December 31, 1997. TAC, ¶ 7, Exh. B. On the same day that the BLA was executed, K. Sadhwani's Inc. also executed a Promissory Note ("the Note") in favor of HSBC. TAC, ¶ 8, Exh. C. In November 2002, plaintiffs had an outstanding loan balance of over $6.68 million with HSBC ("the Loan"). TAC, ¶ 9. Apparently because it was not making sufficient profits on Guam to satisfy its management in Hong Kong, HSBC decided to abandon its operations in Guam. TAC, ¶ 10. HSBC subsequently began to place undue pressure on plaintiffs to pay off their Loan. TAC, ¶¶ 11-13. On March 5, 2003 the parties entered into a Promissory Note Modification Agreement which extended the maturity date of the Note to August 31, 2003. TAC, ¶¶ 15-16, Exhs. J-M. On March 21, 2003, HSBC and plaintiffs entered into a workout agreement to pay off plaintiffs' Loan, where plaintiffs would either sell their properties or obtain alternate financing. (Exhs G and H to Complaint) Relying upon this workout agreement and HSBC's representations, plaintiffs took all necessary steps to either sell their properties or try to obtain alternate financing from March 2003 through August 2003. TAC, ¶ 22.

While plaintiffs were attempting to find alternate financing and to sell their properties in furtherance of the workout agreement, in early May 2003 HSBC, without plaintiffs' knowledge, began negotiations with Joseph K. Fang ("Fang") to sell the Loan to Mr. Fang's Guam company, Paradise Marine Corporation ("PMC"). TAC, ¶ 19. After over a month of negotiations, HSBC and Mr. Fang executed a Loan Purchase Agreement on June 25, 2003 for the sale of plaintiffs' Loan.

2

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Id. HSBC did not disclose to plaintiffs that the Loan was for sale and did not offer plaintiffs the opportunity to purchase or pay off their Loan. Id. HSBC also did not disclose to plaintiffs that the Loan was sold in June, 2003. Id. HSBC sold plaintiffs' Loan to PMC for $2.75 million, less $90,000, which was less than half the balance of the Loan. TAC, ¶ 28. Plaintiffs later learned that Fang was a former executive of HSBC and a long-time special customer of HSBC. TAC, ¶ 34G.

I came as a total surprise to plaintiffs to receive from HSBC, in July 2003, HSBC's notice of intent to sell their Loan. TAC, ¶ 20. Yet even during July 2003, HSBC represented that so long as plaintiffs obtained alternate financing HSBC would try to stop sale of the Loan. Id. ¶ 21. The closing on the sale of plaintiffs' loan occurred in August, 2003.

In the course of trying to sell plaintiffs' loan, HSBC disclosed personal confidential and proprietary information concerning plaintiffs to PMC and other potential purchases. TAC, ¶¶ 59A, 65-67. HSBC also sold or settled other customers' loans. HSBC treated other customers more favorably than plaintiffs, including but not limited to, giving them longer and more reasonable periods of time to settle their loans or to obtain alternate financing; giving them discounts on their loans; allowing friendly foreclosures; or allowing their customers to continue servicing their loans with HSBC. TAC, ¶¶ 34F, 59G.

### PROCEDURAL BACKGROUND

On December 30, 2003, HSBC filed a motion to dismiss plaintiffs' original complaint in its entirety. The Court issued its April 9 Order granting in part and denying in part HSBC's motion to dismiss. The Court denied HSBC's motion to dismiss plaintiffs' first (breach of the covenant of good faith and fair dealing), second (intentional misrepresentation), fourth (breach of fiduciary duty), and fifth (breach of the workout agreement) causes of action. The Court granted HSBC's motion

3

to dismiss plaintiffs' third (breach of promissory note) and sixth (breach of banking and confidentiality laws) causes of action without prejudice.

Plaintiffs filed a First Amended Complaint on April 27, 2004. HSBC filed a motion to strike the complaint or alternative motion to dismiss the third and sixth causes of action. The Court granted the motion to strike and determined that the alternative motion to dismiss was moot. Order dated May 28, 2004. Plaintiffs then filed a Second Amended Complaint on June 2, 2004. By Stipulation of the parties dated August 18, 2004, plaintiffs filed a Third Amended Complaint on August 13, 2004.

## ARGUMENT

"[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *E.g.*, In re Wells Fargo Sec. Litigation, 12 F.3d 922, 925 (9th Cir. 1993). The Court's role at this stage is not to evaluate the strengths or weaknesses of claims. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test"), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984).

HSBC does not even mention this strict and settled standard and further ignores most of the factual allegations of the complaint, asking this Court to rule that the plaintiffs could not ultimately establish five of their claims. As discussed fully below, the factual allegations of plaintiffs' Third Amended Complaint, and reasonable inferences therefrom, taken as true, establish valid claims. HSBC's motion to dismiss should be denied in its entirety.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

4

## I. THE DOCTRINE OF "LAW OF THE CASE" BARS RECONSIDERATION OF HSBC'S MOTION TO DISMISS PLAINTIFFS' FIRST AND SIXTH CAUSES OF ACTION.

The doctrine of "law of the case" generally precludes a court from reconsidering an issue that has already been decided in the identical case, either by the same court or a superior court. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (citing Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993). The doctrine applies to issues decided explicitly or by necessary implication in the court's prior ruling. Leslie Salt Co. v. United States, 55 F.3d 1388, 1393 (9th Cir.), cert. denied, 516 U.S. 955 (1995). The doctrine is designed to ensure judicial consistency and to prevent the reconsideration, during the course of a single continuous lawsuit, of those decisions which are intended to put a particular matter to rest. Pit River Home and Agric. Coop Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir. 1994). The Ninth Circuit applies the law of the case doctrine to interlocutory orders, as well as to final judgments. Ridgeway v. Montana High School Ass'n, 858 F.2d 579, 587-88 (9th Cir. 1988); Alexander, 106 F.2d at 876.

A court may exercise its discretion to revisit and reverse a prior ruling only on one of five specified grounds: (1) a clearly erroneous prior ruling; (2) an intervening change in controlling law; (3) substantially different evidence; (4) "other changed circumstances," and (5) that "manifest injustice" would result were the prior ruling permitted to stand. Thomas v. Bible, 983 F.2d at 155; Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703, 715 (9th Cir. 1990). Under the law of the case doctrine, a previous decision on a factual or legal issue must be followed in all subsequent proceedings in the trial court or on a later appeal in the appellate court, unless the court is persuaded that one of these five exceptions requires otherwise. In re Benny, 81 F.3d 91, 94 (9th Cir. 1996); Pit River, 30 F.3d at 1096-97.

5

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

A prior ruling may not be reversed on the grounds that it was wrong, but only that it was *clearly* wrong. Leslie Salt, 55 F.3d at 1393. If the prior ruling was not clearly erroneous, the court which issued that ruling may reverse itself only where there has been either an intervening change in controlling authority, or new relevant evidence has surfaced. Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997); Hegler v. Borg, 50 F.3d 1472, 1475 (9th Cir.), *cert. denied*, 516 U.S. 1029 (1995).

In the April 9 Order this Court explicitly denied HSBC's motion to dismiss plaintiffs' causes of action for breach of the covenant of good faith and fair dealing and breach of fiduciary duty. HSBC's second motion to dismiss these same causes of action in plaintiffs' Third Amended Complaint does not even mention the April 9 Order. HSBC does not claim that the April 9 Order was clearly erroneous; that there was an intervening change in law; that there exists substantially different evidence; that there are "other changed circumstances"; or that manifest injustice would result if the April 9 Order were permitted to stand. Instead, HSBC's second motion on these claims is adopted almost verbatim from its first motion.[1] In the second motion, one difference is that HSBC placed string citations in footnotes rather than in the body of the memorandum, as it did in the first motion. Another difference is that on pages 4-5 of the second motion, HSBC adds two new paragraphs and cites several cases that were not previously cited in the first motion to dismiss. However, these cases are not "new" nor do they constitute an intervening change in *controlling* authority. Apart from these minor differences, HSBC's second motion to dismiss is merely a rehashing of arguments contained in its first motion to dismiss.

_____

[1] HSBC's second motion to dismiss, pages 2 and 3, were copied verbatim from the first motion to dismiss, pages 2, 7 and 8. HSBC's second motion to dismiss, pages 11-14, were copied verbatim from the first motion to dismiss, pages 19-23.

6

The April 9 Order was issued after extensive briefing and a hearing on all of the issues. After the Order was issued, the depositions of thirteen witnesses were taken in the case, and depositions are ongoing. Plaintiffs relied upon the April 9 Order in questioning the witnesses deposed thus far, since that Order established the law of the case and the controlling legal standard for plaintiffs' claims for breach of the covenant of good faith and fair dealing and breach of fiduciary duty. Plaintiffs would suffer severe prejudice if, at this late date, the Court were to reverse the April 9 Order regarding plaintiffs' claims for breach of the covenant of good faith and fair dealing and breach of fiduciary duty.

The law of the case doctrine would be meaningless if HSBC is allowed to reargue the same points, without end, and without new evidence or new controlling law. Particularly in this case, where no trial judge has yet been assigned, conceivably HSBC could continue to file serial motions to dismiss in the hope of reversing the April 9 Order by another judge. Where none of these exceptions applies - new evidence, new controlling law, clear error and manifest injustice - the law of the case doctrine "protects the ability of the court to build its final judgment by cumulative rulings, with reconsideration or review postponed until after the judgment is entered." 1B Moore's Federal Practice para. 0.404[4-1] (1995).[2]

The law of the case doctrine bars reconsideration of the April 9 Order as it applies to plaintiffs' causes of action for breach of the covenant of good faith and fair dealing and breach of

---

[2] Our local rules recognize the wisdom of this rule. A motion for reconsideration may be made only on the grounds of a material difference in fact or law from that presented to the court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision; the emergence of new material facts or a change of law occurring after the time of such decision or a manifest showing of a failure to consider material facts presented to the court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion. L.R. 7.1(i). HSBC never filed a motion for reconsideration of the April 9 Order.

7

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

fiduciary duty. HSBC's motion to dismiss these two claims should be denied.

## II. GUAM LAW RECOGNIZES THE TORT OF BREACH OF THE COVENANT GOOD FAITH AND FAIR DEALING; PLAINTIFFS' ALLEGATIONS FULLY ESTABLISH A VALID CLAIM FOR RELIEF.

In the event that the Court is inclined to reconsider the April 9 Order denying HSBC's motion to dismiss plaintiffs' first cause of action, plaintiffs submit that the April 9 Order is not "clearly erroneous" nor has there been an intervening change in controlling law. Thomas v. Bible, 983 F.2d at 155.

In Ada's Inc., et al. v. First Hawaiian Bank, et al., Civil Case No. CV0785-02, Decision and Order dated July 7, 2003, the Superior Court of Guam squarely addressed the issue of whether a cause of action for tortious breach of the covenant of good faith and fair dealing may be asserted against a bank and answered that question in the affirmative. (A copy of the decision is filed with the Court). Accordingly, the plethora of authorities cited by HSBC involving insurance cases and other state caselaw, (HSBC Memo. at 2-5), is irrelevant. Indeed, in the Ada's Inc. case, the Superior Court discussed several of the same cases cited by HSBC, yet concluded that plaintiffs should be allowed to pursue the tort of breach of the covenant of good faith and fair dealing in Guam.

The facts of the Ada's Inc. case are quite similar to this case. There, the plaintiffs, customers of First Hawaiian Bank ("FHB"), filed a complaint seeking, *inter alia*, damages for breach of the covenant of good faith and breach of contract. Like HSBC here, FHB filed a motion to dismiss, arguing that when a duty is breached in a commercial contract the resulting claim is merely a breach of contract claim and no tort damages are available. Decision at 5. The Superior Court, per the Honorable Joaquin V.E. Manibusan, Jr., noted that "[t]he concept of a bad faith action within the context of a breach of a commercial contract in the banking area is relatively new and changing.

8

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Courts are beginning to see that such actions are plausible in the context of certain pleadings." Id.

at 9. Canvassing numerous state court decisions, the Court concluded that ". . . there is a general rule

of law which requires banks to adhere to an implied duty of good faith and fair dealing in

relationship with and toward its customers." Id. at 10. Denying FHB's motion to dismiss, the Court

held:

> A bank's failure to adhere to this implied duty [of good faith and fair
> dealing] should not bar a bad faith action merely because there is a
> remedy in a breach of contract action.... Plaintiffs must allege some
> act of dishonesty by the bank and allege that the bank acted outside
> accepted commercial practices. When Plaintiffs do make such
> allegations, an appropriate cause of action is raised by the Plaintiffs.

Decision at 11.

In this case, plaintiffs allege numerous facts establishing acts of dishonesty by the bank and

that the bank acted outside accepted commercial practices. *See* Statement of Facts at 2-4, above.

Accepting these allegations as true, HSBC committed acts of dishonesty, which are outside accepted

commercial practices: HSBC lied to plaintiffs about intending to perform on the workout agreement.

HSBC reneged on the workout agreement by refusing to consider plaintiffs' attempts to sell the

securing real properties and obtain alternate financing. And HSBC lied about its agreement to try

to stop the sale of the Loan if plaintiffs obtained alternate financing. Even after HSBC entered into

the agreement to sell plaintiffs' Loan to PMC, HSBC continued to lead Mr. Sadhwani to believe that

he could pay off the Loan with HSBC. HSBC never had any intention of cancelling its contract with

PMC, and was leading Mr. Sadhwani on a merry goose chase. All of these acts constitute bad faith

and plaintiffs have stated an appropriate cause of action for breach of the covenant of good faith and

fair dealing.

9

In the April 9 Order, the Court found that it must apply state substantive law and reviewed the law of Guam to determine whether the law would permit an action for breach of the covenant of good faith and fair dealing. April 9 Order at 6. The Court carefully considered the arguments of the parties and found that while the Guam Supreme court had not ruled on the issue, the <u>Ada's</u> decision was controlling. After scrutinizing the cases cited by HSBC and rejecting HSBC's attempts to discredit the <u>Ada's</u> Decision, the Court held that it was bound by substantive local law on this issue. April 9 Order at 8. The Court held that in the <u>Ada's</u> case, Guam recognized a cause of action for breach of the covenant of good faith and fair dealing arising from breach of a commercial contract between a customer and a bank. <u>Id.</u> at 7.

Despite the Court's clear reliance on the <u>Ada's</u> decision, HSBC does not even mention the case. HSBC does not contend that the April 9 Order was clearly wrong or that there has been an intervening change in controlling authority. The additional cases cited by HSBC in its second motion to dismiss (HSBC's Memo. at 4-5, n.4) do not constitute an "intervening change in controlling authority", as they were rendered prior to the April 9 Order. Those cases are also not "controlling" since they are not Guam cases and they do not affect Guam law. Instead, HSBC merely re-argues its earlier motion to dismiss, citing additional cases to support its position. This position was rejected in the Court's April 9 Order. HSBC also does not cite to any new evidence or any "manifest injustice" that would result if the April 9 Order were to remain in effect. For these reasons, plaintiffs respectfully request that the Court deny HSBC's motion to dismiss their first cause of action.

/ / /

/ / /

10

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

### III. PLAINTIFFS' THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT - PROMISSORY NOTE AND BUSINESS LOAN AGREEMENT ESTABLISHES A VALID CLAIM FOR RELIEF.

#### A. HSBC Breached the BLA and Promissory Note By Selling Plaintiffs' Loan to PMC, Despite an Express Restriction that the Loan Be Sold to "Participation Interests" Only.

Plaintiffs and HSBC entered into a valid loan contract by executing the BLA. TAC, ¶ 7. Exh.

B. The BLA expressly restricts the ability of HSBC to sell or transfer the Loan:

> **Consent to Loan Participation. Borrower agrees and consents to Lender's sale or transfer, whether now or later, or one of more participation interests in the Loans to one or more purchasers,** whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever to any or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. **Borrower also agrees the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loans and will have all rights granted under the participation agreement or agreements governing the sale of such participation interests.** Borrower further waives rights of offset of counterclaim that it may have now or later against any purchaser of such a participation interest unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure insolvency of any holder of any interest in the Loans. **Borrower further agrees that the purchaser of any such participation interest may enforce interests irrespective of any personal claims or defenses that Borrower may have against Lender.**

TAC, Exh. B (emphasis added). A typical loan participation is one where the lead bank enters into participation agreements with other banks to accumulate funds for loans and to reduce the risk of exposure. McVay v. Western Plains Corp., 823 F.2d 1395, 1398 (10th Cir. 1987).[3] A true

---

[3] As the McVay court observed, in general, "loan participations are a common and wholesome credit device." They allow for the accumulation of funds from several lenders for loans not otherwise available to borrowers from a single institution. Lenders benefit by reducing explosure to loss in a single transaction. as well as by additional opportunities for placing funds at interest. In a typical loan participation, the lead bank will appear as the only party on the note and mortgage. It also generally services the loan. The participation agreement usually spells out the liabilities and duties of the parties and commonly designates the lead bank as trustee for the other participants. 823 F.2d at 1398.

11

"participation agreement" is one under which (a) money is advanced by a participant to a lead lender; (b) the participant's right to repayment arises only when the lead lender is paid: c) only the lead lender can seek legal recourse against borrower; and (d) the document is evidence of the parties' true intentions. In re Autostyle Plastics, Inc., 216 B.R. 784, *opinion supplemented*, 222 B.R. 812 (Bkrtcy.W.D. Mich. 1997).[4]

HSBC urges the Court to find that a loan participation can sell a 100 percent interest in a loan, but there is no evidence that HSBC sold plaintiffs' Loan to PMC though a loan participation agreement. PMC is not a bank or financial institution, and no loan participation agreement was executed between HSBC and PMC. The Loan was sold to PMC not as a participation interest but as a straightforward sale of the entire Loan under a Loan Purchase Agreement - TAC ¶¶ 18,28. Accordingly, the sale of the Loan to PMC is in violation of the BLA.

### B.    The BLA and Note Were Executed as Part of the Same Transaction.

13 G.C.A. § 3119 provides as follows:

---

[4].    The American Bankers Association's bankers' reference manual "Banking & Finance Terminology" (4th Ed.) provides as follows:

> "**participation**  An interest in a loan. A participation is the acquisition by a third party from a lender of an interest in a loan. The acquisition of this interest may occur concurrently with or subsequent to the making of the loan. The participation may be disclosed to the borrower or it may occur without the borrower or it may occur without the borrower's knowledge or consent. The lender is the "lead," and the third party acquiring the interest in the loan is the participant. The relationship is frequently formalized by an agreement in writing known as a participation certificate. The participant generally acquires an undivided interest in the loan. Generally accepted accounting principles (GAAP) distinguish between a participation and a syndication, which results in different accounting treatment for the recognition of fee income.
>
> **participation loan**  A loan in which more than one lender participates, although only one of the lenders services the loan. The buyer buys only a portion of the principal balance of the loan; the seller retains the unsold portion. *See also* participation.

12

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Other Writings Affecting Instrument. (1) As between the obligor and his immediate obligee or any transferee *the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction*, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument. (2) A separate agreement does not affect the negotiability of an instrument.

(Emphasis added)

The foregoing statute, which was copied from the Uniform Commercial Code, recognizes that the parties to a negotiable instrument may, by separate written agreements, modify or affect that instrument.[5] Section 3119(1) applies the "ordinary rule [of contracts] that writings executed as part of the same transaction are to be read together as a single instrument." U.C.C. § 3-119 comment 3. Plaintiffs have not found any Guam cases defining the phrase "as a part of the same transaction." Other courts, however, have defined the phrase as relating to agreements executed "so proximate in time as to grow out of, elucidate, and explain the quality and character of the transaction, or [to] an occurrence within such time as would reasonably make it part of the same transaction." Jenkins v.

---

[5] Section 3119 plainly addresses two types of agreements. Section 3119(1) refers to an agreement that is executed as part of the same transaction and that modifies or affects an instrument. Section 3119(2) refers to a separate agreement that does not affect the negotiability of the instrument. Willier & Hart, U.C.C. Reporter-Digest & 3-104, A2, Comment 1 states in part:

> Indeed, there is a significant difference between a separate agreement, which is 'part of the same instrument' and a separate agreement, contemporaneously executed, which is not 'part of the same transaction.' *In the first situation, a promise included in the separate agreement might render the whole writing non-negotiable under Section 3-104(1)(b).* In the second situation, the separate agreement would in no way affect the negotiability of the contemporaneously executed promissory note under section 3-119.

(Emphasis added) The two cases cited by HSBC, DH Cattle Holdings Co. v. Reno, 196 A.D.2d 670, 601 N.Y.S.2d 714 (1993) and Northwestern Bank v. Neal, 271, S.C. 544, 248 S.E.2d 585 (1978), apply only section 3-119(2) and do not address issues relating to section 3-119(1). These cases are irrelevant since, as discussed above, section 3-119(1) controls here.

13

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Karlton, 329 Md. 510, 620 A.2d 894 (1993), quoting Elsberry Equip. Co.v. Short, 211 N.E.2d 463, 468 (1965).[6] Further, "[t]o be part of the same transaction, the separate written agreement, whether or not it was executed at the same time, earlier than, or subsequent to the note, must be substantially relevant to understanding the transaction out of which the note arose." Jenkins, 329 Md. at 529. Generally, written documents executed with the note are part of the same transaction. Kucel v. Walter E. Heller & Co., 813 F.2d 67, 71 (5th Cir.1987); Geyer v. First Ark. Dev. Fin. Corp., 434 S.W.2d 301, 302 (1968) (note and deed of trust executed together are a part of same transaction).[7]

In this case, the BLA was executed on December 31, 1997, the same date as the Promissory Note. The BLA and the Note were "executed as part of the same transaction", as they were pursuant to an amendment and renewal of credit facilities granted to K. Sadhwani's Inc. by HSBC. See TAC, Exh. A. Exhibit A shows a detailed breakdown of the credit facilities, including the $6.5 million term loan, with the remaiing $3,275,000 in term loans, overdrafts, letters of credit, and standby letters of credit, for a total of $9,775,000.00. The BLA references the $9,775,000.00 figure, while the Note references the $6.5 million term loan figure. The BLA and Note were therefore executed "as a part of the same transaction"

The BLA refers to and incorporates by reference therein, all notes executed by the Sadhwanis and evidencing their loan obligations in favor of HSBC, including the Note. (TAC, Exh. B). The BLA also expressly defines "Loan" to mean and include "without limitation any and all commercial

---

[6]In Elsberry, a note and written agreement were executed at the same time and were deemed part of the same transaction.

[7] While documents which are a part of the same transaction may refer to each other, even incorporating terms, see Geyer v. First Arkansas Development Finance Corp., 434 S.W.2d 301, 302 (Ark. 1968); Hauser v. Western Group of Nurseries, Inc., 767 F. Supp. 475, 490 (S.D.N.Y. 1991); Reese v. First Missouri Bank & Trust Co. of Crete Coeur, 664 S.W. 2d 530. 533 (Mo. App. E.D. 1983), it is not necessary that they do so.

14

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

loans and financial accommodations" from HSBC to the Sadhwanis, "whether now or hereafter existing." (Id., Exh. B at 1). The Note provides under "General Provisions" that the parties agree that "Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made." (TAC, Exh. B at 2). HSBC clearly intended the BLA and the Note as part of the same transaction, as it endorsed both documents (with identical endorsements) over to PMC on August 11, 2003, when the Loan was sold to PMC. (TAC, Exh. B at 8; Exh. C at 2).

Drawing all inferences in the light most favorable to plaintiffs, and based upon a plain reading of Exhibits A, B and C of the TAC, the BLA and the Note were executed "as part of the same transaction" and fall within the terms of 13 G.C.A. § 3119(1).

### C. 13 G.C.A. § 3119(1) Allows for Separate Agreements that Modify or Affect an Instrument.

HSBC's primary argument is that the Note is a negotiable instrument and that the BLA does not affect the negotiability of the Note. However, the fact that a note is a negotiable instrument does not preclude proof of the existence of other related, modifying instruments. <u>Main Bank of Chicago v. Baker</u>, 88 Ill.App. 328, 410 N.E.2d 681, 686 (1980). More importantly, Official Comment (1) states:

> The separate writing is most commonly an agreement creating or providing for a security interest such as a mortgage, chattel mortgage, conditional sale or pledge. *It may, however, be any type of contract, including an agreement that upon certain conditions the instrument shall be discharged or is not to be paid, or even an agreement that it is a sham and not to be enforced at all.*

(Emphasis added). The above comment to section 3-119(1) and the Willier & Hart Reporter Digest quoted at page 13 n.5, *supra*, specifically recognize that parties to a separate agreement executed as

15

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

part of the same transaction with a note may modify or affect the note, including its negotiability; i.e., that upon certain conditions the instrument be discharged or is not to be paid, or even an agreement that it is a sham and not to be enforced at all.

For this reason, numerous courts have recognized that a separate agreement executed as a part of the same transaction may modify or affect instruments, including promissory notes. *See., e.g.,* Knut Co. v. Knutson Constr. Co., 433 N.W.2d 149, 151 (Minn.App. 1988) (promissory note held subject to arbitration provision in purchase agreement, even though note was negotiable instrument and it did not state that it was subject to purchase agreement); *see also* Kucel v. Walter E. Heller & Co., 813 F.2d 67, 71 (5th Cir. 1989) (chattel mortgage and security agreement, aircraft bill of sale and statement of account all part of the same transaction and read together to determine principal amount of loan); Merchants Nat'l Bank & Trust Co. v. Professional Men's Ass'n, Inc., 409 F.2d 600, 601 (5th Cir. 1969) (note executed by corporation and agreement to assume obligations of predecessor corporation, were part of same transaction, even though neither referred to the other); Kemmler Mem. Foundation v. 691/733 East Dublin-Granville Road Co., 62 Ohio St.3d 494, 584 N.E.2d 695 (1992) (general warranty deed, mortgage, promissory note and statement of settlement executed and delivered as part of same transaction held to find partnership to obligations under note); Jenkins v. Thyer, 758 S.W. 2d 878, 884 (Mo. App. 1988) (where parties to a note contemporaneously execute another written contract, the two instruments should be considered together as the entire contract); Reese v. First Mo. Bank & Trust Co., 664 S.W.2d 530, 533 (Mo.App. 1983) (documents executed at the same time); Armstrong v. Colletti, 88 Wis.2d 148, 276 N.W.2d 364 (App. 1979) (contract and two notes executed together and therefore construed together); Geyer v. First Ark. Dev. Fin. Corp., 245 Ark. 694, 434 S.W.2d 301, 302 (1968) (although

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

16

no provision in note for payment of attorneys fees, since note and deed of trust were part of the same transaction).

### D. The Loan Participation Clause in the BLA Restricted HSBC's Ability to Transfer or Assign the Sadhwani Loan to Participation Interests Only.

HSBC argues that nothing in the loan participation clause provision of the BLA restricts or limits any of HSBC's rights and that the loan participation clause is a grant of a right. (HSBC Memo. at 7). This is incorrect. There is only one provision in the entire BLA that expressly references the sale or transfer of the Sadhwani loan, and that is the "loan participation" clause. That clause provides that "Borrower agrees and consents to Lender's sale or transfer, whether now or later, *of one or more participation interest in the Loans to one or more purchasers,* whether related to Lender. . . . Borrower also agrees that *the purchasers of any such participation interests will be considered as **the absolute owners of such interest in the Loan** and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests* . . . " (Emphasis added) The language quoted above clearly refers to what transferees would be considered "absolute owners" of the Loan, and it is only purchasers of participation interests. There is no other provision in the BLA that explicitly provides for the sale or transfer of the Sadhwani loan. Accordingly, the loan participation clause is not merely a grant of a right, it is a limitation.

For example, in <u>Sanden v. Hanson</u>, 201 N.W.2d 404, 11 UCC Rep.Serv. 1002 (1972), the court there allowed the provisions of a Standby Agreement, which had been executed as part of the same transaction, to modify a note to prevent the payees from proceeding to enforce the note until written consent of the Small Business Administration had been obtained, a condition stated in the Standby Agreement. The <u>Sanden</u> court held that this modification of the note was consistent with

17

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

the intention of the parties when they entered into the arrangement for the financing of the sale of their store. The court's modification of the note essentially rendered enforcement of the note conditional on the provisions of the Standby Agreement. This case presents the same situation.

While the parties have differing interpretations of the loan participation clause of the BLA, the Court must draw all inferences in plaintiffs' favor. [8] HSBC's motion to dismiss on this claim should be denied.

### E.    Other Provisions of the BLA Did Not Allow HSBC to Sell the Sadhwani Loan Except As Provided in the BLA.

Although the BLA contains the term "successors and assigns", that term should be construed to effectuate the intent of the parties and the harmonious interpretation of the agreement's terms. "When there is more than one instrument, as here, we must construe them together...and contradictions must be harmonized if reasonably possible." Reese, 664 S.w. 2d at 534. Read together with the loan participation clause, the term "assigns" must be construed as those who purchase participation interests in the Sadhwani loan.

Based upon the ambiguities in the loan documents, the parties different interpretations of the loan provisions, and drawing all inferences in favor of plaintiffs, HSBC's motion to dismiss plaintiffs' third cause of action should be denied.

## IV.    PLAINTIFFS SUFFICIENTLY ALLEGE A CLAIM FOR BREACH OF CONTRACT IN THEIR FOURTH CAUSE OF ACTION.

The Promissory Note Modification Agreement, executed on March 5, 2003, extended the maturity date of the Note to August 31, 2003. TAC, Exh. L. However, the workout agreement

---

[8] The BLA is governed by the laws of Guam. (TAC, Exh. B at 6)  Because the loan participation clause is ambiguous, such ambiguity must be construed against the drafter, HSBC. Custodio, et al. v. Boonprakong, Civil Case No. 207-95, Decision and Order dated June 18, 1996 at 6.

18

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

between the parties, embodied in Exhibits J, K and M to the TAC, was executed on March 21, 2003, after the Promissory Note Modification Agreement. TAC, ¶ 15. The workout agreement offered plaintiffs a "payoff plan" that allowed plaintiffs to find alternate financing or to sell their mortgaged properties. TAC, ¶¶ 15-16. By allowing plaintiffs to find alternate financing or sell their mortgaged properties, the workout agreement implicitly extended the maturity date under the Promissory Note Modification Agreement. TAC, ¶ 50.

The workout agreement did not contain a specific deadline for plaintiffs to sell their properties and/or obtain alternate financing. Where a contract does not specify time for performance, a party's obligation must be performed within a reasonable period of time under the circumstances of the case. Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, Tenn., 706 F.2d 638, 641 (5th Cir. 1983); J.C. Millet Co. v. Distillers Distrib. Corp., 258 F.2d 139, 143 (9th Cir.1958) ( where a contract does not establish a time for performance, the court will infer that performance must occur within a reasonable time). What constitutes a "reasonable time" is a question of fact and depends upon the situation of the parties, the nature of the transaction, and the facts of a particular case. Hemlani v. Ticor Title Insurance, Inc., Civil Case No. CV1500-98, Decision and Order dated March 21, 2001.

A court should be extremely reluctant to grant a motion to dismiss on a ground that requires a determination of the reasonable length of time for performance of a contract, since such a determination depends on the specific circumstances of the case and the intentions of the parties, facts that are not normally ascertainable from the pleadings.   Abdul-Amin, 706 F.2d at 641 (reversing dismissal of action where contract did not specify time for performance and issue was whether reasonable period of time under contract had elapsed). Given the large outstanding balance

19

on the Loan (over $6.5 million), it would have taken plaintiffs several months to apply for, and negotiate alternate financing with other banks.   Plaintiffs are entitled to offer evidence supporting their claim that HSBC did not give them a reasonable period of time to sell their properties, and that HSBC breached the workout agreement by selling the Loan to PMC.   DeJoy v. Comcast Cable Communications, Inc., 941 F. Supp. 468 (D.N.J. 1996) (on a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but whether plaintiff is entitled to offer evidence to support his claims).

HSBC next contends that there was no "writing" between the parties evidencing an implicit extension of time under the Promissory Note Modification Agreement.   Exhibits J, K and M are all writings evidencing the parties' workout agreement.   The BLA provides that no amendment to the loan agreement shall be effective "unless given in writing and signed by the party or parties sought to be charged or bound by the alternation or amendment."  TAC, Exh. B.  The "Payoff Plan" signed by HSBC Assistant Vice President Fredrick Granillo is obviously just such a writing.   TAC, Exh. J.

HSBC also mistakenly argues that there was no consideration for the workout agreement, as there was no benefit for HSBC and no detriment for plaintiffs "that they were not already bound to suffer under the legal obligations they had a duty to perform pursuant to the subject loan.".   (HSBC Memo. at 9-10).   But plaintiffs were under no legal obligation to sell their properties or obtain alternate financing under the original loan documents.   The workout agreement was clearly based on consideration that the parties would resolve plaintiffs' loan by the sale of the properties or by alternate financing obtained by plaintiffs.   The benefit to both parties is that HSBC and plaintiffs could avoid foreclosure proceedings.   The detriment to plaintiffs is that they would lose their

20

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

valuable properties or obtain alternate financing at less advantageous terms or rates from another third party.

Finally, HSBC repeats its tiresome refrain that it had a legal right to transfer the loan documents and needed no further consent under the PMNA or the workout agreement. (HSBC Memo. at 10). However, plaintiffs' breach of contract claim is based upon the following allegations: the parties entered into an Amendment to Credit Facility/Lease and a Promissory Note Modification; plaintiffs were not in default of these agreements; (2) the parties entered into a workout agreement in March 2003 and plaintiffs were not in default of the workout agreement; (3) from March 2003 through August 2003, plaintiffs were fulfilling their obligations under the terms of the workout agreement; (4) when HSBC sold the Loan to PMC, HSBC breached the Loan agreement, as amended by the workout agreement. (TAC, ¶¶ 54-55) The gravamen of plaintiffs' claim is that HSBC had no right to sell the Loan while the parties were obligated to resolve the Loan under the workout agreement. Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15 (1st Cir. 1992) (borrower's allegation that bank ultimately agreed to undertake loan, yet failed to consummate it, was sufficient to state claim against bank for breach of contract). Construing the allegations, and inferences therefrom in plaintiffs' favor, HSBC's motion to dismiss plaintiffs' Fourth Cause of Action should be denied.

## V. PLAINTIFFS' ALLEGATIONS OF BREACH OF FIDUCIARY DUTY ADEQUATELY ESTABLISH A VALID CLAIM.

If the Court is inclined to reconsider the April 9 Order denying HSBC's motion to dismiss plaintiffs' claim for breach of fiduciary duty, plaintiffs submit that the April 9 Order is not "clearly erroneous" nor has there been an intervening change in controlling law. Thomas v. Bible, 983 F.2d at 155.

21

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

"The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." Gayle v. Hemlani, 2000 Guam 25 (2000), at ¶30 citing Barbara A. v. John G., 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422, 431-432 (Cal. Ct. App. 1983). A "professional and close personal relationship" between the parties may establish a fiduciary relationship. In re Letterman Bros. Entergy Securities Litigation, 799 F.2d 967, 975 (5th Cir. 1986)(citations omitted) (fiduciary relationship found). A fiduciary duty may also be found where the lender exerts control or dominates the borrower. Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) (denial of summary judgment finding that facts may support a finding of fiduciary duty). Additionally, a fiduciary relationship may arise "from the assumption of control and responsibility and is founded upon trust reposed by one party in the integrity and fidelity of another." Industrial General Corp. v. Sequoia Pacific Systems Corp., supra.; Travel Services Network, Inc. v. Presidential Financial Corp. of Mass., 959 F. Supp 135, 144 (D. Conn. 1997). The critical analysis of whether a fiduciary duty exists is dependent on the facts. Official Publications, Inc. v. Kable News Co., Inc., 775 F.Supp. 631, 639 (D.N.Y. 1991).

HSBC contends that the Complaint is insufficient because there are no allegations of day-to-day involvement by HSBC in the Sadhwanis' operations or a lack of sophistication on the part of the Sadhwanis. However, whether a fiduciary duty exists does not depend on any "rigid rules," but on the level of trust and confidence between the parties. Scott v. Dimes Savings Bank of New York, 866 F.Supp 1073, 1078 (D.N.Y. 1995) (finding of fiduciary relationship).

Significantly, among the numerous cases cited by HSBC, only one case dealt with the sufficiency of the complaint as a basis for dismissal. In re Rexplore, 685 F.Supp. 1132, 1140 (D. Cal. 1988). The remaining thirty-three (33) cases cited by HSBC deal primarily with summary judgments or findings after a trial. HSBC cites to no authority supporting the proposition that a dismissal on a claim for breach of fiduciary duty was granted on facts similar to those alleged by the plaintiffs.

Unlike the cases cited by HSBC, the plaintiffs have made substantial factual allegations in their complaint supporting their claim for breach of fiduciary duty. First, the plaintiffs allege that "because of the longstanding, close and confidential relationship," including both business and social relationships, plaintiffs placed their "trust and confidence" in HSBC. (TAC, ¶¶ 4-5.) The plaintiffs further allege that HSBC disclosed confidential information between plaintiffs and HSBC to PMC; that HSBC represented that it would assist plaintiffs' negotiations for replacement financing; that HSBC represented that the parties' had contemplated a work out agreement, then refused to accept the replacement financing; that HSBC failed to give the "hairline discount," as represented; and that, HSBC, without proper notice to plaintiffs sold the Loan to PMC; and that HSBC unfairly discriminated against plaintiffs in the sale of their loan, as compared to the favorable treatment accorded to other HSBC customers. TAC, ¶¶ 58-60 .

The Court in its April 9 Order addressed HSBC's arguments and contentions and closely reviewed plaintiffs' allegations regarding breach of fiduciary duty. April 9 Order at 11-12. The Court rejected HSBC's contentions and, applying the correct legal standard for motions to dismiss, accepted as true the allegations in the complaint and draw all reasonable inferences in favor of plaintiffs. Id. at 12. The Court held that "[b]ased on this standard and the facts alleged, the Complaint sufficiently states a cause of action for breach of fiduciary duty." Id.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

HSBC's second motion to dismiss copies verbatim the argument in its first motion to dismiss. HSBC does not contend that the April 9 Order was "clearly erroneous", nor does HSBC cite any intervening change in controlling law. HSBC also does not allege any new evidence or that "manifest injustice" would result if the April 9 Order were to remain in effect. For these reasons, HSBC's motion to dismiss plaintiffs' Sixth Cause of Action for breach of fiduciary duty must be denied.

## VI. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR BREACH OF DUTY NOT TO DISCLOSE CONFIDENTIAL INFORMATION.

### A. The Gramm-Leach-Bliley Act Has No Applicability To This Case.

The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq., ("the Act") prohibits a financial institution from disclosing "nonpublic personal information" to a nonaffiliated third party. "Nonpublic personal information" means "personally identifiable financial information (i) provided by a *consumer* to a financial institution; (ii) resulting from any transaction with the *consumer* or any service performed for the *consumer;* or (iii) otherwise obtained by the financial institution." 15 U.S.C. § 6809(4)(A)(i)-(iii) (emphasis added). 15 U.S.C. §§ 6802(e)(1)(C) and (e)(7) specify exceptions to a financial institution's duty not to disclose "nonpublic personal information":

> Subsection (a) and (b) of this Section shall not prohibit disclosure of *nonpublic personal information* - (c) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the *consumer;*

> (7) in connection with the proposed or actual sale, merger, transfer, or exchange of all of a portion of a business or operating unit if the disclosure of *nonpublic personal information* concerns solely *consumers* of such business unit.

(Emphasis added).

24

The Act plainly applies to limitations, and exceptions to those limitations, on disclosure of "nonpublic personal information" of "consumers." A "consumer" is defined under the Act as "an individual who obtains, from a financial institution, *financial products or services which are to be used primarily for personal, family, or household purposes*, and also means the legal representative of such individual. 15 U.S.C. § 6809(9) (emphasis added).

Plaintiffs are not "consumers." The Business Loan Agreement and Promissory Note was executed by K. Sadhwani's Inc. *See* TAC, Exhs. B and C. On its face, the <u>Business</u> Loan Agreement specifically refers to the <u>commercial</u> loans K. Sadhwani's Inc. obtained from HSBC. *See* TAC, Exh. B at 1. The plaintiffs' $9.5 million loan with HSBC was not a loan "for personal, family, or household purposes." TAC, ¶¶ 4-5.

HSBC's contention that the Act applies in this case is without merit. Because the Act does not apply, there is no issue of a conflict between the general duty not to disclose plaintiffs' financial information and the Act. There also exists no issue of preemption.[9]

**B.** **Plaintiffs Sufficiently State a Cause of Action for Breach of Duty Not to Divulge Plaintiffs' Confidential Banking Information.**

Plaintiffs have been unable to locate, and HSBC has not cited, any Guam cases addressing whether a Bank owes a duty to a customer not to divulge confidential banking information or, alternatively, whether there is an implied contract between a bank and its customer not to divulge confidential banking information. Accordingly, it appears that this is a case of first impression.

A bank has a duty to refrain from disclosing confidential customer information to third parties. <u>Djowharzadeh v. City Nat. Bank and Trust Co. of Norman,</u> 646 P.2d 616 (Okl.App., 1982);

---

[9] Even if the Act applied to this case, there would be no issue of preemption because the Act "shall not be construed as superseding, altering, or affecting any statute, regulation, order or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 6807(a).

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Milohnich v. First Nat. Bank of Miami Springs, 224 So.2d 759, 760 (Fla.App. 1969); Peterson v. Idaho First Nat. Bank, 367 P.2d 284 (Id. 1961). In Djowharzadeh, the bank disclosed confidential financial investment information to a third party. The Oklahoma Appellate court, on bank's motion for summary judgment, held that there is an implied contract between a bank and its customer not to disclose confidential information. In determining whether an implied contract exists between the bank and borrower, the court considered the following:

> This intimate, private information is not furnished to any bank official lightly, nor, strictly speaking, voluntarily. Rather, the borrower is compelled to disclose the information. The delicately balanced relationship thus temporarily created is not, in ordinary cases, one composed of equals because of the inordinate power of the bank. *The precarious position of the borrower and the relatively superior position of the bank mandates there be a counterbalancing special duty imposed on the part of the bank.* (Emphasis added.)

Djowharzadeh v. City Nat. Bank and Trust Co. of Norman, 646 P.2d at 619. The court sustained the cause of action against the bank stating:

> Bank's relationship to a loan applicant implicitly imposes the duty to keep the contents of loan applications confidential. This duty has existed traditionally and continues to exist, if not specifically in the law books, at least in the mind of the public in general and within the banking community in particular.

Id. Similarly, in Milohnich, 224 So.2d at 760 the court sustained a complaint based on an implied contractual duty to a plaintiff depositor against Bank for disclosing information concerning its accounts to individual third parties.

There exist strong policy reasons to find that banks owe a duty to a customer not to divulge confidential banking information or, alternatively, that there is an implied contract between a bank and its customer not to divulge confidential banking information. First, customers disclose highly personal credit and financial information to bank, such as assets, liabilities, financial statements of

26

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

business, business strategies, and proprietary business information to banks. Second, customers are compelled to disclose their personal financial information, otherwise they would be unable to obtain a loan with a bank. Third, customers believe and expect that their personal information will be safeguarded and not disclosed to third parties. Fourth, there is an inherent inequality of positions between a customer and a bank. A bank has a vastly superior position with its financial resources and its ability to make or break a business by giving or denying loans and by affecting the credit and personal reputation of its customers by the unauthorized disclosure of their personal information. Fifth, particularly given the fact that Guam is a small community, personal, proprietary and confidential banking information, if disclosed to others, can be extremely detrimental. A customer's credit, personal and business reputation can be harmed by the unauthorized disclosure of personal information. The Court should therefore find that banks owe a duty to a customer not to divulge confidential banking information or, alternatively, that there is an implied contract between a bank and its customer not to divulge confidential banking information.

In a misguided argument, HSBC contends that because the loan documents were negotiable, HSBC had a legal right to transfer them, there is no cause of action against HSBC for doing what it was legally entitled to do. (HSBC Memo. at 17). HSBC completely misses the point of plaintiffs' claim. The issue is whether there is a cause of action where a bank violates its duty of confidentiality when it, without authorization or consent of the customer, releases confidential information to third parties regarding the customer's banking relationship. Further, HSBC's examples of the transferability and enforcement of mortgages are irrelevant. Plaintiffs are not alleging that general information that is of public record, such as mortgages, were disclosed. Rather, plaintiffs allege that their "financial condition, their deposit accounts and transactions with HSBC, their proprietary

27

business information, and the status of plaintiffs' loan with HSBC" were disclosed to third parties. TAC, ¶ 66.

HSBC cites cases that purportedly make the distinction between information received in a banker/depositor relationship and that received from in a lender/borrower relationship. (HSBC Memo. at 16). However, here the plaintiffs were not merely borrowers, they were also depositors. TAC, ¶ 5 ("[p]laintiffs deposited about $100 million with HSBC during these twenty-five (25) years") and ¶ 62 ("[p]laintiffs were depositors and borrowers with HSBC."). Viewed in the light most favorable to plaintiffs, their allegations sufficiently state a claim for breach of the duty not to divulge confidential banking information.

## CONCLUSION

A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. Walsh v. McGee, 918 F. Supp. 107 (S.D.N.Y. 1996). This is because the primary objective of the legal system is to obtain a determination on the merits of a case, rather than a dismissal based on pleadings. Cabo Distributing Co., Inc. v. Brady, 821 F. Supp. 601 (N.D. Cal. 1992). HSBC bears a heavy burden in establishing that plaintiffs can prove "no set of facts in support of his claim which would entitle him to relief." Figueroa v. U.S., 7 F.3d 1405 (9th Cir. 1993), cert. denied, 511 U.S. 1030 (1993). HSBC has failed to meet that burden, and its motion to dismiss should be denied in its entirety.

Dated this 17th day of September, 2004.

ARRIOLA, COWAN & ARRIOLA
Counsel for Plaintiffs Alan Sadhwani, et al.

By: _Anith P. Arriola_
ANITA P. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

28

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on September 17, 2004, I caused to be served via hand delivery, **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S MOTION TO DISMISS PLAINTIFFS' FIRST, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION** to:

> **Jacques G. Bronze, Esq.**
> **Bronze & Tang, P.C.**
> **2nd Floor, BankPacific Building**
> **825 S. Marine Drive**
> **Tamuning, Guam 96913**

Dated this 17th day of September, 2004.

_____
**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

29