JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel: (671) 477-9730
Fax: (671) 477-9734



FILED
DISTRICT COURT OF GUAM
SEP 17 2004
MARY L. M. MORAN
CLERK OF COURT

Attorneys for Plaintiffs Alan Sadhwani, et al.

# IN THE UNITED STATES
# DISTRICT COURT OF GUAM

ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,

Plaintiffs,

vs.

HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation,
JOHN DOE I through JOHN DOE X,

Defendants.

CIVIL CASE NO. 03-00036

PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER ANSWERS TO DEPOSITION QUESTIONS; TO RE-DEPOSE FREDERICK GRANILLO; FOR PRODUCTION OF DOCUMENTS; AND FOR SANCTIONS

## ARGUMENT

I. **PLAINTIFFS' MOTION TO RE-DEPOSE GRANILLO SHOULD BE GRANTED.**

   A. **Plaintiffs Have Sufficiently Identified Granillo's Deposition Answers That Are Inadequate or Evasive.**

HSBC mistakenly contends that plaintiffs have merely counted how many times Granillo responded "I don't recall" and that plaintiffs failed to meet their burden on their motion. This argument is specious, since in their motion to compel, plaintiffs identified the questions and answers with which they seek to re-depose Frederick Granillo ("Granillo"). See A. Arriola Decl., Exh. 3 at 206-207. In his testimony, Granillo testified that he did not recall or did not remember HSBC's confidentiality policies or practices. Id. For purposes of F.R.C.P. 37, an invasive or incomplete answer or response is to be treated as a failure to answer or respond. F.R.C.P. 37 (a)(3).

HSBC also argues that Granillo had nothing to do with the bank's confidentiality policies. This is unsupported by any testimony or evidence. Granillo, as Assistant Vice President for Credit Control, is required to know HSBC's policies and procedures. Otherwise he is unqualified for his position. Second A. Arriola Decl., Exh. A. HSBC also argues that the "key" or significant witness relating to plaintiffs' claims is HSBC's Guam Manager Mr. I.C. Underwood. Plaintiffs are not required to take only Underwood's deposition merely because HSBC claims that he is a "key" witness. Plaintiffs are entitled to depose all witnesses, including Granillo, regarding any matter which is relevant to the subject matter involved in this action. F.R.C.P. 26 (b)(1). HSBC's confidentiality policies and procedures, and HSBC employees' knowledge of and understanding of these policies, are clearly relevant to plaintiffs' claim of breach of duty not to divulge plaintiffs' confidential bank information. Third Amended Complaint ("TAC") ¶ 62-67.

**B.  HSBC'S Untimely Production of Documents Warrants the Re-deposition of Granillo.**

HSBC urges the Court to believe that if plaintiffs' counsel had "just delayed the deposition of Granillo for a few days" a re-deposition would not be necessary. (HSBC Memo. at 3). But a "few days" delay would not have cured the problem of untimely production of documents that occurred *from June 14 through August 17, 2004.* The timing of HSBC's production of documents is certainly suspicious. Most of the documents produced prior to and during Granillo's deposition were junk. A. Arriola Decl. HSBC refused to produce the relevant and critical documents in response to plaintiffs' Third Set until plaintiffs threatened to file a motion to compel compliance with the May 27, 2004 Order and to seek severe sanctions. A. Arriola Decl., Exh. 31. The critical documents finally produced by HSBC evidenced the bank's sale of loans, discounts given to other customers, friendly foreclosures, and alternate financing obtained by other HSBC customers. Although HSBC

claims that it would have taken a significant period of time to produce all of the documents, in fact the critical documents responsive to plaintiffs' Third Set were produced only six days after plaintiffs' counsel threatened to file a motion for sanctions. A. Arriola Decl., Exh. 31, ¶ 17.

On the late responses to plaintiffs' First Set of Requests for Production of Documents, plaintiffs stand corrected. Instead of an eight-month delay, according to HSBC, there was a five-month delay in producing documents in response to the First Set. Five months is still an inordinately lengthy delay in responding to plaintiffs' First Set, yet HSBC's only explanation is that there were a large volume of boxes in HSBC's storage to be examined. (HSBC Memo. at 5). But the timing of HSBC's production of these documents is also suspicious. These documents were produced just two days prior to the deposition of a key witness in the case, John Lee, President of First Hawaiian Bank, and the documents were highly relevant to Mr. Lee's deposition. Regardless of the reasons for HSBC's untimely production of documents, it is clear that plaintiffs did not have the opportunity to question Granillo about the documents and that they should be allowed.

C. **Granillo's Deposition Would Not Be Unreasonably Cumulative Or Duplicative.**

HSBC claims that Granillo's deposition would be "unreasonably cumulative or duplicative" since the sale of bank loans was not handled by Granillo as part of his duties, Underwood was in charge of all sales of loans, and Underwood's deposition has been taken. (HSBC Memo. at 6-7). This is incorrect. Granillo testified at length about HSBC's retention of certain customers' loans; discounts given to certain customers; and friendly foreclosures offered to other customers. F. Granillo Depo. at 156, 173-187. Granillo executed an Assignment of Mortgage relating to a refinancing of an HSBC customer's loan. F. Granillo Depo at 182. In fact, it was partly due to Granillo's deposition that plaintiffs learned that HSBC had not produced documents in response to

Case 1:03-cv-00036    Document 292    Filed 09/17/2004    Page 3 of 16

plaintiffs' Third Set and that prompted the letter threatening to move to compel compliance with the Court's May 27 Order. Id. at 183, 186-187.

There is also no merit to HSBC's contention that plaintiffs have already deposed two other witnesses who have knowledge of HSBC's confidentiality policies or procedures, Underwood or Cathy Champaco. Plaintiffs are entitled to discover whatever information exists concerning the bank's confidentiality polices and procedures and they are not limited to asking only one or two witnesses about such policies. This is particularly true where, as here, the deposition testimonies have been contradictory or the deposition of one witness has led to the disclosure of other relevant discoverable information. Second A. Arriola Decl. For example, plaintiffs served a Fourth Set of Request for Production of Documents seeking the bank's confidentiality policies and procedures. HSBC produced some documents, but the deposition of Cathy Champaco revealed that HSBC had not provided numerous other documents. Eventually, HSBC produced an additional two binders of documents. Second A. Arriola Decl.

HSBC will suffer no prejudice as a result of the re-deposition of Granillo. Indeed, HSBC concedes as much, when it requests that the Court allow the re-deposition with time limitations. (HSBC Memo. at 8).

## II. HSBC WAIVED THE ATTORNEY-CLIENT PRIVILEGE.

### A. If the Subject Documents are not Privileged, HSBC's Privilege Objections and Refusal to Allow Granillo to Answer Were Unjustified.

Changing its tack from Granillo's deposition, HSBC now asserts that there is no "confidential communication contained or legal advice sought in" the Subject Documents and that they are not privileged. (HSBC Memo. at. 8-9). The consequence of HSBC's argument, of course, is that if the Subject Documents are not privileged, then (1) the objections of HSBC's counsel at

-4-

Granillo's deposition were unjustified and Granillo should have been allowed to answer the questions; (2) the deposition of HSBC's legal counsel Thomas Moody may be taken regarding the Subject Documents; and (3) all other documents concerning the subject matter contained in the Subject Documents should be produced. *See., e.g.*, In re Grand Jury Proceedings, 727 F.2d 1342, 1356 (4th Cir. 1984). Sanctions should be awarded against HSBC for the filing of this motion and HSBC should be ordered to pay for Granillo's second deposition.

### B. If Exhibits 22, 23 and 24 Constitute Privileged Communications, the Privilege was Waived.

The following elements must be established for any attorney-client privilege to apply: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." U.S. v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990). While HSBC cites these requirements in a footnote, the bank fails to discuss them. Applying the attorney-client privilege test to the Subject Documents, it is clear that they constitute attorney-client communications.

Exhibit 22 is a draft letter written by Guy Priestley, former General Manager of HSBC. F. Granillo Dep. at 140. It was sent to Thomas Moody, HSBC's legal counsel, for his advice as to the content of the letter that was to be sent to K. Sadhwani's Inc. Exhibit 23 is a facsimile coversheet from HSBC to Moody, enclosing four letters which HSBC had sent or received from K. Sadhwani's in order to assist Moody in preparing a response to K. Sadhwani's Inc. Id. at 140-142, 144-145. Exhibit 24 is Moody's response to the legal advice sought by HSBC; it is a draft letter to K. Sadhwani's Inc. prepared by Moody after receipt of Exhibits 22 and 23. Id. at 146-147. All of the

requirements for attorney-client communications are met: (1) HSBC sought legal advice (2) from Moody, the bank's legal counsel, (3) Exhibits 22 and 23 are attorney-client communications sent to Moody and Exhibit 24 was sent by Moody to HSBC, relating to the purpose of seeking legal advice from Moody, (4) made in confidence (5) by HSBC, (6) are at HSBC's instance permanently protected (7) from disclosure by the bank or by Moody, (8) except the protection be waived.

HSBC cites three cases for the proposition that "[i]n the absence of such confidential information supplied by HSBC, the draft document is not privileged merely because the attorney prepared it." HSBC Memo. at 9. None of these three cases stand for such a proposition and they are easily distinguishable.

In Kenford Co. v. County of Erie, 390 N.Y.S.2d 715, 55 A.D.2d 466 (1977), the court held that information received by an attorney from other persons and sources while acting on behalf of the client does not come within the attorney-client privilege. Kenford, 55 A.D.2d at 470. Kenford also held that only those materials prepared by an attorney which contain his analysis and trial strategy constitute "work product." This case does not involve information received by Moody from other persons or sources, nor do Exhibits 22, 23 or 24 contain Moody's "work product."

In the Matter of Grand Jury Subpoena for Documents in the Custody of the Bekins Storage Co., 460 N.Y.S.2d, 684, 118 Misc. 2d 173 (1983) ("Bekins") is not helpful to HSBC. The Bekins court addressed two different categories of documents: (1) correspondence between clients and their attorneys and (2) attorneys' notes. Of the latter category, the court held that notes relating to commercial transactions from a factual, nonlegal perspective in connection with drafting of legal documents; notes containing factual matter in aid of negotiating commercial ventures; and notes intended only for the attorneys' own use which contain only matter which is original with the

Case 1:03-cv-00036    Document 292    Filed 09/17/2004    Page 6 of 16

attorney, do not fall within the attorney-client privilege. Bekins, 118 Misc. 2d at 178-79. Exhibits 22, 23 and 24 do not constitute "attorneys' notes," nor do they fall within the rubric of documents defined in that category in the Bekins case.

By contrast, in the first category, correspondence between clients and their attorneys which *"provide information in the context of seeking legal advice, or in which the attorneys render legal advice based upon information provided by the clients . . . are privileged."* Bekins, 118 Misc. 2d at 178 (emphasis added). Exhibits 22, 23 and 24 fall squarely within this type of correspondence. As the Bekins court held, a letter in which the client provides information to assist the attorney's preparation of a settlement agreement (e.g., Exhibits 22 and 23), is privileged. Id. at 182. A draft agreement which contains matter disclosed in confidence by the client to the attorney for purposes of negotiating and drafting a contract (e.g., Exhibit 24 is a draft letter that contains matter disclosed in Exhibits 22 and 23 from HSBC), is privileged. Id.

Similarly, in SCM Corp. v. Xerox Corp., 70 F.R.D. 508 (D.Conn. 1976), a question was raised as to whether the legal opinions of Xerox's patent attorneys were privileged attorney-client communications. The court held that they were not - unlike the Subject Documents here, they did not reveal facts communicated by the client in confidence; they were not even communicated to the client; and there was no indication that the client or in-house patent counsel were seeking anyone's legal advice concerning the contents of these documents. SCM Corp., 70 F.R.D. at 520-24. Those facts clearly distinguish the SCM Corp. case from this case.

### C. The Common Interest Rule and the Joint Defense Privilege Do Not Apply in this Case.

HSBC cites various cases in an attempt to establish that the "common interest" rule or the "common defense" privilege (also known as "joint defense" privilege) applies to protect the

-7-

confidentiality of the Subject Documents. HSBC's arguments are without merit.

"The 'common interest'" rule protects communications made when a nonparty sharing the client's interests is present at a confidential communication between attorney and client. U.S. v. Zolin, 809 F.2d 1411, 1417 (9th Cir. 1987). As the Zolin court noted, "[t]he paradigm case is where two or more persons subject to possible indictment arising from the same transaction make confidential statements that are exchanged among their attorneys." Id. at 1417. In Zolin, the court held that recorded communications between a taxpayer and his attorneys were privileged where all nonlawyers present at the meeting were employees of the church run by taxpayer, as they had common interest in sorting out the respective affairs of the church and the taxpayer. Id. Unlike the situation in Zolin or the "paradigm" case mentioned in that decision, Paradise Marine Corporation ("PMC") was not present at a confidential communication between HSBC and Moody. Further, HSBC has not provided any evidence to show that PMC shared a common interest with HSBC in the particular communications contained in the Subject Documents. (Since the Subject Documents were drafted before PMC even purchased plaintiffs' loan, HSBC cannot show such a common interest).

The "common defense" privilege, also known as the "joint defense privilege", "protects communications between an individual and an attorney for another when the communications are part of an on-going and joint effort to set up a common defense strategy. In the Matter of Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986), *quoting* Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir.), *cert. denied sub nom.*, Weinstein v. Eisenberg, 106 S.Ct. 342 (1985). In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort,

(2) the statements were designed to further the effort, and (3) the privilege has not been waived. Bevill, 805 F.2d at 126, *citing* In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974, 406 F. Supp. 381 (S.D.N.Y. 1975). HSBC makes no attempt to establish any of the requirements of the common defense or joint defense privilege. HSBC provides no evidence that the communications were made in the course of a joint defense effort, that PMC and HSBC had agreed to pursue a joint defense strategy, or that the Subject Documents were designed to further the joint defense effort. (Of course, there is no such evidence, since the Subject Documents were communicated between between HSBC and Moody months before the sale of plaintiffs' loan to PMC and they do not involve communications between PMC and Moody or PMC and HSBC.)

In sum, no "common interest" or "common defense" privilege exists to preclude waiver of the attorney-client communications in the Subject Documents.

### D. Production of the Documents By PMC Through a Subpoena Duces Tecum does not Prevent Waiver of Attorney-Client Privilege, Where HSBC Voluntarily Produced them to PMC and Had the Opportunity to Claim the Privilege but Failed to Do so.

Citing Transamerica Computer Co., Inc. v. International Business Machines Corp., 573 F.2d 646, 651 (9th Cir. 1978). HSBC contends that a disclosure of confidential material constitutes a waiver of attorney-client privilege only if it is "voluntary." (HSBC Memo. at 13). HSBC further contends that because PMC produced the documents pursuant to a subpoena duces tecum, the production was not "voluntary." However, HSBC misses the point that *HSBC's relinquishment of the documents to PMC was voluntary*, and HSBC concedes this. (HSBC Memo. at 12).

In the Transamerica case, the court also held that "no waiver occurs if the holder has an opportunity to claim the privilege or if the holder was erroneously compelled to disclose the privileged matter." Transamerica, 573 F.2d at 651. As discussed in plaintiffs' memorandum,

-9-

HSBC had numerous opportunities to claim the privilege or object to production of the Subject Documents, but never did. (Plaintiffs' Memo. at 12-14). HSBC does not even make an effort to address these facts.

### E. HSBC Fails To Address Waiver of the Privilege Due to Failure to Object.

Although HSBC contends generally that objections were made at Granillo's deposition and the privilege was not waived, the bank does not address any of the numerous instances in Granillo's deposition when objection was not made or when Granillo disclosed attorney-client communications without objection. *See* A. Arriola Decl., Exh. 4. Consequently, HSBC waived the privilege based on its failure to assert the privilege objection at Granillo's deposition.

## III. HSBC'S INADVERTENCE DOES NOT PRECLUDE A FINDING THAT THE ATTORNEY-CLIENT PRIVILEGE WAS WAIVED.

Although HSBC contends that any disclosure of privileged material was "inadvertent," "inadvertence" does not as a matter of law prevent the occurrence of waiver. Weil, 647 F.2d at 24, and is only one factor to be considered. HSBC barely discusses the other issues in the five-part test enunciated in Hartford Fire Insurance Co. v. Garvey, 109 F.R.D. 323, 332 (N.D. Cal. 1985). HSBC claims that it took adequate precautions with the insertion of a confidentiality clause in the Loan Purchase Agreement between HSBC and PMC. That clause provides that PMC shall not disclose any information in its possession without the prior written consent of HSBC. (J. Bronze Decl., Exh. 2 at 9 para. 16) Here, PMC allowed HSBC's counsel two opportunities to review the files and retrieve documents and they failed to remove the Subject Documents.

HSBC does not provide any evidence that it took reasonable or adequate precautions to prevent disclosure of the Subject Documents. HSBC does not dispute that it had three opportunities to review the documents (November 2003; March 2, 2004; and March 18, 2004 after the documents

-10-

Case 1:03-cv-00036    Document 292    Filed 09/17/2004    Page 10 of 16

were produced). HSBC's counsel Jacques Bronze admits that he examined the Sadhwani loan file for at least an hour and a half. (HSBC Memo. at 14; Bronze Decl.). (As discussed in plaintiffs' memorandum, it took plaintiffs' counsel only an hour to find the Subject Documents). HSBC's other counsel Richard Pipes admits that he was aware that certain attorney-client communications were contained in the loan files delivered over to PMC in late February 2004 and that he examined the Sadhwani loan files and removed certain documents that were privileged. Id. HSBC Memo. at 14; Pipes Decl. However, neither Bronze nor Pipes removed the Subject Documents from the files.

HSBC does not dispute that it was aware of the subpoena issued by plaintiffs to PMC's custodian of records; that it failed to object to plaintiffs' subpoena to PMC's custodian of records; failed to object to the inspection by plaintiffs of the files and documents; failed to request additional time to review the documents before PMC produced them so that it could remove all privileged documents or prepare a privilege log; and failed to object to production of the Sadhwani loan documents by PMC.

HSBC also does not dispute that PMC produced the documents to *both* plaintiffs' and HSBC's attorneys on March 18, 2004; that at that time HSBC failed to detect disclosure of the Subject Documents; failed to assert any privilege as to the Subject Documents; failed to demand return of the documents. HSBC does not refute that it did not assert the privilege until *four months later*, on July 15, 2004 at Granillo's deposition. HSBC also does not refute that as of this date, HSBC still has not demanded return of the Subject Documents, moved for a protective order demanding their return or preventing their disclosure, or identified the Subject Documents as privileged in any its privilege logs.

HSBC cites certain cases for the proposition that "more than negligence of counsel is required before the client should be deemed to have intentionally abandoned the attorney-client privilege." (HSBC Memo. at 14-15). As established above, and considering all of the factors in the Garvey case, the negligence of HSBC's counsel was compounded by their failure to take any action to preserve the privilege or to demand return of the Subject Documents.[1]

HSBC does not dispute that the parties have taken the depositions of thirteen witnesses already or that plaintiffs' strategy and theories in the depositions involved the content of the Subject Documents. HSBC argues only that plaintiffs have concocted a story about how the Subject Documents are relevant to plaintiffs' theory of their case. In fact, HSBC's defenses in this case are that there was no workout agreement and there is no writing evidencing a workout agreement. See HSBC's Motion to Dismiss at 8. The fact that Exhibit 24 was written by HSBC's legal counsel strengthens plaintiffs' claim that Exhibit 24 was a binding offer for a workout agreement.

On the "overriding issue of fairness", HSBC argues only that the large volume of documents and the fact that the nature of the transaction required HSBC to transfer the entire loan file to PMC favors a nonwaiver. As the cases cited in plaintiffs' memorandum establish, (Plaintiffs' Memo. at 11-15), these facts do not weigh in favor of HSBC.

For all of the foregoing reasons, plaintiffs submit that their motion to re-depose Granillo should be granted. Based upon the additional documents produced by HSBC just prior to and after the first deposition of Granillo, plaintiffs submit that Granillo's second deposition should not take more than four (4) hours.

---

[1] HSBC mistakenly assumes that there plaintiffs submitted Exhibits 11 to 28 in order for the Court to find waiver of the privilege as to those documents. (HSBC Memo. at 10) However, those exhibits were submitted to illustrate to the court that HSBC's conduct was not mere "inadvertence," since HSBC took little, if any, precautions to prevent disclosure of the Subject Documents as well as other privileged documents.

## IV. HSBC'S VOLUNTARY DISCLOSURE OF THE SUBJECT DOCUMENTS WARRANTS AN ORDER COMPELLING ALL DOCUMENTS CONCERNING THE SUBJECT MATTER.

HSBC contends that the "doctrine of subject matter waiver is clearly inapplicable to the facts of the instant case", (HSBC Memo. at 16), yet HSBC concedes that it voluntarily turned over the Sadhwani loan files, including the Subject Documents, to PMC and PMC's attorneys McCully & Beggs. HSBC also does not dispute that it allowed PMC to turn over the Subject Documents to plaintiffs when it had the opportunity to assert the privilege but failed to do so. Under these circumstances, the Ninth Circuit has held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. Weil, 647 F.2d at 24. In Weil, the Ninth Circuit held that the disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed. The court held that it was irrelevant that the holder did not subjectively intend to waive the privilege when it made the disclosure. 647 F.2d. at 25. Similarly, in United States v. Mendelsohn, 896 F.2d 1183, 1188-89 (9th Cir.1990), the court held that a client's disclosure of the purported legal advice received from his lawyer waived his right to claim the privilege to prevent his lawyer from testifying as to the actual advice given. Again, the court held that the intent or lack of intent to waive the attorney-client privilege was not dispositive in finding a waiver had occurred. Id.

The Second Circuit cases cited by HSBC are inapposite, as those cases do not involve the type of voluntary disclosure of privileged communications that was made here. As the Court in In re von Bulow, 828 F.2d 94, 100-03 (2ᵈ Cir. 1987) held, the extent of any waiver turns on the circumstances of the disclosure. Because the circumstances here establish that HSBC voluntarily

-13-

disclosed the Subject Documents to third parties and then allowed their disclosure to plaintiffs, such disclosure waives the holder's right to claim the privilege as to other communications about the matter actually disclosed. Plaintiffs request that the Court require HSBC to disclose all communications on the same topics as those addressed in the Subject Documents, including but not limited to the e-mail and other communication referenced in Exhibit 22 of the Granillo Deposition. This is precisely the type of information allowed under the above-mentioned Ninth Circuit cases.

## V. SANCTIONS SHOULD BE IMPOSED.

F.R.C.P. 37(a)(4)(A) provides that if a motion to compel is granted, the court shall require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorneys' fees, unless the court finds that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Granillo's deposition transcript demonstrates that his testimony was evasive and incomplete throughout his testimony. HSBC does not offer any evidence or information to show that Granillo's evasive responses were substantially justified. His answers should be treated as a failure to respond and he should be ordered to answer plaintiffs' questions concerning the bank's confidentiality policies and procedures.

HSBC's untimely production of documents and its obstinate refusal to produce documents until threatened with a motion to compel or until just prior to the deposition of another key witness require a further deposition of Granillo. Based on HSBC's conduct, the Court should order an award of expenses.

-14-

HSBC now claims that the Subject Documents are not privileged, yet HSBC's counsel asserted attorney-client privilege at Granillo's deposition and refused to allow him to testify. HSBC's objections based on attorney-client privilege were also not substantially justified, given HSBC's voluntary disclosure of the Subject Documents to PMC, which HSBC has conceded. (HSBC Memo. at 13) HSBC also does not offer any evidence or argument that an award of expenses in this instance would be unjust. Accordingly, plaintiffs request that the Court grant their motion under Rule 37 for attorneys fees and expenses incurred in the filing of plaintiffs' motion, and that HSBC be required to pay for the cost of Granillo's second deposition.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court grant their motion to compel further answers to deposition questions; to re-depose Frederick Granillo; for production of documents; and for sanctions.

RESPECTFULLY SUBMITTED on this 17th day of September, 2004.

        **ARRIOLA, COWAN & ARRIOLA**
        Attorneys for Plaintiffs

      By: _/s/ Anita P. Arriola_
        **ANITA P. ARRIOLA**

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on September 17, 2004, I caused to be served via hand delivery, **PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER ANSWERS TO DEPOSITION QUESTIONS; TO RE-DEPOSE FREDERICK GRANILLO; FOR PRODUCTION OF DOCUMENTS; AND FOR SANCTIONS** to:

> Jacques G. Bronze, Esq.
> Bronze & Tang, P.C.
> 2nd Floor, BankPacific Building
> 825 S. Marine Drive
> Tamuning, Guam 96913

Dated this 17th day of September, 2004.

_____
**ANITA P. ARRIOLA**