**JACQUES G. BRONZE**
**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

**RICHARD A. PIPES**
**LAW OFFICES OF RICHARD A. PIPES**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*



DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL CASE NO. 03-00036 |

**REPLY MEMORANDUM IN SUPPORT OF HSBC'S
MOTION TO DISMISS PLAINTIFFS' FIRST, THIRD,
FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION**

## ANALYSIS

### I. PLAINTIFFS' OPPOSITION TO HSBC'S MOTION TO DISMISS SHOULD NOT BE CONSIDERED SINCE IT VIOLATES LR 7.1(g).

Local Rules of Court 7.1(g) places limits on the page lengths on motions or oppositions to no more than 20 pages unless the party seeks leave of court. Plaintiffs did not seek HSBC's consent nor seek leave of court to exceed the page limits in their Opposition by nine (9) pages. LR 7.1(l) provides that "[t]he court need not consider motions, oppositions to motions . . . that do not comply with this rule." See also, GR 2.1(a) (the court may impose penalties for violation of the Local Rules of Court.)

Unfortunately, this is not the first time Plaintiffs' counsel has disregarded the Local Rules of Court. Plaintiffs' counsel has at least on two other occasions filed briefs, including one on September 17, 2004. See, Declaration of Jacques G. Bronze and Exhibit "1" attached thereto. On another occasion, Plaintiffs' counsel surreptitiously filed her First Amended Complaint ("FAC") in violation of Rule 15(a) and Judge Unpingco's Order of April 9, 2004, ("April Order") which only allowed Plaintiffs to amend two counts. In his Order striking Plaintiffs' FAC, Judge Dean D. Pregerson stated "[t]he Court further **orders the plaintiffs to follow all applicable rules in the future. Failure to do so may result in sanctions.**" See, ll. 14-16, p. 5 of Order of J. Pregerson dated May 28, 2004, attached as Appendix "A" to this Reply Memorandum. (emphasis added). Plaintiffs' counsel's flagrant disregard of the Local Rules of Court is prejudicial to HSBC's case.[1] This Court should not condone this pattern conduct and should sanction Plaintiffs' counsel including striking all pages in excess of 20.

### II. PLAINTIFFS' FILING OF A THIRD AMENDED COMPLAINT PERMITS HSBC TO FILE A SECOND RULE 12(b)(6) MOTION CHALLENGING THE ENTIRE COMPLAINT.

The doctrine of "law of the case" is inapplicable to this case since Plaintiffs filed a Third Amended Complaint, which permits HSBC to file a second Rule 12(b)(6) Motion challenging the entire Complaint.

The Ninth Circuit addressed the exact issue in the case of Sidebotham v. Robison, 216 F.2d 816, 823 (9th Cir. 1954), in which the defendants filed a motion to dismiss the first amended complaint based on the

---

[1] When HSBC needed to exceed the page limits, Plaintiffs refused to stipulate and HSBC filed an *Ex Parte* Motion for Leave of Court to Exceed the page limits. See, Declaration of Jacques G. Bronze filed on November 19, 2003, and Order dated November 25, 2003. HSBC must now respond to a 28 page Opposition within the 10 pages allowed under the Local Rules and that is prejudicial to HSBC since it prevents it from fully briefing the issues raised by Plaintiffs' Opposition.

statute of limitations. Id. This motion was granted. The plaintiff then filed a second amended complaint, and the defendants' second motion to dismiss based on the statute of limitations was denied. Id. The plaintiff filed a third amended complaint adding an additional cause of action and incorporating the same two causes of action from her second amended complaint. The defendants again submitted a motion to dismiss based on the statute of limitations. This time, the court granted the motion to dismiss. Id. at 821-23. The plaintiff appealed the decision, claiming that the court should not have been allowed to invalidate its denial of the second motion to dismiss, simply based on the addition of a third cause of action. Id. at 823. The court held that, "[t]he answer to this contention is that on filing a third amended complaint which carried over the causes of action of the second amended complaint, the appellees were free to challenge the entire new complaint." Id., see also, Levald v. City of Palm Desert, 998 F.2d 680 (9th Cir. 1993).

In the instant case, the Third Cause of Action of Plaintiffs' Third Amended Complaint is a new cause of action. Plaintiffs have also extensively amended factual allegations ¶ 5-28 and the allegations in its First and Sixth Causes of Action.[2] See, Exhibit "2" attached to the Declaration of Jacques G. Bronze. Thus, HSBC is free to challenge the entire complaint anew.

### A. Even assuming arguendo that the doctrine of the "law of the case" is applicable to the instant case, this Court can reverse the April Order since it was clearly erroneous.

Under the doctrine of the "law of the case," a court has discretion to reopen a previous order where the first decision was clearly erroneous. See, Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990).

The Court's April Order solely relies on the Superior Court of Guam case of Ada's Inc., et al. v. First Hawaiian Bank, et al., ("Ada's Inc."), Civil Case No. CV0785-02, Decision and Order dated July 7, 2003, to find that Guam recognizes a cause of action for breach of the covenant of good faith and fair dealing as a tort. The Ninth Circuit has ruled that where a State Supreme Court has not resolved an issue, then in such uncertainty, "a federal court must use its own best judgment in predicting what the jurisdiction's Supreme Court would decide." Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir.

---

[2] The allegations that are underlined represent new amendments to the Complaint.

1978) (emphasis added). Thus, the Court's reliance on the <u>Ada's Inc.</u> case originating from the Superior Court of Guam is clearly erroneous since that case cannot be accorded any precedential value in this Court.

The Court's failure to cite to any other precedent in its April Order is because of the unanimity by courts of mostly every jurisdiction in this nation rejecting a cause of action for tortious breach of the covenant of good faith and fair dealing in the non-insurance arena. All the cases relied on in the <u>Ada's Inc.</u> decision unanimously declined to create an independent tort of breach of the covenant of good faith and fair dealing. <u>Id</u>. at pp. 5-7.

The second ground to support a finding that the April Order is clearly erroneous is based on the Court's conclusion that ". . . the Ada decision does not conflict with the <u>Freeman</u>[3] holding as Judge Manibusan found the existence of a 'special relationship' in that banks have an implied duty of good faith and fair dealing towards its customers." <u>See</u>, ll. 11-14, p. 8 of April Order. In essence, the Court seems to have held that as a result of the implied duty of good faith and fair dealing implied in all contracts including any contracts between a bank and its borrower, a "special relationship" is created. Such finding is clearly flawed and erroneous. The mere fact that an implied covenant of good faith and fair dealing is implied in contracts cannot give rise to a "special relationship," since that would turn every contract dispute into a tort. <u>See</u>, pp. 4-5 of HSBC's Memorandum in Support of Motion to Dismiss. (Ninth Circuit Decisions relating to the necessary prerequisites for finding tort liability).

Moreover, in reading the Court's Order, it is unclear whether the tort is derived from breach of the implied covenant or from some other independent tort duty or whether a "special relationship" between the contracting parties is a prerequisite to a tort action. It is this exact confusion and conflict which caused the California Supreme Court to reverse the <u>Seaman</u>[4] case. <u>Id</u>. at p. 427. In addressing the argument of extending the "special relationship" between the insurer and the insured into the ordinary commercial context, the California Supreme Court in <u>Freeman</u> stated ". . . we move into largely uncharted and potentially dangerous

---

[3] <u>Freeman & Mills, Inc. v. Belcher Oil Co.</u>, 44 CR 2d 420, 427 (Cal. 1995).

[4] <u>Seaman's Direct Buying Service, Inc. v. Standard Oil Co.</u>, 36 Cal. 3d 752, 206 CR 354 (1984).

- 3 -

waters." Id. at p. 423. In short, the Ada's Inc. decision clearly conflicts with the Freeman decision since it essentially extends the "special relationship" between an insurer and insured to a lender and a borrower.[5]

### III. THE NOTE WAS NEGOTIABLE NOTWITHSTANDING ANY PROVISION OF THE BLA.

The Plaintiffs argue that if the BLA was part of the same transaction as the Note, then its provisions can and do determine the negotiability of the Note because Sections (1) and (2) of 13 G.C.A. § 3119 are mutually exclusive provisions.

Even assuming arguendo that the terms of the Note were modified by the BLA under Subsection (1) of Section 3119, because of the mandate of Subsection (2) – which applies to the separate agreements referred to in Subsection (1) – none of the provisions of the BLA affected the negotiability of the Note. Subsection (1) and (2) of Section 3119 must be read together. Both sections apply to separate agreements "executed as part of the same transaction." The correct – and mutually consistent reading – is that Subsection 1 allows a separate agreement to modify all of the terms of a promissory note, except its negotiability (i.e. transferability).

Subsection 1 of Section 3119 is a statement of "the ordinary rule that writings executed as part of the same transaction are read together" See, Official Code Comment to Section 3-119 at point 3. Subsection 1 confirms that a separate agreement is effective between the original parties, but will only affect subsequent holders to the extent they had notice of the limitation created by the separate writing. Subsection 2 deals specifically with the effect of the separate agreement on the "negotiability" of a promissory note. It is consistent with and reinforces the rule set forth in Section 3105 that the Note itself determines negotiability. The provisions of Subsection 2 set forth the rule that a separate agreement, which under Subsection 1 may create a limitation on a holders right to enforce a promissory note, does not affect the ability of the holder to negotiate the promissory note. See also, B.E. WITKEN AT VOL. 3, SUMMARY OF CALIFORNIA LAW (9TH ED.) "NEGOTIABLE INSTRUMENTS" § 34(b), p. 302; 11 Am. Jur. 2d, § 133, p. 492.

In their Opposition, the Plaintiffs appear to misunderstand the difference between a "limitation" as used in Section 3119(1) and "negotiability" as used in Section 3119(2). At p. 15 of their Opposition, the Plaintiffs suggest the Official Comment 1's examples of effective defenses to enforcement of a promissory

---

[5] Plaintiffs' claim of "severe prejudice" if the Court reverses the April Order is conclusory and frivolous and should be disregarded. See, p.7 of Plaintiffs' Opposition.

note are also examples of a separate agreement modifying negotiability. This is incorrect. Comments 1 and 4 to UCC Section 3119 set forth examples of <u>defenses</u> to enforcement by a holder. They are not examples of "negotiation" which is defined at Section 3202 as "the transfer of an instrument." Under Section 3119, a separate agreement may create defenses and limitations on a holder's rights to enforce a promissory note after a transfer, but a separate agreement cannot affect the holder's right to transfer the promissory note subject to those limitations and defenses. The cases cited by the Plaintiffs in their Opposition at pp. 15 and 16 are examples of separate agreements modifying the terms of promissory notes to create defenses and limitations to their enforcement. In none of the cases were the separate agreements held to affect negotiability.

In their Opposition, the Plaintiffs use the BLA solely and exclusively to attack the negotiability of the Note. They do not assert that the BLA created any defenses or limitations to either HSBC's or PMC's enforcement of the Note. Their only argument is that the BLA prevented HSBC from transferring the Note. Section 3119(2) clearly and unequivocally states that the BLA cannot cause the otherwise fully negotiable Note to be non-negotiable. The Note was negotiable as it met the requirements of Section 3104(1) and thus, the Third Cause of Action should be dismissed as a matter of law.

## IV. THE FOURTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC.

In Plaintiffs' original Complaint, they alleged in their Third Cause of Action that HSBC breached the March 5, 2003, Promissory Note Modification Agreement ("PNMA") by failing to review the Note every six months and by selling the Note and loan to PMC. See, April Order at p. 9. This Court dismissed the Third Cause of Action and permitted Plaintiffs limited leave to amend the dismissed claim. Id. at pp. 10, 13.

In support of their amended Fourth Cause of Action, titled "Breach of Contract-Promissory Note Modification", Plaintiffs assert that while the PNMA, attached to the TAC as Exhibit "L", only extends the maturity date of the subject Note to August 31, 2003, the alleged "workout agreement" between the parties "implicitly extended the date of maturity" under the PNMA to a date unknown. TAC at ¶ 50. Plaintiffs claim that when HSBC sold and assigned the subject note, loan, and security instruments to PMC HSBC thereby breached the PNMA "as amended by the workout agreement". Id.

In its opening Memorandum, HSBC presented clear arguments based upon Guam statutory provisions which detail the requirements under Guam law for implied contracts relating to consideration and the necessity for the terms of the implied contract to be manifested by conduct. HSBC's Memo at pp. 8-10. Further, HSBC pointed out that it had an absolute right to sell the Note and loan under Guam law. Id. at p. 10. Plaintiffs have utterly failed to address these arguments in their Opposition Memorandum. Instead, Plaintiffs attempt to argue that the alleged workout agreement somehow implicitly extended the maturity date of the Note and prohibited HSBC from selling the Note, even though the PNMA explicitly extended the maturity date to August 31, 2003, and placed no restriction on HSBC's right to sell the Note. Opposition Memo at pp. 18-21. Plaintiffs conclude that since the alleged workout agreement did not purportedly specify a time for performance, then a "reasonable time" to perform is implied. Id. at 19. Unfortunately for Plaintiffs, the documents they rely on to prove the "implied" extension actually show otherwise.

The PNMA specifically provides that the maturity date of the Note is extended to August 31, 2003. TAC, Exh. "L". The alleged "workout agreement", as embodied in Exhibit "J" to the TAC, specifically advises Plaintiffs that HSBC is "concerned that you have not taken seriously the Bank's notice to K. Sadhwani Inc. that it will **not** be able to renew or extend its loan facility when it becomes due for repayment on August 31, 2003." It could not have been any clearer to Plaintiffs that HSBC would not agree to extend the maturity of the Note beyond August 31, 2003, even assuming that Exhibit "J" constituted a "workout agreement".

Unfortunately for Plaintiffs, there are no documents attached to the TAC and no facts alleged therein that support Plaintiffs' conclusion that the maturity date of the note was "implicitly extended". Plaintiffs admit that the maturity date of the Note as specified in the PNMA is August 31, 2003. TAC at ¶ 50.

Plaintiffs cite J. C. Millet Co. v. Distillers Distrib. Corp., 258 F.2d 139 (9th Cir. 1958), for the same proposition. Opposition Memo at p.6. In the J. C. Millet case, a distributor sued an importer and manufacturer for breach of contract for periodic deliveries of liquor. Id. at pp. 140-1. The court concluded that since the delivery dates of liquor were not set by the contract the court imposed a reasonable time for the deliveries "considering the standard practice of the industry and the usual practice between these parties". Id. at 143. The case has no application to this case. Here, the underlying documents relied upon by Plaintiffs indisputably show that the maturity date of the Note was August 31, 2003, and no other date can be implied.

Plaintiffs also assert in the Fourth Cause of Action that HSBC breached the PNMA by failing to review the Note every six months. TAC at ¶ 51. This claim is a ruse and was earlier disposed of in this Court's April 9 Order.

## V. EVEN ASSUMING ARGUENDO THAT THE DOCTRINE OF THE "LAW OF THE CASE" IS APPLICABLE, THIS COURT CAN REVERSE THE APRIL ORDER SINCE THE DECISION RELATING TO THE FIFTH CAUSE OF ACTION WAS CLEARLY ERRONEOUS.

To avoid any confusion, the Fifth Cause of Action, which was the subject of the April Order, is now the Sixth Cause of Action in the TAC. Neither the facts relied on by the Court in the April Order nor the ¶¶ 4-5 and ¶¶ 58-60 of the TAC can support a finding that a fiduciary duty existed between HSBC and Plaintiffs. The existence of a duty and the scope of that duty are questions of law for a court to decide. Lalley v. Safway Steel Scaffolds, Inc., 364 N.W.2d 139 (S.D. 1985).

A fiduciary duty cannot be imposed unilaterally, the trust and confidence which a party rests on the other party must be accompanied by some type of action on the second party showing that the relationship is recognized. See, Manns v. Peoples Bank of Imboden, 10 S.W.3d 885, 889-890 (Ark. 2000); General Motors Acceptance Corp. v. Baymon, 732 So.2d 262 (Miss. 1999); Martinez v. Associates Financial Services Co. of Colorado, Inc., 891 P.2d 785, 789-790 (Wyo. 1995). Plaintiffs have not alleged any facts to show that HSBC recognized and accepted such duty. Dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. See, Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

Notwithstanding the above, the authorities cited by Plaintiffs do not provide any support for their cause of action for breach of fiduciary duty. The case of Gayle v. Hemlani, 2000 Guam 25, is distinguishable because the Gayle case involved an attorney-client relationship rather than a borrower-lender relationship. Neither does the case of In re Letterman Bros. Energy Securities Litigation, 799 F.2d 967 (5th Cir. 1986), stand for the proposition that fiduciary relationship was found. In that case, although the jury returned verdicts against Banc Texas on the cause of action for breach of fiduciary duty, the court granted the Banc Texas's motion J.N.O.V. finding that the bank owed Plaintiffs no fiduciary duty. Id. at p. 971. The Fifth Circuit in that case held that the District Court's ruling was correct. Id. at p. 975. The Appellate Court also stated

"[s]ubjective reliance or trust alone, however, is insufficient to establish a fiduciary relationship." Id. at p. 975. Neither does the case of Pension Trust Fund v. Federal Ins. Company, 307 F.3d 944 (9th Cir. 2002) provide any support to Plaintiffs' claims. In that case, the court held that a lender owed a fiduciary duty to a borrower which is excessively controlled or dominated the borrower. Id. at p. 955. It is to be noted that control is not established merely by the fact that lender has superior bargaining leverage in the relationship. See, In re Kidds Creek Partners, L.P., 200 BR 996, 1016 (BC ND Ill. 1996).

Moreover, in the instant case, the facts pled in paragraphs 59(A)-(H) demonstrate that Plaintiffs never entrusted their financial affairs to HSBC, HSBC never controlled Plaintiffs nor did Plaintiffs rely on HSBC for business advice. Contrary to demonstrating any dependence, inequality, lack of business intelligence or a lack of knowledge, ¶ 28 of the TAC asserts that Plaintiffs owned "prime properties" on Guam of which several are "Guam landmarks" which at one time were worth "much more than $12 million dollars." Moreover, Plaintiffs' TAC claims that they "... deposited about a hundred million dollars with the Defendant bank during these 25 years." See, ¶ 5 of the Complaint.

A fiduciary duty requires more than the generalized business obligation of good faith and fair dealing.[6]

### VI. THE SEVENTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC.

In support of their "duty of confidentiality" argument, Plaintiffs cite Djowharzadeh v. City National Bank and Trust Co. of Norman, 646 P.2d 616 (Okla. App. 1982).[7] However, the facts are entirely inapplicable to this case. In Djowharzadeh, a regular bank customer with good credit learned of a real estate opportunity, which was far below market value that was not on the open market. Id. at 617. The customer went to the bank for a loan and gave the loan officer all of the details of the sale. While the loan application was pending, the loan officer advised wives of the bank's president and senior vice president about the property being offered for sale and they purchased the property for themselves. In the meantime, the bank turned down the loan

---

[6] The Texas Supreme Court in Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594-95 (Tex. 1992) held: The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

[7] The citation to the Djowharzadeh case is on page 26 of the Opposition Memorandum. As discussed above, pages 21 thru 29 of the Opposition Memorandum must be stricken.

application to the customer on dubious grounds, at best. Id. at 617-8. The customer sued the bank and the trial court granted summary judgment to the bank on the defense that the bank owed no duty of confidentiality to the customer. Id. at 618. The appeals court reversed and found that banks may "not use their favored position to the detriment of their customers, either directly or indirectly". Id. at 619. The appeals court held that, under the specific circumstances presented in the case, the bank had an implied duty "to keep the contents of loan applications confidential." Id. at 619-620.

Of course, the egregious conduct of the bank in Djowharzadeh is not presented in this case. Here, Plaintiffs argue that HSBC violated an implied duty of confidentiality by selling the Note and loan to PMC, which HSBC had every right to do under Guam law. If the Court were to adopt Plaintiffs' argument, then HSBC and every other bank would have to get consent from borrowers before a loan could be sold or assigned to another party or to the secondary market, such as Fannie Mae or Ginnie Mae, or when a bank wanted to provide credit information to a credit rating agency. Plaintiffs have not alleged that HSBC appropriated any of their investment opportunities and the Djowharzadeh case is totally inapplicable to the facts of this case.

Next, Plaintiffs cite the case of Milohnich v. First National Bank of Miami Springs, 224 So.2d 759 (Fla. App. 1969), for the same argument. In Milohnich, a **depositor** at a bank alleged that the bank divulged information to third parties about funds on deposit who, in turn, sued the depositor and enjoined the bank from distributing any of the monies on deposit. Id. at 760. The depositor sued the bank, the trial court dismissed the case for failure to state a claim, and the depositor appealed. Id. The appeals court found that the complaint alleged a cause of action for violation of an implied duty by the bank not to disclose information "negligently, willfully or maliciously or intentionally to third parties, concerning the **depositor's** account." Id. at 762 (emphasis supplied). However, the appeals court limited the decision's application to the facts presented and specifically pointed out that its decision did **not** attempt to deal with disclosures of a bank "relating to loan information" or "general credit information between banks". Id. By its very holding, the decision in Milohnich is inapplicable to this case.[8]

---

[8] The Milohnich case was overruled, in part, by the Supreme Court of Florida in Barnett Bank of West Florida v. Hooper, 498 So.2d 923 (Fla. 1986). However, the Court in Barnett Bank approved an exception to the duty of confidentiality owed to a **depositor** when disclosure is made "pursuant to the bank's interests". Id. at 925.

Finally, Plaintiffs cite the case of Peterson v. Idaho First National Bank, 367 P. 2d 284 (Idaho 1961), as support for their theory of a "general duty of confidentiality" allegedly owed by a bank to its borrower. In Peterson, a depositor sued a bank for damages for an alleged violation of the right to privacy when a bank officer released information to the depositor's employer about checks that the depositor was bouncing. Id. at 286. The employer, Family Finance Corporation, also had accounts at the bank and had asked the bank manager to advise the employer whenever an employee might be doing anything that might discredit the employer. Id. The depositor sued the bank and the trial court dismissed for failure to state a claim. Id. at 285. While concluding that there was no claim for a violation of the right to privacy, the court held that there was an implied contract between the bank and a depositor not to disclose information about the depositor's accounts. Id. at 588. Again, the Peterson case is inapplicable on its facts. It involves a depositor, not a borrower, and it relates to the disclosure of information concerning amounts on deposit with the bank, not loan information.

There is no question that the relationship between HSBC and Plaintiffs was that of lender and borrower. It is equally clear that HSBC was explicitly authorized under Guam law to sell and assign to subject note, loan and security instruments. Since the Seventh Cause of Action is wholly based upon the allegation that HSBC "divulged" financial information to PMC by selling the subject loan and note, which HSBC had the right to do under Guam law, then no cause of action can arise against HSBC for doing that which it was legally entitled to do.

## CONCLUSION

For the foregoing reasons, HSBC's Motion to Dismiss the First, Third, Fourth, Sixth and Seventh Causes of Action should be granted.

*Respectfully submitted* this 24th day of September 2004.

                          **LAW OFFICES OF BRONZE & TANG**
                          **A Professional Corporation**

By:_____
      JACQUES G. BRONZE
      *Attorneys for HSBC*

# APPENDIX "A"

BRONZE & TANG, P.C.
Date: 3 Jun 04
Time:
Received:

FILED
DISTRICT COURT OF GUAM
MAY 28 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ALAN SADHWANI; et al.,<br><br>    Plaintiffs.<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORP., LTD; et al.,<br><br>    Defendants. | Case No. CV 03-00036 DDP<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO STRIKE FIRST AMENDED COMPLAINT IN ITS ENTIRETY, (2) VACATING AS MOOT DEFENDANT'S MOTION TO DISMISS THIRD AND SIXTH CAUSES OF ACTION, AND (3) DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br><br>[Motion filed on 04/30/04] |

This matter comes before the Court on the defendant Hongkong and Shanghai Banking Corporation's ("HSBC") motion to strike the First Amended Complaint ("FAC") in whole or in part, or, in the alternative, to dismiss the third and sixth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] HSBC also moves the Court to impose sanctions on the plaintiffs pursuant to Rule 11(c)(1)(B). After reviewing and considering the materials submitted by the parties, the Court grants the motion to strike the FAC in its entirety, vacates as moot the motion to dismiss the third and sixth causes of action, and denies the motion for sanctions.

---

[1] All further references to "Rule" shall refer to the Federal Rules of Civil Procedure.

## I. Background

On October 21, 2003, the plaintiffs filed a complaint against HSBC and doe defendants, alleging causes of action for: (1) breach of the covenant of good faith and fair dealing; (2) intentional misrepresentation; (3) breach of contract on the promissory note modification agreement; (4) breach of contract on the "work out agreement;" (5) breach of fiduciary duty; and (6) breach of duty not to divulge the plaintiffs' confidential banking information. On November 5, 2003, the defendants removed this action to federal court on the basis of diversity jurisdiction. One week later, on November 12, 2003, HSBC filed an answer to the complaint. HSBC filed a first amended answer and counterclaim on December 2, 2003. Thereafter, on December 30, 2003, HSBC filed a motion to dismiss the entire complaint under Rule 12(b)(6). On April 9, 2004, Judge Unpingco denied the motion as to the first, second, fourth, and fifth causes of action, and granted the motion as to the third and sixth causes of action. Judge Unpingco expressly provided that the dismissal of the third and sixth causes of action was "without prejudice," and that the plaintiffs were "permitted to amend their Complaint <u>to re-assert the dismissed causes of action</u>." (04/09/04 Order at 13:18-19 (emphasis added).)

On April 27, 2004, the plaintiffs timely filed the FAC, amending the third and sixth causes of action as permitted by the Court's April 9, 2004 Order. However, despite not having sought and obtained leave of court or the consent of HSBC, the plaintiffs inserted new paragraphs and alleged additional facts in the first, second, fourth, and fifth causes of action. HSBC now moves the Court to strike the entire FAC as being without legal effect, or,

2

in the alternative, to strike all new amendments except those contained in the third cause of action.[2] Should the Court strike only the new amendments unrelated to the third cause of action, HSBC moves the Court to dismiss the third and sixth causes of action for failure to state a claim upon which relief can be granted.

## II. Discussion

### A. Motion to Strike

#### 1. Legal Standard

Rule 15(a) provides in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

#### 2. Analysis

Pursuant to the plain language of Rule 15(a), after a responsive pleading has been filed, a party may amend the party's pleading "only by leave of court or by written consent of the adverse party." Id. An answer to a complaint constitutes a responsive pleading. Crum v. Circus Circus Enters., 231 F.3d 1129, 1130 (9th Cir. 2000). Here, HSBC filed an answer to the complaint on November 12, 2003, and a first amended answer to the complaint

---

[2] HSBC asserts that, while the Court's April 9, 2004 Order granted the plaintiffs limited leave to amend their sixth cause of action by "specify[ing] what law(s) HSBC allegedly violated" (04/09/04 Order at 13:13-14), the plaintiffs, without leave of court or the consent of HSBC, alleged an entirely new cause of action in their sixth claim (Mot. at 4). According to HSBC, the sixth cause of action in the FAC violates Rule 15(a) and must be stricken. (Id.)

3

on December 2, 2003. Thus, HSBC has filed a responsive pleading to the complaint. Moreover, in the Court's April 9, 2004 Order, which dismissed the third and sixth causes of action of the complaint without prejudice, Judge Unpingco expressly provided that the plaintiffs were "permitted to amend their Complaint <u>to re-assert the dismissed causes of action</u>." (04/09/04 Order at 13:18-19 (emphasis added).) Judge Unpingco permitted the plaintiffs to amend only the third and sixth causes of action. Thus, before the plaintiffs could properly amend portions of the complaint other than the third and sixth causes of action, they were required to obtain leave of court or the written consent of HSBC. Despite having failed to obtain leave of court or the written consent of HSBC, the plaintiffs amended their complaint to contain new paragraphs and allegations in the first, second, fourth, and fifth causes of action. Because the plaintiffs' FAC exceeds the scope of leave to amend that was provided by the Court, the FAC is without legal effect and must be stricken. Accordingly, the Court grants HSBC's motion to strike the FAC in its entirety. Given the Court's ruling with respect to HSBC's motion to strike, HSBC's motion to dismiss the third and sixth causes of action is hereby vacated as moot.

    In their opposition brief, the plaintiffs expressly request leave to amend the complaint pursuant to Rule 15(a) in the event that the Court grants HSBC's motion to strike. (Opp. at 5.) A party seeking leave to amend a complaint is not always required to file a separate formal motion. Leave to amend has been granted where, as here, a plaintiff "expressly requested" to amend even though the request "was not contained in a properly captioned

4

motion paper." Scott v. Eversole Mortuary, 522 F.2d 1110, 1116 n.8 (9th Cir. 1975). The decision to grant or deny leave to amend rests in the sound discretion of the trial court. Swanson v. United States Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996). As previously stated, Rule 15(a) provides that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy is to be applied with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Here, HSBC has not argued that granting the plaintiffs leave to amend would be unduly prejudicial to HSBC, and the Court is unaware of any reason why the plaintiffs should not be given leave to amend. Thus, the Court grants the plaintiffs leave to amend, and orders them to properly file a FAC no later than ten (10) days from the date of entry of this order. The Court further orders the plaintiffs to follow all applicable rules in the future. Failure to do so may result in sanctions.

### B. Motion for Sanctions

HSBC moves the Court to impose sanctions upon the plaintiffs under Rule 11. HSBC contends that the plaintiffs intentionally and surreptitiously filed the FAC in violation of Rule 15(a) and the Court's April 9, 2004 Order. (Mot. at 4.) For the following reasons, the Court denies HSBC's motion for sanctions.

First, HSBC failed to make a motion for sanctions "separately from other motions or requests . . .," as required by Rule 11(c)(1)(A). Second, although the Court has the authority under Rule 11(c)(1)(B) to levy sanctions on its own initiative, the Court will neither impose sanctions nor order the plaintiffs' counsel to show cause as to why the plaintiffs should not be sanctioned.

5

"Judges . . . should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients." United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1115 (9th Cir. 2001). It does not appear to the Court that the plaintiffs' conduct was so egregious as to warrant the imposition of sanctions. The Court, therefore, denies HSBC's motion for sanctions.

### III. Conclusion

For the foregoing reasons, the Court: (1) grants HSBC's motion to strike the FAC in its entirety; (2) vacates as moot HSBC's motion to dismiss the third and sixth causes of action; and (3) denies HSBC's motion for sanctions. The Court grants the plaintiffs ten (10) days from the date of entry of this order within which to amend their complaint.

IT IS SO ORDERED.

Dated: 5-28-04

DEAN D. PREGERSON*
United States District Judge

\* Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.