# JACQUES G. BRONZE
## LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

# RICHARD A. PIPES
## LAW OFFICES OF RICHARD A. PIPES
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001



FILED
DISTRICT COURT OF GUAM
SEP 2 4 2004
MARY L. M. MORAN
CLERK OF COURT

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, ) ) ) ) | CIVIL CASE NO. 03-00036 |
| Plaintiffs, ) ) ) | |
| v. ) ) | **DECLARATION OF JACQUES G. BRONZE IN SUPPORT OF HSBC'S MOTION TO DISMISS PLAINTIFFS' FIRST, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION** |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., ) ) ) ) | |
| Defendants. ) ) | |

**I, JACQUES G. BRONZE,** hereby declare and state as follows:

1.     All matters herein are based on my own personal knowledge.

2.     I am over the age of 18, and legally competent to testify to the facts below and I do so based upon my own personal knowledge.

3.     I am the co-counsel of record for Hongkong and Shanghai Banking Corporation, Ltd., ("HSBC"), in the above-entitled matter.

4.      This is not the first time Plaintiffs' counsel has disregarded the Local Rules of Court. Plaintiffs' counsel has at least on two other occasions, filed briefs without compliance with the Local Rules of Court: (a) filing of an *Ex Parte* Application without Notice to Opposing counsel; and (b) filing of a Motion to Compel without filing the Stipulation concurrently despite the requirement under the Rules.

5.      In addition, on September 17, 2004, Plaintiffs' counsel again filed a Reply Brief in excess of five (5) pages of the limits placed by Local Rules of Court 7.1(g). A true and correct copy of the first and last pages of the Reply Brief is attached hereto as Exhibit "1."

6.      A true and correct copy of a portion of Plaintiffs' Third Amended Complaint is annexed hereto as Exhibit "2." The allegations that I underlined in the Exhibit represent new amendments to the First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED** this 24th day of September 2004.

_____

JACQUES G. BRONZE

JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel:   (671) 477-9730
Fax:  (671) 477-9734

DISTRICT COURT OF GUAM
FILED
SEP 1 7 2004
MARY L. M. MORAN
CLERK OF COURT

BRONZE & TANG, P.C.
Date: _17 Sep 04_
Time: _4:45 pm_
Received: _ICatt_

Attorneys for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>          Plaintiffs,<br><br>     vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br><br>          Defendants. | CIVIL CASE NO. 03-00036<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER ANSWERS TO DEPOSITION QUESTIONS; TO RE-DEPOSE FREDERICK GRANILLO; FOR PRODUCTION OF DOCUMENTS; AND FOR SANCTIONS** |

## ARGUMENT

### I.    PLAINTIFFS' MOTION TO RE-DEPOSE GRANILLO SHOULD BE GRANTED.

####     A.    Plaintiffs Have Sufficiently Identified Granillo's Deposition Answers That Are Inadequate or Evasive.

HSBC mistakenly contends that plaintiffs have merely counted how many times Granillo responded "I don't recall" and that plaintiffs failed to meet their burden on their motion. This argument is specious, since in their motion to compel, plaintiffs identified the questions and answers with which they seek to re-depose Frederick Granillo ("Granillo"). *See* A. Arriola Decl., Exh. 3 at 206-207. In his testimony, Granillo testified that he did not recall or did not remember HSBC's confidentiality policies or practices. Id. For purposes of F.R.C.P. 37, an invasive or incomplete answer or response is to be treated as a failure to answer or respond. F.R.C.P. 37 (a)(3).

**EXHIBIT** *"1"*

HSBC now claims that the Subject Documents are not privileged, yet HSBC's counsel asserted attorney-client privilege at Granillo's deposition and refused to allow him to testify. HSBC's objections based on attorney-client privilege were also not substantially justified, given HSBC's voluntary disclosure of the Subject Documents to PMC, which HSBC has conceded. (HSBC Memo. at 13) HSBC also does not offer any evidence or argument that an award of expenses in this instance would be unjust. Accordingly, plaintiffs request that the Court grant their motion under Rule 37 for attorneys fees and expenses incurred in the filing of plaintiffs' motion, and that HSBC be required to pay for the cost of Granillo's second deposition.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court grant their motion to compel further answers to deposition questions; to re-depose Frederick Granillo; for production of documents; and for sanctions.

RESPECTFULLY SUBMITTED on this 17th day of September, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs

By: _____
    ANITA P. ARRIOLA

-15-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

**JOAQUIN C. ARRIOLA**
**ANITA P. ARRIOLA**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Telecopier: (671) 477-9734



FILED
DISTRICT COURT OF GUAM
AUG 16 2004
MARY L. M. MORAN
CLERK OF COURT

Counsel for Plaintiffs Alan Sadhwani, Laju Sadhwani,
and K. Sadhwani's Inc., a Guam corporation

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, <br> Plaintiffs, <br> vs. <br> HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a foreign corporation, JOHN DOE I through JOHN DOE X, <br> Defendants. | CIVIL CASE NO. CV03-00036 <br><br> **THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** |

BRONZE & TANG, P.C.
Date: 8/16/04
Time: 4:10
Received: ω

Plaintiffs complain of Defendants:

1.    This action was removed by Defendant from the Superior Court of Guam to the U.S. District Court of Guam, based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 48 U.S.C. § 1424.

2.    Plaintiffs Alan Sadhwani and Laju Sadhwani are husband and wife, residents of Guam for many years.  K. Sadhwani's Inc., is a Guam corporation authorized and

*ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910*

licensed to do business in Guam. Defendant Hongkong & Shanghai Banking Corporation, Ltd. ("HSBC"), is a foreign corporation licensed and authorized to do banking business in Guam.

3.      Defendants John Doe I through John Doe X, are the fictitious names of defendants whose true names are unknown to the Plaintiffs, and Plaintiffs ask that when such true names are discovered that this Complaint may be amended by inserting such true names in the place and stead of said fictitious names.

4.      At all times material herein, Plaintiffs have engaged in the business of acquiring real properties and developing them. They have also engaged in the business of leasing, renting real properties, including offices and other commercial building, and selling electronics, fixtures and appliances. At all times material herein, HSBC was in the business of a full service bank, lending funds to customers, taking mortgages, security instruments and other evidences of indebtedness, and taking deposits.

5.      Plaintiffs have been for about twenty five (25) years, customers of HSBC, executing and delivering to HSBC evidences of their indebtedness secured by mortgages and other security instruments, and depositing funds in HSBC. Plaintiffs went into business, Tick Tock, in 1978. Mr. Sadhwani met the then Manager of HSBC, in 1978, at a meeting of Rotarians, and since then has banked exclusively with HSBC (except for credit card deposits to Citibank, because HSBC, a foreign corporation, did not accept credit card

deposits from merchants). All of Plaintiffs' deposits and borrowings, were with HSBC exclusively. Plaintiffs deposited about $100 million with HSBC during these twenty-five (25) years. Throughout the years, Plaintiffs would borrow money from HSBC, purchase real properties and develop them, and/or develop their retail business of electronics, fixtures and appliances. At one time, Plaintiffs total obligation to HSBC was $12 million. Mr. Sadhwani negotiated with HSBC to build their Bank building in Tamuning, thus becoming HSBC's Landlord. In addition to the long- standing relationship, Plaintiffs also had social relationships with the HSBC. The Sadhwanis socialized with Bank Managers (who changed every 3 years) at Mr. Sadhwani's home, at the home of the Bank Managers, or in restaurants. As borrowers, Plaintiffs have paid the HSBC thousands of dollars in interest and fees. By virtue of such long relationship, Plaintiffs placed explicit faith, trust, and confidence in the HSBC, trusting that the HSBC and its officers and employees would deal fairly and honestly with them, the Plaintiffs.

6. Over the course of their banking relationship, plaintiffs had obtained numerous loans from HSBC. On December 29, 1997, K. Sadhwani's Inc. and HSBC executed a "Renewal and Amendment of Credit Facilities" ("Renewal"). A true and correct copy of the Renewal is attached hereto as Exhibit A. The Renewal letter referred to plaintiffs' and HSBC's agreement to renew and amend the various loans plaintiffs had with the bank.

-3-

7.    The parties memorialized the terms of the Renewal and Amendment of Credit Facilities by executing a Business Loan Agreement ("BLA") on December 31, 1997. A true and correct copy of the BLA is attached hereto as Exhibit B. The BLA evidenced the loan given by HSBC to plaintiffs ("the Loan").

8.    On the same day (December 31, 1997) that the BLA was executed, K. Sadhwani's Inc. also executed a Promissory Note ("the Note") in favor of HSBC. A true and correct copy of the Promissory Note is attached hereto as Exhibit C.

9.    On November 6, 2002, Plaintiffs and HSBC entered into an agreement entitled "Amendment to Credit Facility/Lease" a copy of which is attached as Exhibit D. Pursuant to this Agreement, the balance of Plaintiffs' Note to HSBC was $6,6821,494.56, as of September 27, 2002 (hereafter the "Loan").

10.    On February 13, 2003, representatives of the HSBC met with Plaintiff Alan Sadhwani (hereafter "Mr. Sadhwani") and informed Mr. Sadhwani that HSBC would close its office on Guam.  On February 17, 2003, the HSBC wrote to Mr. Sadhwani purportedly memorializing the discussion which took place on February 13, 2003. A copy of HSBC's letter is attached as Exhibit E.

11.    On March 5, 2003, Mr. Sadhwani met with representatives of the HSBC at the HSBC's office, at which time representatives of the HSBC informed Mr. Sadhwani that HSBC would give a "hairline discount" if Plaintiffs paid off the Loan.  Additionally, said

-4-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

representatives suggested a "friendly foreclosure". Based upon these representations, Mr. Sadhwani was induced to believe that if he found funding for repayment of the Plaintiffs' Loan with HSBC, that HSBC would discount or reduce the balance of the Loan. On the same date, Plaintiffs and HSBC entered into an agreement entitled "Promissory Note Modification Agreement", a copy of which is attached and marked Exhibit F.

12.     On March 6, 2003, HSBC wrote to the Plaintiffs again reiterating that the HSBC would consider a discount on the Loan and a "friendly foreclosure". A copy of such letter is attached as Exhibit G.

13.     By letter dated March 13, 2003, HSBC reiterated its recommendation for a "friendly foreclosure". A copy of said letter is attached as Exhibit H.

14.     By letter dated March 14, 2003, Mr. Sadhwani requested clarification and asked for details about the "friendly foreclosure". Additionally, Mr. Sadhwani requested more information about the "discount" which was offered by the HSBC in the March 5, 2003 meeting. A copy of such letter is attached as Exhibit I.

15.     By letter dated March 21, 2003, HSBC offered three proposals to work out the Loan: Plaintiffs could sell the mortgaged properties; Plaintiffs could execute deeds in lieu of foreclosure at "negotiated values;" or Plaintiffs could refinance the Loan. Additionally, HSBC assured Plaintiffs that "[t]he Bank is ready, able and willing to assist your negotiation of replacement financing." A copy of such letter is attached as Exhibit J.

-5-

16. Plaintiffs accepted HSBC's first and third proposals. Pursuant to the on-going work out agreement with HSBC, Plaintiffs sought the services of Century 21, to find buyers for the properties subject to the HSBC mortgage. By letter dated April 3, 2003, Century 21 reported on its efforts to sell the properties. A copy of such letter is attached as Exhibit K.

17. By letter dated April 3, 2003, HSBC transmitted a copy of the Promissory Note Modification dated March 5, 2003. A copy of such letter is attached as Exhibit L.

18. By letter dated April 4, 2003, Mr. Sadhwani wrote to HSBC notifying it that he was trying to obtain financing to pay off Plaintiff's Loan, and the attempt to sell the properties to pay off the Loan, enclosing a copy of the Century 21 letter (Exhibit "K"). A copy of such letter is attached and marked Exhibit M.

19. While plaintiffs were attempting to find alternate financing and to sell their properties in furtherance of the workout agreement, in early May 2003 HSBC, without plaintiffs' knowledge, began negotiations with Joseph K. Fang to sell the Loan to Mr. Fang's Guam company, Paradise Marine Corporation ("PMC"). After over a month of negotiations, HSBC and Mr. Fang executed a Loan Purchase Agreement on June 25, 2003 for the sale of plaintiffs' Loan. In May 2003 HSBC did not disclose to plaintiffs that the Loan was for sale. HSBC also did not disclose to plaintiffs that the Loan was sold in June, 2003.

-6-

20.     On July 18, 2003, Plaintiffs received a document entitled "Notice of Intent to Sell Loan", dated July 15, 2003, a copy of which is attached as Exhibit N. This Notice came as a total surprise to Plaintiffs, since there was a workout agreement between plaintiffs and HSBC and plaintiffs were fulfilling their obligations under the workout agreement.

21.     On July 22, 2003, Mr. Sadhwani telephoned Mr. Underwood.  Mr. Underwood came to Mr. Sadhwani's office; when asked, Mr. Underwood declined to name the purchase price for the Loan. Mr. Sadhwani pleaded not to sell the Loan. Mr. Sadhwani asked Mr. Underwood whether the Bank would accept $3 million for the Loan; Mr. Underwood replied "No."  Mr. Sadhwani then said how about $3.5 million.  Mr. Underwood said:  "Get me the money or guarantee, and I will try to stop the sale."

22.     On July 31, 2003, Mr. Sadhwani detailed his attempts to settle the Loan.  A copy of such letter is attached and marked as Exhibit O.  Mr. Sadhwani saw Mr. Underwood and again pleaded not to sell the Loan. Mr. Underwood assured him that if he received the offer [i.e., money or bank letter] by August 8, Mr. Underwood said, "I will see what I can do."

23.     Pursuant to the workout agreement, Mr. SAdhwani applied to First Hawaiian Bank for alternate financing.  Mr. Sadhwani also had an oral agreement with two individuals that in the event bank financing was unavailable, he could borrow up to $3.5 million from both individuals in order to pay off his Loan with HSBC. He also applied to

-7-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

obtain financing from Citibank, which denied his application. Mr. Sadhwani continued to work with Citibank to try to obtain other financing, but was told that Citibank could not assist him because HSBC had classified his loan as "non-performing."

24.　On August 5, 2003, Mr. Sadhwani obtained terms and conditions for alternative financing from First Hawaiian Bank for $3.5 million, a copy of which is attached and marked Exhibit P. On the same date, Mr. Sadhwani transmitted the First Hawaiian Bank letter to HSBC.

25.　On August 11, 2003, Mr. Underwood sent a letter to Mr. Sadhwani stating: "I am pleased to inform you that on Monday , the 11th of August 2003 your loan was sold to PMC." A copy of such letter is attached and marked Exhibit Q.

26.　Although Plaintiffs requested of the Bank and PMC a copy of the Loan purchase agreement, they both refused. Both also refused to divulge the purchase price. Plaintiffs subsequently learned that PMC purchased the Loan for $2.75 million, less than half the balance of the Loan.

27.　Plaintiffs fully complied with the terms of the Loan documents and the terms of the workout agreement.

28.　Many parcels of real property owned by the Plaintiffs were mortgaged to secure the Loan. These parcels are prime properties on Guam. Several of the buildings are Guam landmarks, e.g., the Tick Tock Building in East Agana; the HSBC Building, Marine

*¶'s deleted*

-8-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Drive, Tamuning; the Deloitte & Touche Building along Marine Drive, Tamuning; and Sateena Mall in Dededo, among others. At one time, these properties were worth much more than $12 million. At one time, these properties secured a Loan to the Plaintiffs from HSBC in excess of $12 million. Yet, nowithstanding the terms and conditions of the Loan documents, the workout agreement between the parties, and plaintiffs' pleas for more time within which to obtain other financing in order to buy back their Loan, HSBC nonetheless sold the Loan to PMC for $2.75 million, less $90,000.00. *(deletions)*

## FIRST CAUSE OF ACTION

### <u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>

29.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30.    HSBC, as a party to the Loan agreement and the work out agreement with plaintiffs, has a duty to deal fairly with Plaintiffs and in good faith.

31.    In the March 21, 2003 letter (Exhibit J), HSBC offered three (3) proposals to work out the Loan: Plaintiffs could sell the mortgaged properties; Plaintiffs could execute deeds in lieu of foreclosure "at negotiated values"; or Plaintiffs could refinance the Loan. On this latter option, HSBC agreed that it was "ready, able and willing to assist your negotiation of replacement financing."

32.    Plaintiff accepted the first and third proposals offered by HSBC. Relying on

-9-

these work out proposals, Plaintiffs immediately listed certain properties for sale with Century 21 Realty Management and applied to various banks, including First Hawaiian Bank, and Citibank to obtain alternative financing. Plaintiffs obtained terms and conditions for alternative financing from First Hawaiian Bank and forwarded such terms and conditions to HSBC on August 5, 2003. Plaintiffs also had an oral agreement with two individuals to borrow up to $3.5 million from both individuals to pay off his Loan with HSBC. (deletion)

33. HSBC failed and refused to allow plaintiffs a reasonable time under the workout agreement to sell their properties or to pay off their Loan.

34. HSBC acted in bad faith and failed to deal fairly with Plaintiffs as follows:

A. By misrepresenting to plaintiffs that it intended to perform on the workout agreement when in fact it had no intention of complying with the workout agreement and instead intended to sell plaintiffs' Loan;

B. By refusing to allow plaintiffs a reasonable time under the workout agreement to sell their properties or to obtain alternate financing;

C. By misrepresenting that it would try to stop the sale of the Loan if plaintiffs obtained alternate financing when the Loan had already been sold to PMC;

D. By misrepresenting to Citibank that the Plaintiffs' Loan was "non-performing" when in fact the plaintiffs were current in their payments and the Loan was

-10-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

subject to a workout agreement with HSBC;

      E.     By failing to inform plaintiffs that it was selling the Loan and refusing to give plaintiffs the opportunity to purchase or pay off their Loan at the same price offered by PMC or other parties.

      F.     By discriminating against Plaintiffs and treating other HSBC customers more favorably in the settlement of their loans, including but not limited to, giving them longer and more reasonable periods of time to settle their loans or to obtain alternate financing; giving them discounts on their loans; allowing friendly foreclosures; or allowing their customers to continue servicing their loans with HSBC.

      G.     By discriminating against Plaintiffs and giving more favorable consideration and treatment to Joseph Fang, a principal of PMC, who was a former executive of HSBC and a long-time special customer of HSBC, to the detriment of plaintiffs.

35.     As a result of HSBC's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

36.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 35 above as if fully set forth herein.

37.     HSBC represented to Plaintiffs that it would give a "hairline discount" on the

-11-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

55. HSBC failed to allow Plaintiffs a reasonable period of time to obtain alternative financing or to sell their properties to settle their Loan; failed to assist Plaintiffs' negotiations for replacement financing; misrepresented to Citibank that plaintiffs' Loan was "non-performing"; failed to give a "hairline discount" on the Loan; attempted to sell Plaintiffs' Loan to other third parties; and sold the Loan to PMC. All of these acts constitute breaches of the workout agreement.

56. As a proximate result of HSBC's breaches of the work out agreement, Plaintiffs suffered damages including but not limited to increased interest payments, increased costs, as well as other damages to be proven at trial.

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

57. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 56 above as if fully set forth herein.

58. Because of the longstanding, close and confidential relationship between HSBC and Plaintiffs, and by virtue of the trust and confidence which HSBC encouraged Plaintiffs to place in the Bank and which the Plaintiffs did place in the Bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable work out, HSBC owed to Plaintiffs a duty of fiduciary care.

59. HSBC breached its fiduciary duties owed to Plaintiffs by its acts, including

-16-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

but not limited to the following:

    A.      By disclosing confidential information without Plaintiffs' authorization, including but not limited to, account and deposit information, loan payment history, and other banking transactions between Plaintiffs and HSBC, to PMC, Citibank, and others.

    B.      By failing to assist Plaintiffs' negotiations for replacement financing, as HSBC had represented; *(deletion)*

    C.      By failing and refusing to give plaintiffs a reasonable time to sell their properties and/or obtain alternative financing, as required by the parties' work out agreement;

    D.      By failing to give a "hairline discount" on Plaintiffs' Loan as represented by HSBC. *(deletion)*

    E.      By selling the Loan to PMC, a Guam corporation that is not licensed to conduct banking and has never conducted banking business in Guam.

    F.      By failing to notify plaintiffs that their loan was for sale and refusing to allow plaintiffs the opportunity to purchase or pay off their Loan at the same price offered by PMC or other parties.

    G.      By discriminating against Plaintiffs and treating other HSBC customers more favorably in the settlement of their loans, including but not limited to, giving them longer and more reasonable periods of time to settle their loans or to obtain alternate

-17-

financing; giving them discounts on their loans; allowing friendly foreclosures; or allowing ~~their customers to continue servicing their loans with HSBC.~~

H.    By discriminating against Plaintiffs and giving more favorable ~~consideration and treatment to Joseph Fang, a principal of PMC, who was a former executive of HSBC and a long-time special customer of HSBC, to the detriment of plaintiffs.~~

60.    As a proximate result of the breaches of fiduciary duty as alleged herein, Plaintiffs have suffered damages, including but not limited to, increased interest payments, increased costs, and other damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF DUTY NOT TO DIVULGE PLAINTIFFS' CONFIDENTIAL BANKING INFORMATION

61.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 60 above as if fully set forth herein.

62.    Plaintiffs were depositors and borrowers with HSBC. HSBC has a general common law duty not to disclose the financial condition of plaintiffs to third parties. In addition, it is an implied term of the contract between HSBC and plaintiffs that HSBC will not divulge to third persons without plaintiffs' consent, either the state of plaintiffs' account or any of plaintiffs' transactions with HSBC. Like other banks, HSBC demanded and received financial information from the Plaintiffs. Unless provided as demanded by HSBC, it, HSBC, would not loan funds to Plaintiffs. Having no choice, Plaintiffs did provide such

-18-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910