FILED
DISTRICT COURT OF GUAM
OCT - 4 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

ALAN SADHWANI *et al.*,

Plaintiffs,

vs.

HONGKONG AND SHANGHAI BANKING CORP., LTD., *et al.*,

Defendants.

Civil Case No. 03-00036

ORDER

This case came before the Court on Defendant's, Hongkong and Shanghai Banking Corp., Ltd. ("HSBC"), Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth and Seventh Causes of Action. After hearing argument from counsel and reviewing the parties' submissions, as well as relevant caselaw and authority, the Court hereby DENIES the Defendant's Motion to Dismiss as to the First, Fourth, Sixth and Seventh Causes of Action and GRANTS the Motion to Dismiss as to the Third Cause of Action without prejudice. For the reasons set forth below the Court memorializes the bases for its rulings herein.

## BACKGROUND

### A. Factual Background

The Plaintiffs are in the business of acquiring real properties and developing them. They are also engaged in the business of leasing, renting real properties, including offices and other commercial buildings, and selling electronics, fixtures and appliances. Third Amended Complaint at ¶ 4. The Plaintiffs had a long term banking relationship with HSBC. For almost twenty-five (25)

years the Plaintiffs had virtually an exclusive relationship with HSBC. During that time, the Plaintiffs deposited close to $100 million with HSBC. Third Amended Complaint at ¶ 5.

On December 31, 1997, the parties executed a Business Loan Agreement ("BLA"), with a principal amount of $9,775,000. Third Amended Complaint at ¶ 7, Exhibit B attached thereto. On the same day the BLA was executed, K. Sadhwani's Inc. executed a Promissory Note (the "Loan") in favor of HSBC in the amount of $6.5 million. Id., Exhibit C attached thereto. The maturity date of the Loan was December 24, 2002. Id. In November, 2002, the parties executed an Amendment to Credit Facility/Lease, wherein the maturity date of the Loan was extended to and including December 31, 2002. Id., Exhibit D attached thereto.

Sometime in 2002, HSBC decided to discontinue its operations on Guam. At the time the Plaintiffs had an outstanding loan balance of over $6.8 million with HSBC. Third Amended Complaint at ¶ 9, Exhibit D attached thereto. On February 13, 2003, HSBC representatives met with the Plaintiff, Mr. Alan Sadhwani ("Mr. Sadhwani"), to inform him that HSBC would be closing its office on Guam and to discuss the plaintiff's credit facility. HSBC sent a letter to Mr. Sadhwani on February 17, 2003 purportedly memorializing the discussion that took place on February 13. Third Amended Complaint at ¶ 7, Exhibit E attached thereto

Thereafter, the parties met again on March 5, 2003, at HSBC's office, at which time the representatives informed Mr. Sadhwani that HSBC would give a "hairline discount" if the plaintiffs paid off their loan. There were also discussions of a "friendly foreclosure." Third Amended Complaint at ¶ 11. Based on the discussions, Mr. Sadhwani believed that if he found alternate funding for the repayment of the loan, HSBC would discount or reduce the balance of the loan. On that same day, the parties entered into a Promissory Note Modification Agreement extending the maturity date of the Loan to and including August 31, 2003. " Id., Exhibit F attached thereto.

Following the execution of the Promissory Note Modification Agreement, on March 6, 2003, HSBC sent a letter to Mr. Sadhwani. Third Amended Complaint, Exhibit G attached thereto. The letter memorialized the parties' discussions on March 5, 2003. The letter stated that by March 12, 2003, Mr. Sadhwani had agreed to provide HSBC with a written plan, explaining how he would

repay the Loan by the due date. Additionally, the letter stated that HSBC was "prepared, without in any way committing itself at this stage, to consider a discount on the loan balance if [Mr. Sadhwani] elect[ed] to give the secured properties to [HSBC]. This 'friendly foreclosure' method would transfer the burden of property liquidation to [HSBC] and minimise (sic) legal fees for both parties." Id. at ¶3. HSBC went on to state that if Mr. Sadhwani wished "to explore this approach," he should assign a value to the property a submit a written proposal for HSBC's consideration. Id.

Mr. Sadhwani did not provide HSBC with a written plan on March 12, 2003. On March 13, 2003, HSBC again wrote to Mr. Sadhwani. Third Amended Complaint, Exhibit H attached thereto. HSBC stated that it would need the written plan by that day (March 13, 2003) so that it could "understand how [Mr. Sadhwani] intend[s] on repaying the loan by the revised maturity date." Id. The bank also urged Mr. Sadhwani to "consider [its] recommended approach under 'friendly foreclosure.'" Id.

On March 14, 2003, Mr. Sadhwani wrote to HSBC. Third Amended Complaint, Exhibit I attached thereto. Mr. Sadhwani stated that he was "working with a bank to pay off [the] outstanding loan with [HSBC]." Id. Mr. Sadhwani requested more information about the "friendly foreclosure" since he did not understand what exactly HSBC wanted. Id. Mr. Sadhwani also asked HSBC to explain the "discounting" and how that would happen. Id.

On March 21, 2003, HSBC once again wrote to Mr. Sadhwani. Third Amended Complaint, Exhibit J attached thereto. Therein HSBC detailed three options available to the Plaintiffs (what Plaintiffs refer to as the "work out agreement"). See id. The first option was for Mr. Sadhwani to continue to list his properties with Century 21. If he was able to sell the property at market price and had the listing agreements, the Bank "may consider tolling collection efforts pending the closing in escrow of written accepted purchase offers with net proceeds paid to [HSBC]." Id. In the event he was unable to sell the properties through Century 21, Mr. Sadhwani's second option was for HSBC to possibly "consider accepting deeds in lieu of foreclosure at negotiated values." Id. Lastly, Mr. Sadhwani could avoid the entire process if he was "seriously making an effort to refinance [the] loan facility." Id. If Mr. Sadhwani was going to try and obtain refinancing, HSBC requested "immediate

confirmation of your loan application and efforts to obtaining refinancing." Id. HSBC stated that it was "ready, able and willing to assist [Mr. Sadhwani's] negotiation of replacement financing." Id. In conclusion, HSBC requested Mr. Sadhwani to respond to the letter with the required information by April 4, 2003.

The Plaintiffs chose the first and third options. Thereafter, the Plaintiffs took steps to either sell their properties or try to obtain alternate financing. On April 3, 2003, Century 21 provided Mr. Sadhwani with a letter detailing its efforts to market the Plaintiffs' properties. Third Amended Complaint, Exhibit K attached thereto. Additionally, Mr. Sadhwani wrote to HSBC on April 4, 2003, informing it that he tried to get the refinancing but had not yet received a confirmation of the loan. Id., Exhibit M attached thereto. Also, Mr. Sadhwani stated that he was still trying to sell the properties but that if he was unsuccessful, he would hand them over to HSBC. Mr. Sadhwani pleaded for "sometime" since he was working to satisfy the outstanding loan. Id.

On July 18, 2003, the Plaintiffs received from HSBC a "Notice of Intent to Sell Loan" (dated July 15, 2003). Third Amended Complaint, Exhibit N attached thereto.

On July 22, 2003, Mr. Underwood, the Guam Manager of HSBC, met with Mr. Sadhwani at Mr. Sadhwani's office. Third Amended Complaint at ¶ 21. Mr. Sadhwani pleaded with Mr. Underwood not to sell the Loan and offered him $3 million to settle the Loan. Mr. Underwood stated that HSBC would not accept that amount. Thus, Mr. Sadhwani asked whether $3.5 million would be sufficient. Mr. Underwood replied "[g]et me the money or guarantee, and I will try to stop the sale." Id.

On July 31, 2003, Mr. Sadhwani wrote to Mr. Underwood and detailed his attempts to settle the Loan. See Third Amended Complaint, Exhibit O attached thereto. Thereafter, Messrs. Sadhwani and Underwood met again, and Mr. Underwood assured Mr. Sadhwani that if he received the offer (*i.e.*, money or bank letter) by August 8, 2003, Mr. Underwood would "see what [he could] do." Third Amended Complaint at ¶ 22.

On August 5, 2003, Mr. Sadhwani sent HSBC a copy of a letter from First Hawaiian Bank See Third Amended Complaint, Exhibit P attached thereto. The letter was an "indication of the

terms and conditions" for financing a loan to the Plaintiffs to pay off the HSBC Loan. Id. The letter was "not [to] be construed as a commitment on the part of [First Hawaiian Bank], and [was] only provided for indication purposes only." Id.

On August 11, 2003, HSBC sent Mr. Sadhwani a letter informing him that as of August 11, 2003, the Loan was sold to Paradise Marine Corporation ("PMC")[1]. See Third Amended Complaint, Exhibit Q attached thereto. Plaintiffs subsequently learned that PMC purchased the Loan for $2.75 million, less than half the balance of the Loan. Many parcels of real property owned by the Plaintiffs were mortgaged to secure the Loan. At one time, these properties were worth much more than $12 million. Third Amended Complaint at ¶ 28.

## B. Procedural Background

Thereafter, the Plaintiffs brought suit against HSBC and doe defendants in the Superior Court of Guam asserting six (6) separate causes of action.[2] HSBC removed the action to this Court based on diversity jurisdiction. Shortly thereafter, HSBC brought a Motion to Dismiss. In a written Order filed April 9, 2004, the Court granted in part and denied in part the Motion to Dismiss. The Court denied the Motion to Dismiss as to the First, Second, Fourth, and Fifth causes of action. However, the Court granted the Motion to Dismiss as to the Third and Sixth causes of action, which were dismissed without prejudice. The Court permitted the Plaintiffs to amend the Complaint to reassert the dismissed causes of action.

On April 27, 2004, the Plaintiffs filed their First Amended Complaint. On April 30, 2004, HSBC filed a Motion to Strike Count Six of the Second Amended Complaint or, in the alternative, to Dismiss the Third and Sixth Causes of Action. However, before this matter was heard by the

---

[1] PMC is a Guam Corporation, whose primary purpose, according to its Articles of Incorporation, is "to engage in the business of commercial fisheries operation." See Third Amended Complaint at ¶ 63.

[2] The Complaint alleged the following causes of action:

1. Breach of Covenant of Good Faith and Fair Dealing;
2. Intentional Misrepresentation;
3. Breach of Contract: Promissory Note Modification Agreement;
4. Breach of Contract: Work out Agreement;
5. Breach of Fiduciary Duty; and
6. Breach of Banking and Confidentiality Laws.

- 5 -

Court, the parties stipulated to permit the Plaintiffs to file a Third Amended Complaint on August 16, 2004. HSBC now seeks the Court to dismiss several of the causes of action of this complaint.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 12(b)(6), HSBC requests this Court to dismiss various causes of action of the Plaintiffs' Third Amended Complaint.[3] A motion to dismiss under Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citing Hall v. City of Santa Barbara, 833 F.2d 1270, 1274) (9th Cir. 1986), *cert. denied*, 485 U.S. 940, 108 S. Ct. 1120 (1988)(overruled on other grounds)). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000), *cert. denied*, 532 U.S. 1021, 121 S. Ct. 1962 (2001). The Court's role at this stage of the proceedings is not to evaluate the strengths or weaknesses of the claims. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

### 1st Cause of Action – Breach of Covenant of Good Faith and Fair Dealing

HSBC requests this Court to dismiss the first cause of action for a breach of covenant of good faith and fair dealing. However, the Court notes that this matter was ruled on by the District Court Judge, John S. Unpingco. In addition, HSBC sought the Magistrate Judge, Joaquin V.E. Manibusan, Jr. to reconsider this issue, as well as the Designated District Court Judge Frances M. Tydingco-

---

[3]The Court notes that HSBC opposes the Plaintiffs' Opposition because it exceeds the 20 page limit as permitted under Local Rule 7.1(g) without seeking leave of court. Ordinarily this Court would address this matter in HSBC's favor as the Court understands that Plaintiffs have been admonished to follow the applicable local rules in the past. See Court Order May 28, 2004. However, the Court questions HSBC good faith, finding that HSBC's pleadings were filed in 11 point font and smaller. Had the Plaintiffs likewise chose to file their document in smaller font, left out a statement of facts, they may have been able to meet the 20 page limit. In addition, on September 28, 2004, the Plaintiffs' filed an Ex Parte Motion for Leave to File Opposition Memorandum in Excess of Page Limitation. The Court finds that the Plaintiffs have made a good faith showing as to why they should be allowed to file their opposition in excess of 20 pages. Accordingly, the Court will not strike the pleadings in this instance and will grant that motion. In the future, both parties should ensure they adhere to all applicable rules, and when in doubt err on the side of caution given the quarrelsome nature of this case.

Gatewood. Both judges refused to reconsider the Court's prior ruling.[4]

The Court finds that HSBC is once again asking for reconsideration of the prior ruling in this case. A district court's discretion to reconsider an issue is governed by the "law of the case" doctrine. Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990). Under this doctrine, a district court is precluded from reconsidering decisions which have been ruled upon explicitly or by necessary implication in a previous disposition. Leslie Salt Co. v. United States, 55 F.3d 1388, 1393 (9th Cir.), *cert. denied*, 516 U.S. 955 (1995).

A court may exercise its discretion to revisit a decided issue and reverse a ruling when: (1): the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) substantially new evidence has become available. Milgard v. Tempering, Inc., 902 F.2d at 715. In this instance, HSBC states that the April 9 Order was clearly erroneous because the Court failed to cite to any other precedent in its order other than a case originating from the Superior Court of Guam.

In reviewing the April 9 Order, the Court notes that Judge Unpingco found that the issue was one of first impression. Therefore, it was incumbent upon him to use his own best judgment in

---

[4] In its Opposition to Plaintiffs's Motion to Compel, HSBC argued that the requested documents were not relevant to the First cause of action because the Court erroneously found that Guam law would recognize a claim for bad faith in this commercial contract. The Magistrate Judge declined to address the issue stating "[w]hat HSBC is actually attempting to do is re-litigate the arguments raised in its Motion to Dismiss, which the Court denied on April 9, 2004. Thus, the Court will disregard this argument in its entirety as it is not a proper objection to a discovery request." See Order May 27, 2004.

Again, HSBC raised the issue in its Objections to Magistrate Judge's Order Compelling Production. HSBC argued that the Magistrate Judge improperly focused on the Plaintiffs' first cause of action for tortious breach of the covenant of good faith and fair dealing in his determination that the requested discovery was relevant. The Designated District Court judged stated:

> HSBC suggests that that cause of action should not have survived its prior Motion to Dismiss. HSBC asserts that the District Court had erroneously found that Guam law would recognize a claim of bad faith in the banking relationship. See Order of April 9, 2004. Therefore, any discovery related to that cause is improper. However, this Court will not undertake reviewing what the prior District Court Judge ruled. HSBC has not presented any new facts, nor does it reveal any manifest error of law in the District Court's prior ruling. In re Agric. Research & Tech. Group, 916 F.2d 528, 542 (9th Cir. 1990) ("Motions for reconsideration may properly be denied where the motion fails to state new law or facts"). Because the cause of action was found to survive a motion to dismiss, the Magistrate Judge's ruling to produce related discovery was proper.

See Order August 10, 2004.

predicting how the Guam Supreme Court would rule. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (Under the *Erie Doctrine*, in diversity cases, the federal court must apply state substantive law.). Because there was no Guam Supreme Court decision he looked to a Guam Superior Court case, Ada's Inc., *et al.* v. First Hawaiian Bank, *et al.*, Superior Court of Guam Civil Case No. CV0785-02, that had thoughtfully considered the matter.

Judge Unpingco found that the Guam Superior Court case was well reasoned and that the facts of the case were similar to those before the Court.[5] Although, the Ada's decision relied in large part on the case of Seaman's Direct Buying Service, Inc. v. Standard Oil Co., 36 Cal.3d 752 (1984), which was subsequently overruled by the California Supreme Court case of Freeman & Mills Inc. v. Belcher Oil Co., 11 Cal.4th 85 (1995), Judge Unpingco distinguished the facts of Ada's and the present case with those found in Seaman's and Freeman. Judge Unpingco found that neither Seaman nor Freeman concerned the breach of a commercial contract between a bank and a customer. The Seaman case involved a would-be dealer and an oil company, while the Freeman case concerned a contract between an accounting firm and an oil company. Judge Unpingco found that the Freeman case did not preclude a party from pursuing such a cause of action if a party could show the existence of a "special relationship" between the parties.

The Superior Court Judge in Ada's found that the parties had a special relationship which supported the cause of action. Similarly, Judge Unpingco found that the facts of the present case supported such a finding. Therefore, Judge Unpingco found that Guam law would recognize a cause of action for breach of bad faith from a breach of a commercial contract between a customer and a bank.

A prior ruling may not be reversed, for example on the grounds that it was wrong, but only that it was clearly wrong. Leslie Salt, 55 F.3d at 1393. This Court is not convinced that Judge Unpingco's ruling meets this level. Comparing HSBC's first motion to dismiss with the one before the Court, it is readily apparent that many of the arguments are adopted almost verbatim from the

---

[5]In Ada's, the plaintiffs were bank customers of First Hawaiian Bank ("First Hawaiian"). The plaintiffs sought damages for breach of the covenant of good faith and for breach of contract. First Hawaiian moved to dismiss on the grounds that there was no cause of action for the breach of covenant of good faith.

first. The Court believes that Judge Unpingco considered these arguments when ruling on the issue. This Court is not willing to reverse the ruling because HSBC would otherwise prefer the decision was in its favor. Accordingly, the Court denies HSBC Motion to Dismiss as to the First Cause of Action.

### 6th Cause of Action – Breach of Fiduciary Duty

Likewise, the Court denies HSBC's Motion to Dismiss as to the Sixth Cause of Action for breach of fiduciary duty. With respect to this cause of action, HSBC now states that the decision was erroneous. However, HSBC has failed to demonstrate a material difference in fact or law, the emergence of new facts or a change in law, or provide a manifest showing of a failure to consider material facts presented to the Court. Instead, HSBC makes the exact same arguments it made in its first motion to dismiss.

### 3rd Cause of Action – Breach of Contract - Promissory Note and Business Loan Agreement

The Plaintiffs' Third cause of action asserts that HSBC breached the Business Loan Agreement ("BLA") and Promissory Note by "selling the Loan to PMC, as the sale does not constitute a sale 'of one or more participation interests in the loan.'" See Third Amended Complaint at ¶45.

In support of their position, the Plaintiffs state in ¶44 of the Third Amended Complaint:

> Plaintiffs and HSBC entered into a valid loan contract by executing the BLA. The BLA was executed as a part of the same transaction and executed on the same date as the Promissory Note. The BLA refers to and incorporates by reference therein, all notes executed by the Sadhwanis and includes 'without limitation any and all commercial loans and financial accommodations' from HSBC to the Sadhwanis, 'whether now are hereafter existing.' ... The BLA modified the Promissory Note by explicitly restricting the sale or transfer of the Loan to one or more participation interest only. The parties clearly intended, and the banking industry usage confirms, that 'participation' means a lead bank selling or transferring a portion of the loan to another bank or financial institution, not a fishing company.

HSBC contends that the allegations supporting this cause of action fail to state a claim against HSBC upon which relief may be granted. Specifically, HSBC maintains that under Guam law, a promissory note which evidences a loan is a negotiable instrument. 13 GUAM CODE ANN. § 3104. Additionally, under Guam law a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 GUAM CODE ANN. § 81102. There is nothing in the March 5, 2003 Promissory Note Modification Agreement which prohibits a transfer,

- 9 -

sale, or assignment of the Note. Thus, HSBC asserts that selling the Loan to PMC could not form the basis for a breach of contract action.

The Plaintiffs argue that HSBC must not only consider the terms of the Promissory Note but must also look to the BLA to determine the terms agreed upon. The BLA and Promissory Note were executed as part of the same transaction. Section 3119 of Title 13, Guam Code Annotated provides as follows:

**Other Writings Affecting Instrument.**

> (1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.
>
> (2) A separate agreement does not affect the negotiability of an instrument.

The Plaintiffs claim that sections (1) and (2) of 13 GUAM CODE ANN. § 3119 are mutually exclusive. In other words, the Plaintiffs argue that the two sections address two types of agreements. Subsection (1) refers to an agreement that is executed as part of the same transaction and modifies or affects an instrument, whereas subsection (2) refers to a separate agreement that does not affect the negotiability of the instrument. Therefore, in line with that position, the Plaintiffs argue that the BLA expressly restricted the ability of HSBC to sell or transfer the loan to one or more participation interests only.

HSBC argues that the Plaintiffs are mistaken as to the affect of the BLA. It cannot affect the negotiability of the Promissory Note. "The negotiability of the note is always to be determined by what appears on the face of the instrument alone . . . " See, OFFICIAL UCC COMMENT 5 TO CODE SECTION 3119(2). This Court agrees with HSBC. Rather than reading the two subsections of Section 3119 as mutually exclusive, subsection 2 sets forth the rule that a separate agreement cannot affect the negotiability of the note. Even if the Court was inclined to find that the Plaintiffs were correct in their interpretation of Section 3119, the Court would still find that the BLA did not impose restrictions on the transfer or negotiation of the loan.

The Plaintiffs assert that the Consent to Loan Participation section to the BLA " . . . modified the Promissory Note by explicitly restricting the sale or transfer of the Loan to one or more

participation interests only." Third Amended Complaint at ¶44. The Consent to Loan Participation Section states:

> **Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans to one or more purchasers, whether related to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notice of sale of participation interests, as well as all notice of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchasers may enforce Borrower's obligation under the loans irrespective of the failure or insolvency of any holder of any interest in the Loans. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

Third Amended Complaint at Exhibit B.

"A participation agreement is a commonly used financing device for splitting a loan between two or more lenders--the lead lender and the participants. Some of the primary reasons for participation agreements are the allocation of risk for the lead bank, the participant's passive role in negotiations with the borrower, and diversification of a bank's portfolio." In re Sackman Mortg. Corp.,158 B.R. 926, 931 (Bankr. S.D.N.Y.,1993). Although HSBC could have chosen to enter into a participation agreement as provided under this provision, there is nothing prohibiting or restricting HSBC from freely transferring or assigning the entire loan to a third party. The Court agrees with HSBC that the fact that the Plaintiffs expressly consented to that type of transaction does not preclude HSBC from exercising its rights to engage in other statutorily authorized and commercially acceptable transactions.

Accordingly, HSBC's motion to dismiss as to the Third cause of action is hereby granted. Even viewing the facts in a light most favorable to the Plaintiffs, the Complaint fails to state a claim against HSBC upon which relief may be granted.

### 4th Cause of Action – Breach of Contract: Promissory Note Modification Agreement

The Fourth cause of action asserts that HSBC breached the March 5, 2003 Promissory Note

Modification Agreement ("PNMA") entered into by the parties. See Third Amended Complaint at Exhibit F attached thereto. Specifically, HSBC breached said agreement by (1) selling the Loan to Paradise Marine Corporation, see Third Amended Complaint at ¶ 50 and (2) failing to review the Note every 6 months, see Third Amended Complaint at ¶51.

HSBC argues that the Promissory Note Modification Agreement specifically extended the maturity date of the Note to August 31, 2003. There are no other documents or facts alleged that support Plaintiffs' conclusion that the maturity date of the note was "implicitly extended."

However, the Court notes that after the parties executed the PNMA, the parties continued discussions to try and reach a mutual solution. In the alleged "workout agreement" HSBC offered the Plaintiffs a "payoff plan" that allowed the Plaintiffs to find alternate financing or to sell their mortgaged properties. See Third Amended Complaint at ¶¶ 15-16, Exhibits J, K and M attached thereto, respectively.

The Plaintiffs contend that HSBC did not give the Plaintiffs a reasonable period of time to obtain the alternate financing or close sales on the properties. When there is no time specified for performance, a reasonable length of time for performance is required. See Abdul-Alim Amin v. Universal Life Insurance Co. of Memphis, Tenn., 706 F.2d 638, 641 (5th Cir. 1983). It seems likely given the large outstanding balance on the Loan (over $6.5 million) it would have taken Plaintiffs' some time to apply and negotiate alternate financing with other lenders. Actions taken by HSBC after the execution of the PNMA suggest that there may have been an implicit extension of the maturity date of loan. DeJoy v. Comcast Cable Communications, Inc., 941 F. Supp. 468 (D.N.J. 1996). The Court finds that, in this case, construing the facts contained in the Third Amended Complaint as true and resolving all reasonable inferences in favor of the Plaintiffs, the Court finds that the Plaintiffs have sufficiently alleged a cause of action for breach of the PNMA. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). Accordingly, HSBC's motion as to the Fourth cause of action is hereby denied.

### 7th Cause of Action – Breach of Duty Not to Divulge Plaintiffs' Confidential Banking Information

The Plaintiffs' Seventh cause of action asserts that HSBC breached the duty not to divulge

Plaintiffs' confidential banking information. Specifically, ¶62 of the Third Amended Complaint states that

> Plaintiffs were depositors and borrowers with HSBC. HSBC has a general common law duty not to disclose the financial condition of plaintiffs to third parties. In addition, it is an implied term of the contract between HSBC and plaintiffs that HSBC will not divulge to third persons without plaintiffs' consent, either the state of plaintiffs' account or any of plaintiffs' transactions with HSBC. Like other banks, HSBC demanded and received financial information from Plaintiffs. Unless provided as demanded by HSBC, it, HSBC, would not loan funds to Plaintiffs. Having no choice, Plaintiffs did provide such information with HSBC with the explicit understanding that HSBC would not divulge such information to third parties who may be competitors of the Plaintiffs' business without Plaintiffs' consent. The competition for rentals of buildings and sales of various electronic products is extremely stiff given the economic condition of the Island. Like other banks, HSBC has a general common law duty not to disclose information received by it from the Plaintiffs concerning Plaintiffs' financial condition, business plans, rentals, marketing and pricing strategies, and a host of other information, including personal matters, without the consent and permission of the Plaintiffs. Thus, it is an implied condition of the contract between HSBC and the Plaintiffs that HSBC will not divulge to third parties without Plaintiffs' consent and permission the financial condition and the business affairs of the Plaintiffs.

HSBC complains that this cause of action must be dismissed because the cause of action is preempted by the Gramm-Leach-Bliley Act ("the Act"). Enacted in 1999, the Act is a wide-ranging financial services deregulation act effecting banking, securities, insurance and other industries. The Act includes a number of provisions regarding consumer privacy and prohibits a financial institution from disclosing "nonpublic personal information" to nonaffiliated third parties. "Nonpublic personal information" means "personally identifiable financial information (i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer of any service performed for the consumer; or (iii) otherwise obtained by the financial institution." 15 U.S.C. § 6809(4)(A)(i)-(iii). However, 15 U.S.C. §§ 6802(e)(1)(C) and (e)(7) provide exceptions to a financial institution's duty not to disclose nondisclosure personal information:

(e) General exceptions

Subsection (a) and (b) of this section shall not prohibit disclosure of nonpublic personal information --

    (1) as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with --

        (C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer; ...

- 13 -

> (7) in connection with the propose or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business unit.

HSBC states that both of these exceptions would apply under the circumstances and necessarily preempt any Guam law or common law cause of action relating to HSBC's sale of its loans.

The Plaintiffs claim that the Act does not apply to them. For example, a "consumer" is defined under the Act as "an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such individual." 15 U.S.C. § 6809(9).

In this instance, the Plaintiffs are not "consumers." The BLA and Promissory Note was executed by K. Sadhwani's Inc. See Third Amended Complaint, Exhibits B and C attached thereto, respectively. On its face, the BLA specifically refers to the commercial loans K. Sadhwani's Inc. obtained from HSBC. Id., Exhibit B attached thereto. The Plaintiffs' $9.5 million loan with HSBC was not a loan "for personal, family, or household purposes." The Court agrees that for purposes of the Act, the Plaintiffs do not qualify as consumers and therefore the Act does not apply.

However, the analysis does not end there. HSBC maintains that regardless of the application of the Act, the cause of action still falters. No cause of action can lie when HSBC was only doing that which it was legally entitled to do - sell the subject loan and note. Moreover, HSBC states that a lender has no implied obligation or "general duty" of confidentiality to a borrower. In Graney Development Corp. v. Taksen, 400 N.Y.S. 2d 717 (Supp. 1978), aff'd, 411 N.Y.S. 2d 756 (App. Div. 1978), the plaintiff claimed that a bank breached an implied agreement not to disclose information about the plaintiff's financial affairs and the bank moved to dismiss. Id. at 718. The court distinguished between relationships involving a bank and depositor with that involving a lender and borrower. The court held that the bank, in its capacity as a lender, is in no different position than that of any other lender or creditor and that there existed no implied agreement of confidentiality to the relations of a bank with its borrowers. Id. at 720. See Sharma v. Skaarup Ship Management Corp. 699 F.Supp. 440, 449 (S.D.N.Y.,1988) ("Information about the status of a borrower's loan is not information that the borrower would normally expect would be kept confidential.").

The Plaintiffs claim that HSBC is missing the point. The issue is whether there is a cause of action where a bank violates its duty of confidentiality when it, without authorization or consent from its customer, releases confidential information to third parties regarding the customer's banking relationship. The Plaintiffs claim that they are not concerned over the disclosure of general information that is of public record, such as mortgages. Rather, they allege their "financial condition, their deposit accounts and transactions with HSBC, their proprietary business information, and the status of plaintiffs' loan with HSBC" were disclosed to third parties. Third Amended Complaint at ¶ 66. In addition to being borrowers, the Plaintiffs were also depositors. "All of Plaintiffs' deposits and borrowing, were with HSBC exclusively. Plaintiffs deposited about $100 million with HSBC during these twenty-five (25) years." Third Amended Complaint at ¶ 5.

Plaintiffs cite to <u>Djowharzadeh v. City National Bank and Trust Co. of Norman</u>, 646 P.2d 616 (Okla. App. 1982) for support. In <u>Djowharzadeh</u>, the bank disclosed confidential financial information to a third party. The bank customer learned of a real estate opportunity and went to the bank for a loan. <u>Id.</u> at 617. While the loan was pending, the loan officer advised the wives of the bank's president and senior vice president about the property being offered for sale. The wives purchased the property for themselves. In the meantime, the bank turned down the loan application to the bank customer. <u>Id.</u> at 617-618. The customer sued the bank and the trial court granted the bank summary judgment on the defense that the bank owed no duty of confidentiality to the customer. <u>Id.</u> at 618.

The appeals court reversed the decision and found that banks may " not use their favored position to the detriment of their customers, either directly or indirectly." <u>Djowharzadeh</u>, 646 P.2d at 619. The court went further and stated "under these circumstances, the Bank's relationship to a loan applicant implicitly imposes the duty to keep the contents of the loan applications confidential. This duty has existed traditionally and continues to exist, if not specifically in the law books, at least in the mind of the public in general and within the banking community in particular." <u>Id.</u> at 619-620.

On the basis that Plaintiffs have alleged the disclosure of information other than their mortgages, the Court finds there is a basis for the cause of action to survive. The Court recognizes that Guam is a small community, where there is perhaps a greater need to keep personal, proprietary

- 15 -
Case 1:03-cv-00036   Document 324   Filed 10/04/2004   Page 15 of 16

and banking information confidential.

As an aside, the Court believes that there may be a tendency by HSBC to take advantage of the absence of a permanent sitting District Court Judge. The Court is concerned that there have been a number of filings by HSBC which seek reconsideration of settled matters in hopes of getting different rulings from visiting judges. This practice is a waste of time and resources of both parties and the Court.[6] HSBC is cautioned to pause and think before filing such motions otherwise it may find itself subject to sanctions. The Plaintiffs are likewise admonished as the Court finds they have not been proceeding entirely with "clean hands." They have filed a number of *ex parte* motions that have not been truly of an *ex parte* nature. The parties should spend what time they have left preparing this case for trial instead of trying this case by motion practice.

## CONCLUSION

The Court hereby DENIES the Motion to Dismiss as to the First, Fourth, Sixth, and Seventh Causes of Action. Additionally, the Court GRANTS the Motion to Dismiss as to the Third Cause of Action, which is dismissed without prejudice.

SO ORDERED this 1st day of October, 2004.

Notice is hereby given that this document was entered on the docket on 10/4/04.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 10/4/04
Deputy Clerk    Date

District Judge David Bury
United States District Judge

---

[6] For example, HSBC filed a Motion to Strike Jury Demand on December 30, 2003. On February 13, 2004, the matter came before the Court for a hearing. The Court denied the motion. On April 23, 2004, HSBC filed a Motion for an Order Certifying the Denial of HSBC's Motion to Strike Jury Demand for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b) and to Stay the Proceedings Pending Appeal. The Court (Judge Unpingco) denied this motion on April 30, 2004. On May 4, 2004, HSBC filed a Motion to Reconsider Order Denying HSBC's Motion for an Order Certifying the Denial of HSBC's Motion to Strike Jury Demand for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b) and to Stay the Proceedings Pending Appeal. Without a hearing on the matter, District Court Judge Dean D. Pregerson denied the Motion. Throughout this case, HSBC has filed several motions for reconsideration and/or objections to the Magistrate Judge's rulings.

*The Honorable David Bury, United States District Judge for the District of Arizona, sitting by designation.