FILED
DISTRICT COURT OF GUAM
OCT - 5 2004
MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

ALAN SADHWANI *et al.*,

Plaintiffs,

vs.

HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., *et al.*,

Defendants.

Civil Case No. 03-00036

ORDER

This case came before the Court on September 24, 2004, for a hearing on various pending motions, including a Motion to Bifurcate Trial (the "Motion") filed by the defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC") on August 20, 2004. Appearing for the Plaintiffs was Anita P. Arriola, Esq. Attorneys Jacques Bronze and Richard Pipes appeared on behalf of HSBC. At the conclusion of the hearing, the Court indicated that it was inclined to deny the Motion and stated that it would be issuing a written decision shortly. For the reasons set forth herein, the Court hereby DENIES the Motion.

## BACKGROUND

For approximately 25 years, the Plaintiffs had an almost exclusive banking relationship with HSBC. This relationship ended on August 11, 2003, when Mr. Sadhwani received a letter informing him that HSBC had sold the Loan to Paradise Marine Corporation. See Exhibit O to Complaint.[1]

---

[1] A copy of the Complaint is attached as Exhibit B to the Notice of Removal of Action, Docket No. 1 (November 5, 2003).

On October 21, 2003, the Plaintiffs commenced suit against HSBC in the Superior Court of Guam. The Complaint alleged six (6) causes of action.[2] On November 5, 2003, HSBC removed the action to this Court based on diversity jurisdiction.

Subsequently, the Plaintiffs filed amended complaints. On April 27, 2004, the Plaintiffs filed a First Amended Complaint after Judge Unpingco dismissed counts 4 and 6 of the Complaint without prejudice. On May 28, 2004, Judge Pregerson granted HSBC's motion to strike the First Amended Complaint in its entirety, but permitted the Plaintiffs to amend their complaint. Thus, on June 2, 2004, the Plaintiffs filed a Second Amended Complaint. Finally, pursuant to a stipulation[3] between the parties, the Plaintiffs filed a Third Amended Complaint[4] on August 16, 2004.

Presently, the trial in this matter is scheduled to commence on January 25, 2005.

On August 20, 2004, HSBC filed the instant Motion. See Docket Nos. 246 and 247.[5] Therein, HSBC requested that the trial in this case be bifurcated into two (2) separate phases.

---

[2] The Complaint alleged the following causes of action:

1. Breach of Covenant of Good Faith and Fair Dealing;
2. Intentional Misrepresentation;
3. Breach of Contract: Promissory Note Modification Agreement;
4. Breach of Contract: Work out Agreement;
5. Breach of Fiduciary Duty; and
6. Breach of Banking and Confidentiality Laws.

[3] See Stipulation and Order, Docket No. 244 (August 18, 2004).

[4] The Third Amended Complaint alleged the following causes of action:

1. Breach of Covenant of Good Faith and Fair Dealing;
2. Intentional Misrepresentation;
3. Breach of Contract – Promissory Note and Business Loan Agreement;
4. Breach of contract – Promissory Note Modification Agreement;
5. Breach of Contract – Work out Agreement;
6. Breach of Fiduciary Duty;
7. Breach of duty not to Divulge Plaintiffs' Confidential Banking Information; and
8. Punitive Damages.

On October 1, 2004, this case came before Judge David C. Bury for a hearing on HSBC's Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth, and Seventh Causes of Action. Judge Bury subsequently dismissed the Plaintiffs' third cause of action on the Third Amended Complaint. See Order, Docket No. 307 (October 4, 2004).

[5] Docket No. 247 is the HSBC's Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial ("HSBC's Mem. Supp. Mot.").

The first phase would only include the issues of liability, compensatory damages, and whether the Plaintiffs are entitled to punitive damages. If the jury determines that the Plaintiffs are entitled to an award of punitive damages, then the second phase of the trial would be a determination of the amount of punitive damages to award the Plaintiffs. HSBC proposed that a single jury hear both phases of the trial, but that the Court preclude from the first phase evidence relevant only to the amount of punitive damages sought by the Plaintiffs. HSBC asserted that bifurcation would save time and expense, and would eliminate prejudice to it.

On September 8, 2004, the Plaintiffs filed an opposition brief[6] to the Motion, along with supporting affidavits.[7] The Plaintiffs asserted that a bifurcated trial would not be convenient for the parties, the jurors, or the Court, nor would it be conducive to expedition or judicial economy. The Plaintiffs further argued that they would be "severely prejudiced" by bifurcation. Finally, the Plaintiffs alleged that HSBC would not be prejudiced by the presentation of evidence regarding its net worth to the jury prior to the determination of punitive damages.

On September 15, 2004, HSBC filed a reply brief[8] to the Plaintiffs' Opposition and refuted the various arguments raised by the Plaintiffs.

## ANALYSIS

Rule 42(b) of the Federal Rules of Civil Procedure is relevant to the present analysis. Rule 42, in pertinent part, provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any claim . . . or issue." Fed. R. Civ. P. 42(b) (emphasis added). The Court has broad discretion to order separate trials under this rule. See Danjaq L.L.C. v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001). The Advisory Committee Notes indicate that "[w]hile separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where

---

[6] The opposition brief is docketed as Docket No. 262 and is captioned "Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant [HSBC's] Motion to Bifurcate Trial" (the "Pls.'Opp'n").

[7] The Plaintiffs filed a Declaration of Alan Sadhwani (Docket No. 260) and a Declaration of Anita P. Arriola (Docket Nos. 261 and 263).

[8] HSBC's reply brief, captioned "Reply Memorandum of Points and Authorities in Support of Motion to Bifurcate Trial"(the "Reply Br.") is docketed as Docket No. 273.

experience has demonstrated its worth." Fed. R. Civ. P. 42, Advisory Committee Notes to the 1966 Amendment. The party seeking bifurcation has the burden of establishing that bifurcation is warranted. Haitian Centers Council, Inc. V. McNary, 144 F.R.D. 191, 192 (E.D.N.Y. 1992) (*citing* Buscemi v. Pepsico, Inc., 763 F. Supp. 1267, 1271 (S.D.N.Y. 1990)).

As HSBC's memorandum notes, courts have frequently ordered that the issues of liability and damages be tried separately. HSBC contends that in this case evidence as to its financial condition is irrelevant to the determination of HSBC's liability for the claims asserted by the Plaintiffs and the computation of any compensatory damages to which the Plaintiffs may be entitled. HSBC believes that the Plaintiffs will present evidence that it has "vast and unlimited resources" such that "HSBC can well afford to pay damages to [the] Plaintiffs, even if liability is not proven." (HSBC's Mem. Supp. Mot. at 7.) Accordingly, HSBC asserts that bifurcation is warranted to eliminate "prejudice to HSBC by the fact-finder improperly considering evidence of HSBC's financial condition when determining issues of liability and compensatory damages." (Id. at 6.) HSBC further argues that the Court will save time and expense by bifurcating the trial.[9]

The Plaintiffs oppose bifurcation and assert that evidence of HSBC's financial status and net worth are relevant to the issues to be tried in phase one. The Plaintiffs contend that this financial information is not only relevant to the issue of punitive damages, but also relevant to establish HSBC's economic or financial reasons for closing the Guam office and the Plaintiffs' claim that "HSBC acted in bad faith and failed to deal fairly with [the P]laintiffs when the bank sold the Loan to PMC at a loss to the bank, for an amount that was less than half the balance of the Loan." (Pls.' Opp'n at 6.)

HSBC refutes this argument. HSBC asserts that its reason for closing its Guam office are of no consequence to the determination of the Plaintiffs' claims, and thus the financial information sought is irrelevant to the issues to be tried in phase one. Additionally, HSBC

---

[9] HSBC also states that bifurcation would "defer costly discovery pending resolution of preliminary issues such as liability," since the district court could then stay discovery as to HSBC's financial condition or net worth. (HSBC's Mem. Supp. Mot. at 3.)

- 4 -

concedes that it sold the loan to PMC at a discount, and thus argues that the financial information is irrelevant to prove this undisputed fact. HSBC contends that the Plaintiffs have failed to explain how the requested financial information is relevant to prove HSBC acted in bad faith by selling the Loan at less than face value.

While federal courts have ordered that liability and damages be tried separately in a variety of litigation, bifurcation "has been denied when the evidence on the two subjects is overlapping or the liability and damages issues are so intertwined that efficiency will not be achieved or confusion may result from any attempt at separation." 9 Wright & Miller, Federal Practice and Procedure, § 2390 (2d ed. 1995) and cases cited in footnote 3. Here, it would appear that the evidence relating to the liability and punitive damages issues are inextricably intertwined such that bifurcation of the issues would not be warranted. HSBC, like other banks, is in the business to make money. Yet, HSBC concedes that it sold the Plaintiffs' Loan to PMC for a price that was less than half the balance of the Loan. The Plaintiffs' claims of bad faith and breach of the work out agreement are premised on the fact HSBC had no financially or economically valid reason for refusing to allow the Plaintiffs a reasonable time to sell their properties or to obtain alternate financing. HSBC's financial viability is an integral part of the Plaintiffs' claims, and the evidence needed to show liability will also be needed to determine punitive damages. Because there is this overlap of evidence, efficiency would not be achieved by bifurcation, and, as noted by the Plaintiffs, confusion may result from an attempt to separate and redact the evidence accordingly.

Additionally, the Court notes that HSBC is not seeking to completely bifurcate the issues of liability and damages. Instead, HSBC seeks to only sever one type of damages recovery from the first phase of the trial. Thus, the jury will hear evidence regarding the Plaintiffs' claimed compensatory damages under the scheme proposed by HSBC. Singling out the amount of punitive damages for the second phase of trial would unnecessarily lengthen the trial process; it would not result in judicial economy.

Finally, HSBC will not be severely prejudiced by the presentation of evidence of its financial condition during the liability phase of the trial. Most people recognize that HSBC is an

international bank with branches throughout the world. As such, people expect HSBC to have large assets. Nevertheless, the Court believes that the voir dire process can eliminate those potential jurors who can not be fair and impartial because of such information. Furthermore, any prejudice HSBC may face can be cured by the Court giving appropriate jury instructions.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES HSBC's Motion to Bifurcate Trial.

SO ORDERED this 5th day of October, 2004.

JOAQUIN V. E. MANIBUSAN, JR.
U.S. Magistrate Judge

Notice is hereby given that this document was entered on the docket on 10/5/04.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 10/5/04
Deputy Clerk      Date