**JACQUES G. BRONZE, ESQ.**
LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

**RICHARD A. PIPES, ESQ.**
LAW OFFICES OF RICHARD A. PIPES
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001

FILED
DISTRICT COURT OF GUAM
OCT - 5 2004
MARY L. M. MORAN
CLERK OF COURT

311

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>    Defendants. | **CIVIL CASE NO. 03-00036** |

**HONGKONG AND SHANGHAI BANKING
CORPORATION, LTD'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO RECONSIDER ORDER DATED AUGUST 10, 2004**

ORIGINAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT Operations Inc. v. Chase Manhattan Bank,*
 662 N.Y.S.2d 190, 191,197 (Supp. 1997) .............................................................. 16

*Application of Chase Manhattan Bank,*
 297 F.2d 611, 613 (2nd Cir. 1962) ........................................................................ 19

*Barber v. Hawaii,* 42 F.3d 1185, 1198 (9th Cir. 1994) ................................................... 8

*Buckley v. Vallejo,* 424 U.S. 1, 126, 96 S.Ct. 612 (1976) ............................................... 4

*Chase Manhattan Bank v. South Acres Development Co.,*
 434 U.S. 236, 237, 98 S.Ct. 544, 545 (1978) ........................................................... 3

*Corn v. Guam Coral Co., Inc.,* 318 F.2d 622, 627 (9th Cir. 1963) ................................... 3

*Edmond v. United States,* 520 U.S. 651, 659-660,
 117 S.Ct. 1573 (1997) ...................................................................................... 4-6

*Freytag v. Commissioner of Internal Revenue,*
 501 U.S. 868, 880, 111 S.Ct. 2631 (1991) ........................................................... 4, 5

*Gutierrez v. Pangelinan,* 276 F.3d 539, 546 n. 4 (9th Cir. 2002) ................................... 3

*In re Sealed Case,* 825 F.2d 494, 499 (D.C. Cir.) ........................................................ 17

*In re Westinghouse Electric Corp. Uranium Contracts Litigation,*
 562 F.2d 992, 999 (10th Cir. 1977) ................................................................. 14, 17

*Los Angeles v. Santa Monica Baykeeper,*
 254 F.3d 882, 887 (9th Cir. 2001) .......................................................................... 8

*Pacemaker Diagnostic Clinic of America v. Instromedix,*
 725 F.2d 537, 550 (9th Cir. 1984) .......................................................................... 5

i

**Cases**

*Reinsurance Company of America v. Administratia Asigurarilor
de Stat*, 902 F.2d 1275, 1281 (7ᵗʰ Cir. 1990) ...................................................................... 17, 19

*School Dist No. 1J, Multnomah County, Oregon v. AC and S, Inc.*,
5 F.3d 1255, 1263 (9ᵗʰ Cir. 1993) ............................................................................................ 8

*Societe Internationale Pour Participations Industrielles et
Commerciales v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087 (1958) ......................................... 13, 19

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
482 U.S. 522, 544 n.29, 107 S.Ct. 2542, 2556 n. 29 (1987) ............................................. 13, 16

*Territory of Guam v. Olsen*, 421 U.S. 195,
202-203, 97 S.Ct. 1774 (1977) ................................................................................................ 2

*Timberlane Lumber Company v. Bank of America,*
549 F.2d 597, 614 and nn. 32-33 (9ᵗʰ Cir. 1976) ............................................................... 18, 19

*Tournier v. National Provincial and Union
Bank of England,* 1 K.B. 461 (1924) .................................................................................. 12

*U.S. v. First National Bank of Chicago,*
699 F.2d 341, 342 (7ᵗʰ Cir. 1983) ....................................................................................... 20

*U.S. v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9ᵗʰ Cir. 1981) ................................................. 14, 18, 19

*Weiss v. United States*, 510 U.S. 163, 170, 114 S.Ct. 752 (1994) ................................................. 5

**Statutes and Rules**

28 U.S.C. 1332(a) ................................................................................................................. 7

28 U.S.C. 636(b)(1) ............................................................................................................... 7

**Statutes and Rules**

28 U.S.C. § 1322 ................................................................................................ 1

28 U.S.C. § 1651(a) ......................................................................................... 7

42 U.S.C. § 1424-3(d) ..................................................................................... 3

48 U.S.C. § 1424 .......................................................................................... 1, 5

48 U.S.C. § 1424(a) ......................................................................................... 2

48 U.S.C. § 1424-1(b) .................................................................................... 3, 5

48 U.S.C. § 1424b(a) ..................................................................................... 3, 6

48 U.S.C. § 2424b(a) ....................................................................................... 3

7 Guam Code § 3109(a) ..................................................................................... 4

FRCP 26(b) .................................................................................................... 14

FRCP 54(b) .............................................................................................. 1, 7, 8

FRCP 59(e) ................................................................................................. 1, 8

FRCP 60(b) ..................................................................................................... 8

FRCP 60(b)(1) ................................................................................................. 1

FRCP 60(b)(1)(6) ............................................................................................. 1

Local Rule 7.1(i) ............................................................................................. 8

Local Rule 7.1(i)(1)(2) ..................................................................................... 8

Local Rule 7.1(i)(1)(2)(3) .................................................................................. 8

**Miscellaneous**

GUAM ORGANIC ACT OF 1950 ....................................................................................................... 2

RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW § 40 ...................................................... 14

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 442(1)(c) ............................................. 13

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW, § 442, COMMENT C ............................... 18

iv

## JURISDICTION

This action is before this Court on the basis of federal diversity jurisdiction pursuant to 28 U.S.C. § 1322 and 48 U.S.C. § 1424. This Court has jurisdiction to hear this motion pursuant to FRCP 54(b), 59(e) and 60(b)(1) and (6) and the Court's inherent common-law authority.

## FACTS

On June 2, 2004, Plaintiffs filed their Second Amended Complaint ("SAC"). Then, pursuant to that certain Stipulation dated August 18, 2004, HSBC stipulated to permitting Plaintiffs to file their Third Amended Complaint ("TAC"). On August 16, 2004, Plaintiffs filed their TAC alleging eight causes of action: Breach of the Covenant of Good Faith and Fair Dealing; Intentional Misrepresentation; Breach of Contract under the Promissory Note and Business Loan Agreement; Breach of Contract under the Promissory Note Modification Agreement, Breach of Contract under the Workout Agreement; Breach of Fiduciary Duty; and Breach of Duty Not to Divulge Plaintiffs' Confidential Banking Information and Punitive Damages.

On May 27, 2004, the Magistrate Judge issued its Order compelling HongKong and Shanghai Banking Corporation, Ltd. ("HSBC") to produce all the documents relating to Requests 1 through 13 of Plaintiffs' Third Set of Requests for Production of Documents. On June 4, 2004, HSBC filed its Objections to the Magistrate Judge's Order compelling production. Plaintiffs' Requests 1 through 7 sought production of all information and documents relating to any loan agreements, letters of credit, promissory notes, or other credit facilities extended "by HSBC to Joseph Fang . . . ; Mr. Fang's family (comprising of his wife, children, siblings or parents); any business and entity in which Fang or his family had any ownership interest; or

1

business entity in which Mr. Fang or a member of his family held a position of officer or director." Neither Joseph Fang and his wife or their family members are parties to this suit.

On August 10, 2004, the Designated District Judge, Gatewood, ordered that documents responsive to Requests 1 through 7 should be produced. *See*, p. 7, of Order dated August 10, 2004 ("August Order"). On August 13, 2004, HSBC's Guam counsel faxed a letter to HSBC's Hong Kong counsel requesting compliance with this Court's August Order. *See*, Exhibit "1" attached to the Declaration of Jacques G. Bronze.

## ANALYSIS

### I

**A.     The August 10 Order Should Be Vacated, Because It Was Issued In Violation of The Appointments Clause Of The United States Constitution.**

HSBC also respectfully requests that the Court vacate the order confirming the Magistrate's decision. This order was issued by Judge Tydingco-Gatewood, an Associate Justice of the Supreme Court of Guam sitting as a temporary judge of the District Court. Because Judge Tydingco-Gatewood was not appointed in accordance with the Appointments Clause of the U.S. Constitution, she had no authority to serve as a judge of the District Court of Guam. The order therefore should be vacated as issued in violation of the Constitution.

#### 1.     Establishment of the District Court of Guam.

Under the GUAM ORGANIC ACT OF 1950, Congress established the District Court of Guam "to provide litigants in the Western Pacific with direct access to the federal court system." *Territory of Guam v. Olsen*, 421 U.S. 195, 202-203, 97 S.Ct. 1774 (1977); 48 U.S.C. § 1424(a).

2

The District Court is not an Article III court, but instead was created pursuant to Congress'

Article IV power to regulate territories of the United States. *Id.* at 196 n.1.

Originally, the District Court was vested with federal question jurisdiction, as well as

original and appellate jurisdiction over local causes of action. *Chase Manhattan Bank v. South*

*Acres Development Co.*, 434 U.S. 236, 237, 98 S.Ct. 544, 545 (1978). In 1984, Congress

expanded the District Court's jurisdiction to be co-extensive with that of a federal district court,

including both federal question and diversity jurisdiction. 48 U.S.C. § 1424-1(b). The same

amendments also provided for transfer of the District Court's appellate jurisdiction over local

claims to the Supreme Court of Guam. *Gutierrez v. Pangelinan*, 276 F.3d 539, 546 n. 4 (9th Cir.

2002); 42 U.S.C. § 1424-3(d).

### 2.     Assignment of Judge Tydingco-Gatewood as a Temporary Judge of the District Court.

The Organic Act provides for a single judge of the District Court, appointed by the

President, with the consent of the Senate. 48 U.S.C. § 2424b(a). The Act also permits the Chief

Judge of the Ninth Circuit to temporarily assign to the District Court other federal judges *and*

judges of local courts. 48 U.S.C. § 1424b(a). Congress did not restrict the authority of such

temporary judges, but instead provided for them to exercise the full authority of a judge of the

District Court. *Corn v. Guam Coral Co., Inc.*, 318 F.2d 622, 627 (9th Cir. 1963).

Pursuant to these provisions, Chief Judge Schroeder has assigned Frances Marie

Tydingco-Gatewood "to serve as a judge in the District Court of Guam during the period January

1, 2004, and ending December 31, 2004, and for such additional time required in advance to

prepare for the trial of cases, or thereafter as required to complete unfinished business." *See*

3

November 19, 2003 Order, attached as Exhibit A. Judge Tydingco-Gatewood currently is an Associate Justice of the Supreme Court of Guam. Judges of the Guam Supreme Court are appointed by the Governor of Guam, with the consent of the Legislature. 7 Guam Code § 3109(a). Judge Tydingco-Gatewood was appointed to the Guam Supreme Court in September 2001.[1]

### 3. Temporary Judges of the District Court are Subject to the Appointments Clause of the U.S. Constitution.

The Appointments Clause of Article II provides that all federal officers must be nominated by the President and confirmed by the Senate, except that Congress may vest authority to appoint "inferior" officials in the President, the courts, or department heads. *Edmond v. United States*, 520 U.S. 651, 659-660, 117 S.Ct. 1573 (1997). The Supreme Court has held that the Appointments Clause "is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659, 117 S.Ct. 1573 (1997); *see also Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 880, 111 S.Ct. 2631 (1991) ("The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic.").

There can be no legitimate dispute that a judge of the District Court of Guam is a federal officer. "[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, by appointed in the manner prescribed by" Article II. *Buckley v. Vallejo*, 424 U.S. 1, 126, 96 S.Ct. 612 (1976). Congress created the District Court of Guam, provided for assignment of temporary judges, and conferred on these judges jurisdiction co-extensive with that of a federal district judge, including federal

---

[1] *See* Supreme Court of Guam website at www.guamsupremecourt.com.

4

question and diversity jurisdiction. 48 U.S.C. § 1424 *et seq.* Judges of the District Court therefore exercise significant authority under federal law and must be appointed in accordance with Article II.

Although Guam District Court judges are not Article III judges, the Supreme Court repeatedly has held that judges of non-Article III federal courts are "Officers of the United States" subject to the Appointments Clause. *Edmond v. United States*, 520 U.S. 651, 655, 117 S.Ct. 1573 (1997) (finding military judges federal officers subject to Appointments Clause); *Weiss v. United States*, 510 U.S. 163, 170, 114 S.Ct. 752 (1994) (same); *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 877, 111 S.Ct. 2631 (1991) (finding temporary tax court judges subject to Appointments Clause).

The manner of appointing temporary judges depends on whether they are "principal" or "inferior" officers. *Edmond v. United States*, 520 U.S. at 661. This distinction in turn depends on whether the official is directly supervised by some other federal official, or instead independently exercises authority under federal law. *Id.* at 663. For example, court commissioners and court clerks are "inferior" officers, whose appointment may be vested by Congress in the Courts. *Id.* at 661.

By contrast, judges of the District Court exercise the jurisdiction of a federal district judge, subject only to review by the Ninth Circuit. 48 U.S.C. § 1424-1(b). Federal district judges undeniably are "principal" – and not "inferior" – federal officials. *Pacemaker Diagnostic Clinic of America v. Instromedix*, 725 F.2d 537, 550 (9th Cir. 1984) (Schroeder, J., dissenting on other grounds) ("Judges of the inferior courts . . . 'are not such inferior officers. . . .'"). Congress

likewise acknowledged that judges of the District Court are principal officials by requiring their appointment by the President with the consent of the Senate. 48 U.S.C. § 1424b(a).

## 4. Judge Tydingco-Gatewood Was Not Appointed In Compliance With Article II.

Under both the Guam Organic Act and the Chief Judge's order of assignment, Judge Tydingco-Gatewood is authorized to exercise the full authority of a judge of the District Court. Accordingly, temporary judges are "principal" officers who must be nominated by the President and confirmed by the Senate. Because Judge Tydingco-Gatewood was not appointed in this manner, she had no authority to act as a judge of the District Court.

Even if temporary judges are deemed "inferior" officers, Judge Tydingco-Gatewood's appointment still would not comply with the Appointments Clause. Such inferior officers must also be appointed by the President, with the consent of the Senate, unless Congress vests appointment authority in the President, the Courts or department heads. *Edmond v. United States*, 520 U.S. at 660. Here, Congress has not vested appointment authority for temporary judges in any official.

While the Chief Judge has the authority to *assign* temporary judges, she does not have any authority to *appoint* them. The Supreme Court has expressly held that the power to *assign* a judge to a particular court is separate and distinct from the power to *appoint* that official. *Edmond v. United States*, 520 U.S. at 657-658. As a result, only those officials already appointed in compliance with the Appointments Clause may be assigned by the Chief Judge as temporary judges of the District Court. *Id.*

6

However, Judge Tydingco-Gatewood was not appointed in any manner recognized by the Appointments Clause. Instead, pursuant to local Guam law, she was appointed by the Governor of Guam, with the consent of the Guam Legislature. Because Judge Tydingco-Gatewood was not appointed in compliance with Article II, she may not exercise any authority under federal law.

The current action is brought pursuant to the Court's diversity jurisdiction under 28 U.S.C. 1332(a). By order dated August 10, 2004, Judge Tydingco-Gatewood exercised the authority of a federal district judge to confirm a discovery order of the Magistrate Judge under 28 U.S.C. 636(b)(1). Because Judge Tydingco-Gatewood had no such authority, her order confirming the Magistrate Judge's discovery ruling should be vacated.[2]

The Court has authority to vacate Judge Tydingco-Gatewood's order under its inherent authority to revise orders prior to entry of final judgment. FRCP 54(b) ("any order . . . is subject to revision at any time before the entry of judgment . . ."). In addtion, under the All Writs Act, the Court may "issue all writs necessary or appropriate in aid of [its] . . . jurisdiction. . ." 28 U.S.C. § 1651(a). Here, Judge Tydingco-Gatewood has improperly exercised the Court's jurisdiction. The Court should act to protect its jurisdiction by vacating or otherwise nullifying the August 10 order.

---

[2]  HSBC does not question the constitutionality of that portion of the Organic Act permitting assignment of local judges. 48 USC 1424b(a). Nothing in the Organic Act prevents local judges from being appointed in compliance with the Appointments Clause, and therefore it is possible that in the future a local judge could be assigned to the District Court without violating the Constitution. Moreover, the Chief Judge remains free to temporarily assign to the District Court other federal district or circuit judges, all of whom are nominated by the President and confirmed by the Senate. 48 U.S.C. §1424b(a). Accordingly, HSBC's motion is limited to the question of whether Judge Tydingco-Gatewood has been properly appointed to serve as a judge of the District Court in the present action.

## II

**THIS COURT SHOULD RECONSIDER ITS ORDER COMPELLING HSBC TO PRODUCE PLAINTIFFS' REQUESTS 1 THROUGH 7 SINCE HSBC DOES NOT HAVE THE ABILITY TO COMPLY.**

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994). Courts have considered Motion for Reconsiderations under FRCP 59(e)[3] and 60(b)[4]. The Ninth Circuit in *Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) held that parties may seek reconsideration under either: (i) FRCP 54(b), which allows courts to revise "any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . before the entry of judgment . . ."; or (ii) the Court's inherent common-law authority "to rescind an interlocutory order over which it has jurisdiction . . . ."

The primary grounds warranting reconsideration include: (1) an intervening change in controlling law; (2) the presentation of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice. *School Dist No. 1J, Multnomah County, Oregon v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994). Local Rule 7.1(i) also permits a motion for reconsideration on three grounds.[5]

HSBC relies on the need to correct clear error or prevent manifest injustice and Local Rule 7.1(i)(1)(2) and (3) for its motion.

---

[3] <u>Hinton v. Pacific Enter.</u>, 5 F.3d 391, 395 (9th Cir. 1993).

[4] *Id.*

[5] (1) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at time of such decision, or, (2) the emergency of new material facts or a change of law occurring after the time of such decision, or, (3) a manifest showing of a failure to consider material facts presented to the Court before such decision.

8

Plaintiffs' Requests 1 through 7 sought production of all information and documents relating to any loan agreements, letters of credit, promissory notes or other credit facilities extended "by HSBC to Joseph K. Fang . . .; Mr. Fang's family (comprising of his wife, children, siblings or parents); any business entity in which Mr. Fang or his family had any ownership interest; or any business entity in which Fang or a member of his family held a position of officer or director." In HSBC's Objections to the Magistrate Judge Order Compelling Production, it argued that due to the lack specificity such as the original Cantonese name of Mr. Fang, the names of his family members, the name of any business entity in which Mr. Fang or any member of his family holds an interest, HSBC is left to speculate who these parties may be, and, thus, is impossible for HSBC to comply with Requests 1 through 7. *See*, fn. 9, p. 13 of HSBC's Objections to Magistrate Judge Order Compelling Production filed on June 4, 2004.

In its August Order, the Court held as follows:

> HSBC seems to suggest that it should not be required to produce documents bearing Mr. Fang's Cantonese name. However, HSBC should be able to produce all records and documents that concern Mr. Fang in either his Cantonese name or his English name. Accordingly, HSBC is required to produce all such responsive documents.

Based on the above, it appears that the Court may have misapprehended HSBC's argument as set forth in fn. 9 on p. 13 of HSBC's Objections to Magistrate Judge Order.[6] Moreover, it is not clear to HSBC whether the court has deemed to limit the production of

---

[6] A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or facts. Clark v. Homrighous, 136 F.R.D. 186, 188 (D. Kan. 1991).

9

documents only to Mr. Fang, but not from the unspecified parties requested by Plaintiffs. *See*, p. 7, ll. 8-11 of August 10, 2004, Order.

That as it may, upon receipt of this Court's Order on August 13, 2004, HSBC's Guam counsel faxed a letter to HSBC's Hong Kong counsel requesting compliance with this Court's August Order. A true and correct copy of the letter is attached to the Declaration of Jacques G. Bronze as Exhibit "1." Shortly thereafter, HSBC designated various employees headed by Mr. Ma Man Shun ("Shun") who is the Specialized Function Support Officer with HSBC's Hong Kong office-in the Accounts Services Department to locate information so as to comply with this Court's Order. *See*, ¶ 1 of the Shun Declaration.

Without any specific details such as the Hong Kong identity card or passport number, it is impossible for HSBC's Hong Kong office to identify any particular customer since the account holders could have the same Chinese or Christian surnames. *See*, ¶ 5 of Declaration of Shun. Based on the information provided in Plaintiffs' Third Requests for Production of Documents, on August 19, 2004, Mr. Shun conducted a search of HSBC's Hong Kong customer database relating to, or comprising any loan agreements, letters of credit, promissory notes or other credit facilities extended to the Fangs (as described in Plaintiffs' Third Requests for Production). *See*, ¶ 6 of Declaration of Shun.

As Mr. Shun pointed out in his Declaration, the surnames ("Fang") and ("Chen") are not uncommon names in Hong Kong. Based on the searches engaged by HSBC's Hong Kong office, and based on the available information relating to Mr. Fang and his family, HSBC has identified "a number of account holders" with the same name whose accounts have "overdraft facilities" which could be considered "other credit facilities." *See*, ¶ 9 of Declaration of Shun.

10

Based on Mr. Shun's Declaration, HSBC cannot verify and has no means to verify whether these accounts belong to the same Joseph K. Fang as identified in Plaintiff's Third Requests for Production. *See*, ¶ 9 of Declaration of Shun.

In addition, in order to in good faith comply with the Court's Order, on August 19, 2004, HSBC's Hong Kong counsel Johnson Stokes and Master emailed Mr. Fang a letter requesting the names and details of his family members and business entities so that HSBC could provide such documents to Plaintiffs. *See*, Exhibit MMS-1 attached to the Declaration of Shun. In addition, HSBC's Hong Kong counsel requested Mr. Fang and his family members to consent just to HSBC to disclose the requested information and documents to Plaintiffs. *Id*. HSBC's Hong Kong counsel also faxed the letter to Mr. Fang's Guam counsel at McCully & Beggs, P.C. On August 24, 2004, Mr. Fang by an email to HSBC's Hong Kong counsel, Anita W.C. Lam, objected to the release of any of his bank information. *See*, Exhibit "MMS-2," attached to the Declaration of Shun. On the same date, Mr. Fang, through his Guam counsel, forwarded a letter to HSBC's Hong Kong counsel, Anita W.C. Lam, refusing to provide any detailed information relating to his family members and refused to consent to the disclosure of any information. *Id*.

Based on the above circumstances, HSBC is unable to comply with the Court's Order despite its best efforts and in good faith to comply. It is manifestly unjust to force a party to produce documents related to the parties family members, none of which was identified by name or any form of identification number. As pointed out by the Declaration of Shun, that is a major obstacle in engaging in a search where the party's surname may be a very common surname. Notwithstanding the above, should HSBC produce the documents relating to the purported

11

"Joseph K. Fang" HSBC would be subject to civil and potential criminal liability under Hong Kong law which will be further discussed in this Motion.

## III

### HONG KONG'S CASE LAW AND STATUTE PROHIBITS THE DISCLOSURE OF THE DOCUMENTS REQUESTED BY PLAINTIFFS' REQUESTS 1 THROUGH 7.

On September 14, 2004, HSBC's Guam counsel received an advisory opinion from Brian Gilchrist ("Gilchrist"), a Hong Kong Solicitor with the firm of Johnson Stokes and Master, which represents HSBC in Hong Kong. Relying on one English case and the Personal Data (Privacy) Ordinance, Chapter 486 of the Laws of Hong Kong, Gilchrist advised that Hong Kong law establishes an account holder's right to the preservation of the secrecy of their banking records. In the first case, *Tournier v. National Provincial and Union Bank of England*, 1 K.B. 461 (1924), the Court of Appeals in England held that the bank has a general duty of secrecy arising as an implied term of the contract within the bank and its customer and this duty continues even after the account is closed or the relationship between the bank and the customer concludes. There are, however, at least four exceptions to this general rule: (1) whether there is independent duty to the public to disclose; (2) where the customer expressly or impliedly consents to disclosure; (3) where the interests of the bank require disclosure; and (4) where disclosure is under compulsion of the law. *Id*. at p. 473.

In addition, counsel for HSBC in Hong Kong stated that the PDPO Ordinance of Hong Kong restricts a disclosure of information requested in Plaintiffs' Requests 1 through 7. *See*, Exhibit BWG-1 attached to the Declaration of Gilchrist.

12

Hong Kong's admitted interest in secrecy must be balanced against the interests of the United States and the Plaintiffs in obtaining the information. In *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, ("Societe Internationale")*, 357 U.S. 197, 78 S.Ct. 1087 (1958), the Supreme Court confronted a similar issue, albeit not factually on point. In that case, the petitioner, a Swiss company, objected to discovery requests on the grounds that producing Swiss bank records would violate Swiss law. The Swiss Federal Attorney had issued an order prohibiting their disclosure. The district court expressly concluded that the Swiss company acted in good faith in seeking to comply, and the company did disclose some documents during discovery. The Supreme Court held that the company had failed to comply with the order, *Id.* at 208, 78 S.Ct. at 1094, but concluded that the sanction of dismissal of its complaint was inappropriate. It reached this conclusion because "petitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control. It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction. . . ." *Id.* at 211, 78 S.Ct. at 1095.

Cases since Societe Internationale, however, have emphasized that a foreign-law prohibition will not always excuse compliance with a discovery order. *See, Societe Nationale Industrielle Aerospatiale v. United States District Court, ("Aerospatiale")*, 482 U.S. 522, 544 n.29, 107 S.Ct. 2542, 2556 n. 29 (1987).

Instead, *Aerospatiale* endorsed the balancing test contained in the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 442(1)(c). Under that test, factors that are relevant in deciding whether or not foreign statutes excuse noncompliance with discovery orders include:

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* 482 U.S. at 544 n. 28, 107 S.Ct. at 2556 n. 28. As the Court noted, this list of factors is not exhaustive. Other factors that have considered relevant are " 'the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.' " *U.S. v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981), (quoting the RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW § 40). HSBC will consider each factor in turn:

### *Importance of the Documents.*

Where the outcome of litigation "does not stand or fall on the present discovery order," or where the evidence sought is cumulative of the existing evidence, Courts have generally been unwilling to override foreign secrecy laws. *See, In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 562 F.2d 992, 999 (10th Cir. 1977). For the limited purpose of this Motion, HSBC will not reargue the relevancy arguments under FRCP 26(b) which was previously raised in HSBC's Objections to the Magistrate Judge Order Compelling Production since the Court found that Requests 1 through 7 were relevant. However, in the instant case, the evidence being sought is cumulative.

14

First, HSBC has produced all of Joseph K. Fang and his wife's credit facilities with the HSBC Guam branch. *See*, Responses 1 through 7 of HSBC's Second Supplemental Objections and Responses to Plaintiffs' Third Set of Requests for Production of Documents which is attached to the Declaration of Jacques G. Bronze as Exhibit "2." Moreover, in the deposition, noticed by Plaintiffs and taken on May 7, 2004, Joseph K. Fang testified that the purchase of Plaintiffs' loan was an arms-length transaction. *See*, Declaration of Joseph K. Fang attached as Exhibit "2" to the Declaration of Jacques G. Bronze filed with this Court on May 11, 2004. Mr. Fang testified that he even had to increase his purchase price by $500,000.00 due to competing bidders. *Id*. Mr. Fang further testified that Paradise Marine Corporation ("PMC"), the acquisition entity of Plaintiffs' loan, did not receive any financing from HSBC in acquiring the loan. *Id*. He testified that the monies used to purchase Plaintiffs' loan came from the sale of a building in early 2003 located in Anchorage, Alaska. *Id*. The sale proceeds were deposited in a Wells Fargo account in Alaska, and prior to closing of Plaintiffs' loan on August 11, 2003, Mr. Fang testified that $4M was wired from the Wells Fargo account to HSBC USA, San Francisco branch, a part of which was used to pay HSBC for the loan. *Id*. Mr. Fang's testimony certainly supports HSBC's contention that Requests 1 through 7 as it applies to any Fang documents in Hong Kong are cumulative.

The Fang Requests 1 through 7, as it applies to documents in Hong Kong, are nothing more than a fishing expedition to harass the Fangs' since they do not support any theory of Plaintiffs' case.

Notwithstanding the above, even assuming arguendo, that HSBC financed the acquisition of Plaintiffs' loan for Mr. Fang, such is not sufficient to establish tortious breach of covenant of

15

good faith and fair dealing. For example in *ADT Operations Inc. v. Chase Manhattan Bank*, 662 N.Y.S.2d 190, 191,197 (Supp. 1997), the Supreme Court of New York County dismissed ADT's third cause of action for tortious breach of the covenant of good faith and fair dealing even based on the fact that Chase Manhattan agreed to finance a hostile takeover for another company against ADT, which had a $500 million loan facility with Chase.[7] In the instant case, the lack of importance of the documents to the litigation does not weigh in favor of compelling disclosure.

### *Specificity of Request.*

A second consideration in evaluating a discovery request is how burdensome it would be to respond to that request. Generalized searches for information, disclosure of which is prohibited under foreign law, are discouraged. The U.S. Supreme Court in *Aerospatiale* held that "American Court should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or location of its operations, and for any sovereign interest expressed by a foreign state." *Aerospatiale, supra*, 482 U.S. at 546. As supported by the Declaration of Shun, and HSBC's Objections to the Magistrate Judge Order Compelling Production filed with this Court on June 4, 2004, Plaintiffs' failure to identify the names of Mr. Fang's family members, the name of any business entity of which Mr. Fang or any member of his family held any interest leaves HSBC to speculate and unable to comply with the Court Order. Moreover, Plaintiffs' Requests are very broad in time since it

---

[7] To imply a common law fiduciary duty of banks not to deal with competitors of their borrowers, or even just potential acquirers of those borrowers, could wreak havoc with the availability of funding for capital ventures ... Companies seeking to insulate themselves from takeovers, or even from ordinary competition, could simply arrange for a series of loans from most of the major banks, supplying those banks with the requisite non-public information. Under the rationale being urged by the Magistrate, the banks would thereby be foreclosed from financing competitors and potential acquirers of the borrowing firms. As the court in *American Medicorp, Inc. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 475 F. Supp. 5, (N.D. Ill. 1977), recognized, such a result "would tend to burden the free flow of bank financing and the ability which a bank now has to deal with customers who may have adverse interests to other customers."

16

seeks documents from January 1, 1999. Plaintiffs' counsel's failure to do her homework in identifying Mr. Fang's family members or corporate entities in Hong Kong weighs in favor of not compelling disclosure.

### *Location of Information and Parties.*

The fact that all the information to be disclosed (and also the family members of Mr. Fang) are located in Hong Kong weighs against disclosure, since those family members of Mr. Fang and the documents are subject to the laws of Hong Kong. *See*, *Reinsurance Company of America v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1281 (7th Cir. 1990); *Westinghouse*, *supra*, at p. 998. In the instant case, HSBC's has already provided Plaintiffs with all the documents relating to the Fangs' credit facilities with HSBC's Guam branch. This factor weighs against disclosure.

### *Alternative Means of Obtaining Information.*

If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law. cf. *In re Sealed Case*, 825 F.2d 494, 499 (D.C. Cir.) (reversing contempt sanction noting that it is "relevant to our conclusion that the grand jury is not left empty-handed by today's decision"), cert. den., 484 U.S. 963 (1987).

In the instant case, Plaintiffs can file a Subpoena Duces Tecum on Joseph K. Fang and his wife, Maria C. Fang, who resides in San Francisco, California. In relation to the family members who resides in Hong Kong, Plaintiffs can seek the issuance of Letters Rogatory or use the Hague Convention which Hong Kong is a signatory member, to obtain production of these requested documents. Another alternative would be for Plaintiffs to subpoena information from sources in the United States, which may have dealt with Joseph K. Fang and Maria C. Fang who

17

might have such financial information. The presence of other sources of information for Plaintiffs to obtain for information sought under Requests 1 through 7 is a factor, which weighs strongly in favor of not compelling disclosure.

### *The Balance of National Interests.*

The Court must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would "affect important substantive policies or interests" of either the U.S. or Hong Kong. RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW, § 442, COMMENT C. In evaluating the vital national interests of each of the states, a Court must consider the degree of difference in law or policy and the nationality of the parties affected. *See, Vetco, supra,* at p. 1289 quoting *Timberlane Lumber Company v. Bank of America,* 549 F.2d 597, 614 and nn. 32-33 (9th Cir. 1976).

Moreover, it is important to distinguish between actions brought by the United States Government, such as the one in *Vetco* and private suits, like in the instant case. Like the Ninth Circuit Court of Appeals indicated in the *Timberlane Lumber Company* case, in the latter situation, "there is no opportunity for the executive branch to weigh the foreign relations impact, nor any statement implicit in the filing of the suit that that consideration has been outweighed." *Id.* at p. 613 (footnote omitted). Unlike the instant case, there is a strong U.S. interest in collecting taxes from its citizens and prosecuting tax fraud against its own nationals or U.S. companies operating through foreign subsidiaries. cf., *Vetco* at p. 1289. The Court in *Vetco* recognized that Switzerland had an interest in preserving secrecy of business records, however the Court found that such interest was diminished when the parties are subsidiaries of an American corporation. *Id.* at p. 1289 (citations omitted). Moreover, in the instant case, most, if

18

not all, of the relatives of Mr. Joseph K. Fang and his wife are not U.S. citizens. *See*, Declaration of Jacques G. Bronze.

As the Ninth Circuit previously recognized, in balancing sovereign interest the court is "necessarily interested in the depth and nature of [the foreign sovereign's] interest." *See*, *Timberlane Lumber Company*, *supra*, at p. 607.

Hong Kong has underscored its interest in bank secrecy by enacting the Personal Data (Privacy) Ordinance ("PDPO"), to protect the privacy of an individual in relation to personal data such personal bank information. *See*, pp. 4-5 of Exhibit "BWG-1" of the Declaration of Gilchrist. Moreover, should the Privacy Commissioner of Hong Kong serve an enforcement notice on HSBC, any contravention of that notice would lead to imprisonment up to two years under the PDPO. *See*, p. 6 of Exhibit "BWG-1" of the Declaration of Gilchrist. If HSBC is likely to face criminal prosecution in Hong Kong for complying with a United States District Court Order, that fact constitutes a "weighty excuse" for nonproduction. *See*, *Societe Internationale*, *supra*, 357 U.S. at 211. HSBC would be placed in an untenable legal quandary if it complies with this Court's August 10, 2004, Order. The hardship at hand for HSBC is not self-imposed or could be avoided. cf. *Vetco*, *supra*, at p. 1289-90 (hardship not a factor because it was "avoidable").

Although the United States' interest in vindicating rights of American plaintiffs may be substantial, these interests are not so strong that they would compel disclosure in all cases. *See*, *Reinsurance*, *supra*, at p. 1281 (Romanian interest in secrecy outweighs the United States' interest in forcing private judgments); *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2nd Cir. 1962) (where production of documents would violate Panama law, court modified

19

subpoena to exclude those documents); *U.S. v. First National Bank of Chicago*, 699 F.2d 341, 342 (7th Cir. 1983), (risks of criminal penalties under Greek banking laws led court not to order document production).

Taking all of the aforementioned factors into consideration, the balance weighs significantly in HSBC's favor. Although the United States has a strong interest in adjudicating the rights of American plaintiffs, Hong Kong has a strong interest in maintaining confidentiality of its bank customers. The information sought is not vital to the litigation of this case since it merely cumulative as argued on pages 14-15. HSBC has no option open to it which would not violate either United States nor Hong Kong law, thus, HSBC should be excused from compliance with this Court's Discovery Order.

## CONCLUSION

For the foregoing reasons, HSBC requests this Court to enter an Order vacating the August 10, 2004, Order.

*Respectfully submitted* this ___4___ day of October 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By: _____
    **JACQUES G. BRONZE**
    *Attorneys for Hongkong and Shanghai*
    *Banking Corporation, Ltd.*

20