**JACQUES G. BRONZE, ESQ.**
LAW OFFICES OF BRONZE & TANG
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

**RICHARD A. PIPES, ESQ.**
LAW OFFICES OF RICHARD A. PIPES
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001

FILED
DISTRICT COURT OF GUAM

OCT - 5 2004

MARY L. M. MORAN
CLERK OF COURT

314

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>　　　　　Defendants. | CIVIL CASE NO. 03-00036<br><br><br><br>**DECLARATION OF JACQUES G. BRONZE IN SUPPORT OF HONGKONG AND SHANGHAI BANKING CORPORATION, LTD'S MOTION TO RECONSIDER ORDER DATED AUGUST 10, 2004** |

**I, JACQUES G. BRONZE,** hereby declare and state as follows:

1.　　All matters herein are based on my own personal knowledge.

2.　　I am over 18 years of age, and legally competent to testify to the facts below and I do so based upon my own personal knowledge.



3.  I am the co-counsel of record for Hongkong and Shanghai Banking Corporation, Ltd., ("HSBC"), in the above-entitled matter.

4.  On August 13, 2004, I faxed a letter to HSBC's Hongkong Counsel, the firm of Johnson, Stokes & Master, requesting compliance with the August 10, 2004 Order. A true and correct copy of the faxed letter is attached hereto as Exhibit "1."

5.  Attached as Exhibit "2" is a true and correct copy of Plaintiffs' Third Requests for Production of Documents.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**EXECUTED** on this 5th day of October 2004.

_____
JACQUES G. BRONZE

# EXHIBIT "1"

LAW OFFICES

# BRONZE & TANG
A PROFESSIONAL CORPORATION
BANKPACIFIC BUILDING, 2ND FLOOR
825 SOUTH MARINE CORP DRIVE
TAMUNING, GUAM 96913

JACQUES G. BRONZE
JERRY J. TANG

TELEPHONE: (671) 646-2001
TELECOPIER: (671) 647-7671

August 13, 2004

**VIA: FACSIMILE**
**011-852-2103-5158**

Brian Gilchrist, Esq.
Anita Lam, Esq.
**JOHNSON STOKES & MASTER**
Hong Kong

Re: *Complying with the United States District Court of Guam Order dated August 10, 2004*

Dear All:

Since you are counsel for HongKong and Shanghai Banking Corporation, Ltd., ("HSBC") in Hong Kong, I have been requested to formally request production of certain documents in compliance with the United States District Court of Guam Order dated August 10, 2004. A true and correct copy of that Order is attached to this letter.

As you well know, a former borrower of HSBC, K Sadhwani's Inc., filed a Complaint against HSBC which is a subject of Civil Case No. 03-00036 which is pending before the United States District Court of Guam. On or about March 8, 2004, Plaintiffs served HSBC with its Third Set of Request for Production of Documents. A true and correct copy of the Request for Production of Documents is attached to this letter. Specifically, document request at issue is numbered 1 through 7. Briefly, they include request for credit facilities with HSBC in Hong Kong and Guam held in the name of: (a) Joe Fang himself; (b) Joe Fang's family, i.e., wife, children, siblings or parents; (c) companies in which Joe Fang has "any" ownership interest; (d) companies in which any Joe Fang's family member has "any" ownership interest; (e) companies in which Joe Fang is an officer/director; and (f) companies in which any Joe Fang's family member is an officer/director.

HSBC objected to Plaintiffs' Request for Production of Document on various grounds, but Plaintiffs filed a Motion to Compel which resulted in an Order dated May 27, 2004, which essentially granted the Plaintiffs' Requests 1 through 7. A true and correct copy of the May 27, 2004, Order is attached to this letter. Within ten (10) days of the May 27, 2004, Order, HSBC appealed the Magistrate's

**EXHIBIT "1"**

ruling to a Designated District Judge and the matter was heard on June 29, 2004. On August 10, 2004, the Court essentially affirmed the Magistrate Judge's Order. Thus, HSBC is obligated to comply with Plaintiffs' Requests 1 through 7.

HSBC has no automatic right to appeal the August 10, 2004, Order. Please provide my office with all the pertinent documents relating to Requests 1 through 7 found in Plaintiffs' Third Set of Request for Production of Documents, assuming any such document exists in Hong Kong, no later than August 19, 2004.

Please feel free to contact me if you have any questions regarding the above matter.

Best regards,

JACQUES G. BRONZE

Enclosures     *As stated above

cc:     Mr. C. Underwood (w/out enclosures)

JGB tc

D:\CLIENTS FILE\HSBC-Sadhwani\Ltrs\B.Gilchrist & A.Lam-Ltr 58 (Ord. 8-10-04).doc

```
Transmission  Report
```

This document was confirmed.
    (reduced sample and details below)
  Document Size   Letter-S

LAW OFFICES
### BRONZE & TANG
A PROFESSIONAL CORPORATION
BANKPACIFIC BUILDING, 2ND FLOOR
825 SOUTH MARINE CORP DRIVE
TAMUNING, GUAM 96913

Telephone No.: (671) 646-2001                    Facsimile No.: (671) 647-7671

### ~ ~ FACSIMILE TRANSMITTAL SHEET ~ ~

*Date:*      August 13, 2004

*To:*        Brian Gilchrist, Esq.
             JOHNSON STOKES & MASTER

*To:*        Anita Lam
             JOHNSON STOKES & MASTER

*Fax No:*    011-852-2103-5158

*From:*      Jacques G. Bronze, Esq.

*Subject:*   *Sadhwani, et al. v. HSBC, et al.; Civil Case No. 03-00036*

             Sending ___26___ page(s) including cover sheet.

[X] Original will not follow          [] Original will follow by:
                                      Regular Mail: ____ Other: DHL Express

| MESSAGE: |
| --- |
| PLEASE SEE ATTACHED DOCUMENT(S) IN CONNECTION WITH THE ABOVE-REFERENCED MATTER: |
| Letter of even date (w/enclosures) for your information and files. |
| **Fax Sent By:** tony camacho |

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE AND THE DOCUMENTS WHICH ACCOMPANY IT ARE CONFIDENTIAL COMMUNICATIONS SUBJECT TO THE ATTORNEY-CLIENT WORK PRODUCT PRIVILEGES. They are intended exclusively for the use of the addressee named above. If you are not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication or the accompanying document is strictly prohibited. If you have received this communication in error, please immediately notify the Law Offices of Bronze & Tang, P.C. by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

```
Total Pages Scanned   : 26' Total Pages Confirmed : 26'
```

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 084 | 01185221035158 | 8-13-04; 5:58PM | 11'55" | 26/ 26 | EC | | CP 14400 |

```
* Notes **
C: Error Correct      RE: Resend            PD: Polled by Remote      MB: Receive to Mailbox
C: Broadcast Send     MP: Multi-Poll        PG: Polling a Remote      PI: Power interruption
P: Completed          RM: Receive to Memory DR: Document Removed      TM: Terminated by user
S: Local Scan         LP: Local Print       FO: Forced Output         WT: Waiting Transfer
```

```
Transmission  Report
```

This document was confirmed.
   (reduced sample and details below)
Document Size  Letter-S

LAW OFFICES
**BRONZE & TANG**
A PROFESSIONAL CORPORATION
BANK-PACIFIC BUILDING, 2ⁿᵈ FLOOR
825 SOUTH MARINE CORP DRIVE
TAMUNING, GUAM 96913

Telephone No : (671) 646-2001                    Facsimile No : (671) 647-7671

~ ~ FACSIMILE TRANSMITTAL SHEET ~ ~

Date:       August 13, 2004

To:         Brian Gilchrist, Esq.
            JOHNSON STOKES & MASTER

To:         Anita Lam
            JOHNSON STOKES & MASTER

Fax No:     011-852-2103-5158

From:       Jacques G. Bronze, Esq.

Subject:    *Sadhwani, et al. v. HSBC, et al.; Civil Case No. 03-00036*

            Sending __26__ page(s) including cover sheet.

[X] Original will not follow          [ ] Original will follow by:
                                          Regular Mail: ____ Other: DHL Express

**MESSAGE:**

PLEASE SEE ATTACHED DOCUMENT(S) IN CONNECTION WITH THE ABOVE-REFERENCED MATTER:

Letter of even date (w/enclosures) for your information and files.

**Fax Sent By:  tony camacho**

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE AND THE DOCUMENTS WHICH ACCOMPANY IT ARE CONFIDENTIAL...

| Total Pages Scanned | : 26' Total Pages Confirmed : 26' |
```

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 036 | 01185221035158 | 8-13-04; 6:11PM | 12'48" | 26/ 26 | EC | | CP 14400 |

```
* Notes **
C: Error Correct        RE: Resend            PD: Polled by Remote      MB: Receive to Mailbox
C: Broadcast Send       MP: Multi-Poll        PG: Polling a Remote      PI: Power Interruption
P: Completed            RM: Receive to Memory  DR: Document Removed      TM: Terminated by user
S: Local Scan           LP: Local Print       FO: Forced Output         WT: Waiting Transfer
```

LAW OFFICES
# BRONZE & TANG
A PROFESSIONAL CORPORATION
BANKPACIFIC BUILDING, 2ᴿᴰ FLOOR
825 SOUTH MARINE CORP DRIVE
TAMUNING, GUAM 96913

TELEPHONE NO.: (671) 646-2001                    FACSIMILE NO.: (671) 647-7671

## ~  ~  FACSIMILE TRANSMITTAL SHEET  ~  ~

*Date*:        August 13, 2004

*To*:        Brian Gilchrist, Esq.        **CONFIRMED**
            **JOHNSON STOKES & MASTER**

*To*:        Anita Lam
            **JOHNSON STOKES & MASTER**

*Fax No*:      011-852-2103-5158

*From*:      Jacques G. Bronze, Esq.

*Subject*:    ***Sadhwani, et al. v. HSBC, et al.; Civil Case No. 03-00036***

Sending ___26___ page(s) including cover sheet.

[X] **Original will not follow**        [ ] **Original will follow by:**
                                    Regular Mail: _____    **Other: DHL Express**

---

### MESSAGE:

**PLEASE SEE ATTACHED DOCUMENT(S) IN CONNECTION WITH THE ABOVE-REFERENCED MATTER:**

Letter of even date (w/enclosures) for your information and files.

---

**Fax Sent By:  tony camacho**

---

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE AND THE DOCUMENTS WHICH ACCOMPANY IT ARE CONFIDENTIAL COMMUNICATIONS SUBJECT TO THE ATTORNEY-CLIENT WORK PRODUCT PRIVILEGES. They are intended exclusively for the use of the addressee named above. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication or the accompanying document is strictly prohibited. If you have received this communication in error, please immediately notify the Law Offices of Bronze & Tang, P.C. by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

FILED
DISTRICT COURT OF GUAM

AUG 10 2004

MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

ALAN SADHWANI *et al.*,

    Plaintiffs,

    vs.

HONGKONG AND SHANGHAI
BANKING CORP., LTD., *et al.*,

    Defendants.

Civil Case No. 03-00036

ORDER

Defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC") has filed Objections to Magistrate Judge's Order Compelling Production. On June 29, 2004, this Court heard oral argument from counsel regarding the matter. Present at the hearing was Attorney Anita P. Arriola for the Plaintiffs and Attorney Jacques A. Bronze appeared on behalf of the defendant HSBC. At the conclusion of the hearing, the Court took the motion under advisement. For the reasons set forth below the Court overrules HSBC's objections.

**Background**

**A. Factual Background**

For more than 25 years, Plaintiffs Alan Sadhwani, Laju Sadhwani and K. Sadhwani's, Inc. (the "Plaintiffs") had a banking relationship with HSBC. Throughout those years, the Plaintiffs virtually had an exclusive relationship with HSBC.

In 2002 HSBC decided to discontinue its operations on Guam. At the time the Plaintiffs had





BRONZE & TANG, P.C.
Date: 8x-11-04 - via court by
Time: 10:20a
Received:

1  an outstanding loan balance of over $6.8 million with HSBC. In November 2002, the parties entered

2  into a loan agreement entitled "Amendment to Credit Facility/Lease" with HSBC ("the Loan"),

3  secured by several valuable pieces of Guam real estate.

4        Thereafter, the Plaintiffs had difficulty making payments on the Loan. Thus, on or about

5  March 21, 2003, the parties entered into a loan workout agreement. Plaintiffs contend that pursuant

6  to the loan workout agreement, Plaintiffs would seek replacement financing and/or attempt to sell

7  some of their properties. The maturity date of the Note was extended to the end of August 2003.

8  On July 18, 2003, the Plaintiffs received from HSBC a "Notice of Intent to Sell Loan." Plaintiffs

9  allege that it came as a complete surprise to learn that HSBC had sold the Loan to a third-party non-

10  bank institution - Paradise Marine Corporation ("PMC").

11       **B. Procedural Background**

12       Thereafter, the Plaintiffs brought suit against HSBC and doe defendants in the Superior Court

13  of Guam asserting six (6) separate causes of action.[1] HSBC removed the action to this Court based

14  on diversity jurisdiction. Shortly thereafter, HSBC brought a Motion to Dismiss. In a written Order

15  filed April 9, 2004, the Court granted in part and denied in part the Motion to Dismiss. The Court

16  denied the Motion to Dismiss as to the First, Second, Fourth, and Fifth causes of action. However,

17  the Court granted the Motion to Dismiss as to the Third and Sixth causes of action, which were

18  dismissed without prejudice. The Court permitted the Plaintiffs to amend the Complaint to reassert

19  the dismissed causes of action.[2]

20

21

22       [1] The Complaint alleged the following causes of action:

23       1.   Breach of Covenant of Good Faith and Fair Dealing;
         2.   Intentional Misrepresentation;

24       3.   Breach of Contract: Promissory Note Modification Agreement;
         4.   Breach of Contract: Work out Agreement;

25       5.   Breach of Fiduciary Duty; and
         6.   Breach of Banking and Confidentiality Laws.

26
         [2] On April 27, 2004, the Plaintiffs filed their First Amended Complaint. On April 30, 2004, HSBC filed a

27  Motion to Strike the First Amended Complaint in Whole or in Part, or, in the alternative, to Dismiss the Third and Sixth
    Causes of Action. The Court granted the motion to dismiss with leave to Amend the Complaint. On June 2, 2004, the

28  plaintiffs filed a Second Amended Complaint for Damages.

- 2 -

On March 8, 2004, the Plaintiffs served their Third Set of Requests for Production of Documents ("Third Set of Requests") on HSBC. On April 2, 2004, HSBC served its Objections and Responses upon the Plaintiffs. HSBC did not produce a single document requested. On April 5, 2004, the Plaintiffs' counsel Anita Arriola telephoned HSBC's counsel Jacques Bronze and requested HSBC to provide the documents requested in the Third Set of Requests. See April 19, 2004, A. Arriola Decl. at ¶ 4, Docket No. 80. Mr. Bronze again refused to produce the documents. Id.

On April 19, 2004, the Plaintiffs filed a Motion to Compel. At issue were two classes of documents: Request Nos. 1 through 7 and Request Nos. 9 through 12.[3] Request Nos. 1 through 7[4] sought the production of all information and documents relating to any loan agreements, letters of credit, promissory notes, or other credit facilities extended by HSBC to Joseph K. Fang ("Mr. Fang");[5] Mr. Fang's family (comprising of his wife, children, siblings or parents); any business entity in which Mr. Fang or his family had any ownership interest; or any business entity in which Mr. Fang or a member of his family held a position of officer or director.[6] Request Nos. 9 through 12 sought information about other HSBC customers who may have benefitted from more favorable treatment than that received by the Plaintiffs.[7]

_____

[3] Apparently, the Plaintiffs no longer sought further responses to Requests Nos. 8 and 13.

[4] Requests Nos. 1 through 7 shall be referred to collectively as the "Fang Requests."

[5] Mr. Fang is the president of PMC, the company that purchased the Plaintiffs' Loan from HSBC.

[6] The Plaintiffs asserted that the Fang Requests sought to discover the means by which Mr. Fang acquired the funds to purchase the Plaintiffs' Loan from HSBC. Specifically, the Plaintiffs wanted to learn if Mr. Fang, any member of his family, or any entity associated with Mr. Fang or his family obtained any financial benefit or consideration from HSBC as a result of PMC's purchase of the Loan. The Plaintiffs argued that these matters were relevant to their claims for breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of the workout agreement; and breach of fiduciary duty (the First, Second, Fourth, and Fifth causes of action). For instance, if HSBC provided any funding, loans or other credit facilities to Mr. Fang or his family in order to purchase the Plaintiffs' Loan, the Plaintiffs maintained that such evidence would support its claim of bad faith and fair dealing.

[7] Specifically, Request Nos. 9 through 12 sought:

    9.  All documents concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by HSBC to parties other than PMC, from January 1, 2002 through the date of the request;

- 3 -

1    On May 27, 2004, the Magistrate Judge issued an Order granting in part the Plaintiffs'

2    motion and requiring HSBC to produce all documents and permit the Plaintiffs to inspect and to

3    copy the documents as requested in Request Nos. 1 through 7 and Request Nos. 9 through 12. On

4    June 3, 2004, HSBC filed an *Ex Parte* Application on Motion to Stay Order Granting, in Part,

5    Motion to Compel Pending Ruling by District Judge on HSBC's Objections. On June 7, 2004, the

6    Magistrate Judge Denied that motion.[8]

## Discussion

8    HSBC now objects to the Magistrate Judge's Order compelling discovery and seeks this

9    Court's review. Pursuant to 28 U.S.C. § 636(b)(1)(A) a magistrate judge is vested with jurisdiction

10   to consider pretrial discovery motions. Within ten days after the service on a party of a copy of any

11   order of a magistrate judge any party may serve and file a notice of motion for reconsideration by

12   the assigned judge on the ground that the order is clearly erroneous or contrary to law. See

13   Fed.R.Civ.P. 72(a). Broad discretion is presumed under this deferential standard of review, and a

14   party seeking to overturn a magistrate judge's discovery ruling bears a heavy burden. Com-Tech

15   Assocs. v. Computer Assocs. Int'l, Inc., 753 F.Supp. 1078, 1099 (E.D.N.Y.1990). Reversal based

16   upon an improper order denying or limiting discovery is "'unusual'." B.F. Goodrich v. Betkoski,

17   99 F.3d 505, 523 (2d Cir.1996) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L.

18   _____

19       10. All documents that address, refer to, relate to any discounts on loan balances extended by HSBC to
     any of its bank customers, other than Plaintiffs, from January 1, 2002 through the date of the request;

20       11. All documents that address, refer to, or relate to any "friendly foreclosures," as that term is used by
     HSBC between it and any of its bank customers, other than Plaintiffs, from January 1, 2002 through

21       the date of the request; and

         12. All documents that address, refer to, or relate to the refinancing of loan balances by any of your bank

22       customers, other than Plaintiffs, from January 1, 2002 through the date of the request.

23       The Plaintiffs maintained that information regarding how HSBC clients' loan balances were handled as a result

24   of HSBC's closure of its Guam office would aid in determining whether HSBC violated its covenant of good faith and
     fair dealing and breached its fiduciary duty to the Plaintiffs. For instance, if HSBC gave discounts on loan balances or

25   engaged in "friendly foreclosures," but failed to do so with the Plaintiffs, the Plaintiffs contended that such information
     would tend to prove that HSBC provided favorable terms or engaged in workout agreements with other customers but

26   reneged on its workout agreement with the Plaintiffs.

27       [8]On June 21, 2004, HSBC subsequently filed its objections to the Magistrate Judge's Order Denying HSBC's
     Motion to Stay Order Granting, in Part, Motion to Compel Pending Ruling By District Judge on HSBC's Objections;

28   Request for Oral Argument.

1  Marcus, Federal Practice and Procedure § 2006, at 92 (2d ed.1994)).  A discovery order is clearly

2  erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has

3  been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542 (U.S. 1948).

4       The 2000 Amendments to Fed. R. Civ. P. 26(b)(1)[9] created a two tier analysis of what is to

5  be disclosed. See Lugosch v. Congel, 218 F.R.D. 41, 45 (N.Y. 2003).  First, the parties may obtain

6  discovery regarding any non-privileged matter that is relevant to the claim or defense of any party.

7  Id.  If not relevant to a claim or defense, for good cause the court may order discovery of any matter

8  relevant to the subject matter involved in the action.  Id.  Upon review of the Magistrate Judge's

9  Order it is clear that he properly used the two tier analysis in determining whether to grant the

10  plaintiffs' Motion to Compel.

11       Under the first prong of Fed. R. Civ. P. 26(b)(1) the Magistrate Judge considered whether

12  the requested discovery was relevant to the claims or defenses of the parties.  Fed.R.Civ.P. 26(b)(1).

13  He found that the requested discovery was not directly relevant to the plaintiffs' claims.  However,

14  under the second prong, he found that the discovery was relevant to the subject matter in the action.

15  For example, the Magistrate Judge found that the "gravamen of the Plaintiffs' claims is that HSBC

16  breached its duty and the workout agreement by selling the Loan to PMC "for peanuts" during the

17  time when the Plaintiffs were still in the midst of obtaining alternate financing and selling its

18  commercial properties to pay off the Loan.  Thus, it is necessary to determine whether there was a

19  special relationship between Mr. Fang and HSBC which resulted in PMC getting a "sweetheart deal

20  as alleged by the Plaintiffs."  See May 27, 2004 Order, page 7.

21       HSBC argues the Magistrate Judge improperly focused on the Plaintiffs' first cause of action

22  for tortious breach of the covenant of good faith and fair dealing in his determination that the

---

[9]Presently, Rule 26(b)(1) reads as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant
> to the claim or defense of any party, including the existence, description, nature,
> custody, condition, and location of any books, documents, or other tangible things
> and the identity and location of persons having knowledge of any discoverable
> matter.  For good cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action.  Relevant information need not be admissible
> at the trial if the discovery appears reasonably calculated to lead to the discovery
> of admissible evidence.

requested discovery was relevant.[10]  HSBC suggests that that cause of action should not have survived its prior Motion to Dismiss.  HSBC asserts that the District Court had erroneously found that Guam law would recognize a claim of bad faith in the banking relationship.  See Order of April 9, 2004.  Therefore, any discovery related to that cause is improper.  However, this Court will not undertake reviewing what the prior District Court Judge ruled.  HSBC has not presented any new facts, nor does it reveal any manifest error of law in the District Court's prior ruling.  In re Agric. Research & Tech. Group, 916 F.2d 528, 542 (9th Cir. 1990) ("Motions for reconsideration may properly be denied where the motion fails to state new law or facts").  Because the cause of action was found to survive a motion to dismiss, the Magistrate Judge's ruling to produce related discovery was proper.

HSBC has failed to show how the Magistrate Judge's conclusions regarding the discovery is contrary to law or erroneous.  As noted by the commentary, the dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision - the good-cause standard warranting broader discovery is meant to be flexible." Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment; see also Sanyo Laser Products, Inc. v. Arista Records, Inc., 214 F.R.D. 469, 500 (S.D. Ind. 2003) (Although "the scope of discovery has narrowed somewhat under the revised rule [t]he change, while meaningful, is not dramatic, and broad discovery remains the norm.").  In this instance the Magistrate Judge found that documents concerning HSBC's relationships with the Fangs (Fang Requests) and other patrons (Requests 9-12) were relevant.  In opposition to HSBC's objections, the Plaintiff submitted several documents under seal pursuant to the protective order.  Upon review of these documents, the Court finds that they are indeed relevant to the "subject matter of the claims," if not to the very claims themselves.

HSBC also objected to the document production because they claim it would have been too burdensome.  Specifically, HSBC claimed that it would be required to inspect and copy 190 "bankers' boxes" consisting of 475,000 pages of documents.  However, Attorney Arriola states that

---

[10]HSBC requests this Court to review its Memorandum of Points and Authorities in Support of its Motion to Dismiss and its Reply Memorandum on December 30, 2003 and January 23, 2004, respectively.

- 6 -

on 4 business days (from June 4-June 9), Attorneys Pipes and Bronze appeared at the office of Plaintiffs' counsel to permit review of several boxes and allowed inspection and copies of over 1,000 pages of documents. On June 14 and 15, they produced over 4,000 pages of documents. See A. Arriola Decl. at ¶ 7. The Court finds that the hours spent in reviewing the documents and the numbers of documents produced are not unusual in a case of this type. Thus, this Court agrees with the Magistrate Judge's conclusion that the burden or expense of the proposed discovery did not outweigh its importance and benefit.

HSBC seems to suggest that it should not be required to produce documents bearing Mr. Fang's Cantonese name. However, HSBC should be able to produce all records and documents that concern Mr. Fang in either his Cantonese name or his English name. Accordingly, HSBC is required to produce all such responsive documents.

Lastly, HSBC takes issue with the fact that it must produce documents from any branch of HSBC USA Ltd. located in the United States. Under Rule 34, a party is required to produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control." In this instance, HSBC states that it has no control over the documents held by HSBC USA. Robert Rosenberg, the Vice President of HSBC USA, N.A. ("HSBC USA") stated that defendant HSBC, Ltd. and HSBC USA are two separate and distinct legal entities. See Declaration of Robert Rosenberg, at ¶ 7 and 8; Exhibit A attached thereto Declaration of Jacques G. Bronze, Docket No. 211. Neither HSBC, Ltd. nor HSBC USA has any control over the other or access to each other's records. Id. Given the declaration of Mr. Rosenberg and no evidence to suggest the relationship between the two entities is other than as stated in his declaration, the Court finds that HSBC cannot be compelled to produce such documents. However, to the extent HSBC has custody, possession or control over such documents in any of its branches or offices, regardless of their location, HSBC has an obligation to produce the relevant documents.

Finally on another matter, HSBC requests this Court to order the Plaintiffs to submit written arguments why expense shifting sanctions should not be assessed within five (5) days from this Court's reversing the Magistrate Judge. However, the Court finds this matter moot as this Court

1   affirms the Magistrate Judge's ruling.  Additionally, even if this Court was inclined to reverse the

2   Magistrate Judge's Order, sanctions would still not be warranted.  The Plaintiffs sought discovery

3   and was granted that right by the Magistrate Judge.  They should not be punished for doing so.

4          As an aside the Court is concerned by the contentious atmosphere in which discovery in this

5   case is being conducted and by the large number of pretrial motions filed.  HSBC seemingly has

6   used the filing of motions to stall the progress of this case.  In fact, the Magistrate Judge remarked

7   in his order of June 7, 2004 "[t]he Court further observes that the trial date is fast approaching, yet

8   HSBC has repeatedly delayed the discovery process by filing numerous motions which either seek

9   to stay discovery or which would have such an effect."  See Order of June 7, 2004.  The Court

10  cautions HSBC that such litigation tactics will not be tolerated.  HSBC is advised to show the

11  appropriate restraint in its subsequent filings.

12                              **Conclusion**

13         Upon consideration of the foregoing, the Court overrules HSBC's objections and affirms the

14  Magistrate Judge's Order of May 27, 2004 in its entirety.  This Court does not find the Magistrate

15  Judge's order either erroneous or contrary to law. As discussed above, said documents are directly

16  relevant to the subject matter if not to the very claims themselves.  In addition, on June 21, 2004,

17  HSBC filed its objections to the Magistrate's Order Denying HSBC's Motion to Stay Order

18  Granting, in Part, Motion to Compel Pending Ruling By District Judge on HSBC's Objections;

19  Request for Oral Argument.  Because this Court affirms the Magistrate   Judge's May 27, 2004

20  Order this matter is moot and the Court need not set this for hearing.

21         SO ORDERED this 10th day of August, 2004.

22

23

24                              FRANCES M. TYDINGCO-GATEWOOD
                                Designated District Judge
25

26

27

28

- 8 -

JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

**Counsel for Plaintiffs Alan Sadhwani, et al.**

IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, | ) CIVIL CASE NO. 03-00036 ) ) |
| Plaintiffs, | ) **PLAINTIFFS' THIRD SET OF** |
| | ) **REQUESTS FOR PRODUCTION OF** |
| vs. | ) **DOCUMENTS** ) |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X, | ) ) ) ) |
| Defendants. | ) ) |

> BRONZE & TANG, P.C.
> Date: 3/8/04
> Time: 4:00
> Received: ___

**TO: DEFENDANT HONGKONG SHANGHAI BANKING CORPORATION, LTD. AND ITS COUNSEL OF RECORD JACQUES A. BRONZE**

Plaintiffs Alan Sadhwani, et al. request that defendant produce and permit plaintiffs

to inspect and to copy each of the following documents.

The place of inspection shall be Arriola, Cowan & Arriola, 259 Martyr Street, Suite

201, Hagatna, Guam 96910. The date and time for inspection shall be April 7, 2004, at 9

a.m., and continuing so long as is reasonably required.

## DEFINITIONS

As used herein, the following definitions shall apply:

a.     YOU and YOUR means HongKong Shanghai Banking Corporation, Ltd. ("HSBC"), its predecessors, agents, employees, representatives, attorneys, officers, assistants, directors, and consultants, including any experts YOU expect to call as witnesses in this action.

b.     "DOCUMENTS" includes, but not to be limited to, handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any written, recorded, or graphic matter however produced or reproduced, including, but not limited to, electronic files, documents, records or data, documents stored in or retrievable by computer, memoranda, reports, studies, analyses, contracts, agreements, checks, charts, graphs, indices, data sheets, computer disks, data processing cards or tapes, notes, post-its, work papers, entries, letters, telegrams, telecopies (including facsimiles), internal memoranda, advertisements, brochures, circulars, catalogs, tapes, records, bulletins, papers, books, pamphlets, accounts, calendars, or diaries. The term"document" or "documents" shall also include any carbon or photographic or any other copies, reproductions, or facsimiles or any original, and shall mean the original an any copy or reproduction or facsimile that is in any way different from the original.

-2-

c.    "Plaintiffs' Loan" means Installment Loan No. 10003-361, with HSBC as Lender and the plaintiffs as Borrower/Guarantors.

d.    "PMC" means Paradise Marine Corporation.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

The documents to be produced are:

1.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to Joseph K. Fang from January 1, 1999 through the date of this request.

2.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any member of Joseph K. Fang's family (wife, children, siblings or parents) from January 1, 1999 through the date of this request.

3.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which Joseph K. Fang has any ownership interest, from January 1, 1999 through the date of this request.

4.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which any member of Joseph K. Fang's family (wife, children, siblings or parents) has any ownership

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-3-

interest, from January 1, 1999 through the date of this request.

5. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to PMC from January 1, 1999 through the date of this request.

6 All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which Joseph K. Fang is an officer or director, from January 1, 1999 through the date of this request.

7 All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which any member of Joseph K. Fang's family (wife, children, siblings or parents) is an officer or director, from January 1, 1999 through the date of this request.

8. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by YOU to PMC from January 1, 2002 through the date of this request

9. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by YOU to parties other than

-4-

PMC, from January 1, 2002 through the date of this request.

10. All DOCUMENTS that address, refer to, or relate to any discounts on loan balances extended by YOU to any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

11. All DOCUMENTS that address, refer to, or relate to any "friendly foreclosures", as that term is used by YOU in Exhibit G attached to Plaintiffs' Complaint, between YOU and any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

12. All DOCUMENTS that address, refer to, or relate to the refinancing of loan balances by any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

13. All DOCUMENTS concerning, relating to, or comprising communications between YOU and any bank, savings and loan, or financial institution regarding the sale, transfer or assignment of Plaintiffs' Loan, from January 1, 2000 through August 11, 2003.

Dated: March 8, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: _Anita P. Arriola_

**ANITA P. ARRIOLA**

BRONZE & TANG
Date: 5/08/04
Time: 10:48 am
Received: OVS

FILED
DISTRICT COURT OF GUAM

MAY 27 2004

MARY L. M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| ALAN SADHWANI *et al.*, | Civil Case No. 03-00036 |
| Plaintiffs, | |
| vs. | |
| HONGKONG AND SHANGHAI BANKING CORP., LTD., *et al.*, | ORDER |
| Defendants. | |

Pursuant to the authority granted by General Orders 04-00016 and 04-00017,[1] on May 18, 2004, this Court heard oral argument from counsel regarding the Plaintiffs' Motion to Compel Answers to Third Set of Requests for Production of Documents and for Sanctions (the "Motion to Compel"). Present at the hearing was Attorney Joaquin C. Arriola for the Plaintiffs. Attorney Jacques A. Bronze appeared on behalf of the defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC"). At the conclusion of the hearing, the Court took the motion under advisement. The Court now issues this written Order setting forth the bases for its rulings herein.

## I. Background

### A. Factual Background

The Plaintiffs Alan Sadhwani, Laju Sadhwani and K. Sadhwani's, Inc. (collectively the



---

[1] While the Court exercises its jurisdiction over this matter pursuant to the above-cited General Orders, the Court recognizes that there may be instances wherein its authority is broader than that conferred by the General Orders.

"Plaintiffs") allege that they had a long-term banking relationship with HSBC which spanned over 25 years. (Complaint[2] at ¶5.) In September 2002, the Plaintiffs had an outstanding loan balance of over $6.8 million with HSBC (the "Loan"). The Loan was secured by several pieces of Guam real estate.

Sometime in early 2002, HSBC determined it would soon discontinue its operations in Guam. On March 5, 2003, the parties entered into a Promissory Note Modification Agreement (Complaint at ¶8, Exh. C thereto), which extended the maturity date of the note to August 31, 2003.

The Plaintiffs assert that when they had difficulty making payments on the Loan, the parties entered into a loan workout agreement. (Complaint at ¶12, Exh. G thereto) The Plaintiffs contend that pursuant to that loan workout agreement, the Plaintiffs sought replacement financing and attempted to sell some of their properties. The Plaintiffs allege that notwithstanding the loan workout agreement, HSBC sold the Loan to a non-bank, Paradise Marine Corporation ("PMC") on June 25, 2003.

B.    Procedural History

On October 21, 2003, the Plaintiffs brought suit against HSBC and doe defendants in the Superior Court of Guam. The original Complaint asserted six (6) separate causes of action.[3] On November 5, 2003, HSBC removed the action to this Court based on diversity jurisdiction.

On December 30, 2003, HSBC filed a Motion to Dismiss the Complaint. In a written Order filed April 9, 2004, the district judge granted in part and denied in part the Motion to Dismiss. The district judge denied the Motion to Dismiss as to the First, Second, Fourth, and

---

[2]  The Complaint is attached as Exhibit B to the Notice of Removal of Action, Docket Number 1 (November 5, 2003).

[3]  The Complaint alleged the following causes of action:

I.      Breach of Covenant of Good Faith and Fair Dealing;
II.     Intentional Misrepresentation;
III.    Breach of Contract: Promissory Note Modification Agreement;
IV.     Breach of Contract: Work out Agreement;
V.      Breach of Fiduciary Duty; and
VI.     Breach of Banking and Confidentiality Laws.

- 2 -

1　Fifth causes of action. However, the Third and Sixth causes of action were dismissed without

2　prejudice. The district judge permitted the Plaintiffs to amend the Complaint to re-assert the

3　dismissed causes of action.[4]

4　　　　On March 8, 2004, the Plaintiffs served their Third Set of Requests for Production of

5　Documents ("Third Set of Requests") on HSBC. (A. Arriola Decl. at ¶2, Exh. 1 thereto)  On

6　April 2, 2004, HSBC served its Objections and Responses upon the Plaintiffs. (Id. at ¶3, Exh. 2

7　thereto)  HSBC did not produce a single document requested. (Id.)

8　　　　On April 5, 2004, the Plaintiffs' counsel Anita Arriola telephoned HSBC's counsel

9　Jacques Bronze and requested HSBC to provide the documents requested in the Third Set of

10　Requests. (Id. at ¶4) Mr. Bronze again refused to produce the documents. (Id.)

11　　　　On April 6, 2004, Ms. Arriola then wrote to HSBC's counsel to confirm the previous

12　day's conversation. (Id. at ¶5, Exh. 3 thereto) On April 9, 2004, HSBC's other counsel Richard

13　Pipes responded to Ms. Arriola's letter since Mr. Bronze was off-island. (Id., Exh. 4 thereto)

14　Mr. Pipes reiterated that HSBC had not changed its position with respect to the Third Set of

15　Requests. (Id.)

16　　　　On April 12, 2004, Ms. Arriola again wrote to Mr. Pipes to advise HSBC that the

17　Plaintiffs intended to file a motion to compel. (Id. at ¶6, Exh. 5 thereto) On April 14, 2004,

18　counsel met to discuss the discovery dispute as required by Local Rule LR 37.1(a). The parties

19　were unable to resolve the dispute. (Id. at ¶7)

20　　　　Thus, on April 19, 2004, the Plaintiffs filed the instant Motion to Compel. HSBC filed

21　its Opposition Brief on May 11, 2004. The Plaintiffs filed a Reply Brief on May 14, 2004.

22　**II.　　Discussion**

23　　　　A.　　Local Rules of Practice

24　　　　HSBC contends that the Motion to Compel should be stricken because the Plaintiffs'

25　failed to comply with Local Rule LR 37.1(b) of the Local Rules of Practice for the District court

26

---

27　　　[4] On April 27, 2004, the Plaintiffs filed their First Amended Complaint.  On April 30, 2004, HSBC filed a
Motion to Strike the First Amended Complaint in Whole or in Part, or, in the alternative, to Dismiss the Third and Sixth
28　Causes of Action.  Said motion is set to be heard on June 28, 2004 by Judge Dean D. Pregerson.

- 3 -

1  of Guam. Local Rule LR 37.1(b) requires the parties, in the event they are unable to settle their

2  differences regarding a discovery dispute, to formulate a written stipulation specifying separately

3  and with particularity each issue that remains to be determined at a hearing. Said stipulation is

4  required to be filed with the motion.

5       In this instance, the required stipulation was filed a mere two (2) days following the filing

6  of the Motion to Compel. The Plaintiffs maintain that such failure was inadvertent and not a

7  willful or intentional violation of the Local Rules. As HSBC fails to show how it was prejudiced

8  by the Plaintiffs' two-day delay in filing the required stipulation, the Court excuses this as a

9  minor *faux pas*. The Court hereby denies HSBC's request to strike the Motion to Compel.

10       B.    Discovery Standard

11       The next issue is what standard should the Court apply to the Plaintiffs' discovery

12  requests. As noted by both parties, Fed. R. Civ. P. 26(b)(1) was amended in 2000. Presently,

13  Rule 26(b)(1) provides:

14       Parties may obtain discovery regarding any matter, not privileged, that is relevant
         to the claim or defense of any party, including the existence, description, nature,
15       custody, condition, and location of any books, documents, or other tangible things
         and the identity and location of persons having knowledge of any discoverable
16       matter. For good cause, the court may order discovery of any matter relevant to
         the subject matter involved in the action. Relevant information need not be
17       admissible at the trial if the discovery appears reasonably calculated to lead to the
         discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).
18

19       Thus, as noted by HSBC, there are two tiers to discovery. First, the parties may obtain

20  discovery regarding any non-privileged matter that is *relevant to the claim or defense of any*

21  *party*. Id. If not relevant to a claim or defense, *for good cause* the court may order discovery of

22  any matter *relevant to the subject matter involved in the action.* Id. Furthermore, because the

23  dividing line between information relevant to the claims and defenses and that relevant only to

24  the subject matter of the action cannot be defined with precision, "the good-cause standard

25  warranting broader discover is meant to be flexible." Fed. R. Civ. P. 26, Advisory Committee

26  Notes, 2000 Amendment.

27       B.    Analysis

28       The Plaintiffs' Third Set of Requests for sought the production of 13 categories of

- 4 -

1   documents. At issue here are two classes of documents: Request Nos. 1 through 7 and Request

2   Nos. 9 through 12.[5] Request Nos. 1 through 7[6] sought the production of all information and

3   documents relating to any loan agreements, letters of credit, promissory notes, or other credit

4   facilities extended by HSBC to Joseph K. Fang ("Mr. Fang");[7] Mr. Fang's family (comprising of

5   his wife, children, siblings or parents); any business entity in which Mr. Fang or his family had

6   any ownership interest; or any business entity in which Mr. Fang or a member of his family held

7   a position of officer or director. On the other hand, Request Nos. 9 through 12 sought

8   information about other HSBC customers who may have benefitted from more favorable

9   treatment than that received by the Plaintiffs.[8]

10          The Plaintiffs contend that the requested documents are directly relevant to their claims.[9]

11  HSBC, on the other hand, asserts that said documents are not relevant. Furthermore, even if the

12  information sought is relevant, HSBC maintains that it still should not be required to produce

13  them since the burden and expense of production outweigh their likely benefit, if any.

14                  1.      Request Nos. 1 through 7: Fang Requests

15          The Plaintiffs assert that the Fang Requests seek to discover the means by which Mr.

16  _____

17  [5] The Plaintiffs do not seek further responses to Requests Nos. 8 and 13 as HSBC has stated that it does not
    have documents responsive to those requests. See Motion to Compel at p. 7, footnote 2 and A. Arriola Decl., Exhibit

18  2 thereto.

19          [6] Requests Nos. 1 through 7 shall be referred to collectively as the "Fang Requests."

20          [7] Mr. Fang is the president of PMC, the company that purchased the Plaintiffs' Loan from HSBC. Mr. Fang's
    declaration is attached as Exhibit 2 to the Bronze Declaration (May 11, 2004).

21          [8] Specifically, Request Nos. 9 through 12 sought:

22          9.   All documents concerning, relating to, or comprising any loan agreements, letters of credit, promissory

23               notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned
                 by HSBC to parties other than PMC, from January 1, 2002 through the date of the request;

24          10.  All documents that address, refer to, relate to any discounts on loan balances extended by HSBC to
                 any of its bank customers, other than Plaintiffs, from January 1, 2002 through the date of the request;

25          11.  All documents that address, refer to, or relate to any "friendly foreclosures," as that term is used by
                 HSBC between it and any of its bank customers, other than Plaintiffs, from January 1, 2002 through

26               the date of the request; and

27          12.  All documents that address, refer to, or relate to the refinancing of loan balances by any of your bank
                 customers, other than Plaintiffs, from January 1, 2002 through the date of the request.

28          [9] HSBC argues that when analyzing the Plaintiffs' claims, the Court should focus on the First, Second, Fourth
    and Fifth causes of action in the original Complaint, and the Third and Sixth Causes of Action in the First Amended
    Complaint. See HSBC's Opposition Brief at p. 3, footnote 1.

                                        - 5 -

1   Fang acquired the funds to purchase the Plaintiffs' Loan from HSBC. Specifically, the Plaintiffs

2   want to know if Mr. Fang, any member of his family, or any entity associated with Mr. Fang or

3   his family obtained any financial benefit or consideration from HSBC as a result of PMC's

4   purchase of the Loan. The Plaintiffs contend that these matters are relevant to their claims for

5   breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of the

6   workout agreement; and breach of fiduciary duty (the First, Second, Fourth, and Fifth causes of

7   action).    For instance, if HSBC provided any funding, loans or other credit facilities to Mr. Fang

8   or his family in order to purchase the Plaintiffs' Loan, the Plaintiffs maintain that such evidence

9   would support its claim of bad faith and fair dealing.

10      HSBC, on the other hand, argues that none of the requested documents are relevant to the

11  Plaintiffs' claims. First, HSBC asserts that the requested documents are not relevant to the First

12  cause of action because the Court erroneously found that Guam law would recognize a claim for

13  bad faith in this commercial contract. What HSBC is actually attempting to do is re-litigate the

14  arguments raised in its Motion to Dismiss, which the Court denied on April 9, 2004. Thus, the

15  Court will disregard this argument in its entirety as it is not a proper objection to a discovery

16  request.

17      HSBC's further argues that production of the documents is not necessary since Mr. Fang

18  already testified that the purchase of the Plaintiffs' Loan involved the proceeds from the sale of

19  property Mr. Fang owned in Alaska and did not involve any financing from HSBC. (Fang Decl.

20  at ¶7) Furthermore, Mr. Fang's declaration provides that "[a]t the time of closing, none of my

21  companies, including PMC, nor I had any loans or credit facilities with HSBC Guam. All our

22  loan[s], as well as deposit accounts, with HSBC Guam had been closed as of July, 2002." (Id.

23  at ¶4)

24      HSBC again is mistaken. At the hearing, the Court asked HSBC's counsel point blank

25  whether Mr. Fang's deposition precluded further discovery in the areas to which he testified.

26  Attorney Bronze himself conceded that as long as the documents requested were relevant,

27  discovery would still be necessary to determine whether Mr. Fang testified truthfully.

28      In this instance, it is immaterial that Mr. Fang's deposition has concluded. Regardless of

- 6 -

1    the deposition, if the documents exist, the Plaintiffs want the documents produced, and they are

2    entitled to no less. The Plaintiffs should not have to merely rely on HSBC's representation that

3    Mr. Fang testified truthfully. Rather, the documents must be produced since they are necessary

4    to corroborate or refute the deposition testimony.

5            Finally, HSBC contends that the requested documents are not relevant to prove that it did

6    not have the absolute discretion and right to sell the Loan. HSBC, however, misses, the point as

7    the negotiability of the loan is irrelevant. However, HSBC's motives and intent in entering the

8    workout agreement and then purportedly breaching said agreement are relevant. HSBC's

9    motives and intent are directly relevant to the Plaintiffs' claims that HSBC had a duty to act

10   "reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the expectations of the

11   parties." Haroco v. American Nat'l Bank & Trust of Chicago, 38 F.3d 1429, 1436 (7th Cir.

12   1994).[10]

13           In this instance, the documents involved with the Fang Requests are not directly relevant

14   to the Plaintiffs' claims. The Court, however, finds that the requested documents are relevant to

15   the subject matter in this action. The gravamen of the Plaintiffs' claims is that HSBC breached

16   its duty and the workout agreement by selling the Loan to PMC "for peanuts" during the time

17   when the Plaintiffs were still in the midst of obtaining alternate financing and selling its

18   commercial properties to pay off the Loan. Thus, it is necessary to determine whether there was

19   a special relationship between Mr. Fang and HSBC which resulted in PMC getting a "sweetheart

20   deal" as alleged by the Plaintiffs.

21           Here, it is alleged that Mr. and Mrs. Fang "seemed very serious" about purchasing the

22   property after he had "inspect[ed] all three of the buildings." (Complaint at ¶13, Exh. H thereto)

23   However, rather than purchase the property from the Plaintiffs, Mr. Fang instead chose to

24   purchase the Plaintiffs' Loan outright. HSBC is in the business to make money. Yet, HSBC sold

25   the Loan to PMC for $2.75 million (Fang Decl. at ¶7), but would not accept an amount less than

26

27   [10] HSBC urges the Court to reject the Haroco case since it did not involve a cause of action for the tortious
     breach of the covenant of good faith. While not directly on point, the Court in Haroco did recognize that in setting a

28   prime rate estimate, "the common law duty of good faith and fair dealing requires that the bank exercise that discretion
     'reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the expectations of the parties.'" 38 F.3d at
     1436 (quoting First Nat'l Bank of Cicero v. Sylvester, 554 N.E.2d 1063, 1069(1st Dist. IL 1990)).

1  $3.5 million from the Plaintiffs. The Court also notes that Mr. Fang was a "management

2  employee of HSBC (Hong Kong) from about 1979 to 1989." (Id. at ¶6) Given these facts, an

3  inference may be drawn that there is some sort of "special relationship" between Mr. Fang and

4  HSBC. Accordingly, the Court concludes that the requested information is relevant to the

5  subject matter and further finds the existence of good cause to warrant the production of the

6  requested documents.

7          2.     Request Nos. 9 through 12

8      The Plaintiffs assert that Request Nos. 9 through 12 seek to discover documents relating

9  to any discounts, friendly foreclosures, or refinancing on loan balances extended by HSBC to its

10  customers, other than the Plaintiffs. The Plaintiffs maintain that information regarding how

11  HSBC clients' loan balances were handled as a result of HSBC's closure of its Guam office will

12  aid in determining whether HSBC violated its covenant of good faith and fair dealing and

13  breached its fiduciary duty to the Plaintiffs. For instance, if HSBC gave discounts on loan

14  balances or engaged in "friendly foreclosures," but failed to do so with the Plaintiffs, the

15  Plaintiffs contend that such information would tend to prove that HSBC provided favorable

16  terms or engaged in workout agreements with other customers but reneged on its workout

17  agreement with the Plaintiffs.

18      HSBC opposes the requests on the basis that the requested documents involve third

19  parties unrelated to the instant case and are thus irrelevant to any of the Plaintiffs' claims. HSBC

20  maintains that the Plaintiffs are "clearly engaging in a fishing expedition on matters unrelated to

21  the claims or defenses of the parties which is an abuse of the discovery process." Opposition

22  Brief at p. 10.

23      The Court disagrees with HSBC's assertion. Just as the Court concluded in the Fang

24  Requests, the information sought by Request Nos. 9 through 12 are relevant to the subject matter

25  in this action. Specifically, the requested information is relevant to HSBC's motives and intent

26  and may tend to prove whether HSBC acted arbitrarily and capriciously in selling the Plaintiffs'

27  Loan when it may have extended discounts or friendly foreclosures to other customers. As for

28  HSBC's objections relating to confidential or proprietary information, the parties have already

- 8 -

1  entered into a stipulated protective order to prevent further disclosure of certain bank records.

2  Thus, any concerns that this "sensitive" information will be released is premature and

3  speculative.

4         Finally, HSBC contends that even if the requested documents are relevant, pursuant to

5  Rule 26(b)(2)(iii) the Court may limit discovery if the burden or expense of the proposed

6  discovery outweighs its likely benefits.[11] Here, HSBC asserts that there are approximately 130

7  "banker boxes" of documents in Guam which constitute paid off loans and old records from

8  current loans." Additionally, there are about 60 "banker boxes" of files of current loans in

9  Guam. Each "banker box" contains about 2000-3000 pages of documents. Thus, HSBC

10 contends that its expense in money and time to review all the documents outweigh the Plaintiffs'

11 limited need for said documents.

12        The Court disagrees with HSBC's assertion that the information is too burdensome too

13 produce. In evaluating "the needs of the case, the amount in controversy, the parties' resources,

14 the importance of the issues at stake in the litigation, and the importance of the proposed

15 discovery in resolving the issues," the Court concludes that the burden or expense of the

16 proposed discovery does not outweigh its importance and benefit. The Court notes that the

17 requests are limited to those loans in existence in 2002 to the present – a mere eighteen (18)

18 months. Additionally, the Court will limit the request by excluding from production all non-

19 commercial loan agreements, promissory notes, letters of credit, or other credit facilities

20 involving only a mortgage on a single-family dwelling.[12] Moreover, the Court will further

21 confine the request by limiting it to loan agreements, promissory notes, letters of credit, or other

22 credit facilities assigned or extended by HSBC's Guam office. These reasonable restrictions will

23 mitigate any burden or expense associated with the production of the requested information.

24 ///

25

26     [11] The rule further provides that the Court should consider "the needs of the case, the amount in controversy,

27 the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

28     [12] To the extent that a mortgage on a single-family dwelling is encompassed in a larger commercial transaction, then said documents are not exempt from production.

- 9 -

## III.    Conclusion

The Court hereby GRANTS IN PART the Plaintiffs' Motion to Compel. Consistent with this Order, HSBC is directed to produce and permit the Plaintiffs to inspect and to copy the documents as requested in Request Nos. 1 through 7 and Request Nos. 9 through 12. The place of inspection shall be at the law offices of the Plaintiffs' counsel on June 4, 2004 at 9:00 a.m., and continuing so long as is reasonably required.

Additionally, the Court DENIES the Plaintiffs' request to impose sanctions upon HSBC. Because HSBC repeatedly refused to produce the requested documents, the Plaintiffs argued that HSBC should pay for the Plaintiffs' expenses, including attorney's fees, incurred in bringing this motion. The Court believes that HSBC's nondisclosure of the requested documents does not constitute sanctionable conduct. HSBC's objections to the production of the documents were based on its belief that the requested documents were not relevant to the claims or defenses. As the Court itself has concluded, the requests are relevant to the subject matter though not directly relevant to the claims and defenses of the parties. Accordingly, Court intervention was required prior to the production of the requested documents.

SO ORDERED this 27th day of May, 2004.

JOAQUIN V. E. MANIBUSAN, JR.
U.S. Magistrate Judge

Notice is hereby given that this document was entered on the docket on MAY 2 7 2004 . No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam

By: _____        MAY 2 7 2004
    Deputy Clerk              Date

- 10 -

# EXHIBIT "2"

**JOAQUIN C. ARRIOLA**
**ANITA P. ARRIOLA**
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

**Counsel for Plaintiffs Alan Sadhwani, et al.**

## IN THE UNITED STATES DISTRICT COURT OF GUAM

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>                Plaintiffs,<br><br>vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br><br>                Defendants. | CIVIL CASE NO. 03-00036<br><br>**PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

BRONZE & TANG, P.C.
Date: 3/8/04
Time: 4:00
Received:

**TO:** **DEFENDANT HONGKONG SHANGHAI BANKING CORPORATION, LTD. AND ITS COUNSEL OF RECORD JACQUES A. BRONZE**

Plaintiffs Alan Sadhwani, et al. request that defendant produce and permit plaintiffs

to inspect and to copy each of the following documents.

The place of inspection shall be Arriola, Cowan & Arriola, 259 Martyr Street, Suite

201, Hagatna, Guam 96910. The date and time for inspection shall be April 7, 2004, at 9

a.m., and continuing so long as is reasonably required.

**EXHIBIT** "2"

## DEFINITIONS

As used herein, the following definitions shall apply:

a.  YOU and YOUR means HongKong Shanghai Banking Corporation, Ltd. ("HSBC"), its predecessors, agents, employees, representatives, attorneys, officers, assistants, directors, and consultants, including any experts YOU expect to call as witnesses in this action.

b.  "DOCUMENTS" includes, but not to be limited to, handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any written, recorded, or graphic matter however produced or reproduced, including, but not limited to, electronic files, documents, records or data, documents stored in or retrievable by computer, memoranda, reports, studies, analyses, contracts, agreements, checks, charts, graphs, indices, data sheets, computer disks, data processing cards or tapes, notes, post-its, work papers, entries, letters, telegrams, telecopies (including facsimiles), internal memoranda, advertisements, brochures, circulars, catalogs, tapes, records, bulletins, papers, books, pamphlets, accounts, calendars, or diaries. The term "document" or "documents" shall also include any carbon or photographic or any other copies, reproductions, or facsimiles or any original, and shall mean the original an any copy or reproduction or facsimile that is in any way different from the original.

-2-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

c.    "Plaintiffs' Loan" means Installment Loan No. 10003-361, with HSBC as Lender and the plaintiffs as Borrower/Guarantors.

d.    "PMC" means Paradise Marine Corporation.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

The documents to be produced are:

1.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to Joseph K. Fang from January 1, 1999 through the date of this request.

2.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any member of Joseph K. Fang's family (wife, children, siblings or parents) from January 1, 1999 through the date of this request.

3.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which Joseph K. Fang has any ownership interest, from January 1, 1999 through the date of this request.

4.    All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which any member of Joseph K. Fang's family (wife, children, siblings or parents) has any ownership

-3-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

interest, from January 1, 1999 through the date of this request.

5. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to PMC from January 1, 1999 through the date of this request.

6 All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which Joseph K. Fang is an officer or director, from January 1, 1999 through the date of this request.

7 All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities extended by YOU to any corporation, partnership, sole proprietorship, company or entity in which any member of Joseph K. Fang's family (wife, children, siblings or parents) is an officer or director, from January 1, 1999 through the date of this request.

8. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by YOU to PMC from January 1, 2002 through the date of this request

9. All DOCUMENTS concerning, relating to, or comprising any loan agreements, letters of credit, promissory notes, or other credit facilities, other than Plaintiffs' Loan, which were sold, transferred or assigned by YOU to parties other than

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

PMC, from January 1, 2002 through the date of this request.

10.   All DOCUMENTS that address, refer to, or relate to any discounts on loan balances extended by YOU to any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

11.   All DOCUMENTS that address, refer to, or relate to any "friendly foreclosures", as that term is used by YOU in Exhibit G attached to Plaintiffs' Complaint, between YOU and any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

12.   All DOCUMENTS that address, refer to, or relate to the refinancing of loan balances by any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

13.   All DOCUMENTS concerning, relating to, or comprising communications between YOU and any bank, savings and loan, or financial institution regarding the sale, transfer or assignment of Plaintiffs' Loan, from January 1, 2000 through August 11, 2003.

Dated:  March 8, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: _Anita P. Arriola_
ANITA P. ARRIOLA

-5-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

PMC, from January 1, 2002 through the date of this request.

10.   All DOCUMENTS that address, refer to, or relate to any discounts on loan balances extended by YOU to any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

11.   All DOCUMENTS that address, refer to, or relate to any "friendly foreclosures", as that term is used by YOU in Exhibit G attached to Plaintiffs' Complaint, between YOU and any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

12.   All DOCUMENTS that address, refer to, or relate to the refinancing of loan balances by any of YOUR bank customers, other than Plaintiffs, from January 1, 2002 through the date of this request.

13.   All DOCUMENTS concerning, relating to, or comprising communications between YOU and any bank, savings and loan, or financial institution regarding the sale, transfer or assignment of Plaintiffs' Loan, from January 1, 2000 through August 11, 2003.

Dated:  March 8, 2004.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: _Anita P. Arriola_
ANITA P. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-5-