JACQUES G. BRONZE
LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES
LAW OFFICES OF RICHARD A. PIPES
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001



FILED
DISTRICT COURT OF GUAM
OCT 08 2004
MARY L. M. MORAN
CLERK OF COURT

Attorneys for Defendant The Hongkong and Shanghai Banking Corporation Ltd.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, <br><br> Plaintiffs, <br><br> v. <br><br> HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., <br><br> Defendants. | CIVIL CASE NO. 03-00036 <br><br> **OBJECTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR EXTENSION OF TIME TO SERVE EXPERT WITNESS DISCLOSURES; REQUEST FOR ORAL ARGUMENT** |

Defendant The Hongkong and Shanghai Banking Corporation Limited ("HSBC")

submits these objections and memorandum of points and authorities in opposition to Plaintiffs'

Ex Parte Motion for Extension of Time to Serve Expert Witness Disclosures ("Motion").

HSBC also requests that the Motion be scheduled for oral argument.



Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 2 of 7 pages

# I. PLAINTIFFS PROVIDE NO JUSTIFICATION IN SUPPORT OF THE

## MOTION.

Plaintiffs request this Court to "extend" the time for identifying their undescribed experts to November 30, 2004, less than 60 days before the trial is presently scheduled to commence. *Memorandum of Points and Authorities in Support of Motion* ("KSI Memo"), *filed herein on September 29, 2004, at 1-2.* Plaintiffs argue that since the current discovery cut-off date is November 17, 2004, and Plaintiffs expect to take depositions up to that date, then requiring experts to submit their reports by October 27, 2004, as mandated by Rule 26, will not be helpful because Plaintiffs' unidentified experts will not be able to review transcripts from depositions taken from October 27 though November 17 and include them in their reports. *Id. at 2-3.* Plaintiffs speculate that if this Court extends the deadline for expert witness disclosures to November 30 then it will purportedly allow such experts to include the as yet untaken depositions in their reports and the parties will have "sufficient time" to take depositions of the expert witnesses prior to trial. *Id. at 3.*

At the outset, Plaintiffs fail to provide to this Court any justification for why they have been dilatory in retaining their experts and have waited until discovery is about to close before thinking about hiring them. Plaintiffs filed their Complaint in this matter on October 21, 2003, and have certainly had more than one year to contemplate and retain experts. Further, on July 19, 2004, HSBC served upon Plaintiffs' counsel a Disclosure of Expert Testimony and report of Thomas Tarter, in accordance with Rule 26 and the Scheduling Order in effect at that time.

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 3 of 7 pages

*Declaration of Richard A. Pipes in Support of Objections and Memorandum of Points and Authorities in Opposition to Motion* ("Pipes Decl."), *attached hereto as Exhibit "A" and incorporated herein by this reference.*[1] Plaintiffs did not provide the disclosure of any expert testimony on July 19, 2004, nor did they provide the disclosure of any expert testimony and report intended to contradict or rebut HSBC's expert testimony and report within thirty days after July 19, as required by Rule 26(a)(2). *Id.* At this point, Plaintiffs are foreclosed from offering any expert testimony on direct examination or to rebut or contradict the testimony of Mr. Tarter. *See, Rule 37(c)(1); F.R.E., Rule 702; St. Clair v. General Motors Corp., 10 F. Supp. 2d 523, 528-29 (M.D.N.C. 1998)* (denying post-deadline request for extension).

Plaintiffs provide no explanation for their dilatory conduct and their desire to unreasonably compact the discovery and trial schedule in this case.[2] Rule 26(a) imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information "that is needed in most cases to prepare for trial or make an informed decision about settlement." *Notes of Advisory Committee on 1993 amendments to Rule 26* ("Notes"). The reason for requiring expert reports is the "elimination of unfair surprise to the opposing party and the conservation of resources." *Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J. 1996),* quoting *Sylla-*

---

[1] The Scheduling Order in effect at that time imposed a discovery cut-off of August 17, 2004, and a trial date of October 19, 2004.

[2] Under L.R. 7.1(j) Plaintiffs were required to provide the "reasons for the seeking of an ex parte order" in their pleadings. Plaintiffs have failed to explain why they are doing so and why they have waited until such a late date. In the event Plaintiffs file any additional pleadings in a belated attempt to supplement what they have intentionally left out, HSBC reserves the right to respond with a pleading of its own. In any event, such "sandbagging" should not be allowed by this Court.

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 4 of 7 pages

*Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995), cert. den., 116 S. Ct. 84.* The

purpose of Rule 26(a)(2) expert witness disclosure is to "give parties a reasonable opportunity

to prepare an effective cross-examination of the opposing parties' expert witnesses and, if

necessary, arrange for testimony from other experts." *Moore's Fed. Prac. 3D §26.23[2][a][i].*

The party with the burden of proof on an issue should disclose its expert testimony on

that issue **before** other parties are required to make their disclosures with respect to that issue.

*Notes* (emphasis supplied). In this case, Plaintiffs have failed to comply with the deadline for

disclosing experts and are belatedly attempting to obtain a retroactive extension of the deadline,

without explaining why they have not earlier identified and disclosed their experts. Even at this

late date, when Plaintiffs have the burden of proof on their claims and are required to make

their expert disclosures before HSBC, they are not willing to provide any information regarding

the identity of the experts they will retain or the issues upon which their reports will be based

until November 30, 2004. *Id.* Instead, Plaintiffs want this Court to severely compact the already

crowded discovery and trial schedule in this case to suit their own purposes and dilatory

conduct. It would be error for the Court to allow this. *See, Continental Laboratory Products, Inc.*

*v. Medax Intern., Inc., 195 F.R.D. 675 (S. D. Cal. 2000)* (expert stricken, no justification for late

disclosure, opponent would be prejudiced).

## II. GRANTING THE MOTION WOULD BE UNFAIR AND PREJUDICIAL TO

## HSBC.

Plaintiffs argue that the deadline for "disclosure" of experts and their reports should be

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 5 of 7 pages

extended to November 30, 2004, because the discovery deadline is November 17 and all deposition transcripts will then be completed in time for review by putative experts and inclusion in their reports. *KSI Memo at 2-3.* Plaintiffs surmise that HSBC will not be prejudiced if the Court grants the Motion. *Id. at 3.* Plaintiffs' assumption is wrong.

With regard to the completion of the of deposition transcripts, Plaintiffs are exceedingly optimistic and the experience in this case actually shows that transcripts will not be available for review by experts by November 30. In actuality, none of the deposition transcripts in this case have been prepared in two weeks and most have taken more than one month to complete. *Pipes Decl.* Accordingly, there is no factual basis for Plaintiffs to argue that transcripts will be available for experts to review on November 30 and it is more likely that such transcripts may not be available until mid- or late December, 2004, less than 30 days before trial. This does not provide for adequate time for experts to review such transcripts and provide rebuttal or supplemental reports within 30 days of trial, as required by Rule 26. HSBC would be severely prejudiced in its attempts to prepare for dispositive motions and trial if the court were to allow the disclosure of experts less than 60 days before trial. *Id.*

Plaintiffs suggest that if they are not required to disclose their unknown experts until November 30, 2004, there will be "sufficient time" for the experts to complete their reports and be deposed "prior to trial". *KSI Memo at 3.* However, this proposal would do nothing more than insure that many significant events and obligations of the parties and counsel are compacted into the last three or four weeks before trial. *Pipes Decl.*

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 6 of 7 pages

Plaintiffs' claim that there would be sufficient time for depositions belies the facts and scheduling imposed by this Court. Rule 26(a)(2) provides that within 30 days after the disclosure of experts and their initial reports the opposing party's expert may prepare a report rebutting the opposing party's expert's report. If disclosure of experts was not required until November 30, 2004, then opposing experts would have until December 30, 2004, to prepare a rebuttal report. It would be foolish for parties to depose experts until such time as all initial and rebuttal reports were prepared, which means that, under the schedule proposed by Plaintiffs, depositions of experts would have to take place between January 3 and 24, 2005. It would severely prejudice HSBC and its counsel to compact the schedule in this case as proposed by Plaintiffs when it is taken into consideration that trial briefs are due on December 23, 2004, disclosures under Rule 26(a)(3) are due on December 24, 2004, and exhibit lists, witness lists, and the joint pretrial order must be submitted on January 11, 2005. *Id.*

Another problem is that when Plaintiffs make their initial disclosures on November 30, 2004, as proposed, HSBC may well seek to retain additional experts which it should not have to do on the eve of trial while, at the same time preparing and filing dispositive motions which must be filed on or before December 1, 2004. *Id.* Additionally, if Plaintiffs' experts and their reports are not disclosed until after the discovery deadline passes, HSBC will be prejudiced because it will not be able to adequately use them in preparation of pretrial motions since the motion cut-off is currently December 1, 2004, or be able to use them in preparation of depositions and will not have adequate time to use such reports for trial preparation. *Id.; also*

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Objections and Memorandum of Points and Authorities in Opposition to Ex Parte Motion for Extension of Time to
Serve Expert Witness Disclosures
Page 7 of 7 pages

*see, Pomales v. Bridgestone Firestone, Inc., 217 F.R.D. 290, 293 (D. P. R. 2003); Continental Laboratory*

*Products, Inc. v. Medax Intern., Inc., supra* (expert stricken, no justification for late disclosure,

opponent would be prejudiced).

Finally, HSBC's counsel that is responsible for expert witness issues in this case, whose

two children are both attending college in the United States mainland, has made reservations

for travel since August, 2004, and will be in St. Louis, Missouri from December 23, 2004,

through January 4, 2005, for Christmas with his children and 73-year old mother. *Id.* If

Plaintiffs' motion is granted, it is likely that counsel for HSBC will be required to cancel his trip

and will miss the holidays with his children and elderly mother. *Id.*

As shown above, the prejudice to HSBC if the Motion is granted is clear and substantial.

Dated this _8th_ day of October, 2004.

> LAW OFFICES OF RICHARD A. PIPES
> Attorneys for Defendant The Hongkong and
> Shanghai Banking Corporation Ltd.

By:       _____
          RICHARD A. PIPES

RAP/nsh

JACQUES G. BRONZE
LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES
LAW OFFICES OF RICHARD A. PIPES
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001

Attorneys for Defendant The Hongkong and Shanghai Banking Corporation Ltd.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU<br>SADHWANI, and K. SADHWANI'S<br>INC., a Guam corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HONGKONG AND SHANGHAI<br>BANKING CORPORATION, LTD.,<br>et al.,<br><br>Defendants. | CIVIL CASE NO. 03-00036<br><br>**DECLARATION OF**<br>**RICHARD A. PIPES** |

I, RICHARD A. PIPES, do hereby declare as follows:

1.    I am over the age of eighteen (18) years and competent to make this Declaration.

I have personal knowledge of the matters stated herein and would be competent to testify

thereto at any proceedings.

EXHIBIT **A**

**Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.**
**Civil Case No. 03-00036**
**Declaration of Richard A. Pipes**
**Page 2 of 6 pages**

2.     I am admitted to practice before this Court and am co-counsel responsible for the representation of Defendant The Hongkong and Shanghai Banking Corporation Limited ("HSBC").

3.     Plaintiffs filed their Complaint in this matter on October 21, 2003, and have certainly had more than one year to contemplate and retain experts. Further, on July 19, 2004, HSBC served upon Plaintiffs' counsel a Disclosure of Expert Testimony and report of Thomas Tarter, in accordance with Rule 26 and the Scheduling Order in effect at that time, a true copy of which is attached hereto as Exhibit "1" and incorporated herein by this reference. Plaintiffs did not provide the disclosure of any expert testimony on July 19, 2004, nor did they provide the disclosure of any expert testimony and report intended to contradict or rebut HSBC's expert testimony and report within thirty days after July 19, as required by Rule 26(a)(2).

4.     In this case, Plaintiffs have failed to comply with the deadline for disclosing experts and are belatedly attempting to obtain a retroactive extension of the deadline, without explaining why they have not earlier identified and disclosed their experts. Even at this late date, when Plaintiffs have the burden of proof on their claims and are required to make their expert disclosures before HSBC, they are not willing to provide any information regarding the identity of the experts they will retain or the issues upon which their reports will be based until November 30, 2004.

5.     Plaintiffs argue that the deadline for "disclosure" of experts and their reports should be extended to November 30, 2004, because the discovery deadline is November 17 and

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Declaration of Richard A. Pipes
Page 3 of 6 pages

all deposition transcripts will then be completed in time for review by putative experts and inclusion in their reports. *KSI Memo at 2-3*. Plaintiffs surmise that HSBC will not be prejudiced if the Court grants the Motion. *Id. at 3*. Plaintiffs' assumption is wrong. With regard to the completion of the of deposition transcripts, Plaintiffs are exceedingly optimistic and the experience in this case actually shows that transcripts will not be available for review by experts by November 30. In actuality, none of the deposition transcripts in this case have been prepared in two weeks and most have taken more than one month to complete. The following is a list of depositions taken in Guam in this case with the date taken and the date when the transcript was completed and delivered to counsel for HSBC:

a.   Joseph Fang - taken May 7, 2004, completed May 28, 2004;

b.   Stephen Grantham - taken May 10, 2004, completed June 22, 2004;

c.   Chris Felix - taken July 8, 2004, completed August 10, 2004;

d.   John Lee - taken July 19, 2004, completed August 21, 2004;

e.   Laura Dacanay - taken July 20, 2004, completed August 30, 2004;

f.   Patrick Oliva - taken July 22, 2004, completed September 9, 2004;

g.   Ishwar (Don) Hemlani - taken July 23, 2004, completed August 11, 2004;

h.   Chris Underwood - taken July 29, 2004, completed September 23, 2004; and

i.   Catherine Champaco - taken August 9, 2004, completed October 4, 2004

6.   Accordingly, there is no factual basis for Plaintiffs to argue that transcripts will be available for experts to review on November 30 and it is more likely that such transcripts

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Declaration of Richard A. Pipes
Page 4 of 6 pages

may not be available until mid- or late December, 2004, less than 30 days before trial. This does not provide for adequate time for experts to review such transcripts and provide rebuttal or supplemental reports within 30 days of trial, as required by Rule 26. HSBC would be severely prejudiced in its attempts to prepare for dispositive motions and trial if the court were to allow the disclosure of experts less than 60 days before trial.

7.      Plaintiffs suggest that if they are not required to disclose their unknown experts until November 30, 2004, there will be "sufficient time" for the experts to complete their reports and be deposed "prior to trial". *KSI Memo at 3.* However, this proposal would do nothing more than insure that many significant events and obligations of the parties and counsel are compacted into the last three or four weeks before trial.

8.      Plaintiffs' claim that there would be sufficient time for depositions belies the facts and scheduling imposed by this Court. Rule 26(a)(2) provides that within 30 days after the disclosure of experts and their initial reports the opposing party's expert may prepare a report rebutting the opposing party's expert's report. If disclosure of experts was not required until November 30, 2004, then opposing experts would have until December 30, 2004, to prepare a rebuttal report. It would be foolish for parties to depose experts until such time as all initial and rebuttal reports were prepared, which means that, under the schedule proposed by Plaintiffs, depositions of experts would have to take place between January 3 and 24, 2005. It would severely prejudice HSBC and its counsel to compact the schedule in this case as proposed by Plaintiffs when it is taken into consideration that trial briefs are due on December 23, 2004,

**Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.**
**Civil Case No. 03-00036**
**Declaration of Richard A. Pipes**
**Page 5 of 6 pages**

disclosures under Rule 26(a)(3) are due on December 24, 2004, and exhibit lists, witness lists, and the joint pretrial order must be submitted on January 11, 2005. In this case, Plaintiffs have failed to comply with the deadline for disclosing experts and are belatedly attempting to obtain a retroactive extension of the deadline, without explaining why they have not earlier identified and disclosed their experts. Even at this late date, when Plaintiffs have the burden of proof on their claims and are required to make their expert disclosures before HSBC, they are not willing to provide any information regarding the identity of the experts they will retain or the issues upon which their reports will be based until November 30, 2004.

9. Another problem is that when Plaintiffs make their initial disclosures on November 30, 2004, as proposed, HSBC may well seek to retain additional experts, which it is entitled to do, and which it should not have to do on the eve of trial while, at the same time preparing and filing dispositive motions which must be filed on or before December 1, 2004. Additionally, if Plaintiffs' experts and their reports are not disclosed until after the discovery deadline passes, HSBC will be prejudiced because it will not be able to adequately use them in preparation of pretrial motions since the motion cut-off is currently December 1, 2004, or be able to use them in preparation of depositions and will not have adequate time to use such reports for trial preparation.

10. Finally, I am the attorney that is responsible for expert witness issues in this case. I have two children who are presently attending college in Columbia, Missouri, and Swarthmore, Pennsylvania. My children will be going to St. Louis, Missouri to spend the Christmas holidays

Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. 03-00036
Declaration of Richard A. Pipes
Page 6 of 6 pages

with my mother this year, instead of coming to Guam. I have made reservations with

Continental Airlines for travel since August, 2004, and will be in St. Louis, Missouri from

December 23, 2004, through January 4, 2005, for Christmas with my children and my 73-year

old mother. If Plaintiffs' motion is granted, it is likely that I will be required to cancel my trip

and will miss the holidays with my children and my elderly mother.

11.     As shown above, the prejudice to HSBC if the Motion is granted is clear and

substantial.

I declare under penalty of perjury under the laws of the United States and Guam that the

foregoing is true and correct.

Dated this _____ 8th _____ day of October, 2004.

_____
RICHARD A. PIPES

JACQUES G. BRONZE
LAW OFFICES OF BRONZE & TANG, P.C.
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001
Facsimile No.: (671) 647-7671

RICHARD A. PIPES
LAW OFFICES OF RICHARD A. PIPES
BankPacific Building, Suite 201
825 South Marine Drive
Tamuning, Guam 96913
Telephone No.: (671) 646-2001

Attorneys for Defendant The Hongkong and Shanghai Banking Corporation Ltd.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>              Plaintiffs,<br><br>      v.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al.,<br><br>             Defendants. | CIVIL CASE NO. 03-00036<br><br><br>**DISCLOSURE OF EXPERT TESTIMONY** |

**TO:   PLAINTIFFS, and their counsel of record, Arriola Cowan & Arriola**

PLEASE TAKE NOTICE that, pursuant to Rule 26(a)(2) of the Federal Rules

of Civil Procedure, Defendant The Hongkong and Shanghai Banking Corporation

Limited ("HSBC") hereby discloses that Thomas A. Tarter may be used at trial to

**EXHIBIT 1**



Sadhwani, et al. v. Hongkong and Shanghai Banking Corporation Ltd., et al.
Civil Case No. CV1560-03
Disclosure of Expert Testimony
Page 2 of 2 pages

present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence and

attached hereto and incorporated herein by this reference is a copy of Mr. Tarter's report

dated July 18, 2004, a listing of any other cases in which he has testified as an expert at

trial or by deposition within the preceding four years, and the qualifications of Mr.

Tarter.

Dated this _19th_ day of July, 2004.

<div style="margin-left:40%">

LAW OFFICES OF RICHARD A. PIPES
Co-counsel for HSBC

By: _____
RICHARD A. PIPES

</div>

RAP/nsh

# The Andela Consulting Group, Inc.
### 15250 Ventura Blvd., Suite 610
### Sherman Oaks, California 91403

**Thomas A. Tarter**
**Managing Director**
**Expert Witness – Banking**
**Consulting – Financial and Management**

**Phone: (818) 380-3102**
**Fax: (818) 501-5412**
**E-Mail: ttarter@earthlink.net**

July 18, 2004

Richard A. Pipes, Esq.,
Law Offices of Richard A. Pipes          Via Fax and Mail
825 South Marine Drive
Tamuning, Guam 96911

Re:     Sadwani, et al vs. HSBC, Civil Case No. 03 - 00036

Dear Mr. Pipes:

I have been retained by The Law Offices of Richard A. Pipes to provide litigation consulting, and if necessary, expert witness testimony at deposition and trial, relative to the business and banking practices of HSBC involved in this matter. In connection with this engagement, I have prepared this report.

The opinions expressed in this report are based upon my knowledge and experience developed throughout my more than 35 year career in banking, business and consulting as well as information that has been produced as part of the discovery process in this Matter.

For more than 35 years, in addition to what I have learned from my professional work experience, I have attended numerous seminars, conferences and courses. I have studied various textbooks and read professional and trade publications. The subject matters covered by these materials include: banking, loan workouts, loan sales, lending litigation, damages and consulting issues. While the sources for these materials may vary, they are sponsored or published by various organizations closely associated with banking and lending.

In forming the opinions contained in this report, I have relied on my education and knowledge gained over the years from these sources as well as my own business, banking and consulting experience that has included assignments in Guam and Saipan.

1

I understand that discovery is ongoing. This report is, therefore, subject to amendment, modification and supplementation upon any information, facts, documents or testimony that may be provided to me in the future.

## QUALIFICATIONS

I am the Managing Director of the Andela Consulting Group, Inc. ("ACG"), a consulting firm whose services include the providing of research; financial, management and turn around consulting services; board of directorships and expert testimony services on a variety of matters including lending standards and practices.

I have significant experience in banking, business and consulting inclusive of experience in connection with the matters set forth in this report.

I have served as a management consultant, business advisor and on the boards of directors of public, financially troubled and closely held corporations (large and small) including serving as a reorganization advisor to The Bank of Saipan and for SEC reporting corporations such as First Alliance Mortgage Company. I was appointed to First Alliance's board of directors subsequent to its filing for bankruptcy protection. First Alliance was active in the subprime lending market. It was accused of predatory lending practices, unfair and deceptive sales tactics involving consumer loans that were subsequently sold to third parties.

My experience in the financial institutions industry spans more than 35 years inclusive of experience in connection with the matters set forth in this report. I started my career at Lloyds Bank California, where I was a Vice President in the Corporate Finance and California Divisions; and continued it at the Sanwa Bank of California, as Vice President and the Senior Credit Officer for Southern California; Bank of Los Angeles, as Founding Director, President and Chief Executive Officer; Center National Bank, as Director, President and Chief Executive Officer; First Los Angeles Bank, as Executive Vice President; Western States Bankcard Association, as a director and ACG. I was also director of the Fort Ord Credit Union, advisor to Matadors Community Credit Union and a founder and organizer of Hancock Savings Bank. A copy of my resume is attached hereto as Exhibit A and is incorporated herein by this reference.

My work with financial institutions, lenders, ACG and my consulting experience includes (1) loan origination: (2) loan workouts and forbearance agreements; (3) loan participation agreements and loan sales involving fully performing and work out loans; (4) commitment and expression of interest letters; and (5) bank officer standards of conduct.

As a prior financial institution officer, senior executive and board of director member, I have considerable experience in consumer loan related issues such as those involved in this matter. Since 1993, I have advised ACG's clients and served as a litigation consultant regarding the above subject matters.

2

I have been appointed to the mediator panel for the Bankruptcy Mediation Program of the United States Bankruptcy Court for the Central District of California and have mediated disputes. In addition, I was a member of the Board of the Los Angeles Bankruptcy Forum.

I have a Master of Business Administration from Santa Clara University and a Bachelor of Science in business from the University of California at Los Angeles.

## DOCUMENTS

In preparing the Report, I have reviewed numerous documents including but was not limited to the following:

Stipulated Protective Order Governing Discovery;
Second Amended Complaint For Damages;
Amendment to Credit Facility/Lease;
HSBC letter to K. Sadhwani Inc., dated 02/17/03;
Promissory Note Modification Agreement, entered into 03/05/03;
HSBC letter to K. Sadhwani Inc., dated 03/06/03;
HSBC Fax dated 03/13/03 from Frederick Granillo to K. Sadhwani's Inc.;
K. Sadhwani's Inc. letter to Mr. Ganillo, dated 03/14/04;
HSBC letter to Mr. Sadhwani, dated 03/21/03;
Century 21 letter to Alan Sadhwani, dated 04/03/03;
HSBC Fax dated 04/03/04 from Frederick Granillo to K. Sadhwani's Inc.;
K. Sadhwani's Inc. letter to Mr. Granillo, dated 04/04/04;
Notice of Intent to Sell Loan, dated 07/15/03;
K. Sadhwani's Inc. letter to HSBC, undated, Exhibit "L" to Second Amended Complaint;
First Hawaiian Bank letter to Mr. Alan Sadwani, President, dated 08/05/03;
K. Sadhwani's Inc. letter to HSBC, dated 08/05/03;
HSBC letter to K. Sadani's Inc., dated 08/11/03;
Business Loan Agreement, dated December 31, 1997, for $6,500,000;
Promissory Note, dated December 31, 1997, for $800,000;
Promissory Note, dated March 9, 1998, for $450,000 with Amortization;
Promissory Note, dated August 30, 1999, for $250,000;
Amendment to Credit Facility/Lease, dated November 6, 2002;
Mortgage dated December 16, 1986, in the amount of $850,000;
Leasehold Mortgage dated March 31, 1988, in the amount of $300,000;
Mortgage dated December 15, 1989, for $1,500,000;
Correspondence between HSBC and PMC;
HSBC Credit Files;
Loan Purchase Agreement;
Assignment of Loan Instruments;

3

Assignment of Mortgages;
HSBC letter to K. Sadhwani Inc., dated 05/31/01.

## DISCUSSION, OPINIONS AND CONCLUSIONS

Based upon my review of the aforementioned Documents and my own banking, board, business and consulting experience, I have formulated the following opinions and conclusions:

### Loan Documents Involved In This Matter are Industry Standard:

1. The Note, Business Loan Agreement and Guarantees utilized by HSBC in this matter are standard, computer generated [Laser Pro] loan documents that I have seen on many occasions, They are used by many banks and financial institutions in the United States.

2. Consistent with banking and lending industry standards, the Business Loan Agreement clearly and conspicuously discloses in what I would call "plain English" that HSBC had the right to sell the Plaintiffs' Loan to a third party as illustrated by the following:

    > "Lender. The word 'Lender' means The Hong Kong and Shanghai Banking Corporation, Limited, its successors and assigns. [pg. 1]
    > Financial Records. Furnish Lender with....All financial reports required to be provided under this Agreement.... [pg. 3]
    > Consent to Loan Participation. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans.... Borrower also agrees the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loans and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.... Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against the Lender. [pg. 6]
    > BORROWER ACKNOWLEDGES HAVING READ ALL OF THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT, AND BORROWER AGREES TO ITS TERMS....." [pg. 7]

3. In the ordinary course of business, it has been my experience that the entire credit file and all documents pertaining to a purchased loan including but not limited to financial information is communicated to and transferred to the debt purchaser. This is what happened in this matter. And consistent with banking and lending industry standards the Loan Documents provided for the Lender and its successors and assigns to receive such information.

4

4.    Lenders are well aware that there is an implicit covenant of good faith and fair dealing involved in the relationships that they have with their borrowers.

5.    HSBC prepared and issued various loan documents. The use of those documents clearly illustrate the good faith and fair dealing that HSBC actually had in providing the loan documents and agreements in the first place because it did not use documents and agreements that are difficult to interpret and have been used to document thousands of business transactions. In short, HSBC did not try to reinvent the wheel by drafting loans with language that might be hard to interpret.

6.    In this matter, it is clear that HSBC has the right to sell or assign the Loan as well as to provide successors or assigns with financial information.

7.    Consistent with banking and lending industry customs, standards and practices the Loan Documents were standard commonly used documents.

8.    It is my opinion, therefore, that HSBC acted consistent with banking and lending industry standards by providing PMC with copies of the Plaintiffs financial records.

## Loan Sales Involving Commercial Real Estate Loans are Common:

1.    It has been my experience that banks and lending institutions routinely sell, pledge or assign loans to other parties including but not limited to unrelated banks, savings banks, thrifts, Real Estate Mortgage Investment Conduits, insurance companies and investors.

2.    Loans are bank assets. In the ordinary course of business, loans are considered to be negotiable instruments and it is commercially reasonable for loans to be sold to generate liquidity or for strategic business reasons. It has been my experience that an active market exists to purchase loans that are offered for sale by banks. I have been directly involved in loan purchase and sale transactions on numerous occasions with the banks that I have been employed as an officer as well as with the Federal Deposit Insurance Corporation as well as clients like Beal Bank, Ford Motor Credit Corporation, private parties and pension funds.

3.    Depending upon economic, market and credit factors, loans may be sold at premiums or discounts. The purchase price is subject to negotiation and does not typically include the debtor involved in the loan offered for sale. Although in this matter the Plaintiffs had an opportunity to obtain a discount.

4.    Additionally, it has been my experience in bankruptcy proceedings that the amount of the contracted loan sales price and the purchased note is normally not an issue because the purchaser has the right, as the owner of the debt instruments, to collect the full amount of the debtor's obligation and not just the discounted

5

purchase amount. This is because it has been my experience that successor purchasers make business decisions on a variety of factors including but not limited to the cost of collection and the risks associated with a transaction and that loan sellers like HSBC do the same in determining what price they are willing to sell.

5. It is not the least bit unusual when banks, like HSBC, make the business decision to cease banking operations in a specific geographical area that the loans and deposits of the banks and financial institutions that they operate in those areas are sold to other parties. This includes fully performing, non-performing and workout loans.

6. Based upon my banking and lending industry experience, banks have duties and obligations to multiple parties including their shareholders, depositors and customers. In order to fulfill those obligations it is the custom, standard and practice in the banking and lending industries for Loan Documents to be drafted so that the bank has the right to sell a loan to any business entity. Consistent with banking industry customs, standards and practices, the Loan Documents in this matter did not contain a provision that precluded the sale of the Plaintiffs' Loan to a third party such as PMC.

7. As stated above, I am familiar with the sale of fully performing, non-performing and workout loans because of my direct banking industry experience which involved the sale of non-performing and workout loans to unrelated third parties as well as the purchase of loans and loan pools from the FDIC.

## Good Faith and Fair Dealing Are Basic Banking Industry Standards:

1. In every contractual agreement there is an implied promise of good faith and fair dealing. This means that each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract. In this matter, based upon the industry standard Loan Documents that were used by HSBC, HSBC had the right to sell the Loan at any time.

2. Banking industry customs, standards and practices are predicated upon the principle of good faith being evidenced by both sides – customer and credit provider.

3. As a borrower is required to act in good faith with a lender by providing information, likewise a lender is required to deal in good faith with a borrower.

4. The sale of a loan by a lender does not necessarily result in a lender taking advantage of a borrower, The borrower still has to live up to its obligations including but not limited to its obligation to repay a loan at maturity.

6

5.  Lenders, therefore, by banking industry custom, standard and practice have a duty to act in good faith with their borrowers. This includes but is certainly not limited to providing accurate disclosures; not exercise undue control, influence and over a borrower; and to not improperly exercise discretion in setting exorbitant fees or charges, including interest, charges and loan extension fees.

6.  My review of the Loan Documents indicates that in this matter the Plaintiffs were not in monetary default of their loan obligations to HSBC, were timely advised by HSBC that it intended to cease banking operations in Guam and that it demanded to be paid off on or before August 31, 2003.

7.  I did not see any evidence that HSBC exploited the Plaintiffs or exercised control or influence over the Plaintiffs' affairs. HSBC simply demanded that it be repaid on a basis consistent with provisions contained within its loan documents.

## A Normal Lender - Borrower Relationship Existed:

1.  Based upon my more than 35 years of experience in the banking and lending industries, HSBC's actions and conduct were consistent with the normal - lender borrower relation involving a workout loan. It does not appear to me that the Plaintiffs were taken advantage of by HSBC and that HSBC's conduct in this matter was consistent with banking and lending industry standards and did not as Plaintiffs claimed inherently create an injustice.

2.  It is my opinion that HSBC had a customary, normal lender-borrower-guarantor relationship with the Plaintiffs. This is because I saw no evidence that HSBC specifically undertook actions to take control of the Plaintiffs business such as insinuating representation on the Plaintiffs' corporate boards, making management decisions, selecting realtors, signing listing agreements.

3.  Banking and lending industry policies and procedures caution lenders:
    i.   not to make management decisions on behalf of a borrower;
    ii.  not coerce or exert influence over a borrower's decision making process;
    iii. not place bank personnel or bank controlled consultants or advisors in management or board positions of a borrower.

4.  I saw no violations of the above-mentioned (#3) lending industry cautions.

5.  A fundamental principle that all loan officers are taught in their basic training course is that a borrower should freely make its own decisions. It is inappropriate for a lender to make a decision for a borrower. Again in this matter I saw no such actions.

7

6. The custom, standard and practice in the banking and lending industries has been that lenders vigorously try to avoid even the perception that they may have been involved in any management decisions made by their borrowers or that they may have coerced one of their borrowers into making a decision. Again, consistent with banking industry standards I saw no evidence of coercion relative to the Plaintiffs being forced to sign any of the Loan Documents.

7. Independent decision making is the industry standard. This recognizes the fundamental fact that the parties may have different interests and what is good for one party may not be in the other party's best interest. My review of the loan files, consisting of 3 boxes of documents, produced in discovery did not reveal any indicia that either party did not make an independent decision in connection with the Loan Documents.

8. Due to HSBC withdrawing from the Guam market and this loan, it is my opinion that there was a heightened duty for HSBC to timely disclose its withdrawal from the Guam banking market and to advise the Plaintiffs that it wanted to be repaid on or before August 31, 2003 and that HSBC clearly and timely informed the Plaintiffs of those intentions in its letter to the Plaintiffs, dated February 17, 2003 on a basis that was consistent with banking and lending industry customs, standards and practices.

9. It is my opinion that HSBC's notice to the Plaintiffs in February, 2003 was reasonable and consistent with banking and lending industry customs, standards and practices.

## HSBC's Officers and Employees Code of Conduct was Consistent with Banking Industry Standards:

1. It is the custom, standard and practice in the banking and lending industries for officers and employees to socialize with customers. An important element in banking as well as in other business enterprises involves the concept of "Know Your Customer". One way to get to know a customer is to socialize.

2. Paragraph 5 of the Second Amended Complaint in this matter describes social relationships with HSBC "…at Mr. Sadhwani's home, at the home of the Bank Managers, or in restaurants." Based upon my more than 35 years experience in the banking and lending industries, such social interaction is commercially reasonable, normal, typical and expected in the ordinary course of business.

3. In fact, other forms of bank officer and customer social interaction routinely includes attendance at sporting events, golf, tennis, theater, attendance at weddings, baptisms and birthday celebrations. These events enable bank officers to socialize with their clients but to also learn more about the local economy, business trends, the business of their customers and how their customers conduct themselves, meet new prospects and determine risk.

8

4.      The mere fact that bank officers and their customers had a social relationship should not result in the implication that a non-standard banking relationship existed. It is my opinion that it should be recognized that banks have rights and bank officers have a duty and obligation to act consistent with the bank's rules, regulations, policies and procedures including but not limited to strategic business decisions such as the sale of loans and the cessation of business operations in certain geographical areas.

5.      I am familiar with the Codes of Conduct and Ethics of many banks and financial institutions such as Bank of America, Wells Fargo Bank, The Bank of Saipan, First Los Angeles Bank, Bank One; and, it is my opinion that the social interaction described in the Second Amended Complaint does not transcend banking and lending industry standards and was not out of the ordinary but rather was as described above consistent with banking and ending industry customs, standards and practices.

6.      In addition, I saw nothing that would indicate that based upon the conduct of the officers that would imply that it was unreasonable for HSBC to expect to be repaid at maturity or to forego its right to sell the Loan.

## The First Hawaiian Bank Letter was Not a Commitment to Lend:

1.      The First Hawaiian Bank Letter was not a commitment to lend the Plaintiffs $3.5 million.

2.      The First Hawaiian Bank letter had numerous inconsistencies and errors that made it a document that most bankers would not rely upon including but not limited to the interest rate base after the initial period for Option I and II; references on page 7 to "this commitment" when it was obvious that the letter was not a commitment as confirmed on page 7 by the statement that the "above terms are for indication purposes only and are subject to further approval for the Bank"; it was signed by a junior bank officer; it contained no expiration date or request for a good faith deposit for additional due diligence by the bank. As a result, it is my opinion that a banker would not rely upon such a letter and that HSBC's request for "money or a guarantee" was commercially reasonable and consistent with ordinary care and practice in the banking and lending industries.

## HSBC's Conduct was Fair, Reasonable and Equitable And Consistent with Banking Industry Standards:

1.      The standard of the banking industry is that the terms of credit should be fair, reasonable and equitable. It appears that HSBC loaned the Plaintiffs substantial amounts of money over the years with approximately $6.5 million being due at the time that the Loan was sold to PMC in August, 2003 and that the Plaintiffs were financially sophisticated individuals having been involved in multi-million

9

dollar real estate transactions, renting and leasing commercial and office buildings, and multi-million loan agreements. Based upon my more than 35 years of experience in the banking, business and consulting industries, HSBC acted fairly with its borrower and guarantors in this matter.

2.      The HSBC Loans and Loan Sale involved in this matter is manifestly on its face, fair, reasonable and equitable. There were no assessments of high interest rates, hidden fees and high late charges or even requests for additional collateral, appointment of a receiver or the acceleration of payment that routinely occur and may be justified based upon increased lender risk.

**Supplemental Information:**

Pursuant to Federal Rule of Civil Procedure 26: Disclosure of expert testimony, the following is submitted:

1. Expert Witness:
   Thomas A. Tarter
   Managing Director
   The Andela Consulting Group, Inc.
   15250 Ventura Boulevard, Suite 610
   Sherman Oaks, CA 91403
   818 380 3102

2. Data and information considered by the expert witness in formulating his opinions:
   Please refer to the Qualification, Documents, and Opinions sections of this report.

3. Statement of all opinions to be expressed and the basis and reasons therefore:
   Please refer to the Report.

4. Compensation:

   $250.00 per hour for litigation consulting and support services
   $350.00 per hour for court, deposition, mediation, arbitration appearances
   No minimums
   No contingencies

5. List of other cases that the expert witness has testified at trial, deposition, mediation or arbitration have included the following:

Federal Insurance Corporation and Plum Creek Marketing, et al vs Bank America, Cal Fed, et al, Ventura, CA, Dep 06/04 CIV 215700

Barbara San Martin vs. Antioch Credit Union, Martinez, CA, Dep 05/04

Humbolt Bank, et al vs Gulf Insurance Company, San Francisco, CA, Dep, 05/04 C03-1799 SC ARB

Vasquez, et al vs Beneficial Finance, Portland, OR, Trial 01/04

United Grand vs Farmers & Merchants Bank, et al, Long Beach, CA, Dep 01/04, No. BC296270

Commercial Programming Systems, Inc. vs Briggs & Baker, et al, Los Angeles, CA, Dep 12/03; Trial 02/04

11

Ferrera vs Henry C. Hansel, Inc., et al, Santa Rosa, CA, Dep 12/03, No. 231480

Beach, et al vs Bank of America, et al, San Francisco, CA, Dep 11/03

Aquino vs Providian, Fresno, CA, Madera County No. CV18758, Dep 10/03

Martinez vs Onyx Acceptance Corporation, et al, Fresno, CA, Trial 8/03

FFS, et al vs Bank of Saipan, Abilene, TX, Dep 7/03

SoCal Housing Partners, LLC vs Gregory S. Hancock, Darrell Hoover, et al, Los Angeles, CA, Dep 6/03

Anthony Kalajian vs. Patricia Dubon, Aames, et al, Los Angeles, CA, Dep 5/03

Wells Fargo Bank vs Peter Knibb, et al, Los Angeles, CA, Dep 5/03

Spectrum Glass and Aluminum, Inc., et al vs People's Bank of California, et al, Los Angeles, CA, No. EC – 033501, Dep 3/03

Nilchin vs Cohen, et al, Los Angeles, CA, Trial 3/03

Luther vs Bank of America, Moreno Valley Honda, et al, Riverside, CA, Dep 01/03

Corbett vs Bank of America, Hayward Dodge, et al, Oakland, CA, Dep 11/02, 12/02

Costa vs Fresno Surgery Center, et al, Fresno, CA, Dep 10/02; Trial 11/02

Bank of America, et al vs Prime One Capital, Bridgeport, CN, Federal Court, Trial 10/02

California Federal Bank vs Russell Crawford, et al, Los Angeles, CA, No. BC – 144590, Trial 9/02

INET Interactive Network System, Inc., Debtor-in-Possession, Plaintiff, vs Global Crossing Bandwidth, Inc., fka Frontier Communications of the West, Inc., Defendant, No. LA 01-13671-KM, Dep 9/02

Alaska Petroleum Environmental Engineering vs Antiquarian Traders, et al, Los Angeles, CA, No. LASC BC 260006, Trial 8/02

Global Interactive Marketing, et al. vs Joseph Clark, United Nevada Trade International, et al., Los Angeles, CA, No. SC 059148, Dep 7/02, Trial 3/03

Grumbo vs Bretz, Los Angeles, CA, No. SC 059095, Dep 7/02

12

Sam Carroll and GOCO Acquisition Corp. vs German American Capital, et al., Birmingham, AL, No. 01-T-981-5, Federal Court, Dep 6/02

Duran vs. Citicorp, Santa Clara, CA, No. CV-790369, Dep 6/02

Fyke and Falcone vs. Screen Shop, Santa Clara, CA, Trial 5/02

Bill's Quik Stop vs West America Bank, et al., Fresno, CA, Dep 5/02

Krantz vs Philpott, et al., Los Angeles, CA, Dep 1/02

Bank of America vs San Ramon Carriage Co., Inc., et al, Contra Costa County, CA, No. C00-04854, Dep 10/01; Trial 11/01

David Kim vs California Korea Bank, No. BC108719, Los Angeles, CA, Trial 8/01

Spring Mountain Homes, et al vs Upland Bank, American Arbitration Association No. 72-110 00981, Upland Bank - MJE, Los Angeles, CA, Arbitration 8/01

Viva Tiger, Inc. vs Cathay Bank, Pasadena, CA, Dep 6/01, Trial 7/01

Marine Village Townhomes Association vs Hawthorne Savings and Loan, No. YC 032 949, Los Angeles, CA, Dep 5/01

Abatti vs Floyd, et al, Imperial, CA; SC case No. 89994Dep 3/01, Trial 5/01

Lee vs Bank of America, Los Angeles, CA; Dep 1/01, Trial 2/01

EIE Guam Corporation vs The Long Term Credit Bank of Japan, Ltd., et al., United States District Court of Guam, Territory of Guam, No. 00-00009; Dep 11/00; 12/00

Kroupa vs Sunrise Ford, AT&T, et al, Los Angeles, CA; ECO 14965, Trial 11/00

Reyes vs Car Gallerie, et al, United States District Court, Los Angeles, CA; CV -00-5673-MWB; Trial 10/00

Bank of America vs Larry Whithorn; Riverside, CA, RIC 310840; Dep 9/00

Kane vs Capital One, et al; GIC733574; San Diego, CA; GIC 733574; Dep 8/00

Larry Nix, et al vs Westcorp, et al.; Los Angeles, CA; BC 204188; Dep 8/00

Coast Business Credit vs Roger Hay, Ken Campbell, et al.; Orange County Superior Court; No. 787394; Dep 5/00

13

Hanna vs American Dream Equity Home Loan Corporation; Los Angeles, CA; EC026426; Dep 2/00

Life Benefactors, LP vs Transamerica, et al; San Diego, CA; 723176; Dep 1/00; Trial 3/00

Peter Ligeti vs Advanta National Bank; Santa Clara, CA; CV 770626; Dep 11/99

Ambriz, et al vs Greentree Financial; Elko, NV; #29128; Dep 10/99; Trial (A) 11/99

In re: Nellis Arms Apartments; Las Vegas, NV; 99-12278 LBR; Dep 9/99; Trial 9/99

B&B Sons Enterprises, Joseph and Nancy Benvenuti vs La Salle National Bank, et al; Sacramento, CA; # 74-Y148-0181-98; Dep 6/99; Trial (A) 6/99

Davina Willis vs J. G. Wentworth SSC; San Francisco, CA; Dep 8/99

Davis vs A&L, et al; Riverside, CA; 273753; Dep 6/99

In re: Crystal Properties, Ltd; San Fernando Valley, CA; SV 97-18796-KL; Dep 5/99; Trial 7/99

In re: Maroa Park Apartments; Modesto, CA; 98-95624-A-4; Dep 6/99; Trial 8/99 `

Ohai vs WHC-Three Investors, The Archon Group, et al; Los Angeles, CA; AAA Case No 72-1480039098; Trial (Arbitration) 3/99

Florence, et al; Las Vegas, NV; Dep 1/99

Ambassador Hotel Co. LTD vs Wan Yuan Lin, et al; Los Angeles, CA; No 176479; Dep 2/99

Wendell vs Wells Fargo Bank; San Francisco, CA; 983597; Dep 4/99

Bragg vs Hawthorne Savings Bank; Los Angeles, CA; Trial 11/98

Rosario Sobremonte; Amparo Esperidion, et al vs Bank of America; Los Angeles, CA; BC 127133; Dep 9/98

Yang, et al vs Bank of America; Los Angeles, CA; Los Angeles; VC 020377; Dep 3/98 est

EMC Mortgage Co., et al vs Christensen, et al; Fresno, CA; Trial 2/97 est

Fuchs and Marshall, et al vs Hwai-Tang Chen, et al ; Santa Monica, CA; SC047845; Trial 11/98 est

Union Oil Company of California vs Mobil Oil; Los Angeles, CA; Dep 10/98est; Trial 11/98 est

Tillman Fabric, Inc vs New Progress Enterprise Co., et al; Los Angeles, CA; BC 161449; Trial 7/98

Budak vs Grossman; Los Angeles, CA; Dep --/97 est; Trial (Arbitration) --/98

Imperial Bank vs Robert Selan, et al; Los Angeles, CA; LC038665; Dep --/98 est

Sukow vs Republic Western Insurance Company, et al; Los Angeles, CA; BC 142792; Dep --/98 est

In re. Silveira, et al; Modesto, CA; 96-92575; Trial 11/96

In re. Playa Pacifica, et al; Santa Ana, CA; SA96-11937-JW; Dep 10/96

Federal Deposit Insurance Corporation vs BMB Prpperties, et al: Los Angeles, CA; C 669033 consolidated into C 669294; Dep 8/97; Trial 9/97

Quiter/Nikkel vs Watsonville Cogeneration Partnership, State Street Bank and Trust Company of California and Ford Motor Credit Company, et al; San Francisco, CA; 969360; Dep 5/97; Trial 6/97

Takaki vs Hawthorne Savings Bank; Los Angeles, CA; YC 021815 Dep 4/97 est. and 2/99; Trial 6/97 and 3/99

The Official Oversight Committee vs Levene & Eisenberg, Alliance Bank, et al; Santa Barbara, CA; 213552; Dep 10/97

Bilma Sadah vs Wells Fargo Bank, Chemical Bank, et al Los Angeles; YC 025096; Dep 10/98 est; Trial 3/99

Kertesz vs Home Savings of America; Santa Monica, CA; SC 037986; Dep 9/97

O.T. vs Valle Verde Foods; Los Angeles, CA; Trial (Arbitration) 11/97 est

Monarch Bank, et al; Santa Ana, CA; Dep 6/97

Patel vs Pacific Inland Bank; Los Angles, CA; LC 018345; Dep 97 est

Hughes vs Home Savings Association, et al; Santa Barbara, CA; 211477; Dep 1/97; Trial 3/ 97

Beck Oil, Inc vs Bank of America; Los Angeles, CA; Dep 2/97; Trial 3/97

In re: Hansohl, Inc., et al; Los Angeles, CA; Dep 1/97

Tokai Bank of California vs KSS Real Estate Group, et al; Los Angeles, CA; BC131203; Trial 6/96

Powertrain, et al vs Haifa; Santa Ana; CA; Trial 7/96est

In re: Maulhardt Industrial Center; Santa Barbara, CA; ND 95-15475-RR; Trial 5/96

Guny vs Lieb, et al; Ventura, CA; 114052; Trial --/96

Tillack & Co., Ltd vs Diane Tubergen, Wells Fargo Bank, The Sanwa Bank of California, et alBC 058825; Los Angeles, CA; Dep --/94; Trial (Arbitration) 4/96 est

Timmothy Watson vs The Downey Venture, et al; Los Angeles, CA; BC 098430; Dep --/96 est

Farnon vs World Savings, Santa Monica Bank, Argus, et al; Los Angeles, CA; LC 022237; Dep 5/95: Trial 7/95

First American Title Company vs Bank of America, et al; Los Angeles, CA; BC 098416 Dep est. 1995

Hanmi Bank vs Kim, You, et al; Los Angeles, CA; Dep --/95

Mosely vs Farmers and Merchants Bank; Los Angeles, CA; NC 012950; Dep --/95 est

Pelletier vs Behrens, et al; Los Angeles, CA; CV 890969-RMT Dep est 1995; Trial 11/99

In re. Gatway Properties, et al and The Alicante Management Co, et al; Santa Ana, CA; SA95-10963JR and 95-12694JR; Trial est 95

The aforementioned list may be subsequently supplemented in the event that a matter(s) was inadvertently omitted. Dates have been estimated to the best of my recollection.

Respectfully Submitted,

Thomas A. Tarter

# THOMAS A. TARTER
## CURRICULUM VITAE
### The Andela Consulting Group, Inc.
### 15250 Ventura Blvd., Suite 610
### Sherman Oaks, CA 91403

**Phone: (818) 380-3102 or (818) 368-1068**
**E-Mail: ttarter@earthlink.net**

## EDUCATION:

University of California at Los Angeles, Bachelor of Science degree in Business, 1965.

Santa Clara University, Master of Business Administration degree with a specialization in Finance, 1969

## LECTURER:

Mr. Tarter has been an instructor, panelist and guest lecturer for several professional organizations and institutions of higher education, including the following:

> American Institute of Banking
> American Management Association
> Los Angeles City College
> United States Small Business Administration
> University of Southern California
> International Council of Shopping Centers
> International Institute of Business and Banking
> Orange County Bankruptcy Forum
> Los Angeles Chapter of the American Society of Appraisers
> Southern California Chapter of the Appraisal Institute

## PROFESSIONAL EXPERIENCE:

September 1993 – Present
**The Andela Consulting Group, Inc.**, Managing Director

> Specializes in providing management, financial and advisory services involving corporate governance, credit cards, management, financial and banking matters. Mr. Tarter has served on boards, assisted in corporate restructures and has provided advisory services to a diverse group of clients including corporations, law firms, banks, financial institutions and governmental agencies including the United States Small Business Administration.

**EXHIBIT** $\mathcal{A}$

October 1985 – August 1993
**First Los Angeles Bank,** Executive Vice President, Member of Officers Loan Committee
> During his association with First Los Angeles Bank, Mr. Tarter was responsible for supervising the bank's largest banking region and was involved in developing compensation and incentive programs, asset/liability management, development of policies and procedures and strategic planning. Additional responsibilities included marketing, public relations, mergers, acquisitions, the development of non-traditional banking businesses such as mortgage banking division and an SBA loan department.

November 1984 – September 1985
**Center National Bank,** Director, President and Chief Executive Officer
> Recruited to administer a troubled financial institution. Developed programs to implement regulatory requirements and to constrict the bank's assets to adhere to capital constraints. Developed and implemented policies and procedures involving credit administration and personnel including compensation, termination, staff curtailment and recruitment.

January 1980 – October 1984
**Bank of Los Angeles,** Organizer, Founding Director, President and Chief Executive Officer
> Responsible for organization and completion of two stock offerings, initial (1982) and secondary (1984), both of which were over subscribed. Responsible for the initial and ongoing organization of the bank as well as supervising its operations and growth. Negotiated the acquisition of the American City Bank - Beverly Hills from the Federal Deposit Insurance Corporation. Developed and implemented policies and procedures including compensation, personnel, credit and audit.

1977 – 1980
**First Los Angeles Bank**, Regional Vice President and member of the bank's Officers Loan Committee

1976 – 1977
**Sanwa Bank of California**, Vice President and Senior Credit Officer for Southern California and Member of Loan Committee
> Responsible for administering the bank's loan portfolio in Southern California including the implementation of policies, procedures and controls to monitor the bank's corporate, real estate and consumer loan activities.

1969 – 1975
**Lloyds Bank California**, Vice President, Corporate and California Divisions
> Responsible for the administration and development of major corporate relationships. Developed new lending programs including acceptance and SBA financing.

Additionally, Mr. Tarter was a founding organizer of Hancock Savings Bank. He shared responsibility for its formation and organization. He also co-organized and coordinated its initial stock offering.

## TESTIMONY:

Mr. Tarter has provided expert testimony at deposition and trial in municipal, state and federal courts as well as at arbitration.

Litigation and consultation clients have included: Mobil Oil Corporation, Ford Motor Credit Corporation, Advanta National Bank, Credit First Bank, Republic Bank, Sanwa Bank, Citicorp, Deutsche Bank, Wells Fargo Bank, Union Bank of California, Washington Mutual, Bank of Saipan, United Mortgage, City of Oxnard, Small Business Administration, as well as individuals, partnerships and businesses.

## BOARD MEMBERSHIPS AND BUSINESS AFFILIATIONS HAVE INCLUDED:

> Western States Bankcard Association
> Sunshine Makers, Inc. d/b/a Simple Green
> Fort Ord Credit Union
> Holiday World RV
> Marin Outdoor (Bankruptcy related directorship)
> First Alliance Mortgage Company (Appointed during bankruptcy proceedings)
> American Standard Development Company, Inc.
> BKLA Bancorp
> Center Financial
> Los Angeles Bankruptcy Forum
> Los Angeles Business Council, member of Executive Committee
> Loyola Marymount University Fine Arts/Film School Council
> Los Angeles Free Net, Inc. (Internet)

## MEDIATOR:

Mr. Tarter has been appointed by the United States Bankruptcy Court – Central District of California to its panel of mediators.

# Addendum to CV of Thomas A. Tarter

Qualifications: My background involves experience with large and small banks. Lloyds Bank California, Sanwa Bank of California and First Los Angeles Bank were subsidiaries of very large banks. At Sanwa Bank and First Los Angeles Bank, I was involved in evaluating potential acquisitions that involved "healthy" and "distressed" banks. At First Los Angeles Bank, I was also involved in the purchase of loans from the F.D.I.C. and the sale of non-performing loans.

I was also involved in the formation of a savings bank and a commercial bank that were located in Los Angeles, California. While I did not serve on the board of directors of the savings bank, I provided advice involving staffing, capital and regulatory issues to directors and senior management. I was involved in the formation of a commercial bank – Bank of Los Angeles. At the Bank of Los Angeles, I was involved in the acquisition of another bank that was closed by state and federal regulators, purchased loans from the FDIC and the RTC. Issues involved in the acquisition included: deposit retention, deposit withdrawal requests, possible run on deposits, liquidity, borrower loan defaults and lender liability claims, performing and non-performing loans. It was a complicated process that worked out positively because well-defined business and strategic plans were quickly developed and implemented.

I was also approved by regulatory agencies to serve as the chief executive officer of a financially troubled bank, Center National Bank. This assignment resulted in the identification of significant additional problems within the bank that prior to my employment had not been discovered by either the bank's independent auditors or by the regulators. My duties included: Securities and Exchange Commission disclosures, valuation of the loan portfolio, amendment of financial reports, the sale of loans, shrinkage of deposits, capital infusion and implementation of new policies, procedures and controls.

Subsequent to filing for bankruptcy protection, I was approved and appointed with the concurrence of the board of directors, creditors and court to the board of directors of a public, SEC reporting financial services company and served during bankruptcy proceedings as its Audit Committee, Chair. That company is in a liquidating Chapter 11 proceeding. I was also appointed to serve during its reorganization on the board of directors of a regional retail company.

I have served as an advisor to various financial institutions and companies involving credit card, lender liability, TILA, and UDAP issues.

I have also been appointed to the panel of mediators by the United Sates Bankruptcy Court for the Central District of California.

# The Andela Consulting Group, Inc.
### 15250 Ventura Blvd., Suite 610
### Sherman Oaks, CA 91403

Thomas A. Tarter, Managing Director
Expert Witness – Banking
Consulting – Financial and Management

Phone: (818) 380-3102
Fax:  (818) 501-5412
E-Mail:ttarter@earthlink.net

The Andela Consulting Group, Inc. ("Andela Consulting"), managed by Thomas A. Tarter, primarily engages in Business Reorganization Consulting, Financial Restructuring, and Expert Witness/Litigation Support. Andela Consulting has provided business reorganization, management and financial advise to numerous businesses. With more than thirty years experience as a banker and a consultant, Mr. Tarter brings to Andela Consulting extensive knowledge on how banks and related financial institutions operate. Andela Consulting has been involved in many matters which include: banking, cash controls and management; checking accounts, real estate lending including residential land acquisition, development and construction loans; commercial lending; corporate lending; credit cards; lender liability issues; letters of credit; loan commitments; bank and guaranty demands; consumer loans and shareholder and insider business and loan transactions.

Andela Consulting was formed in 1993 and since that time its associates have worked with many types of clients in a variety of areas. These include: (i) Sunshine Makers, Inc. d/b/a Simple Green to provide turnaround management and financial restructuring advise; (ii) Marin Outdoor, appointed as a director in connection with its financial restructuring and Chapter 11 proceedings; (iii) Oswell Self Storage to provide turnaround management and advisory services to a Chapter 11 debtor; (iv) A California Bank to provide litigation consultation regarding lending industry customs, standards and practices involving loan commitments; (v) Monarch Bank to provide expert testimony and litigation consultation regarding bank depository and IRA accounts; (vi) A large Nevada Real Estate Development Company to provide turnaround management and financial advise; (vii) Advanta National Bank to provide expert testimony and litigation consultation regarding credit card collection practices pertaining to business related credit card usage; (viii) A cosmetics company for trade debt renegotiation; (ix) A Viatical Service Company to provide expert testimony and litigation consultation regarding asset-based lending industry customs, standards and practices and lender liability issues; (x) A Financial Institution to provide expert testimony and litigation consultation regarding real estate loan restructuring, construction and permanent lending; (xi) Ford Motor Credit Corporation to provide expert testimony and litigation consultation regarding lender liability, collateral protection and creditor disclosure involving an energy production project; (xii) Developed a cash management and control system for multiple inter-related Chapter 11 debtors operating in several states including Hawaii; and (xiii) Developed court approved business rehabilitation and marketing plans for a troubled bank.

Since 1993, Andela Consulting has provided business management and financial consulting services involving: (i) banking, (ii) corporate boards, (iii) banking, real estate and corporate finance, (iv) business reorganization, and (v) turnaround management services. The consulting and expert witness services of Andela Consulting involve the areas of: (i) Management – Interim & Turnaround; (ii) Interest Rate Opinions; (iii) Business, loan and bankruptcy plan feasibility analysis – Operational & Financial; (iv) Board of Directors – Membership & Consultation; and (v) Debt & Equity Restructuring.