JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
JACQUELINE T. TERLAJE
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734



FILED
DISTRICT COURT OF GUAM

OCT 13 2004

MARY L. M. MORAN
CLERK OF COURT

Counsel for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

ALAN SADHWANI, LAJU )  CIVIL CASE NO. 03-00036
SADHWANI, and K. SADHWANI'S )
INC., a Guam corporation, )
   Plaintiffs, )  **DECLARATION OF ANITA P.**
   )  **ARRIOLA IN SUPPORT OF**
  vs. )  **PLAINTIFFS' MOTION FOR**
   )  **SANCTIONS**
HONGKONG AND SHANGHAI )
BANKING CORPORATION, LTD., a )
Foreign corporation, JOHN DOE I )
through JOHN DOE X, )
   Defendants. )
_____)

ANITA P. ARRIOLA declares:

1. I am an attorney for plaintiffs Alan Sadhwani, Laju Sadhwani and K. Sadhwani's Inc.

in the above-captioned case. I make this Declaration in support of Plaintiffs' Motion for Sanctions.

I have personal knowledge of the facts contained herein.

2. On October 21, 2003, plaintiffs filed its Complaint alleging several causes of action

including breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach

of the promissory note modification; breach of the workout agreement; breach of fiduciary duty; and

breach of confidentiality and banking laws.

## ORIGINAL

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

3. On December 30, 2003, HSBC filed a motion to dismiss the Complaint (hereinafter "First Motion"). Among other things, HSBC moved to dismiss the first cause of action, breach of the covenant of good faith and fair dealing, arguing that Guam law does not recognize the cause of action and that plaintiffs fail to allege facts in support of its claim. HSBC also moved to dismiss the fifth cause of action for breach of fiduciary duties, arguing that the plaintiffs failed to set forth any relationship of trust and confidence to establish a fiduciary relationship. A true and correct copy of the First Motion to dismiss is attached hereto as Exhibit 1.

4. On February 13, 2004, the Court heard oral argument on HSBC's First Motion, and took the matter under advisement. On April 9, 2004, the District Court denied dismissal of the first (breach of good faith and fair dealing), third (intentional misrepresentation), fourth (breach of workout agreement) and fifth (breach of fiduciary duties) causes of action (hereafter "April 9 Order"). The Court granted HSBC's First Motion with respect to the third (breach of promissory note modification) and sixth (breach of confidentiality and banking laws) causes of action without prejudice. A true and correct copy of the April 9 Order is attached hereto as Exhibit 2.

5. Plaintiffs filed first and second amended complaints. On August 16, 2004, plaintiffs filed their Third Amended Complaint for breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of contract; breach of fiduciary duty; and breach of duty not to divulge confidential banking information.

6. On August 30, 2004, HSBC filed a Second Motion to dismiss requesting dismissal of the first (breach of good faith and fair dealing), third, fourth, sixth (breach of fiduciary duties) and seventh causes of action (hereinafter "Second Motion"). A true and correct copy of the Second Motion is attached hereto as Exhibit 3.

-2-

7. In its Second Motion, HSBC sought to dismiss plaintiffs' the same causes of action (breach of the covenant of good faith and fair dealing and breach of fiduciary duty) previously sustained by the Court in the April 9 Order. HSBC's Second Motion does not even mention the April 9 Order. HSBC does not claim that the April 9 Order was clearly erroneous; that there was an intervening change in law; that there exists substantially different evidence; that there are "other changed circumstances"; or that manifest injustice would result if the April 9 Order were permitted to stand.

8. HSBC's Second Motion on these claims is adopted almost verbatim from its First Motion. HSBC's Second Motion to dismiss, pages 2 and 3, is repeated from the First Motion to dismiss, pages 2, 7 and 8. HSBC's Second Motion to dismiss, pages 11-14, were copied from the First Motion to dismiss, pages 19-23. In the Second Motion, one difference is that HSBC placed string citations in footnotes rather than in the body of the memorandum, as it did in the First Motion. Another difference is that on pages 4-5 of the Second Motion, HSBC adds two new paragraphs and cites several cases that were not previously cited in the First Motion to dismiss. However, these cases are not "new" nor do they constitute an intervening change in *controlling* authority. Apart from these minor differences, HSBC's Second Motion is merely a rehashing of arguments contained in its First Motion to dismiss.

9. I received a copy of HSBC's Second Motion on August 30, 2004. On September 16, 2004 I sent a letter to HSBC's counsel Jacques Bronze, requesting that HSBC withdraw its motion to dismiss the first and sixth causes of action or plaintiffs would file a motion for sanctions. A true and correct copy of the letter is attached hereto as Exhibit 4. Mr. Bronze did not respond to my letter.

-3-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

10. On September 17, 2004 plaintiffs filed its opposition to the Second Motion. On September 21, 2004, plaintiffs served but did not file, pursuant to F.R.C.P. 11(c)(1)(A), a motion for sanctions on HSBC's counsel Mr. Bronze. A true and correct copy of the motion is attached hereto as Exhibit 5.

11. HSBC did not withdraw the Second Motion nor did it correct the Second Motion in any way.

12. HSBC's Second Motion to dismiss the same causes of action previously upheld in the April 9 Order constitutes harassment of plaintiffs and their counsel. Due to the filing of HSBC's Second Motion on these claims, I was required to file another opposition on claims previously sustained by the Court. In addition to addressing the merits of the motion, I was required to research and draft argument on the law of the case doctrine. In preparing for oral argument on the case, I read the more than fifty (50) cases cited in the Second Motion on plaintiffs' first and sixth causes of action. HSBC has delayed progress of the case by the filing and hearing of the motion, increased the cost of litigation for plaintiffs, and consumed judicial resources in the consideration and decision on HSBC's Second Motion.

I declare under penalty of perjury under the laws of Guam and the laws of the United States that the foregoing is true and correct.

Dated this 13th day of October, 2004.

ANITA P. ARRIOLA

-4-

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on October 13, 2004, I caused to be served via

hand delivery, a **DECLARATION OF ANITA P. ARRIOLA IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR SANCTIONS** to:

> **Jacques G. Bronze, Esq.**
> **Bronze & Tang, P.C.**
> **2nd Floor, BankPacific Building**
> **825 S. Marine Drive**
> **Tamuning, Guam 96913**

Dated this 13th day of October, 2004.

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Law Offices
ARRIOLA, COWAN, ARRIOL

DEC 3 0 2003

**LAW OFFICES OF BRONZE & TARG**CEIVED
A Professional Corporation   BY: _Cox_   TIME: _9:40_
BankPacific Building, 2nd Floor
825 South Marine Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671



FILED
DISTRICT COURT OF GUAM

DEC 3 0 2003

*Attorneys for Defendant*
*Hongkong and Shanghai Banking Corporation, Ltd.*

DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, )<br><br>Plaintiffs, )<br><br>v. )<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., )<br><br>Defendants. ) | CIVIL CASE NO. 03-00036<br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION TO DISMISS** |

**EXHIBIT**
**1**

# TABLE OF AUTHORITIES

**Cases**

Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.,
731 F.2d 112, 122 (2nd Cir. 1984) ........................................................................................... 19

Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,
583 F.2d 426, 434-5 (9th Cir. 1978) ........................................................................................... 2

Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998) ........................................... 7

Bohm v. Union Bank of Tennessee, 794 F.Supp. 158,
161 (WD Pa. 1992) ...................................................................................................................... 20

Cambee's Furniture, Inc. v. Doughboy Rec., Inc.,
825 F.2d 167, 175 (8th Cir. 1987) ............................................................................................... 2

Carma Developers Inc. v. Marathon Development California, Inc.,
2 Cal. 4th 342, 374 (1990) ........................................................................................................... 6

Charles E. Brauer Co. v. Nations Bank of VA, N.A.,
466 SE2d 382 (1996) .................................................................................................................... 7

Conrad v. Bank of America, 53 Cal. Rptr. 2d 336, 351 (1996) .................................................... 12

Continental Bank N.A. v. Everett, 760 F.Supp. 713,
717 (ND Ill 1991) ........................................................................................................................ 20

Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir.), *cert. den.*,
506 U.S. 1035 (1992) ............................................................................................................... 2, 6

Cooney, et al. v. Continental Insurance Co., District Court
Civil Case No. 93-00014 ............................................................................................................... 2

Credit Managers Assn. v. Superior Court, 51 Cal.App.3d
352, 359-60 (1975) ...................................................................................................................... 21

Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust
Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989) .................................................................... 7

## Cases

Crisci v. Security Ins. Co., 66 Cal.2d 425, 432,
fn.3, 58 CR 13 (1967) ................................................................................................... 8

Dugan v. First Nat. Bank in Wichita, 227 Kan. 201,
606 P.2d 1009 (1980) ................................................................................................. 19

Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809,
169 CR 691 (1979) ....................................................................................................... 8

Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938) .................................... 1

First Security Bank of Beaver of Oklahoma v. Taylor,
964 F.2d 1053, 1059 (10th Cir. 1992) ..................................................................... 12

First Security Bank of Utah v. Banberry Development Corp.,
786 P.2d 1326, 1332 (Utah 1990) ........................................................................... 19

Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970) ............................... 7

Foley v. Interactive Data Corp., 47 Cal. 3d 654,
684-685, 254 CR 211 (1988) ...................................................................................... 8

Freeman & Mills Inc. v. Belcher Oil Co.,
44 CR2d 420 (Cal. 1995) ......................................................................................... 8, 9

French American Banking Corp., v. Flota Merante Grancolombiana, S.A.,
609 F. Supp. 1352 (S.D.N.Y.1985) ............................................................................ 7

Fruitico S.A. de C.V. v. Bankers Trust Co., 833 F.Supp 288,
300-301 (S.D.N.Y. 1993) ............................................................................................ 6

Garrett v. Bank West, Inc., 459 N.W.2d 833, 841-42 (S.D. 1990) ..................... 2, 21, 22

Glidden Co. v. Janderoa, 5 F. Supp. 2d 541,
552 (W.D. Mich. 1998) ............................................................................................. 13

Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n,
786 S.W.2d 386, 391 (Tex.App. 1991) .................................................................... 19

Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989) ................................. 19

**Cases**

Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993) ........................................................ 9

Hemlani v. Flaherty, 2003 Guam 17 ..................................................................................... 12

Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1180, 26 C.R.2d 8 (1993) ........................................... 8

Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985) .................................................. 7

Idaho First Nat. Bank v. David Steed & Associates, Inc.,
   121 Idaho 356, 825 P.2d 79 (1992) ....................................................................................... 19

In re American Lumber Co., 5 BR 470, 477-478 (DC Minn. 1980) ............................................. 21

In re EMB Associate Inc., 18 BCD 617, 92 BR 9, 15 (BC RI 1988) ........................................... 21

In re Letterman Bros. Energy Securities Litigation,
   799 F.2d 967 (5th Cir. 1986) .............................................................................................. 22

In re Mullaney, 179 BR 942 (D.Colo. 1995) ......................................................................... 7

In re N&D Properties, Inc., 799 F.2d 726 (11th Cir. 1986) ........................................................ 21

In re Rexplore, Inc. Securities Litigation, 685 F.Supp.
   1132 (ND Cal. 1988) ........................................................................................................ 22

In re Sleepy Valley, Inc., 93 BR 925, 932-933 (BC WD Tex 1988) ............................................ 21

In re Teltronics Services, Inc., 29 BR 139, 171 (BC ED NY 1983) ............................................. 21

In re Vietri Homes, Inc., 58 BR 663 (BC Del 1986) ................................................................. 21

Jack Walters & Sons Corp. v. Morton Bldg., Inc.,
   737 F2d 698 (7th Cir. 1984) ............................................................................................... 7

Klein v. First Edina Nat. Bank, 293 Minn. 418,
   196 N.W.2d 619 (1972) ..................................................................................................... 19

Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986) ................................................................... 22

Lachenmaier v. First Bank Systems, Inc.,
   803 P.2d 614 (Mont. 1990) ................................................................................................. 20

Case 1:03-cv-00036   Document 361   Filed 10/13/2004   Page 9 of 91

## Cases

Lee Careau & Co. v. Security Pacific Business Credit, Inc.,
222 Cal.App.3d 1371, 1395 (1990) ........................................................ 2, 5

Lowe v. Massachusetts Mutual Life Insurance Co.,
54 Cal.App.3d 718, 725-728 (1976) ........................................ 5, 10, 18

Mans v. Peoples Bank of Imboden, 10 S.W.3d 885,
889-890 (Ark. 2000) ............................................................................ 23

Manufacturers Hanover Trust Co., v. Yanakas,
7 F.3d 310, 318 (2nd Cir. 1993) ...................................................... 20, 23

Morse v. Crocker Nat. Bank, 142 Cal. App.3d 228, 232 (1983) .................. 20

Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo 1987) .................. 7

National Westminster Bank, U.S.A. v. Ross,
130 B.R. 656, 664 (S.D.N.Y. 1991) .............................................. 12, 13

NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997) .......................... 20

Oki America, Inc. v. Micro Tech International, Inc.,
872 F2d 312, 315 (9th Cir. 1989) ...................................................... 7, 9

Paradise Hotel Corp. v. Bank of Nova Scotia,
842 F.2d 47, 53 (3rd Cir. 1988) ...................................................... 19, 22

Pepper v. Litton, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939) ................ 21

Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989) .......... 7

Price v. Wells Fargo Bank, 261 CR 735, 742 (Cal.App. 1 Dist. 1989) .......... 6

Rigby Corp. v. Boatmen's Bank & Trust Co.,
713 SW2d 517 (Mo.App. 1986) ........................................................ 7

Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) ............................ 7

Rutherford v. Rideout Bank, 11 Cal.2d 479, 481 (1938) .......................... 21

## Cases

Saglio v. Chrysler First Commercial Corp., 839 F.Supp.
830, 833 (MD Fla. 1993) ........................................................................................... 20

Seamen's Direct Buying Service v. Standard Oil Co.,
206 CR 354 (1984) ............................................................................................... 8, 9

Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927,
262 Cal.Rptr. 260, 278 (1989) .......................................................................... 19, 21

Stenberg v. Northwestern Nat. Bank of Rochester,
307 Minn. 487, 238 N.W.2d 218 (1976) ................................................................. 22

Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984) .......................... 7

Taylor v. Standard Gas & Electric Co., 306 US 307,
83 L Ed 669, 59 S Ct. 543 (1939) ........................................................................... 21

Tokarz v. Frontier Federal Savings & Loan Ass'n,
33 Wash.App. 456, 656 P.2d 1089 (1982) .............................................................. 20

Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co.,
763 SW2d 809 (Tex.App. Texarkana 1988) ............................................................. 7

Travel Services Network, Inc. v. Presidential Financial Corp. of MA,
959 F. Supp 135, 144 (D. Conn. 1997) ................................................................... 23

Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194,
N.W.2d 910 (1991) ................................................................................................. 19

Union State Bank v. Woell, 434 NW2d 712 (ND 1989) .................................... 7, 19, 22

Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982) ........................................... 19, 22

Western Systems, Inc. and Cable TV v. Commercial Union Assurance
Co. PLC, et al., District Court Civil Case No. CIV 93-00055 ................................... 2

**Statutes and Rules**

13 G.C.A. § 3104 ............................................................................... 14, 18, 24

13 G.C.A. §§ 3201, 3202 .................................................................. 14, 18, 24

18 G.C.A. § 80403 ..................................................................................... 17

18 G.C.A. § 80406 ..................................................................................... 17

18 G.C.A. § 81102 ..................................................................................... 15

18 G.C.A. § 81103 ..................................................................................... 15

28 USC §1322 .............................................................................................. 1

48 USC §1424 .............................................................................................. 1

Fed. R. Civ. P. 9(b) ................................................................................... 12

FRCP 12(b)(6) ............................................................................................. 1


**Miscellaneous**

37 Am. Jur. 2d - *Fraud and Deceit* § 80 (2001) ........................................ 12

37 Am. Jur. 2d - *Fraud and Deceit* § 82 (2001) ........................................ 12

37 Am. Jur. 2d - *Fraud and Deceit* § 84 (2001) ........................................ 13

9 Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4 ....................... 5, 6, 11

*California's Detortification of Contract Law: Is the Seamen's tort dead?*
    26 Loyola L.A. L. Rev. 213, 223 (1992) ................................................ 9

Restatement (Second) of Contracts, § 205, comment a (1981) ..................... 2

Restatement (Second) of Contracts § 317(2) (1981) ................................... 14

Restatement 2d of Contracts, § 317(2) (1981) ................................... 6, 18, 24

**Miscellaneous**

The Fiduciary Controversy: *Injection of Fiduciary Principles Into the Bank-Depositor and Bank-Borrower Relationships*, 20 Loyola L. Rev. 795, 803-804 (1987) ................................................................................. 20

## JURISDICTION

This action is before this Court for federal diversity jurisdiction pursuant to 28 USC §1322 and 48 USC §1424. This Court has jurisdiction to hear this motion pursuant to FRCP 12(b)(6).

## FACTS

For purposes of this motion, the Court must accept as true all of Plaintiffs allegations in the Complaint.

## ANALYSIS

FRCP 12(b)(6) authorizes this motion whereby a party fails to state a claim upon which relief can be granted.

### I.

### A TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT BE IMPLIED TO CONTRADICT OR LIMIT HSBC'S EXPRESS CONDITIONS PRECEDENT TO ANY WORKOUT NOR DOES THE BASES ALLEGED AMOUNT TO A BREACH OF GOOD FAITH.

As its first cause of action, Plaintiffs allege that "Defendant acted in bad faith and failed to deal fairly with Plaintiffs in refusing to agree to a commercially reasonable workout and in refusing to accept the alternative financing obtained by Plaintiffs." See, ¶ 29 of the Complaint. In addition, Plaintiffs allege that "[a]s a result of Defendant Bank's bad faith and failure to deal fairly with Plaintiffs, Plaintiffs have suffered damages . . . ." See, ¶ 30 of the Complaint.

It is well established that a federal court sitting in diversity must apply to substantive law of the state whose law governs the action. See, Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938). Since this is an issue of first impression in Guam courts, it is not obvious how

1

the Guam Supreme Court will resolve this issue. In such uncertainty, "a federal court must use its own best judgment in predicting" what the Guam Supreme Court would decide. See, Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 434-5 (9th Cir. 1978).

To our knowledge, only two bad faith claims arising out of insurer-insured context have been adjudicated in the courts of Guam in recent years.[1]

HSBC concedes that all contracts contain an implied covenant of good faith and fair dealing. See, Restatement (Second) of Contracts, § 205, comment a (1981). Application of the implied covenant is a matter of contract interpretation. See, Cambee's Furniture, Inc. v. Doughboy Rec., Inc., 825 F.2d 167, 175 (8th Cir. 1987) (applying South Dakota law). The covenant is "a method to fill in gaps" in a contract and has "nothing to do with the enforcement of terms actually negotiated." See, Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir.), cert. den., 506 U.S. 1035 (1992).

"Good faith is not a limitless duty or obligation. The implied obligation must arise from the language used [in the contract] or must be indispensable to effectuate the intention of the parties." Garrett v. Bank West, Inc., 459 N.W.2d 833, 841-42 (S.D. 1990).

Bad faith, on the other hand, implies unfair dealing, not mistaken judgment, honest mistake or negligence. See, Lee Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1395 (1990). The basis for Plaintiffs' allegation to support bad faith against HSBC is based on Plaintiffs' allegation that (1) HSBC refused to consider its listing of certain properties for sale with Century 21 Realty Management and (2) HSBC "refused to accept" its commitment for alternative financing from First Hawaiian Bank, which HSBC will now address seriatim: See, ¶ 28 of the Complaint.

---

[1] See, Cooney, et al. v. Continental Insurance Co., District Court Civil Case No. 93-00014 and Western Systems, Inc. and Cable TV v. Commercial Union Assurance Co. PLC, et al., District Court Civil Case No. CIV 93-00055.

Memorializing the discussions held on the February 13, 2003, meeting between HSBC officials and Alan Sadhwani("Mr. Sadhwani"), the principal of KSI, HSBC on February 17, 2003, forwarded a letter to Mr. Sadhwani which stated that Mr. Sadhwani had claimed that he had listed the "securing real estate properties for sale with Century 21, and asked them to refer all offers to you." See, ¶ 4 of Ex. "B" to the Complaint. In the same letter, Mr. Sadhwani was requested to provide a written plan on how he intends to payoff the bank by the parties' next meeting proposed for "February 24, 2003." See, ¶ 3 of Ex. "B" of the Complaint. On March 5, 2003, Mr. Sadhwani executed this letter acknowledging that the matters contained in the letter were true and correct.

On March 5, 2003, another meeting was held between Mr. Sadhwani and HSBC officials which was subsequently memorialized in a letter dated March 6, 2003, which was forwarded to Mr. Sadhwani. In paragraph 1 of that letter, HSBC emphasized to Mr. Sadhwani that there would be no further renewal of his loan facilities after August 31, 2003. See, ¶ 1 of Ex. "D" to the Complaint. In paragraph 2 of the letter, HSBC pointed out that Plaintiffs failed to provide them a written plan on how they were going to pay the Bank contrary to his previous agreement on February 13, 2003. In addition, HSBC made it clear that it was not satisfied despite the fact that Plaintiffs had listed the securing real properties for sale with Century 21, because it was not a written plan and nor was the term "reasonable" (referring to Mr. Sadhwani's statement that he would only accept reasonable offers to sell his property) quantified. See, ¶ 2 of Ex. "D" to the Complaint. The Bank again requested that Plaintiffs provide a written plan on how their loan would be paid off by March 12, 2003, and Mr. Sadhwani, the principal of KSI agreed. See, ¶ 2 of Ex. "D" to the Complaint.

3

Despite HSBC's request that a written plan be received by March 12, 2003, Plaintiffs failed to provide such plan and on March 13, 2003, HSBC again forwarded a fax which states in part as follows: "The deadline for the requested plan was yesterday as stated in a letter dated 6 March 2003 referenced GUM CCU 030021. Please provide the written plan to date, as we have agreed upon, so that we understand how you intend on repaying the loan by the revised maturity date." See, Ex. "E" to the Complaint. On March 14, 2003, Mr. Sadhwani forwarded a letter to HSBC indicating that he was ". . . working with the Bank to pay off [the] outstanding loan with you." See, Ex. "F" to the Complaint. Despite repeated requests by HSBC for a written plan, Mr. Sadhwani conveniently ignored the HSBC request.

Again, on March 21, 2003, HSBC forwarded a letter to Mr. Sadhwani stating in part "[y]ou represented that you have listed your property with Century 21 Realtors. We request a copy of the listing agreements or a written authorization allowing Century 21 to provide copies to the Bank immediately." See, Ex. "G" to the Complaint. In HSBC's letter dated March 21, 2003, Plaintiffs were given until April 4, 2003 to comply with HSBC's request in the letter. On March 14, 2003, Mr. Sadhwani, on behalf of KSI, faxed a letter to HSBC stating, that he is ". . . working with a bank to payoff our outstanding loan with you." See, Ex. "F" to the Complaint.

Other than an April 4, 2003, letter from Christopher Felix of Century 21 Realty Management Company to Mr. Sadhwani describing his "marketing efforts" for some of the real properties, and KSI's letter that it is trying to get refinancing to payoff HSBC, Plaintiffs refused to comply with the specific request contained in HSBC's March 21, 2003, letter, that KSI provide HSBC with listing agreements and/or "allowing Century 21 to provide copies to the Bank . . . ." See, Exs. "H," "G," and "J" respectively, to the Complaint. Moreover, nothing in Christopher Felix's letter indicates that a contract of sale had been entered to sell any of

4

Plaintiffs' property. The persons mentioned were mere prospective buyers. As of April 3, 2003, Plaintiffs had not sold any of the properties they purportedly listed with Century 21. On July 15, 2003, HSBC forwarded Mr. Sadhwani a Notice of Intent to Sell his Loan.

Based on the above, Plaintiffs' alleged first basis for bad faith does not provide any evidence of unfair dealing or malice by HSBC which could constitute bad faith. Plaintiffs utterly failed to comply with HSBC's requests. As the court in <u>Lee Careau & Co.</u>, stated, allegations which assert bad faith must show that "... the conduct of the defendant... demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act... ." <u>Id.</u> at p. 1395. Since a showing of bad faith is required, regardless of whether Plaintiffs proceed in tort or on a contract theory, Plaintiffs cause of action for implied breach of the covenant of good faith and fair dealing should be dismissed as a matter of law.

The second basis for Plaintiffs allegation of bad faith is based on the allegation that HSBC rejected their commitment of "alternative financing" from First Hawaiian Bank. Attached as Ex. "M" to Plaintiffs' Complaint is the purported bank commitment to provide alternative financing. The letter provides that "[t]his letter shall **not** be construed as **commitment** on the part of the Bank and is only provided for indication purposes only. A commitment, **should one be issued** shall be subject to the modification and formal approval from the officers of the Bank, and will be in accordance with the Bank's normal underwriting standards." <u>See</u>, first ¶ of Ex. "M" to the Complaint (emphasis added).

Letters of commitment, unlike letters of indication, are letters for which a fee is paid, constitute an option to the applicant to obtain the loan at the specified terms. <u>See</u>, <u>Lowe v. Massachusetts Mutual Life Insurance Co.</u>, 54 Cal.App.3d 718, 725-728 (1976); <u>see</u>, <u>also</u>, 9

5

Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4, p. 9. Under the usual principles of lender liability, "[a] loan commitment is not binding on a lender unless it contains all the material terms of the loan, and either the lender's obligation is unconditional or the state of conditions have been satisfied." See, 9 Miller & Starr, Op. Cit., supra at 28.4, at p. 8, fn. omitted. A review of the purported "alternative financing" letter from First Hawaiian Bank makes it explicitly clear that no enforceable contract to provide "alternative financing" was created by such document.

Moreover, even assuming, *arguendo*, that Plaintiff had complied with two of the purported "proposals to work out the loan," HSBC had the right to sell its loan facilities and promissory note. Its loan was freely assignable unless such assignment is precluded by the contract itself or forbidden by statute. See, Restatement 2d of Contracts, § 317(2) (1981).

As the Court stated in Price v. Wells Fargo Bank, 261 CR 735, 742 (Cal.App. 1 Dist. 1989), "[t]he covenant of good faith and fair dealing operates as a kind of safety valve to which judges may turn to fill gaps and qualify all limit rights and duties otherwise arising under rules of law and specific contract language," and it does not impose any affirmative duty of moderation in the enforcement of legal rights." See, also, Carma Developers Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 374 (1990); Continental Bank, N.A., supra, at p. 705.

Furthermore, Plaintiffs failure to comply to HSBC's explicit conditions to the proposed workout, i.e., HSBC's written request that a written plan for payoff of the loan be submitted and their failure to have a commitment to refinance their loan with HSBC, meant that no workout agreement was reached and thus, the parties did not owe each other any alleged duty of good faith. See, Fruitico S.A. de C.V. v. Bankers Trust Co., 833 F.Supp 288, 300-301 (S.D.N.Y. 1993).

**A.** **Even assuming arguendo that Plaintiffs have properly pleaded evidence of HSBC's bad faith, their cause of action for tortious breach of the implied covenant of good faith and fair dealing fails as a matter of law.**

As discussed above, all contracts contain an implied covenant of good faith and fair dealing. However, the concept of bad faith as a tort originated in the insurance arena. Although the rationale that justifies the extension of the bad faith cause of action to first-party insurance cases[2] applies as well to ordinary commercial contract cases, the courts have almost unanimously refused to do so. See, Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F2d 698 (7th Cir. 1984); Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984); Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985); In re Mullaney, 179 BR 942 (D.Colo. 1995); French American Banking Corp., v. Flota Merante Grancolombiana, S.A., 609 F. Supp. 1352 (S.D.N.Y.1985); Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo 1987); Rigby Corp. v. Boatmen's Bank & Trust Co., 713 SW2d 517 (Mo.App. 1986); Union State Bank v. Woell, 434 NW2d 712 (ND 1989) (lender's protection of its security interest did not constitute bad faith); Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) (action in tort for violation of implied in law duty of good faith and fair dealing applies only to insurance contracts; court refuses to extend theory to commercial lending transaction); Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989); Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998); Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co., 763 SW2d 809 (Tex.App. Texarkana 1988); Charles E. Brauer Co. v. Nations Bank of VA, N.A., 466 SE2d 382 (1996); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989).

---

[2]  Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970).

Most court decisions have carved out a limited exception to the general rule only in the insurance arena. See e.g., Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1180, 26 C.R.2d 8 (1993). Tort recovery in insurance law is considered appropriate for a variety of policy reasons. Unlike most other contracts for goods and services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility. See, Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684-685, 254 CR 211 (1988), citing, Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 CR 691 (1979). In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of accident or other catastrophe. See, Foley, supra, at p.684. Moreover, an insured faces a unique "economic dilemma" when an insurer breaches the implied covenant of good faith and fair dealing. Id at p. 692. Unlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurer willing to pay for a loss already incurred. Id.

In addition, the tort duty of a liability insurer ordinarily is based on its assumption of the insured's defense and of settlement negotiations of third party claims. See, Crisci v. Security Ins. Co., 66 Cal.2d 425, 432, fn.3, 58 CR 13 (1967). The assumption of those responsibilities obligates the insurer to give at least as much consideration to the welfare of its insured as it gives to its own interests so as not to deprive the insured of the benefits of the insurance policy. See, Egan, supra at p. 818; 68 A.L.R. 2d 883. That is why courts have exercised great caution in considering whether to extend this exception in those cases to another contract setting.

California, being one of two states which had previously recognized the tort of bad faith denial of non-insurance contracts in the case of Seamen's Direct Buying Service v. Standard Oil Co., 206 CR 354 (1984), decided in 1995 that its decision was incorrect. In Freeman & Mills

8

Inc. v. Belcher Oil Co., 44 CR2d 420 (Cal. 1995), the California Supreme Court specifically overruled the earlier decision in Seamen's. The California Supreme Court recognized that the lower court had had great difficulty in attempting to apply the theory, noting that one commentator had written "in recent decisions, almost every court offers a different interpretation of the tort."[3] The California Supreme Court in Freeman decided with approval of the Court of Appeals decision in Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993), where the court argued that public policy mitigated against awarding tort damages for breach of contract. Id. at p. 427-428. The reasons for denying the tort recovery included:

> (1) the different objectives underlying the remedies for tort or contract breach, (2) the importance of predictability in assuring commercial stability in contractual dealings, (3) the potential for converting every contract breached into a tort, with accompanying punitive damage recovery, and (4) the preference for legislative action in affording appropriate remedies.

Id. at p. 428. After the noting the criticism leveled at Seamen's by the courts, as well as the rejection by legal scholars, the court concluded that the reasons set forth in Harris were sufficient to overrule Seamen's. As the court pointed out in Freeman, "of all States, only Montana has recognized the tort of bad faith in a typical arm's length commercial contracts, and recently even that State has qualified the tort by requiring a showing of a special relationship between the contracting parties." Id. at p. 428. As the Ninth Circuit Court of Appeals stated in Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989), "it is impossible to draw a principled distinction between a tortious denial of a contract existence and a permissible denial of liability under the terms of the contract." For policy reasons alone, the first cause of action should be dismissed.

---

[3] Comment, *California's Detortification of Contract Law: Is the Seamen's tort dead?* 26 Loyola L.A. L. Rev. 213, 223 (1992).

**II.**

## THE SECOND CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFFS FAILED TO OBTAIN REFINANCING.

Plaintiffs' Second Cause of Action purports to be a claim based upon intentional misrepresentation. Plaintiffs assert that HSBC offered to "work out" their loan if mortgaged properties were listed with a broker and sold with the net proceeds to go to HSBC, the properties were deeded to HSBC in lieu of foreclosure at negotiated values, and/or Plaintiffs were to obtain replacement financing with another bank to pay off the loan with HSBC. Complaint at ¶ 27, Ex. "G". Plaintiffs allege that they accepted HSBC's proposal to list the properties with a broker and to obtain "alternative financing". Id. at ¶ 28. Plaintiffs claim that they obtained "alternative financing" from First Hawaiian Bank ("FHB") on August 5, 2003 as embodied in Ex. "M" attached to the Complaint. Id. ¶¶ 19, 28, Ex. "M".

Plaintiffs' claim for intentional misrepresentation is founded upon HSBC's alleged agreement to accept replacement financing for Plaintiffs' loan and HSBC's alleged refusal to accept financing from FHB after it was previously obtained by Plaintiffs.

Attached as Ex. "M" to Plaintiffs' Complaint is the purported bank commitment to provide alternative financing which provides that "[t]his letter shall **not** be construed as **commitment** on the part of the Bank and is only provided for indication purposes only. A commitment, **should one be issued** shall be subject to the modification and formal approval from the officers of the Bank, and will be in accordance with the Bank's normal underwriting standards." See, first ¶ of Ex. "M" attached to the Complaint (emphasis added).

Letters of commitment, unlike letters of indication, are letters for which a fee is paid, and constitute an option to the applicant to obtain the loan at the specified terms. See, Lowe v.

10

Massachusetts Mutual Life Insurance Co., 54 Cal.App.3d 718, 725-728 (1976); see, also, 9 Miller & Starr, Cal. Real Estate (2d Ed. 1989) § 28.4, p. 9. Under the usual principles of lender liability, "[a] loan commitment is not binding on a lender unless it contains all the material terms of the loan, and either the lender's obligation is unconditional or the state of conditions have been satisfied." See, 9 Miller & Starr, Op. Cit., supra at 28.4, at p. 8, fn. omitted. A review of the purported "alternative financing" letter from First Hawaiian Bank makes it explicitly clear that no enforceable contract to provide "alternative financing" was created by such document.

Since Plaintiffs never obtained a commitment for a loan to pay off the indebtedness with HSBC, as shown by Plaintiffs own documents, Plaintiffs did not comply with the alleged workout agreement. Because Plaintiffs themselves were unable to comply with the conditions precedent in the alleged workout agreement, no cause of action arises against HSBC for intentional misrepresentation based upon HSBC's refusal to accept "alternative financing" since Plaintiffs were unable to obtain such financing. The Second Cause of Action fails to state a claim upon which relief can be granted against HSBC.

### III.

### IN THE ALTERNATIVE, THE SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS OF INTENTIONAL MISREPRESENTATION ARE BASED UPON ALLEGED PROMISES OF FUTURE CONDUCT.

In their Second Cause of Action, Plaintiffs assert that HSBC is guilty of intentional misrepresentation because it allegedly promised to give Plaintiffs a "hairline discount" when and if the loan was paid in full. Complaint at ¶ 32. Further, Plaintiffs assert that HSBC offered to "work out" their loan if mortgaged properties were listed with a broker and sold with the net proceeds to go to HSBC, the properties were deeded to HSBC in lieu of foreclosure at negotiated

11

values, and/or Plaintiffs were to obtain replacement financing with another bank to pay off the loan with HSBC. Complaint at ¶ 27, Ex. "G", ¶ 33. Finally, Plaintiffs allege that HSBC intentionally misrepresented that it was "interested in pursuing a commercially reasonable work out" even though it had no intention to do so. Id. at ¶ 36. However, Plaintiffs fail to allege any facts in support of their allegation that HSBC did not intend to "work out" the loan.[4]

As shown above, all of Plaintiffs allegations in support of their claim of intentional misrepresentation are based upon purported promises of HSBC relating to future conduct. The Second Cause of Action does not allege that HSBC intentionally misrepresented any present or preexisting fact. For this reason alone, in the alternative, the Second Cause of Action fails to state a viable claim of intentional misrepresentation and must be dismissed.

It is a general rule that fraud cannot be predicated upon statements that are promissory in their nature at the time they are made and that relate to future actions or conduct. 37 Am. Jur. 2d - *Fraud and Deceit* § 82 (2001); see also, First Security Bank of Beaver of Oklahoma v. Taylor, 964 F.2d 1053, 1059 (10th Cir. 1992). A claim of fraud cannot be based upon the mere nonperformance of a promise or contractual obligation or upon failure to fulfill an agreement at a future time. Id.

One of the common elements of an action for fraud, intentional misrepresentation, and negligent misrepresentation is the misrepresentation of a "past or existing material fact". Hemlani v. Flaherty, 2003 Guam 17, ¶ 9; 37 Am. Jur. 2d - *Fraud and Deceit* § 80 (2001). A complainant must plead and prove that a misrepresentation of a past or present fact has occurred. Hemlani v. Flaherty, supra; Conrad v. Bank of America, 53 Cal. Rptr. 2d 336, 351 (1996) (in

---

[4]    Circumstances constituting fraud must be pleaded with particularity. *Fed. R. Civ. P. 9(b)*. A defrauded party must allege specific facts showing that the promisor intended not to honor his obligations at the time the promise was made. *National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 664 (S.D.N.Y. 1991)*. Since Plaintiffs have not alleged any facts supporting their claim that HSBC did not intend to "work out" the loan, the Second Cause of Action should also be dismissed for failing to comply with Rule 9(b).

order to establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of fraud); Glidden Co. v. Janderoa, 5 F. Supp. 2d 541, 552 (W.D. Mich. 1998) (an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact).

Reasons given for the rule not permitting fraud to be based upon promises of future conduct which are unkept are that a mere promise to perform an act in the future is not, in a legal sense, a representation or statement of existing or past fact, and that a mere failure to perform it does not change its character. 37 Am. Jur. 2d - *Fraud and Deceit* § 84 (2001). Just as importantly, a representation that something will be done in the future, or a promise to do it, cannot, from its nature, be true or false at the time when it is made. Id. The failure to make good on such a promise is merely a breach of contract, which must be remedied by an action on the contract, if at all. Id.

To allow otherwise would permit complainants in any breach of contract action to additionally claim fraud against the breaching party. However, representations about future events that are promissory in nature are insufficient to establish a claim of fraudulent misrepresentation. Glidden Co. v. Janderoa, supra, at 552; National Westminster Bank, U.S.A., supra, at 664 (a party may not establish fraudulent intent solely from the "non-performance of the future event").

As discussed above, all of the alleged misrepresentations of HSBC in the Second Cause of Action relate to promises of future conduct on the part of HSBC which HSBC failed to later perform, namely, HSBC's refusal to give a "hairline discount" when the loan was paid off (which it never was) and HSBC's unwillingness to "work out" the loan even after Plaintiffs allegedly obtained refinancing from FHB (which they actually never did). Since Plaintiffs have

failed to plead misrepresentation by HSBC of past or current facts, which is an element of intentional misrepresentation, they have not stated a viable claim for relief against HSBC. The Second Cause of Action must be dismissed on this alternative ground.

IV.

## THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs' Third Cause of Action, entitled "Breach of Contract-Promissory Note Modification", apparently claims that HSBC breached a Promissory Note Modification Agreement ("Agreement") which is attached to the Complaint as Ex. "C". Specifically, Plaintiffs allege that since neither the Agreement nor any other unspecified "Loan agreements" precisely authorize the sale of the subject loan, then the sale of the loan by HSBC to Paradise Marine Corporation ("PMC") breached its "Loan agreement" with Plaintiffs. Complaint at ¶ 42. Additionally, Plaintiffs argue that HSBC somehow breached the Agreement because it failed to "review the Note every six months". Id. at ¶ 41. However, Plaintiffs fail to allege when HSBC failed to accomplish any such review or what action HSBC failed to take in order to accomplish the review. Unfortunately for Plaintiffs, the Third Cause of Action fails to state a claim against HSBC upon which relief may be granted and must be dismissed.

It is axiomatic that a promissory note which evidences a loan is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note and various loan agreements, including the Agreement, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. Restatement (Second) of Contracts § 317(2) (1981). Even more

14

importantly, Guam law specifically provides that a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 G.C.A. § 81102. Moreover, Guam law provides that even nonnegotiable instruments, including written contracts for the repayment of money, may be transferred just as if they were negotiable instruments. Id. at § 81103.

The Complaint does not claim that the subject promissory note or the Agreement prohibited sale or assignment by HSBC to PMC and Plaintiffs have failed to cite to any statute that forbids such sale. Instead, Plaintiffs assert, in conclusory fashion, that when HSBC sold the subject loan to PMC it "breached its Loan agreement with Plaintiffs". Complaint at ¶ 42.

The Third Cause of Action fails to state a cause of action against HSBC upon which relief can be granted because it has no legal basis. As shown above, the subject promissory note and loan were negotiable instruments which were freely assignable under Guam law by HSBC to PMC. Plaintiffs have not, and cannot, allege that the note or loan agreements contained any limitations on HSBC's right to sell and assign the loan and Plaintiffs have cited no statute which prevents HSBC from selling or assigning the note and loan. HSBC had the legal right to sell the subject promissory note and loan and no cause of action for breach of the Agreement exists.

There is ample reason why no such restrictions exist. If the law were as the Plaintiffs have alleged in the Third Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae'), would be virtually impossible.

15

Finally, Plaintiffs' argument that HSBC somehow breached the Agreement by failing to "review the note every six months" is nothing more than a "red herring". As shown by Ex. "C" to the Complaint, in the Agreement signed March 5, 2003, HSBC granted an extension to Plaintiffs of the maturity date of the note to August 31, 2003. According to the unambiguous terms of the Agreement, HSBC had the option, and not the duty, to review the note every six months and HSBC specifically reserved to itself "the right in its sole discretion to call for repayment of principal and interest then outstanding and unpaid." Instead of calling for full repayment of the note, as HSBC had the right to do under the Agreement, HSBC sold the note to PMC on or about August 11, 2003, approximately six months after the Agreement was signed. By the terms of the Agreement, HSBC owed no duty to Plaintiffs to "review" the note, especially in light of HSBC's right to unilaterally call for full repayment of the Note on August 31, 2003.

The Third Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

## V.

**PLAINTIFFS' FAILURE TO FULFILL THE EXPRESS CONDITIONS PRECEDENT CONTAINED IN THE PURPORTED WORKOUT AGREEMENT TERMINATES HSBC'S OBLIGATION TO PERFORM UNDER SAID AGREEMENT.**

Plaintiffs allege that the parties entered into a workout agreement when HSBC offered the proposals to engage in a loan workout and Plaintiffs' acceptance of such proposals by listing ". . . certain properties for sale with Century 21 Realty Management and Plaintiffs obtained terms and conditions for alternative financing from First Hawaiian Bank for alternative financing." See, ¶ 45 of Plaintiffs' Complaint. Plaintiffs further allege that it fulfilled the

16

conditions precedent and that HSBC subsequently failed to perform and, thusly, breached the workout agreement. See, ¶ 46 of Plaintiffs' Complaint.

18 G.C.A. § 80403 provides that "[a] condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Moreover, 18 G.C.A. § 80406 provides, in part, that "[b]efore any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself . . . ." In the instant case, Plaintiffs failed to fulfill the first condition precedent which was to list the properties with an appropriate broker in order to find buyers to purchase the properties so as to reduce its debt with HSBC. In paragraph 13 of their Complaint, Plaintiffs' acknowledged that they ". . . sought the services of Century 21 to find buyers for the properties subject to the Defendant Bank mortgage." See, ¶ 13 of Plaintiffs' Complaint. In a letter dated April 3, 2003, the President of Century 21 Realty Management forwarded a letter to Mr. Sadhwani a letter which is devoid of any commitment by any prospective purchaser to purchase Plaintiffs' properties. See, Ex. "H" to Plaintiffs' Complaint. In particular, paragraph 2 of that letter provides:

> "On the selling side I have shown the buildings to an investment group from Korea, and Mr. and Mrs. Fang. The Korean group have left island and plan to return mid-April with their decision. It is my understanding they are an electronic firm who have sold some property here on Guam and are trying to invest it to income producing property. The Fangs are also interested in doing a 1031 type exchange to income producing properties here in Guam. I have not heard from them in awhile but I will contact them this week to see if there is an interest in their making an offer."

See, ¶ 2 of Ex. "H" to the Complaint. Nothing in the aforementioned language indicates that there was any contract of sale executed for the sale of Plaintiffs' properties. These parties were

merely prospective interested buyers. Thus, Plaintiffs failed to fulfill a condition precedent to sell the properties.

As it relates to the second condition precedent, i.e., the "alternative financing" commitment from First Hawaiian Bank, as discussed on page 10 of this Memorandum, Ex. "M" attached to the Complaint does not amount to a commitment. It was not a binding commitment by First Hawaiian Bank to provide "alternative financing" to Plaintiffs. Letters of commitment, unlike letters of indication, are letters for which a fee is paid, and constitute an option to the applicant to obtain the loan at the specified terms. See, Lowe, supra, at p. 725-728. Examining the four corners of Ex. "M" attached to the Complaint, it is explicitly clear that First Hawaiian Bank was never committed to provide such alternative financing and, thus, the second condition precedent was not fulfilled by Plaintiffs. Thus, HSBC's performance under the workout agreement was excused.

Notwithstanding the foregoing, HSBC's loan is freely assignable unless the assignment is precluded by the contract itself or forbidden by the statute. See, Restatement Second of Contracts 2d, § 317(2) (1981). Moreover, promissory notes are negotiable instruments under Guam law. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at § 3201, 3202. Thus, the Fourth Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

/ / /

/ / /

/ / /

**AS A MATTER OF LAW, PLAINTIFFS FIFTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS BARRED SINCE THE RELATIONSHIP BETWEEN HSBC AND KSI, WAS THAT OF A DEBTOR AND CREDITOR AND WITH ALAN AND LAJU SADHWANI WAS THAT OF GUARANTORS.**

Plaintiffs allege that "[b]ecause of the longstanding, close and confidential relationship between Defendant Bank and Plaintiffs, and by virtue of the trust and confidence which Defendant Bank encouraged Plaintiffs to place in the bank and which Plaintiffs did place in the bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable workout, Defendant Bank owed to Plaintiffs a duty of fiduciary care." See, ¶ 49 of the Complaint.

KSI was a borrower of HSBC and a relationship between a lender and a borrower is described as that of a debtor and a creditor, not a fiduciary. See, Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2nd Cir. 1984); Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982); Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989); Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927, 262 Cal.Rptr. 260, 278 (1989); Idaho First Nat. Bank v. David Steed & Associates, Inc., 121 Idaho 356, 825 P.2d 79 (1992); Dugan v. First Nat. Bank in Wichita, 227 Kan. 201, 606 P.2d 1009 (1980); Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194, N.W.2d 910 (1991); Klein v. First Edina Nat. Bank, 293 Minn. 418, 196 N.W.2d 619 (1972); Union State Bank v. Woell, 434 N.W.2d 712, (ND 1989); Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Ass'n, 786 S.W.2d 386, 391 (Tex.App. 1991); First Security Bank of Utah v. Banberry Development Corp., 786 P.2d 1326, 1332 (Utah 1990);

19

Tokarz v. Frontier Federal Savings & Loan Ass'n, 33 Wash.App. 456, 656 P.2d 1089 (1982); Lachenmaier v. First Bank Systems, Inc., 803 P.2d 614 (Mont. 1990); Comment, The Fiduciary Controversy: *Injection of Fiduciary Principles Into the Bank-Depositor and Bank-Borrower Relationships*, 20 Loyola L. Rev. 795, 803-804 (1987).

The principle enunciated above applies with equal force to the relationship between a lender and any guarantors of the borrower's loans. See, Manufacturers Hanover Trust Co., v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993); Bohm v. Union Bank of Tennessee, 794 F.Supp. 158, 161 (WD Pa. 1992); Saglio v. Chrysler First Commercial Corp., 839 F.Supp. 830, 833 (MD Fla. 1993); NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997); Continental Bank N.A. v. Everett, 760 F.Supp. 713, 717 (ND Ill 1991). Even as a depositor, it has long been held as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." Morse v. Crocker Nat. Bank, 142 Cal. App.3d 228, 232 (1983).

To be sure, borrowers and depositors expect banks to handle their loans and accounts properly. It is equally true that we expect car mechanics to repair our cars properly, and Payless Supermarkets to sell us untainted wholesome food. Most, if not all, consumer and commercial transactions are founded on some degree of trust in the other party; else why contract at all? One would simply be buying in a lawsuit. The expectation that the other party will perform his promise and the dependence of his doing so do not distinguish the lender-borrower and bank-depositor relationship from any contractual relationship. Unless the car mechanics and Payless Supermarkets are to be treated as fiduciaries, that common expectation and dependence cannot suffice to create the kind of quasi-fiduciary relationship which would justify the imposition of such duty or the extension of the tort of bad faith either. In short, no more trust is reposed in the

20

bank than in other ordinary parties to contractual relationships. The borrower or depositor is not especially vulnerable, unlike in the trustee or attorney-client context.

   **A.    Although under certain special circumstances a lender may be elevated to a fiduciary relationship, the Complaint is devoid of any facts delineating how the relationship of trust and confidence arose or any other special circumstances that would establish a fiduciary relationship.**

   HSBC concedes that under certain special circumstances, a lender may be elevated to a fiduciary relationship, however such facts are not alleged in the Complaint which means such circumstances did not exist in the relationship with HSBC. This may occur when a debtor is in control of a debtor[5] or where the lender has given extensive business advice to a customer who relies on that advice.

   For example, in <u>Credit Managers Assn. v. Superior Court</u>, the court found a fiduciary relationship, where (1) the borrower, against its will, was compelled to employ an agent of the Bank as a business consultant and (2) the borrower was compelled to surrender to the business consultant complete management control to such extent that the agent was to able to overrule and supplant the board of directors and shareholders. 51 Cal.App.3d 352, 359-60 (1975). The <u>Rutherford v. Rideout Bank</u>, case illustrates a situation where the bank has given extensive advice to its customer who has completely relied on it. The court found a fiduciary relationship where (1) the borrower was a widow who was unfamiliar with finance; (2) the borrower

---

[5] <u>Pepper v. Litton</u>, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939); <u>Taylor v. Standard Gas & Electric Co.</u>, 306 US 307, 83 L Ed 669, 59 S Ct. 543 (1939); <u>In re EMB Associate Inc.</u>, 18 BCD 617, 92 BR 9, 15 (BC RI 1988); <u>In re Teltronics Services, Inc.</u>, 29 BR 139, 171 (BC ED NY 1983) ("non-insider creditor will be held to a fiduciary standard only where his ability to command the debtor's obedience to his policy directives is so overwhelming that there has been, to some extent, a merger of identity"); <u>In re Vietri Homes, Inc.</u>, 58 BR 663 (BC Del 1986) (construction lender deemed to be fiduciary to other creditors); <u>In re Sleepy Valley, Inc.</u>, 93 BR 925, 932-933 (BC WD Tex 1988); <u>In re American Lumber Co.</u>, 5 BR 470, 477-478 (DC Minn. 1980); <u>In re N&D Properties, Inc.</u>, 799 F.2d 726 (11th Cir. 1986); <u>Security Pacific Nat. Bank v. Williams</u>, 213 Cal.App.3d 927, 262 Cal.Rptr. 260 (1989); <u>Garrett v. BankWest, Inc.</u>, 459 NW2d 833, 838 (SD 1990) (entering into workout agreement concerning repayment of loan did not place lender in "control" of borrower; bank was entitled to repayment and could impose such conditions to loan as any other secured creditor would want without such actions creating fiduciary relationship with debtor.

constantly and continually consulted with the bank in the management of her finances; and (3) the borrower relied wholly and exclusively on the bank for all financial matters and reposed complete trust and confidence in the bank regarding such matters. 11 Cal.2d 479, 481 (1938). However, the mere rendering of advice by the lender to a borrowers even if given in a sincere effort to help the borrower prosper, does not transform a business relationship into a fiduciary relationship. See, Union State Bank, supra, at p. 721.

Many courts have been reluctant to find that the mere existence of a relationship of trust and confidence, in and of itself, requires a finding that a lender is under a fiduciary duty to the borrower. See, e.g.: Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); In re Letterman Bros. Energy Securities Litigation, 799 F.2d 967 (5th Cir. 1986); In re Rexplore, Inc. Securities Litigation, 685 F.Supp. 1132 (ND Cal. 1988); Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986); Stenberg v. Northwestern Nat. Bank of Rochester, 307 Minn. 487, 238 N.W.2d 218 (1976); Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990).

No allegations have been made that HSBC was involved in actual day-to-day involvement in the management and operations of KSI or that HSBC had the power to compel KSI or its Guarantors to engage in unusual transactions which would give the requisite control by HSBC over KSI or its Guarantors. See, Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989).

As the Third Circuit stated in the Paradise Hotel Corp. case, it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table," given the parties essentially adversarial positions, supra, at p. 53 quoting Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982).

**B.** **Even assuming, *arguendo*, that Plaintiffs could prove that they were unsophisticated and trusted HSBC as a result of such a long relationship, a cause of action for breach of a fiduciary duty cannot be established as a matter of law.**

In Mans v. Peoples Bank of Imboden, the Supreme Court of Arkansas held that no fiduciary relationship is created merely because a customer trusts the bank to do some action and, likewise, the fact that the customer was unsophisticated or had been a bank customer for 23 years is also insufficient by itself to establish that a fiduciary relationship existed. Id. 10 S.W.3d 885, 889-890 (Ark. 2000); see also, Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993)(mere fact that a corporation has been a borrower from the same bank for many years is insufficient to transform the relationship into one which the bank is a fiduciary). Moreover, a fiduciary duty cannot be imposed unilaterally. See, Travel Services Network, Inc. v. Presidential Financial Corp. of MA, 959 F. Supp 135, 144 (D. Conn. 1997).

Based on the facts before this court, Plaintiffs complaint is utterly lacking of any facts so as to render Plaintiffs the marionette and HSBC the puppeteer. The facts of the instant case lack any circumstances transcending other than an ordinary lender-borrower relationship.

## VII.

**THE SIXTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.**

The Plaintiffs admit that they were advised by HSBC at least as early as February 17, 2003, that the bank would be ceasing operations on Guam, leaving island, that Plaintiffs promissory note would not be renewed or extended beyond August 31, 2003, and that full payment would be required on that date. Complaint at ¶ 7, Ex. "B". The Plaintiffs allege that

23

HSBC sold the subject promissory note and assigned the instruments securing the repayment of the note to Paradise Marine Corporation ("PMC") on August 11, 2003. Id. at ¶ 20.

In support of their Sixth Cause of Action, titled "Breach of Banking and Confidentiality Laws", Plaintiffs allege that certain unidentified "laws, rules and regulations" relating to confidentiality of customer "accounts and transactions" pertain to HSBC. Id. at ¶ 54. Plaintiffs assert that the sale of the promissory note to PMC "constitutes a breach of banking and confidentiality laws" by HSBC. Id. at ¶ 57. The Complaint does not claim that Plaintiffs have in any way been damaged by HSBC's alleged breach of such laws. For the reasons stated herein, the Sixth Cause of Action fails to state a cause of action against HSBC upon which relief can be granted.

It is axiomatic that a promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. Restatement (Second) of Contracts § 317(2) (1981). The Complaint does not claim that the subject promissory note prohibited sale or assignment by HSBC and Plaintiffs have failed to cite to any statute that forbids such sale. Instead, Plaintiffs assert, in conclusory fashion, that the sale and assignment of the promissory note to PMC "constitutes a breach of banking and confidentiality laws" by HSBC, even no such laws are cited by Plaintiffs. Complaint at ¶ 57.

The Sixth Cause of Action fails to state a claim against HSBC upon which relief can be granted because it has no legal basis. As shown above, the subject promissory note was a negotiable instrument which was freely assignable by HSBC to PMC. Plaintiffs have not, and

24

cannot, allege that the note contained any limitations on HSBC's right to sell and assign it and Plaintiffs have cited no law which prevents HSBC from selling or assigning the note. HSBC had the legal right to sell the subject promissory note and no cause of action for breach of alleged "confidentiality" arises.

There is ample reason why no such restrictions exist. If the law were as the Plaintiffs have alleged in the Sixth Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae'), would be virtually impossible.

Finally, Plaintiffs have failed to allege any damages from HSBC's alleged breach of "confidentiality". Without damages, Plaintiffs have no cause of action. The Sixth Cause of Action must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

*Respectfully submitted* on this __30__ day of December 2003.

LAW OFFICES OF BRONZE & TANG
A Professional Corporation

By:_____
JACQUES G. BRONZE
*Attorneys for Defendant*
*Hongkong and Shanghai Banking*
*Corporation, Ltd.*

25

# CERTIFICATE OF SERVICE

**I, JACQUES G. BRONZE**, do hereby certify that I have caused a copy of Defendant

Hongkong and Shanghai Banking Corporation, Ltd.'s Memorandum of Points and Authorities in

Support of Motion to Dismiss to be personally served upon the following:

Joaquin C. Arriola, Esq.
Anita P. Arriola, Esq.
**ARRIOLA, COWAN & ARRIOLA**
Suite 201, C&A Professional Bldg.
259 Martyr Street
Hagåtña, Guam 96910

*Attorneys for Plaintiffs*

**EXECUTED** this _30_ day of December 2003.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By:_____

**JACQUES G. BRONZE**
*Attorneys for Defendant*
*Hongkong and Shanghai Banking*
*Corporation, Ltd.*

26

EXHIBIT 2

F<sub></sub>
PENGAD 800-631-6989



Law Offices
# ARRIOLA, COWAN, ARRIOLA

APR 1 2 2004

RECEIVED

BY: _____ TIME: 1:22 ᵖᵐ

FILED
DISTRICT COURT OF GUAM

APR - 9 2004

MARY L. M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| ALAN SADHWANI *et al.*, | Civil Case No. 03-00036 |
| Plaintiffs, | |
| vs. | |
| HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., *et al.*, | ORDER |
| Defendants. | |

On February 13, 2004, this case came before the Court for hearing on a Motion to Dismiss filed by defendant Hongkong and Shanghai Banking Corp., Ltd. ("HSBC"). Present at the hearing were Attorneys Anita P. Arriola and Joaquin C. Arriola for the Plaintiffs. Attorney Jacques A. Bronze appeared on behalf of HSBC. At the conclusion of the hearing, the Court took the motion under advisement. The Court now issues this written Order setting forth the bases for its rulings herein.

### FACTS

The Complaint raises six separate causes of action which arise out of a long relationship between the parties. The Plaintiffs have been customers of HSBC for approximately 25 years. Complaint at ¶5. The Plaintiffs first went into business as Tick Tock, in 1978. Id. Mr. Sadhwani met the then manager of HSBC in 1978 and has since banked exclusively with HSBC (with the exception for credit card deposits to Citibank because HSBC, a foreign corporation, did not accept credit card deposits from merchants). Id. The Plaintiffs assert that all of their deposits and borrowings were with HSBC exclusively. Id. Over the 25 years, the Plaintiffs have

1  deposited about $100 million with HSBC. Id. The Plaintiffs also socialized with the bank

2  managers (who changed every 3 years) at Mr. Sadhwani's home, at the home of the bank

3  managers, or in restaurants. Id. By virtue of this long-standing relationship, the Plaintiffs assert

4  that they placed explicit faith, trust, and confidence in HSBC, trusting that the bank and its

5  officers/employees would deal with them in a fair and honest manner. Id.

6  In September 2002, the Plaintiffs had an outstanding loan balance of over $6.8 million

7  with HSBC (the "Loan"). When HSBC determined it would discontinue its operations in Guam,

8  it "placed pressure" on the Plaintiffs to pay off the Loan.[1] Thus, on March 5, 2003, the parties

9  entered into a Promissory Note Modification Agreement (see Exhibit C to Complaint), which

10  extended the maturity date of the Note to August 31, 2003.

11  Prior to March 5, 2003, however, the parties met on February 13, 2003. HSBC sent a

12  letter to Mr. Sadhwani on February 17, 2003 (see Exhibit B to Complaint). This letter purports

13  to memorialize the February 13, 2003 meeting wherein the parties discussed, among other things,

14  extending the maturity date of the Note to the end of August 2003 and Mr. Sadhwani's listing of

15  certain securing real estate properties with Century 21.

16  Following the execution of the Promissory Note Modification Agreement, on

17  March 6, 2003, HSBC sent a letter to Mr. Sadhwani (see Exhibit D to Complaint). The letter

18  reiterated the parties' discussions on March 5, 2003. The letter indicates that Mr. Sadhwani had

19  agreed to provide HSBC with a written plan by March 12, 2003. Said written plan would explain

20  how Mr. Sadhwani would repay the Note by the due date. Additionally, the letter stated that

21  HSBC was "prepared, without in any way committing itself at this stage, to consider a discount

22  on the loan balance if [Mr. Sadhwani] elect[ed] to give the secured properties to [HSBC]. This

23  'friendly foreclosure' method would transfer the burden of property liquidation to [HSBC] and

24  minimise (sic) legal fees for both parties." Exhibit D to Complaint at ¶3. HSBC went on to state

25  that if Mr. Sadhwani wished "to explore this approach," he should assign a value to the property

26

27  ────────────────
[1] HSBC's decision to discontinue its operations in Guam appears to be the propelling event

28  in this lawsuit.

- 2 -

1   a submit a written proposal for HSBC's consideration. Id.

2       On March 13, 2003, HSBC again wrote to Mr. Sadhwani. See Exhibit E to Complaint.
3   The letter stated that Mr. Sadhwani had failed to provide the written plan by March 12, 2003 as
4   agreed upon. HSBC stated that it would need the written plan by that day (March 13, 2003) so
5   that it could "understand how [Mr. Sadhwani] intend[s] on repaying the loan by the revised
6   maturity date." Id. The bank also urged Mr. Sadhwani to "consider [its] recommended approach
7   under 'friendly foreclosure.'" Id.

8       On March 14, 2003, Mr. Sadhwani wrote to HSBC. See Exhibit F to Complaint. Mr.
9   Sadhwani stated that he was "working with a bank to pay off [the] outstanding loan with
10  [HSBC]." Id. Mr. Sadhwani requested more information about the "friendly foreclosure" since
11  he did not understand what exactly HSBC wanted. Id. Mr. Sadhwani also asked HSBC to
12  explain the "discounting" and how that would happen. Id.

13      On March 21, 2003, HSBC once again wrote to Mr. Sadhwani. See Exhibit G to
14  Complaint. This letter (which the Plaintiffs refer to as the "work out agreement" in the
15  Complaint and in its Opposition Brief) detailed several options which HSBC gave to the
16  Plaintiffs. See id. The first option was that Mr. Sadhwani could continue to list his properties
17  with Century 21. If he was able to sell the property at market price and had the listing
18  agreements, the Bank "may consider tolling collection efforts pending the closing in escrow of
19  written accepted purchase offers with net proceeds paid to [HSBC]." Id. In the event he was
20  unable to sell the properties through Century 21, Mr. Sadhwani's second option was that HSBC
21  "may consider accepting deeds in lieu of foreclosure at negotiated values." Id. Finally, Mr.
22  Sadhwani could avoid the entire process if he were "seriously making an effort to refinance [the]
23  loan facility." Id. If Mr. Sadhwani was proceeding via this route, HSBC requested "immediate
24  confirmation of your loan application and efforts to obtaining refinancing." Id. HSBC stated
25  that it was "ready, able and willing to assist [Mr. Sadhwani's] negotiation of replacement
26  financing." Id. In conclusion, HSBC requested Mr. Sadhwani to respond to the letter with the
27  required information by April 4, 2003.

28      In reliance upon this "work out agreement," the Plaintiffs assert that they took all

- 3 -

1    necessary steps to either sell their properties or try to obtain alternate financing. On

2    April 3, 2003, Century 21 provided Mr. Sadhwani with a letter detailing its efforts to market the

3    Plaintiffs' properties. See Exhibit H to Complaint. Additionally, Mr. Sadhwani wrote to HSBC

4    on April 4, 2003, informing it that he tried to get the refinancing but had not yet received a

5    confirmation of the loan. See Exhibit J to Complaint. Also, Mr. Sadhwani stated that he was

6    still trying to sell the properties but that if he was unsuccessful, he would hand them over to

7    HSBC. Mr. Sadhwani pleaded for "sometime" since he was working to satisfy the outstanding

8    loan. Id.

9         On July 18, 2003, the Plaintiffs received from HSBC a "Notice of Intent to Sell Loan"

10   (dated July 15, 2003). See Exhibit K to Complaint.

11        On July 22, 2003, Mr. Underwood, the Guam Manager of HSBC, met with Mr. Sadhwani

12   at Mr. Sadhwani's office. See Complaint at ¶ 17. Mr. Sadhwani pleaded with Mr. Underwood

13   not to sell the Loan and offered him $3 million to settle the Loan. Mr. Underwood stated that

14   HSBC would not accept that amount. Thus, Mr. Sadhwani asked whether $3.5 million would be

15   sufficient. Mr. Underwood stated "Get me the money or guarantee, and I will try to stop the

16   sale." Id.

17        On July 31, 2003, Mr. Sadhwani wrote to Mr. Underwood and detailed his attempts to

18   settle the Loan. See Exhibit L to Complaint. Thereafter, Messrs. Sadhwani and Underwood met

19   again, and Mr. Underwood assured Mr. Sadhwani that if he received the offer (*i.e.*, money or

20   bank letter) by August 8, 2003, Mr. Underwood would "see what [he could] do." Complaint

21   at ¶ 18.

22        On August 5, 2003, Mr. Sadhwani sent HSBC a copy of a letter from First Hawaiian

23   Bank See Exhibit M to Complaint. The letter was an "indication of the terms and conditions"

24   for financing a loan to the Plaintiffs to pay off the HSBC Loan. Id. The letter explicitly stated

25   that it should "not be construed as a commitment on the part of [First Hawaiian Bank], and is

26   only provided for indication purposes only." Id.

27        On August 11, 2003, HSBC sent Mr. Sadhwani a letter informing him that as of

28   August 11, 2003, the Loan was sold to Paradise Marine Corporation. See Exhibit O to

- 4 -

1  Complaint.

2  Thereafter, the Plaintiffs brought suit against HSBC and Doe defendants in the Superior

3  Court of Guam asserting six (6) separate causes of action. HSBC removed the action to this

4  Court based on diversity jurisdiction. Shortly thereafter, HSBC brought the present Motion to

5  Dismiss. The Plaintiffs filed an Opposition Brief, and HSBC filed a Reply Brief. Because

6  separate grounds are raised to dismiss the various causes of action, the Court will address each

7  one in turn.

8  **ANALYSIS**

9  Standard for Motions to Dismiss

10  As noted by the Plaintiffs, a motion to dismiss for failure to state a claim is viewed with

11  disfavor and is rarely granted. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997)

12  (citing Hall v. City of Santa Barbara, 833 F.2d 1270, 1274) (9th Cir. 1986), *cert. denied*, 485

13  U.S. 940, 108 S. Ct. 1120 (1988)(overruled on other grounds)). This is because courts prefer to

14  rule on the merits of a case rather than dismiss on the pleadings. Cabo Distrib. Co., Inv. v.

15  Brady, 821 F. Supp. 601, 608 (N.D. Cal. 1992). Thus, "a complaint should not be dismissed . . .

16  unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

17  which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102

18  (1957). All allegations of material fact must be taken as true and construed in the light most

19  favorable to the plaintiff. Desaigoudar v. Meyercord, 223 F.3d 1020, 1021 (9th Cir. 2000), *cert.*

20  *denied*, 532 U.S. 1021, 121 S. Ct. 1962 (2001). The Court's role at this stage of the proceedings

21  is not to evaluate the strengths or weaknesses of the claims. See Scheuer v. Rhodes, 416

22  U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974) (In evaluating a Rule 12(b)(6) motion to dismiss

23  "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

24  to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a

25  recovery is very remote and unlikely but that is not the test.")(overruled on other grounds). With

26  this standard in mind, the Court now turns to the arguments raised in support of the dismissal of

27  each cause of action.

28  ///

1    1st Cause of Action – Breach of Covenant of Good Faith & Fair Dealing

2    The first count of the Complaint alleges that HSBC acted in bad faith and failed to deal

3    fairly with the Plaintiffs when it refused to agree to a commercially reasonable workout and

4    refused to accept the alternative financing obtained by the Plaintiffs. See Complaint at ¶29.

5    HSBC argues that this cause of action should be dismissed for two reasons. First, HSBC

6    contends that such a cause of action is not recognized by Guam law outside of insurance actions.

7    In the alternative, HSBC argues that even if the cause of action was legally cognizable, the

8    Plaintiffs fail to allege facts to support such a claim.

9    As to HSBC's first argument, it is important to note that under the *Erie Doctrine*, in

10    diversity cases, the federal court must apply state substantive law. Erie R. Co. v. Tompkins, 304

11    U.S. 64, 58 S. Ct. 817 (1938). The parties agree on this point. Thus, the focus is on whether

12    Guam law would permit such an action in tort.

13    Most bad faith claims stemming from a contractual relationship arise in the insurer-

14    insured context, and HSBC's motion cites to a plethora of these cases. HSBC's motion also

15    notes that many courts have refused to recognize a bad faith action when a duty is breached in

16    commercial contract cases outside of the insurance arena, holding instead that the aggrieved party

17    merely has a breach of contract claim. HSBC contends that this is "an issue of first impression in

18    Guam courts," and thus this Court must use "its own best judgment" in predicting how the Guam

19    Supreme Court would rule on the matter. Motion at 1-2. However, as the Plaintiffs point out,

20    while the Guam Supreme Court has not ruled on the issue, a Superior Court of Guam judge has

21    held that such a cause of action is cognizable under Guam law. See Ada's Inc., *et al.* v. First

22    Hawaiian Bank, *et al.*, Superior Court of Guam Civil Case No. CV0785-02, Decision and Order

23    (July 7, 2003) (authored by Judge Joaquin V.E. Manibusan, Jr.), attached as Exhibit 1 to

24    Plaintiffs' Opposition Brief. The Plaintiffs urge the Court to follow the reasoning established in

25    Ada by Judge Manibusan. Because a Guam court has ruled on the matter, the Plaintiffs assert

26    that all the other cases cited to by HSBC are irrelevant since the Court must apply Guam

27    substantive law.

28    The facts of Ada are similar to those in the present case. There, the plaintiffs were

- 6 -

1   customers of First Hawaiian Bank ("FHB"). The plaintiffs sought damages for breach of the

2   covenant of good faith and for breach of contract. FHB moved to dismiss and argued that when a

3   duty in a commercial contract is breached, the resulting claim is merely one for breach of

4   contract and no tort damages are available. The Ada decision, however, noted that

5       [t]he concept of a bad faith action within the context of a breach of a commercial
        contract in the banking area is relatively new and changing. Courts are beginning
6       to see that such actions are plausible in the context of certain pleadings. Some see
        no difference between the problem of a bank customer and that of an insured.
7       Ada at 9.

8   The Ada decision analyzed a variety of cases on the issue and held that

9       when a customer complains of a breach by a bank of a commercial contract a
        breach of contract action should be an appropriate remedy. **However, a bad faith**
10      **action commenced by a customer should not be dismissed simply because**
        **there is an available remedy under a breach of contract claim or merely**
11      **because of the filing of the breach of contract claim.** It is after all the general
        rule of law that a bank is required to adhere to an implied duty of good faith and
12      fair dealing toward its customers. A bank's failure to adhere to this implied duty
        should not bar a bad faith action merely because there is a remedy in a breach of
13      contract action. Furthermore, the fact that there is such a duty on banks with
        regards to their relationships with their customers indicate[s that a bad faith
14      action] . . . is authorized under the law when facts alleging such bad faith are
        plead. **Plaintiffs must allege some act of dishonesty by the bank and allege**
15      **that the bank acted outside accepted commercial practices. When Plaintiffs**
        **do make such allegations, an appropriate cause of action is raised by the**
16      **Plaintiff.** Id. at 11 (emphasis added).

17

18      The Court finds Judge Manibusan's decision to be well reasoned. Based on this decision,

19  it appears that in the banking arena, Guam law would recognize a cause of action for breach of

20  bad faith arising from a breach of a commercial contract between a customer and a bank.

21  Nevertheless, HSBC urges the Court to ignore this local case on the basis that the Ada decision

22  relied on the case of Seamen's Direct Buying Service, Inc. v. Standard Oil Co., 206 Cal.

23  Rptr. 354 (1984), yet the Seamen's case and its progeny were overruled by the California

24  Supreme Court decision in Freeman & Mills Inc. v. Belcher Oil Co., 44 Cal. Rptr.2d 420 (1995).

25  This argument is unconvincing. The Freeman case was decided in 1995. The Ada decision was

26  issued in July 2003. It would be reasonable to presume that Judge Manibusan was aware that

27  Freeman overruled the Seamen's case, yet, because California caselaw is merely persuasive and

28  not controlling, chose to follow the reasoning in Seamen's.

- 7 -

1    Additionally, it is important to note that neither the Seaman's or Freeman case involved
2  the breach of a commercial contract between a bank and a customer. Rather, the Seaman's case
3  involved a would-be dealer and an oil company, while the Freeman case concerned a contract
4  between an accounting firm and an oil company.

5    While the Freeman case overruled the Seamen's decision, the California Supreme Court
6  did so "in favor of a general rule precluding tort recovery for noninsurance contract breach, *at*
7  *least in the absence of violation of 'an independent duty arising from principles of tort law'* other
8  than the bad faith denial of the existence of, or liability under, the breached contract." Freeman,
9  900 F.2f at 679-80 (internal citation omitted) (emphasis added). The California Supreme Court
10  affirmed the finding of the Court of Appeal majority that no "special relationship" between the
11  parties existed to justify a tort theory of recovery. Id. at 671. Thus, the Ada decision does not
12  conflict with the Freeman holding as Judge Manibusan found the existence of a "special
13  relationship" in that banks have an implied duty of duty of good faith and fair dealing toward its
14  customers. Similarly, in this case the Complaint does allege sufficient facts to support a finding
15  that a "special relationship" existed between the Plaintiffs and HSBC.

16    The Court is bound by substantive local law on this issue. Although there is no definitive
17  ruling by the Guam Supreme Court, the Court has before it a valid and well-reasoned decision by
18  the Superior Court of Guam. The Court cannot and will not simply ignore this local decision
19  which recognizes a cause of action available to plaintiffs under Guam law. Accordingly, the
20  Court rejects HSBC's contention that the first cause of action should be dismissed as a matter of
21  law.

22    As for its second argument, HSBC maintains that the Plaintiffs' allegations are
23  insufficient to support such a claim. The Court notes it must assume that all facts in the
24  Complaint are true and must draw all reasonable inferences in the Plaintiffs' favor. The Court
25  does not have the option, at this stage, of evaluating the strengths and weaknesses of the claims.
26  Based on this standard, the Complaint sufficiently alleges facts that HSBC acted dishonestly and
27  that it acted outside accepted commercial practices. Accordingly, the motion to dismiss the First
28  cause of action must be denied.

- 8 -

1          2nd Cause of Action – Intentional Misrepresentation

2          The Plaintiffs' Second cause of action asserts that HSBC intentionally misrepresented

3    that it was interested in pursuing a commercially reasonable work out, when it had no desire or

4    intention to work out the Loan. See Complaint at ¶36.

5          HSBC raises two arguments why this cause of action should be dismissed. First, HSBC

6    argues that because the Plaintiffs themselves failed to comply with the work out agreement by

7    failing to obtain the alternative financing (a condition precedent), it should not be held

8    responsible under the work out agreement. HSBC, however, fails to cite any authority for this

9    proposition. The Plaintiffs should not be barred from alleging a claim against HSBC for

10   intentional misrepresentation just because the they were only able to obtain an indication letter

11   and not a commitment letter. The indication letter does show action by the Plaintiffs in

12   accordance with the work out agreement.

13         HSBC's second argument is that its actions (or alleged misrepresentations) could not give

14   rise to this cause of action because they were "mere promises of future conduct." Motion

15   at 12-14. HSBC, however, misses the whole point behind the Plaintiffs' allegations. The

16   Plaintiffs do not allege that HSBC promised to take action in the future but failed to do so.

17   Rather, the Complaint alleges that HSBC made specific representations to the Plaintiffs knowing

18   full well that it had no intention of performing. Specifically, the Complaint alleges that HSBC

19   represented to the Plaintiffs that it would accept sales of the securing real properties and/or

20   alternate financing when in fact HSBC was in the process of selling the Loan, yet it continued to

21   let the Plaintiffs believe such representations even after the Loan was sold. Based on these

22   allegations, the Complaint sufficiently establishes a claim for intentional misrepresentation.

23   Thus, HSBC's motion to dismiss the Second cause of action must also be denied.

24         3rd Cause of Action – Breach of Contract: Promissory Note Modification Agreement

25         The Third cause of action asserts that HSBC breached the March 5, 2003 Promissory

26   Note Modification Agreement entered into by the parties. Specifically, HSBC breached said

27   agreement by (1) failing to review the Note every 6 months, see Complaint at ¶41, and (2) selling

28   the Loan to Paradise Marine Corporation, see Complaint at ¶ 42.

- 9 -

1    HSBC contends that the allegations supporting this cause of action fail to state a claim

2   against HSBC upon which relief may be granted. Specifically, HSBC maintains that under

3   Guam law, a promissory note which evidences a loan is a negotiable instrument. 13 GUAM CODE

4   ANN. § 3104. Additionally, under Guam law a right arising out of an obligation is the property

5   of the person to whom it is due and may be freely transferred. 18 GUAM CODE ANN. § 81102.

6   There is nothing in the March 5, 2003 Promissory Note Modification Agreement which prohibits

7   a transfer, sale, or assignment of the Note. Thus, HSBC asserts that selling the Loan to Paradise

8   Marine Corporation ("PMC") could not form the basis for a breach of contract action.

9    The Plaintiffs do not discuss this issue in detail in their Opposition Brief. The Plaintiffs

10   do state "when HSBC sold the Loan to PMC, HSBC breached the Loan agreement, **as amended**

11   **by the workout agreement.**" Plaintiffs' Opposition Brief at 11 (emphasis added). As HSBC

12   notes, the Plaintiffs are confined by the actual words of the Complaint, and, unfortunately, the

13   Third cause of action does not make any reference to the purported "work out agreement."

14   Additionally, HSBC states that the Plaintiffs' argument that HSBC somehow breached

15   the Promissory Note Modification Agreement by not reviewing the Loan every six months is

16   without merit. The Promissory Noted Modification Agreement was entered on March 5, 2003,

17   yet the maturity date of the Note was set at August 31, 2003. The maturity date was less than 6

18   months away. Thus, what benefit is there to a review of the Note after the Note was supposed to

19   be paid in full.

20   HSBC's motion to dismiss as to the Third cause of action is hereby granted. Even

21   viewing the facts in a light most favorable to the Plaintiffs, the Complaint fails to state a claim

22   against HSBC upon which relief may be granted. However, this failure may be cured by

23   amendment. Thus, dismissal of this cause of action is without prejudice.

24       4th Cause of Action – Breach of Contract: Work Out Agreement

25   The Plaintiffs' Fourth cause of action asserts that HSBC breached the work out agreement

26   (Exhibit G to Complaint). Specifically, ¶46 of the Complaint states that

27       [HSBC] failed to assist Plaintiffs' negotiations for replacement financing; refused
        to accept the replacement financing as detailed in the terms and conditions for
28       alternative financing from [FHB]; failed to give a "hairline discount" on the Loan

- 10 -

1   when Plaintiffs obtained the terms and conditions for alternative financing from
2   [FHB]; and sold the Loan to [PMC] instead of complying with the parties' work
    out agreement. All of these acts constitute breaches of the work out agreement.

3   HSBC asserts that dismissal of this cause of action is warranted. HSBC contends that

4   since the Plaintiffs failed to fulfill the express conditions precedent contained in the alleged work

5   out agreement, this failure terminates HSBC's reciprocal obligation to perform under the said

6   agreement. A similar argument was raised by HSBC in an attempt to dismiss the Second cause

7   of action, but rejected by the Court. Likewise, the Court rejects the argument as it pertains to the

8   Fourth cause of action. Moreover, as the Plaintiffs assert, the requirements of actually selling the

9   properties and obtaining a commitment letter for alternate financing cannot be construed as

10  "conditions precedent" since the work out agreement does not specify a time limitation for

11  Plaintiffs to provide evidence of such efforts. Thus, only a reasonable length of time for

12  performance is required. The Plaintiffs contend that HSBC did not give the Plaintiffs a

13  reasonable period of time to obtain the alternate financing or close sales on the properties.

14  Unlike the Third cause of action which failed to sufficiently state a cause of action against

15  HSBC, in this case, construing the facts contained in the Complaint as true and resolving all

16  reasonable inferences in favor of the Plaintiffs, the Court finds that the Complaint sufficiently

17  alleges a cause of action for breach of the work out agreement. Accordingly, HSBC's motion as

18  to the Fourth cause of action is hereby denied.

19  5th Cause of Action – Breach of Fiduciary Duty

20  The Fifth cause of action asserts a breach of fiduciary duty claim against HSBC. The

21  Complaint describes the fiduciary relationship as follows:

22  [b]ecause of the longstanding, close and confidential relationship between
    [HSBC] and Plaintiffs, and by virtue of the trust and confidence which [HSBC]
23  encouraged Plaintiffs to place in [it] and which the Plaintiffs did place in [HSBC],
    as well as the assurances that [HSBC] gave Plaintiffs that it would agree to a
24  commercially reasonable work out, [HSBC] owed to Plaintiffs a duty of fiduciary
    care. Complaint at ¶49.

25

26  Specifically, the Complaint asserts specific acts by HSBC which resulted in the breach of

27  this fiduciary duty:

28  A. By disclosing confidential information, including but not limited to, account

- 11 -

and deposit information, loan payment history, and other banking transactions between Plaintiffs and [HSBC], to [PMC], a non-bank and purchaser of Plaintiffs' Loan with [HSBC];

B. By failing to assist Plaintiffs' negotiations for replacement financing, as [HSBC] had represented;

C. By refusing to accept the replacement financing as detailed in the terms and conditions for such financing from FHB and as required by the parties' work out agreement;

D. By failing to give a "hairline discount" on Plaintiffs' Loan when Plaintiffs obtained the terms and conditions for alternative financing from [FHB];

E. By selling the Loan to [PMC], a Guam corporation that is not licensed to conduct banking and has never conducted banking business in Guam.

Complaint at ¶50.

HSBC acknowledges that under certain special circumstances, a lender may be found to have a fiduciary relationship with a borrower. However, HSBC maintains that in this case, the Fifth cause of action should be dismissed because the Complaint is devoid of any facts delineating how the relationship of trust and confidence arose or any other special circumstances that would establish a fiduciary relationship.

Again, the Court cannot evaluate the strengths and weaknesses of the claims. Rather, the Court must accept as true the facts alleged in the Complaint, and it must also draw all reasonable inferences in favor of the Plaintiffs. Based on this standard and the facts alleged, the Complaint sufficiently states a cause of action for breach of fiduciary duty. Accordingly, HSBC's attempts to dismiss the Fifth cause of action is denied.

### 6th Cause of Action – Breach of Banking and Confidentiality Laws

The Sixth and final cause of action alleged in the Complaint is that

[a]bsent the consent of the plaintiffs, [HSBC] expressly or impliedly agreed that it . . . [would] not divulge to third persons the terms or the state of Plaintiffs' accounts with [HSBC], any of their transactions with [HSBC], or any other information about the Plaintiffs acquired by [HSBC] through the 25 years of their banking relationship. The negotiation, sale, assignment, and transfer of Plaintiffs' Loan to [Paradise Marine Corporation] constitutes a breach of banking and confidentiality laws by [HSBC]." Complaint at ¶57.

HSBC complains that this cause of action must be dismissed because it (1) has no legal basis and (2) fails to allege any damages from the alleged breach. HSBC asserts that the Complaint does not cite to any law – federal or local – which would forbid it from assigning its rights under the Note to a third party. Additionally, the Complaint fails to allege any damages

- 12 -

1  which resulted from the purported breach, and without damages Plaintiffs have no cause of

2  action.

3      As to the first argument, HSBC is correct. Although the Federal Rules of Civil Procedure

4  permit liberal "notice pleading" and do not require specificity with regard to the correct legal

5  theory or statute, <u>see</u> Fed. R. Civ. P. 8(a), the complaint must contain sufficient notice to permit

6  HSBC to prepare a defense. Here, the Complaint merely alleges a breach of "banking and

7  confidentiality laws." The banking industry is a highly regulated one. There are a myriad of

8  federal and local laws with which banks must comply. It is unreasonable to expect HSBC to sort

9  through all banking laws and regulations to determine which one (or ones) it allegedly violated.

10      Additionally, the Plaintiffs have failed to allege how they have been injured or damaged

11  by this alleged "breach of banking and confidentiality laws." Thus, the Court must dismiss this

12  cause of action, however, such dismissal is without prejudice. The Plaintiffs are permitted to

13  amend their Complaint to re-assert this cause of action and to specify what law(s) HSBC

14  allegedly violated.

15                                     **CONCLUSION**

16      The Court hereby DENIES the Motion to Dismiss as to the First, Second, Fourth, and

17  Fifth Causes of Action. Additionally, the Court GRANTS the Motion to Dismiss as to the Third

18  and Sixth Causes of Action, which are dismissed without prejudice. The Plaintiffs are hereby

19  permitted to amend their Complaint to re-assert the dismissed causes of action.

20      SO ORDERED this _9th_ day of April, 2004.

21

22

23                                     JOHN S. UNPINGCO

24                                     District Judge

25

26

27

28

# JACQUES G. BRONZE
**LAW OFFICES OF BRONZE & TANG**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 647-7671

# RICHARD A. PIPES
**LAW OFFICES OF RICHARD A. PIPES**
A Professional Corporation
BankPacific Building, 2nd Floor
825 South Marine Corp Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001



DISTRICT COURT FILED OF GUAM

AUG 3 0 2004

MARY L. M. MORAN
CLERK OF COURT

*Law Offices*
ARRIOLA, COWAN, ARRIOLA

AUG 3 0 2004

RECEIVED
BY: _____ TIME: 3:54

*Attorneys for Defendant Hongkong and Shanghai Banking Corporation, Ltd.*

### DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation, )<br><br>     Plaintiffs, )<br><br>     v. )<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., et al., )<br><br>     Defendants. ) | CIVIL CASE NO. 03-00036 |

### HONGKONG AND SHANGHAI BANKING CORPORATION, LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST, THIRD, FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION

**EXHIBIT**
**3**

# TABLE OF AUTHORITIES

**Cases**

Bank of America v. City and County of San Francisco, 309 F.3d 551,
557-58 (9th Cir. 2002), cert. den., 123 S. Ct. 2220 .............................................................. 14

Bohm v. Union Bank of Tennessee, 794 F. Supp. 158,
161 (WD Pa. 1992) .................................................................................................................. 11

Brown v. Lynn, 392 F. Supp. 559, 561-62 (N.D. Ill. 1975) ........................................................ 17

Citizens First Nat'l Bank v. Moe Motor Co., 813 P.2d
400, 403 (Mont. 1991) .......................................................................................................... 5, 14

Continental Bank N.A. v. Everett, 760 F. Supp. 713,
717 (ND III 1991) .................................................................................................................... 11

Cooperative Centrale Ruiffeisern - Boerenleen Bank B.A. v. Bailey,
(C.D. Cal; 1989) 710 F. Supp. 737 ......................................................................................... 5

Credit Managers Assn. v. Superior Court, Cal. App. 3d
352, 359-60 (1975) ................................................................................................................ 12

Crisci v. Security Ins. Co., 66 Cal.2d 425, 432,
fn.3, 58 CR 13 (1967) .............................................................................................................. 3

Denholm v. Houghton Mifflin Co., 912 F.2d 357, 361 (9th Cir. 1990) ...................................... 4

Ebenhoh v. Production Credit Association of Southeast Minnesota,
426 N.W.2d 490, 493 (Minn. App. 1988) ............................................................................... 17

Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809,
169 CR 691 (1979) ............................................................................................................... 2, 3

First State Bank of Hudson County v. U.S., 599 F.2d 558,
564 (3rd Cir. 1979), cert. den., 444 U.S. 1013 (1980) ......................................................... 17

Foley v. Interactive Data Corp., 47 Cal. 3d 654,
684-685, 254 CR 211 (1988) ............................................................................................... 2, 4

Freeman & Mills Inc. v. Belcher Oil Co.,
44 CR2d 420 (Cal. 1995) ..................................................................................................... 3, 4

Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990) ......................................................... 13

**Cases**

Graney Development Corp. v. Taksen, 400 N.Y.S. 2d 717 (Sup. 1978),
aff'd, 411 N.Y.S. 2d 756 (App. Div. 1978) ................................................................................. 16

Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993) ....................................................... 3

In re Letterman Bros. Energy Securities Litigation,
799 F.2d 967 (5th Cir. 1986) .................................................................................................... 13

In re Rexplore, Inc. Securities Litigation, 685 F. Supp.
1132 (ND Cal. 1988) ................................................................................................................ 13

Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986) ................................................................... 13

Mans v. Peoples Bank of Imboden, 10 S.W.3d 885, 889-890 (Ark. 2000) ................................ 13

Manufacturers Hanover Trust Co., v. Yanakas,
7 F.3d 310, 318 (2nd Cir. 1993) ........................................................................................ 11, 14

Morse v. Crocker Nat. Bank, 142 Cal. App. 3d 228, 232 (1983) .............................................. 11

NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997) ........................................................ 11

Northwestern Bank v. Neal, (S.C.; 1978) 248 S.E. 2d. 585 ................................................... 5, 6

Paradise Hotel Corp. v. Bank of Nova Scotia,
842 F.2d 47, 53 (3rd Cir. 1988) ............................................................................................... 13

Production Credit Assn. of Midlands v. Eldin Haussermann Farms, Inc.,
529 N.W.2d 26 (Neb. 1995) ....................................................................................................... 5

Regency Savings Bank, F.S.B. v. Merritt Park Lands Associates, 139 F. Supp. 2d 462,
2001 U.S. Dist. LEXIS 4406 (S.D.N.Y. 2001) ......................................................................... 7

Reno v. DH Cattle Holdings Company, (Sup. Ct. App. Div. N.Y., 1993)
196 A.D. 2d 670 ........................................................................................................................ 6

Rutherford v. Rideout Bank, 11 Cal.2d 479, 481 (1938) ......................................................... 12

Saglio v. Chrysler First Commercial Corp., 839 F. Supp.
830, 833 (MD Fla. 1993) .......................................................................................................... 11

Seamen's Direct Buying Service v. Standard Oil Co.,
206 CR 354 (1984) ..................................................................................................................... 3

## Cases

State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d
231, 2002 U.S. Dist. LEXIS 15265 (S.D.N.Y. 2002) ............................................................. 7

State v. Security Nat'l Bank & Trust Co., 922 P.2d
600, 603 n.4 (Okla. 1996) ................................................................................................... 7

Stenberg v. Northwestern Nat. Bank of Rochester,
307 Minn. 487, 238 N.W.2d 218 (1976) ............................................................................ 13

Travel Services Network, Inc. v. Presidential Financial Corp. of MA,
959 F. Supp 135, 144 (D. Conn. 1997) ............................................................................... 14

Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989) ............................................... 13

Wallis v. Superior Court, 160 Cal. App. 3d 1109,
1116-18, 207 CR 123, 127-129 (1984) ........................................................................... 4, 5

Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982) ............................................................. 13

## Statutes and Rules

13 G.C.A. § 3104 ................................................................................................................. 10, 16

13 G.C.A. § 3105(2)(a) .......................................................................................................... 5, 6

13 G.C.A. § 3110(1) .............................................................................................................. 8

13 G.C.A. § 3119(2) .............................................................................................................. 5, 6

13 G.C.A. § 3201 ................................................................................................................. 10, 16

13 G.C.A. § 3202 ................................................................................................................. 10, 16

15 U.S.C. § 6802(b)(1) ......................................................................................................... 14

15 U.S.C. § 6802(e)(1)(C) ..................................................................................................... 14

15 U.S.C. § 6802(e)(7) ......................................................................................................... 14, 15

**Statutes and Rules**

18 G.C.A. § 81102 ............................................................................................................... 10

18 G.C.A. § 81103 ............................................................................................................... 10

18 G.C.A. § 85102 ................................................................................................................. 9

18 G.C.A. § 85501 ............................................................................................................... 10

18 G.C.A. § 86101 ................................................................................................................. 9

18 G.C.A. § 86103 ................................................................................................................. 9

28 U.S.C. § 1322 ................................................................................................................... 1

48 U.S.C. § 1424 ................................................................................................................... 1

FRCP 12(b)(6) ....................................................................................................................... 1

**Miscellaneous**

68 A.L.R. 2d 883 .................................................................................................................. 3

BENDER'S UNIFORM COMMERCIAL CODE SERVICE, VOL. 2, § 2.10A ......................................... 6

GRAMMN-LEACH-BLILEY ACT ..................................................................................... 14, 15

OFFICIAL UCC COMMENT 5 TO CODE SECTION 3119(2) ......................................................... 5, 6

OFFICIAL UCC COMMENT ON SECTION 3105(2)(a) ................................................................... 5

RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (1981) ...................................................... 10

RESTATEMENT (SECOND) OF CONTRACTS, § 205, COMMENT A (1981) ........................................ 2

## JURISDICTION

This action is before this Court under federal diversity jurisdiction pursuant to 28 U.S.C. § 1322 and 48 U.S.C. § 1424. This Court has authority to hear this motion pursuant to FRCP 12(b)(6).

## PROCEDURAL FACTS

On or about October 21, 2003, Plaintiffs filed their Complaint alleging six causes of action. On December 30, 2003, Hongkong and Shanghai Banking Corporation, Ltd. ("HSBC") filed its Motion to Dismiss the Plaintiffs' entire Complaint pursuant to FRCP 12(b)(6). On April 9, 2004, District Judge John S. Unpingco, granted HSBC's Motion to Dismiss as to the Third and Sixth Causes of Action. See, Order of April 9, 2004. However, the dismissal was "without prejudice." Id.

On April 27, 2004, Plaintiffs' filed their First Amended Complaint for Damages ("FAC") amending Counts Three and Six. However, Plaintiffs surreptitiously, without leave of court, asserted new facts in their FAC. On April 30, 2004, HSBC filed its Motion to Strike the FAC in whole or in part, or in the Alternative, Dismiss the Third and Sixth Causes of Action. On May 28, 2004, Judge Dean D. Pregerson issued an Order granting HSBC's Motion to Dismiss the FAC in its entirety.

On June 2, 2004, Plaintiffs filed their Second Amended Complaint ("SAC"). Then, pursuant to that certain Stipulation dated August 18, 2004, HSBC stipulated to permitting Plaintiffs to file their Third Amended Complaint ("TAC"). On August 16, 2004, Plaintiffs filed their TAC alleging eight causes of action: Breach of the Covenant of Good Faith and Fair Dealing; Intentional Misrepresentation; Breach of Contract under the Promissory Note and Business Loan Agreement; Breach of Contract under the Promissory Note Modification Agreement, Breach of Contract under the Workout Agreement; Breach of Fiduciary Duty; and Breach of Duty Not to Divulge Plaintiffs' Confidential Banking Information and Punitive Damages.

1

I

## PLAINTIFFS' FIRST CAUSE OF ACTION FAILS AS A MATTER OF LAW SINCE THE MAJORITY OF COURTS HAVE CONSISTENTLY HELD THAT TORT LIABILITY FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD NOT BE EXTENDED TO INCLUDE THE RELATIONSHIP BETWEEN BANKS AND COMMERCIAL BORROWERS.

HSBC concedes that all contracts contain an implied covenant of good faith and fair dealing. See, RESTATEMENT (SECOND) OF CONTRACTS, § 205, COMMENT A (1981). The concept of bad faith as a tort originated in the insurance arena. Although the rationale that justifies the extension of the bad faith cause of action to first-party insurance cases[1] could be applied to ordinary commercial contract cases as well, the courts have almost unanimously refused to do so.[2]

Unlike other commercial contract situations, tort recovery in insurance law is considered appropriate for a variety of policy reasons. Unlike most other contracts for goods and services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility. See, Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684-685, 254 CR 211 (1988), citing, Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 CR 691 (1979). In general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of accident or other catastrophe. See, Foley, supra, at p.684. Moreover, an insured faces a unique "economic dilemma" when an insurer breaches the implied covenant of good faith and fair dealing. Id at p. 692. Unlike other

---

[1] Fletcher v. Western National Life Insurance Co., 89 CR 78 (1970).

[2] Oki America, Inc. v. Micro Tech International, Inc., 872 F2d 312, 315 (9th Cir. 1989); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F2d 698 (7th Cir. 1984); Strey v. Hunt International Resources, 749 F2d 1437 (10th Cir. 1984); Hurt v. Pullman Standard, Inc., 764 F2d 1443 (11th Cir. 1985); Sinclair Broadcast Group, Inc. v. Bank of Montreal, 1995 WL 70577 (S.D.N.Y. 1995); In re Mullaney, 179 BR 942 (D.Colo. 1995); French American Banking Corp., v. Flota Merante Grancolombiana, S.A., 609 F. Supp. 1352 (S.D.N.Y.1985); Mortgage Finance, Inc. v. Podleski, 742 P2d 900 (Colo. 1987); Rigby Corp. v. Boatmen's Bank & Trust Co., 713 SW2d 517 (Mo.App. 1986); Union State Bank v. Woell, 434 NW2d 712 (ND 1989); Rodgers v. Tecumseh Bank, 756 P2d 1223 (Okla. 1988) (action in tort for violation of implied in law duty of good faith and fair dealing applies only to insurance contracts; court refuses to extend theory to commercial lending transaction); Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., SEDA, 385 Pa. Super 30, 560 A2d 151 (1989); Bank One, Texas, N.A. v. Stewart, 967 SW2d 419 (Tex.App. 1998); Transcontinental Gas Pipe Line Corp. v. American Nat. Petroleum Co., 763 SW2d 809 (Tex.App. Texarkana 1988); Charles E. Brauer Co. v. Nations Bank of VA, N.A., 466 SE2d 382 (1996); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 261 CR 735 (1989).

2

parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurer willing to pay for a loss already incurred. Id.

In addition, the tort duty of a liability insurer ordinarily is based on its assumption of the insured's defense and of settlement negotiations of third party claims. See, Crisci v. Security Ins. Co., 66 Cal.2d 425, 432, fn.3, 58 CR 13 (1967). The assumption of those responsibilities obligates the insurer to give at least as much consideration to the welfare of its insured as it gives to its own interests so as not to deprive the insured of the benefits of the insurance policy. See, Egan, supra at p. 818; 68 A.L.R. 2d 883. That is why courts have exercised great caution in considering whether to extend this exception in those cases to another contract setting.

California, being one of two states which had previously recognized the tort of bad faith denial of non-insurance contracts in the case of Seamen's Direct Buying Service v. Standard Oil Co., 206 CR 354 (1984), decided in 1995, that its decision was incorrect. In Freeman & Mills Inc. v. Belcher Oil Co., 44 CR2d 420 (Cal. 1995), the California Supreme Court specifically overruled the earlier decision in Seamen's. The California Supreme Court recognized that the lower court had had great difficulty in attempting to apply the theory, noting that one commentator had written "in recent decisions, almost every court offers a different interpretation of the tort."[3] The California Supreme Court in Freeman decided with approval of the Court of Appeals decision in Harris v. Atlantic Richfield Company, 17 CR2d 649 (1993), where the court argued that public policy mitigated against awarding tort damages for breach of contract. Id. at p. 427-428. The reasons for denying the tort recovery included:

> (1) the different objectives underlying the remedies for tort or contract breach, (2) the importance of predictability in assuring commercial stability in contractual dealings, (3) the potential for converting every contract breached into a tort, with accompanying punitive damage recovery, and (4) the preference for legislative action in affording appropriate remedies.

---

[3] COMMENT, CALIFORNIA'S DETORTIFICATION OF CONTRACT LAW: IS THE SEAMEN'S TORT DEAD? 26 Loyola L.A. L. Rev. 213, 223 (1992).

Id. at p. 428.  As the court pointed out in Freeman, "of all States, only Montana has recognized the tort of bad faith in a typical arm's length commercial contracts, and recently even that State has qualified the tort by requiring a showing of a special relationship between the contracting parties." Id. at p. 428.

In the insurance arena, tort liability is predicated on proof of a "special relationship" between the insurer and insured.  See, Wallis v. Superior Court, 160 Cal. App. 3d 1109, 1116-18, 207 CR 123, 127-129 (1984).  Consistent with the Foley decision, the court in Wallis, found the following factors to be necessary prerequisites to tort liability:

(1) the contract must be such that the parties are in inherently unequal bargaining positions;

(2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection;

(3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole";

(4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and

(5) the other party is aware of this vulnerability.

Wallis, 160 Cal. App. 3d at 1118; see also, Denholm v. Houghton Mifflin Co., 912 F.2d 357, 361 (9th Cir. 1990).

Plaintiffs' failure to meet any element of the aforementioned test is a basis to determine that no "special relationship" existed as contemplated under Wallis.  In the instant case, Plaintiffs owned "prime properties" on Guam worth "... much more than $12 million dollars" and claim to have deposited about a "$100 million dollars with HSBC during its 25-year relationship with HSBC."  See, ¶¶ 5 and 28 of TAC. Based on the above, one cannot find that the parties were in an "inherently unequal bargaining position." That both parties entered into the banking relationship for profit is beyond dispute.  Furthermore, Plaintiffs offer no evidence as to the inadequacies of ordinary contract damages nor have they shown that they were in anyway vulnerable.  Thus, there is no basis to establish the type of "special relationship"

contemplated in <u>Wallis</u>. Courts have been willing to find no special relationship as a matter of law,[4] even in the case of lending relationships existing thirty years and more. <u>Production Credit Assn. of Midlands v. Eldin Haussermann Farms, Inc.</u>, 529 N.W.2d 26 (Neb. 1995); <u>Citizens First Nat'l Bank v. Moe Motor Co.</u>, 813 P.2d 400, 403 (Mont. 1991) (30-year lending relationship did not constitute special relationship as a matter of law). As a result, Plaintiffs' first cause of action for bad faith should be dismissed.

## II

### THE BUSINESS LOAN AGREEMENT DOES NOT AFFECT THE NEGOTIABILITY OF THE PROMISSORY NOTE, THUS, THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED.

Even though the Business Loan Agreement ("BLA") and the Promissory Note were not signed on the same day, the BLA did not – and cannot – affect the negotiability of the Promissory Note. It is well established that the negotiability of a note is only determined from the face of the document itself. "The negotiability of an instrument is always to be determined by what appears on the face of the instrument alone. . ." <u>See</u>, OFFICIAL UCC COMMENT 5 TO CODE SECTION 3119(2). <u>See also</u>, 13 G.C.A. § 3119(2). "Whether an instrument is negotiable is a question of law to be determined solely from the face of the instrument, without reference to the intent of the parties." <u>Cooperative Centrale Ruiffeisern - Boerenleen Bank B.A. v. Bailey</u>, (C.D. Cal; 1989) 710 F. Supp. 737. Similarly, the OFFICIAL UCC COMMENT ON SECTION 3105(2)(a) states that the purpose of the rule causing a note to be non-negotiable if on its face it states it is governed by a separate agreement is "to make it clear that, so far as negotiability is affected, the conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself." <u>See also</u>, 13 G.C.A. § 3105(2)(a); <u>Northwestern Bank v. Neal</u>, (S.C.; 1978) 248 S.E. 2d. 585.

---

[4]  <u>See</u>, <u>Standard Wire & Cable Co. v. Ameritrust Corp.</u>, 697 F. Supp. 368, 373 (C.D. Cal. 1988) (borrower failed to establish any fact issues as to existence of special relationship with lender); <u>Rodgers v. Tecumseh Bank</u>, 756 P.2d 1223, 1226-27 (Okla. 1988) (lender owed no duty of good faith and fair dealing to commercial borrower); <u>FDIC v. Coleman</u>, 795 S.W.2d 706 (Tex. 1990) (creditor-guarantor relationship does not create duty of good faith). <u>See also</u>, <u>Copesky v. Superior Court of San Diego County</u>, 229 Cal. App. 3d 678, 280 Cal. Rptr. 338 (1991); <u>Black Canyon Racketball Club, Inc. v. Idaho First Nat'l Bank</u>, 804 P.2d 900 (Idaho 1991).

It is equally clear that 13 G.C.A. § 3119(2) means just what it says – "a separate agreement cannot affect the negotiability of an instrument." "The existence of a separate writing, no matter what its terms, does not affect the negotiability of the instrument itself," unless the instrument itself says that it is "subject to" or "governed by" the separate writing. BENDER'S UNIFORM COMMERCIAL CODE SERVICE, VOL. 2, § 2.10A, p. 2-122.

In <u>Northwestern Bank, supra</u>, the defendant/promisor asserted an argument similar to that made by the Plaintiffs in this case. He asserted that a conditional sales contract which he executed simultaneously with a promissory note should be read together with the promissory note. As here, his promisee had assigned both the note and the conditional sales contract to the plaintiff bank. The trial court concluded that provisions of the conditional sales contract merged into the note and therefore it was not negotiable and the bank lost its status as holder in due course. The Supreme Court of North Carolina held that because the note and conditional sales contracts were separate documents, the conditional sales contract did not affect the negotiability of the note under Section 3119(2). Even though the bank had notice of the conditional sales contract, it did not create a defense to the banks enforcement of the note as a holder in due course.

Similarly, in <u>Reno v. DH Cattle Holdings Company</u>, (Sup. Ct. App. Div. N.Y., 1993) 196 A.D. 2d 670, the court dismissed a challenge to the negotiability of a note, after suit by the holder, holding that negotiability is determined from the note itself and Section 3119(2) prevents another agreement – even one referred to in the note-from defeating negotiability.

The Plaintiffs' primary argument in their third cause of action is that the BLA's authorization for HSBC to sell participating interests limited the negotiability of the note to partial assignments to banks. <u>See</u>, ¶¶ 44 and 45 of TAC. This argument is a direct attack on the negotiability of the note based on provisions of a separate document and runs squarely into the rule of 13 G.C.A. § 3119(2). Because the Promissory Note's negotiability was unaffected by the BLA, HSBC was free to assign the note to Paradise Marine Corporation ("PMC"). Thus, Plaintiffs' Third Cause of Action should be dismissed.

6

**(a)**      **Even if the BLA could affect the negotiability of the Note, the BLA imposed no restrictions on the transfer or negotiation of the loan.**

The Plaintiffs assert that the Consent to Loan Participation section to the BLA "... modified the Promissory Note by explicitly restricting the sale or transfer of the Loan to one or more participation interests only." See, ¶ 44 of TAC. However, nothing in this section restricted, limited or modified impliedly any of HSBC's rights.[5] The section is simply – and no more – than what its caption says it is – K. Sadhwani's Inc. consent for HSBC to sell one or more "participation interests" to "purchasers." Nowhere in the section is it stated that HSBC cannot transfer or assign the entire loan to a non-bank. Banks and financial institutions are not even mentioned. The section is the grant of a right, not a ·limitation. The Plaintiffs' argument that the section restricts – or was intended to restrict – HSBC's rights, is logically flawed.

A loan participation is an agreement utilized when "two or more lenders join a loan with each lender loaning a portion of the amount to the borrower."[6] See, State v. Security Nat'l Bank & Trust Co., 922 P.2d 600, 603 n.4 (Okla. 1996). Contrary to Plaintiffs' allegation that HSBC would only be limited to transfer a portion of the loan, a lender can also sell a 100 percent interest in the loan, as opposed to only a certain percentage. See, State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d 231, 2002 U.S. Dist. LEXIS 15265 (S.D.N.Y. 2002) (bank sold its entire interest to other banks, known as participants, retaining servicing rights); Regency Savings Bank, F.S.B. v. Merritt Park Lands Associates, 139 F. Supp. 2d 462, 2001 U.S. Dist. LEXIS 4406 (S.D.N.Y. 2001) (bank sold a 100% undivided participation interest in a mortgage).

---

[5] **Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans to one or more purchasers, whether related to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notice of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure or insolvency of any holder of any interest in the Loans. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

[6] Entities other than banks can also enter into participation agreements in connection with a loan. See, e.g., Turner v. City of Clearwater, 789 So. 2d 273; 2001 Fla. LEXIS 732 (2001).

The Plaintiffs' argument are that because K. Sadhwani's Inc. consented to HSBC assigning the loan in one type of financial transaction – participation– it was agreed that HSBC could not assign the loan in any other type of financial transaction – such as negotiation to a third party. There is no rule of contract construction that supports Plaintiffs' argument. The meaning of contract provisions is determined from the party's intent. The fact that the parties expressly consented to a particular type of transaction is not evidence that they intended other statutorily authorized and commercially common transactions to be prohibited or restricted. The Plaintiffs' argument is specious to the point of being intentionally misleading. HSBC is entitled to judgment as a matter of law dismissing the Plaintiffs' Third Cause of Action.

**(b)     The BLA, the Promissory Note and other loan documents expressly authorized the transfer of the loan.**

The loan documents expressly contemplated and authorized HSBC's transfer of the loan. As stated above, in its Promissory Note, K. Sadhwani's Inc. promised to pay to the "order" of HSBC. See, Exhibit C to TAC. When a promise is made to the "order" of another, the promissor is authorizing the assignment of the obligation. See, 13 G.C.A. § 3110(1). Clearly the parties agreed that HSBC would have the power to transfer the note.

Similarly, the BLA contemplated and therefore authorized HSBC to assign the loan. On its first page of the BLA defines "Lender" to mean HSBC, "its successors and assigns." On the last page, below the consent to Loan Participation section, appears the following provision:

> **Successors and Assigns.** All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure . . . .

### III

**THE FOURTH CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION AGAINST HSBC UPON WHICH RELIEF CAN BE GRANTED.**

In support of their Fourth Cause of Action, titled "Breach of Contract-Promissory Note Modification Agreement," Plaintiffs' assert that while the Promissory Note Modification Agreement

8

("PMNA"), attached to the TAC as Exhibit "C", only extends the maturity date of the subject Note to August 31, 2003, the alleged "workout agreement" between the parties "implicitly extended the date of maturity" under the PMNA to a date unknown. TAC at ¶ 50. The "workout agreement" alleged by Plaintiffs is not clearly identified, however, it appears to be embodied in letters attached as Exhibits "G" "H" and "I" to the TAC. See, TAC at ¶¶ 12, 13 and 15.

Unfortunately for Plaintiffs, there are no documents attached to the TAC and no facts alleged therein that support Plaintiffs' conclusion that the maturity date of the note was "implicitly extended". Plaintiffs admit that the maturity date of the Note as specified in the PMNA is August 31, 2003. TAC at ¶ 50. There is nothing in either Exhibit "G" "H" or "I" from which it may be implied that either party ever contemplated, much less agreed to, an extension of the maturity date of the note. Plaintiffs allegation that the maturity date of the note was "implicitly extended" pursuant to the "workout agreement" is drawn from thin air and nothing more.

Further, it is simply of no consequence whether there was any agreement to extend the maturity date of the note because HSBC admittedly sold the note to PMC before it matured. Plaintiffs' conclusion that the PMNA was breached by HSBC when it sold the note is nothing more than sheer sophistry. Also, the operative loan agreement upon which the PMNA is based specifically provides that no amendment to the loan agreement or any related documents, including any promissory note, "shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment." See, Exhibit "B" attached to TAC. Plaintiffs cannot claim that the PMNA was "implicitly" amended by the "workout agreement" since the claimed extension was never reduced to writing, as required by the Business Loan Agreement. Accordingly, there was no "implicit extension".

Finally, Plaintiffs' claim of an "implied contract" fails to clear several other legal hurdles. Under Guam law, a contract is either express or implied. 18 G.C.A. § 86101. An "implied contract" is one in which the "existence and terms of (the contract) are manifested by conduct." 18 G.C.A. § 86103. One of the essential elements of all contracts is "sufficient cause or consideration". 18 G.C.A. § 85102. "Good consideration" is any benefit conferred upon the promisor or any prejudice suffered by the promisee that

9

at the time of consent he or she is not legally bound to suffer. 18 G.C.A. § 85501. As shown above, Plaintiffs have failed to plead any facts in the TAC, which show conduct on the part of HSBC, or, for that matter, on the part of Plaintiffs, which manifested any implied contract to extend the maturity date of the note. Further, Plaintiffs have failed to allege any facts showing there was any benefit conferred upon HSBC or detriment suffered by Plaintiffs that they were not already bound to suffer under the legal obligations they had a duty to perform pursuant to the subject loan. Accordingly, there was no conduct by the parties alleged showing an agreement to extend the maturity date and no consideration alleged. For these reasons alone, the Fourth Cause of Action fails to state a claim upon which relief can be granted.

As a fallback, Plaintiffs also assert in the Fourth Cause of Action that " [w]hen HSBC sold the loan to PMC, HSBC breached the Promissory Note Modification Agreement, as amended by the workout agreement." TAC at ¶ 50. This claim is a ruse and was earlier disposed of in this Court's April 9 Order.

A promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. Just as importantly, a contractual right, such as HSBC's rights in the subject promissory note, may be freely assigned unless such assignment is precluded by the contract itself or forbidden by statute. RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (1981). Even more importantly, Guam law specifically provides that a right arising out of an obligation is the property of the person to whom it is due and may be freely transferred. 18 G.C.A. § 81102. Further, Guam law provides that even nonnegotiable instruments, including written contracts for the repayment of money, may be transferred just as if they were negotiable instruments. Id. at § 81103. Accordingly, HSBC had the explicit right under Guam law to sell the loan and note to PMC and needed no further consent to do so under the PMNA or the "workout agreement". Thus, Plaintiffs have no cognizable legal theory under the Fourth Cause of Action and it must be dismissed.

**AS A MATTER OF LAW, PLAINTIFFS' SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS BARRED SINCE THE RELATIONSHIP BETWEEN HSBC AND K. SADHWANI'S INC. WAS THAT OF A DEBTOR AND CREDITOR AND WITH ALAN AND LAJU SADHWANI WAS THAT OF GUARANTORS.**

Plaintiffs' allege that "[b]ecause of the longstanding, close and confidential relationship between HSBC and Plaintiffs, and by virtue of the trust and confidence which HSBC encouraged Plaintiffs to place in the bank and which Plaintiffs did place in the bank, as well as the assurances that the Bank gave Plaintiffs that it would agree to a commercially reasonable workout, Defendant Bank owed to Plaintiffs a duty of fiduciary care." See, ¶ 58 of TAC.

K. Sadhwani's Inc. was a borrower of HSBC and a relationship between a lender and a borrower is described as that of a debtor and a creditor, not a fiduciary.[7]

The principle enunciated above applies with equal force to the relationship between a lender and any guarantors of the borrower's loans. See, Manufacturers Hanover Trust Co., v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993); Bohm v. Union Bank of Tennessee, 794 F. Supp. 158, 161 (WD Pa. 1992); Saglio v. Chrysler First Commercial Corp., 839 F. Supp. 830, 833 (MD Fla. 1993); NBD Bank, N.D. v. Fulner, 109 F.3d 299 (6th Cir. 1997); Continental Bank N.A. v. Everett, 760 F. Supp. 713, 717 (ND Ill 1991). Even as a depositor, it has long been held as "axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." Morse v. Crocker Nat. Bank, 142 Cal. App. 3d 228, 232 (1983).

To be sure, borrowers and depositors expect banks to handle their loans and accounts properly. It is equally true that we expect car mechanics to repair our cars properly, and Payless Supermarkets to sell

---

[7] See, Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2nd Cir. 1984); Motorcity of Jacksonville Ltd. v. Southeast Bank, N.A., 83 F.3d 1317 (11th Cir. 1996); Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); Hackney v. First Alabama Bank, 555 So.2d 97, 100 (Ala. 1989); Security Pacific Nat. Bank v. Williams, 213 Cal.App.3d 927, 262 Cal.Rptr. 260, 278 (1989); Idaho First Nat. Bank v. David Steed & Associates, Inc., 121 Idaho 356, 825 P.2d 79 (1992); Dugan v. First Nat. Bank in Wichita, 227 Kan. 201, 606 P.2d 1009 (1980); Ulrich v. Federal Land Bank of St. Paul, 192 Mich.App. 194, N.W.2d 910 (1991); Klein v. First Edina Nat. Bank, 293 Minn. 418, 196 N.W.2d 619 (1972); Union State Bank v. Woell, 434 N.W.2d 712, (ND 1989); Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat. Assn, 786 S.W.2d 386, 391 (Tex.App. 1991); First Security Bank of Utah v. Banberry Development Corp., 786 P.2d 1326, 1332 (Utah 1990); Tokarz v. Frontier Federal Savings & Loan Ass'n, 33 Wash.App. 456, 656 P.2d 1089 (1982); Lachenmaier v. First Bank Systems, Inc., 803 P.2d 614 (Mont. 1990).

us untainted wholesome food. Most, if not all, consumer and commercial transactions are founded on some degree of trust in the other party; else why contract at all? One would simply be buying in a lawsuit. The expectation that the other party will perform his promise and the dependence of his doing so do not distinguish the lender-borrower and bank-depositor relationship from any contractual relationship. Unless the car mechanics and Payless Supermarkets are to be treated as fiduciaries, that common expectation and dependence cannot suffice to create the kind of quasi-fiduciary relationship which would justify the imposition of such duty or the extension of the tort of bad faith either. In short, no more trust is reposed in the bank than in other ordinary parties to contractual relationships.

> **(a)** **Although under certain special circumstances a lender may be elevated to a fiduciary relationship, the TAC is devoid of any facts establishing how the relationship of trust and confidence arose or any other special circumstances that would establish a fiduciary relationship.**

HSBC concedes that under certain special circumstances, a lender may be elevated to a fiduciary relationship, however the facts alleged in the TAC does not elevate to what courts have found necessary to establish such a "special relationship." See, ¶ 59 of TAC. This may occur when a debtor is in control of a debtor[8] or where the lender has given extensive business advice to a customer who relies on that advice.

For example, in Credit Managers Assn. v. Superior Court, the court found a fiduciary relationship, where (1) the borrower, against its will, was compelled to employ an agent of the Bank as a business consultant and (2) the borrower was compelled to surrender to the business consultant complete management control to such extent that the agent was to able to overrule and supplant the board of directors and shareholders. 51 Cal. App. 3d 352, 359-60 (1975). The Rutherford v. Rideout Bank, case

---

[8] Pepper v. Litton, 308 US 295, 84 L Ed 281, 60 S Ct. 238 (1939); Taylor v. Standard Gas & Electric Co., 306 US 307, 83 L Ed 669, 59 S Ct. 543 (1939); In re EMB Associate Inc., 18 BCD 617, 92 BR 9, 15 (BC RI 1988); In re Teltronics Services, Inc., 29 BR 139, 171 (BC ED NY 1983) ("non-insider creditor will be held to a fiduciary standard only where his ability to command the debtor's obedience to his policy directives is so overwhelming that there has been, to some extent, a merger of identity"); In re Vietri Homes, Inc., 58 BR 663 (BC Del 1986) (construction lender deemed to be fiduciary to other creditors); In re N&D Properties, Inc., 799 F.2d 726 (11th Cir. 1986); Security Pacific Nat. Bank v. Williams, 213 Cal. App. 3d 927, 262 Cal. Rptr. 260 (1989); Garrett v. BankWest, Inc., 459 NW2d 833, 838 (SD 1990) (entering into workout agreement concerning repayment of loan did not place lender in "control" of borrower; bank was entitled to repayment and could impose such conditions to loan as any other secured creditor would want without such actions creating fiduciary relationship with debtor.

12

illustrates a situation where the bank has given extensive advice to its customer who has completely relied on it. The court found a fiduciary relationship where (1) the borrower was a widow who was unfamiliar with finance; (2) the borrower constantly and continually consulted with the bank in the management of her finances; and (3) the borrower relied wholly and exclusively on the bank for all financial matters and reposed complete trust and confidence in the bank regarding such matters. 11 Cal.2d 479, 481 (1938).

Many courts have been reluctant to find that the mere existence of a relationship of trust and confidence, in and of itself, requires a finding that a lender is under a fiduciary duty to the borrower. See, e.g.: Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3rd Cir. 1988); In re Letterman Bros. Energy Securities Litigation, 799 F.2d 967 (5th Cir. 1986); In re Rexplore, Inc. Securities Litigation, 685 F. Supp. 1132 (ND Cal. 1988); Kurth v. Van Horn, 380 N.W.2d 693 (Iowa 1986); Stenberg v. Northwestern Nat. Bank of Rochester, 307 Minn. 487, 238 N.W.2d 218 (1976); Garrett v. BankWest, Inc., 459 N.W.2d 833 (S.D. 1990).

No allegations have been made that HSBC was involved in actual day-to-day involvement in the management and operations of K. Sadhwani's Inc. or that HSBC had the power to compel K. Sadhwani's Inc. or its Guarantors to engage in unusual transactions which would give the requisite control by HSBC over K. Sadhwani's Inc. or its Guarantors. See, Union State Bank v. Woell, 434 N.W.2d 712, 721 (N.D. 1989). As the Third Circuit stated in the Paradise Hotel Corp. case, it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table," given the parties essentially adversarial positions, supra, at p. 53 quoting Weinberger v. Kendrick, 698 F.2d 61 (2nd Cir. 1982).

**(b)** **Even assuming, *arguendo*, that it is true that Plaintiffs were unsophisticated and trusted HSBC as a result of such a long relationship, a cause of action for breach of a fiduciary duty cannot be established as a matter of law.**

In Mans v. Peoples Bank of Imboden, the Supreme Court of Arkansas held that no fiduciary relationship is created merely because a customer trusts the bank to do some action and, likewise, the fact that the customer was unsophisticated or had been a bank customer for 23 years is also insufficient by itself to establish that a fiduciary relationship existed. Id. 10 S.W.3d 885, 889-890 (Ark. 2000); see also,

13

Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993)(mere fact that a corporation has been a borrower from the same bank for many years is insufficient to transform the relationship into one which the bank is a fiduciary); Citizens First Nat'l Bank, supra, at p. 403. Moreover, a fiduciary duty cannot be imposed unilaterally. See, Travel Services Network, Inc. v. Presidential Financial Corp. of MA, 959 F. Supp 135, 144 (D. Conn. 1997).

Based on the facts before this court, Plaintiffs' complaint is utterly lacking of any facts so as to render Plaintiffs the marionette and HSBC the puppeteer. The facts of the instant case lack any circumstances transcending other than an ordinary lender-borrower relationship.

V

### PLAINTIFFS' SEVENTH CAUSE OF ACTION IS PREEMPTED UNDER THE GRAMMN-LEACH-BLILEY ACT.

Enacted in 1999, the GRAMMN-LEACH-BLILEY ACT ("GLBA") is a wide-ranging financial services deregulation act effecting banking, securities, insurance and other industries. GLBA includes a number of provisions regarding consumer privacy. 15 U.S.C. § 6802(b)(1) provides that in general "a financial institution may not disclose nonpublic personal information to a nonaffiliated third-party," unless it falls within the listed exceptions. 15 U.S.C. § 6802(e)(1)(C) and (e)(7) provides in part:

> Subsections (a) and (b) of this Section shall not prohibit disclosure of nonpublic personal information – (C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;
>
> (7) in connection with the propose or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business unit.

There is no dispute that as of 2002 HSBC was closing its operations in Guam and as a result of that decision, it had to divest of all its assets. See, ¶ 10 of TAC.

The Ninth Circuit in Bank of America v. City and County of San Francisco, 309 F.3d 551, 557-58 (9th Cir. 2002), cert. den., 123 S. Ct. 2220, held that federal law may pre-exempt state law in three different ways:

14

First, Congress may preempt state law by also stating in express terms . . . . Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable inference that Congress left no room for the States to supplement it . . . . . In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit Congressional intent to displace all state law . . . . Third, preemption may be implied when state law actually conflicts with federal law . . . . Such conflict arises when compliance with both federal and state regulations is a physical impossibility . . . or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . (internal quotations and citations omitted)

In the instant case, Plaintiffs' claim that there is "a general common law duty not to disclose financial condition of Plaintiffs to third-parties," and that ". . . it is an implied condition of the contract between HSBC and Plaintiffs that HSBC will not divulge to third-persons without Plaintiffs' consent and permission financial conditions and business affairs of the Plaintiffs'," clearly conflicts with 15 U.S.C. § 6802(e)(1)(C) and (e)(7). Both exceptions to the GBLA preempts any Guam law or common law cause of action relating to HSBC's sale of its loans. In addition, conflict arises because adherence to federal law leads to violations of Guam law as pled in Plaintiffs' Seventh Cause of Action.

By providing consumers only limited control of a dissemination of information to third-parties and by prohibiting consumers from seeking recourse for privacy violations, Congress has clearly ruled that efficiency is paramount in today's economy so to adhere to the law as pled by Plaintiffs would thwart Congressional purposes in enacting GLBA.

     (a)    **Even assuming that the Seventh Cause of Action is not preempted, it must be dismissed because it fails to state a cause of action against HSBC upon which relief can be granted.**

In support of their Seventh Cause of Action, Plaintiffs assert that HSBC has a "general common law duty not to disclose their "financial condition" to third parties. TAC at ¶ 62. Plaintiffs also claim that there was "an implied term of the contract" between the parties that prohibited HSBC from divulging to third persons "either the state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC." Id. Additionally, Plaintiffs' allege that "it is an implied condition of the contract" between the parties that HSBC will not divulge to third persons the "financial condition and the business affairs of the Plaintiffs." Id.

15

Plaintiffs complain that HSBC's sale and assignment of the subject loan to PMC and other banks and investors previously interested in purchasing the assets of HSBC constituted not only a breach of HSBC's "general duty" not to disclose Plaintiffs' financial condition, but a breach of the "implied contract" between the parties which required that HSBC not divulge the "state of plaintiffs' accounts or any of plaintiffs' transactions with HSBC." TAC at ¶ 66.

It is axiomatic that a promissory note is a negotiable instrument. See, 13 G.C.A. § 3104. By its very terms, a negotiable instrument is freely transferable by the holder to a third party. Id. at §§ 3201, 3202. HSBC incorporates its discussion above related to assignability of its loan and implied contracts under Guam law found on pages 5-6 and 10-11 which supports HSBC's arguments that Plaintiffs have failed to plead a cognizable legal theory.

There is ample reason why no such restrictions on the right to sell and transfer a note and loan exist. If the law were as the Plaintiffs have alleged in the Seventh Cause of Action, then no bank or other lending institution would ever be able to sell a note or loan without the express consent of the borrower. In such a case, the law of negotiable instruments would be invalidated and the secondary market for notes and mortgages, such as the Federal National Mortgage Association ("Fannie Mae") and the Government National Mortgage Association ("Ginnie Mae"), would be virtually impossible. Further, a mortgagor would not be able to file notices of foreclosure and conduct foreclosure proceedings, without the express consent of the debtor, because such actions would invariably divulge information concerning the borrower's "account" and "financial condition" to third parties.

Simply put, a lender has no implied obligation or "general duty" of confidentiality to a borrower. In Graney Development Corp. v. Taksen, 400 N.Y.S. 2d 717 (Sup. 1978), aff'd, 411 N.Y.S. 2d 756 (App. Div. 1978), the plaintiff claimed that a bank breached an implied agreement not to disclose information about the plaintiff's financial affairs and the bank moved to dismiss. Id. at 718. In distinguishing the relationship between a bank and depositor with that of a lender and borrower, the court held that the bank, in its capacity as a lender, is in no different position than that of any other lender or creditor and that there

16

existed no implied agreement of confidentiality to the relations of a bank with its borrowers. Id. at 720. The court dismissed the borrower's claim.[9] Id.

Even assuming arguendo that HSBC violated its "own policies and procedures," regarding confidentiality, it does not create a private cause of action for Plaintiffs. See, First State Bank of Hudson County v. U.S., 599 F.2d 558, 564 (3rd Cir. 1979), cert. den., 444 U.S. 1013 (1980) (FDIC manual does not create an enforceable duty on the part of the FDIC to inform bank about misapplication of its funds by bank president); Brown v. Lynn, 392 F. Supp. 559, 561-62 (N.D. Ill. 1975) (HUD handbook directing a private lender servicing HUD insured mortgages to refrain from foreclosure when other procedures were available does not create a private cause of action as it was intended only as a policy guideline); Ebenhoh v. Production Credit Association of Southeast Minnesota, 426 N.W.2d 490, 493 (Minn. App. 1988) (bank's violation of its own internal policies did not create a private cause of action). There is no question that the relationship between HSBC and Plaintiffs was that of a lender and borrower, thus, no duty of confidentiality arose when Lender sold its Loan. Since the Seventh Cause of Action is wholly based upon the allegation that HSBC "divulged" financial information to PMC by selling the subject loan and note, which HSBC had the right to do under Guam law, then no cause of action can arise against HSBC for doing that which it was legally entitled to do. Accordingly, Plaintiffs have no cognizable legal theory under the Seventh Cause of Action and it must be dismissed for failure to state a claim upon which relief may be granted.

/ / /

/ / /

---

[9] See also, Boccardo v. Citibank, N.A., 579 N.Y.S. 2d 836, 838-9 (Sup. 1991) (as to the relationship between bank and borrower, there is no basis for imposing a duty of confidentiality on bank; motion to dismiss granted); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F. Supp. 693, 721 (S.D.N.Y. 1996) (no duty of confidentiality exists between debtor and creditor); Hopewell Ent., Inc. v. Trustmark Nat. Bank, 680 So. 2d 812, 817-818 (Miss. 1996) (Supreme Court holds that no duty of confidentiality exists in bank-borrower relationship); Schoneweis v. Dando, 435 N.W.2d 666, 673 (Neb. 1989) (Supreme Court holds that in debtor-creditor relationship bank owed no duty of confidentiality).

## CONCLUSION

For the foregoing reasons, HSBC's Motion to Dismiss the First, Third, Fourth, Sixth and Seventh

Causes of Action should be granted.

*Respectfully submitted* this ___30___ day of August 2004.

**LAW OFFICES OF BRONZE & TANG**
**A Professional Corporation**

By:_____
    JACQUES G. BRONZE
    *Attorneys for HongKong and Shanghai*
    *Banking Corporation, Ltd.*

18

## CERTIFICATE OF SERVICE

I, **JACQUES G. BRONZE**, hereby certify that on August _____, 2004, I caused to be served via hand delivery, **Agreement of Hearing Date re: HSBC's Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth and Seventh Causes of Action, Motion to Dismiss and HSBC's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' First, Third, Fourth, Sixth and Seventh Causes of Action** to:

> Joaquin C. Arriola
> Anita P. Arriola
> **ARRIOLA, COWAN & ARRIOLA**
> 259 Martyr Street, Suite 201
> Hagåtña, Guam 96910
>
> *Attorneys for Plaintiffs*

**DATED:** August _30_, 2004.

**LAW OFFICES OF BRONZE & TANG
A Professional Corporation**

By:_____
  **JACQUES G. BRONZE**
  *Attorneys for Defendant HSBC*

Law Offices

# *Arriola, Cowan & Arriola*

Joaquin C. Arriola
Mark E. Cowan
Anita P. Arriola
Joaquin C. Arriola, Jr.
~
Jacqueline T. Terlaje

259 Martyr Street, Suite 201
C & A Building
Post Office Box X
Hagåtña, Guam 96910

Telephone:(671) 477-9730/3
Telecopier: (671) 477-9734
E-mail: acalaw@netpci.com

September 16, 2004

**VIA FACSIMILE: (671) 647-7671**

Jacques G. Bronze, Esq.
Bronze & Tang, P.C.
2nd Floor, BankPacific Building
825 S. Marine Drive
Tamuning, Guam  96913

> **Re:** **Sadhwani et al. v. Hongkong Shanghai Banking Corporation, Ltd., et.al,**
> **District Court of Guam, Civil Case No. CV03-00036**

Dear Jacques:

This is to inform you that we intend to serve you with a Motion for Sanctions pursuant to F.R.C.P. 11 and 28 U.S.C. section 1927 based on the filing of HSBC's motion to dismiss plaintiffs' first and sixth causes of action. The Court's Order of April 9, 2004 previously denied HSBC's first motion to dismiss these causes of action and HSBC's second motion to dismiss is nothing but a regurgitation of the first motion.

If you do not withdraw these portions of the motion by Friday, September 17, 2004 at 12 noon the motion will be served on you tomorrow.

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

**ANITA P. ARRIOLA**

APA/ctt

EXHIBIT
4

FAXED

JOAQUIN C. ARRIOLA
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Telephone: (671) 477-9730/33
Facsimile: (671) 477-9734

Counsel for Plaintiffs Alan Sadhwani, et al.

## IN THE UNITED STATES
## DISTRICT COURT OF GUAM

| | |
|---|---|
| ALAN SADHWANI, LAJU SADHWANI, and K. SADHWANI'S INC., a Guam corporation,<br><br>      Plaintiffs,<br><br>    vs.<br><br>HONGKONG AND SHANGHAI BANKING CORPORATION, LTD., a Foreign corporation, JOHN DOE I through JOHN DOE X,<br><br>      Defendants. | CIVIL CASE NO. 03-00036<br><br><br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS** |

## INTRODUCTION

Plaintiffs Alan Sadhwani, et al. file this Motion for Sanctions, pursuant to Fed. R. Civ. P., Rule 11 and 28 U.S.C. § 1927, based on defendant Hong Kong Shanghai Banking Corporation, Ltd.'s ("HSBC") multiplicitous and vexatious refiling of its motion to dismiss plaintiffs' first and sixth causes of action. On April 9, 2004, this Court denied HSBC's First Motion to dismiss plaintiff's claims for breach of the covenant of good faith and fair dealing, and breach of fiduciary duties. Without any new grounds or new law, HSBC refiled its motion to dismiss, virtually identical to its first motion, in violation of Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

EXHIBIT
5

PENGAD 800-631-6989

BRONZE & TANG, P.C.
Date: 9/21/04
Time: 9:20

## FACTUAL BACKGROUND

**A.     HSBC's Motions to Dismiss.**

On October 21, 2003, plaintiffs filed its Complaint alleging several causes of action including breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of the promissory note modification; breach of the workout agreement; breach of fiduciary duty; and breach of confidentiality and banking laws.

On December 30, 2003, HSBC filed its motion to dismiss the Complaint (hereinafter "First Motion"). HSBC moved to dismiss the first cause of action, breach of the covenant of good faith and fair dealing, arguing that Guam law does not recognize the cause of action and that plaintiffs fail to allege facts in support of its claim. HSBC also moved to dismiss the fifth cause of action for breach of fiduciary duties, arguing that the plaintiffs failed to set forth any relationship of trust and confidence to establish a fiduciary relationship.

On February 13, 2004, the Court heard oral argument on HSBC's First Motion, and took the matter under advisement. On April 9, 2004, the District Court denied dismissal of the first (breach of good faith and fair dealing), third (intentional misrepresentation), fourth (breach of workout agreement) and fifth (breach of fiduciary duties) causes of action (hereafter "April 9 Order"). The Court granted HSBC's First Motion with respect to the third (breach of promissory note modification) and sixth (breach of confidentiality and banking laws) causes of action without prejudice.

On August 16, 2004, plaintiffs filed their Third Amended Complaint for breach of the covenant of good faith and fair dealing; intentional misrepresentation; breach of contract; breach of fiduciary duty; and breach of duty not to divulge confidential banking information.

-2-

On August 30, 2004, HSBC filed a Second Motion to dismiss requesting dismissal of the first (breach of good faith and fair dealing), third, fourth, sixth (breach of fiduciary duties) and seventh causes of action (hereinafter "Second Motion"). HSBC's Second Motion to dismiss the first and sixth causes of action is a regurgitation of its First Motion.

**B.     The April 9 Order.**

In the April 9 Order this Court explicitly denied HSBC's motion to dismiss plaintiffs' causes of action for breach of the covenant of good faith and fair dealing and breach of fiduciary duty. HSBC's Second Motion addresses these same causes of action in plaintiffs' Third Amended Complaint and does not even mention the April 9 Order. HSBC does not claim that the April 9 Order was clearly erroneous; that there was an intervening change in law; that there exists substantially different evidence; that there are "other changed circumstances"; or that manifest injustice would result if the April 9 Order were permitted to stand. Instead, HSBC's Second Motion on these claims is adopted almost verbatim from its First Motion.[1]     In the Second Motion, one difference is that HSBC placed string citations in footnotes rather than in the body of the memorandum, as it did in the First Motion. Another difference is that on pages 4-5 of the Second Motion, HSBC adds two new paragraphs and cites several cases that were not previously cited in the First Motion to dismiss. However, these cases are not "new" nor do they constitute an intervening change in *controlling* authority. Apart from these minor differences, HSBC's Second Motion is merely a rehashing of arguments contained in its First Motion to dismiss.

---

[1]  HSBC's Second Motion to dismiss, pages 2 and 3, were copied verbatim from the First Motion to dismiss, pages 2, 7 and 8. HSBC's Second Motion to dismiss, pages 11-14, were copied verbatim from the First Motion to dismiss, pages 19-23.

-3-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

## ARGUMENT

Plaintiffs move for sanctions against HSBC for its frivolous, multiplicitous, vexatious, and bad faith conduct in these proceedings. The court is authorized to sanction parties or their lawyers for improper conduct under Fed. R. Civ. P., Rule 11, 28 U.S.C. §1927, and the inherent authority of the Court. Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

Rule 11 of the Federal Rules of Civil Procedure provides in relevant part:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. (Emphasis added.)

The court shall impose Rule 11 sanctions, including reasonable attorney's fees and costs, where a motion is frivolous, legally unreasonable, or without factual foundation. G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003) (imposing sanctions for filing frivolous reconsideration motion). Sanctions are available where there is willful action, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. Fink, 239 F.3d at 994. The Ninth Circuit standard governing both the "improper purpose" and "frivolous" inquiries is objective, and the subjective intent of the movant is irrelevant. Wilson, 326

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-4-

F.3d at 1109 (internal quotations omitted) citing <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 830

(9th Cir.1986). "The standard is reasonableness. The reasonable man against which conduct is tested

is a competent attorney admitted to practice before the district court." <u>Id</u>.

Sanctions may also be imposed against attorneys who multiply proceedings. 28 U.S.C.

§1927 provides:

> Any attorney or other person admitted to conduct cases in any court
> of the United States or any Territory thereof <u>who so multiplies the
> proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs, expenses,
> and attorneys' fees reasonably incurred because of such conduct.</u>
> (Emphasis added.)

The purpose of §1927 is to penalize conduct that "unreasonably and vexatiously multiplies

proceedings." <u>Fink</u>, 239 F.3d at 991. Thus, where the court finds "recklessness" or "subjective bad

faith," the court is authorized to sanction the multiplicitous conduct. <u>B.K.B. v. Maui Police Dept.</u>,

276 F.3d 1091, 1107 (9th Cir. 2002); <u>In re Keegan Mgmt. Co., Sec. Lit.</u>, 78 F.3d 431, 436 (9th

Cir.1996). The court may sanction conduct under both, Rule 11 and 28 U.S.C. § 1927. <u>Siderpali,

S.P.A. v. Judal Industries, Inc.</u>, 833 F.Supp 1023, 1029 (D. N.Y. 1993); <u>Shields v. Shetler</u>, 120

F.R.D. 123, 127 (D. Colo. 1988); <u>See</u> <u>Travelers Ins. Co. v. St. Jude Medical Office Bldg., Ltd.

Partnership</u>, 154 F.R.D. 143, 144 (D.La.1994) (sanctions imposed for repetitive motions to disqualify

which multiplied proceedings unreasonably and vexatiously).

The Court further possesses the inherent authority to sanction improper conduct. <u>Fink v.

Gomez</u>, 239 F.3d 989 at 991. "Courts of justice are universally acknowledged to be vested, by their

creation, with power to impose silence, respect, and decorum, in their presence, and submission to

their lawful mandates." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

27 (1991). Thus, where the Court finds bad faith or conduct tantamount to bad faith, sanctions may

be imposed under its inherent authority. Fink, 239 F.3d at 993-994. The court in B.K.B. stated:

> "[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees."

B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002) citing Fink. It is within the

discretion of the court to rely on its inherent power rather than the federal rules or § 1927. Chambers

v. Nasco, 501 U.S. at 50.

## I.  THE COURT SHOULD IMPOSE RULE 11 SANCTIONS AGAINST HSBC.

HSBC's Second Motion is frivolous and is sanctionable. A motion to dismiss which merely

restates the same basis of a previously disposed motion is frivolous, and sanctionable under Rule 11.

Siderapli, 833 F.Supp. at 1028-1029 (imposing sanctions for rearguing same basis as previous

motion to dismiss); Virgin Atlantic Airways, Ltd. v. National Mediation Board, et. al., 132 F.R.D.

342 (D. N.Y., 1990) (imposing sanctions for motion to revisit denial of motion to dismiss), 956 F.2d

1245 (2nd Cir., 1992) (affirming imposition of sanctions for resubmitting motion); Shields v. Shetler,

120 F.R.D. at 127 (imposing sanctions for verbatim reiteration of early arguments on motion to

dismiss); WM. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 611 F.Supp. 281, 285

(D. N.Y., 1985) (imposing sanctions for duplicative motion to dismiss), *reversed in part on other*

*grounds* 933 F.2d 131 (2nd Cir. 1991); *See* Mariani, et.al. v. Doctors Associates, Inc., et. al., 983 F.2d

5 (1st Cir. 1993) (sanctions warranted where second motion for change of venue is a verbatim

argument of first motion).

In Siderpali, the New York District Court imposed Rule 11 sanctions against the defendant

for rearguing the same basis for a motion to dismiss which was previously denied, and where the

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-6-

defendant provided no new grounds or new law in support of his Second Motion to dismiss. Siderpali, 833 F.Supp. 1028. Siderpali involved a contract between two parties to produce and sell steel shafts for use as light poles. Upon an initial motion to dismiss by defendant Judal, the court denied dismissal of the fraud claims. Defendants Judal and Schreer subsequently filed a second motion to dismiss the first and fourth causes of action alleging fraud. Defendant Judal reargued his first motion to dismiss and provided no new grounds or new law in support of the second motion to dismiss. Siderpali opposed the motion to dismiss and moved for sanctions on the ground that the court had previously denied the defendants' motion. The district court granted Siderpali's request for sanctions and ordered the defendants to pay plaintiffs all reasonable costs, expenses and attorney's fees in opposing the motion to dismiss. Siderpali. 833 F.Supp. at 1029.

HSBC engaged in the same conduct which was sanctioned in Siderpali. In response to plaintiffs' First Amended Complaint, HSBC filed its First Motion to dismiss the first (breach of good faith and fair dealing) and fifth (breach of fiduciary duties) causes of action. The Court by the April 9 Order denied the motion to dismiss and sustained the plaintiffs' claims for breach of good faith and fair dealing and for breach of fiduciary duties. HSBC then filed its Second Motion to dismiss the same causes of action. HSBC, like Judal, provides no justification for refiling the Second Motion on the same reasoning set forth in its First Motion. HSBC's conduct is no different from defendant Judal, and thus, sanctions should be imposed against HSBC.

In another similar case, the Colorado District Court held that a "verbatim reiteration" of earlier arguments presented in prior moving papers is frivolous, warranting Rule 11 and Section1927 sanctions for multiplication of proceedings. Shetler, 120 F.R.D. at 127. In Shetler, the plaintiff moved for rehearing following the court's dismissal of its civil rights claim. The court finding no

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-7-

basis for reconsideration, sanctioned the plaintiff for needlessly prolonging and increasing the expenses of litigation by relying on a "verbatim rehash" of already considered arguments. Id. The court stated:

> . . . [T]he plaintiff's motion here performs no function at all, other than to reargue contentions already considered by this court and to waste valuable judicial resources. A motion for reconsideration is not a license for a losing party's attorney to get a "second bite at the apple" by using a word processor to move around the paragraphs from a previously submitted brief, and file a retread of the old brief disguised as a motion for reconsideration. I find and conclude that the plaintiff's motion for rehearing (reconsideration) is frivolous, and it is denied. (Emphasis added). Id. 120 F.R.D. at 126.

The following table is a comparison of the identical sections of the First Motion which HSBC manipulated with its wordprocessor and submitted as its Second Motion:

| **FIRST MOTION** | **SECOND MOTION** |
|---|---|
| ¶__, p. 2, and ¶__, p. 7 | ¶1, p.2 |
| ¶__, pg. 8 | ¶2, p.2 |
| Footnotes, p. 7 | Footnotes, p.2 |
| ¶__, p. 8 - 9 | ¶1-2, p.3 |
| ¶__, p.19 | ¶1-2, p.11 |
| ¶__, p.20 | ¶3-4, p.11 |
| Footnotes, p. 19 | Footnotes, p. 11 |
| ¶__, p.20 - 21 | ¶1, p.12 |
| ¶__, p.21 | ¶2-3, p.12 |
| Footnotes, p. 21 | Footnotes, p. 12 |
| ¶__, p. 22 | ¶1-2, p.13 |
| ¶__, p. 23 | ¶3, p.13 |
| ¶__, p. 23 | ¶1, p. 14 |

-8-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

A "verbatim rehash" of a motion is frivolous. <u>Shetler</u>, 120 F.R.D. at 126. There is no question that in this case HSBC's Second Motion is a "verbatim rehash." A reasonably competent attorney admitted before the Court would not resubmit a "verbatim rehash" for consideration, especially where the court has already issued a decision on the motion. *See* <u>Wilson</u>. HSBC's disregard of its obligations to refrain from filing frivolous motions, and its disregard of the Court's valuable judicial resources must be sanctioned.

Furthermore, there is no merit in refiling a previously denied motion to a transferee judge. <u>Hill v. MacMillan McGraw-Hill School Publishing Company</u>, 1995 WL 317054 (D. Cal. 1995). In <u>Hill</u>, defendant MacMillan re-filed its motion to dismiss when it learned that the case was being transferred to a different court. The California District Court in denying defendant MacMillan's refiled motion to dismiss stated:

> <u>Defendants evidently filed this motion hoping to take advantage of the case being switched to a different judge, from whom they thought might get a different ruling. In the process, they have wasted the time and resources of both the plaintiff and this court.</u>"

(Emphasis added). The district court ordered the defendants to pay the reasonable attorneys' fees for the "study, research, and preparation necessary" to oppose the renewed motion to dismiss and to prepare the motion for Rule 11 sanctions. <u>Id</u>.

Similarly, in this case, following former District Court of Guam John Unpingco's departure from the bench, HSBC submitted its Second Motion, and presents it to a different judge in the hope of not only getting a "second bite at the apple," but of "tak[ing] advantage" of the possibility of getting a different ruling from the transferee judge; these are not proper bases for a motion and is sanctionable conduct under Rule 11. <u>Id</u>. "The motion to dismiss is clearly the type of abuse of

-9-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

motion practice that Rule 11 of the Federal Rules of Civil Procedure was intended to discourage."

Passalacqua, 611 F.Supp. at 285.

## II. HSBC HAS ENGAGED IN A CONSISTENT PATTERN OF FILING MOTIONS FOR THE PURPOSE OF DELAY, HARASSMENT, AND MULTIPLYING THE PROCEEDINGS IN THIS CASE.

HSBC's Second Motion is not the first time that HSBC has engaged in obstructive and dilatory tactics in this action. HSBC has refused to produce relevant documents in the case without a court order; refused to produce HSBC representatives for their depositions in Guam until commanded to do so by this Court; and has filed numerous motions in an attempt to delay proceedings, harass plaintiffs, and increase the cost of this litigation. HSBC's pattern of delay, harassment, and multiplying proceedings is sanctionable.

"Tactics undertaken with the intent to increase expenses or delay may also support a finding of bad faith [under § 1927]." Heary Bros. Lightning Protection Co., Inc. v. Lightning Protection Institute, 287 F.Supp.2d 1038, 1082 (D.Ariz. 2003) citing New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir.1989). During the course of these proceedings, this Court has issued the following Orders concerning HSBC's delay tactics:

-   An Order dated April 30, 2004, denying HSBC's application for interlocutory appeal and to stay depositions in the case. The Court viewed the application to stay depositions as "*a delay tactic*" and stated that "*[f]urther delay in the discovery process is just a waste of time and would needlessly postpone the trial.*" (Emphasis added).

-   An Order dated May 27, 2004, commanding HSBC to produce documents concerning, among other things, the sale of HSBC's customers' loans, discounts, friendly foreclosures, and alternative financing provided to other customers in settling their loans with HSBC.

-10-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-        An Order dated June 7, 2004, denying HSBC's motion to stay discovery, noting that "*HSBC has repeatedly delayed the discovery process by filing numerous motions which either seek to stay discovery or which would have such an effect,*" and listing the several motions filed by HSBC.    (Emphasis added);

-        An Order dated June 9, 2004, denying HSBC's motion to continue the trial date and extend discovery deadlines and *awarding sanctions to the Sadhwanis in the form of attorneys fees against HSBC for HSBC's failure to produce its representatives for their noticed depositions.*

-        An Order dated August 10, 2004, overruling HSBC's objections to the May 27, 2004 Order and stating, "the Court is concerned by the contentious atmosphere in which discovery in this case is being conducted and by the large number of pretrial motions filed.  HSBC seemingly has used the filing of motions to stall the progress of this case. . . . *The Court cautions HSBC that such litigation tactics will not be tolerated.  HSBC is advised to show the appropriate restraint in its subsequent filings.*"  (Emphasis added)

Additionally, the failure to acknowledge an order addressing and denying the motion may also be evidence of bad faith. *See* Siderpali, 833 F. Supp. at 1029. In Siderpali, defendant Judal and Scheer filed their second motion to dismiss the fraud claims against them without making any mention of the court's order denying their contentions in a previous motion. Id. Similarly, nowhere in the Second Motion does HSBC acknowledge the April 9 Order.

Furthermore, with the filing of its Second Motion, HSBC has harassed plaintiffs, who must file another opposition on claims previously sustained by the Court; delayed progress of the case by the filing and hearing of the motion; increased the cost of litigation for plaintiffs; and consumed

-11-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

judicial resources in the consideration and decision on HSBC's Second Motion. Plaintiffs are further compelled to file this motion for sanctions as a result of HSBC's conduct. HSBC's conduct has unreasonably and vexatiously multiplied these proceedings in bad faith, and sanctions should be imposed.

## III.  HSBC'S ABUSE OF THE JUDICIAL PROCESS WARRANTS SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY

HSBC's repetitive behavior in multiplying these proceedings, despite a previous admonition from the Court to refrain from vexatious filings, constitutes bad faith. It is irrelevant whether HSBC's conduct constitutes "bad faith per se." B.K.B., 276 F.3d at 1108. Reckless and knowing conduct that is tantamount to bad faith is sanctionable under the court's inherent power. Id. An attorney's recklessness, when coupled with frivolousness, harassment, or improper purpose, is sanctionable under a court's inherent power. Fink, 239 F.3d at 994.

In this case, HSBC's Second Motion was filed in bad faith. First, HSBC cannot dispute that its asserted grounds for dismissal of the first and sixth causes of action in the Second Motion are the same as its First Motion on the first and fifth causes of action. Second, HSBC cannot refute the April 9 Order, which disposed of its arguments yet HSBC never mentioned it in the Second Motion. Moreover, HSBC cannot deny knowledge of the April 9 Order. Third, HSBC refiled the motion which has resulted in a further delay and the multiplication of these proceedings. Fourth, HSBC's refiling of the motion was frivolous because there is no basis in law or in fact for the Court to reconsider the motion. Finally, HSBC's conduct has required plaintiffs' to oppose the motion to dismiss and move for sanctions. It is clear that the Second Motion is a litigation tactic designed to delay and multiply these proceedings. Moreover, the Second Motion clearly harasses the plaintiffs

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-12-

in requiring plaintiffs to expend limited resources in opposing the Second Motion. HSBC's course of conduct and litigation tactics exhibit HSBC's bad faith. Accordingly, HSBC should be sanctioned.

## CONCLUSION

For all of the foregoing reasons, plaintiffs Alan Sadhwani, et al. respectfully requests that the Court sanction HSBC in the form of attorneys fees and costs for researching and preparing their opposition to the Second Motion to Dismiss the First and Sixth Causes of Action and for the filing of this motion.

Respectfully submitted on September 21, 2004.

**ARRIOLA, COWAN & ARRIOLA**
Attorneys for Plaintiffs Alan Sadhwani, et al.

By: _Anita P. Arriola_
**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-13-

## CERTIFICATE OF SERVICE

I, ANITA P. ARRIOLA, hereby certify that on September _21_, 2004, I caused to be served

via hand delivery, a **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS** to:

> **Jacques G. Bronze, Esq.**
> **Bronze & Tang, P.C.**
> **2nd Floor, BankPacific Building**
> **825 S. Marine Drive**
> **Tamuning, Guam 96913**

Dated this _____ day of September, 2004.

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910